## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| DR. KRISHNA MURTHY | ) | |
| 7715 Lear Road | ) | |
| McLean, VA 22102 | ) | |
| | ) | **Case No. 06cv2208** |
| Plaintiff, | ) | **(RJL)** |
| | ) | |
| v. | ) | |
| | ) | |
| MIKE JOHANNS, SECRETARY | ) | |
| U.S. DEPARTMENT OF | ) | **Jury Trial Demand** |
| AGRICULTURE | ) | |
| 1400 Independence Avenue, SW | ) | |
| Washington, D.C. 20250 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Comes now Plaintiff Krishna Murthy, by and through counsel, and files Plaintiff's Opposition to Defendant's Motion to Dismiss or Motion for Summary Judgment, and in support thereof states as follows.

Defendant has filed a motion to dismiss or for summary judgment. Defendant raises a number of arguments, including Plaintiff Murthy's claims should be filed in the Court of Federal Claims; and Plaintiff Murthy failed to exhaust his administrative remedies for the breach of the Basu Settlement Agreement and discrimination and retaliation claims. All of Defendant's arguments are without merit. Plaintiff Murthy alleges breach of a settlement agreement and seeks injunctive and declaratory relief, and asserts claims of discrimination and retaliation under Title VII, and this court has jurisdiction over all of his claims. Further, Plaintiff Murthy exhausted his administrative

remedies for the Basu Settlement Agreement and discrimination and retaliation claims; and Plaintiff Murthy disputes that he received timely notice of the individual relief that was to be provided to him in the Basu Settlement Agreement in February 2004 and has provided a sworn declaration, and the Agency has not provided a sworn statement that Plaintiff Murthy was provided the individual relief that was to be provided to him in the Basu Settlement Agreement in February 2004.  Thus, there is a material fact in dispute on this issue which cannot be resolved in a motion for summary judgment.

<u>Background</u>

Plaintiff Murthy is an Asian male.  Ex. A (Declaration of Dr. Krishna Murthy) paragraph 1.  He is employed as a GS-14/10 Senior Staff Officer/Veternarian, U.S. Department of Agriculture, Food Safety and Inspection Services (FSIS).  Id. Throughout his tenure at the USDA, he has performed his job at an exemplary level, but has been denied promotions to the grade 15 level repeatedly, and consequently has filed EEO complaints against the Agency.  Id.

Dr. Murthy was a leader in starting the Organization of South Asian Americans in Agriculture (OSAAA).  Id. at 2. He later played an instrumental part in initiating a class complaint on behalf of Asian employees at USDA.  Id. The Asian Class complaint was filed on the basis of denial of promotions to Asian employees at USDA.  Id.

Arun Basu, Asian male, filed a formal complaint of discrimination on behalf of a proposed class of Asian employees, and served as the class agent.  Id. at 3.  Dr. Murthy was one of six class agents.  The class was defined as "all current Asia/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and

have applied for positions with the Department but have not been selected." During the course of the settlement discussions with the Agency, Farook Sait, an Agency management employee, was the class representative in negotiating both the individual and class relief. Id. Sait carried out this role while employed as a manager for the Agency. Id.

The Agency entered into a Settlement Agreement on or about October 31, 2003. Id. at 4.  On November 17, 2003, the parties submitted a Joint Motion for Approval of Settlement Agreement.  The class members were to receive notice of the Settlement Agreement and Tier One class members, including Dr. Murthy, the class agent and other original class members, would receive notice of individual relief, by regular mail. Id.

The Agency claims that it sent Dr. Murthy a copy of a February 17, 2004 letter which provided him with notice of the individual relief on February 17, 2004 by regular mail and Federal Express. Dr. Murthy did not receive a copy of a letter dated February 17, 2004, stating the individual relief that was to be provided to him at any time in February 2004, or anytime in 2004. Id. at 5.  In February 2004, Dr. Murthy received a copy of the Settlement Agreement filed with the EEOC which only stated that Tier One class members would receive individual settlement agreements. Id. Dr. Murthy asked Agency Counsel, Stephen Brammer, on several occasions orally and in writing to provide him a copy of a signed return receipt or some other receipt confirming that Dr. Murthy received the individual relief settlement agreement in February 2004, and he was unable to do so. Id. The Agency represented on many occasions that the letter with the individual relief was sent by regular mail. Id. Only after this case was filed did it state for the first time that the letter with the individual relief was sent to Dr. Murthy by FedEx

in February 2004.  Id.   A letter which stated the individual relief that was to be provided

to Dr. Murthy was not provided to him until May 26, 2005.  Id.  By the time Dr. Murthy

received the letter stating the individual relief that was being proposed for him, the time

for him to object had already passed. Id.  Dr. Murthy had no involvement whatsoever in

negotiating the individual relief that would be offered to him.  Id.  If Dr. Murthy had

received the letter with the individual relief in February 2004, he would have

immediately challenged the relief proposed to be provided to him because it differed

significantly from the relief provided to other Tier One class members.  Id.  All of the

