# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DR. KRISHNA MURTHY,                          )
                                             )
                        Plaintiff,           )
                                             )
        v.                                   )        Civil Action No.  06-2208 (RJL)
                                             )
CHUCK CONNER[1],                             )
Acting Secretary,                            )
United States Department of Agriculture,     )
                                             )
                        Defendant.           )
_____  )

## DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Chuck Conner, Acting Secretary, United States Department of Agriculture, by

and through undersigned counsel, respectfully moves this Court pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiff's claims in this

action on the grounds that the Court lacks jurisdiction over Plaintiff's claims, and that Plaintiff

fails to state a claim upon which relief can be granted.  In the alternative, Defendant moves the

Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting

Defendant summary judgment on the grounds that no genuine issue of material fact exists and

Defendant is entitled to judgment as a matter of law.  In support of this motion, Defendant

respectfully refers the Court to the accompanying Statement of Material Facts As To Which

There Is No Genuine Dispute, Memorandum of Points and Authorities, and Exhibits.  A

proposed order is also attached.

---

[1]  By operation of Fed. R. Civ. P. 25(d), Chuck Conner, the Acting Secretary of
Agriculture, is substituted for Mike Johanns, the former Secretary of Agriculture, who resigned
from his position as the Secretary of Agriculture on September 20, 2007.

Dated: November 13, 2007                Respectfully submitted,


\_\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_\_/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DR. KRISHNA MURTHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  06-2208 (RJL) |
| | ) | |
| CHUCK CONNER, | ) | |
| Acting Secretary, | ) | |
| United States Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendant Chuck Conner, Acting Secretary, United States Department of Agriculture ("USDA"or "the Agency" or "the Department"), by and through undersigned counsel, respectfully moves this Court for dismissal of this matter pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment under Fed. R. Civ. P. 56(c). Plaintiff initiated this action by filing a Complaint on December 26, 2006. See Docket Entry No. 1, Original Complaint. On July 13, 2007, Defendant filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. See Docket Entry No. 12. After requesting multiple extensions, on September 19, 2007, Plaintiff filed an Amended Complaint and an Opposition (which is now superceded as a result of the filing of Plaintiff's Amended Complaint). See Docket Entry No. 20, Amended Complaint ("Am. Compl."). Plaintiff's Amended Complaint is now the operative pleading in this action.

Plaintiff, Dr. Krishna Murthy, makes three major types of allegations in the above-captioned action. First, he claims that the USDA knowingly and intentionally engaged in unlawful discrimination, including but not limited to denying him promotion to grade 15 ("GS-15") positions in June and August 2006, despite his superior qualifications and experience, based upon race, religion, and in retaliation for prior EEO activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"). See Am. Compl. at ¶ 17. Second, Plaintiff contends that the Agency discriminated and retaliated against him pursuant to Title VII by providing him significantly less relief than other class agents in the settlement of an administrative employment discrimination class action, Arun Basu, et. al. v. USDA, EEOC No. 100-A1-7863X, Agency No. 000190 ("Basu"), and then failing to provide him notice of his right to file an objection to the Basu class action settlement agreement ("Basu agreement"). See Am.

Compl. at ¶ 17.  Third, Plaintiff alleges that the USDA breached express and implied contractual commitments to him by: (a) failing to inform him of the individual relief received by other <u>Basu</u> class agents and providing him with significantly less relief in the <u>Basu</u> agreement than other class agents who were employed at the Agency received; and (b) failing to provide him with notice of the <u>Basu</u> agreement so that he could file objections to the proposed settlement in a timely manner.  <u>See</u> Am. Compl. at ¶ 18.

As is explained in this brief, this action should be dismissed in its entirety for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted for at least five reasons.  First, to the extent that the complaint alleges breach of contract claims and related and ancillary claims, and seeks damages over $10,000, the Court of Federal Claims maintains exclusive jurisdiction over these claims.  Second, Plaintiff's claims concerning the fairness of the <u>Basu</u> agreement, his purported lack of notice of the <u>Basu</u> agreement, and USDA's alleged breach of the agreement should all be dismissed because Plaintiff failed to properly exhaust the applicable administrative remedies before the USDA concerning those claims and has failed to adhere to the procedures set forth in the Notice of Proposed Agreement and the <u>Basu</u> agreement itself for such challenges.  Nor has Plaintiff properly exhausted his discrimination and retaliation claims concerning his non-promotion to a GS-15 position in June and August 2006.  Third, Plaintiff's claims concerning his purported lack of notice of the <u>Basu</u> agreement and USDA's alleged breach of the agreement should be dismissed because Plaintiff was in fact provided with advance notice of the terms of the <u>Basu</u> agreement and of the enforcement procedures set forth in the agreement (as evidenced by a FedEx return receipt and other documents), and the <u>Basu</u> agreement has been fully implemented by the USDA.  Finally, this

Court should not overturn all or part[2] of the <u>Basu</u> agreement because: (a) it was a huge

undertaking: a nation-wide agency settlement which not only resolved the many employment

discrimination complaints subsumed by the class action, but also provided injunctive relief in the

form of Job Fairs and various development opportunities, and was the product of years of work

and a tremendous investment of time and money by the USDA, its counsel, and the class alike;

(b) it was approved and has been repeatedly deemed to be fair and equitable by the U.S. Equal

Employment Opportunity Commission ("EEOC"); (c) it is fair and reasonable on its face; and

(d) only a handful of the more than 2000 class action members have complained about the

agreement.  In the alternative, summary judgment should be granted for Defendant because there

are no genuine issues in dispute and Defendant is entitled to judgment as a matter of law.

## <u>STATEMENT OF FACTS AND PRIOR PROCEEDINGS</u>[3]

**I.    The Filing and Resolution of the <u>Basu</u> Class Action (in which Plaintiff Participated), How He was Notified of Both the Proposed Settlement of that Action and His Rights to Object to it Prior to its Finalization, and How he Sat on His Rights to So Object**

Plaintiff, Dr. Krishna Murthy, has been employed by the USDA since February 10, 1980.

<u>See</u> Am. Compl. ¶ 3.  He is currently employed as a Senior Staff Officer/Veterinarian, as a GS-

14/Step 10, in the USDA's Food Safety and Inspection Service ("FSIS").  <u>See</u> Am. Compl. ¶ 5.

On November 18, 1999, a USDA employee named Dr. Arun Basu filed a formal

_____

[2]  Plaintiff only seeks recision of the agreement as to himself.  <u>See</u> Am. Compl. ¶ 20.A. (prayer for relief, paragraph is misnumbered ¶ 30).  Accordingly, Plaintiff does not seek, and the Court should not consider, overturning of the entire <u>Basu</u> agreement.

[3]  Substantiation for the factual assertions made in this section of the brief can be found not only in the documents which are attached as exhibits 1-31, but also in the attached Declaration of Steven C. Brammer.  <u>See</u> Ex. 32 ("Brammer Decl.").

complaint of employment discrimination with the EEOC on behalf of a proposed Class of Asian/Pacific Islander employees of the Agency at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) been stripped of managerial duties and responsibilities; (5) had not been selected for a position with managerial duties or responsibilities; (6) had been subjected to reprisal for filing a complaint(s); (7) had filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint.  This action was captioned <u>Arun Basu, et. al. v. Veneman</u>, EEOC No. 100-A1-7863X, Agency No. 000190 ("<u>Basu</u> class action").  <u>See</u>, <u>e.g.</u>., Exhibit ("Ex.") 2, October 31, 2003 Settlement Agreement for the <u>Basu</u> class action ("<u>Basu</u> agreement") at 1-2 (describing the procedural history of the <u>Basu</u> class action); <u>see also</u> Am. Compl. ¶ 7.  The procedural history of that action, and Plaintiff's participation in it, is central to this case.

Although class certification was initially at issue during the administrative appeals process, a class was ultimately certified, albeit one defined in a slightly different manner than had originally been contemplated.  <u>See</u>, <u>e.g.</u>, Ex. 2, <u>Basu</u> agreement at 2.  In October 2003, the USDA and the class agents entered into a lengthy and comprehensive Settlement Agreement resolving the <u>Basu</u> class action.  <u>See</u>, Ex. 2, <u>Basu</u> agreement.  For purposes of the settlement agreement, the class was defined as "'[a]ll current Asian/Pacific Islanders employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected."  <u>See</u> Ex. 2,  <u>Basu</u> agreement at 2-3, ¶ 4; Am. Compl. ¶ 7.

The USDA committed in the <u>Basu</u> agreement to provide several forms of injunctive

4

relief, which was in effect for a period of three years.[4]  For purposes of individual relief, the class

was divided into four tiers.  See Ex. 2, Basu agreement at 13-14, §§ VII.A-VII.D.  Tier One was

comprised of six Class Agents whose claims would be separately resolved by the Agency.  See

Ex. 2, Basu agreement at 13-14, § VII.A.  Plaintiff was one of six Class Agents separately listed

in Tier One of the Basu class action settlement agreement as receiving separate monetary and

injunctive relief.  See Ex. 2, February 17, 2004 Letter to Plaintiff; see also Ex. 4, December 7,

2004 Decision Granting Final Approval of Settlement Agreement at 4.

      Tier Two was comprised of the remaining 22 Class Agents, who would receive different

relief under the agreement.[5]  Tier Three was comprised of individuals with pending

administrative complaints subsumed by the Class Action and two individuals with complaints

pending in Federal district court.  The Basu agreement provided for different relief for each of

---

    [4]  Specifically, the USDA agreed to the following: (1) to create a Development
Opportunity Placement Program ("DOPP") to provide opportunities for all eligible and qualified
employees to serve on details, receive temporary promotions, or participate in developmental
assignments where there may be staffing shortages in headquarters and field office locations;
(2) to create a Graduate Scholarship Program to provide funding for graduate school, and to hold
an Agency-wide Job Fair at four regional locations for employment in job categories where the
Agency's Asian/Pacific Islander population is statistically under-represented; (3) to review,
update, and issue an Agency-wide Affirmative Employment Plan ("AEP") to ensure that all
appropriate issues related to Class Members are addressed, and the assurance that Departmental
sub-agencies have current and comprehensive AEPs, as well; (4) to provide updated individual
development plans at the request of Class Members and (5) to undertake  employment
compliance reviews for sub-agencies showing statistical under-representation of Asian/Pacific
Islander employees.  See, Ex. 2, Basu agreement at 5, 7-13, §§ B.1, IV.B, IVD., VI.1-VI.5.

    [5]  Specifically, the members of Tier Two will share in a lump sum payment of $372,500,
to be distributed at their discretion, along with two former Class Agents who are not included in
the Agreement because they previously signed settlement agreements resolving their individual
complaints.  See Ex. 2, Basu agreement at 14, § VII.B..  The Agreement provides that each of the
five Tier Two class Members with pending administrative complaints will receive attorney's fees
not to exceed $25,000, and that two Tier Two Class Agents with Federal district court complaints
will receive all attorney's fees.  See Ex. 2, Basu agreement at 15, § VII.E..

these two groups of Tier Three individuals.[6]

    The <u>Basu</u> agreement was intended to resolve the subsumed administrative claims of the

class agents and members.  Thus, it explicitly provided that "[a]ny [c]lass [a]gent or [c]lass

[m]ember who, at the [e]ffective [d]ate, has a pending formal individual EEO complaint of

discrimination on the basis of race or national origin as to non-selection or promotion must

withdraw his or her EEO complaint within fifteen (15) days of the Effective Date of this

Agreement."  <u>See</u> Ex. 2, <u>Basu</u> agreement at 5-6, § III, ¶ A.1.  The <u>Basu</u> agreement further

provided that "[a]ny [c]lass [a]gent or [c]lass member who, at the Effective Date of this

agreement, has a pending Federal District Court complaint or appeal in a Federal Circuit Court of

Appeals on the basis of race or national origin as to non-selection or promotion must show proof

of withdrawal of the complaint . . . or withdrawal of the appeal . . . within fifteen (15) days of the

Effective Date of this Agreement."  <u>Id</u>. at 6, ¶ A.2.  The "Effective Date" of the <u>Basu</u> agreement

was defined by that agreement to mean "180 days from the date of approval from the EEOC

Administrative Judge of this Agreement."  <u>Id</u>. at 3, ¶ 7.  The agreement also set forth detailed

procedures to be followed in the event that any party to the agreement concluded that another had

failed to perform its obligations under the agreement.  <u>See</u> Ex. 2, <u>Basu</u> agreement at 15-17, § VIII

---

    [6] Specifically, the Tier Three individuals with pending administrative complaints
subsumed by the Class Action will be afforded the option of either accepting a lump sum of
$5,000, or participating in an expedited hearing on their individual complaints, along with an
entitlement to injunctive relief.  <u>See</u>, Ex. 2, <u>Basu</u> agreement at 14, § VII.C..  The two Tier Three
individuals with pending Federal District Court complaints will receive a lump sum payment of
$7,500 and attorney's fees.  <u>See</u> Ex. 2, <u>Basu</u> agreement at 14, § VII.C..  Tier Four was comprised
of those Class Members who do not have pending individual complaints of employment
discrimination subsumed by the Class Action.  <u>See</u> Ex. 2, <u>Basu</u> agreement at 14, § VII.D..  The
Agreement provides that these individuals will be entitled to certain specified injunctive relief.

(which is entitled "Enforcement"), ¶¶ A-G.

On November 17, 2003, the parties to the <u>Basu</u> class action submitted the proposed

settlement agreement and a Joint Motion for Approval of Settlement Agreement to the presiding

EEOC Administrative Judge ("AJ").  On January 21, 2004, the presiding AJ, Andrew

Culbertson, granted preliminary approval of this proposed Settlement Agreement.  <u>See</u> Ex. 1,

January 21, 2004 Order in <u>Basu</u>, <u>et. al.</u> v. Veneman, EEOC No. 100-A1-7863X, Agency No.

000190.  In his order, AJ Culbertson instructed that "[p]ursuant to 29 C.F.R. § 1614.204(g)(4)

(2004), the Agency shall, consistent with the manner proposed in the motion, notify all class

members of the resolution of the above-captioned [case] within ten (10) days of the date of this

Order," and observed that the "the motion [had] propose[d] that certain identified class members

will be provided notice by regular mail, and that notice will also be posted on the Agency's

website and in appropriate Agency bulletins."  <u>Id.</u> at 1.  The order also advised that "the

regulations provide that the administrative judge will review the notice of resolution, any

petitions to vacate which are filed, and then determine whether the resolution is 'fair, adequate

and reasonable to the class as a whole.'"  <u>Id.</u> at 1 (citing 29 C.F.R. § 1614.204(g)(4)).  Thus, the

AJ explained that "[i]f the undersigned [Administrative Judge], after reviewing any petitions that

are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole,

he will issue a decision to that effect which will thereby make the resolution binding on all class

members."  <u>Id.</u> at 1-2.  Finally, the order required the parties to modify provision six of the

proposed agreement to provide, in part, that "[w]ithin <u>30 days of the date of the notice of</u>

<u>resolution</u>, any member of the class may petition the undersigned Administrative Judge to vacate

the proposed resolution because it benefits only the class agents, <u>or is otherwise not fair,</u>

adequate and reasonable to the class as a whole," and to describe the process that would be followed if any such petitions were timely filed.  See id. at 2 (emphasis added).