Tier One class members who sought a promotion received a promotion, except Dr.

Murthy.  Id.  At least three other Tier One class members received a promotion and

hundreds of  thousands of dollars in compensation.  Id.

On December 7, 2004, an EEOC administrative judge granted final approval of

the Settlement Agreement.   The Settlement Agreement provided general relief for three

different tiers of employees, and indicated that class members in tier one would receive

individual relief.   Under the Agreement, class agents were to be provided a copy of the

Notice of Proposed Settlement, informing them that they had thirty days in which to file

objections to the administrative judge.

Six individuals were Tier One class agents.  Id. at 7.  At the time of the

settlement, four class agents were still employed at the Agency and two class agents had

ended their employment at the Agency.  Id.  Three of the class agents who were

employed at the Agency received significant individual relief, including retroactive

promotions and payments of $100,000 to $300,000.  Id.  In the individual relief that was

to be provided to Dr. Murthy, Dr. Murthy was designated to receive $40,000, a two step

increase at his current grade 14 step 8 position, OPM training and payment of legal fees. Id.   The Settlement Agreement provided that the Agency would create a Development Opportunity Placement Program within the Food Safety and Inspection Services within 180 days from December 7, 2004.  The Agency did not develop the program within 180 days of December 7, 2004.  Id.  In addition, as part of the settlement agreement, the Agency was required to provide Dr. Murthy with training at the Office of Personnel Management (OPM), which did not occur.  Dr. Murthy met with an official in the Office of Civil Rights and identified four OPM courses.  According to Dr. Murthy, he was initially told to pick four OPM training courses, and the Agency prepared to send him to training, but when it came to the stage to be approved by the Assistant Administrator, Philip Derfler, Derfler stated "I am not going to send Kris to those training courses." Derfler told Dr. Murthy that he had to take online computer courses and would not approve four OPM training courses.  Dr. Murthy  met with a supervisor in his department and Dr. Murthy was told he could take four online courses and told which online courses he could take.  Id.  Dr. Murthy was not in agreement with the four online courses and was not provided any OPM training.  Id.

In May 2005, Dr. Murthy learned of the approval of the Settlement Agreement and the fact that he had thirty days to object to the Settlement Agreement, which had passed. Id. at 8.  Dr. Murthy immediately began protesting the fact that he did not receive notice of his right to file an objection, and sought review/reconsideration of the individual relief provided to him.  The Settlement Agreement did not provide specific information on how a complainant can challenge a Settlement Agreement under the EEOC Regulations contained in 29 C.F.R. Sec. 1614.504, including the requirement that

the Complainant notify the Agency's EEO Director in writing of the alleged

noncompliance within 30 days of when the complainant knew or should have known of

the alleged noncompliance.  Id. The Basu Agreement provides that a claim of

noncompliance may be raised at any time.  Dr. Murthy alleged breach of the Basu

Settlement Agreement based on the individual relief to be provided to him as soon as he

learned of the relief that was to be provided to him in May 2005, and the Agency failed to

comply with other terms of the Settlement Agreement.  He wrote letters in August 2005,

and was informed of the specific procedure to be followed in October 2005, including

contacting the Agency Liaison.  Id.  The Agency Liaison vacated his position in

sometime between July and August 2005 and the Agency did not send out a notice that

the Liaison had been replaced.    Id.

Although the Agency presented Dr. Murthy with an individual Settlement

Agreement in May 2005, Dr. Murthy and the Agency did not execute an individual

Settlement Agreement because the parties were not able to agree to all of the terms of an

individual Settlement Agreement. Id. at 9.  The Agency provided Dr. Murthy a payment

of $40,000 and a two step within grade increase.  Id.

Dr. Murthy filed a notice of breach of the settlement agreement with the Agency.