On January 26, 2004, the parties filed a Joint Motion which reflected the AJ's order, indicated that they had corrected a clerical error in the proposed settlement agreement, and stated that the "Agency ha[d] incorporated the Administrative Judge's language for section 6 of the proposed notice to replace the prior language."  See Ex. 1, January 26, 2004 Joint Motion for Approval of Revised Notice of Settlement and Stay of Deadline to Send Notice Pending Order. In response to that Motion, on January 27, 2004, the AJ issued an order granting the Joint Motion the parties had filed on January 26, 2004, and granting preliminary approval of the revised notice of resolution.  See Ex. 1, January 27, 2004 Order Approving Notice of Settlement.  The January 27, 2004 order instructed that the Agency shall, consistent with the manner proposed in the motion, notify all class members of the resolution of the above-captioned [case] within twenty (20) days of the date of this Order (mailing should be postmarked within that time frame)" and noted that the "the motion [had] propose[d] that certain identified class members will be provided notice by regular mail, and that notice will also be posted on the Agency's website and in appropriate Agency bulletins."  See id. at 1, n. 1.

On February 17, 2004, the USDA's Office of the General Counsel ("USDA's OGC" or "OGC") sent a letter to the Plaintiff, Dr. Krishna Murthy, notifying him of "the proposed settlement agreement signed by the USDA and the Class Agent Arun Basu on behalf of himself and the Class Members."  See Ex. 2, February 17, 2004 Letter from Arlean Leland, Associate General Counsel of the USDA's OGC's Civil Rights Division, to Plaintiff; Ex. 32, Brammer Decl. ¶¶ 21-31.  The letter explained that the parties determined that his claims fell "within Tier

One of the proposed Settlement Agreement." <u>See</u> Ex. 2. Accordingly, the letter advised that:

> . . . it is proposed that you will receive the following for settlement of pending claims of employment discrimination:
>
> a.   Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all pecuniary and non-pecuniary damages;
>
> b.   Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical Officer, Office of Program and Policy and Policy Development, New Technology Staff;
>
> c.   Office of Personnel Management Leadership Training to be determined within 60 days of a signed settlement agreement; and
>
> d.   Reasonable attorney's fees to be paid according to Section VII E of the proposed settlement Agreement.

<u>See id</u>. The letter further indicated that "[o]ther details regarding the Settlement Agreement, including injunctive relief and information about how to contact Class Counsel or the Administrative Judge is attached in Notice required by the U.S. Equal Employment Opportunity Commission ("EEOC") under 29 C.F.R. § 1614.204(e)." <u>Id</u>.

The February 17, 2004 letter was mailed with two enclosures: (1) a document captioned "Notice of Settlement," and (2) a signed copy of the settlement agreement in the Basu class action, dated October 21, 2004. <u>See</u> Ex. 2 (Notice of Settlement, Settlement Agreement); Ex. 32, Brammer Decl. ¶¶ 24-31. The Notice of Settlement informed all recipients that "[y]ou are hereby notified that you have been identified as a potential Class Member in the above mentioned Class Complaint," in the <u>Basu</u> class action. <u>See id</u>. The Notice also provided extensive and detailed information, pursuant to 29 C.F.R § 1614.204(e), about the class action and proposed settlement agreement. <u>See</u> Ex. 2, Notice of Settlement at 1-5.[7] With regard to the individual relief to be

---

[7] The information provided: (1) the name of the agency and its location; (2) a description of the issues accepted as part of the Class complaint; (3) an explanation of the "binding nature of

provided to the members of Tier One, the Notice explained that "[t]he Parties agree that the six

(6) Class Agents listed in Exhibit 1 have individual claims of employment discrimination which

shall be resolved by the [t]erms of [i]ndividual [s]ettlement [a]greements," and noted that the

"[o]ffer of [r]elief" to the members of this tier would consist of "[i]ndividual [a]greements sent

to individual Class Members, and injunctive relief." Id. at 3.   The Notice cautioned that the

Settlement Class Members had two options:

> A.   You may do nothing and you will remain a Class member and be both entitled to and bound by the terms of equitable and injunctive relief set out in the Settlement if it is approved under 29 C.F.R. § 1614.204(g).
>
> B.   You may object to the Settlement, if you follow the instructions for Fairness Hearing and Process for Objections that is set forth below.

Id. at 4 (emphasis added).   Concerning this second option, the Notice explained the following:

> 6.   Fairness Hearing and Process for Objections
>
> Within 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents or is otherwise not fair, adequate and reasonable to the class as a whole.   Petitions are to be filed with Administrative Judge Andrew Culbertson, at 1400 L Street, N.W., Suite 200, Washington, D.C. 20005.   In the event the Administrative Judge determines that there are legitimate questions raised concerning the fairness, adequacy, or reasonableness of the resolution, a Fairness Hearing will be scheduled to address those questions.   If the Administrative Judge, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole, he will issue a decision to that effect which will thereby make the resolution biding on all the class members.

See id. at 5, ¶ 6.

---

the resolution of the complaint on Class Members"; (4) a description of the scope of individuals included in the Settlement Class and the terms of the settlement, including individual and injunctive relief to be afforded each of the four tiers under the Settlement Agreement; and (5) contact information for counsel for both parties.   See Ex. 2, Notice of Settlement at 1-5.

The USDA's OGC sent the February 17, 2004 letter, and the enclosed Notice of Settlement and copy of the October 31, 2003 Settlement Agreement, to Plaintiff via U.S. mail and also via FedEx with confirmation of receipt.  See Ex. 2, Shipping Label and February 18, 2004 E-Mail from Fed Ex to Mr. Brammer of USDA's OGC; Brammer Decl. ¶¶ 30-31.  The FedEx confirmation information indicates that this material was delivered to Plaintiff's address on record with the Agency on February 18, 2004, and that the package was signed for.  Id.  Thus, on that date, Plaintiff was provided with notice of the proposed settlement and how to object, and was provided with a copy of the Basu agreement itself.

On April 1, 2004, Plaintiff was again put on notice of the settlement of the Basu class action.  On that date, he was among the recipients of an e-mail from J. Rasekh to the Co-Chairs and Members of the Asian American Pacific Islander Council, which referenced the "recent OSAAA Class Action Settlement by USDA/EEOC," as well as an e-mail response from Virginia C. Lewis of the USDA.  See Ex. 3; Brammer Decl. ¶ 32.

Ten objections were ultimately filed with EEOC Administrative Judge ("AJ") Culbertson by the following Class Members: Jamshyd Rasekh, Jess Rajan, Kunapuli Madhusudhan, Muhammad Chaudry, Emiko Purdy, Fazal Rahman, Mon Yee, Robert Tse, Clemen Gehrlan, and Abdul Sadiq.  See Ex. 4, Decision Granting Final Approval of Settlement Agreement at 2, n. 1.  Plaintiff was not among the Basu class action members who filed objections at that time.  See id. at 2, n. 1.  The objections that were filed with AJ Culbertson complained, among other things, that "the class agents were getting too much relief and/or that class members in the lower tiers of the Agreement were not getting enough; [that] the Agreement does not explicitly identify the relief being received by certain class agents" and that the Agreement was "unclear" about "how

11

certain relief was to be allocated." See id. at 2, n. 1.

On December 7, 2004, AJ Culbertson issued a decision granting final approval of the Basu agreement. See Ex. 4. After summarizing the procedural history of the agreement and carefully considering the relief afforded the various class members under the agreement and the written objections, AJ Culbertson concluded "that the Basu Agreement is "fair, adequate, and reasonable to the Class as a whole" and he found "no basis for vacating the Settlement Agreement." Id. at 12. He approved the form, content, and method of distribution of notices of the Basu agreement. See Ex. 4 *generally*. Accordingly, AJ Culbertson granted final approval to the Class, and ruled that the resolution would bind all members of the Class. Id. at 12.

AJ Culbertson explicitly noted in his opinion that Plaintiff was among six Class Agents who belonged to Tier One and outlined the specific relief he would receive under the agreement. Id. at 4-5. AJ Culbertson also addressed and rejected the objections that had been lodged by other class members, but not by Plaintiff who had wholly failed to object. See id. at 9-10. With specific respect to the issue of whether the relief afforded the Tier One Class Agents was fair, AJ Culbertson noted that "every Class Member was aware of the relief that s/he is entitled to under the Agreement," and "[t]herefore, if a Class member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief." Id. at 10.

On May 25, 2005, USDA's OGC sent Plaintiff a letter reminding him that, "[i]n February 2004, you were . . . notified of the proposed Settlement Agreement signed by [USDA] . . . and Lead Class Agent Arun Basu," and informing him that the EEOC's Administrative Judge had "approved the Settlement Agreement, finding it fair, adequate, and reasonable to the class as a

12

whole." See Ex. 5, May 25, 2005 Letter.  The letter further advised Plaintiff that "the full

Commission recently ruled on four purported appeals of the Administrative Judge's fairness

determination" and had "affirm[ed] the Administrative Judge's determination." Id.  In addition,

the letter explained to Plaintiff yet again that "[y]ou were identified as falling within Tier One of

the proposed Settlement Agreement" and that, "[a]s a result, you will be entitled to injunctive

relief as described in the Settlement Agreement, and will receive the following individual relief

for withdrawal of all pending claims of employment discrimination." See id. at 1-2 (describing

the individual relief Plaintiff would receive under the agreement).

Enclosed with the letter was a copy of the individual settlement agreement between

Plaintiff and the USDA.  See Ex. 5, May 25, 2005 Letter; see also Ex. 5, Settlement Agreement

between Plaintiff and USDA.  Plaintiff was instructed in the letter to "execute this Agreement,

with your attorney, and have it returned to the OGC . . . by June 1, 2005." See Ex. 5, May 25,

2005 Letter at 2 (emphasis in original).  However, Plaintiff never executed an individual

settlement agreement.  Instead of pursuing the procedures set forth in the Basu agreement

available to class members who wished to challenge actions alleged to be in non-compliance

with the Basu agreement, Plaintiff devoted nearly a year to a campaign, carried on in person and

via phone, e-mail, and letters, aimed at convincing USDA officials that the Basu agreement was

unfair to him, had not been implemented as written, and should be modified or overturned.

On or about June 10, 2005, James P. Hood, the Class Counsel for the Basu action,

informed USDA's OGC that Plaintiff was the only one of the Tier One  members who desired to

pursue complaints of discrimination filed after September 2, 2003.  See Ex. 6, Letter dated June

13, 2005 from Steven Brammer to Mr. Hood.  It was the USDA's understanding at that time that

Plaintiff intended to resolve those claims subsumed by the <u>Basu</u> agreement which were pending

as of September 2, 2003. <u>Id</u>. In an exchange of e-mail messages, on June 15, 2005 and June 16,

2005, USDA's OGC confirmed that Plaintiff was available to receive and review a newly-revised

individual agreement resolving his employment discrimination claims. <u>See</u> Ex. 7.

II.    **Plaintiff Initially Praised the <u>Basu</u> Agreement, then Spent Several Months Complaining to USDA Staff About First the Fairness and Then the Implementation of the Agreement, Rather Than Following the Procedures for Such Challenges Set Forth in the Notice of Proposed Settlement and the Agreement Itself**

On July 19, 2005, Lead Class Agent Dr. Arun Basu, in his capacity as historian of the

Organization of South Asian Americans in Agriculture ("OSAAA"), sent Mr. Steven Brammer

of USDA's OGC an e-mail inviting him to a "[s]pecial [l]uncheon" to be held on July 28, 2005,

sponsored by the OSAAA, to "honor and thank key individuals responsible for the fair and

equitable resolution of the Asian class complaint." <u>See</u> Ex. 30. Prior to July 28, 2005, the date

of the luncheon, Plaintiff himself sent Mr. Brammer a similar letter in which he "cordially

invited" Mr. Brammer  to a "[s]pecial [l]uncheon" sponsored by the OSAAA to "specifically

honor and thank the key individuals responsible for the fair and equitable resolution of the Asian

class complaint." <u>See</u> Ex. 31 (also noting that "[t]he Asian employees recognize that the without

the sustained effort by some individuals . . . this success would not have been possible.")

Between September 22, 2005 and May 4, 2006 however, Plaintiff exchanged a long series

of letters and e-mails with various USDA officials, and had a meeting with them. In those

written and in person communications, he expressed dissatisfaction with various aspects of the

<u>Basu</u> agreement and its implementations, and the USDA officials addressed each of his concerns

and arguments in detail. <u>See</u> Ex. 9; Ex. 10; Ex. 11; Ex. 12; Ex. 13; Ex. 14; Ex. 15; Ex. 16; Ex.

14

17; see also Ex. 32, Brammer Decl. ¶¶ 49-62 (describing this correspondence and the meeting in detail).

### III.    Plaintiff's Various Administrative Complaints and Appeals Concerning the Fairness and Implementation of the <u>Basu</u> Agreement, Whether He Received Notice of It, and Whether He was Entitled to Promotion to a GS-15 Position

During the same period that he was expressing dissatisfaction with the terms of the <u>Basu</u> agreement and its implementation to various employees of the USDA and USDA's OGC, Plaintiff was also filing numerous administrative complaints concerning whether the <u>Basu</u> agreement had been implemented as written, whether he received proper notice of it, and whether he was entitled to promotion to a GS-15 position.  <u>See</u> Statement of Material Facts ("SMF") ¶¶ 37-60 (describing some of Plaintiff's administrative complaints and appeals.)

## <u>ARGUMENT</u>

### I.    STANDARD OF REVIEW (Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56)

Defendant moves for dismissal under Rule 12(b)(1), as the Court lacks jurisdiction over several of Plaintiff's claims, and Rule 12(b)(6), as Plaintiff fails to state any claim upon which relief can be granted.  Plaintiff bears the burden of establishing subject matter jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>Oppermann v. U.S.</u>, 2007 W.L. 1748920, *2 (D.D.C. 2007); <u>A.N.S.W.E.R. Coalition v. Kempthorne</u>, 2007 W.L. 1703431, *4 (D.D.C. 2007); <u>Brady Campaign to Prevent Gun Violence v. Ashcroft</u>, 339 F.Supp.2d 68, 72 (D.D.C. 2004); <u>Rann v. Chao</u>, 154 F. Supp.2d 61, 64 (D.D.C. 2001), <u>aff'd</u>, 346 F.3d 192 (D.C. Cir. 2003); <u>Thompson v. Capitol Police Board</u>, 120 F. Supp.2d 78, 81 (D.D.C. 2000) (observing that "[on] a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of

persuasion to establish subject-matter jurisdiction by a preponderance of the evidence.")

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint. See, e.g., Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  Id.; Rann, 154 F. Supp.2d at 64 ("[t]he court is not required . . . to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations.")