Id. at 10.   In October 2005, Sadhna G. True wrote a letter to Dr. Murthy, referencing the

fact that she was responding to his "letters dated August 29, 2005, October 5, 2005 and

October 21, 2005, regarding the Basu Settlement Agreement, and noting that the

Departmental Liaison, Dr. Ruihong Guo, left the position, seven weeks before October

24, 2005.  Id.  Dr. Murthy was provided specific instructions on what he must do to

challenge the Basu Agreement and he complied with each of the requirements.  Id.

Dr. Murthy later filed a petition with the EEOC Office of Federal Operations, challenging the failure to provide to him notice so he could challenge the settlement agreement and the overall fairness of the class action settlement.  Id. at 11.  The EEOC Office of Federal Operations upheld the Settlement Agreement and denied his petition and request for reconsideration.  Id.

.    In June and August 2006, Dr. Murthy filed complaints alleging discrimination based on race, age and religion, and reprisal when he applied for GS-15 positions and was not selected.   Id. at 12.

Statement of Material Facts (SOMF) which Are In Dispute.

SOMF 20, 23, 24, 25, 26, 29, 37 and 39.  Dispute. Dr. Murthy did not receive a copy of a letter with the individual relief from the USDA Office of General Counsel dated February 17, 2004 at any point in 2004. Ex.A:5.   Dr. Murthy received a letter in May 2005 which set forth the individual relief that was being offered to him.  Dr. Murthy disputes that he received a February 17, 2004 letter which included the individual relief he would receive under the Settlement Agreement as a Tier One member and how and when he could object to the terms.  Id.  The Agency has not provided a sworn statement that a letter which included the individual relief Dr. Murthy would receive under the settlement agreement as a Tier One member, was sent to Dr. Murthy on February 17, 2004.  All of the evidence in the record suggests that the letter was not sent to Dr. Murthy on February 17, 2004 by FedEx.  The Agency has not submitted admissible evidence that it was sent and received on that date.  The Agency has maintained all along that the letter was sent by regular mail as contemplated by the Settlement Agreement.  In addition, this had been the Agency's position in correspondence with the Dr. Murthy, until it responded to this

lawsuit.  For example, the February 17, 2004 letter does not state that it was sent by

Federal Express.  Further, Dr. Murthy made repeated requests of the Agency counsel to

provide some type of confirmation that the February 17, 2004 letter was sent to him, but

the Agency counsel was unable to do so.  For the first time in court, the Agency claims

the letter was sent be Fedex.  This is a critical issue, and at a minimum, the Agency must

provide a statement under oath that the February 17, 2004 letter was sent to Dr. Murthy,

and even if it does, this only creates a disputed fact, since Dr. Murthy has provided a

sworn statement that he did not receive the February 17, 2004 letter at any time in

February 2004.

SOMF 44, 45, 46, 47, 48 and 49.  It is disputed that Dr. Murthy did not complain of

breach of the Basu Agreement in a timely manner and until September 22, 2005.  Ex.

A:8-10.  The Settlement Agreement did not provide specific information on how a

complainant can challenge a Settlement Agreement under the EEOC Regulations

contained in 29 C.F.R. Sec. 1614.504, including the requirement that the Complainant

notify the Agency's EEO Director in writing of the alleged noncompliance within 30

days of when the complainant knew or should have known of the alleged noncompliance.

The Basu Agreement provides that a claim of noncompliance may be raised at any time.

Dr. Murthy began complaining about the individual relief to be provided to him as soon

as he learned of the relief that was to be provided to him and the other Tier One class

members in May 2005.  He wrote letters in August, September and October 2005, and

was informed to the specific procedure to be followed in October 2005, including

contacting the Agency Liaison.  Id. The Agency Liaison vacated his position in sometime

between July and August 2005 and the Agency did not send out a notice that the Liaison had been replaced.  Id. at 8.

## ARGUMENT

    A.    The Court has Jurisdiction Over All of Dr. Murthy's Claims

Defendant contends that to the extent the complaint alleges breach of contract claims and related claims, and seeks damages over $10,000, the Court of Federal Claims maintains exclusive jurisdiction over these claims.   According to the Agency, "[a]s this Circuit has recognized, when a federal employee sues a federal agency challenging the lawfulness of or alleging a breach of a Title VII settlement agreement, and asserts additional Title VII claims, the Court of Federal Claims maintains exclusive jurisdiction over the breach of contract claims if the value of the claims exceed $10,000."  Motion at 21-22.  Defendant cites to Greenhill v. Spellings, 482 F.3d 569, 575(D.C. Cir. 2007) for the proposition that the Court of Federal Claims maintains exclusive jurisdiction over breach of contract claims.  Defendant has misconstrued the Greenhill decision and that decision is not applicable here.