Furthermore, a motion to dismiss brought pursuant to Rule 12(b)(6) should be granted if it is beyond doubt that a plaintiff can demonstrate no set of facts that supports his claim entitling him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  Although the plaintiff is given the benefit of all inferences that reasonably can be derived from the facts alleged in the complaint, the court need not accept inferences that are not supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the form of factual allegations.  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

It is well established that the burden of establishing a prima facie case "is not great," McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984), and that at the motion to dismiss stage the Plaintiff need only allege facts rather than establish them, since this Court will assume the alleged facts to be true.  See, e.g., Mobil Exploration v. Babbit, 913 F.Supp. 5, 9 (D.D.C. 1995).  However, without an allegation of facts that meets all elements of a cause of action, a

16

claim should be dismissed.  Cf. Saltz v. Lehman, 672 F.2d 207, 209 (D.C. Cir. 1982) (plaintiff's

failure to allege elements of equitable tolling required dismissal of complaint).

If matters outside the pleadings are considered, generally the motion shall be treated as

one for summary judgment under Rule 56.  Summary judgment is appropriate when the record

shows that no genuine issue exists as to any material fact and the moving party is entitled to

judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio,

475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In determining

whether a genuine issue of material fact exists, the trier of fact must view all facts, and

reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.

Matsushita, 475 U.S. at 587.  The mere existence of a factual dispute, however, will not defeat

summary judgment.  The non-moving party must show that the dispute is genuine and material to

the case.  That is, the factual dispute must be capable of affecting the substantive outcome of the

case and supported by sufficiently admissible evidence that a reasonable trier of fact could find

for the non-moving party.  Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d

1236, 1242-43 (D.C. Cir. 1987).  If the evidence favoring the non-moving party is merely

colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477

U.S. at 249-50 (citations omitted).  "[A] complete failure of proof concerning an essential

element of the non-moving party's case necessarily renders all other facts immaterial[,] [and]

[t]he moving party is 'entitled to judgment as a matter of law.'"  Celotex, 477 U.S. at 323.

Moreover, Rule 56 does not require the moving party to negate the non-movant's claim or

to show the absence of a genuine issue of material fact.  Id. at 323.  Rather, when the movant

17

files a properly supported summary judgment motion, the burden shifts to the nonmoving party

to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The

non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt

as to the material facts," Matsushita, 475 U.S. at 586, or with "conclusory allegations,"

"unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37

F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is not a disfavored procedural shortcut, but

rather is an integral part of the overall design of the rules of civil procedure, which is to secure

the just, speedy, and inexpensive determination of every action. See Celotex, 477 U.S. at 327.

## II.    This Action Belongs in the Court of Federal Claims as It Mostly Makes Contractual Claims and Seeks Over $10,000 in Relief, and thus this Court Lacks Jurisdiction

Plaintiff's amended Complaint primarily concerns itself with the lawfulness of the Basu

agreement under Title VII and the various ways in which the USDA has purportedly failed to

comply with that agreement. For example, count one of the amended Complaint alleges that

Plaintiff experienced discrimination and retaliation in violation of Title VII, when Defendant

supposedly "provid[ed] him significantly less relief than other class agents" and "fail[ed] to

provide him notice of his right to file an objection to the class action settlement agreement." See

Am. Compl. ¶ 17. It is clear that Plaintiff believes that the alleged failure of the USDA to

provide him with notice of the agreement and of his right to object to it both were breaches of the

contract. See, e.g., Am. Compl. ¶ 8 (stating that "[u]nder the [a]greement, class agents were to

be provided a copy of the Notice of Proposed Settlement, informing them that they had thirty

days in which to file objections to the administrative judge.") In count two of the amended

Complaint, which is specifically titled "[b]reach of [c]ontract," Plaintiff explicitly states that

18

"Defendant breached . . . expressed and implied contractual commitments to Plaintiff" in various ways, and that Plaintiff suffered damages as a direct and foreseeable result of that breach.  See Am. Compl. (Count II), ¶¶ 18-20.[8]  Elsewhere, Plaintiff goes out of his way to allege that the USDA breached the Basu agreement by, among other things, allegedly failing to develop a Development Opportunity Placement Program and failing to provide him with training at the Office of Personnel Management as required by that agreement.  See Am. Compl. ¶¶ 10, 12.[9]

Plaintiff's allegations concerning the lawfulness of the Basu agreement and the various ways in which the USDA supposedly breached the Basu agreement and his associated Title VII claims (along arguably with the rest of this action) must be dismissed for lack of jurisdiction.  As this Circuit has recognized, when a federal employee sues a federal agency challenging the lawfulness of or alleging a breach of a Title VII settlement agreement, and asserts additional Title VII claims, the Court of Federal Claims maintains exclusive jurisdiction over the breach-of-contract claims if the value of the claims exceed $10,000.  See, e.g., 28 U.S.C. § 1491(a)(1) (providing, in relevant part, that the United States Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon . . . any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort") (emphasis added); Greenhill v. Spellings, 482 F.3d 569, 574 (D.C. Cir. 2007) (noting that "[r]ecent Federal Circuit cases have . . . [made] clear that a contract dispute with the government, arising out of a matrix of statutes, does not become a suit

---

[8]  Paragraphs 19 and 20 of Plaintiff's amended Complaint are misnumbered Paragraphs 29 and 30.

[9]  As is explained elsewhere, Defendant strenuously denies all of these claims.

19

to enforce the statutes themselves merely because its resolution may require their construction");
id. at 575 (explaining that the Court of Federal Claims' holding "that the anticipation of statutory
issues cannot strip a contract case of its character of course fits the standard approach to
jurisdiction over claims founded on a specified legal basis, such as that stated in 28 U.S.C.
§ 1491(a)(1)"); id. at 575 (observing that "[w]e have held that even though Title VII might have
been the basis of a settlement agreement, a breach claim is a straightforward contract dispute"
and concluding that "[c]onsequently, we find that Greenhill's claim is a straightforward contract
dispute under the Tucker Act and that jurisdiction in the Court of Federal Claims is proper")
(internal citations omitted); Rochon v. Gonzales, 438 F.3d 1211, 1214 (D.C. Cir. 2006) (noting
that "[i]n two decisions of this court, issued after the district court's ruling in this case, we have
made clear that 'a claim for breach of a Title VII settlement agreement is a contract claim within
the meaning of the Tucker Act' and, therefore, for claims exceeding $10,000 jurisdiction belongs
with the Court of Federal Claims") (internal citations omitted); Hansson v. Norton, 411 F.3d 231,
232 (D.C. Cir. 2005) (noting that "[t]his court generally treats settlement agreements as contracts
subject to the exclusive jurisdiction of the Court of Federal Claims . . ."); Brown v. United
States, 389 F.3d 1296, 1297 (D.C. Cir. 2004) (holding that a claim for breach of a Title VII
settlement agreement is a contract claim within the meaning of the Tucker Act and thus should
have been brought in the Court of Federal Claims); Frahm v. U.S., 2007 WL 1829176, *3 (4th
Cir. 2007) (holding that the statutory waiver of sovereign immunity for Title VII suits against the
government "does not expressly extend to monetary claims against the government for breach of
a settlement agreement that resolves a Title VII dispute"); cf. Schaffer v. Veneman, 325 F.3d
370, 373 (D.C. Cir. 2003) (although settlement agreement resolved Equal Credit Opportunity Act

20

claim within district court's jurisdiction, claim seeking damages for breach of agreement arose under contract law rather than the Act).

The Court of Federal Claims has recognized this principle as well.  See, e.g., Taylor v. U.S., 73 Fed. Cl. 532, 542 (Fed. Cl. 2006) (finding that "Title VII's 'precisely drawn, comprehensive and detailed scheme of review' does not preclude this court's enforcement of settlement agreements arising from Title VII disputes") (internal citations omitted); id. at 544 (observing that "there is no case law from the Federal Circuit addressing whether the Court of Federal Claims can exercise jurisdiction over Title VII settlement agreements, and, if so, under what circumstances" but that "the court is persuaded . . . that the Court of Federal Claims can entertain actions to enforce Title VII settlement agreements."); Westover v. U.S., 71 Fed. Cl. 635, 638-40 (Fed. Cl. 2006) (holding that the Court of Federal Claims has jurisdiction over claims that the government has breached an agreement settling Title VII discrimination claims, and it is not necessary for such jurisdiction that the agreement be money mandating); id. at 639 (noting that "Title VII itself does not provide a remedy for a breach of contract that occurs incident to settlement of a Title VII claim, nor does it prescribe the proper forum for litigating such a breach of contract").

The Tucker Act gives district courts original jurisdiction concurrent with the Federal Court of Claims only for contractual claims against the United States up to $10,000.  See 28 U.S.C. § 1346(a)(2); see also Greenhill, 482 F.3d at 572; Waters v. Rumsfeld, 320 F.3d 265, 270 (D.C. Cir. 2003).  Any such  claim which exceeds the $10,000 jurisdictional ceiling however is within the *exclusive* jurisdiction of the Court of Federal Claims.  See 28 U.S.C. § 1491(a)(1); Greenhill, 482 F.3d at 572; Sharp v. Weinberger, 798 F.2d 1521, 1523 (D.C. Cir. 1986); Goble v.

21

<u>Marsh</u> 684 F.2d 12, 15 (D.C. Cir. 1982) (when Plaintiff's claims related to backpay will result in an aggregate claim of more than $10,000, the district court lacks jurisdiction).

The plain language of a complaint does not necessarily settle the question of Tucker Act jurisdiction.  See <u>Kidwell v. Dep't of the Army, Bd. for Correction of Military Records</u>, 56 F.3d 279, 284 (D.C. Cir.1995) (citing <u>Megapulse, Inc. v. Lewis</u>, 672 F.2d 959, 967-68 (D.C. Cir. 1982)).  "This is because plaintiffs can bypass Tucker Act jurisdiction by converting complaints which 'at their essence' seek money damages from the government into complaints requesting injunctive relief or declaratory actions."  See <u>Kidwell</u>, 56 F.3d at 284 (citing <u>Megapulse</u>, 672 F.2d at 968).  Because this forum shopping circumvents a primary purpose of the Act - to ensure that a central judicial body adjudicates most claims against the United States Treasury, the Court of Appeals has stated that "'[j]urisdiction under the Tucker Act cannot be avoided by . . . disguising a money claim' as a claim requesting a form of equitable relief."  See <u>Kidwell</u>, 56 F.3d at 284 (internal citations omitted); <u>see also</u> <u>Heller, Ehrman, White & MacAuliffe v. Babbitt</u>, 992 F.2d 360, 363 (D.C. Cir.1993) (Plaintiffs "may not, by creatively framing their complaint, circumvent a congressional grant of exclusive jurisdiction."); <u>Vietnam Veterans of America v. Sec'y of the Navy</u>, 843 F.2d 528, 534 (D.C. Cir.1988) (recognizing the Tucker Act's interest in uniformity); <u>United States v. Hohri</u>, 482 U.S. 64, 71-73 (1987) (describing goal of uniformity behind creation of Federal Circuit);  <u>Van Drasek v. Lehman</u>, 762 F.2d 1065, 1071 n. 11 (D.C. Cir. 1985); <u>Olympic Fed. Sav. and Loan Ass'n v. Director, Office of Thrift Supervision</u>, 1990 W.L. 134841, *7 (D.D.C. 1990) (observing that "Plaintiff cannot avoid the Tucker Act merely by alleging that damages will be inadequate or by requesting specific relief.")

To enforce this prohibition on the creative drafting of complaints, the Court of Appeals

has instructed that courts are to look to the complaint's substance, not merely its form.  See, e.g.,

Kidwell, 56 F.3d at 284.  Absent other grounds for district court jurisdiction, a claim is subject to

the Tucker Act and its jurisdictional consequences if, in whole or in part, it "explicitly or in

essence" seeks more than $10,000 in monetary relief from the federal government.  See, e.g.,

Greenhill, 482 F. 3d at 573 (noting that if a Plaintiff "explicitly or in essence seeks money

damages in excess of $10,000, jurisdiction rests exclusively with the Court of Federal Claims")

(emphasis added and internal citations omitted); Kidwell, 56 F.3d at 284; Megapulse, 672 F.2d at

967-68; Rochon v. Gonzales, 438 F.3d 1211, 1214 (D.C. Cir. 2006) (observing that "the

combination of a claim for equitable relief brought under Title VII and a related claim for breach

of contract does not give the district court jurisdiction over the contract claim that, if brought

separately, would be exclusively in the Court of Federal Claims."); Daniels v. United States

Dep't of Interior, 56 F.3d 1531 (D.C. Cir. 1995); Van Drasek v. Lehman, 762 F.2d 1065, 1071 n.

11 (D.C. Cir. 1985) (finding that district court jurisdiction cannot be manufactured by

"disguising a money claim" as an equitable one).  The Court of Appeals has further instructed

that "[a]s long as the plaintiff's complaint only requests non-monetary relief that has

'considerable value' independent of any future potential for monetary relief . . . that is, as long as

the sole remedy requested is declaratory or injunctive relief that is not 'negligible in comparison'

with the potential monetary recovery, . . . we respect the plaintiff's choice of remedies and treat

the complaint as something more than an artfully drafted effort to circumvent the jurisdiction of

the Court of Federal Claims."  See Kidwell, 56 F.3d at 284 (emphasis added and internal

citations omitted).

Similarly, the Federal Circuit has held that where "the primary thrust of [a] complaint is

23

breach of contract, even if a [claim sounding in tort] would lie, the Claims Court would retain jurisdiction over the suit." See Wood v. United States, 961 F.2d 195, 198 (Fed. Cir. 1992); see also Awad v. United States, 301 F.3d 1367 (Fed. Cir. 2002) (it is "well established that where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the . . . jurisdiction of the Court of Federal Claims").

In this case, Plaintiff's amended Complaint repeatedly and explicitly alleges breaches of contract on the part of the USDA. See, e.g., Am. Compl. ¶¶ 10, 12, 18-20 (Count II).[10]  Although Plaintiff does not explicitly specify an amount in controversy in either his original or amended Complaint, he seeks forms of relief whose value clearly would greatly exceed $10,000, and he has not restricted the relief he is seeking to under this threshold in either pleading.[11]   Because Plaintiff in the instant case did not expressly disclaim monetary damages over $10,000, he cannot escape the jurisdictional effect of the Tucker Act. See, e.g., Goble v. Marsh, 684 F.2d 12, 17 (D.C. Cir. 1982) ("In cases involving waiver of claims against the government in excess of $10,000, the existence of jurisdiction in the District Court depends on the plaintiff's choice, as

---

[10]  Paragraphs 19 and 20 have been misnumbered paragraphs 29 and 30 in the amended complaint.