First, the Circuit Court of Appeals held that Greenhill involved only a claim of breach of contract, and not a claim of violation of Title VII.  The plaintiff in Greenhill entered into a settlement agreement and later claimed in her complaint in court that the Agency breached the settlement agreement.  The Circuit Court limited the claims to breach of contract and held that the Court of Federal Claims had jurisdiction on the complaint, and ordered the district court to transfer the case to the Court of Federal Claims.  Here, Dr. Murthy has alleged breach of contract and discrimination and retaliation under Title VII.  Contrary to the Agency's argument, the Circuit Court has not

recognized that when a federal employee sues a federal agency challenging the lawfulness of or alleging a breach of a Title VII settlement agreement, and asserts additional Title VII claims, the Court of Federal Claims maintains exclusive jurisdiction over the breach of contract claims if the value of the claims exceed $10,000.  In fact, the Court of Federal Claims has no jurisdiction over Title VII claims.  See Greenhill, 482 F.3d at 574.  The Court of Appeals in Greenhill only held that the Court of Federal Claims maintains exclusive jurisdiction over the breach of contract claims if the value of the claims exceed $10,000.  In addition, the district court has jurisdiction over the Title VII discrimination and retaliation claims, and may exercise supplemental jurisdiction over the breach of contract claim.  See Rochon v. Gonzales, 438 F.3 1211, 1216 (D.C. Cir. 2006).  Moreover, even if the court did not have jurisdiction over the breach of contract claim, the proper recourse would not be dismissal but transfer of that aspect of the case to the Court of Federal Claims pursuant to 28 U.S.C. Sec 1631.  See Greenhill, 482 F.3d at 576.

      B.      <u>The Primary Thrust of Dr. Murthy's Complaint is a Claim in Tort and the Injunctive and Declaratory Relief it Seeks has Considerable Value.</u>

Defendant  argues that where the primary thrust of a complaint is breach of contract, the Claims Court retains jurisdiction over the suit even if the claim sounding in tort would lie.  Mtn. at 25.  This argument fails as well.

First, the complaint alleging breach of contract is focused primarily on declaratory and injunctive relief.  In his breach of contract claim, Plaintiff alleged that  "Plaintiff was a class agent for a class action which was settled with the Agency.  Defendant breached the express and implied contractual commitments to Plaintiff by: 1) failing to inform

Plaintiff of the individual relief received by other class agents and providing Plaintiff

significantly less in the settlement agreement than other class agents who were employed

at the Agency; 2) failing to provide Plaintiff notice of the settlement agreement so that he

could file objections to the settlement agreement in a timely manner; and 3) failing to

provide individual agreed upon relief." Complaint at 18. Further, the non-monetary

relief sought by Plaintiff, which the Court of Federal Claims would not have jurisdiction

to resolve, has considerable value independent of any future potential for monetary relief

and the remedy requested is declarative or injunctive relief that is not negligible in

comparison with the potential monetary recovery. See Kidwell, 56 F.3d at 284. Finally,

there is nothing in these claims which suggest that Plaintiff is seeking more than $10,000.

Plaintiff's breach of contract claims has not sought damages in excess of $10,000. This

claim is properly before this court.

        C.      Dr. Murthy has Exhausted his Administrative Remedies

        The Defendant next argues that Dr. Murthy has failed to exhaust properly his

claims that USDA breached the Basu Agreement, under the regulations and the

Agreement. Here, the Agency claims that under EEOC regulations, Dr. Murthy was

required to notify the Agency's EEO Director in writing within 30 days of when the

Complainant learned of the noncompliance. Motion at 29.