[11]  See, e.g., Original Complaint generally; Am. Compl. ¶¶ 17.C (portion of prayer for relief which asks the Court to place "Dr. Murthy in the position he was denied or a comparable GS-15 position and grant Dr. Murthy compensatory damages, including back pay and front pay and benefits against Defendant"), 17.D (seeking payment of fees, costs, expenses, attorney's and expert fees), 17.E (seeking "such other relief as to which he may be deemed entitled"), 20.A-C (asks the Court to "[a]ward Plaintiff damages in an amount equal to all of his accumulated lost wages and benefits in an amount to be determined at trial plus an additional amount for future lost wages, plus an additional amount in damages for the financial and emotional harm caused by Defendant, including prejudgment and postjudgment interest", and "payment of all fees, costs, expenses, including attorney[']s fees and expert fees," and "such other relief as to which he may be deemed entitled").

long as the waiver is <u>clearly and adequately expressed</u>.") (emphasis added); <u>see also</u> <u>Waters v.</u>
<u>Rumsfeld</u>, 320 F.3d 265, 271-72 (D.C. Cir. 2003).  Clearly, it cannot be said that Plaintiff's
amended complaint "<u>only</u> requests non-monetary relief" or that "the <u>sole</u> remedy requested is
declaratory or injunctive relief that is not 'negligible in comparison' with the potential monetary
recovery."  <u>See</u> <u>Kidwell</u>, 56 F.3d at 284 (emphasis added and internal citations omitted).  Its
"primary thrust" is clearly "breach of contract," even if Plaintiff has also alleged other types of
claims, including some cognizable as tort and Title VII claims.  <u>See</u> <u>Wood</u>, 961 F.2d at 198.
Thus, Plaintiff's action is subject to the Tucker Act and its jurisdictional consequences as it "in
essence" seeks more than $10,000 in monetary relief from the federal government.  <u>See</u>
<u>Greenhill</u>, 482 F. 3d at 573; <u>Kidwell</u>, 56 F.3d at 284; <u>Megapulse</u>, 672 F.2d at 967-68; <u>Heller</u>, 992
F.2d at 363; <u>Taylor</u>, 73 Fed.Cl. at 542; <u>Westover</u>, 71 Fed. Cl. at 638-40; <u>Wood</u>, 961 F.2d at 198.

Accordingly, the Court of Federal Claims maintains exclusive jurisdiction over Plaintiff's
claims that USDA breached the <u>Basu</u> agreement, that it was unfair, and that he was not
adequately notified of it, and these claims must be dismissed for lack of jurisdiction.  <u>Id.</u>; Fed. R.
Civ. P. 12(b)(1).  His claim that he experienced discrimination and/or retaliation in violation of
Title VII in connection with his non-selection for a GS-15 position in June and August 2006, <u>see</u>
Am. Compl. ¶¶ 13, 17, is the sole claim over which this Court has subject matter jurisdiction.
However, as is explained below, Plaintiff failed to exhaust this claim.  <u>See</u> infra at 34-37.

**III.    Plaintiff Failed To Properly Exhaust and Failed To Timely File His Claims in Court**

      **A.    Plaintiff Has Failed To Properly Exhaust His Claims that USDA Breached the <u>Basu</u> Agreement, Under Both the Regulations and the Agreement Itself**

Plaintiff alleges that the USDA has breached the <u>Basu</u> agreement in five major ways: (1) by failing to create a Development Opportunity Placement Program within 180 days of the effective date of the agreement; (2) by failing to provide Plaintiff Office of Personnel Management ("OPM") training; (3) "failing to inform" him "of the individual relief received by other class agents"; (4) "providing [him with] significantly less in the settlement agreement than [was received by] other class agents who were employed at the [a]gency"; and (5) "failing to provide [him] notice of the settlement agreement so that he could file objections to the settlement agreement in a timely manner." <u>See</u> Am. Compl. ¶¶ 10, 18.  Plaintiff does not and cannot dispute that he was timely provided with the $40,000 and the promotion to GS-14, Step 10 provided for under the <u>Basu</u> agreement.  <u>See</u>, <u>e.g.</u>, Am. Compl. *generally*; Ex. 17 at 3; Brammer Decl. ¶ 43.

The portions of Plaintiff's complaint which allege breaches of the <u>Basu</u> agreement were untimely under both the EEOC's regulations and the terms of the settlement agreement, and thus those portions of his Complaint should be dismissed on that basis.

It is well established that a federal employee may file a civil action only after exhausting his or her administrative remedies before the concerned federal agency.  <u>See</u> 42 U.S.C. § 2000e-16(c).  Under rulemaking authority delegated by Title VII, <u>see</u> 42 U.S.C. § 2000e-16(b), the EEOC has "established detailed procedures for the administrative resolution of discrimination

complaints, including a series of time limits for seeking informal adjustment of complaints, filing

formal charges, and appealing agency decisions to the Commission."  See Bowden v. United

States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal

Employment Opportunity).  Compliance with these procedures and timeliness is mandatory.

"Complainants *must* timely exhaust these administrative remedies before bringing their claims to

court."  Bowden, 106 F.3d at 437; Battle v. Rubin, 121 F. Supp. 2d 4, 7 (D.D.C. 2000) ("a party

must timely file all applicable administrative complaints and appeals in order to bring a claim in

federal court"); Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely

administrative charge is a prerequisite to initiation of a Title VII action"); Williamson v. Shalala,

992 F. Supp. 454, 457 (D.D.C. 1998) ("non-compliance with administrative deadlines will bar a

plaintiff from litigating his claims in court"), aff'd, 1998 WL 545420 (D.C. Cir. July 20, 1998),

cert. denied, 525 U.S. 915 (1998).  As the U.S. Supreme Court reiterated in Nat'l R.R. Passenger

Corp. v. Morgan, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements

specified by the legislature is the best guarantee of evenhanded administration of the law.'"  536

U.S. at 108 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).  Accordingly, the U.S.

Supreme Court has explicitly required that all discrete discriminatory and retaliatory acts be fully

exhausted as a prerequisite to suit.  See Nat'l R.R. Passenger Corp., 536 U.S. at 108.  Under Title

VII, courts have authority only to hear claims that are (1) contained in the plaintiff's

administrative complaint or claims "like or reasonably related" thereto, and (2) claims for which

the plaintiff exhausted administrative remedies.  Powell v. Castaneda, 390 F. Supp.2d 1, 8

(D.D.C. 2005) (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)).

    With regard to settlement agreements, when a complainant believes that an agency has

failed to comply with the terms of the agreement, he or she must "notify the agency's EEO

Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew

or should have known of the alleged noncompliance." See 29 C.F.R. § 1614.504(a).  The agency

shall resolve the matter and respond in writing.  See 29 C.F.R. § 1614.504(b).  If the complainant

is not satisfied with the agency's writing or the agency has failed to respond, the complainant

may appeal to the EEOC for a determination of whether the agency has complied with the

settlement agreement, but must do so within 30 days of his or her receipt of the agency's

determination.  Id.  Moreover, the regulations governing compliance with settlement agreements

provide that a complainant may request that "the terms of settlement agreement be specifically

implemented or, alternatively, that the complaint be reinstated for further processing from the

point processing ceased."  29 C.F.R. § 1614.504(a).  However, 29 C.F.R. § 1614.504 does not

authorize a complainant to file a Title VII action in district court.  See Hansson v. Norton, 411 F.

3d 231, 234 (D.C. Cir. 2005).  Thus, to the extent that Plaintiff seeks to initiate a Title VII action

based on the alleged breaches, under the applicable regulations, his claims must be dismissed.

On February 17, 2004, USDA mailed Plaintiff a package of materials which included a

letter, a Notice of Settlement, and a copy of the October 31, 2004 settlement agreement.  See Ex.

2; supra at 8-11.  That mailing contained extensive information concerning the precise terms of

the proposed Basu agreement, the individual relief Plaintiff would receive under it as a Tier One

member, and how and when he could object to its terms.  Id.  Plaintiff received and signed for

that package of materials on February 18, 2004.  See Ex. 2, Shipping Label and February 18,

2004 E-mail from FedEx to Steven Brammer of USDA's OGC; supra at 11.  On May 25, 2005,

USDA's OGC sent Plaintiff a letter which notified him that the Basu agreement had been

approved by an EEOC Administrative Judge on December 7, 2004, and again described the relief

to which he was entitled under the Basu agreement.  The letter enclosed a copy of the individual

settlement agreement between Plaintiff and the USDA.  See Ex. 5, May 25, 2005 Letter; supra at

9-10.  Thus, Plaintiff was arguably on notice of the provisions of the Basu agreement as early as

February 18, 2004, and certainly was by May 25, 2005.

Not until September 22, 2005 did Plaintiff complain of alleged breaches of the Basu

agreement, in a letter to the Branch Chief of USDA's FSIS Complaint Management Branch and

the Agency Liaison for the Basu Class Complaint.  See Ex. 9; Brammer Decl. ¶¶ 49-50.  He did

not however notify the agency's EEO Director, in writing, of the alleged noncompliance within

30 days of "when the complainant knew or should have known of the alleged noncompliance" as

he was required to do under 29 C.F.R. § 1614.504(a).  Although the regulations contemplate the

waiver of time limits under certain circumstances, see 29 C.F.R. § 1614.604(c), Plaintiff cannot

justify his untimeliness.  Therefore, under the regulations, any written complaint by Plaintiff to

Defendant concerning an alleged breach of the Basu agreement was untimely.

In addition to Plaintiff's untimeliness under the EEOC regulations, the portions of

Plaintiff's amended complaint which allege that the Basu agreement was breached were also

untimely under the terms of the Basu agreement itself.  The Basu agreement provided for a

lengthy six-step process to be followed in the event that any party to the agreement concluded

that another had failed to perform its obligations under the agreement.  See Ex. 2, Basu

agreement at 15-17, § VIII (which is entitled "Enforcement"), ¶¶ A-G[12].  Only at the conclusion

---

[12]  The Basu agreement provided, that first, "[a] party claiming failure to comply with the
provisions of this [a]greement at any time during its term will give written notice of the claim to

of this process, "[i]f, after completing the procedures set forth [above], the [p]arty asserting the

claim still believes compliance with the specific obligation has not been achieved, that party may,

after providing fourteen (14) calendar days' written notice to opposing counsel, pursue remedies

consistent with this section [i..e, section VIII of the Basu agreement]," with [v]enue for such a

claim" to "be in the EEOC." See id. at 16, § VIII, ¶ F.[13]

---

the Department Liaison and will propose a resolution of the issue" and "[a]t least five (5)
calendar days prior to the written notice, the Party claiming non-compliance shall orally inform
opposing counsel of the intended claim." See Ex. 2, Basu agreement at 15, § VIII, ¶ A. Second,
"the responding [p]arty will have thirty five (35) calendar days following receipt of the written
claim to respond, unless this period is enlarged by agreement of the [p]arties." Id. at 15, § VIII,
¶ B. Third, "[i]f the [p]arty asserting the claim is dissatisfied with the other [p]arty's response or
proposed resolution, or no response or proposed resolution is forthcoming within the stated time
period, the [p]arty asserting the claim may submit the issue in writing to the Department Liaison
for his/her consideration and recommendation," and that the "Department Liaison shall issue to
the Assistant Secretary for Civil Rights a tentative report and recommendation, if any, within
thirty-five (35) calendar days of receipt of the claim, unless the time is extended by the [p]arties
or by the Department Liaison." Id. at 15-16, § VIII, ¶ C. Fourth, "[i]f a [p]arty wishes to object
to the tentative report and recommendation of the Department Liaison, it must notify the other
[p]arty of its intent to file an objection, must meet and confer with the other [p]arty, and must
lodge the objection in writing with the Assistant Secretary for Civil Rights and the other [p]arty
within twenty-one (21) calendar days of the issuance of the tentative report and
recommendation." Id. at 16, § VIII, ¶ D. Fifth, "[t]he Assistant Secretary for Civil Rights shall
issue a ruling on the objection and issue a final report and recommendation within thirty five (35)
calendar days of the filing of the objection, unless the time is extended by agreement of the
[p]arties or by the Assistant Secretary for Civil Rights." Id. at 16, § VIII, ¶ D. Sixth, "[t]he
[p]arties shall be afforded a reasonable time to achieve compliance with the Assistant Secretary
for Civil Rights's final report and recommendation." Id. at 16, § VIII, ¶ E.

    [13] In any such proceeding, the Basu agreement provides that "the Department shall not be
found in breach of this Agreement, and the EEOC accordingly shall not order further relief if the
EEOC finds that the Department has substantially complied with [s]ections V and VI [which
govern "methods of implementation" and "injunctive relief," but not specific relief for the
various tiers]." See id. at 16, § VIII, ¶ G (emphasis added). "If however, the EEOC finds that
the Department is in breach, the EEOC may order specific enforcement of the provisions
contained in [s]ections V and VI, any alternative provisions agreed upon by the parties, and/or a
one-time, one-year extension of the Term of the Agreement." See id. at 16-17, § VIII, ¶ G. The
settlement agreement did not provide for waiver of the time limits under any circumstances.

However, Plaintiff clearly failed to exhaust this process.  He did not give verbal notice to "opposing counsel," USDA's Office of the General Counsel, of his claim of non-compliance five or more days before he gave "written notice of the claim to the Department Liaison" and "propose a resolution of the issue" to them.  See Ex. 2, Basu agreement at 15, § VIII, ¶ A.  Nor did he give USDA's Office of the General Counsel "thirty five (35) calendar days following receipt of the written claim to respond."  See id. at 15, § VIII, ¶ B.  Nor did he "submit the issue in writing to the Department Liaison for his/her consideration and recommendation," and/or wait for the Department Liaison to "issue to the Assistant Secretary for Civil Rights a tentative report and recommendation . . . within thirty-five (35) calendar days of receipt of the claim."  See id. at 15-16, § VIII, ¶ C.  Thus, Plaintiff was not authorized to proceed with his claims of non-compliance to the EEOC, much less to this Court with his claim, because he did not exhaust the procedures for enforcement which are set forth in the Basu agreement, section VIII.

Thus, because under both the EEOC's regulations and the Basu agreement itself Plaintiff's written complaint to Defendant concerning an alleged breach of the agreement was untimely, his allegations in this Court concerning any purported breaches should be dismissed, even if the Court finds that this action belongs here and not in the Court of Federal Claims.

> **B.     Because Plaintiff Knew the Terms of the Basu Agreement and How to Object to It but Failed to Properly and Timely Do So, He is Now Legally Bound by It and Should Not Be Heard to Now Complain about its Fairness**

The EEOC regulation which governs class complaints provides in relevant part that "[n]otice of [a proposed] resolution shall be given to all class members in the same manner as notification of the acceptance of the class complaint and to the administrative judge" and that it

"shall state that within 30 days of the date of the notice of resolution, any member of the class may petition the administrative judge to vacate the resolution because it benefits only the class agent, or is otherwise not fair, adequate and reasonable to the class as a whole." See 29 C.F.R. § 1614.204(g)(4). It further provides that "[t]he administrative judge shall review the notice of resolution and consider any petitions to vacate filed" and that "[i]f the administrative judge finds that the resolution is fair, adequate and reasonable to the class as a whole, the resolution shall bind all members of the class." Id.

As mentioned, Plaintiff and the other class members were mailed a Notice of Settlement on February 17, 2004, which provided extensive and detailed information, pursuant to 29 C.F.R § 1614.204(e), about the class action and proposed settlement agreement, about how and when to object to it, and about the consequences of failing to timely object to it. See Ex. 2.[14] The February 17, 2004 letter, and the enclosed Notice of Settlement and copy of the October 31, 2003 Settlement Agreement, were shipped to Plaintiff via U.S. mail and also via FedEx with confirmation of receipt. See Ex. 2, Shipping Label and February 18, 2004 E-Mail from FedEx.; Brammer Decl. ¶¶ 30-31. They were delivered to Plaintiff on February 18, 2004 and were signed for. Id. Thus, on that date, he was provided with notice of the proposed settlement and how to object, and was provided with a copy of the Settlement Agreement itself. Id. He nevertheless failed to timely file an objection with the AJ challenging the terms of subject settlement.