        According to Dr. Murthy, the Settlement Agreement did not provide specific

information on how a complainant can challenge a Settlement Agreement under the

EEOC Regulations contained in 29 C.F.R. Sec. 1614.504, including the requirement that

the Complainant notify the Agency's EEO Director in writing of the alleged

noncompliance within 30 days of when the complainant knew or should have known of

the alleged noncompliance. Ex. A:8.   The Agency ignores the fact that it did not provide

Dr. Murthy with the regulations it now seeks to hold him to.  It is not disputed that the

Agency did not provide Plaintiff notice of his obligation under the EEOC regulations to

notify the Agency's EEO Director in writing within 30 days of when the Complainant

learned of the noncompliance.   Dr. Murthy could not have failed to comply with EEOC

regulations on noncompliance with a settlement agreement when he was not provided

notice of the requirements of the regulations.

The Agency also claims that Dr. Murthy was on notice of the non-compliance

provisions in the Basu Agreement as early as February 18, 2004 and no later than May

25, 2005.  This assertion is disputed. Dr. Murthy has filed a sworn declaration that he did

not receive notice of the individual relief proposed for him until May 2005.  The Agency

has not provided a sworn statement that Dr. Murthy was sent the notice of the individual

relief proposed for him in February 2004, and even if it did, it would only present a

disputed fact for the fact finder, which may not be resolved on summary judgment.

The Agency claims that Dr. Murthy did not exhaust the procedures set forth in the

Basu Settlement Agreement before filing in court.  Here, the Agency claims that Dr.

Murthy did not give verbal notice to "opposing counsel;" did not give the USDA Office

of the General Counsel notice 35 days after a claim; did not submit notice to the

Department Liaison and wait for the Department Liaison to issue to the Assistant

Secretary for Civil Rights to issue a tentative report and recommendation.

First, Dr. Murthy did comply with the terms of the Basu Settlement Agreement.

The Basu Agreement provides that a breach of the agreement claim may be raised at any

time and there is no time requirement on when a breach of the Settlement Agreement

must be raised.  Dr. Murthy raised the breach claim formally as early as August 29, 2005.

(see Sadhna G. True's Letter to Dr. Murthy, referencing the fact that she was responding

to his "letters dated August 29, 2005, October 5, 2005 and October 21, 2005).  He

continued with letters to Kevin McGrath, Complaint Management Branch, Vernon Parker

Under Secretary for Civil Rights on September 29, 2005, October 5, 2005 and October

21, 2005, and Farook Sait on November 22, 2005.  Dr. Murthy received a letter from

Kevin McGrath dated October 3, 2005 referencing Dr. Murthy's Letter to Dr. H. Steven

L. Newbold II,  Director, Civil Rights Division, Food Safety and Inspection Service.  In

Sadhna G. True's Letter to Dr. Murthy, referencing the fact that she was responding to

his "letters dated August 29, 2005, October 5, 2005 and October 21, 2005, regarding the

Basu Settlement Agreement, and noting that the Departmental Liaison, Dr. Ruihong Guo,

left the position, seven weeks before October 24, 2005, Dr. Murthy was provided specific

instructions on what he must do to challenge the Basu Agreement and he complied with

each of the requirements.

The Agency next argues that Dr. Murthy knew the terms of the Basu Agreement

and how to object to it but filed to properly and timely do so, and now he is legally bound

by it and should not be heard to complain about its fairness.  The Agency's argument is

premised on its claim that Dr. Murthy received notice of the individual relief in a

February 17, 2004 letter and the EEOC administrative judge issued a Decision granting

final approval of the Settlement Agreement on December 7, 2004.

The Agency's argument is built on a disputed fact and false premise.  Dr. Murthy

disputes that he received notice of the individual relief contained in the February 17,

2004 letter on February 18, 2004.  According to Dr. Murthy, he did not receive the letter

containing individual relief until May 2005.  By the time he received the letter with the

individual relief, the time for him to challenge the Basu Settlement Agreement had

already passed.   The Agency does not argue that Dr. Murthy was provided notice of the

EEOC administrative judge's decision within 30 days of December 7, 2004.

In addition, without specifically stating when Dr. Murthy received notice of the

EEOC administrative judge's Decision, the Agency claims that Dr. Murthy "had an

opportunity to challenge the Basu Agreement within 30 days of notice of that resolution.

He failed to do so.  Because he sat on these rights, he should not now be heard to

complaint about the fairness of the agreement.  Because he knowingly and voluntarily

entered into that agreement, he is not legally bound by it."  Motion at 35.  Dr. Murthy's

sworn statement is that he did not receive the EEOC Administrative Judge's December 7,

2004 Decision until May 2005, as the Agency seems to admit, and by the time he

received the Decision, the time for him to challenge it had passed.