---

[14]  Consistent with 29 C.F.R. § 1614.204(g)(4), the Notice explained that "[w]ithin 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents or is otherwise not fair, adequate and reasonable to the class as a whole. . . ." See id. at 5, ¶ 6.

On December 7, 2004, AJ Andrew Culbertson issued a Decision granting final approval of the Settlement Agreement.  See Ex. 4.  In his decision, after summarizing the procedural history of the agreement and carefully considering the relief afforded the various class members under the Agreement and the written objections," AJ Culbertson concluded "that the Basu Agreement is "fair, adequate, and reasonable to the Class as a whole" and found "no basis for vacating the Settlement Agreement."  See id. at 12.  He approved the form, content, and method of distribution of notices of the Basu agreement.  See Ex. 4 generally.  Accordingly, he granted final approval to the Class, and ruled that the resolution would bind all member of it.  Id. at 12.

EEOC AJ Culbertson explicitly noted in his decision granting final approval of the Basu agreement that Plaintiff, Dr. Krishna Murthy, was among six Class Agents who belonged to Tier One and specific relief he would receive under the agreement.  Id. at 4-5.  In his decision, AJ Culbertson addressed and rejected the objections that had been lodged by other class members, but notably not by Plaintiff.  See id. at 9-10.  With specific respect to the issue of whether the relief afforded the Tier One Class Agents was fair, AJ Culbertson noted that "every Class Member was aware of the relief that s/he is entitled to under the Agreement," and "[t]herefore, if a Class member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief."  Id. at 10.  The Basu agreement is thus binding on Plaintiff.  See 29 C.F.R. § 1614.204(g)(4).  Plaintiff had an opportunity to challenge the Basu agreement within 30 days of the notice of resolution.  He failed to do so.  Because he sat on these rights, he should not now be heard to complain about the fairness of the agreement.  Because he knowingly and voluntarily entered into that agreement, he is now legally bound by it.  See 29 C.F.R. § 1614.504(a); In re Four Seasons Sec. Laws Litig., 502 F.2d 834, 844 (10th Cir. 1974) (noting

33

that "this is not the first time that a class member with notice has been bound by a judgment after

failing to take some affirmative action").

   **C.    Plaintiff Failed to Properly Exhaust his Claims Concerning his Allegations
          that the USDA Retaliated or Discriminated Against Him when it Denied him
          a Promotion to a GS-15 Level Position**

   The EEOC's regulations provide that "aggrieved" employees or applicants for

employment who allege they have been discriminated against must first consult an agency EEO

counselor before filing a complaint of discrimination and must do so within 45 days of the

"matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action."  See 29 C.F.R. § 1614.105(a)(1); Brown v. Gen. Servs. Admin., 425

U.S. 820, 832 (1976); Bowden, 106 F.3d at 437-38 (noting that a plaintiff will run afoul of

exhaustion requirements if he or she fails to bring a complaint to the attention of an EEO

counselor within the time limits prescribed by 29 C.F.R. § 1614.105(a)(1), i.e., within 45 days of

the alleged discriminatory action); Smith v. Dalton, 971 F. Supp. 1, 4 (D.D.C. 1997).  If the

matter is not resolved through informal counseling, the aggrieved employee must, within 15

days, file a written complaint with the agency that allegedly discriminated against him or her.  29

C.F.R. § 1614.106(a)-(d).  The agency must investigate the matter within 180 days or reject the

complaint and issue a final dismissal.  Id. at  § 1614.106(e).  At the conclusion of the agency's

investigation, the complainant may request a hearing before an EEOC administrative judge or an

immediate final decision by the agency.  Id. at § 1614.108(f).  If the employee chooses the

former, an EEOC administrative judge will conduct a hearing and make factual and legal

findings, which will be transmitted to the agency as a recommended decision.  The agency then

issues a final decision.  See id. at §§ 1614.109(g), 1614.110.

34

A complainant who receives a final adverse decision from the agency may appeal that decision to the EEOC within 30 days, see 29 C.F.R. § 1614.402(a), or may file a civil action within 90 days. See 29 C.F.R. § 1614.407. If the complainant appeals to the EEOC, she must file a civil action within 90 days of receiving the EEOC's decision. 29 C.F.R. § 1614.407; see also Wilson v. Pena, 79 F.3d 154 (D.C. Cir. 1996); Holly v. Sec'y of Veterans Affairs, 165 F.3d 244, 246 (3d Cir. 1999). A complainant also may file a civil action at any time after her complaint has been pending before the agency or the EEOC, without a final agency action, for at least 180 days. See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

Plaintiff has failed to properly exhaust his claims that he applied for GS-15 positions and was not selected for those positions for improper reasons, in June and August 2006. See Am. Compl. ¶¶ 13, 17. Plaintiff alleges that he filed administrative complaints concerning those non-selections in June and August 2006. See Am. Compl. ¶ 13. When the content and timing of Plaintiff's various administrative complaints are considered, it becomes clear that only two of them can conceivably form the basis of a claim that he applied for and was wrongfully not selected for a GS-15 position, in June and August 2006, leading to the filing of complaints in June and August 2006. Those complaints are Agency Complaint No. CRSD-CF-2006-02384 and Agency Complaint No. NRCS-2006-02124. See SMF ¶¶ 37- 60.[15] Plaintiff has not complied with the exhaustion requirements with regard to Complaint No. CRSD-CF-2006-02384, and

---

[15] For example, EEOC Complaint No. CRSD-CF–2006-00219 cannot form the basis of this claim because Plaintiff sought EEO counseling in that administrative complaint between February 4, 2006 and March 6, 2006, and filed his formal administrative complaint in March 2006, months before those alleged events. See Ex. 18, Part One.

cannot show that he applied for a specific GS-15 position based upon the information contained in Complaint No. NRCS-2006-2124.

Plaintiff filed his Formal Complaint in Complaint No. CRSD-CF-2006-02384 on August 17, 2006. <u>See</u> Ex. 21 at page 000011. The 180th day after Plaintiff filed his EEO complaint was February 6, 2007. He, however, filed his <u>original</u> complaint in this Court on December 26, 2006. <u>See</u> Docket Entry No. 1. Thus, one hundred and thirty-one (131) days passed between the filing of the administrative complaint and the <u>original</u> District Court complaint which initiated this action. A complainant who has filed an individual complaint is only authorized to file a civil action in an appropriate District Court "[a]fter 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken." <u>See</u> 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. Thus, Plaintiff failed to properly exhaust prior to bringing this claim in court.[16]

---

[16] <u>See</u>, <u>e.g.</u>, <u>Martini v. Federal Nat'l Mortgage Ass'n</u>, 178 F.3d 1336, 1338 (D.C. Cir. 1999) (remanding to district court with instructions to dismiss plaintiff's suit alleging retaliation and sexual harassment as untimely because "Title VII requires complainants to <u>wait 180 days before suing in federal court</u> so that the Commission may informally resolve as many charges as possible") (emphasis added); <u>id.</u> at 1347 ("[w]e . . . hold that Title VII complainants must wait 180 days after filing charges with the EEOC <u>before they may sue in federal court</u>" and referencing "Congress's unambiguous policy of encouraging <u>informal resolution of charges up to the 180th day</u>.") (emphasis added); <u>Kizas v. Webster</u>, 707 F.2d 524, 544 (D.C. Cir. 1983) (noting that Title VII "authorizes the <u>commencement</u> of a civil action once the agency has taken "final action" on the charging party's complaint or, if no "final action" is taken, after 180 days have elapsed from the filing of the "initial charge" with the agency") (emphasis added); <u>Jones v. Ashcroft</u>, 321 F.Supp.2d 1, 11 (D.D.C. 2004) (observing that "[t]he D.C. Circuit has recognized that the rationale behind Title VII's waiting requirements is <u>to give the Commission</u> time to informally resolve as many charges as possible.") (citing <u>Martini</u>, 178 F.3d at 1338) (emphasis added); <u>see also</u> <u>Powell v. Washington Metro. Area Transit Auth.</u>, 238 F.Supp.2d 160, 162, n .2 (D.D.C. 2002) (same); <u>Tesfaye v. Carr Park, Inc.</u>, 85 F.Supp.2d 37, 38 (D.D.C. 2000) (same); <u>Thompson v. Jasas Corp.</u>, 212 F.Supp.2d 21, 28 (D.D.C. 2002) (finding that former employee's failure to wait 180 days after filing retaliation claim with EEOC before bringing Title VII action in federal court deprived court of jurisdiction over claim)

The other administrative complaint filed by Plaintiff, NRCS-2006-02124, does not allege discrimination in non-selection to a GS-15 position, but rather dissatisfaction with the <u>Basu</u> agreement, and an allegation that Plaintiff should have received a GS-15 promotion as part of <u>Basu</u> relief.  As such, this administrative complaint does not provide Plaintiff with an entry into District Court for any discrimination or retaliation claim.  Plaintiff filed an informal complaint on May 17, 2006, alleging that the failure of the lead <u>Basu</u> class action Class Agent, Dr. Arun Basu, to provide a settlement agreement in 2004 did not allow Plaintiff to object to the relief provided. <u>See</u> Ex. 22.  Plaintiff wrote in his informal complaint that he "need[s] [his] promotion, which [he] lost due to Dr. Basu's action." <u>Id</u>.  Thus, Plaintiff's informal complaint does not allege that he applied for a GS-15 position, but, rather, reiterates allegations that he did not receive notice of the <u>Basu</u> agreement.  <u>Id.</u>; <u>see also</u> Ex. 23.  Indeed, Plaintiff's formal administrative complaint, filed on June 28, 2006, does not mention any specific GS-15 position to which he applied and was not selected.  <u>See</u> Ex. 22.  The EEO Counselor's report for this complaint does not identify a GS-15 position for which Plaintiff applied, but notes that his allegation was that he "did not have the opportunity to send in a rebuttal which deprived him of promotion to GS-15 position." <u>See</u> Ex. 24, EEO Counselor's Report at 2.  Therefore, Complaint No. NRCS-2006-02124 is irrelevant to Plaintiff's claims that the USDA retaliated or discriminated against him when it denied him a promotion to a GS-15 level position.

**IV.    This Court Should Not Overturn the Administrative Judge's approval of the <u>Basu</u> Settlement Agreement, Which is Fair, Adequate, and Reasonable**

Plaintiff argues that the <u>Basu</u> Settlement Agreement represents an unfair and discriminatory distribution of monetary and professional relief between the few Class Agents and

overwhelming majority of the rest of the Class. <u>See</u> Am. Compl. ¶¶ 17-18. Even assuming that

Plaintiff's challenge to the fairness of the agreement is timely, it still fails because in this case,

there is no basis for overturning the Administrative Judge's approval of the <u>Basu</u> Agreement.[17]

EEOC regulations do not identify the criteria for determining whether a class settlement

is fair, adequate, and reasonable. <u>See</u> 29 C.F.R. Part 1614. This court has ruled, in an analogous

context, that "[t]here is no single, obligatory test in this Circuit for determining whether the

proposed settlement of a class action should be approved" by a court under Federal Rule of Civil

Procedure 23(e). <u>See</u> <u>In re Vitamins Antitrust Litig.</u>, 2000 W.L. 1737867, *2 (D.D.C. 2000).

However, in that context, this court has noted that "'[t]he test is whether the settlement is

adequate and reasonable and not whether a better settlement is conceivable.'" <u>See</u> <u>id.</u> (internal

citation omitted). Furthermore, it has noted that a "'presumption of fairness, adequacy, and

reasonableness may attach to a class settlement reached in arm's length negotiations between

experienced, capable counsel after meaningful discovery.'" <u>See</u> <u>id.</u> (internal citation omitted).

For its part, the EEOC has held that, where as here, there is equitable relief that benefits more

than just the Class Agents, it can be used as evidence that the settlement is fair to the Class as a

whole. <u>See</u>, <u>e.g.</u>, <u>Modlin v. Social Sec. Admin.</u>, EEOC Appeal No. 01A24054 (Feb. 20, 2003)

("<u>Modlin</u>"), <em>available at</em> 2003 W.L. 660726 at *3-4.

Moreover, this court has observed that "[t]here is a strong public policy in favor of the

settlement of litigation, and "'[d]ecisions emphasizing the preferred role of settlements under

Title VII are legion.'" <u>See</u> <u>Stewart v. Rubin</u>, 948 F. Supp. 1077, 1086 (D.D.C. 1996) (internal

---

[17] As mentioned, Plaintiff only seeks recision of the agreement as to himself. <u>See</u> Am. Compl. ¶ 20.A. (prayer for relief). Accordingly, Plaintiff does not seek, and the Court should not consider, overturning of the entire agreement.

citation omitted).  Indeed, the Supreme Court has noted that this policy is particularly important in the resolution of cases brought under Title VII of the Civil Rights Act of 1964 because of the "strong preference" of Congress for "encouraging voluntary settlement of employment discrimination claims."  See Carson v. Am. Brands, 450 U.S. 79, 88, n. 14 (1981).  In Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974), the Supreme Court explained that "Congress enacted Title VII ... to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin . . . Cooperation and voluntary compliance were selected as the preferred means for achieving this goal."  See Alexander, 415 U.S. at 44 (quoted in Carson, 450 U.S. at 88, n. 14.)  Accordingly, "voluntary compromises of Title VII actions enjoy a presumption of validity ... and should therefore be approved unless they contain provisions that are unreasonable, unlawful, or against public policy."  See Stewart, 948 F.Supp. at 1086-87 (internal citations omitted).

A court should not withhold approval simply because the benefits accrued from a settlement agreement are not what a successful plaintiff might receive in a fully-litigated case. See United States v. Trucking Employers, Inc., 561 F.2d 313, 317 (D.C. Cir. 1977).  After all, a settlement is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed.  See Stewart, 948 F.Supp. at 1087.  It must be emphasized that although a settlement agreement does not provide complete satisfaction to all those it affects, this, in and of itself, is not enough to render it "unreasonable."  Id. (Internal citations omitted). "Unless this were the case, only in the most rare instances would a Title VII case be settled by proposed compromises which in turn would frustrate Congress's expressed preference for achieving Title VII compliance by voluntary means."  Id.  Likewise, the EEOC has recognized

39

that because settlements inherently involve compromise from both parties, a party should not

expect the agency to provide the full relief to which he would be entitled if the claim were

successfully litigated.  See Modlin, 2003 W.L. 660726 at *3.