Finally, the provisions contained in the Basu Settlement Agreement regarding

how a complainant files a breach of settlement agreement are not jurisdictional and do

not in any way limit or interfere with the rights an individual to pursue a claim of breach

of the settlement agreement.  Thus, even if Dr. Murthy did not follow to the letter the

provisions in the Basu Settlement Agreement on challenging noncompliance with the

Agreement, this does not mean that he can not pursue a claim of breach of the

Agreement.

D.      <u>Dr. Murthy has Exhausted his Discrimination and Retaliation Claims</u>

The Agency argues that Dr. Murthy failed to properly exhaust his claims

concerning his allegations that the USDA retaliated or discriminated against him when it

denied him a promotion to the GS-15 level position. Here, the Agency claims that

Plaintiff only waited 131 days after he filed his August 17, 2006 complaint to file this

complaint in court. This argument fails.  Defendant's argument does not address

Plaintiff's claim of retaliation, which may be filed in court at any time.  Further,

Defendant has not filed an answer to the complaint, and Plaintiff has filed an amended

complaint.  The Amended Complaint was filed more than 180 days after the August 2006

administrative complaint.  Defendant's argument that Dr. Murthy has not exhausted his

administrative remedies for the discrimination and retaliation claims is therefore moot.

   E. <u>Disputed Facts Remain Concerning Whether The Court is required to Overturn the</u>

<u>Basu Agreement as it applies to Dr. Murthy</u>

      No discovery has taken place in this matter.  The Agency next argues that the

court should not overturn the administrative judge's approval of the Basu Settlement

Agreement because the Agency believes it is "fair, adequate and reasonable."  Mtn. at 38.

Plaintiff alleged that the Agency discriminated against him by providing him

substantially less than the other class members; that he was excluded from negotiating

any of the terms as it relates to him; and has provided sworn testimony that he did not

receive notice of what was to be offered to him until May 2005, which was more than a

year after the notice should have been provided to him, and several months after the

period to file any objection to the Settlement Agreement. Although Dr. Murthy was a

Tier One Class Member, the Settlement Agreement provided full grade promotions to all

Tier One Class members who were employed at the USDA who sought a promotion, and

compensation of $100,000 to $300,000 for some of these individuals.  Dr. Murthy, by

contrast, was provided $40,000 and a two step increase.   Defendant is not entitled to summary judgment on this aspect of his claim.

The Agency argues that the court should not disturb the Basu Agreement because it argues that Dr. Murthy  was given notice of the Basu Agreement.   Whether Dr. Murthy received notice of the individual relief is a disputed fact.  The Agency argues that "Plaintiff himself, in numerous letters to the agency, describes his involvement in negotiations of the Settlement Agreement."  Mtn. at 42-43.  This claim is false.  Dr. Murthy has never on any occasion stated that he was involved in negotiations of the Settlement Agreement.  In fact, Dr. Murthy has always stated the exact opposite—that Farook Sait, a management employee, negotiated the Settlement Agreement and that he and other class members were kept completely in the dark in negotiating the Settlement Agreement.

Finally, the Agency claims that it has fully implemented the Basu Agreement and provided Dr. Murthy all relief he is entitled to receive.  First, Dr. Murthy and the Agency did not execute an individual settlement agreement because the parties could not agree to all terms.  The Agency has not stated how it complied with the Agreement as it relates to Dr. Murthy.  Dr. Murthy disputes the claim that he has received all he is entitled to receive.   In addition to not providing notice to him of the individual relief and denying him an opportunity to challenge the relief, he has provided sworn testimony that he did not receive OPM training and the Agency did not create a Development Opportunity Program within 180 days of execution of the Settlement Agreement.  Ex. A:7. According to Dr. Murthy, he was initially told to pick four OPM training courses, and the Agency prepared to send him to training, but when it came to the stage to be approved by

the Assistant Administrator, Philip Derfler, Derfler stated "I am not going to send Kris to those training courses."  Derfler told Dr. Murthy that he had to take online computer courses and would not approve four OPM training courses.