In this case, as the EEOC Administrative Judge determined, every Class Member receives

some benefit under the Basu agreement, even if the Class Member did not file a complaint of

employment discrimination.  See Ex. 2, Basu agreement; Ex. 4.  The agreement provides for four

tiers of relief, entitling Class Members to a wide range of remedies including, but not limited to,

training, access to a scholarship program, a development opportunity placement program, job

fairs, review of sub-agencies' employment practices and procedures, promotions, and monetary

relief or the opportunity for an expedited administrative hearing.  See Ex. 2, Basu agreement at 5,

7-14, §§ B.1, IV.B, IV.D., V.1.-VI.5., VII.A.-VII.D; supra at 4-6 & n. 4 & n. 5 & n. 6.[18]

Only a relative handful of the more than 2000 beneficiaries of the agreement objected to

the proposed Basu agreement: only ten such objections were filed and Plaintiff was not one of

those individuals who filed objections.  See Ex. 4, Decision Granting Final Approval of

Settlement Agreement; supra at 11-12, 33-34.  Courts have approved settlements under rule 23(e)

to which a significantly greater percentage of the class objected than is the case here.[19]

---

[18]  Furthermore, Plaintiff was actually one of only four individuals who received
retroactive advancement as a remedy under the agreement.  See, e.g., Ex. 27, Purdy, 2005 W.L.
1130125 (May 3, 2005) at *6 (noting that "[w]hile the record reveals that this class consisted of
approximately 2,100 members, we note that only four of thirty named class agents actually
received retroactive promotion and/or advancement and reassignment as a remedy.")  Plaintiff
was one of six employees of USDA in Tier One who received the greatest individual relief as a
result of the settlement of the Basu class action, receiving more under the agreement than
individuals in Tiers Two, Three, or Four.  See Ex. 32, Declaration of Steven C. Brammer ¶ 87.

[19]  See, e.g., Reed v. Gen. Motors Corp., 703 F.2d 170, 174 (5th Cir.1983) (forty percent);
Cotton v. Hinton, 559 F.2d at 1333 (fifty percent); Bryan v. Pittsburgh Plate Glass Co., 494 F.2d

All of the administrative appeals alleging that the agreement was unfair were resolved by the EEOC by upholding the terms of the <u>Basu</u> agreement.[20]  As the Administrative Judge correctly noted, it is fair to provide greater relief to the Class Agents, as they are the individuals who have spearheaded the Class complaint of employment discrimination.  <u>See</u> Ex. 4, Decision Granting Final Approval of <u>Basu</u> Agreement at 12.  Such a result was consistent with EEOC precedent.  In <u>Modlin</u>, for example, the EEOC approved an administrative Class Action settlement under which the Class Agents received promotions while the Class Members received injunctive and some monetary relief.  <u>See Modlin</u>, 2003 W.L. at *4.  The fact that some <u>Basu</u> Class Agents received more relief based upon their participation in leading the Class Action does not indicate that the agreement was unfair to the class as a whole.

**V.    This Court Should Reject Plaintiff's Allegations that he was Not Given Notice of the <u>Basu</u> Agreement because He Clearly Received Such Notice**

Plaintiff claims that he did not receive proper notice of the <u>Basu</u> agreement and of his right to object to it, and that he was unaware of the approval of it prior to May 2005.  <u>See</u> Am.

---

799, 803 (3rd Cir. 1974) (twenty percent), *cert. denied*, 419 U.S. 900 (1974); <u>Boyd v. Bechtel Corp.</u>, 485 F.Supp. 610, 624 (N.D. Cal.1979) (sixteen percent); <u>Grant v. Bethlehem Steel Corp.</u>, 823 F.2d 20 (2nd Cir.1987) (thirty six percent); <u>Van Horn v. Trickey</u>, 840 F.2d 604, 606 (8th Cir.1988) ("a settlement may be approved over a significant percentage of objections from class members").

[20]  <u>See</u>, <u>e.g.</u>, Ex. 4 (December 7, 2004 AJ's decision); Ex. 25, <u>Rahman v. Johanns</u>, EEOC Appeal No. 01A5527, *available at* 2005 W.L. 113052 (May 3, 2005) (upholding fairness of Basu Agreement); Ex. 26, <u>Sadiq v. Johanns</u> EEOC Appeal No. 01A52528, *available at* 2005 W.L. 1130061 (May 3 2005), available (same); Ex. 27, <u>Purdy v. Johanns</u>, EEOC Appeal No 01A52042, *available at* 2005 W.L. 1130125 (May 3, 2005) (same); Ex. 28, <u>Turner v. Johanns</u> EEOC Appeal No. 01A533302, *available at* 2005 W.L. 1130057 (May 3, 2005) (same); Ex. 29, <u>Turner v. Johanns</u>, EEOC Denial of Request for Reconsideration Upholding Fairness of <u>Basu</u> Agreement, *available at* 2005 W.L. 1903666; Ex. 19 (OFO decisions in Complaint No. CRSD-CF-2006-00219 and EEOC Appeal No. 01A63143).

Compl. ¶¶ 9, 11, 17, 18.  These allegations should be rejected by this Court.  The EEOC has already ruled that the manner in which the Agency sent out notice of the proposed settlement in February of 2004 was appropriate.  See Ex. 4, Decision Granting Final Approval of Settlement Agreement at 9-10.  Such manner was approved by Class Counsel and the EEOC Administrative Judge.  Id.  Furthermore, the USDA sent the proposed Settlement Agreement to Plaintiff via FedEx and has confirmation of receipt.  See Ex. 2, February 17, 2004 Letter with attachments.  This allegation should clearly be dismissed, as there is no genuine issue of material fact that Plaintiff received the Basu agreement.  Further, there is evidence (including Plaintiff's name on a list of e-mail recipients in April of 2004, discussing the Basu Settlement Agreement) that Plaintiff knew of the Settlement Agreement well before May of 2005.  See Ex. 3.  Plaintiff himself, in numerous letters to the USDA, describes his substantial involvement in negotiations of the Basu Agreement.  See, e.g., Ex. 9; Ex. 12.  There is absolutely no basis for this claim.[21]

## VI.    The USDA has Fully Implemented the Historic Basu Agreement

Plaintiff claims that the USDA has breached the Basu agreement in various ways.  See Am. Compl. ¶¶ 10, 18, 20.  The USDA has however consistently maintained that it has fully

---

[21]  To satisfy due process, a notice of a proposed class action settlement need only be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  See Peters v. National R.R. Passenger Corp., 966 F.2d 1483, 1486 (D.C. Cir. 1992); Petrovic v. Amoco Oil Co., 200 F. 3d 1140, 1153 (8th Cir. 1999); Silber v. Mabob, 18 F. 3d 1449, 1454 (9th Cir. 1994) (finding that best notice practicable, rather than actual notice, is standard for evaluating adequacy of notice); DeJulius v. New England Health Care Employees Pension Fund, 429 F. 3d 935, 944 (10th Cir. 2005) (same).

complied with the terms of the <u>Basu</u> agreement.  In resolving this dispute, this Court should be mindful of the deference that is owed to an agency's interpretation of a settlement agreement.[22]

Plaintiff complains that he was not promoted to a GS-15 position.  <u>See</u>, <u>e.g.</u>, Am. Compl. ¶¶ 5, 13, 17, 17C..  However, it is absolutely undisputed that he was not entitled to such a promotion under the <u>Basu</u> agreement, which explicitly provides that "[n]othing contained in this [a]greement will obligate the Department to create new positions, to fill any particular position, or to <u>promote, select, or assign any particular person to a particular position</u>."  <u>See</u> Ex. 2 at 17, § VIII, ¶ G (emphasis added); <u>see also</u> Ex. 2, (February 17, 2004 Letter, Notice of Proposed Settlement); Ex. 19; <u>see also</u> 2006 W.L. 2387919 (Aug. 10, 2006).  Plaintiff was promoted to a

---

[22]  The D.C. Circuit has noted that its "precedents, recognizing agency authority to adjudicate issues and enter into settlements, treat settlements between an agency and a private party as equivalent to agency regulations for deference purposes."  <u>See</u> <u>SBC Commc'ns Inc. v. F.C.C.</u>, 407 F.3d 1223, 1230 (D.C. Cir. 2005) (internal citations omitted); <u>cf.</u> <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994) (concerning the substantial deference which is owed agency interpretations of regulations.)  There is ample additional authority for this principle.  <u>See</u>, <u>e.g.</u>, <u>Boca Airport, Inc. v. F.A.A.</u>, 389 F.3d 185, 192, n. 6 (D.C. Cir. 2004) (a "court should defer to an agency's interpretation of a private settlement agreement approved by the agency"); <u>MCI Worldcom Network Servs., Inc. v. FCC</u>, 274 F.3d 542, 547-48 (D.C. Cir. 2001); <u>Western Res., Inc. v. FERC</u>, 9 F.3d 1568, 1577 (D.C. Cir. 1993) (referencing the "principle of deference to the agency's construction of settlement agreements"); <u>A/S Ivarans Rederi v. United States</u>, 938 F.2d 1365, 1368 (D.C. Cir.1991) ("Once we determine that a filed contract is silent or ambiguous on a particular question, we must defer to the agency's reasonable construction of the contract's terms"); <u>Nat'l Fuel Gas Supply Corp. v. FERC</u>, 811 F.2d 1563, 1569-71 & n. 2 & n. 3 & n. 4 (D.C. Cir. 1987) (noting that "[w]e believe that the correct view requires a court to give deference to an agency's reading of a settlement agreement even where the issue simply involves the proper construction of language," explaining that the "<u>Chevron</u> [decision] has implicitly modified earlier cases that adhered to the traditional rule of withholding deference on questions of contract interpretation," that "deference should be given because the congressional grant of authority to the agency indicates that the agency's interpretation typically will be enhanced by technical knowledge," and that "[c]onstruction of a settlement agreement will be influenced by the agency's expertise . . ."); <u>Bolack Minerals Co. v. Norton</u>, 370 F.Supp.2d 161, 175 (D.D.C. 2005) ("[t]he D.C. Circuit has held that courts should defer to an agency's reasonable construction of the terms of a contract, settlement agreement, or other document that creates legal rights" and "[d]eference is appropriate even when the agency is a party to the agreement").

GS-14, Step 10 and was paid $40,000 in cash.  See Ex. 17 (May 4, 2006 Letter to Plaintiff) at 3

(noting that this was done respectively on June 6, 2005 and June 21, 2005).[23]

Plaintiff also claims that the USDA has breached the Basu agreement by not creating a

Development Opportunity Placement Program, and by not providing Plaintiff with appropriate

OPM training.  See Am. Compl. ¶ 10.  However, the USDA has provided ample evidence that it

has in fact complied with these and other provisions of the Basu agreement.  See Ex. 17; Ex. 20,

USDA Compliance Report to EEOC; see also Ex. 11 at 1; Brammer Decl. ¶ 43.[24]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss

Plaintiff's action, or in the alternative, grant summary judgment to the Defendant.

---

[23]  Because of Plaintiff's acceptance of this payment and promotion, the doctrine of accord and satisfaction arguably bars his allegation that he was wrongfully denied a promotion to a GS-15 position.  See, e.g., Valley Asphalt, Inc. v. Stimpel Wiebelhaus Associates, 2001 W.L. 95132, **1 (10th Cir. 2001) (indicating that "[t]he elements of accord and satisfaction" are as follows: "[t]here must be: 2) a bona fide dispute over an unliquidated claim amount; 2) a check tendered in full settlement of the claimed amount; and 3) acceptance of the payment."); Curtin v. United Airlines, Inc., 120 F. Supp.2d 73, 76 (D.D.C. 2000) (to similar effect); Dist. of Columbia v. U.S., 67 Fed. Cl. 292, 337 (2005) ("[a] claim is discharged by the doctrine of accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.") (internal citations and quotations omitted).

[24]  To the extent Plaintiff suggests that Defendant breached the Basu agreement by "failing to inform Plaintiff of the individual relief received by other class agents," see Am. Compl. ¶ 18; see also id. at ¶ 10, Defendant notes that a similar objection was rejected by the AJ in his December 2004 ruling on the fairness of the Basu agreement.  See Ex. 4 at 9-10.  The EEOC's OFO upheld the AJ's finding that the deficiency in including the relief being provided to Tier One Class Agents was insufficient to warrant the issuance of an amended notice, noting that class members could have filed a petition alleging that the relief being offered was inadequate. See Ex. 27, Purdy, 2005 W.L. 1130125 at *4.  Thus, Plaintiff cannot show that Defendant breached any obligation under the Basu agreement, or subjected him to discrimination, by allegedly not informing him of the relief provided to other Tier One members.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

Of Counsel:

Steven C. Brammer
Attorney-Advisor
U.S. Department of Agriculture
Office of the General Counsel
Civil Rights Litigation Division

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DR. KRISHNA MURTHY,        )
                                  )
                 Plaintiff,    )
                                  )
       v.                   )     Civil Action No.  06-2208 (RJL)
                                  )
CHUCK CONNER,              )
Acting Secretary,             )
United States Department of Agriculture,   )
                                  )
                 Defendant.   )

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 7(h), Defendant submits this statement of material facts to which there is no genuine issue:

**I.**      **The Filing and Resolution of the <u>Basu</u> Class Action (in which Plaintiff Participated), How He was Notified of Both the Proposed Settlement of that Action and His Rights to Object to it Prior to its Finalization**

1.  Plaintiff, Dr. Krishna Murthy, has been employed by the USDA since 1980.  <u>See</u> Am. Compl. ¶ 3.  He is currently employed as a Senior Staff Officer/Veterinarian, as a GS-14/Step 10, in the USDA's Food Safety and Inspection Service ("FSIS").  <u>See</u> Am. Compl. ¶ 5.

2.  On November 18, 1999, a USDA employee named Dr. Arun Basu filed a formal complaint of employment discrimination with the Equal Employment Opportunity Commission ("EEOC" or "the Commission") on behalf of a proposed Class of Asian/Pacific Islander employees of the Agency at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) been stripped of managerial duties and responsibilities; (5) had not been selected for

a position with managerial duties or responsibilities; (6) had been subjected to reprisal for filing a complaint(s); (7) had filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint.  This action was captioned Arun Basu, et al. v. USDA, EEOC No. 100-A1-7863X, Agency No. 000190 ("Basu class action").  See, e.g.., Exhibit ("Ex.") 2, October 31, 2003 Settlement Agreement for the Basu class action ("Basu agreement") at 1-2 (describing the procedural history of the Basu class action); see also Am. Compl. ¶ 7; Ex. 32, Declaration of Steven C. Brammer ("Brammer Decl.") ¶ 3.

3.    In October 2003, the USDA and the class agents entered into a Settlement Agreement resolving the Basu class action.  See, Ex. 2, Basu agreement; Brammer Decl. ¶ 4.[1]  For purposes of the settlement agreement, the class was defined as "'[a]ll current Asian/Pacific Islanders employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected."  See Ex. 2,  Basu agreement at 2-3, ¶ 4; Am. Compl. ¶ 7; Brammer Decl. ¶ 4.

4.    The USDA committed in the Basu agreement to provide several forms of injunctive relief, which were be in effect for a period of three years.  See, Ex. 2, Basu agreement at 5, 7-13, §§ B.1, IV.B, IVD., VI.1-VI.5; Brammer Decl. ¶ 5.

5.    Tier One of the Basu agreement was comprised of six Class Agents whose claims would be separately resolved by the Agency.  See Ex. 2, Basu agreement at 13-14, § VII.A;

---

[1]  The details of the Basu agreement's terms for individual and injunctive relief, and its provisions regarding breach, are set forth with appropriate citations in the Defendant's brief, and in the Declaration of Steven C. Brammer, attached hereto as Exhibit 32.