The Agency contends that the court should be "mindful of the deference owed to an agency's interpretation of a settlement agreement."  Motion at 43.  To the contrary, the Agency stands before the court in the same position as any party who has entered into a Settlement Agreement, and the court owes no deference to the Agency's interpretation of a settlement Agreement.  See <u>Saksenasingh v. Secretary of Education</u>, 126 F.3d 347 (D.C. Cir. 1997) ("Where a party raises a settlement agreement as a defense, the District Court must factually determine the issues surrounding the agreement. . . . a district court owes no deference to Agency in the Agency's determination that it did not breach a settlement agreement, but it is for the judge or jury to decide whether the agreement had been breached."

<u>Conclusion</u>

The Agency's motion to dismiss or for summary judgment should be denied.

Respectfully submitted,

/s/
David A. Branch #438764
Law Offices of David A. Branch, PC
1825 Connecticut Avenue, N.W.
Suite 690
Washington, D.C.  20009
(202) 785-2805 phone
(202) 785-0289 fax

**<u>Certificate of Service</u>**

I hereby certify this 19th day of September 2007 that a copy of the foregoing

Plaintiff's Opposition to Motion to Dismiss or For Summary Judgment was sent via

electronic mail to counsel for the Defendant at the address listed below:

Jonathan Brumer
AUSA- District of Columbia
501 3rd Street, NW Fourth Floor
Washington, DC 20001                          /s/
                                   _____

                                      David A. Branch

18

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| DR. KRISHNA MURTHY | ) | |
| 7715 Lear Road | ) | |
| McLean, VA  22102 | ) | |
| | ) | Case No. 06cv2208 |
| Plaintiff, | ) | (RJL) |
| | ) | |
| v. | ) | |
| | ) | |
| MIKE JOHANNS, SECRETARY | ) | |
| U.S. DEPARTMENT OF | ) | Jury Trial Demand |
| AGRICULTURE | ) | |
| 1400 Independence Avenue, SW | ) | |
| Washington, D.C. 20250 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### Sworn Declaration of Krishna Murthy

I, Krishna Murthy, the Plaintiff in this lawsuit, hereby make the following declaration pursuant to the provisions of 28 U.S.C. Sec. 1746.  I understand that this declaration is the equivalent of an affidavit.  The statements contained herein are based on my personal knowledge.

1.      I am an Asian male.   I am employed as a GS-14/10 Senior Staff

Officer/Veternarian, U.S. Department of Agriculture, Food Safety and Inspection

Services (FSIS).  Throughout my tenure, I have performed my job at an exemplary level,

but have been denied promotions to the grade 15 level repeatedly, and consequently has

filed EEO complaints against the Agency.

2.      I was a leader in starting the Organization of South Asian Americans in

Agriculture (OSAAA).  I later played an instrumental part in initiating a class complaint

on behalf of Asian employees at USDA.  The Asian Class complaint was filed on the

basis of denial of promotions to Asian employees at USDA.

3.      Arun Basu, Asian male, filed a formal complaint of discrimination on behalf of a

proposed class of Asian employees, and served as the class agent.  I was one of six class

agents.  The class was defined as "all current Asia/Pacific Islander employees at the GS-7

level and above who were eligible for but have not received promotions and all

Asian/Pacific Islander current employees who were eligible for and have applied for

positions with the Department but have not been selected."  During the course of the

settlement discussions with the Agency, Farook Sait, an Agency management employee,

was the class representative in negotiating both the individual and class relief.  Sait

carried out this role while employed as a manager for the Agency.

4.      The Agency entered into a Settlement Agreement on or about October 31, 2003.

On November 17, 2003, the parties submitted a Joint Motion for Approval of Settlement

Agreement.   The class members were to receive notice of the Settlement Agreement and

Tier One class members, including me, the class agent and other original class members,

would receive notice of individual relief, by regular mail.

5.      The Agency claims that it sent me a copy of a February 17, 2004 letter which

provided me with notice of the individual relief on February 17, 2004 by regular mail and

Federal Express.  I did not receive a copy of a letter dated February 17, 2204, stating the

individual relief that was to be provided to me at any time in February 2004 or anytime in

2004. In February 2004, I received a copy of the Settlement Agreement filed with the

EEOC.  I asked Agency Counsel, Stephen Brammer, on several occasions orally and in

writing to provide me a copy of a signed return receipt or some other receipt confirming

that I received the individual relief settlement agreement in February 2004, and he was

unable to do so.  The Agency represented on many occasions that the letter with the

individual relief was sent by regular mail.  Only after this case was filed did it state for

the first time that the letter with the individual relief was sent to me by FedEx.   The letter

which stated the individual relief that was to be provided to me was not provided to me

until May 26, 2005.  By the time I received the letter stating the individual relief, the time

for me to object had already passed.   I had no involvement whatsoever in negotiating the

individual relief that would be offered to me.  If I had received the letter with the

individual relief in February 2004, I would have immediately challenged the relief

proposed to be provided to me because it differed significantly from the relief provided to

other Tier One class members.  At least three other Tier One class members received a

promotion and hundreds of  thousands of dollars in compensation. All of the Tier One

class members who sought a promotion received a promotion, except me.