2

Brammer Decl. ¶¶ 5-7.  Plaintiff was one of six Class Agents separately listed in Tier One of the Basu agreement as receiving separate monetary and injunctive relief.  See Ex. 2, February 17, 2004 Letter to Plaintiff; see also Ex. 4, December 7, 2004 Decision Granting Final Approval of Settlement Agreement at 4; Brammer Decl. ¶ 8.

6.  The Basu agreement explicitly provided that "[a]ny [c]lass [a]gent or [c]lass [m]ember who, at the [e]ffective [d]ate, has a pending formal individual EEO complaint of discrimination on the basis of race or national origin as to non-selection or promotion must withdraw his or her EEO complaint within fifteen (15) days of the Effective Date of this Agreement."  See Ex. 2, Basu agreement at 5-6, § III, ¶ A.1.; Brammer Decl. ¶ 11.  The Basu agreement further provided that "[a]ny [c]lass [a]gent or [c]lass member who, at the Effective Date of this agreement, has a pending Federal District Court complaint or appeal in a Federal Circuit Court of Appeals on the basis of race or national origin as to non-selection or promotion must show proof of withdrawal of the complaint . . . or withdrawal of the appeal . . . within fifteen (15) days of the Effective Date of this Agreement."  See Basu agreement at 6, ¶ A.2.; Brammer Decl. ¶ 11.

7.  The Basu agreement also set forth procedures to be followed in the event that any party to the agreement concluded that another had failed to perform its obligations under the agreement.  See Ex. 2, Basu agreement at 15-17, § VIII (which is entitled "Enforcement"), ¶¶ A-G.; Brammer Decl. ¶ 12.

8.  Plaintiff was not entitled to a promotion to a GS-15 position under the Basu agreement.  See Ex. 2 at 17, § VIII, ¶ G (emphasis added); see also Ex. 2 (February 17, 2004 Letter, Notice of Proposed Settlement); Ex. 19; see also 2006 W.L. 2387919 (Aug. 10, 2006); Brammer Decl. ¶ 13.

3

9.  On January 21, 2004, the presiding  presiding EEOC Administrative Judge ("AJ")

Andrew Culbertson, granted preliminary approval of this proposed Settlement Agreement.  See

Ex. 1, January 21, 2004 Order in Basu, *et. al.* v. Veneman, EEOC No. 100-A1-7863, Agency No.

000190 ("Basu Jan. 24, 2004 Order"); Brammer Decl. ¶ 15.

10.  In his order, AJ Culbertson instructed that "[p]ursuant to 29 C.F.R. § 1614.204(g)(4)

(2004), the Agency shall, consistent with the manner proposed in the motion, notify all class

members of the resolution of the above-captioned [case] within ten (10) days of the date of this

Order," and observed that the "the motion [had] propose[d] that certain identified class members

will be provided notice by regular mail, and that notice will also be posted on the Agency's

web site and in appropriate Agency bulletins."  See Ex. 1, Basu Jan. 24, 2004 Order at 1 & n. 1;

Brammer Decl. ¶ 16.

11.  AJ Culbertson explained that "[i]f the undersigned [Administrative Judge], after

reviewing any petitions that are filed, determines that the resolution is fair, adequate, and

reasonable to the class as a whole, he will issue a decision to that effect which will thereby make

the resolution binding on all class members."  See Ex. 1, Basu Jan. 24, 2004 Order at 1-2;

Brammer Decl. ¶ 17.

12.  The order required the parties to modify provision six of the proposed Basu

agreement to provide, in part, that "[w]ithin 30 days of the date of the notice of resolution, any

member of the class may petition the undersigned Administrative Judge to vacate the proposed

resolution because it benefits only the class agents, or is otherwise not fair, adequate and

reasonable to the class as a whole," and to describe the process that would be followed if any

such petitions were timely filed  See Ex. 1, Basu Jan. 24, 2004 Order at 2 (emphasis added);

Brammer Decl. ¶ 18.

13.  On January 27, 2004, the AJ issued an order granting the Joint Motion that the parties had filed on January 26, 2004, and granting preliminary approval of the revised notice of resolution.  See Ex. 1, January 27, 2004 Order Approving Notice of Settlement; Brammer Decl. ¶ 19.

14.  The January 27, 2004 order instructed that the Agency shall, consistent with the manner proposed in the motion, notify all class members of the resolution of the above-captioned [case] within twenty (20) days of the date of this Order (mailing should be postmarked within that time frame)" and  noted that the "the motion [had] propose[d] that certain identified class members will be provided notice by regular mail, and that notice will also be posted on the Agency's web site and in appropriate Agency bulletins."  See Ex. 1, January 27, 2004 Order Approving Notice of Settlement at 1, n. 1; Brammer Decl. ¶ 20.

15.  On February 17, 2004, the USDA's Office of the General Counsel ("USDA's OGC" or "OGC") sent a letter to the Plaintiff notifying him of "the proposed settlement agreement signed by the USDA and the Class Agent Arun Basu on behalf of himself and the Class Members."  See Ex. 2, February 17, 2004 Letter from Arlean Leland, Associate General Counsel of the USDA's OGC's Civil Rights Division, to Dr. Krishna Murthy; Brammer Decl. ¶ 21.

16.  The February 17, 2004 letter explained that the parties determined that his claims fell "within Tier One of the proposed Settlement Agreement." See Ex. 2, February 17, 2004 Letter from Arlean Leland, Associate General Counsel of the USDA's OGC's Civil Rights Division, to Dr. Krishna Murthy; Brammer Decl. ¶ 22.  Accordingly, the letter advised that:

. . . it is proposed that you will receive the following for settlement of pending

5

claims of employment discrimination:

a.    Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all pecuniary and non-pecuniary damages;

b.    Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical Officer, Office of Program and Policy and Policy Development, New Technology Staff;

c.    Office of Personnel Management Leadership Training to be determined within 60 days of a signed settlement agreement; and

d.    Reasonable attorney's fees to be paid according to Section VII E of the proposed settlement Agreement.

See Ex. 2, February 17, 2004 Letter from Arlean Leland, Associate General Counsel of the USDA's OGC's Civil Rights Division, to Dr. Krishna Murthy; Brammer Decl. ¶ 22.

17.  The letter further indicated that "[o]ther details regarding the Settlement Agreement, including injunctive relief and information about how to contact Class Counsel or the Administrative Judge is attached in Notice required by the U.S. Equal Employment Opportunity Commission ("EEOC") under 29 C.F.R. § 1614.204(e)."  See Ex. 2, February 17, 2004 Letter from Arlean Leland, Associate General Counsel of the USDA's OGC's Civil Rights Division, to Dr. Krishna Murthy; Brammer Decl. ¶ 23.

18.  The February 17, 2004 letter was mailed with two enclosures: (1) a document captioned  "Notice of Settlement," and (2) a signed copy of the settlement agreement in the Basu class action, dated October 21, 2004.  See Ex. 2 (Notice of Settlement); Brammer Decl. ¶¶ 24-27.

19.  The Notice of Settlement cautioned that the Settlement Class Members had two options:

A.    You may do nothing and you will remain a Class member and be both entitled to and bound by the terms of equitable and injunctive relief set out in the Settlement if it is approved under 29 C.F.R. § 1614.204(g).

B.    You may object to the Settlement, if you follow the instructions for Fairness Hearing and Process for Objections that is set forth below.

<u>See</u> Ex. 2, Notice of Settlement at 4 (emphasis added); Brammer Decl. ¶ 28.

      20.  Concerning this second option, the Notice explained the following:

      6.     Fairness Hearing and Process for Objections
      <u>Within 30 days of the date of the notice of resolution, any member of the
class may petition the undersigned Administrative Judge to vacate the proposed
resolution because it benefits only the class agents or is otherwise not fair,
adequate and reasonable to the class as a whole.</u>  Petitions are to be filed with
Administrative Judge Andrew Culbertson, at 1400 L Street, N.W., Suite 200,
Washington, D.C. 20005.  In the event the Administrative Judge determines that
there are legitimate questions raised concerning the fairness, adequacy, or
reasonableness of the resolution, a Fairness Hearing will be scheduled to address
those questions.  If the Administrative Judge, after reviewing any petitions that are
filed, determines that the resolution is fair, adequate, and reasonable to the class as
a whole, he will issue a decision to that effect which will thereby make the
resolution biding on all the class members.

<u>See</u> Ex. 2, Notice of Settlement at 5, ¶ 6; Brammer Decl. ¶ 29.

      21.  USDA's OGC sent the February 17, 2004 letter, and the enclosed Notice of

Settlement and copy of the October 31, 2003 Settlement Agreement, to Plaintiff via U.S. mail

and also via FedEx with confirmation of receipt.  <u>See</u> Ex. 2, Shipping Label and February 18,

2004 E-Mail from Fed Ex to Steven Brammer of USDA's OGC; Brammer Decl. ¶¶ 30-31.  The

FedEx confirmation information indicates that this material was delivered to Plaintiff's address

on record with the Agency on February 18, 2004, and that the package was signed for.  <u>See</u> Ex. 2,

Shipping Label and February 18, 2004 E-Mail from Fed Ex to Steven Brammer of USDA's

OGC; Brammer Decl. ¶ 30.

      22.  On April 1, 2004, Plaintiff was among the recipients of an e-mail from J. Rasekh to

the Co-Chairs and Members of the Asian American Pacific Islander Council, which referenced

the "recent OSAAA Class Action Settlement by USDA/EEOC," as well as an e-mail response

from Virginia C. Lewis of the USDA.  <u>See</u> Ex. 3; Brammer Decl. ¶ 32.

23. Objections were ultimately filed by ten individuals with EEOC Administrative Judge ("AJ") Culbertson.  See Ex. 4, Decision Granting Final Approval of Settlement Agreement at 2, n. 1; Brammer Decl. ¶¶ 33-34.  Plaintiff was not among the Basu class action members who filed objections at that time.  See Ex 4 at 2, n.1; Brammer Decl. ¶ 33.

24. On December 7, 2004, AJ Andrew Culbertson issued a decision granting final approval of the Settlement Agreement.  See Ex. 4; Brammer Decl. ¶ 35.

25. In his decision, AJ Culbertson concluded "that the Basu Agreement is "fair, adequate, and reasonable to the Class as a whole" and he found "no basis for vacating the Settlement Agreement."  See Ex. 4 at 12; Brammer Decl. ¶ 36.  He approved the form, content, and method of distribution of notices of the Basu agreement.  See Ex. 4 generally; Brammer Decl. ¶ 36.  Accordingly, AJ Culbertson granted final approval to the Class, and ruled that the resolution would bind all members of the Class.  See Ex. 4 at 12; Brammer Decl. ¶ 36.

26. AJ Culbertson also addressed and rejected the objections that had been lodged by other individuals, but not by Plaintiff, who had wholly failed to object.  See Ex. 4 at 9-10; Brammer Decl. ¶ 38.  With specific respect to the issue of whether the relief afforded the Tier One Class Agents was fair, AJ Culbertson noted that "every Class Member was aware of the relief that s/he is entitled to under the Agreement," and "[t]herefore, if a Class member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief."  See Ex. 4 at 10; Brammer Decl. ¶ 38.

27. On May 25, 2005, USDA's OGC sent Plaintiff a letter stating that, "[i]n February 2004, you were . . . notified of the proposed Settlement Agreement signed by [USDA] . . . and Lead Class Agent Arun Basu," and informing him that the EEOC's Administrative Judge had

"approved the Settlement Agreement, finding it fair, adequate, and reasonable to the class as a whole." See Ex. 5, May 25, 2005 Letter; Brammer Decl. ¶ 39.

28.  The May 25, 2005 letter further advised Plaintiff that "the full Commission recently ruled on four purported appeals of the Administrative Judge's fairness determination" and had "affirm[ed] the Administrative Judge's determination." See Ex. 5; Brammer Decl. ¶ 40.  In addition, the letter explained to Plaintiff yet again that "[y]ou were identified as falling within Tier One of the proposed Settlement Agreement" and that, "[a]s a result, you will be entitled to injunctive relief as described in the Settlement Agreement, and will receive the following individual relief for withdrawal of all pending claims of employment discrimination." See Ex. 5 at 1-2 (describing the individual relief Plaintiff would receive under the agreement); Brammer Decl. ¶ 40.

29.  Enclosed with the letter was a copy of the individual settlement agreement between Plaintiff and the USDA. See Ex. 5, May 25, 2005 Letter; see also Ex. 5, Settlement Agreement between Plaintiff and USDA; Brammer Decl. ¶ 41.  Plaintiff was instructed in the letter to "execute this Agreement, with your attorney, and have it returned to the OGC . . . by June 1, 2005." See Ex. 5, May 25, 2005 Letter at 2; Brammer Decl. ¶ 41.

30.  However, Plaintiff never executed an individual settlement.  Instead of pursuing the procedures set forth in the Basu agreement available to class members who wished to challenge actions alleged to be in non-compliance with the Basu agreement, beginning in or around June 2005, Plaintiff, in person and via phone, e-mail, and letters, attempted to convince USDA officials that the Basu agreement was unfair to him, had not been implemented as written, and should be modified or overturned, outside of the procedures outlined in the Basu agreement.

9

See, e.g., Brammer Decl. ¶ 42.

**II.    USDA's Compliance with the <u>Basu</u> Agreement and the Relief Plaintiff has Received Under that Agreement**

31.  Plaintiff was timely provided with the $40,000 and the promotion to GS-14, Step 10 provided for under the <u>Basu</u> agreement.  See Ex. 17 (May 4, 2006 Letter to Plaintiff) at 3; Brammer Decl. ¶ 43.  The USDA has complied with the provisions of the <u>Basu</u> agreement.  <u>See</u> Ex. 17; Ex. 20, USDA Compliance Report to EEOC; Ex. 11 at 1; Brammer Decl. ¶ 43.

**III.    How Plaintiff Sat on His Rights to Object to the Settlement Agreement, While Others Objected and Received Responses to their Objections**

32.  On or about June 10, 2005, James P. Hood, the Class Counsel for the <u>Basu</u> action, informed USDA's OGC that Plaintiff was the only one of the Tier One  members who desired to pursue complaints of discrimination filed after September 2, 2003.  <u>See</u> Ex. 6, Letter dated June 13, 2005 from Steven Brammer to Mr. Hood; Brammer Decl. ¶¶ 45-46.

33.  In an exchange of e-mail messages, on June 15, 2005 and June 16, 2005, USDA's OGC confirmed that Plaintiff was available to receive and review a newly-revised individual agreement resolving his employment discrimination complaints subsumed by the <u>Basu</u> class action.  <u>See</u> Ex. 7; Brammer Decl. ¶ 46.