6.    On December 7, 2004, an EEOC administrative judge granted final approval of

the Settlement Agreement.   The Settlement Agreement provided general relief for three

different tiers of employees, and indicated that class members in Tier One would receive

individual relief.   Under the Agreement, class agents were to be provided a copy of the

Notice of Proposed Settlement, informing them that they had thirty days in which to file

objections to the administrative judge.

7.    Six individuals were class agents.  At the time of the settlement, four class agents

were still employed at the Agency and two class agents had ended their employment at

the Agency.  Three of the class agents who were employed at the Agency received

significant individual relief, including retroactive promotions and payments of $100,000

to $300,000.  I was designated to receive only $40,000 and a two step increase at my

current grade 14 step 8 position.  The Settlement Agreement provided that the Agency

would create a Development Opportunity Placement Program within the Food Safety and

Inspection Services within 180 days from December 7, 2004.  The Agency did not

develop the program within 180 days.  In addition, as part of the settlement agreement,

the Agency was required to provide me with training at the Office of Personnel

Management, which did not occur.   I met with an official in the Agency's Office of Civil

Rights and identified four OPM courses.  I  was initially told to pick four OPM training

courses, and the Agency prepared to send me to training, but when it came to the stage to

be approved by the Assistant Administrator, Philip Derfler, Derfler stated "I am not going

to send Kris to those training courses."  Derfler told me that I had to take online computer

courses and the Agency would not approve four OPM training courses.  I later met with a

supervisor in my department and I was told I could take four online courses and told

which online courses I could take.  I was not in agreement with the four online courses

and was not provided any OPM training.

8.      After learning of the individual relief I was to be provided and the relief provided

to other Tier One class members, I immediately began protesting the fact that I did not

receive notice of my right to file an objection, and sought review/reconsideration of the

individual relief provided to me.  The Settlement Agreement did not provide specific

information on how a complainant can challenge a Settlement Agreement under the

EEOC Regulations contained in 29 C.F.R. Sec. 1614.504, including the requirement that

the Complainant notify the Agency's EEO Director in writing of the alleged

noncompliance within 30 days of when the complainant knew or should have known of

the alleged noncompliance.  The Basu Agreement provides that a claim of

noncompliance may be raised at any time.  I began complaining about the individual

relief to be provided to me as soon as I learned of the relief that was to be provided to me in May 2005, and the Agency failed to comply with other terms of the Settlement Agreement.

9.    Although the Agency presented me with an individual Settlement Agreement in May 2005, the Agency and I did not execute an individual Settlement Agreement because the parties were not able to agree to all of the terms of an individual Settlement Agreement.   The Agency provided me a payment of $40,000 and a two step within grade increase.  Id.

10.    I wrote letters in August, September and October 2005, I filed a notice of breach of the settlement agreement with the Agency.  In October 2005, Sadhna G. True wrote a letter to me, referencing the fact that she was responding to my "letters dated August 29, 2005, October 5, 2005 and October 21, 2005, regarding the Basu Settlement Agreement, and noting that the Departmental Liaison, Dr. Ruihong Guo, left the position, seven weeks before October 24, 2005.  I was provided specific instructions on what I must do to challenge the Basu Agreement and I complied with each of the requirements.

11.    I later filed a petition with the EEOC Office of Federal Operations, challenging the failure to provide notice and the fairness of the class action settlement.  The EEOC Office of Federal Operations upheld the Settlement Agreement and denied my petition and request for reconsideration.

12.    In June and August 2006, I filed complaints alleging discrimination based on race, age and religion, and reprisal when I applied for GS-15 positions and was not selected.

Futher declarant saith not.

I hereby certify under penalty of perjury that the forgoing statements contained in this affidavit are true and correct.

/s/                                                    9/14/07

_____
*Krishna Murthy                          Date

Plaintiff's counsel has an original signed copy of this Declaration.