34.  On July 19, 2005, Dr. Basu sent Mr. Brammer of USDA's OGC an e-mail inviting him to a "[s]pecial [l]uncheon" to be held on July 28, 2005, sponsored by the Organization of South Asian Americans in Agriculture ("OSAA"), to "honor and thank key individuals responsible for the fair and equitable resolution of the Asian class complaint.  <u>See</u> Ex. 30; Brammer Decl. ¶ 47.  Prior to July 28, 2005, Plaintiff sent Mr. Brammer a letter in which he "cordially invited" Mr. Brammer  to a "[s]pecial [l]uncheon" sponsored by the OSAAA to

10

"specifically honor and thank the key individuals responsible for the fair and equitable resolution of the Asian class complaint."  See Ex. 31 (also noting that "[t]he Asian employees recognize that the without the sustained effort by some individuals . . . this success would not have been possible."); Brammer Decl. ¶ 48.

35.   Between September 22, 2005 and May 4, 2006, Plaintiff exchanged a series of letters and e-mails with various USDA officials, and had a meeting with them.  In those written and in person communications, he expressed dissatisfaction with various aspects of the Basu agreement and its implementation, and the USDA officials addressed and responded to his stated concerns and arguments.  See Ex. 9 (September 22, 2005 letter from Plaintiff to Kevin McGrath of the USDA, September 29, 2005 letter from Plaintiff to Vernon Parker of the USDA, October 5, 2005 Letter from Plaintiff to Vernon Parker of the USDA, October 21, 2005 letter from Plaintiff to Vernon Parker of the USDA, and November 22, 2005 letter from Plaintiff to Farook Sait of the USDA); Ex. 10 (October 3, 2005 letter from Kevin McGrath of the USDA to Plaintiff); Ex. 11 (October 24, 2005 letter from Sadhna True of the USDA to Plaintiff); Ex. 12 (January 17, 2006 letter from Plaintiff to Arlean Leland of the USDA); Ex. 13 (February 1, 2006 Letter from USDA's OGC to Plaintiff); Ex. 14 (February 7, 2006 e-mail from Plaintiff to USDA's OGC); Ex. 15 (March 3, 2006 letter from USDA's OGC to Plaintiff); Ex. 16 (March 24, 2006 letter from Plaintiff to the USDA's OGC); Ex. 17 (May 4, 2006 letter from USDA's OGC to Plaintiff); see also Ex. 32, Brammer Decl. ¶¶ 49-62 (describing this correspondence and the meeting in detail).

36.   In none of the string of letters which Plaintiff sent to USDA employees prior to his January 17, 2006 letter did he claim or suggest that he had not received notification of proposed

relief under the proposed <u>Basu</u> settlement in February 2004.  <u>See</u> Ex. 9; Ex. 12; Ex. 14; Ex. 16; Brammer Decl. ¶ 52.

## IV.    Various Administrative Complaints and Appeals which Plaintiff Has Filed

### A.    The Procedural History of Agency Complaint No. CRSD-CF-2006-00219

37.  An EEO Counselor's report indicates that between February 4, 2006 and March 6, 2006, Plaintiff engaged in EEO counseling concerning his allegations that "he ha[d] been denied a promotion to GS-15 as a part of the [<u>Basu</u> agreement] . . .  (under the Tier One portion) . . . and that [the Class Representative] Mr. Sait was not timely in providing him information that he should have received as a result of the settlement agreement."  <u>See</u> Ex. 18, EEO Counselor's Report at 2; Brammer Decl. ¶ 63.

38.  Plaintiff claimed during this counseling that he had heard "[o]n November 28, 2005" that he was not going to be selected for this position and claimed that he had been discriminated on the basis of age, religion, and reprisal.  <u>See</u> Ex. 18, EEO Counseling Report; Brammer Decl. ¶ 64.

39.  On March 6, 2006, the USDA's Office of Civil Rights notified Plaintiff that he was entitled to file a formal EEO complaint within 15 days of his receipt of the letter.  <u>See</u> Ex. 18 (Notice of Right to File Letter); Brammer Decl. ¶ 65.

40.  On March 10, 2006, Plaintiff filed formal administrative complaint of employment discrimination CRSD-CF-2006-00219, alleging discrimination on the bases of religion, age, and reprisal.  <u>See</u> Ex. 18, Complaint of Employment Discrimination; Brammer Decl. ¶ 66.

41.  On May 12, 2006, the Agency issued a Final Agency Decision.  <u>See</u> Ex. 18 (Final

Decision in CRSD-CF-2006-00219); Brammer Decl. ¶ 67.  In its decision, the Agency dismissed

the complaint, pursuant to 29 C.F.R. § 1614.107(a)(1).  See Ex. 18 (Final Decision in CRSD-CF-

2006-00219); Brammer Decl. ¶ 67.

42.  The Agency explained that "[t]he EEO complaint process contained in 29 C.F.R.

§ 1614.105 through 29 C.F.R. § 1614.110 is not the proper process to resolve breach claims that

do not allege a subsequent act of discrimination" and "[t]herefore, this breach claim is dismissed

in accordance with 29 C.F.R. § 1614.1079(a)(1) for failure to state a claim and will not be

referred for investigation."  See Ex. 18 (Final Decision in CRSD-CF-2006-00219) at 4 (emphasis

added); Brammer Decl. ¶ 68.

43.  Plaintiff subsequently filed an appeal of the Agency's dismissal to the EEOC's

Office of Federal Operations ("OFO").  On August 10, 2006, the OFO issued a decision.  See Ex.

19 (Aug. 10, 2006 decision); see also 2006 W.L. 2387919; Brammer Decl. ¶ 69.

44.  In summarizing Plaintiff's claims, the OFO noted that Plaintiff had claimed: (1) that

the USDA "breached the settlement agreement when he did not receive a promotion to a GS-15

position"; (2) that "the agency did not provide him the OPM leadership training as specified in

the agreement"; and (3) that the "agency did not create the [Development Opportunity Placement

Program] pilot as specified in the agreement."  See Ex. 19 (Aug. 10, 2006 decision) at 3; 2006

W.L. 2387919, *3; Brammer Decl. ¶ 70.

45.  At the outset, the OFO ruled that "the agency is correct in its assertion that a breach

of settlement claims is not treated as a separate complaint of discrimination and subject to

processing under 29 C.F.R. § 1614.105 et. seq." and "is also correct in noting that the class

complaint set forth specific procedures for enforcement."  See Ex. 19 (Aug. 10, 2006 decision);

13

2006 W.L. 2387919; Brammer Decl. ¶ 71.

46.  The OFO explained that, "for the purposes of efficiency," it had decided to address

Plaintiff's breach claims in its decision.  See Ex. 19 (Aug. 10, 2006 decision);  2006 W.L.

2387919; Brammer Decl. ¶ 72.  The OFO rejected the first of Plaintiff's contentions, observing

that "the agreement did not provide" that he "would be promoted to the GS-15 level" and "[t]hus,

such a claim is beyond the scope of the agreement."  See Ex. 19 (Aug. 10, 2006 decision)

(emphasis added); 2006 W.L. 2387919 (emphasis added); Brammer Decl. ¶ 72.

47.  However, the OFO remanded the issues of non-compliance involving (1) providing

Plaintiff OPM leadership training pursuant to the Basu Settlement Agreement; and (2) the

creation of a Development Opportunity Placement Program under the Basu agreement, and

instructed the USDA to provide documentation showing whether it provided Plaintiff with OPM

leadership training and provide documentation showing whether it complied with the creation of

DOPP as required by the Basu Settlement Agreement.  See Ex. 19 (Aug. 10, 2006 decision) at 4;

2006 W.L. 2387919, *4; Brammer Decl. ¶ 73.

48.  On September 22, 2006, the OFO denied Plaintiff's request for reconsideration of its

August 10, 2006 decision.  See Ex. 19 (Sept. 22, 2006 decision); see also 2006 W.L. 2792480;

Brammer Decl. ¶ 74.  On November 27, 2006, the USDA timely provided the requested

compliance report to EEOC's Compliance Officer.  See Ex. 20, USDA Compliance Report to

EEOC; Brammer Decl. ¶ 74.

**B.    The Procedural History of EEOC Appeal No. 01A63143**

49.  Plaintiff filed an appeal with the OFO, in which he (1) stated "that he was not given

notice of the proposed [Basu] settlement agreement prior to approval of the agreement,"

14

(2) claimed that "he did not receive a copy of his individual award on February 17, 2004" but only in "May 2005," (3) asserted that "as a member of Tier 1, he was unfairly denied promotion as relief while other class agents in tier 1 received promotions under the agreement," and (4) complained about alleged conflicts of interest and collusion occurring with the settlement. See Ex. 19, August 9, 2006 OFO decision at 5; see also 2006 W.L. 2389432, * 4 (Aug. 9, 2006); Brammer Decl. ¶ 75.

50.  In an August 9, 2006 decision, the EEOC's OFO refused to consider Plaintiff's objections to the settlement on appeal.  In its decision, the OFO referenced and affirmed the Administrative Judge's December 7, 2004 ruling that the Basu agreement was fair, adequate, and reasonable to the class as a whole.  See Ex. 19, August 9, 2006 OFO decision at 5-6; 2006 W.L. 2389432, * 5-6 (Aug. 9, 2006); Brammer Decl. ¶ 76.

51.  The OFO also noted that the USDA had sent a Notice of Proposed Settlement along with a copy of the actual agreement to all current Asia/Pacific Islander employees who had claims subsumed within the class or who fell within the class definition (a group that included Plaintiff) and that the USDA had posted the Notice of Proposed Settlement on its website.  See Ex. 19, August 9, 2006 OFO decision at 5-6; 2006 W.L. 2389432, * 5-6 (Aug. 9, 2006); Brammer Decl. ¶ 77.

52.  The OFO noted that despite the fact that this Notice of Proposed Settlement had advised Plaintiff that he had 30 days to file objections to the fairness of the proposed agreement, but that Plaintiff "never filed an objection with the AJ challenging the terms of subject settlement in accordance with the regulation set forth in 29 C.F.R. § 1614.204(g)(4).  See Ex. 19, August 9, 2006 OFO decision at 5-6; 2006 W.L. 2389432, * 5-6 (Aug. 9, 2006); Brammer Decl. ¶ 78.

15

53.  On September 28, 2006, the OFO denied a request by Plaintiff that it reconsider its August 9, 2006 decision.  See Ex. 19, September 28, 2006 OFO decision; see also 2006 W.L. 2851568 (Sept. 28, 2006); Brammer Decl. ¶ 79.

**C.    The Procedural History of Agency Complaint No. CRSD-CF-2005-02384**

54.  On August 17, 2006, after engaging in informal EEO counseling, Plaintiff filed an EEOC Complaint (which was designated Complaint No. CRSD-CF-2006-02384).  See Ex. 21, Complaint in CRSD-CF-2005-02384 (appears as exhibit 1 to Report of Investigation ("ROI") at p. 000011); Brammer Decl. ¶ 80.

55.  In this complaint, Plaintiff alleged that he had "applied for" the position of "Associate Deputy Administrator," a GS-401-14/15 position which had been advertised under Opportunity Identification Number "APHIS-06-DOPP-001," that he had not been selected for this position but another claim agent had instead, and that the USDA had discriminated against him on the basis of race (Asian), religion (Hindu), age (DOB: 04/13/47), and reprisal for prior EEO activity by not selecting him for this position.  See Ex. 21, Complaint in CRSD-CF-2005-02384 (appears as exhibit 1 to Report of Investigation ("ROI") at p. 000011); see also Ex. 21, ROI, at 000002, 000005; Acceptance Letter (appears as exhibit 2b to ROI, at p. 0000021); Brammer Decl. ¶ 81.

56.  On June 25, 2007, EEOC Administrative Judge ordered that the complaint be dismissed "pursuant to Complainant [i.e., Plaintiff]'s withdrawal of his complaint by Motion dated June 14, 2007, wherein the Complainant stated he has elected to pursue his claim in federal court."  See Ex. 21, June 25, 2007 Order of Dismissal; Brammer Decl. ¶ 82.

### D.    The Procedural History of Agency Complaint No. NRCS-2006-02124

57.  According to an EEO Counselor's report, between April 10, 2006 and June 22, 2006,

Plaintiff engaged in EEO counseling concerning a claim that "he was discriminated against based

on his Religion (Hindu-Brahmin) when he was not provided information to file an appeal for the

[Basu] Class Action Complaint and did not have the opportunity to send in a rebuttal which

deprived him of promotion to GS-15 position."  See Ex. 24, August 2006 EEO Counselor Report

at 2; Brammer Decl. ¶ 83.

58.  On June 28, 2006, Plaintiff filed a formal EEOC Complaint concerning these claims

(which was designated Complaint No. NRCS-2006-02124).  See Ex. 22, Complaint of

Employment Discrimination; Brammer Decl. ¶ 84.

59.  In this complaint, Plaintiff alleged that the Agency had discriminated against him on

the basis of race (Asian), religion (Hindu-Brahmin), age (DOB April 13, 1947) and had retaliated

against him on the basis of former EEO activity when it allegedly failed to provide information

which could have led to a GS-15 position and failed to provide information to him.  See Ex. 22,

Complaint of Employment Discrimination; Brammer Decl. ¶ 85.

60.  On August 3, 2006, USDA's Office of Civil Rights acknowledged receipt of, and

accepted and referred for investigation, the following claim: "[w]hether the agency subjected the

complainant to discrimination based on race (Asian), religion (Hindu), age (DOB: 4/13/1947),

and reprisal (prior EEO activity), when on March 7, 2006: (1) he was not selected for a position

(position title, grade, and vacancy announcement number not specified); and (2) he was not

provided information to file (not specified?)"  See Ex. 23 (Acceptance letter, dated August 3,

2006); Brammer Decl. ¶ 86.

Respectfully submitted,


\_\_/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


\_\_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


\_\_/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on the 13th of November, the foregoing Defendant's Motion

to Dismiss or, in the Alternative, for Summary Judgment, Defendant's Memorandum in Support

of its Motion to Dismiss or, in the Alternative for Summary Judgment, and Defendant's

Statement of Material Facts Not in Dispute was served upon Plaintiff's counsel pursuant to the

Court's Electronic Case Filing System, addressed to:

> David A. Branch
> Law Offices of David A. Branch, P.C.
> 1825 Connecticut Avenue, N.W.,
> Suite 690
> Washington, D.C.  20009

> ___/s/_____
> JONATHAN C. BRUMER, D. C. BAR # 463328
> Special Assistant United States Attorney
> 555 Fourth Street, N.W., Room E4815
> Washington, D.C. 20530
> (202) 514-7431
> (202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. KRISHNA MURTHY,     )
             )
       Plaintiff,  )
             )
   v.          )   Civil Action No.  06-2208 (RJL)
             )
CHUCK CONNER,      )
Acting Secretary,       )
United States Department of Agriculture, )
             )
       Defendant. )
_____)

## <u>ORDER</u>

   UPON CONSIDERATION of Defendant's Motion to Dismiss or, in the Alternative, for

Summary Judgment, Plaintiff's Opposition thereto, and the entire record herein, it is this ____

day of _____, 2007,

   ORDERED that Defendant's Motion be and hereby is granted; and it is

   FURTHER ORDERED that the above-captioned action should be, and hereby is

DISMISSED from the Court's docket, with prejudice..


          _____
          RICHARD J. LEON
          United States District Court Judge


cc:  By ECF