## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DR. KRISHNA MURTHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  06-2208 (RJL) |
| | ) | |
| CHUCK CONNER[1], | ) | |
| Acting Secretary, | ) | |
| United States Department of Agriculture, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## NOTICE OF FILING OF EXHIBITS

On November 13, 2007, the undersigned counsel filed (1) *Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment*; (2) *Defendant's Memorandum in Support of its Motion to Dismiss or, in the Alternative for Summary Judgment*; (3) *Defendant's Statement of Material Facts Not in Dispute*; and (4) a proposed order granting Defendant's Motion.  See Docket Entry No. 24.

The undersigned counsel files herewith a copy of the 32 exhibits (one of which has three subparts) which are meant to accompany his Motion.  Defendant further advises this Court that, due to the substantial number of Defendant's exhibits (and the length of a few of them), a courtesy copy of the exhibits will be filed in paper form with chambers.  See LCvR 5.4(e).

---

[1] By operation of Fed. R. Civ. P. 25(d), Chuck Conner, the Acting Secretary of Agriculture, is substituted for Mike Johanns, the former Secretary of Agriculture, who resigned from his position as the Secretary of Agriculture on September 20, 2007.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on this 14th day of November, 2007, the foregoing *Notice of Filing of Exhibits* and a set of the accompanying 32 exhibits were all served upon Plaintiff's counsel pursuant to the Court's Electronic Case Filing System, addressed to:

> David A. Branch
> Law Offices of David A. Branch, P.C.
> 1825 Connecticut Avenue, N.W.,
> Suite 690
> Washington, D.C.  20009

> __/s/_____
> JONATHAN C. BRUMER, D. C. BAR # 463328
> Special Assistant United States Attorney
> 555 Fourth Street, N.W., Room E4815
> Washington, D.C. 20530
> (202) 514-7431
> (202) 514-8780 (facsimile)

# EXHIBIT   1

January 21, 2004 Order and January 27, 2004 Order Approving Notice of Settlement to be sent by regular U.S. mail, and January 26, 2007 Joint Motion for Approval of Revised Notice of Settlement and Stay of Deadline to Send Notice Pending Order (dated January 26, 2004)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

|  |  |
|---|---|
| Arun C. Basu, *et al.*,            ) <br>      Complainants,      ) <br>                    ) <br>          v.           ) <br>                    ) <br> Ann M. Veneman,            ) <br> Secretary,                  ) <br> Department of Agriculture,    ) <br>      Agency.              ) <br>                    ) | EEOC No. 100-A1-7863X <br><br> Agency No.  000190 <br><br> Date: **January 21, 2004** |

<u>**ORDER**</u>

On November 17, 2003, the parties submitted a Joint Motion For Approval of Settlement Agreement, along with a copy of the proposed settlement agreement. The parties also included a proposed notice of resolution. Pursuant to 29 C.F.R. § 1614.204(g)(4) (2003), the Agency shall, consistent with the manner proposed in the motion,[1] notify all class members of the resolution of the above-captioned within ten (10) days of the date of this Order (mailings should be postmarked within that time frame). I find that Provisions 1 through 5 of the proposed Notice are appropriate. With regard to Provision 6, the parties are advised that the regulations governing class actions in the Federal sector EEO process do not require a Fairness Hearing. Rather, the regulations provide that the administrative judge will review the notice of resolution, any petitions to vacate which are filed, and then determine whether the resolution is "fair, adequate and reasonable to the class as a whole." 29 C.F.R. § 1614.204(g)(4). In the event the undersigned determines that there are legitimate questions concerning the fairness, adequacy, and reasonableness of the resolution, he will, with appropriate notice, schedule a Fairness Hearing to address those questions. If the undersigned, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable

---

[1] Specifically, the motion proposes that certain identified class members will be provided notice by regular mail, and that the notice will also be posted on the Agency's web site and in appropriate Agency bulletins. Motion at 13.

to the class as a whole, he will issue a decision to that effect which will thereby make the resolution binding on all class members.

Accordingly, it is hereby ORDERED that Provision 6 be modified to state the following:

Within 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents, or is otherwise not fair, adequate and reasonable to the class as a whole. Petitions are to be filed with Administrative Judge Andrew Culbertson at 1400 L Street, N.W., Suite 200, Washington, D.C. 20005. In the event the Administrative Judge determines that there are legitimate questions raised concerning the fairness, adequacy, or reasonableness of the resolution, a Fairness Hearing will be scheduled to address those questions. If the Administrative Judge, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole, he will issue a decision to that effect which will thereby make the resolution binding on all class members.

Finally, the parties are advised that a copy of the notice of resolution should be sent to the undersigned at the time of its issuance.

It is so ORDERED.

Andrew Culbertson
Administrative Judge

Copies to:

James P. Hood, P.C.
By facsimile at (202) 371-2535

Steven C. Brammer, Esq.
By facsimile at (202) 720-4089

2



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

## FACSIMILE COVER PAGE

TO:        James P. Hood, P.C.
           (202) 371-2535

           Steven C. Brammer, Esq.
           (202) 720-4089

FROM:      Administrative Judge Andrew Culbertson
           Equal Employment Opportunity Commission
           Telephone: (202) 275-6686

DATE:      January 21, 2004

SUBJECT:   Order in *Basu v. USDA*

PAGES:     3  (including cover page)



### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
#### Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

|  |  |
|---|---|
| Arun C. Basu, *et al.*, <br>     Complainants, <br><br>     v. <br><br> Ann M. Veneman, <br> Secretary, <br> Department of Agriculture, <br>     Agency. | EEOC No. 100-A1-7863X <br><br><br> Agency No.  000190 <br><br><br> Date: **January 27, 2004** |

### ORDER

On January 26, 2004, the parties filed a joint motion for approval of a revised notice of resolution which includes several revisions to the notice of resolution that was submitted for approval on November 17, 2003. That motion is GRANTED, and the revised notice of resolution is approved. The Agency shall, consistent with the manner proposed in the November 17, 2003, motion,[1] notify all class members of the resolution of the above-captioned within twenty (20) days of the date of this Order (mailings should be postmarked within that time frame).

It is so ORDERED.

Andrew Culbertson
Administrative Judge

---

[1] Specifically, the motion proposes that certain identified class members will be provided notice by regular mail, and that the notice will also be posted on the Agency's web site and in appropriate Agency bulletins. Motion at 13.

Copies to:

James P. Hood, P.C.
By facsimile at (202) 371-2535

Steven C. Brammer, Esq.
By facsimile at (202) 720-4089



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

---

## FACSIMILE COVER PAGE

---

TO:        James P. Hood, P.C.
           (202) 371-2535

           Steven C. Brammer, Esq.
           (202) 720-4089

FROM:      Administrative Judge Andrew Culbertson
           Equal Employment Opportunity Commission
           Telephone: (202) 275-6686

DATE:      January 27, 2004

SUBJECT:   Order in *Basu v. USDA*

PAGES:     3  (including cover page)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
**1400 L STREET, NW, SUITE 200**
**WASHINGTON, D.C.  20005**

| | |
|---|---|
| **ARUN BASU, et al.,** ) | |
| ) | |
| **Class Agents,** ) | |
| ) | |
| v. ) | **EEOC No. 100-A1-7863X** |
| ) | **Agency No. 000190** |
| **ANN VENEMAN,** ) | |
| **Secretary, U.S. Department of Agriculture,** ) | |
| ) | |
| **Agency.** ) | **Administrative Judge:** |
| ) | **Andrew Culbertson** |
| ) | |

## JOINT MOTION FOR APPROVAL OF REVISED NOTICE OF SETTLEMENT AND STAY OF DEADLINE TO SEND NOTICE PENDING ORDER

The parties, Class Agent Arun Basu on behalf of the Settlement Class ("Class" or "Class Members"), and the United States Department of Agriculture ("USDA" or "Department"), jointly move for approval of the attached revised Notice of Settlement.  By Order dated January 21, 2004, the Administrative Judge of the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") approved a prior Notice of Settlement sent by the parties. Subsequently, the parties discovered that the Notice that was previously sent to the Administrative Judge for approval was not the final version of the Notice upon which the parties agreed.

The final Notice of Settlement, upon which the parties agreed, is attached hereto as Exhibit A.  This Notice contains no major substantive changes from the prior Notice, except for the revised language of the persons included in the Settlement Class, which mirrors the language used in the proposed Settlement Agreement.  This Notice also gives a more detailed description of proposed Individual Relief and Attorney's Fees under the proposed Agreement.  This Notice

also revises language in the section of the Notice titled "Effective Date and Length of Settlement" to correctly change the date October 3, 2003 to October 16, 2003. Finally, the Agency has incorporated the Administrative Judge's language for Section 6 of the proposed Notice to replace the prior language.

The parties regret the clerical error resulting in the incorrect Notice of Settlement's attachment to the Joint Motion for Approval of Settlement Agreement. The parties respectfully request that the Commission stay the ten-day period for mailing the proposed Notice of Settlement until there is an Order on this revised Notice of Settlement.

CONCLUSION

For the foregoing reasons, Class Agents and USDA jointly request that the EEOC approve the attached revised Notice of Settlement, and stay the deadline for mailing such Notice until the Administrative Judge rules on this Joint Motion.

Date: January 26, 2004

Respectfully submitted,


_James Hood / by permission Steven Brammer_
JAMES HOOD, ESQ.
Class Counsel


_Steven C. Brammer_
ROBERT HARDIN, ESQ.
STEVEN C. BRAMMER, ESQ.
Agency Representatives

# EXHIBIT   2

February 17, 2004 Letter from OGC to K. Murthy, outlining terms of proposed individual settlement, with FedEx delivery sheet, and evidence of receipt, attaching:

    a.        Notice of Settlement, advising on how to object if desired;

    b.        October 31, 2003 Settlement Agreement, giving specific procedures re enforcement or breach at pages 15-17

February 18, 2004 E-Mail from Fed Ex to Steven Brammer of USDA's OGC



| United States | Office of the | Washington, |
| Department of | General | D.C. |
| Agriculture | Counsel | 20250-1400 |

February 17, 2004

Dr. Krishna Murthy
7715 Lear Road
McLean, VA 22102

**Re:**    **Arun Basu v. Veneman** **Proposed Class Action Settlement**
**EEOC No. 01A10660, Agency No. 000190**

Dear Dr. Murthy:

You are hereby notified of the proposed Settlement Agreement signed by the United States
Department of Agriculture ("USDA") and the Class Agent Arun Basu on behalf of himself and
the Class Members. The parties have determined that your claims fall within Tier One of the
proposed Settlement Agreement. As a result, it is proposed that you will receive the following,
for settlement of pending claims of employment discrimination:

a.    Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all
      pecuniary and non-pecuniary damages;
b.    Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical
      Officer, Office of Program and Policy Development, New Technology Staff;
c.    Office of Personnel Management Leadership Training to be determined within 60 days of
      a signed settlement agreement; and
d.    Reasonable attorneys' fees to be paid according to Section VII E of the proposed
      settlement Agreement.

Other details regarding the Settlement Agreement, including injunctive relief and information on
how to contact Class Counsel or the Administrative Judge is attached in the Notice required by
the U.S. Equal Employment Opportunity Commission ("EEOC") under 29 C.F.R. § 1614.204(e).
If you are represented by an attorney, you must consult with your attorney with regard to this
matter and provide the attached documentation to him or her.

Very truly yours,

Arlean Leland
Associate General Counsel
Civil Rights Division

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
**1400 L STREET, NW, SUITE 200**
**WASHINGTON, D.C. 20005**

| | |
|---|---|
| **ARUN BASU, et al.,** ) | |
| ) | |
| **Class Agents,** ) | |
| ) | |
| v. ) | **EEOC No. 100-A1-7863X** |
| ) | **Agency No. 000190** |
| **ANN VENEMAN,** ) | |
| **Secretary, U.S. Department of Agriculture,** ) | |
| ) | |
| **Agency.** ) | **Administrative Judge:** |
| ) | **Andrew Culbertson** |
| ) | |

## NOTICE OF SETTLEMENT

TO:        Potential Class Members

FROM:    Arlean Leland, Associate General Counsel, Office of the General Counsel (OGC),
United States Department of Agriculture (USDA)

You are hereby notified that you have been identified as a potential Class Member in the above-mentioned Class complaint.  In addition, you are provided with the following information pursuant to 29 C.F.R. §1614.204(e):

**1.      The name of the Agency or organizational segment and its location.**

The Class Action complaint is filed against the United States Department of Agriculture ("USDA" or the "Department") agency-wide at all locations.  The USDA headquarters address is 1400 Independence Ave., S.W., Washington, D.C. 20250.  The Secretary of Agriculture is Ann Veneman.

**2.      A description of the issues accepted as part of the Class complaint:**

Complainant, a GS-15 Sociologist with the USDA Natural Resources Conservation Service ("NRCS") filed a formal complaint dated November 18, 1999 on behalf of a Class consisting of any Asian/Pacific Islander employees of the agency at any grade level between 1994 to the present.  Complainant alleged that based on race/national origin (South Asian), color (brown), religion (Hindu and Islam) and in reprisal for prior EEO activity the Class Members were discriminated against in promotions, demotions, details, stripped of managerial duties and responsibilities, selections, unresolved EEO complaints, terminations, and reprisals.

On June 27, 2001, the EEOC conditionally certified the Class as, "All Asian/Pacific employees of the agency who were eligible for but have not received promotions and all Asian/Pacific persons who have applied for positions with the agency but have not been selected."

3.   **An explanation of the binding nature of the resolution of the complaint on Class Members:**

   a.   **Settlement Agreement**

The following terms of this Settlement Agreement ("Settlement" or "Agreement") were reached after negotiations between the parties. The parties are requesting that the Administrative Judge assigned to the case, EEOC Administrative Judge Andrew Culbertson, approve this Class Action Settlement Agreement under 29 C.F.R. §1614.204(e).

   b.   **Parties to the Settlement**

The parties to the Settlement include Class Agent Arun Basu, on behalf of himself and the Settlement Class, and the Department.

   c.   **Persons Included in the Settlement Class**

"All current Asian/Pacific Islander employees at the GS-7 level and above who were

eligible for but have not received promotions and all Asian/Pacific Islander current

employees who were eligible for and have applied for positions with the Department but

have not been selected."

   d.   **Terms of Settlement**

Generally: As of the Effective Date, and continuing for the length of the Settlement, the

Department has proposed terms to aid in career development and advancement.

Special Provisions: In order to fully effectuate the Settlement, the Parties agreed to the

following provisions:

A.   Injunctive Relief

   a.   The Department will establish a pilot Development Opportunity Placement

      Program (DOPP) that provides qualified and eligible Class Members who

      apply with Priority Consideration for a finite period in a nationwide

      program designed to provide details, temporary promotions or

      developmental assignments to positions in USDA Headquarters and Field

      Office Locations.

   b.   The Department will establish a Graduate Scholarship Program.

   c.   The Department will conduct a regional Department-wide job fair.

2

    d.    The Department will review, update and issue Department-wide Affirmative Employment Plans ("AEPs").

    e.    The Department will ensure that all Asian/Pacific Islander employees Grades 7 and above have current up-to-date IDPs.

    f.    <u>Reporting and Monitoring</u>. A Departmental Liaison working under the supervision of the Assistant Secretary of Civil Rights will work with the Class Agents and USDA agencies on implementation and monitoring of this Agreement.

B.    <u>Individual Relief</u>.

Individual Relief will be provided under the following categories:

<u>Tier One</u>: The Parties agree that the six (6) Class Agents listed in <u>Exhibit 1</u> have individual claims of employment discrimination which shall be resolved by the Terms of Individual Settlement Agreements.

    <u>Offer of Relief</u>: Individual Agreements sent to individual Class Members, and injunctive relief.

<u>Tier Two</u>: Global resolution of all other named Class Agents.

    <u>Offer of Relief</u>: Lump sum payment of Three Hundred Seventy-Two Thousand Five Hundred Dollars ($372,500) to have Class Agents share at their discretion, and injunctive relief.

<u>Tier Three</u>: All other cases subsumed under the Class definition pending at the EEOC, Federal District Court, or Federal Circuit Court of Appeals.

    <u>Offer of Relief</u>: (a) <u>Federal District Court</u> - Lump sum of Seven Thousand Five Hundred Dollars ($7,500) plus attorney fees incurred since filing in Federal Court; injunctive relief; (b) <u>EEOC</u> - Lump sum of Five Thousand Dollars ($5,000) or expedited hearing and injunctive relief.

<u>Tier Four</u>: All Asian/Pacific Islander employees who fall under the Class definition, but did not file a complaint of employment discrimination.

    <u>Offer of Relief</u>: Injunctive relief

3

C.   <u>Attorneys' Fees</u>. Three Hundred and Fifty Thousand Dollars ($350,000) in reasonable attorneys' fees to all attorneys representing Class Agents and Class Members described in Tier One. Funds to be transferred to an account established by Class Agent Basu for appropriate distribution within thirty (30) days from the Effective Date of this Agreement. Attorneys must acknowledge payment by co-signing Individual Agreements and the Withdrawal Letter under <u>Exhibit 2</u>.

All attorneys' fees for Dr. Mon Yee in Tier One and Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two, Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by USDA, contingent upon their acceptance of Settlement Offer.

Five Tier Two complaints before EEOC will also be offered attorneys' fees by USDA, contingent upon their acceptance of the Settlement Offer, not to exceed Twenty Five Thousand Dollars ($25,000).

D.   <u>Effective Date and Length of Settlement</u>. The Settlement will go into effect on October 16, 2003, or on the date on which the EEOC approves the Settlement, whichever is later. The Settlement will remain in effect for three (3) years.

**4.   Options for Settlement Class Members**

A.   You may do nothing, and you will remain a Class Member and be both entitled to and bound by the terms of equitable and injunctive relief set out in the Settlement if it is approved under 29 C.F.R. §1614.204(g).

B.   You may object to the Settlement, if you follow the instructions for Fairness Hearing and Process for Objections that is set forth below.

**5.   The names, addresses and telephone numbers of the Class representative:**

James P. Hood, Esq.
1226 Eleventh St., N.W.
Washington, D.C. 20001
FAX: (202) 371-2535
PHONE: (202) 289-1130

4

6.     **Fairness Hearing and Process for Objections**

Within 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents, or is otherwise not fair, adequate and reasonable to the class as a whole. Petitions are to be filed with Administrative Judge Andrew Culbertson at 1400 L Street, N.W., Suite 200, Washington, D.C. 20005. In the event the Administrative Judge determines that there are legitimate questions raised concerning the fairness, adequacy, or reasonableness of the resolution, a Fairness Hearing will be scheduled to address those questions. If the Administrative Judge, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole, he will issue a decision to that effect which will thereby make the resolution binding on all class members.

In addition, copies of any petition sent to the Administrative Judge must also be mailed or sent via facsimile to each of the addresses below:

Counsel for Class:

James P. Hood, Esq.

1226 Eleventh St., NW

Washington, DC 20001

Fax: (202) 371-2535

Counsel for USDA:

Arlean Leland, Esq.

1400 Independence Ave., SW

Room 3312-S

Washington, DC 20250-1419

Fax: (202) 720-4089

5

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
**1400 L STREET, NW, SUITE 200**
**WASHINGTON, D.C. 20005**

ARUN BASU, et al.,                              )

        Class Agents,                        )

        v.                                            )      EEOC No. 100-A1-7863X
                             )      Agency No. 000190

ANN VENEMAN,                                   )
Secretary, U.S. Department of Agriculture,     )

        Agency.                              )      **Administrative Judge:**
                             )      **Andrew Culbertson**

## SETTLEMENT AGREEMENT

### I. INTRODUCTION AND NATURE OF THE CASE

This Settlement Agreement ("Settlement Agreement" or "Agreement") is entered into between Class Agents Arun Basu, et al., representing the interests of the class of individuals defined below ("Complainants") and the United States Department of Agriculture ("USDA" or the "Department") and constitutes a full, complete, voluntary and final settlement of all issues and concerns raised in the Complainants' Equal Employment Opportunity ("EEO") complaint, U.S. Equal Employment Opportunity Commission ("EEOC" or the "Commission") No. 100-A1-7863X, Agency No. 000190 ("Class Complaint"). The Department acknowledges the efforts of the Organization of South Asian Americans in Agriculture ("OSAAA"), for its leadership and efforts in settling this Class Complaint. There are no other terms, written or oral, that are not included in the text of this Agreement. The issues addressed in the Class Complaint are as follows:

On November 18, 1999, lead Class Agent, Dr. Arun Basu, filed a formal complaint of employment discrimination on behalf of a proposed class of Asian/Pacific Islander employees of the Department at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) been stripped of managerial duties and responsibilities; (5) not been selected for a position



1



1    with managerial duties or responsibilities; (6) been subjected to reprisal for filing; (7) filed a

2    discrimination complaint which had not been resolved; or (8) been terminated from their

3    positions, and thereafter filed a discrimination complaint.  The Class Complaint alleges that the

4    Department subjected the proposed Class Members to discrimination on the bases of race,

5    national origin, color, religion, and in reprisal for prior protected EEO activity.

6        In a decision dated September 15, 2000, the EEOC Administrative Judge assigned to this

7    case denied certification of the proposed Class because Complainants failed to meet the four

8    criteria for Class certification, *i.e.*, commonality, typicality, numerosity, and adequacy of

9    representation, required by 29 C.F.R. § 1614.204(a)(2).  In addition, the Administrative Judge

10   concluded that all claims unrelated to a discriminatory failure to promote claim had been

11   abandoned.  On October 4, 2000, the Agency issued its final decision accepting the

12   Administrative Judge's denial of certification.  On December, 6, 2000, Complainants filed an

13   appeal with the EEOC's Office of Federal Operations ("OFO").

14       On June 27, 2001, the OFO issued a Decision conditionally certifying a Class defined as,

15   "All Asian employees of the agency who were eligible for but have not received promotions and

16   all Asian persons who have applied for positions with the agency but have not been selected."

17   The OFO reversed the Administrative Judge's denial of certification and held that the Class

18   satisfied the commonality, typicality and numerosity requirements, but conditionally certified the

19   Class to obtain counsel who satisfied the adequacy of representation requirement.  For the

20   purposes of this Settlement Agreement, the Class is defined as:  "All current Asian/Pacific

21   Islander employees at the GS-7 level and above who were eligible for but have not received

22   promotions and all Asian/Pacific Islander current employees who were eligible for and have

23   applied for positions with the Department but have not been selected."

24       In the interest of resolving this action without the need for further litigation, and without

25   any admission of liability by any Party, the Parties hereby agree to the following terms on which

26   this action is to be fully and finally resolved.

27

28   

2

  

# DEFINITIONS AND GENERAL TERMS

A. <u>Definitions</u>

As used in this Agreement, the following terms have the meanings specified below:

1. "Agency" means a subcomponent agency of the U.S. Department of Agriculture.

2. "Civilian Labor Force" ("CLF") means those individuals represented by the relevant civilian labor force. For the purposes of this Agreement only, the Parties agree that the best available statistics for identifying the relevant civilian labor force are those contained in the most current EEOC CLF Data.

3. "Class Agent" means an individual designated as representing the Class in this action.

4. "Class" means all current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected.

5. "Class Member" or "Member of the Class" means a person who falls within the definition of the Class.

6. "Department" means the United States Department of Agriculture or "USDA."

7. "Effective Date" means 180 days from the date of approval from the EEOC Administrative Judge of this Agreement.

8. "Expiration Date" means midnight, three years from the Effective Date as described in A (7) of this Agreement.

9. "Parties" means, collectively, Class Agents, Class Members, Complainants, and the Department.

10. "Employment Compliance Review" means a focused evaluation of a USDA agency's employment policies and practices, including but not limited to: retention, selection, hiring, placement, training and career enhancement, language

3





barriers, accessibility for persons with disabilities, and lack of representation at
specific grade levels or in specific job classification series.

11. "Fairness Hearing" means a hearing by the Administrative Judge pursuant to 29
C.F.R § 1614.204(g)(4) to consider whether resolution is fair, adequate and
reasonable to the Class as a whole.

12. "Development Opportunity Placement Program ("DOPP")" means a pilot
developmental program established for the purpose of providing opportunities for
all eligible and qualified employees to serve on details, temporary promotions and
developmental assignments.

13. "Priority Consideration" means that a Class Agent is not guaranteed selection, but
must be considered before any formal action to recruit for the vacancy and must be
given bona fide consideration on his or her own merit, without competition with
other potential candidates. For purposes of this Agreement, Priority Consideration
shall apply to DOPP only and not to Class Members applying for a promotion or
seeking another position in the Department.

14. "Detail" means temporary assignment of an employee to perform duties outside
the scope of his or her normal position or to perform services for an organization
other than the one to which he or she is appointed.

15. "Temporary Promotion" means limited promotion to an established vacant
position, temporary position, or project to meet the temporary needs of the
organization.

16. "Developmental Assignment" means rotation(s) that provide employees the
opportunity, at the appointing authority's discretion, to explore new assignments
or jobs, and to provide agencies the opportunity to enhance employee development
or to make more effective use of staff.

17. "Under-representation" means a percentage lower than the expected amount
according to the EEOC relevant CLF.

4







18. "Subsumed Cases" means administrative complaints of employment discrimination that fall under the Class definition that were filed between 1994 and the present. Present is defined as September 2, 2003 for the purpose of this Agreement.

B. General Terms

1. Term of Agreement. The term of this Agreement is three years, except as provided below in this paragraph. This Agreement and all its provisions will expire and will be without force and effect as of the Expiration Date, except that (1) in the event that an Employment Compliance Review ("Compliance Review") concludes that the agency is in non-compliance based upon good faith effort by the Department as delineated in Section 717 of Title VII of the Civil Rights Act of 1964, as amended in 1991 and related statutes and regulations, then the specific obligation(s) that is the subject of the Compliance Review shall be extended for an additional period of time; and (2) this time limitation does not apply to the effect of this Agreement on other claims as described in Section VII below.

2. Persons Covered By Agreement. The Class covered by and eligible for relief under this Agreement is defined in Section VII.

3. Non-Admission of Liability. This Agreement does not constitute an admission of the merits of any position taken by any Party to this litigation, nor of any liability by the Department for the violation of any law, statute, regulation, or policy. The Department expressly denies any wrongdoing or liability.

4. Anti-Deficiency Act. All commitments for expenditure of funds under this Agreement shall be subject to the availability of funding consistent with fiscal and appropriations law.

## III. EFFECT OF AGREEMENT

A. Withdrawal and Closing of Complaints

5




1.    Any Class Agent or Class Member who, at the Effective Date, has a pending formal individual EEO complaint of discrimination on the basis of race or national origin as to non-selection or promotion must withdraw his or her EEO complaint within fifteen (15) days of the Effective Date of this Agreement, by signing the letter attached as **Exhibit A.** The Department's Office of Civil Rights will send required notification to the EEOC and the affected USDA agency that these complaints are closed.

2.    Any Class Agent or Class Member who, at the Effective Date of this Agreement, has a pending Federal District Court complaint or appeal in a Federal Circuit Court of Appeals on the basis of race or national origin as to non-selection or promotion must show proof of withdrawal of the complaint from Federal District Court or withdrawal of the appeal from the Federal Circuit Court of Appeals within fifteen (15) days of the Effective Date of this Agreement.

## IV.  DUTIES AND OBLIGATIONS

A.    It is the intention of the Department to undertake and continue specific measures designed to eliminate barriers to hiring, promotion, and retention of Asian/Pacific Islander applicants and employees in the Department's workforce.  The Department shall undertake in good faith the specific measures set forth in Sections V and VI of this Agreement to eliminate such barriers.

1.    Goal. It is the goal of the Department to increase Asian/Pacific Islander employee representation in the agencies determined to have under-representation.

2.    Statement on Preferences.  Nothing contained in this Agreement will obligate the Department to create new positions, to fill any particular position, or to promote, select, or assign any particular person to any

6




particular position to meet any specific goal or quota of this Agreement. No provision of this Agreement, is intended as, or may be construed as imposing, a quota.

B. <u>Employment Compliance Reviews</u> - A focused evaluation of the employment and affirmative action records of each USDA agency which shows statistical under-representation of Asian/Pacific Islander employees will be conducted within the three-year period of this Agreement by the Department's Office of Civil Rights. The evaluation will determine if the agency adheres to non-discriminatory practices and is exerting good faith efforts to meet the goals of an affirmative equal employment opportunity policy and program. The evaluation shall consist of a comprehensive analysis of the agency's employment policies and practices, including, but not limited to: retention, selection, hiring, placement, training and career enhancement, language barriers, accessibility for persons with disabilities, and lack of representation at specific grade levels or in specific job classification series. An agency will be deemed in non-compliance based upon evidence that the agency has failed or refused to comply with Section 717 of Title VII of the Civil Rights Act of 1964, as amended in 1991, and related statutes and regulations.

C. The Assistant Secretary for Civil Rights will appoint an appropriate individual from his staff to serve as a Liaison ("Departmental Liaison"). The Departmental Liaison, under the supervision and authority of the Assistant Secretary for Civil Rights, shall define the focus of these employment compliance reviews no later than 180 days from the date upon which this Agreement has become final after approval from the EEOC Administrative Judge. No Class Agent, Class Member, or the other person directly and personally affected by this Agreement will as serve as Department Liaison.

D. The Assistant Secretary for Civil Rights shall incorporate the following language into the Department's policy statement to be issued as the Parties agree:

7





"AEPs -The Department agrees to implement the policy guidance and standards for establishing and maintaining affirmative programs of EEO under Section 717 of Title VII (PART A) as delineated in the EEOC's Equal Employment Opportunity Management Directive 715 (EEO MD-715) that become effective October 1, 2003. Based on the policy guidance requirement, the Forest Service, Natural Resource and Conservation Service, Farm Services Agency, Rural Housing Service, Agricultural and Marketing Service, Office of Chief Financial Officer, Grain Inspection, Packers and Stockyard Administration, and National Agricultural Statistical Service agree to submit to the Departmental Liaison at the end of each fiscal year during the life of this Agreement an employment plan that will reflect agency self-assessments and the removal of barriers to free and open workplace competition."

## V. METHODS OF IMPLEMENTATION

A.  <u>Implementation and Monitoring of Agreement</u>:  The Departmental Liaison will work with the Class Agents and USDA agencies on implementation and monitoring of this Agreement. Each USDA agency which shows statistical under-representation of Asian/Pacific Islander employees will appoint an appropriate individual at no lower than the GS-15 level to work with the Departmental Liaison on implementation and monitoring of this Agreement within the agency. These USDA agencies cited herein will be required to provide an annual report to the Department's Assistant Secretary for Civil Rights on the status of their efforts as required under this Agreement. The report will be due on September 30th of each year during the Term of the Agreement.

B.  <u>Duties of Departmental Liaison</u>

The duties of the Departmental Liaison shall include, but not be limited to:

1.  Monitoring compliance with this Agreement. In carrying out his/her responsibilities, the Departmental Liaison may be responsible for:

8





a.    Developing and recommending changes, modifications or
      adjustments to this Agreement, in writing, to the Assistant Secretary
      for Civil Rights, or his designee, to the extent necessary to
      effectuate this Agreement's purposes; and

b.    Reviewing reports required by this Agreement, including, but not
      limited to, Compliance Review reports, and making appropriate
      recommendations based on such reports.

2.    The Departmental Liaison will develop and publish a uniform Department
policy for the notification to all qualified internal Department candidates
for merit promotion vacancies within the first year of this Agreement.

## VI.    INJUNCTIVE RELIEF

1.    Development Opportunity Placement Program ("DOPP"): In the Class
Complaint, the Class Agents raised allegations of discrimination in
selection for promotions and details.  Our current work environment
provides an excellent opportunity to address this allegation through the
provision of career development and growth opportunities.

Within 180 days from the Effective Date of this Agreement, the
Department will create a pilot DOPP.  This program will be established in
the USDA agencies to which the named Class Agents are currently
assigned.  As Class Agents, these individuals represent the claims of Class
Members, and have identified concerns about promotions and details in the
Class Complaint.  Thus, DOPP is established in the following agencies:
Food and Safety Inspection Service, Agricultural Research Service, Farm
Service Agency, Office of Civil Rights, Natural Resources Conservation
Service, and Animal and Plant Health Inspection Service.  DOPP will be
open to all employees who are qualified and eligible to participate in this
program, as described below.  Class Agents who are qualified and eligible

9





and who apply as described below will receive Priority Consideration for the first eighteen (18) months after the program becomes effective.

### Program Description

a.  DOPP will serve as a nation-wide program to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in Headquarters and Field Office locations. DOPP will be subject to funding availability. Agencies required to participate in DOPP, listed above, will make available no less than two (2) opportunities annually for the Term of the Agreement. The details, temporary promotions or developmental assignments will be for a minimum of 31 (thirty-one) days and will cover all pay grade levels. The Department will develop a user-friendly web site describing DOPP and opportunities will be posted on the website using a link to the Department's Office of Civil Rights' web site.

b.  Each detail, temporary promotion or developmental assignment must be filled due to an actual vacancy due to persons being on extended leave, or unplanned vacancies for which an agency is recruiting, or vacancies where the incumbent is on a temporary assignment elsewhere. Class Agents who are qualified and eligible to participate in this program and who apply as described below will receive Priority Consideration for those details, temporary promotions or developmental assignments for which they are eligible and qualified, for a period of eighteen (18) months from the Effective Date of this Agreement.

### How the Program Will Work

10




c.   USDA agencies in meeting their obligation to fill six (6) DOPP slots over a three-year period must contact the Departmental Liaison electronically to begin the process of posting a DOPP Opportunity. The DOPP Opportunity will outline specific information such as Position Title, Location, Description of Duties, Start Date, Duration of Assignment, Temporary Promotion Potential, and Funding Arrangements. The Departmental Liaison will notify all eligible employees for Priority Consideration under this Agreement.

d.   Employees interested in applying must submit resumes to the Departmental Liaison, who will then work closely with the USDA agency in need of filling a vacancy to review the pool of interested employees and to consider selection of one or more of the employees to complete the detail, temporary promotion or developmental assignment.

e.   All information concerning procedures and eligibility for DOPP will be developed within 180 days from the date upon which this Agreement has become final after approval from the EEOC Administrative Judge.

2.   <u>Graduate Scholarship Program</u>: The Department will establish a Graduate Scholarship Program to provide funding for graduate school as a preparation for a career in government service with the Department. Within 180 days from the Effective Date of this Settlement Agreement, the Department will establish such a program for Masters and PhD students in the following agencies: Forest Service; Natural Resources Conservation Service; Farm Service Agency, Rural Housing Service; Agricultural Marketing Service; Office of the Chief Financial Officer; Grain Inspection

11





Packers and Stockyards Administration; and, National Agricultural Statistics Service. This program will be designed to recruit individuals to work for the Department after completion of graduate course work in particular disciplines. The Departmental Liaison, with the participation and assistance of affected agencies, will establish requirements for eligibility, eligible fields of study, selection criteria and all other details of this program. Other agencies will be encouraged to actively participate in this program, but will not required to participate.

Annually, the Natural Resources Conservation Service and Forest Service will sponsor a total of six (6) scholarships, and Farm Service Agency, Rural Housing Service, Agricultural Marketing Service, Office of the Chief Financial Officer, Grain Inspection Packers and Stockyards Administration, and National Agricultural Statistics Service will sponsor one scholarship each year. There will be a total of thirty-six (36) scholarships provided by the Department for the Term of the Agreement. The Graduate Scholarship Program will be subject to funding availability. If funding is not available at the time this Agreement is implemented, then the Agreement will be extended until this term is met.

3. Job Fair: The Department will conduct a Department-wide job fair at four (4) regional locations for employment in the job categories where the Department's Asian/Pacific Islander population is statistically under-represented. The job fair will be sponsored by the Forest Service, Natural Resources Conservation Service, Farm Service Agency, Rural Housing Service, Agricultural Marketing Service, Office of the Chief Financial Officer, Grain Inspection Packers and Stockyards Administration, and National Agricultural Statistics Service. Other agencies will be encouraged to participate. The job fair will be held in the four quadrants of the United

12





States and online. Within 180 days from the Effective Date of this Agreement, the Departmental Liaison will set forth specific dates and other details for the job fair.

4. <u>Agency Policy Development</u>.

    a.   <u>Department-wide AEPs</u>: The Department's Assistant Secretary for Civil Rights or his designee will review, update and issue a Department-wide Affirmative Employment Plan ("AEP") to ensure that all appropriate issues related to the Class Members are addressed in the plan.

    b.   <u>Agency AEPs</u> - The Department's Assistant Secretary for Civil Rights or designee and the Departmental Liaison will work with USDA agencies to ensure that they have current and comprehensive AEPs.

5. <u>Individual Development Plans (IDPs)</u>: Every employee shall have a current and up-to-date IDP. This Agreement provides that each USDA agency, at the request of the Class Member, is required to review the IDP of said Class Member to ensure that it is current and up-to-date and has identified appropriate training specifically tailored to enhance the Class Member's job performance. Where the IDP is not current and up-to-date, the agency will be required to take the necessary steps to update the Class Member's IDP as outlined above, within 180 days from the Effective Date of this Agreement, subject to valid provisions of existing collective bargaining agreements and availability of funding. If funding is not available at the time this Agreement is implemented, then the Agreement will be extended until this term is met.

## VII. <u>INDIVIDUAL RELIEF</u>

A.   <u>Tier One</u>: The Parties agree that the Class Agents listed in Exhibit 1 have

13




individual claims of employment discrimination which shall be resolved by the terms of Individual Agreements; and such Class Agents identified shall share in injunctive relief described in this Agreement.

[See Exhibit 1]

Offer of Relief: Individual Agreements sent to individual Class Members.

B.    Tier Two: Global resolution of all individual claims of employment discrimination of other named Class Agents.

Offer of Relief: Lump sum payment of Three Hundred Seventy-Two Thousand Five Hundred Dollars $372,500) for these Class Agents to share at their discretion; injunctive relief. Funds to be transferred to an account established by Class Agent Basu for appropriate distribution within thirty (30) days from the Effective Date of this Agreement.

[See Exhibit 2]

C.    Tier Three: Global resolution of all other individual claims of employment discrimination subsumed under the Class definition.

[See Exhibit 3]

Offer of Relief:

(a) Claims pending in Federal District Court or Federal Circuit Court of Appeals: Lump sum payment to Plaintiffs falling within Class definition of Seven Thousand Five Hundred Dollars ($7,500) each plus attorney fees incurred after filing in federal court as outlined in Section VII.(E), and injunctive relief.

(b) Claims pending before the EEOC: Lump sum payment of Five Thousand Dollars ($5,000) each; or expedited hearing and injunctive relief.

D.    Tier Four: All Asian/Pacific Islander employees who fall under the Class definition, but did not file a complaint of employment discrimination.

[See Exhibit 4]

Offer of Relief: Injunctive relief.

14





E.    Attorneys' Fees: Three Hundred and Fifty Thousand Dollars ($350,000) in reasonable attorneys' fees to all attorneys representing Class Agents and Class Members described in Tier One. Funds to be transferred to an account established by Class Agent Basu for appropriate distribution within thirty (30) days from the Effective Date of this Agreement. Attorneys must acknowledge payment by co-signing Individual Agreements and the Withdrawal Letter under Exhibit A.

All attorneys' fees for Dr. Mon Yee in Tier One and Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two, Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by USDA, contingent upon their acceptance of Settlement Offer.

Five Tier Two complainants before EEOC will also be offered attorneys' fees by USDA, contingent upon their acceptance of the Settlement Offer, not to exceed Twenty Five Thousand Dollars ($25,000) per complainant.

## VIII.    ENFORCEMENT

A.    If either Party concludes that the other Party has failed to perform its obligations under this Agreement, the following process will be used by the Parties: A Party claiming failure to comply with the provisions of this Agreement at any time during its term will give written notice of the claim to the Department Liaison and will propose a resolution of the issue. At least five (5) calendar days prior to the written notice, the Party claiming non-compliance shall orally inform opposing counsel of the intended claim.

B.    The responding Party will have thirty-five (35) calendar days following receipt of the written claim to respond, unless this period is enlarged by agreement of the Parties.

C.    If the Party asserting the claim is dissatisfied with the other Party's response or proposed resolution, or no response or proposed resolution is forthcoming within the stated time period, the Party asserting the claim may submit the issue in writing to the Departmental Liaison for his/her consideration and recommendation. The Departmental Liaison shall issue to the Assistant Secretary for Civil Rights a tentative report and recommendation, if




1   any, within thirty-five (35) calendar days of receipt of the claim, unless the time is

2   extended by agreement of the Parties or by the Departmental Liaison.

3   D.  If a Party wishes to object to the tentative report and recommendation of the Departmental

4   Liaison, it must notify the other Party of its intent to file an objection, must meet and

5   confer with the other Party, and must lodge the objection in writing with the Assistant

6   Secretary for Civil Rights and the other Party within twenty-one (21) calendar days of the

7   issuance of the tentative report and recommendation.  The objection shall state the factual

8   bases for the objection and shall set forth any supporting information.  The Parties may

9   agree to extend the time for lodging an objection, and the Assistant Secretary for Civil

10  Rights may grant a request of a Party to extend the twenty-one (21) calendar day period

11  for filing a said objection.  The Assistant Secretary for Civil Rights shall issue a ruling on

12  the objection and issue a final report and recommendation within thirty-five (35) calendar

13  days of the filing of the objection, unless the time is extended by agreement of the Parties

14  or by the Assistant Secretary for Civil Rights.

15  E.  The Parties shall be afforded a reasonable time to achieve compliance with the Assistant

16  Secretary for Civil Rights' final report and recommendation.

17  F.  If, after completing the procedures set forth in this Section at paragraphs A-F, the Party

18  asserting the claim still believes compliance with the specific obligation has not been

19  achieved, that Party may, after providing fourteen (14) calendar days' written notice to

20  opposing counsel, pursue remedies consistent with this Section.  Venue for such a claim

21  will be in the EEOC.  The Parties agree that any motion to the EEOC for enforcement or

22  any other relief pursuant to this paragraph shall be limited to enforcement of the

23  provisions contained in Sections V and VI.

24  G.  In any proceeding brought in the EEOC under this Section to enforce compliance with

25  Sections V and VI, the Department shall not be found in breach of this Agreement, and

26  the EEOC accordingly shall not order further relief, if the EEOC finds that the Department

27  has substantially complied with Sections V and VI.  If, however, the EEOC finds that the

28

16




Department is in breach, the EEOC may order specific enforcement of the provisions contained in Sections V and VI, any alternative provisions agreed upon by the parties, and/or a one-time, one-year extension of the Term of the Agreement. Nothing contained in this Agreement will obligate the Department to create new positions, to fill any particular position, or to promote, select, or assign any particular person to any particular position. No provision of this Agreement is intended as, or may be construed as imposing, a quota.

## IX.  NOTICE

A.  Notice Order and Fairness Hearing

1.  Promptly after execution of this Agreement, but in no event any later than ten (10) days after this Agreement is signed by counsel for all Parties (unless such time is extended by written agreement), the Parties will submit this Agreement (together with its Exhibits) to the EEOC and will jointly apply for entry of an order (the "Order Notice") requesting: (a) preliminary approval of the settlement set forth in this Agreement; (b) provisional certification of the Class for settlement purposes only; (c) approval for dissemination of a Notice of Proposed Settlement ("Notice"), which shall include the general terms set forth in this Agreement, to all Members of the Class; and (d) that the EEOC set the date for a fairness hearing (the "Fairness Hearing") according to 29 C.F.R. § 1614.204(g)(4). In support of their application, the Parties will submit a joint statement including the factual and legal bases for the relief contained in this Agreement. The Parties will request that, after notice is given, the EEOC hold the Fairness Hearing and finally approve the settlement of the litigation as set forth in this Agreement.

2.  The Parties will request that the Order Notice specifically include the following provisions:

a.  Preliminarily approve this Agreement and the settlement set forth as being fair, just, reasonable, and adequate to the Class;

17





b.    Provisionally certify the Class for settlement purposes only;

c.    Approve the form of Notice for dissemination to Members of the Class;

d.    Direct the Department to disseminate the Notice on or before the date specified in the Order Notice to all Members of the Class and current Department employees by regular mail, internal mail, or electronic transmission, and by appropriate posting on the Department web sites;

e.    Find that the Notice constitutes the best notice practicable under the circumstances, including individual notice to all persons in the Class who can be identified upon reasonable effort, and constitutes valid, due, and sufficient notice to all persons in the Class, complying fully with the requirements of 29 C.F.R. § 1614.204(g) and any other applicable law or regulation;

f.    Schedule a Fairness Hearing to be held by the EEOC to determine if the proposed settlement of the litigation as contained in this Agreement should be approved as fair, just, reasonable, and adequate and whether the Judgment approving the settlement should be entered;

g.    Provide that pending final determination of whether the settlement contained in this Agreement should be approved nor the Class Agents, Class Members, either directly, representatively, or in any other capacity will commence or prosecute any action or proceeding in any court or tribunal asserting any of the Class claims against the Department; and

h.    Provide that any objections to (i) the proposed settlement contained in this Agreement; or (ii) entry of the Judgment approving the settlement shall be heard only if, on or before a date specified in the Order Notice, persons making objections file and serve on all Parties notice of their intention to appear (which will set forth each objection and the basis therefor) and

18





copies of any papers in support of their position as set forth in the Order

Notice.

## X. MISCELLANEOUS PROVISIONS

A.  Notices under this Agreement.  Copies of all notices required to be given to

Complainants' Counsel(s) or Agency Counsel under this Agreement shall be sent by mail,

postage prepaid, or by facsimile to the following (unless otherwise specified in writing):


James P. Hood, Esq.

1226 Eleventh St., N.W.

Washington, D.C. 20001

FAX: (202) 371-2535

PHONE: (202) 289-1130


Arun Basu, PhD

12008 Leaf Court

Great Falls, VA 22066


Arlean Leland, Esq.

Ayoka A. Campbell, Esq.

1400 Independence Ave., S.W., Room 2006-S

Washington, D.C. 20250

FAX: (202) 720-4089


B.  Severability and Duty to Defend.  Should any provision of this Agreement be found by the

EEOC to be invalid or unenforceable, then (i) the validity of other provisions of this

Agreement shall not be affected or impaired, and (ii) such valid provisions shall be

enforced to the maximum extent possible.  In the event the entry of this Agreement

19





1  generates, either through intervention or separate lawsuits or administrative filings,

2  challenges to the lawfulness of any of the provisions contained in this Agreement, the

3  Parties agree to defend the provisions against such challenges.  If any such lawsuit is

4  brought in federal district court against the Department, the Department shall seek to

5  remove such action to the EEOC and the Parties shall support that action.

6  C.    Collateral Use of Agreement Prohibited.  The Parties have entered into this Agreement as a

7  compromise measure to terminate this action and resolve all issues of controversy between

8  them.  The terms of this Agreement, its substance, the negotiations leading up to this

9  Agreement, and the information exchanged by the Parties in the course of those

10  negotiations may not be offered, taken, construed or introduced as evidence for any

11  purpose, either in this action or in any pending or subsequent proceeding of any nature,

12  except that in any subsequent action involving the enforcement, construction, or

13  application of this Agreement, a copy of this Agreement may be presented to verify its

14  contents.

15  D.    Responses to Changes in Law.  The Parties expressly recognize that changes in law occur

16  in the area of personnel selection and personnel management.  For this reason, the

17  Department must maintain the administrative flexibility to accommodate such changes.  To

18  the extent that a change in federal law or regulations, Executive Orders, or judicial or

19  administrative case law, requires modifications to the implementation of this Agreement,

20  nothing in this Agreement shall be construed to limit the Department's authority to make

21  such modifications; provided, however, that Complainants do not waive their rights to

22  challenge such modifications under the enforcement procedures set out in Section VIII.

23  The Department agrees to notify Complainants of the change in law or regulation and of

24  the conforming modifications prior to their implementation.

25  E.    Collective Bargaining Agreements.  The provisions of this Agreement shall not supercede

26  any prior commitments by the Department and its agencies pursuant to existing Collective

27  Bargaining Agreements.

28





F.   <u>Entire Agreement</u>.  This Agreement constitutes the full and exclusive agreement of the Parties with respect to the matters discussed herein, and supersedes all prior agreements, written or oral, with respect to such matters.  No representations or inducements to compromise this action have been made, other than those recited in this Agreement.

G.   <u>Headings</u>.  The headings in this Agreement are for the convenience of the Parties only and shall not limit, expand, modify, or aid in the interpretation or construction of this Agreement.

H.   <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts and each executed copy will be deemed an original that is binding upon all Parties.

I.   <u>Term of Agreement</u>.  This Agreement may be extended by mutual agreement of the Parties to allow completion of any specific provision by the procedures outlined.

J.   <u>Unknown Class Members</u>.  Unknown Class Members shall have an opportunity to receive relief under this Agreement by notifying the Department's Office of Civil Rights within thirty (30) days of the effective date of this Agreement.

21

XI.    IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement on the ___ day of October 2003.

Respectfully submitted:

For Defendants:

ARLEAN LELAND, ESQ.

Associate General Counsel

USDA

JAMES BRADLEY

Deputy Administrator

USDA- ARS

For Complainants:

ARUN BASU, PhD

Class Agent

22

FAROOK SAIT, ESQ.

President, OSAAA

Class Representative

JAMES HOOD, ESQ.

Class Counsel

FedEx | Ship Manager | Label 7900 5926 8295                                              Page 1 of 1

From: STEVEN C. BRAMMER (202)720-4375
USDA/OFC OF GENERAL COUNSEL
1400 Independence Ave., SW
Room 2006-S; Stop 1419
Washington, DC, 202501400

REVENUE BARCODE



To: Dr. Krishna Murthy (703)759-4847

7715 Lear Road                                    SHIP DATE: 17FEB04
                                                  WEIGHT: 1 LBS

McLean, VA, 22102

Ref:

DELIVERY ADDRESS BARCODE(FEDEX-EOR)

TRK # 7900 5926 8295 FORM
                     6201

22102-VA-US

FedEx  PRIORITY OVERNIGHT

19 FRRA

IAD

WED
A1

Deliver by:
18FEB04

# Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

## BRAMMER, STEVEN

**From:**          donotreply@fedex.com
**Sent:**          Wednesday, February 18, 2004 8:44 AM
**To:**            STEVEN BRAMMER
**Subject:**       FedEx shipment 790059268295

Our records indicate that the shipment sent from STEVEN C. BRAMMER/USDA/OFC OF GENERAL CO
to Dr. Krishna Murthy has been delivered.
The package was delivered on 02/18/2004 at 8:41 AM and signed for or released by 16420162.

The ship date of the shipment was 02/17/2004.

The tracking number of this shipment was 790059268295.

FedEx appreciates your business. For more information about FedEx services, please visit
our web site at http://www.fedex.com

To track the status of this shipment online please use the following:
http://www.fedex.com/cgi-bin/tracking?tracknumbers=790059268295
&action=track&language=english&cntry_code=us

Disclaimer
-------------------------------------------------------------
FedEx has not validated the authenticity of any email address.

# EXHIBIT   3

April 1, 2004 E-mail from Virginia C. Lewis, USDA, forwarding e-mail from J. Rasekh to Asian American Pacific Islander Council Co-Chairs and Members, recognizing the recent Basu Class Action Settlement, showing Plaintiff as e-mail recipient (shows that Plaintiff knew of settlement of Basu class action)

**BRAMMER, STEVEN**

| | |
|---|---|
| From: | LELAND@HQDOMAIN.LAWPO |
| Sent: | Thursday, April 01, 2004 5:11 PM |
| To: | BRAMMER@HQDOMAIN.LAWPO |
| Cc: | HARDIN@HQDOMAIN.LAWPO |
| Subject: | This email was forwarded to me regarding the Basu Settlement.  FYI |


The subject of the email was "Thwarting and Preventing AAPI Discrimination at USDA."


          To: Gloria H Rogers/MD/APHIS/USDA@USDA, Jennifer M
Painter/MD/APHIS/USDA@USDA, Angel B Cielo/INTL/APHIS/USDA@USDA, Edward
Chen/FL/APHIS/USDA@USDA, Arun Basu-NRCSEXCH.@gw, liu-Hsiung Chuang-NRCSEXCH.@gw, Mai Ho-
GIPSA.GIPSA@gw, Sae_Mi.Hong@usda.gov@INTER2@gw, Karl Narang-ARS.ARS-DC@gw, AMANDA NGUYEN-
OCFO.NFC@gw, Ragh Singh-FSA.FSA1@gw, Dennis Taitano-FSA.FSA1@gw, Mon Yee-inter2.NRCS@gw,
Amelia Sharar-FSIS.Recipients@gw, Parveen Setia-INTERNET.OBPA@gw, Perfecto Santiago-
FSIS.Recipients@gw, Kris Murthy-FSIS.Recipients@gw, Mary T Marrs-FS.R6@gw, Bov Eav-
FS.WO@gw, Pat Basu-FSIS.Recipients@gw, Jane Ho-AMSE2K.@gw, Praveen Dixit-ERS.ERS1@gw, DON
CONNOR-OCFO.NFC@gw, Ram Chandran-ERS.ERS1@gw, Paul Chan-ERS.ERS1@gw, Cherie Stallman-FNS.
@gw, ALLEN NG-FNS.@gw, Yoonie MacDonald-RD.@gw, Sua Garrett-FNS.@gw, FarookSait@gw,
Maureen Wood-USDA.USDA@gw, Joseph Jen-USDA.USDA@gw, Wai-PingChan@gw, SVershaKumar@gw, Jim
Rasekh-FSIS.Recipients@gw
          cc: Vrnon.Parker@OCR.USDA.Gov@INTER2@gw
          Subject: RE: THEARTING and PREVENTING AAPI DISCREAMINATION AT USDA (Tool and
Strategies that May Work)

Jim,
I hear you.  If accountability, which we told was there, is not being practiced, the
managers will not change their habits because they are not being reprimanded.

Thanks for sharing your thoughts.

Virginia C. Lewis
EEO Specialist
National AA/PI Emphasis Program Manager
Tel: (301) 504-2322
Fax: (301) 504-2175
virginia.lewis@usda.gov

-----Original Message-----
From: Rasekh, Jim
Sent: Thursday, April 01, 2004 11:22 AM
To: Kumar, SVersha; Chan, Wai-Ping; Jen, Joseph; Wood, Maureen; Basu, Arun; Chen, Edward -
APHIS; Chuang, liu-Hsiung; Cielo, Angel B -APHIS; Sait, Farook; Garrett, Sua; Lewis,
Virginia; MacDonald, Yoonie -RD; NG, ALLEN; Painter, Jennifer M -APHIS; Rogers, Gloria H -
APHIS; Stallman, Cherie; Chan, Paul -FS; Chandran, Ram -ERS; CONNOR, DON -OCFO; Dixit,
Praveen -ERS; Ho, Jane -AMSE2K; Basu, Pat; Eav, Bov -FS; Ho, Mai -GIPSA; Hong, Sae Mi -
FSA; Marrs, Mary T -FS; Murthy, Kris; Narang, Karl -ARS; NGUYEN, AMANDA -OCFO; Rasekh,
Jim; Santiago, Perfecto; Setia, Parveen -OBPA; Sharar, Amelia; Singh, Ragh -FSA; Taitano,
Dennis -FSA; Yee, Mon -NRCS
Cc: 'Vrnon.Parker(a)OCR.USDA.Gov'
Subject: THEARTING and PREVENTING AAPI DISCREAMINATION AT USDA (Tool and Strategies that
May Work)

Dear AAPI Co-Chairs and Council Members.

This is an open letter to you for your prompt attention and information.  I am not sure
that if I have the e-mail of Mr. Undersecretary for CR correctly, but I hope the AAPI
Council Co-Chairs will share this letter with Mr. V.Parker.

Forgive me that I do not have the e-mails of the entire members.
Versha perhaps you could forward this letter to others members.

1

Despite the recent OSAAA Class Action Settlement by USDA/EEOC, the occurrence of discrimination and hostile workplace environment for some of AAPI employees at some Agency's in USDA still continues.

The statistics provided by the OCR also support the status of AAPI employees at USDA and it has not been changed over the past several years.  This is true in part because many AAPI employees have left themselves opened to be discriminated. The existing rules and policy statement of USDA on CR is hard to be applied.

There are lots of rules, but not much tools to make it happen.

Therefore I am offering some tools and strategies for preventing discriminations against AAPI employees at USDA.  I believe if the policy is correctly applied it would be a win-win situation for both USDA and AAPI employees, and it could be applied to other missionary areas.

Tools and Strategy:

Establish a written anti-discrimination policy by the AAPI Co-Chairs.  Based on existing USDA policy it is clear that every supervisor and manager needs to implement a written "Zero-tolerance" policy prohibiting all type of discriminations for all employees. Surprisingly, all agencies in USDA have posted the USDA Equal Employment Policy on the bulletin board and all of their letter head logo, but when it comes to practice the policy becomes twisted.

In order to be of any value, this anti-discrimination policy should include several elements.  The policy must unequivocally prohibit all form of discrimination in USDA. Also, it should prohibit the creation of a hostile work-place environment.  USDA should provide a formal procedure that allows employees openly report discrimination. The policy should name some point of contact in the Office of CR in each agency that promptly investigate the alleged discrimination.  The policy should stress that reprisals against any managers who ignore or discriminates against AAPI employees, and make it to understand that the practice of any kind of discrimination can not be tolerated.

Creating this policy alone is not enough.  USDA must make the policy known to all employees of USDA.  USDA should distribute copies of this policy to all employees and have the employees to sing a statement acknowledging they have received and understand the policy.  Managers should have periodic mandatory meeting for all employees and discuss the topics of discrimination at least at the time of appraisal session.  If there are any valid discrimination, the incident must be investigated within one week after the complain is received.
The name of the complainer and investigation must be confidential.  At a minimum the investigation must include interview with the complainer employee and all witnesses be identified.  When it is indicated that the discrimination is valid, USDA must take remedial action promptly. The remedy must be consistent with the severity of the discrimination.  For example, if the employee wants to be free from the offending supervisor's discrimination action, the agency must consider placing the employees in a separate office.

If any manager is identified as a discriminating supervisor, he/she must receive anti-discrimination training course along with the employee.

The policy must include that Nepotism of all kinds must not be tolerated and not be practiced by any managers and supervisors.

These tools and strategies are the foundation for the policies that USDA should establish to create a preventive discrimination environment.
Managers should be advised by experienced outside counsel to establish an effective processes and identify appropriate course of actions to response to a complain of discrimination by employees.

Thanks for reading this letter.

Jim Rasekh, FSIS/USDA.

```
-----Original Message-----
From: Kumar, SVersha [mailto:SVersha.Kumar@usda.gov]
Sent: Wednesday, March 31, 2004 1:53 PM
To: Chan, Wai-Ping; Jen, Joseph; Wood, Maureen; Basu, Arun; Chen, Edward -APHIS; Chuang,
liu-Hsiung; Cielo, Angel B -APHIS; Farook Sait (E-mail); Garrett, Sua; Lewis, Virginia;
MacDonald, Yoonie -RD; NG, ALLEN; Painter, Jennifer M -APHIS; Rogers, Gloria H -APHIS;
Stallman, Cherie; Basu, Pat; Chan, Paul -ERS; Chandran, Ram -ERS; CONNOR, DON -OCFO;
Dixit, Praveen -ERS; Eav, Bov -FS; Ho, Jane -AMSE2K; Ho, Mai -GIPSA; Hong, Sae Mi -FSA;
Marrs, Mary T -FS; Murthy, Kris; Narang, Karl -ARS; NGUYEN, AMANDA -OCFO; Rasekh, Jim;
Santiago, Perfecto; Setia, Parveen -OBPA; Sharar, Amelia; Singh, Ragh -FSA; Taitano,
Dennis -FSA; Yee, Mon -NRCS
Subject: FW: HRLC Monthly Data

Please see the attached for your info.
```

# EXHIBIT   4

December 7, 2004 Decision Granting Final Approval of Settlement Agreement, noting that individual settlement agreements are not required for members of Tier One of relief, including Plaintiff, but may be used as a mechanism to provide relief



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0701

|  |  |
|---|---|
| Arun C. Basu, *et al.*,<br>     Complainants,<br><br>     v.<br><br>Ann M. Veneman,<br>Secretary,<br>Department of Agriculture,<br>     Agency. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

EEOC No. 100-A1-7863X

Agency No. 000190

Date: December 7, 2004

## DECISION GRANTING FINAL APPROVAL
## OF SETTLEMENT AGREEMENT

The Settlement Agreement (Agreement) in the captioned class case, signed by the parties on October 31, 2003, is hereby **APPROVED**. After careful consideration of the Agreement and the written objections, I find that the Agreement is fair, adequate, and reasonable to the class as a whole. As such, and in accordance with 29 C.F.R. § 1614.204(g)(4), I hereby give my final approval to the Agreement.

### Procedural Background

On November 18, 1999, lead Class Agent Dr. Arun Basu filed a formal complaint of discrimination on behalf of a proposed class of Asian/Pacific Islander employees of the Agency at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) stripped of managerial duties and responsibilities; (5) had not been selected for a position with managerial duties or responsibilities; (6) had been subjected to reprisal for filing a complaint(s); (7) filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint. By decision dated September 15, 2000, the administrative judge originally assigned to the case determined that the class failed to meet the procedural requirements for certification set forth at 29 C.F.R. § 1614.204(a)(2). After the Agency issued a final order

accepting that decision, the Class Agents filed an appeal with the Commission's Office of Federal Operations (OFO).

In a decision issued on June 27, 2001, OFO partially reversed the prior decision, conditionally certifying a class comprised of "all Asian employees of the [A]gency who were eligible for but have not received promotions and all Asian persons who have applied for positions with the [A]gency but have not been selected." Following the remand of the case to this office, it was assigned to the undersigned administrative judge. Subsequent to a lengthy discovery period, followed by the filing of briefs on the question of certification, the parties entered into the Agreement on October 31, 2003. On January 27, 2004, the undersigned granted preliminary approval of the Agreement, and a Notice of Proposed Settlement (Notice), along with the Agreement itself, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the Class as well as all identified Asian/Pacific Islander employees who fell under the Class definition but did not have pending individual complaints of discrimination. The Notice was also posted on the Agency's web site and in appropriate Agency bulletins. The Notice provided that Class Members would have 30 days in which to file objections, if any, with the undersigned. Ten objections were ultimately received by the undersigned.[1]

## Temporal Scope of the Agreement

By motion dated August 26, 2004, the parties requested that the temporal scope of the class be limited to the period from February 1994 to September 2, 2003. As noted at the outset, the class was originally defined as "February 1994 to the present." I am cognizant, however, that a settlement agreement of this nature is not final at the time it is signed and that, inevitably, a period of time elapses between that time and the time the agreement it is ultimately approved, if at all. The parties have represented that, at the time they were negotiating the Agreement, they arrived at certain

---

[1] Petitions were received from the following Class Members: Jamshyd Rasekh; Jess Rajan; Kunapuli Madhusudhan; Muhammad Chaudhry; Emiko Purdy; Fazal Rahman; Mon Yee; Robert Tse; Clemen Gehrlan; and Abdul Sadiq. Their objections will not be addressed individually; however, to the extent the undersigned believes that a relevant objection has been made, that question will be addressed. In particular, relevant points that were raised in the objections were that: the Class Agents were getting too much relief and/or that Class Members in the lower two tiers of the Agreement were not getting enough; the Agreement does not explicitly identify the relief being received by certain Class Agents; and, it is unclear from the Agreement how certain relief is to be allocated.

amounts of relief based on the circumstances that existed at the time in terms of how many pending complaints were subsumed. On this point, the parties have provided what they believe to be a fairly exhaustive list of individuals who had such complaints at the time the Agreement was being negotiated. Because the Agreement was reached using that data, and because the parties have represented that they did not consider complaints filed after September 2, 2003, in reaching the Agreement, I find that it is appropriate to limit the temporal scope of the class to the period from 1994 to September 2, 2003. Accordingly, I find that the Agreement does not encompass individual complaints that were filed after September 2, 2003, and which otherwise would be subsumed in the class. Therefore, such complaints should either continue to be processed as individual complaints or, if they have been placed in abeyance because of the class complaint, should be reinstated for processing.

**Relief Provided by the Agreement**

The Agreement can be characterized as providing two types of relief, the first being injunctive relief that will be in effect for a period of three years. That relief includes, initially, the creation of a Development Opportunity Placement Program (DOPP). The Agreement provides that a pilot DOPP will be created within 180 days of the effective date of the Agreement within certain Agency subagencies that have been identified by the Class Agents as having problems with respect to promotions and details. These subagencies include the Food Safety and Inspection Service (FSIS), the Agricultural Research Service (ARS), the Farm Service Agency (FSA), the Office of Civil Rights (OCR), the Natural Resources Conservation Service (NRCS), and the Animal and Plant Health Inspection Service (APHIS).

The purpose of the DOPP is to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations. The DOPP, which will be subject to funding availability, will require subagencies to make available no fewer than two opportunities annually during the three years the Agreement is in effect. The details, temporary promotions, or developmental assignments will be for a minimum of 31 days, will cover all pay grade levels, and will be posted on a web site. The DOPP will be open to all employees, although

the Agreement provides that Class Agents who are eligible and qualified to participate in it will receive priority consideration.

The second aspect of the injunctive relief is the creation of a Graduate Scholarship Program to provide funding for graduate school. Within 180 days of the effective date of the Agreement, the Agency will create such a program for Masters and PhD students within FSIS, FSA, NRCS, the Forest Service (FS), the Agricultural Marketing Service (AMS), the Office of the Chief Financial Officer (OCFO), the Grain and Packers and Stockyards Administration (GPSA), and the National Agricultural Statistics Service (NASS). The Agreement provides that, between these offices, there will be a total of 36 scholarships, and the Agency Liaison, with the assistance of the affected subagencies, will establish requirements for eligibility, eligible fields of study, selection criteria, and all other details of the program.

The third aspect of injunctive relief is an Agency-wide Job Fair that will be held at four regional locations for employment in job categories where the Agency's Asian/Pacific Islander population is statistically underrepresented. The Agreement provides that the Job Fair will be sponsored by FS, NRCS, AMS, FSA, OCFO, GPSA, NASS, and the Rural Housing Service.

Fourth, the Agreement provides for certain policy development, including the review, update, and issuance of an Agency-wide Affirmative Employment Plan (AEP) to ensure that all appropriate issues related to Class Members are addressed in the plan. Additionally, the Agreement provides that the Department's Assistant Secretary for Civil Rights or designee and Agency Liaison will work with Agency subagencies to ensure that they have current and comprehensive AEPs.

Finally, the Agreement provides that every employee will have an up-to-date individual development plan (IDP). Pursuant to the Agreement, at the request of a Class Member the subagency in which s/he is employed is required to ensure that his/her IDP is up-to-date and that it has identified appropriate training specifically tailored to enhance that individual's job performance.

For purposes of individual relief, the class is divided into four tiers, *i.e.*, Tier One, Tier Two, Tier Three, and Tier Four. Tier One comprises six Class Agents, including Dr. Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The Agreement provides that these individuals will enter into individual settlement agreements with the Agency. Under those agreements, Dr. Basu will receive: a retroactive promotion effective September 1998

4

into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay in the amount of $98,219; restoration of 564 hours of sick leave; $200,000 in compensatory damages; the expungement of a reprimand and information related to misconduct investigations; and reasonable attorney's fees. Dr. Dey will receive: a retroactive promotion effective September 1998 into the position of Veterinary Medical Officer (National Poultry Program Leader), Office of Public of Health and Science, GS-14; back pay in the amount of $46,000; priority placement into the first GS-15 position for which he qualifies; restoration of 476 hours of sick leave; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Yee will receive: a retroactive promotion effective September 1998 into the position of Invasive Species Program Manager, U.S. Forest Program Pacific Southwest Region, in Vallejo, California; back pay estimated to be $68,154; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Murthy will receive: $40,000 in compensatory damages; advancement to the GS-14, Step 10 level; and reassignment into the position of Veterinary Medical Officer, GS-0701-14, Office of Program Policy and Development, New Technology Staff; Office of Personnel Management (OPM) Leadership training; and reasonable attorney's fees. Dr. Lakhani will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees. Finally, Dr. Saini will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees.[2]

Tier Two is comprised of the remaining 22 Class Agents, who will share $372,500, along with two former Class Agents who are not included in the Agreement because they previously signed settlement agreements resolving their individual complaints. The parties have represented that the distribution of this sum will be at the discretion of Dr. Basu, with the assistance of his representative, and will involve a system whereby each individual is required to file a petition setting forth his/her entitlement to a specific amount. The Agreement provides that each of the five Tier Two Class Members with pending administrative complaints will receive attorney's fees not to exceed $25,000. Finally, the Agreement provides that the two Tier Two Class Agents with Federal district complaints will receive "[a]ll attorney's fees."

---

[2] The Agreement provides that Tier One Class Members will receive, altogether, $350,000 in reasonable attorney's fees.

5

Tier Three is comprised of individuals with pending administrative complaints and two individuals with complaints in Federal district court. With respect to the former, these individuals will be afforded the option of either accepting a lump sum payment of $5,000 or an expedited hearing on their individual complaints along with an entitlement to the injunctive relief. The two individuals with pending district court cases will receive a lump sum payment of $7,500 and attorney's fees.

Tier Four is comprised of those Class Members who have not filed individual complaints of discrimination. The Agreement provides that these individuals will be entitled to the injunctive relief.

**Class Member Consideration**

The manner in which the Agreement is structured affords the Class Members in Tiers One through Three two options, *i.e.*, either accept the offered individual relief or not accept that relief and merely be entitled to injunctive relief. Regardless of which option is exercised, those portions of the Class Members' individual administrative complaints that are subsumed within the class are deemed to be resolved.[3] Furthermore, Class Members, under either option, would still be entitled to pursue those portions of their complaints that are not subsumed.

For those Class Members with cases pending in Federal court, no portion of their complaints can be deemed to be subsumed. In so finding, I note that the applicable regulations, along with EEOC Management Directive 110 (MD-110), only contemplate that individual complaints within

---

[3] The undersigned interprets the term "subsumed" to be controlled by the claim, not the basis. To wit, what is subsumed by the class complaint are any issues involving promotions and/or non-selections, regardless if they were brought under bases other than race or national origin. Therefore, a Class Member whose individual complaint also alleges that a non-promotion was based on another protected category other than race or national origin, *e.g.*, gender, would not be permitted to pursue the non-promotion under that basis(es). I am cognizant that the Agreement, in the section which discusses Class Member consideration, contemplates that an individual complaint is either subsumed or not subsumed and does not address the contingency that one complaint could contain both subsumed and non-subsumed claims. I find that the intent of this provision, however worded, is that Class Members can still pursue individual claims that are not subsumed. Indeed, I find that the parties, even had they wanted to, do not possess the authority to require Class Members to withdraw complaints/claims that are not subsumed within the Class.

the administrative process are subsumed.[4]    Therefore, if a Class Member with a case(s) in Federal court does not opt for relief under the Agreement, his/her case(s) is not otherwise affected by the Agreement.  It is apparent that there are five individuals who have such complaints, *i.e.*, Dr. Mon Yee, Dr. Ronald Shinsato, Dr. Jess Rajan, Dr. Joyce Mayekawa, and Dr. Jamshyd Rasekh. According to the Agency, with respect to both Dr. Shinsato and Dr. Rajan, the parties in those cases were granted stays by the district court pending a ruling on the fairness of the Agreement.  Similarly, the Agency represents that Dr. Mayekawa's case was dismissed by the district court without prejudice pending final resolution of this class action.

With respect to Dr. Rasekh, the Agency cites a letter dated February 25, 2004, in which he rejected the offer of all attorney's fees and the other Tier Two relief.  Although Dr. Rasekh subsequently informed the parties in July 2004 that he was withdrawing his objection and wished to participate in the Agreement, the parties assert that his initial rejection extinguished the offer.  Dr. Rasekh's primary assertion in response is that his actions cannot be construed as a rejection of the applicable terms in the Agreement insofar as the Agreement was conditional in nature and had yet to be approved by the undersigned.  In considering this question, I find that the parties' position is unpersuasive.  Initially, although the parties have argued that Dr. Rasekh proceeded with his district court claims at his own peril, it is not apparent what option he had.  On this point, although the parties have represented that stays were obtained with regard to Dr. Shinsato and Dr. Rajan, there is no indication that the Agency sought to achieve a stay in Dr. Rasekh's case and/or broached that possibility with Dr. Rasekh.  More important, I find persuasive Dr. Rasekh's argument that he could not have rejected the offer made in the Agreement because the Agreement was, in fact, not final. In this regard, I find that, until an administrative judge approves a class settlement, none of the provisions have any legal effect.[5]    Therefore, there was never any actual offer for Dr. Rasekh to

---

[4]The term "subsumed," for purposes of this decision, means complaints/claims at the administrative level that fall within the definition of the class.  Complaints/claims in Federal court may fall within the definition of the class, but they are not subsumed.

[5]Additionally, from a practical standpoint, because the Agreement states that Dr. Rasekh is entitled to certain relief, it is not apparent how the parties could simply ignore that language once the Agreement is approved without being deemed to have breached the Agreement.  The undersigned, even if he agreed with

(continued...)

reject. Accordingly, I find that Dr. Rasekh is entitled to the Tier Two relief offered in the Agreement.

In Dr. Yee's case, it is apparent that, at the time the Agreement was signed, his cases were pending at the administrative level. Thereafter, however, Dr. Yee took his complaints into Federal district court. The Agency's position is that, although the circumstances which led the parties to offer Dr. Yee substantial relief have changed, it should not be required to provide him with that relief while allowing him to maintain his district court complaints. In reviewing Dr. Yee's objection, it is not apparent that he is asserting he should be entitled to the offered individual relief for only withdrawing those complaints/claims that remain at the administrative level. Furthermore, even if he were arguing that, the Agreement does not state that the offered relief is only in exchange for the withdrawal of subsumed administrative claims. In so finding, I note that the portion of the Agreement that applies to Tier One refers to "individual claims of employment discrimination," and does not draw a distinction between administrative and Federal district court complaints. Agreement at 14. Moreover, in the portion of the Agreement that discusses what needs to be withdrawn for a Class Agent or Class Member to receive individual relief, it refers to all complaints, administrative or Federal, falling within the definition of the Class and pending at the "Effective Date of this Agreement," *i.e.*, the date on which it is finally approved. Agreement at 6.

Dr. Yee's objection states, in relevant part, that he "is pursuing claims in the Los Angeles federal district court, several of which concern promotions. The question then becomes what process is due before the government can deprive him of his property interest in his claims, which he would much rather pursue on his own . . . ." I find that this objection is premised on a misunderstanding by Dr. Yee of what his rights are under the Agreement. As discussed, in the event Dr. Yee does not opt for any individual relief, he can still pursue all of his Federal district court complaints, including those complaints/claims involving promotions and/or non-selections. Furthermore, if Dr. Yee

---

[5](...continued)
the parties' position, does not have the authority to invalidate provisions of the Agreement. In this regard, an administrative judge may not modify the proposed agreement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

accepts the individual relief, he would only be required, under the terms of the Agreement, to withdraw those claims deemed to fall within the definition of the class.

## Tier One Relief

At the time the Notice was issued, the parties requested that, for privacy reasons, the four exhibits referenced in the Agreement not be disseminated. Exhibit One identifies the six Class Agents in Tier One and contains the letters sent to each of those individuals regarding the relief proposed for them. Exhibit Two identifies the 22 remaining Class Agents as well as the former Class Agents not included in the Agreement, along with a sample of the letter of proposed relief that was sent to the 22 Class Agents. Exhibit Three identifies the 31 individuals who were deemed eligible to receive Tier Three relief, a sample letter of proposed relief that was sent to these individuals, and a 10-page document listing various Agency employees who had filed EEO complaints. Finally, Exhibit Four contains a sample copy of the letter sent to Tier Four Class Members, along with an extensive list of Asian individuals employed by the Agency.

Dr. Yee objects to the decision not to disseminate the four exhibits, arguing that "[r]eferences to undisclosed terms and attachments is wholly inadequate to allow a class member to evaluate the resolution." In considering this assertion, I am not persuaded that the decision to not include the documents set forth in Exhibits Two, Three, and Four, was inappropriate. In so finding, I note that, because the relief being provided to individuals in Tiers Two through Four is specified in both the Agreement and the Notice, it is not apparent how having these exhibits would have helped an individual "evaluate the resolution." I do agree, however, that the information contained in Exhibit One should have been made available to the Class Members. In so finding, I note that the regulations at 29 C.F.R. § 1614.204(g)(4) state that the notice of relief issued to the Class Members "shall state the relief, if any, to be granted by the agency . . . ." In this case, both the Notice and the Agreement state that the six Class Agents in Tier One would receive relief pursuant to "individual settlement agreements." Having considered this provision, I find that it is too vague to satisfy the aforementioned requirement. Furthermore, I find the term "individual settlement agreement" to be a misnomer. A settlement agreement is a contract which two parties enter into freely. In this case, I find that the individual agreements cannot be deemed contracts insofar as most, if not all, of the consideration being provided by the six Class Agents, *i.e.*, the withdrawal of their subsumed claims,

9

is the consideration that was already being provided by virtue of the Agreement itself. In other words, once the Agreement is approved, the six Class Agents, whether or not they enter into the "individual settlement agreements," are precluded from pursuing those administrative claims that are subsumed within the class complaint. As such, I find that the "individual settlement agreements" are merely a mechanism through which the six Class Agents in Tier One are to receive the relief provided by the Agreement itself.[6]

Despite arriving at this conclusion, I have determined that, although the Notice should have specifically identified the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. What is clearly implicit in the Agreement is that the Class Agents in Tier One are to receive more relief than those in the lower three tiers.[7] As such, any Class Member in the lower three tiers who believed s/he was not being offered adequate relief and/or did not believe it was equitable to provide the Class Agents in Tier One with more relief could have filed a petition to that effect.[8] More important, every Class Member was aware of the relief that s/he is entitled to under the Agreement. Therefore, if a Class Member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief.

Fairness of the Agreement

The standard for EEOC approval of class case settlements is whether the Administrative Judge finds that the agreement is "fair, adequate and reasonable to the class as a whole." 29 C.F.R.

---

[6]Even if I were to conclude that these constituted valid settlement agreements, there is still no legitimate privacy concern as the six Tier One Class Agents, in negotiating for the relief they are to receive, bound the other Class Members.

[7]In particular, both the Agreement and the Notice state that the Tier One Class Agents would be receiving $350,000 in attorney's fees, which is considerably more per Class Agent than the $25,000 being received by the Tier Two Class Agents with pending administrative complaints.

[8]I note that at least two Class Members filed petitions objecting to the fact that the Class Agents in Tier One were getting too much relief. Furthermore, I note that Dr. Yee is the only Class Member who objected to the fact that such relief was not specified. Dr. Yee is not only a Tier One Class Agent himself, but, had he wished to know the terms of the relief being offered to the other Tier One Class Agents, he could have sought that information from class counsel. Finally, the individual relief has been specified in this decision, and any petitioner who believes it is unfair has the right to raise such an argument in an appeal.

10

§ 1614.204(g)(4)(2002). If the Administrative Judge finds that the resolution of the complaint is "fair, adequate and reasonable to the class as a whole, the resolution shall bind all members of the class." *Id.; see also Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999). The Administrative Judge may not modify the proposed settlement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

Neither EEOC regulations nor MD-110 identify the considerations for determining whether a class settlement is fair, adequate and reasonable. *See* 29 C.F.R. Part 1614; EEOC EEO Management Directive 110 ("MD-110") (November 9, 1999), Ch. 8. Courts, however, have stressed that the "test is whether the settlement is adequate and reasonable and not whether a better settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931 at *19 (D.D.C. Mar. 20, 2000). "Voluntary compromises of Title VII actions enjoy a presumption of validity, and should therefore be approved 'unless [they] contain provisions that are unreasonable, unlawful, or against public policy.'" *Kirkland v. New York State Dep't of Correctional Services*, 711 F.2d 1117, 1128-29 (2d Cir. 1983), *cert. denied*, 465 U.S. 1005 (1984). Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. *Osher v. SCA Realty, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996).

The Commission has held that the administrative judge's primary task is to evaluate the terms of the settlement in relation to the strength of the Complainants' case. *Modlin v. Social Security Administration*, EEOC Appeal No. 01A24054 (February 20, 2003) (citing *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998). At the time the present case settled, the class was only conditionally certified and the parties had filed briefs on the question of whether the class should be fully certified. As such, there was a risk that the class would be decertified and never actually proceed to a hearing on the merits. To obtain relief comparable to that provided under the Agreement, the Class would, in addition to achieving full certification, had to have proved Agency discrimination over the course of several years. Additionally, in the event a finding of discrimination were made, each Class Member would have had to establish his/her individual entitlement to relief. Finally, I note that the injunctive relief provided by the Agreement would not have been available as a remedy in the event

11

the Class had prevailed after a hearing.[9]  For these reasons, I find that the relief being provided, which includes potentially as much as $1,700,000 in individual relief and attorney's fees, is fair and adequate to the Class as a whole.

With respect to the individual awards of relief, the six Class Agents in Tier One, along with those identified in Tier Two, are receiving more individual relief than the other Class Members as well as priority consideration under the DOPP.  As the parties correctly note in their motion for approval of the Agreement, the Commission has held that it is fair to provide greater relief to the Class Agents as they are the individuals who have spearheaded the class complaint of discrimination. On this point, the parties assert that the Class Agents were not only actively involved in the litigation of the complaint, but they have "appeared at certain meetings on behalf of the Class with high-level officials in USDA . . . ." The Class Members identified in Tier Three, despite having individual complaints, were not actively involved in the class action.  If these individuals are not satisfied with the lump sum offer of $5,000, they have the option of an expedited hearing on their subsumed claims.[10]  Finally, although the Class Members who fall under Tier Four are eligible only for injunctive relief, I note they are giving up nothing as a result of the Agreement.

## DECISION

For the foregoing reasons, I conclude that the Settlement Agreement is fair, adequate and reasonable to the Class as a whole and find no basis for vacating the Settlement Agreement. Accordingly, it is my decision to grant final approval to the Settlement Agreement.  Pursuant to 29 C.F.R. § 1614.204(g)(4), the resolution shall bind all members of the class.

It is so **ORDERED**.

Date: December 7, 2004

_Andrew Culbertson_
Andrew Culbertson
Administrative Judge

---

[9]Specifically, injunctive relief of this nature is not available under 29 C.F.R. Part 1614.

[10]MD-110 provides that class members may not "opt out" of the defined class.  Although allowing certain Class Members the opportunity to proceed with their individual complaints could be viewed as allowing them to "opt out," they are technically not opting out insofar as it is the Agreement itself that provides for the expedited hearing.

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to 29 C.F.R. §1614.204(g)(4), finding that a resolution is fair, adequate, and reasonable. This regulation provides that the Administrative Judge's decision approving resolution of a class complaint binds all members of the class.

The Administrative Judge's decision approving a class resolution must inform all members who filed petitions objecting to the proposed settlement ("petitioners") of the right to appeal the decision to the Equal Employment Opportunity Commission, Office of Federal Operations. The decision must include a copy of EEOC Form 573, Notice of Appeal/Petition. See MD-110 at 8-10, 9-3.

Neither the regulations nor MD-110 require the Agency to issue a final order following an Administrative Judge's decision to approve a settlement. **Accordingly, this decision directly triggers petitioner's rights to appeal the approval of the Settlement.** Such appeals must be filed within thirty (30) days of receipt of this decision. Please attach a copy of this decision and a competed Form 573 (Notice of Appeal) with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the parties at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the parties.

*WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

13

<u>BY FACSIMILE:</u>

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

14

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0700

|  |  |
|---|---|
| Arun C. Basu, *et al.*,<br>　　　　Complainants,<br><br>　　　v.<br><br>Ann M. Veneman,<br>Secretary,<br>Department of Agriculture,<br>　　　　Agency. | EEOC No. 100-A1-7863X<br><br><br>Agency No. 000190<br><br><br>Date: December 7, 2004 |

### ORDER

For the reasons set forth in the enclosed Decision dated December 7, 2004, the Settlement Agreement dated October 31, 2003, is APPROVED. A copy of the Decision must be sent to the individuals who filed petitions objecting to the Settlement Agreement. A Notice to the petitioners explaining their appeal rights is attached to the Decision. This office is also enclosing a copy of both the hearing record and the reports of investigation for the Agency.

　　　　　　　　　　　　　It is so ORDERED.

For the Commission:

　　　　　　　　　　　　　Andrew Culbertson
　　　　　　　　　　　　　Administrative Judge

enclosure

cc (with enclosure):

> Mr. Larry W. Newell
> Chief, Employment Complaints Division
> Office of Civil Rights
> United States Department of Agriculture
> 1400 Independence Ave., SW
> Washington, D.C. 20250-9440

cc (without enclosure)

> Mr. James P. Hood, P.C.
> By facsimile at (202) 371-2535

> Mr. Steven Brammer, Esq.
> By facsimile at (202) 720-4089

# EXHIBIT   5

May 25, 2005 Letter from USDA OGC to Plaintiff providing individual settlement agreement, copying Class Counsel

 United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

May 25, 2005

Dr. Krishna Murthy
908 Peacock Station Rd.
McLean, VA 22102

      Re:    **Arun Basu v. USDA** **Proposed Class Action Settlement**
               **EEOC No. 01A10660, Agency No. 000190**

Dear Dr. Murthy:

In February of 2004, you were hereby notified of the proposed Settlement Agreement signed by the United States Department of Agriculture ("USDA") and Lead Class Agent Arun Basu. The Administrative Judge of the U.S. Equal Employment Opportunity Commission ("EEOC") has approved the Settlement Agreement, finding it fair, adequate, and reasonable to the class as a whole. Further, the full Commission recently ruled on four purported appeals of the Administrative Judge's fairness determination, affirming the Administrative Judge's determination. As such, relief is now being offered.

You were identified as falling within Tier One of the proposed Settlement Agreement. As a result, you will be entitled to injunctive relief as described in the Settlement Agreement, and will receive the following individual relief for withdrawal of all pending claims of employment discrimination:

a. Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all pecuniary and non-pecuniary damages;

b. Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical Officer, Office of Program and Policy Development, New Technology Staff;

c. Office of Personnel Management Leadership Training to be determined within 60 days of a signed settlement agreement; and

d. Reasonable attorneys' fees to be paid according to Section VII E of the proposed settlement Agreement.

*May 25, 2005*
*Page 2*

Other details regarding the Settlement Agreement, including injunctive relief and information on how to contact Class Counsel or the Administrative Judge, were attached in the Notice required by the EEOC under 29 C.F.R. § 1614.204(e).

A Settlement Agreement detailing this individual relief is attached. Please execute this Agreement, with your attorney, and have it returned to the Office of the General Counsel at the following address, by hand-delivery or by FedEx, by <u>June 1, 2005</u>:

> Steven C. Brammer
> Office of the General Counsel
> Civil Rights Litigation Division
> U.S. Department of Agriculture
> 1400 Independence Ave., SW; Room 3312-S
> Washington, DC 20250-1400

Please feel free to contact James P. Hood if you have any question regarding this matter.

Very truly yours,

Arlean Leland
Associate General Counsel
Civil Rights Division

cc:    James P. Hood, Esq.

# SETTLEMENT AGREEMENT

## Arun Basu v. United States Department of Agriculture
### EEOC No. 01A10660, Agency Case No. 000190

This Settlement Agreement (hereinafter "the Agreement"), made by and between **Dr. Krishna Murthy** (hereinafter "Complainant") and the United States Department of Agriculture (hereinafter "the Agency" or "the Department"), constitutes a full, complete and voluntary final release and settlement of any and all employment discrimination claims or issues raised by Complainant in Complaint No. 01A10660, Agency Case No. 000190 filed with the United States Equal Employment Opportunity Commission ("EEOC" or "the Commission"), and any other grievances, appeals, civil actions, claims or complaints filed with the EEOC, Office of Special Counsel, Federal Labor Relations Authority, U.S. Merit Systems Protection Board, Office of Personnel Management, Government Accountability Office or any other Federal agency, administrative tribunal or court concerning matters arising out of or regarding Complainant's employment with the Agency through the date that the last person listed below signs and dates the Agreement (hereinafter "the effective date of the Agreement").

The parties agree that resolution of this matter is in their mutual best interests and have agreed to set forth the terms of the Agreement in writing. The parties further agree that the Agreement shall not constitute an admission of liability or fault of any kind on the part of the Agency, its past or present agents, servants, employees, representatives or officers, and is entered into by both parties for the sole purpose of compromising disputed claims and avoiding the expenses and risks of further litigation. The Agreement is authorized under 29 C.F.R. Part 1614 and Management Directive 110 (hereinafter "MD-110") of the EEOC.

THE PARTIES HEREBY STIPULATE that the following Agreement has been reached, for valuable consideration, as set forth below.

## Section One

The Agency agrees:

1.    To promote Complainant to the GS-14, Step 10, grade level;

2.    To reassign Complainant to a GS-0701-14 position of Veterinary Medical Officer, Office of Program and Policy Development, New Technology Staff;

3.    To pay Complainant a lump sum of Forty Thousand Dollars ($40,000) in full settlement of all monetary claims in this matter. This sum is inclusive of any pecuniary, non-pecuniary, and compensatory damages arising out of, or regarding complainant's employment with the Agency through the effective date of this Agreement. Documentation required to effect implementation of this payment will be sent to the

Initials ____/____/____/____/____

National Finance Center within (45) calendar days from the effective date of the Agreement. The Agency makes no representations regarding any federal, state, or local tax liability which may be incurred by Complainant as a result of this payment; and

4.    To provide Complainant with Office of Personnel Management ("OPM") Leadership Training to be determined within sixty (60) days of the effective date of this Agreement.

## Section Two

Complainant agrees:

1.    That the Agreement constitutes his withdrawal, with prejudice, of any and all pending EEO complaints (both formal and informal), dated prior to the effective date of the Agreement and any other grievances, appeals, civil actions, claims or complaints with the Office of Special Counsel, Federal Labor Relations Authority, Merit Systems Protection Board, Office of Personnel Management, Government Accountability Office or any other federal agency, administrative court or tribunal concerning matters arising out of or regarding his employment with the Department prior to the effective date of the Agreement. Complainant further agrees not to raise or file any new complaints with any of the entities listed in this Paragraph regarding his employment with the Department prior to the effective date of the Agreement;

2.    To release, waive and withdraw any and all complaints, grievances, claims, allegations, appeals or civil actions against the Department, its agents, employees and officers in their individual or official capacities for any concerns arising out of his employment with the Department prior to the effective date of this Agreement;

3.    To specifically waive any and all further claims for attorney's fees, except as provided above in Section VII.E of the approved Settlement Agreement in Basu, et al. v. USDA, EEOC No. 01A10660, Agency No. 000190, and to waive any claim for any other damages, including compensatory damages, arising out of the matters giving rise to Complainant's complaints of discrimination (both formal and informal), in any forum, filed on or before the effective date of the Agreement;

4.    Not to reveal or allow anyone else to reveal the terms of the Agreement to any person, agency, institution, company or other entity unless the Department agrees in writing that he may do so, except that the Complainant may make such disclosures as are required by law, including disclosures to taxing agencies, and may disclose the terms of the Agreement to his spouse and his attorney, to his accountant or tax advisor, provided that he shall inform said individuals that the terms are strictly confidential and cannot be revealed to anyone else (this includes but is not limited to members of the judiciary, executive or legislative branches of government); and

Initials ____/____/____/____/____

5.   That he and his counsel and/or representative(s) will not provide any discovery, affidavits, deposition transcripts, or any other documents related to Agency No. 0000190 to any entity not a party to these proceedings unless ordered to do so by a competent legal authority.

## Section Three

The Parties agree:

1.   To respect the privacy of all individuals in the matter. The fact that the case was voluntarily resolved in a manner acceptable to both sides may be communicated to others. Explicit terms of the Agreement cannot be discussed with, disclosed or released to anyone who does not need the information to implement the Agreement, without the express permission of the other party. Permission to discuss or disclose the terms of the Agreement must be requested and received through a written instrument;

2.   To cooperate in good faith to complete implementation of the Agreement and to abide by the terms of the Agreement;

3.   To declare all of the Complainant's EEO complaints (both formal and informal) for the period prior to the effective date of the Agreement resolved through the Agreement. There are no other agreements between the parties, either express or implied, oral or written.

4.   That they are entering into the Agreement voluntarily, without coercion or duress, and they fully understand the terms of the Agreement.

In acceptance of, and agreement upon, the foregoing terms and conditions, the parties hereby affix their signatures.


_____                    _____
Dr. Krishna Murthy                                 Date
Complainant


_____                    _____
Mr. James P. Hood, Esq.                             Date
Attorney for the Complainant



Initials _____/_____/_____/_____

_____                    _____
James Bradley                                        Date
U.S. Department of Agriculture
Deputy Administrator
Agricultural Research Service


_____                    _____
Steven Brammer, Esq.                                 Date
Agency Representative

Initials ____/____/____/____/____

# EXHIBIT   6

June 13, 2005 Letter from USDA OGC to Class Counsel confirming that Plaintiff is only Tier One Class Member intending to resolve less than all pending employment discrimination complaints

June 13, 2005

James P. Hood, Esq.
1226 Eleventh St., NW                                    **VIA FACSIMILE**
Washington, DC 20001

     **Re:**    <u>**Arun Basu v. USDA**</u> **Class Action Settlement**
              **EEOC No. 01A10660, Agency No. 000190**

Dear Mr. Hood:

This letter memorializes your voice-mail message to me of June 10, 2005. You informed me that of the Tier One members, only Dr. Krishna Murthy desired to pursue complaints of discrimination filed after September 2, 2003. As you know, the claims of identified Tier One participant Mon Yee are being resolved separately based upon his affirmative declination to accept relief under the <u>Basu</u> Settlement Agreement. Thus, it is the Department's understanding that Arun Basu, Bhabani Dey, Hyder Lakhani, and Parmesh Saini intend to resolve all claims of employment discrimination through the date of their signature on individual Settlement Agreements. It is the Department's understanding that Dr. Krishna Murthy intends to resolve only those claims subsumed by the <u>Basu</u> Settlement Agreement pending as of September 2, 2003. The Office of the General Counsel will revise the Settlement Agreement for signature by Dr. Murthy, and re-deliver it to both you and Dr. Murthy.

Very truly yours,


_____

Steven C. Brammer

# EXHIBIT    7

June 15, 2005 and June 16, 2005 Exchange of E-mails between Plaintiff and USDA OGC
confirming receipt of newly-drafted individual settlement agreement resolving only certain
complaints of employment discrimination

**BRAMMER, STEVEN**

| | |
|---|---|
| **From:** | "Kris Murthy-FSIS"@HQDOMAIN.GW |
| **Sent:** | Thursday, June 16, 2005 6:57 AM |
| **To:** | STEVEN BRAMMER; Kris Murthy |
| **Subject:** | RE: Basu -- Settlement Agreement |

Good morning:

Steven:

Yes, I will be available today (Thursday, 6/16/050) to receive the new settlement agreement.

Call me at 690-5646 before coming or I can come and pick it up.

Let me know

Thanks

Kris Murthy
202-690-5646

-----Original Message-----
From: STEVEN.BRAMMER@usda.gov [mailto:STEVEN.BRAMMER@usda.gov]
Sent: Wednesday, June 15, 2005 4:31 PM
To: Kris.Murthy@fsis.usda.gov
Subject: Basu -- Settlement Agreement
Importance: High


Dr. Murthy:

Please advise if you are available to have a newly-revised Settlement Agreement delivered to you at work tomorrow (Thursday). I can personally deliver the Settlement Agreement to you during the day. The Agreement has been modified, as Class Counsel can discuss with you. Thank you.

Steven C. Brammer
Attorney
Civil Rights Division
Office of the General Counsel
U.S. Dept. of Agriculture
Tel.: 202-720-4375
Fax: 202-720-4089
steven.brammer@usda.gov

**EXHIBIT   8 OMITTED**

# EXHIBIT   9

September 22, 2005 Letter from Plaintiff to Kevin McGrath, Branch Chief, Complaint Management Branch, FSIS, USDA re dissatisfaction with terms of <u>Basu</u> Settlement Agreement; September 29, 2005 Letter from Plaintiff to Vernon Parker, Assistant Secretary for Civil Rights, USDA re same; October 5, 2005 Letter from Plaintiff to Vernon Parker, Assistant Secretary for Civil Rights, USDA re same; October 21, 2005 Letter from Plaintiff to Vernon Parker, Assistant Secretary for Civil Rights, USDA re same; November 22, 2005 Letter from Plaintiff to Farook Sait, Special Assistant to Assistant Secretary for Civil Rights, USDA re same

Mr. Kevin McGrath                                          September 22, 2005
Branch Chief
Complaint Management Branch
Food Safety and Inspection Service
5601 Sunnyside avenue, Building 2, Rm 1134-A
Beltsville, MD 20705

### Arun C. Basu v. Veneman-Asian Class Complaint Settlement Agreement

Dear Mr. McGrath:

From the very beginning I was instrumental in starting the Organization of South Asian
Americans in Agriculture (OSAAA) and the Asian class complaint. I have endured many
challenging situations due to my involvement in OSAAA and Asian Class complaint in USDA.

The Asian Class complaint was filed on the basis of denial of promotion to Asian employees in
the agency. Denial of promotion was the core focus of the class complaint. I had number of
complaints related to denial of promotion. Many of them were considered as very good
complaints as for discrimination was concerned. Under the settlement of Asian class complaints
many of my complaints are gone. I still have few strong complaints which are unresolved since
few years. The settlement agreement states that Tier 1 class agents need to treated exclusively
due to their contribution to the certification of class action

As you know in the process of Asian class complaint, details of individual class settlements were
kept confidential throughout negotiation, approval and during implementation. I came to know
recently that three class members in tier 1 have been granted promotion under Asian class action
settlement agreement. Even though I was co-agent for the Asian class complaint, I have been
denied the same promotion. One member was not only promoted to next grade but given two
grade level promotions. (From GS-13 to GS-15), back pay and substantial financial benefits. The
settlement agreement of this individual do not specify that this person was suppose to get two
grade promotion, but under implementation process it is interpreted favorably for the individual
and  this was accomplished by FSIS. Even though the same settlement terms apply to my case
also a promotion has been denied to me. I am seeking your input as to why I am denied of the
same promotion which three other class agents have received.

Therefore I am requesting a meeting with you, asking that my situation be given needed attention
by the Agency for reconsideration for a promotion. I was told by a member of class action
settlement team that there is still some room to do tweaking under tier 1.

Even though I was the Co-Agent and Agent for the class, from the beginning the terms of the
settlement agreement were kept confidential and no information was given by Class agent, OCR
representative, or the class complaint lawyer to me. Every time I tried to find pout the details of

the settlement agreement I was kept in dark by the negotiating team and threatened by stating I would loose what little I may get from the settlement. I was not aware that three of the Tire one agents gotten the promotion after complaining with settlement team. This is a major difference in leaving me without promotion but providing promotion to others in tier 1.

Apart from I being discriminated getting a promotion, the terms of the Asian Class Action settlement agreement being interpreted and applied to promote agency' certain employees. This un-uniformed implementation of terms of settlement agreement is also denying me the promotion to next grade.

1. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already September 25, 2005, that means this program is 300 days over due. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade

2. It is already 300 days since the settlement agreement implementation date; the OPM training which I was to receive according to the agreement has not been initiated.

3. In page 4 of Asian class Action Settlement Agreement, first line it states that Class Agents like me who are eligible and qualified to participate in it will receive priority consideration. This means that Class agents ought to be considered in priority for promotion. In spit of this clear stipulation I have been denied a promotion.

4. In case of Dr. Dey the settlement agreement states that "priority placement into first GS-15 position for which he qualifies" In spit of the settlement agreement mandates that priority consideration to be given for my promotion, the agency has not done so. The Agency is using the scope of settlement agreement to their advantage and promoting individuals, rather than applying the settlement agreement uniformly.

5. In page 8, of Asian Class Action Settlement Agreement, second paragraph as stated regarding, Dr. Lee, his initial relief was not included promotion to GS-15. After he complained to Under Secretary for Civil Rights, he was given promotion, financial benefits and back pay. I also wrote to the A. J. Hon. Andrew Culbertson, but my complaining was not considered but for Dr. Lee his complaining was considered.

6. In page 10 of Asian Class Action Settlement agreement, second paragraph, the Administrative Judge Hon. Andrew Culbertson   clearly implicit that "Class agents identified in Tire one are to receive more relief than those in the lower three tiers"   In spit of this conclusion clearly written in the settlement agreement and the indent was to provide promotion to Tier one members the Agency has denied the promotion to me.

7. In Page 11 of Asian Class Action Settlement Agreement, second paragraph, 6th line states "Voluntary compromises of title VII actions enjoys a presumption of validity, and should

therefore be approved unless contain provisions that are unreasonable, unlawful, or against public policy"

In the settlement agreement in tier one, agents are recommended for consideration for promotion yet only three out of six tier 1 members were given promotion. Also one of the tier one member was given two consecutive promotions without observing any time –in- requirement for next promotion. This is against Agency's regulation of personal practices.

8. In page 12 of Asian Class Action Settlement Agreement, second paragraph, 2nd line, the judge has stated beyond doubt that "the class agents (I am a Class Agent and Co-Agent) of tier one are to get priority consideration in promotions. I was denied a promotion thus not following the terms of the settlement agreement.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
202-690-5646

<u>HAND DELIVERED</u>                                September 29, 2005

Mr. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

<u>Arun C. Basu v. Veneman</u>

Dear Mr. Parker:

In your public expressions on civil rights you have remained steadfast that this Administration has high priority in correcting the civil right problems of USDA and that the Secretary is working hard to improve USDA's image in this area. It is few months now that the Asian class complaint being implemented in U. S. Department of Agriculture (USDA). Thanks for being a major player in accomplishing this historical mail-stone.

From the very beginning I was instrumental in starting the Organization of South Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have endured many challenging situations due to my involvement in OSAAA and Asian Class complaint in USDA. The Asian Class complaint was filed on the basis of denial of promotion to Asian employees in the agency. Denial of promotion was the core focus of the class complaint. I had number of complaints related to denial of promotion. Many of them were considered as very good complaints as for discrimination was concerned. Under the settlement of Asian class complaints many of my complaints are gone. I still have few strong complaints which are unresolved since few years.

As you know in the process of Asian class complaint, details of individual class settlements were kept confidential throughout negotiation, approval and during implementation. I came to know last week that three class members in tier # 1 have been granted promotion under the class action settlement agreement. Even though I was co-agent for the Asian Class complaint, I have been denied the same promotion. One member was not only promoted to next grade but given two grade level promotions. (From GS-13 to GS-15), back pay and substantial financial benefits. The settlement agreement of this individual do not specify that this person was suppose to get two grade promotion, but under implementation process this was accomplished by implementation team. I am seeking your input as to why I am discriminated in class action settlement and promotion was denied?

Therefore I am requesting a meeting with you, asking that my situation be given attention by the Agency for reconsideration for a promotion. I was told by a major player of class action settlement team that there is still some room to do tweaking under tier # 1.

I have suffered some egregious instances of discrimination and the time delays in administrative process are causing immeasurable harm. I shall call your office to schedule an appointment with you. Thanks you for your help.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Class Co-Agent
202-690-5646

<u>HAND DELIVERED</u>                                      October 5, 2005

Mr. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

<u>Arun C. Basu v. Veneman</u>

Dear Mr. Parker:

**Subject:** Request to undo inequitable treatment of Agents in tier # 1 of the Asian Class
         Settlement Agreement.

In your public expressions on civil rights you have remained steadfast that this Administration
has high priority in correcting the civil right problems of USDA and that the Secretary is
working hard to improve USDA's image in this area. It is a few months now that the Asian class
complaint being implemented in U. S. Department of Agriculture (USDA). Thanks for being a
major player in accomplishing this historical mile-stone.

The undersigned members of the Class Action were instrumental in starting the Organization of
South Asian Americans in Agriculture (OSAAA) and the Asian Class Complaint. We have
endured many challenging situations due to our involvement in OSAAA and Asian Class
complaint in USDA.

The Asian Class complaint was primarily filed on the basis of denial of promotion to Asian
employees in the agency. Denial of promotion was the core focus of the class complaint. We had
filed number of complaints related to denial of promotion. Asian Class Action Settlement
Agreement identifies that all the members in tier # 1 as Agents and implies same treatment, but
still this disparity in promotion to tier # 1 members exists.

As you are well aware, during the process of Asian class complaint, details of individual class
settlements were kept confidential. After the settlement, we have learnt that three class agents in
tier # 1 have been granted promotion under the class action settlement agreement whereas three
other agents were denied promotion, even though all of them were equally highly qualified and
had equally strong cases. One of the Class Agent in tier # 1 was not only promoted to next grade
but was given two grade level promotions. (From GS-13 to GS-15), considerable back pay and
substantial financial benefits. The settlement agreement of this individual does not specify that
this person was supposed to get two grade promotions, but during the implementation process it
was accomplished by the implementation team.

In light of the above, we are requesting you to kindly intervene in this process and grant us promotion from GS-14 to GS-15 so that equity and fairness would be achieved by all the Agents in tier one. We understand from a major player of class action settlement team that there is still some room to do tweaking under tier # 1.

The previous request by Dr. Krishna Murthy for your intervene in this process has gone in vein without a response.

Sincerely,

*Krishna Keerthy*

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)

Dr. Hyder Lakhani, Ph.D.

October 21, 2005

Hon. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

**Arun C. Basu v. Veneman**

Dear Hon. Parker:

**Subject:** Breech of Asian Class Action Settlement Agreement

Your strong commitment and support made the Asian class action settlement a reality and without your sustained effort, this success would not have been possible. I am thankful for your nice gesture.

1. In page 3 of Asian Class Action Settlement Agreement, Under <u>Relief Provided by the Agreement</u> the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004.

It is already October 21, 2005, that means this program is 300 days over due. Creation and implementation of DOPP program has not been initiated. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade

2. It is already 300 days since the settlement agreement implementation date, the OPM training which I was to receive according to the agreement has not been initiated. This is a breech of settlement agreement. This has prevented me an opportunity for promotion to my next grade.

3. There is no uniformed implementation of terms of settlement agreement, even though the settlement agreements states that tier # 1 agents are to be treated same. This is also delaying me the promotion to next grade.

4. The person who was appointed as Liaison Specialist, GS-0301-15, in Office of Civil Rights has left the position with in three months. As you know, I applied for this position and also I filed EEO complaint of denial of promotion for same position. Later I withdrew this complaint upon the request of Dr. Arun Basu, Class Agent for Asian Class Complaint.

Without the liaison specialist in the position, agencies are not implementing the terms of the settlement agreement, because there is nobody to monitor and question non implementation of settlement agreement.

<u>This is to request to you consider me for this position,</u> The Office of Civil Rights already has my application. It is important that this position to be filled ASAP in order to implement the terms of the class action and to monitor the progress for next three years.

If you have further questions, contact me at 202-690-5646 or at Kris.murthy@usda.gov


Sincerely

Dr. Kris Murthy, DVM, MVSc, MS, M (ASCP)
Senior Staff Officer
USDA, FSIS, NTS

November 22, 2005

Mr. Farook Sait
Special Assistant to Assistant Secretary for Civil Rights
1400 Independence Ave, SW
Whitten Building Room, 240W
Washington D. C., 20250-3700

### Arun C. Basu, et al, Complaints v. Ann M. Veneman, Secretary, USDA

Dear Mr. Sait:

**Subject:** Request to undo inequitable treatment of Agents in tier # 1 of the Asian Class
Settlement Agreement. EEOC No. 100-A1-7863X, Agency No. 000190

It has been a few months now that the Asian class complaint is being implemented in U. S. Department of Agriculture (USDA). Confidential information regarding individual settlement terms are being uncovered.

The undersigned members of the Class Action were instrumental in starting the Organization of South Asian Americans in Agriculture (OSAAA) and the Asian Class Complaint. We have endured many challenging situations due to our involvement in OSAAA and Asian Class complaint in USDA.

The Asian Class complaint was primarily filed on the basis of denial of promotion to Asian employees in the agency. We had filed a number of complaints related to denial of promotion. Asian Class Action Settlement Agreement identifies all the members in tier # 1 as Agents and implies same treatment, but there is a disparity in promotion of tier # 1 members under implementation of this settlement. There is no inequitable treatment for members of the other tiers and this discrepancy is only for tier # 1.

As you are well aware, during the process of Asian class complaint, details of individual class settlements were kept confidential and inequitable treatment of members of within tier # 1 could not be determined. After the settlement, we have learnt that three class agents in tier # 1 have been granted promotion whereas three other agents were denied promotion, even though all of them were equally highly qualified and had equally strong cases. One of the Class Agent in tier # 1 was promoted not only to the next grade but was given two grade level promotions. (From GS-13 to GS-15).

The settlement agreement of this individual did not specify that this person was supposed to get two grade promotions, but during the implementation process it was accomplished by the implementation team.  In early part of FY 2004, we had written an e-mail to Hon. Andrew Culbertson, AJ, requesting him to consider promotion for all tier # 1 agents, because the core issue of filing this Asian class action complaint was the denial of promotion.

In regards to inequitable treatment of Agents in tier # 1 of the Asian Class, Settlement Agreement. EEOC No. 100-A1-7863X, Agency No. 000190,  we wrote to both Hon Vernon Parker, ASCR and Ms. Sadhana True, Director of OCR. Ms. Sadhana True in her response to us stated that "we are unable to explain why some class members received certain relief and others did not" and she said that "We recommend that you raise your concerns with your representative and/or the Office of the General Counsel. (Copy attached)

You being our representative of Asian Class Settlement Agreement, we are sending this letter. In light of the above, we are requesting you to kindly intervene in this process and grant us promotion from GS-14 to GS-15 so that equity and fairness would be achieved by all the Agents in tier one. We have already submitted similar documents to representative at Office of the General Counsel. We understand from a major player of class action settlement team that there is still room to do tweaking under tier # 1 as per the settlement agreement.

For further information you can contact us at Kris.murthy@usda.gov or Hyder.lakhani@usda.gov.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)

Dr. Hyder Lakhani, Ph.D.

Enclosure
cc.
Hon. Andrew Culbertson
Administrative Judge
U. S. Equal employment Opportunity Commission
Washington Field Office
1801 L Street, N. W., Suite 100
Washington D. C., 20507

# EXHIBIT    10

October 3, 2005 letter from Kevin McGrath to Plaintiff addressing concerns about implementation of terms of <u>Basu</u> Settlement Agreement, and Plaintiff's entitlement to certain relief

 **United States** **Food Safety** **Washington, DC**
**Department of** **and Inspection** **20250**
**Agriculture** **Service**

**CERTIFIED**                 OCT  3 2005
**7003 2260 0002 9762 1452**

Krishna Murthy
Veterinary Medical Officer
7715 Lear Road
McLean, VA 22102

Dear Dr. Murthy:

This is to acknowledge receipt of your letter dated September 29, 2005, addressed to
Dr. H. Steven L. Newbold II, Director, Civil Rights Division, Food Safety and Inspection
Service (FSIS).

Your inquiry is directly related to the implementation of the recent settlement agreement in the
formal class complaint of discrimination identified as *Arun Basu et. al. v. Department of
Agriculture* (EEOC No. 100-A1-7863X). Whereas I have been designated the Agency liaison to
the Office of General Counsel (OGC) and the Office of Civil Rights for implementing the
settlement agreement, Dr. Newbold has asked that I review your concerns and respond
accordingly.

In your letter, you alleged the promotion of certain individuals is not consistent with the terms of
the agreement and you are being denied a promotion as a co-agent of the Class. You are also
suggesting the settlement agreement provides opportunity for further relief personal to you.

I have carefully reviewed the terms of the settlement agreement and particularly the terms that
apply directly to FSIS employees. I am unable to find any part of the agreement that provides
for your being promoted to a higher grade. Also, since the settlement agreement was approved
by the respective parties, their representatives and the Administrative Judge of the Equal
Employment Opportunity Commission, we are unaware of any authority to alter the specific
terms of the agreement.

If you believe the settlement agreement is not being implemented correctly I encourage you to
contact Mr. James Hood, Esq., Class Counsel.

Sincerely,

Kevin McGrath
Agency Liaison for the Basu Class Complaint

cc:    William P. Milton, Jr. OM, Washington, DC
       Steven Brammer, OGC, Washington, DC
       James P. Hood, Washington, DC

BUT UNITED STATES DEPARTMENT OF AGRICULTURE
FOOD SAFETY AND INSPECTION SERVICE
CIVIL RIGHT DIVISION

---

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>Steven Brammer | FROM:<br>Damali Carr, CRD |
| COMPANY:<br>OM | DATE:<br>10/5/2005 |
| FAX NUMBER:<br>(202) 720-7524 | TOTAL NO. OF PAGES INCLUDING COVER:<br>2 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

**Krishna Murthy**

[CLICK HERE AND TYPE RETURN ADDRESS]

# EXHIBIT   11

October 24, 2005 Letter from Sadhna True, Director of Office of Civil Rights, USDA, to
Plaintiff addressing previous letters to Assistant Secretary for Civil Rights, and informing
Plaintiff of non-compliance provisions of <u>Basu</u> Settlement Agreement



**United States
Department of
Agriculture**

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

OCT 2 4 2005

Dr. Krishna Murthy
7715 Lear Road
McLean, Virginia 22102

Dear Dr. Murthy:

I am writing in response to your letters dated August 29, 2005, October 5, 2005, and October 21, 2005, regarding the *Basu* Settlement Agreement.

Your first two letters address the individual relief you received as a result of the settlement agreement of the *Basu* class action case. The Office of the Assistant Secretary for Civil Rights (ASCR) played no role in determining the individual relief that would be offered to class members. Thus, we are unable to explain why some class members received certain relief and others did not. We recommend that you raise your concerns with your representative and/or the Office of the General Counsel.

Your most recent letter addresses the injunctive relief provided in the Settlement Agreement and the Departmental Liaison position. The provisions regarding the Development Opportunity Placement Program require that the agencies develop procedures and eligibility requirements for the Program within 180 days after the Settlement Agreement became final. This requirement was met. The Agreement further requires that each identified agency fill six developmental opportunity slots over a three-year period. We are now in the process of posting developmental opportunities on the ASCR website. Please note that these opportunities do not guarantee promotion of any individual class member.

You state that you were supposed to receive "OPM training" pursuant to the Settlement Agreement. I am not aware of any provision in the Agreement that addresses training for individual class members. If this term was present in your individual settlement agreement, then you must address your allegation of non-compliance in the manner set forth in your individual settlement agreement.

The prior Departmental Liaison, Dr. Ruihong Guo, left the position approximately seven weeks ago, not three months as stated in your letter. I have been serving as the Acting Departmental Liaison since that time. We have initiated the selection process for the position and intend to fill it as quickly as possible. According to the terms of the Settlement Agreement, "[n]o Class Agent, Class Member, or [] other person directly and personally affected by this Agreement will [] serve as Department Liaison." Settlement Agreement, section IV.C. Thus, you are not eligible to be considered for the Departmental Liaison position. Until the position is filled, I will continue to monitor compliance with the Settlement Agreement and coordinate implementation of the injunctive relief provisions.

AN EQUAL OPPORTUNITY EMPLOYER

Dr. Krishna Murthy
Page 2

If you believe that the Department of Agriculture has failed to perform its obligations under the Settlement Agreement, then you must follow the procedures for enforcement set forth in the Agreement, section VIII. The first step is to provide verbal notice to the Department's representative, Arlean Leland, of the claim of non-compliance. At least five days after providing verbal notice, you must provide written notice of the claim of non-compliance to the Departmental Liaison. The written notice must propose a resolution of the issue. After the written notice of non-compliance is received, the Department shall have 35 calendar days to respond. If the response does not resolve the matter, then additional procedures are available for pursuing the claim of non-compliance.

If you wish to submit a formal claim of non-compliance, please follow the procedures outlined in the Settlement Agreement.

Sincerely yours,

Sadhna G. True
Director
Office of Civil Rights

cc:    Vernon B. Parker, Assistant Secretary for Civil Rights

# EXHIBIT    12

January 17, 2006 Letter from Plaintiff to Associate General Counsel, Civil Rights, USDA regarding January 5, 2006 meeting with Plaintiff, Class Counsel, and OGC attorneys re <u>Basu</u> Settlement Agreement



Ms. Arlean Leland, Esq                                          01/17/06
Associate General Counsel, Civil Rights
Office of the General Counsel (OGC),
United States Department of Agriculture (USDA)
1400 Independence Ave., SW
Room 2006-S
Washington, DC 20250-1400

Dear Ms. Leland:

This is in response to Ms. Sadhna True, Director, Office of Civil Rights, letter
dated October 24, 2005, (copy attached) and the meeting I had with Mr. Steven
C. Brammer, OGC, Mr. James Hood, Class Counsel and OGC staff members, on
January 5, 2005.

1. In the second paragraph, Ms True states that "The Office of the Assistant
Secretary for Civil Rights (ASCR) played no role in determining the individual
relief that would be offered to class members.  Thus, we are unable to explain
why some class members received certain relief and others did not. We
recommend that you raise your concerns with your representative and/or the
Office of the General Counsel".

I am taken back from this response because special Assistant to Assistant
secretary for Civil Rights (ASCR) Mr. Farook Sait was our (Class members')
representative in negotiating both individual relief and general class members'
relief. Mr. Sait was involved in all negotiations. Even though this was a direct
conflict of interest on part of Mr. Sait to be representative of Class members in
negotiating individual relief and be an employee to ASCR, OCR. My request to
be Class members' representative was denied by Class Agent Dr. Arun Basu.
Mr. Sait has played crucial role in determining individual relief of Asian Class
action settlement agreement. In the individual relief negotiating process, I have
been denied a promotion.

2. From the very beginning I was the leader in starting the Organization of South
Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have
endured many challenging situations due to my involvement in OSAAA and
Asian Class complaint in USDA. The Asian Class complaint was filed on the
basis of denial of promotion to Asian employees in the agency. Denial of
promotion was the core focus of the class complaint. I had number of
complaints related to denial of promotion. Many of them were considered as very
good complaints as for discrimination was concerned.

Ms. Leland

5. When I applied for Departmental Liaison position under settlement agreement, I was denied stating that I am class member, but ASCR and OCR appointed Dr. Ruihong Guo, who left the position in short time was also a class member, a Chinese Asian. Why I was discriminated stating that I am a class member but not Dr. Ruihong Guo is unanswered yet. Please look into this and provide me justices in this regard.

*Krishna Murthy*

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
USDA, FSIS
Kmurthy@usda.gov
202-690-5646



**USDA**

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

OCT 2 4 2005

Dr. Krishna Murthy
7715 Lear Road
McLean, Virginia 22102

Dear Dr. Murthy:

I am writing in response to your letters dated August 29, 2005, October 5, 2005, and October 21, 2005, regarding the *Basu* Settlement Agreement.

Your first two letters address the individual relief you received as a result of the settlement agreement of the *Basu* class action case. The Office of the Assistant Secretary for Civil Rights (ASCR) played no role in determining the individual relief that would be offered to class members. Thus, we are unable to explain why some class members received certain relief and others did not. We recommend that you raise your concerns with your representative and/or the Office of the General Counsel.

Your most recent letter addresses the injunctive relief provided in the Settlement Agreement and the Departmental Liaison position. The provisions regarding the Development Opportunity Placement Program require that the agencies develop procedures and eligibility requirements for the Program within 180 days after the Settlement Agreement became final. This requirement was met. The Agreement further requires that each identified agency fill six developmental opportunity slots over a three-year period. We are now in the process of posting developmental opportunities on the ASCR website. Please note that these opportunities do not guarantee promotion of any individual class member.

You state that you were supposed to receive "OPM training" pursuant to the Settlement Agreement. I am not aware of any provision in the Agreement that addresses training for individual class members. If this term was present in your individual settlement agreement, then you must address your allegation of non-compliance in the manner set forth in your individual settlement agreement.

The prior Departmental Liaison, Dr. Ruihong Guo, left the position approximately seven weeks ago, not three months as stated in your letter. I have been serving as the Acting Departmental Liaison since that time. We have initiated the selection process for the position and intend to fill it as quickly as possible. According to the terms of the Settlement Agreement, "[n]o Class Agent, Class Member, or [] other person directly and personally affected by this Agreement will [] serve as Department Liaison." Settlement Agreement, section IV.C. Thus, you are not eligible to be considered for the Departmental Liaison position. Until the position is filled, I will continue to monitor compliance with the Settlement Agreement and coordinate implementation of the injunctive relief provisions.

AN EQUAL OPPORTUNITY EMPLOYER

Dr. Krishna Murthy
Page 2

If you believe that the Department of Agriculture has failed to perform its obligations under the Settlement Agreement, then you must follow the procedures for enforcement set forth in the Agreement, section VIII. The first step is to provide verbal notice to the Department's representative, Arlean Leland, of the claim of non-compliance. At least five days after providing verbal notice, you must provide written notice of the claim of non-compliance to the Departmental Liaison. The written notice must propose a resolution of the issue. After the written notice of non-compliance is received, the Department shall have 35 calendar days to respond. If the response does not resolve the matter, then additional procedures are available for pursuing the claim of non-compliance.

If you wish to submit a formal claim of non-compliance, please follow the procedures outlined in the Settlement Agreement.

Sincerely yours,

Sadhna G. True
Director
Office of Civil Rights

cc:    Vernon B. Parker, Assistant Secretary for Civil Rights

# EXHIBIT    13

February 1, 2006 Letter from OGC to Plaintiff summarizing meeting of January 5, 2006,
Plaintiff's concerns re settlement, and noting that all attendees agreed that Plaintiff was not
attempting to raise a claim of non-compliance under <u>Basu</u>, but was raising concerns in an
attempt to reach resolution

 United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

February 1, 2006

Dr. Kris Murthy
7715 Lear Road
McLean, Virginia 22102

### Re: Meeting on January 5, 2006, <u>Basu, et. al. v. Department of Agriculture.</u>

Dear Dr. Murthy:

On January 5, 2006, you met with Inga Bumbary-Langston, Assistant General Counsel, Civil Rights Litigation Division, Office of the General Counsel ("OGC"), and Steven Brammer and Neha Hewitt, OGC, Civil Rights Litigation Division, as well as with Class Counsel, Mr. James Hood, to discuss concerns you have with the implementation of your individual relief provided under the <u>Basu, et. al. v. Department of Agriculture</u>, Settlement Agreement (herein after "Basu Settlement Agreement"). At the meeting, all attendees agreed that you were not attempting to raise a claim of non-compliance under the terms of the Settlement Agreement, but were raising concerns in an attempt to reach resolution.

The following is a summary of the concerns you expressed at this meeting. To the extent that the Agency can answer some of your concerns, we have done so. Responses to other concerns you have will be forthcoming after consultation with Class Counsel.

1. <u>Equal Treatment in Tier One</u> - In the <u>Basu</u> Settlement Agreement, the Tier One group consisted of six class members. However, you stated that of the six class members in Tier One, only three of those members received promotions. Specifically, you stated that you did not receive a promotion, and you believe that this is not equal treatment as provided under the <u>Basu</u> Settlement Agreement. You also believe that all Tier One members should be treated equally under the Settlement Agreement.

The <u>Basu</u> Settlement Agreement never provided for the same relief for all members of Tier One. A letter dated February 17, 2004, was provided to you by the Agency setting forth the proposed relief to which you would be entitled. The letter also included a copy of the executed <u>Basu</u> Settlement Agreement and Notice of Settlement. A copy of this letter, with its attachments, is provided for your reference. The Notice included specific provisions for challenging the fairness of relief provided by the <u>Basu</u> Settlement Agreement. It is the Agency's understanding that you did not challenge the terms of the <u>Basu</u> Settlement Agreement to the Administrative Judge. After considering all challenges to the <u>Basu</u> Settlement Agreement, the Administrative Judge approved the agreement of the parties. The <u>Basu</u> Settlement Agreement provides for all Tier One members to receive individual relief as negotiated by these Class Members, with individual settlement agreements serving as the basis for implementing this relief.

Relief to which you were entitled included a payment of $40,000.00, advancement to the GS-14, Step 10 level, reassignment into the position of Veterinary Medical Officer, GS-0701-14, Office of Program Policy and Development, New Technology Staff, and Office of Personnel Management ("OPM") leadership training. This relief has been made available to you. The parties stand by the fairness of the terms of the Basu Settlement Agreement. We have attached another copy of your individual settlement agreement for execution by you and Class Counsel. If you have additional concerns about how your individual interests were negotiated by the Class Representative, please contact Mr. James Hood about this issue.

2. OPM Training - Pursuant to the terms of the Basu Settlement Agreement, and as outlined in your individual settlement agreement you are to receive OPM leadership training. You believe you are entitled to Senior Executive Service ("SES") training as part of this training. OGC believes that a reasonable amount of OPM leadership training is to be made available to you, pursuant to the agreement of the parties. OGC's understanding is that the Agency had appropriate personnel meet with you to determine the scope of appropriate OPM leadership training. OPM training was made available to you. The Agency is in compliance with the Agreement by identifying and offering you OPM training. The Agency has informed OGC that you have not yet selected any course previously identified. You expressed concern that the Agency was limiting your choice to one (1) course. Please be advised that the selection of one course does not preclude your working with the Agency to identify other courses if the Agency agrees that such courses are necessary based upon its assessment with you of your need for leadership training. If you have additional concerns about how your individual interests were negotiated by the Class Representative, please contact Mr. James Hood about this issue.

3. DOPP Program - You raised the issue of implementation of DOPP, under the Basu Settlement Agreement. To the extent that you allege that DOPP would allow you, or any individual, to receive a permanent promotion to the GS-15 level, you are in error. As stated in the Basu Settlement Agreement, DOPP is a pilot developmental program established for the purpose of providing opportunities for all eligible and qualified employees to serve on details, temporary promotions and developmental assignments. As a Class Agent, if you are qualified and elibile to participate in the program, and apply pursuant to guidelines, you will receive priority consideration for those details, temporary promotions, or developmental assignments for which you are eligible and qualified, for a certain period of time. However, DOPP does not guarantee nor promise a promotion to Class Agents, and is a program available to all U.S. Department of Agriculture ("USDA") employees. USDA is within the appropriate time frames in the creation of DOPP and its guidelines, and we will provide Class Counsel with additional information on implementation of this injunctive relief.

4. Non-Selection You stated that you believe that you were inappropriately not selected for the Department Liaison position because you are a class member in Tier One of the Settlement Agreement. To the extent that you have filed a formal administrative complaint regarding this non-selection, OGC believes it would be inappropriate to comment on this specific allegation. However, after consultation with Class Counsel, we will provide additional information regarding the scope of selection of the Departmental Liaison position.

5. <u>Notice of the Basu Settlement Agreement</u>  You stated that you did not receive notice about the <u>Basu</u> Settlement Agreement with a right to object to its terms.  However, as stated above, the Agency provided you with a letter detailing your proposed individual relief, a copy of the Settlement Agreement, and a Notice providing you the right to object to the terms of the <u>Basu</u> Settlement Agreement with the Administrative Judge. Please see the enclosed document as verification of the Agency's prior notice to you.

Please remember that you must consult the Class Representative, James Hood to assert any concerns you may still have concerning the Agency's compliance with this Settlement Agreement.

Thank you for bringing these concerns to OGC and Class Counsel in an informal meeting.  We hope that you will be able to continue to work with us and Class Counsel with regard to your concerns, and will be in touch with the additional information referenced above.

Very truly yours,


_____

Steven C. Brammer



Enclosure

cc:     James Hood

# EXHIBIT   14

February 7, 2006 E-mail from Plaintiff to OGC complaining about February 1, 2006 letter, and seeking written confirmation of receipt of proposed terms of settlement

Case 1:06-cv-02208-RJL     Document 25-15     Filed 11/14/2007     Page 2 of 2

| | |
|---|---|
| **From:** | Kris Murthy |
| **To:** | STEVEN BRAMMER |
| **Date:** | 2/7/2006 7:42:42 AM |
| **Subject:** | Your response to issues I raised during the meeting on 1/5/06 |

Good morning:

Mr. Brammer:

After the meeting, I received your response to my issues on 02/01/06, on the same day called and left messages for an appointment in your voice mail. I spoke twice to Ms. Neha Hewitt for an appointment with you. Since I have not heard from you or your office, I am sending this message.

The written response from you on the issues I raised during our meeting on 01/05/06 are evasive and do not address the issues. For some issues still there is no responses.

I have asked several times and you promised me you would provide me is the written proof that I received copy of my proposed settlement agreement dated February 17, 2004 and attachment which states procedure to object if I did not agree with my settlement agreement.

What I am looking is like a signed copy of registered mail receipt or couriered document with my signature on it which states that I received this document back in February 17, 2004.

Thanks

Dr. Kris Murthy
Senior Staff Officer
NTS, FSIS

Upgrade Your Email - Click here!
<http://promos.hotbar.com/promos/promodll.dll?RunPromo&El=&SG=&RAND=3714
&partner=hbtools>

**CC:**          Kris Murthy

# EXHIBIT   15

March 3, 2006 Letter from OGC to Plaintiff summarizing all efforts at resolving Plaintiff's concerns about <u>Basu</u> Settlement Agreement

 **United States Department of Agriculture**    Office of the General Counsel    Washington, D.C. 20250-1400

March 3, 2006

Dr. Krishna Murthy
7715 Lear Road                    **VIA ELECTRONIC MAIL**
McLean, Virginia 22102

**Re: Response to Inquiries regarding Basu, et. al. v. Department of Agriculture.**

Dear Dr. Murthy:

On January 5, 2006, you met with Inga Bumbary-Langston, Assistant General Counsel, Civil Rights Litigation Division, Office of the General Counsel ("OGC"), and Neha Hewitt and me, OGC, Civil Rights Litigation Division, as well as with Class Counsel, Mr. James Hood, to discuss concerns you have with the implementation of your individual relief provided under the Basu, et. al. v. Department of Agriculture, Settlement Agreement (herein after "Basu Settlement Agreement"). At the meeting, all attendees agreed that you were not attempting to raise a claim of non-compliance under the terms of the Settlement Agreement, but were raising concerns in an attempt to reach resolution.

On February 1, 2006, we provided a letter summarizing concerns you expressed at the January 5, 2006, meeting. This February 1, 2006, letter answered your specific questions to the extent possible. We informed you that responses to other concerns you have will be forthcoming after consultation with Class Counsel. On February 7, 2006, you followed up with a request written proof that you received a copy of your proposed settlement agreement dated February 17, 2004. You also stated that my responses to some of the issues you raised in our meeting of January 5, 2006, were evasive and that there were still no answers

Below is OGC's response to your remaining concerns. It is imperative that you recognize, as this office has told you numerous times, that OGC does not represent you in this matter. We have gone above and beyond our responsibilities in providing information and working with you to explain our interpretations of the Agreement. While we will gladly provide relevant information regarding implementation of the Settlement Agreement, we urge you to address any and all matters of dissatisfaction with Class Counsel, who represents the interests of the Class.

Dr. Krishna Murthy
March 3, 2006
Page 2

1.     Request for Registered Mail Receipt of Letter Informing You of Proposed Settlement:
Our February 1, 2006 correspondence to you provided a letter dated February 17, 2004, setting
forth the proposed relief to which you would be entitled under the Basu Settlement Agreement.
The letter also included a copy of the executed Basu Settlement Agreement and Notice of
Settlement.  You have asked for documentation registering your receipt of this information.  If I
did not make this clear earlier, I apologize.  The Administrative Judge for the U.S. Equal
Employment Opportunity Commission ("EEOC") approved the form, content, and method of
distribution of notices going on regarding the Basu Settlement Agreement.  Counsel for the class
and the Agency representative proposed distribution via regular mail.  Such notices were sent out
in that manner.  Our files reflect no return of the February 17, 2004, Notice of Settlement which
was sent to you.

2.     Implementation of the Development Opportunity Placement Program ("DOPP"):
You previously raised the issue of implementation of DOPP, under the Basu Settlement
Agreement.  Our letter of February 1, 2006, informed you that to the extent that you allege that
DOPP would allow you, or any individual, to receive a permanent promotion to the GS-15 level,
you are in error.  As stated in the Basu Settlement Agreement, DOPP is a pilot developmental
program established for the purpose of providing opportunities for all eligible and qualified
employees to serve on details, temporary promotions and developmental assignments.  As a
Class Agent, if you are qualified and eligible to participate in the program, and apply pursuant to
guidelines, you will receive priority consideration for those details, temporary promotions, or
developmental assignments for which you are eligible and qualified, for a certain period of time.
However, DOPP does not guarantee nor promise a promotion to Class Agents, and is a program
available to all U.S. Department of Agriculture employees.  USDA is within the appropriate time
frames in the creation of DOPP and its guidelines, and we will provide Class Counsel with
additional information on implementation of this injunctive relief.  Sadhna G. True informed you
previously that the Agencies are in the process of posting developmental opportunities on the
website of the Assistant Secretary for Civil Rights ("ASCR").  OGC refers you to this website
and to the Acting Departmental Liaison for any further information regarding implementation of
DOPP.

3.     Selection of the Departmental Liaison Position.  As we previously informed you by letter
dated February 1, 2006, to the extent that you have filed a formal administrative complaint
regarding your non-selection for the Department Liaison position because you are a class
member in Tier One of the Settlement Agreement, it is improper and inappropriate for OGC to
comment on this specific allegation.  Although OGC indicated that, after consultation with Class
Counsel, we will provide additional information regarding the scope of selection of the
Departmental Liaison position, we have determined that such information will be provided in the
litigation of your complaint of discrimination as to this issue.

Dr. Krishna Murthy
March 3, 2006
Page 3

Please remember, as we have informed you in person and in writing, that we urge you to consult
Mr. Hood, who is tasked with representing the interests of the class, to assert any concerns you
may still have concerning the Agency's compliance with this Settlement Agreement. I also note
that we have not received a signed copy of your individual Settlement Agreement, outlining the
relief set forth in the Basu Settlement Agreement. We've provided this document several times,
most recently on February 1, 2006, with revisions to outline the specific complaints resolved by
the Basu Settlement Agreement. If you need the agreement forwarded to you again, please let us
know. Please ensure that our offices receive a signed copy of this individual agreement on or
before March 17, 2006.

Very truly yours,

Steven C. Brammer

Enclosure

cc:     James Hood

*****\*>********* –COMM. JOURNAL– ******************* DATE MAR–03–2006 ***** TIME 18:23 ********

MODE = MEMORY TRANSMISSION          START=MAR–03 18:19    END=MAR–03 18:23

    FILE NO.=277

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ☎ | 912023712535 | 004/004 | 00:02:47 |

*****\************************** –CRPCCD          – ***** –          2027207524– ********

# U.S. DEPARTMENT OF AGRICULTURE
# OFFICE OF THE GENERAL COUNSEL
# CIVIL RIGHTS DIVISION

**SOUTH BUILDING, ROOM 3312-S**
**1400 INDEPENDENCE AVENUE, S.W.**
**WASHINGTON, DC 20250-1400**

**TELEPHONE: 202-720-1760**
**FAX: 202-720-4089**



**DATE:**          March 3, 2006

**TO:**          James P. Hood

**FAX NO:**          (202) 371-2535

**FROM:**          Steven C. Brammer
              Phone No. (202) 720-4375

**PAGES:**          ___ Including Cover Sheet

**RE:**          **Arun Basu, et al. v. Veneman**
            **EEOC No. 100-A1-7863X**
            **Agency No. 000190**

**COMMENTS:**

**CONFIDENTIAL – ATTORNEY-CLIENT PRIVILEGE/ATTORNEY WORK PRODUCT**

    This information contained in this facsimile message is attorney-client privileged, confidential, and attorney work product information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone so that arrangements may be made for return of the original.

# EXHIBIT   16

March 24, 2006 Letter from Plaintiff to OGC continuing to complain about resolution

Ms. Arlean Leland, Esq                                          03/24/06
Associate General Counsel, Civil Rights
Office of the General Counsel (OGC),
United States Department of Agriculture (USDA)
1400 Independence Ave., SW
Room 2006-S
Washington, DC 20250-1400

**Re: Response to Inquiries regarding <u>Basu, et. al. v. Department of
Agriculture.</u>**

Dear Ms. Leland:

This is a rebuttal to the response I received from Mr. Steven C. Brammer, Office
of the General Counsel, Civil Rights, USDA dated March 3, 2006 (copy
attached). Item number corresponds to the Items listed in Mr. Brammer's
response.

1. Item # 1. Mr. Brammer stated in the response letter, page 1, paragraph 3 that
OGC has no responsibility in regards to addressing the concern I have regarding
the Individual class action settlement agreement. He also stated that "we urge
you to address any and all matters of dissatisfaction with Class Counsel, who
represents the interests of the Class". My Class counsel, Mr. Hood says that all
the negotiations regarding individual settlement agreement were occurred by the
negotiating team under the direction of OGC not Class Counsel.
Presently I am the victim of discrimination in this situation, where class counsel,
Class Agent-Dr. Arun Basu, Class representative-Mr. Farook Sait and OGC
representative Mr. Steven Brammer are not taking responsibility for non
promotion in my individual settlement agreement. Mr. Steven Brammer was
OGC representative which represented my Agency-FSIS in these negotiations. It
is Mr. Steven Brammer's responsibility to correct this non promotion
discrimination situation.

2. Item # 1 "<u>Request for registered Mail Receipt of Letter informing you of
proposed Settlement</u>" I should have received my individual settlement agreement
on Feb 17 of 2004 with instruction to file objection if I did not agree with non-
promotion terms of my settlement agreement. This did not happen and I lost an
opportunity to object to my individual settlement agreement of non promotion to
Administrative Judge Andrew Culbertson. It was Mr. Steven Brammer's
responsibility to make sure I receive a copy of my settlement agreement on time
to file for objection.  I came to know recently that one another Agent in Tier 1
filed his objection and changed his non-promotion status to promotion status.
This opportunity was denied to me by Mr. Steven Brammner's actions. This need

to be corrected. With a promotion to GS-15 step 4.

3. Item 2 Implementation of Development Opportunity Placement Program (DOPP), my agency which is FSIS, has not implemented DOPP program. The DOPP announced in APHIS is giving priority consideration to all Agents in Tire 1 including those agents who have received promotion, and I am going to loose even in this DOPP program.

4. Item # 3, Selection of Departmental Liaison Position, Mr. Brammer state that he will provide me information on my non-selection for this position, in the litigation of my complaint of discrimination as to this issue, but I need to know now and my cases are not processed since several years and I do not know how many more number of years it will take to resolve this issue. This is not an acceptable answer by OGC. Ms. Sadhana True and OGC has to resolve this ASAP.

5. I have many EEO complaints which are not subsumed in Asian Class complaint which are not resolved since many years. Mr. Brammer has to address status of these complaints status as to why these complaints are unresolved since so many years.

6. I am running out of time in this no action situation by OGC on my non-promotion issue and Mr. Brammer has the responsible for this situation. Sincerely,

Dr. Kris Murthy, DVM, MVSc, MS, M (ASCP)
Senior Staff Officer
FSIS, USDA

# EXHIBIT   17

May 4, 2006 Letter from OGC to Plaintiff, noting that OGC has gone above and beyond all responsibilities and refusing to respond to any future personal attacks on OGC or staff, and clarifying final points

 United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

May 4, 2006

Dr. Krishna Murthy                                    **VIA HAND DELIVERY**
7715 Lear Road                                        **and VIA FEDEX**
McLean, Virginia 22102

Re: **Response to Letter of March 24, 2006**

Dear Dr. Murthy:

Ms. Arlean Leland, Associate General Counsel, requested that I respond to your letter dated
March 24, 2006. As the Assistant General Counsel, Civil Rights Litigation Division, I am
directly involved in the implementation of the <u>Arun Basu, et al. v. Department of Agriculture</u>,
Settlement Agreement ("<u>Basu</u> Settlement Agreement"). I am very aware of all aspects of the
<u>Basu</u> Settlement Agreement, your entitlement to individual relief, and my staff's responses to
your inquiries and demands.

First, I wish to immediately inform you in no uncertain terms, that neither Mr. Steven Brammer,
nor any member of my staff has taken any action with regard to implementation of the <u>Basu</u>
Settlement Agreement, or your entitlement to relief under this agreement which has denied you
any opportunity. Mr. Brammer, Ms. Neha Hewitt, and other members of my staff have worked
diligently for several years to ensure that the terms of the <u>Basu</u> Settlement Agreement are
properly implemented. Our office has worked with representatives from all individual agencies
within the Department of Agriculture ("USDA"), including the Office of Chief Financial Officer,
the Department of Justice, and Class Counsel, to ensure that implementation of the historic <u>Basu</u>
Settlement Agreement proceeds according to its terms. You are <u>absolutely incorrect</u> in any
allegations that Mr. Brammer, or any member of my staff has failed to address to you, or anyone
else matters under the <u>Basu</u> Settlement.

In fact, the Office of the General Counsel has gone above and beyond all responsibilities to you
by responding to your previous concerns in two comprehensive letters dated February 1, 2006,
and March 3, 2006. Also, Steven C. Brammer, Neha Hewitt, and myself met with you and Class
Counsel on January 5, 2006, to discuss these same concerns. Mr. Brammer has met with you no
less than five (5) times in person over the past eight (8) months to listen to your individual
concerns, has repeatedly revised your individual settlement agreement to meet your specific
requests, has facilitated a meeting with management of the Food Safety and Inspection Service
to present your proposal for resolution of complaints falling outside the scope of the <u>Basu</u>
Settlement Agreement, and has responded to numerous telephone inquiries and electronic mail
requests you have sent. Mr. Brammer has repeatedly informed you, in person and in writing,
that the Office of the General Counsel does not represent you. We are not obligated to meet with
you whenever you choose. Your statements that this office has been unresponsive to your
requests, or has failed to provide you with any information, are without merit. <u>I will not respond
to any future personal attacks on this office or any member of my staff.</u> This office will no

Dr. Krishna Murthy
May 4, 2006
Page 2

longer spend additional valuable resources and time on responding to your concerns which have been repeatedly addressed.

Although I believe that we have adequately responded to your previous concerns, I wish to make the following points clear. In Paragraph 1 of your March 24, 2006, letter, you state that Class Counsel has informed you that he was not part of the negotiating team for the Basu Settlement Agreement. Class Counsel signed the Basu Settlement Agreement on October 31, 2003, as the legal representative of the class. I am unsure what meaning you expect this office to draw from your allegation that the attorney selected by the class was not as involved as you would have liked him to be in the negotiating process. The class identified Mr. Farook Sait as its Chief Negotiator, and Mr. Sait was thereby authorized to negotiate a resolution on behalf of the class. We clearly have no control over how active Class Counsel chose to be in this matter, and clearly we did not prevent participation by Class Counsel at any point in the settlement process.

In Paragraph 2 of your letter, you again allege that you were somehow not properly informed of the terms of your individual relief under the Basu Settlement Agreement. I find it very interesting that you have worked with this office for many months on the specific relief to which you are entitled – for example, asking for our assistance on the issue of training. However, now over two years after you received a copy of the Basu Settlement Agreement, you are claiming that you never knew you could object to its terms. Your claims that you did not receive proper notification of the Agreement are without merit. Again, I inform you that the February 17, 2004, letter explaining your proposed individual relief, the Notice of Settlement providing rights to object, and a full copy of the Basu Settlement Agreement were sent to you by regular U.S. mail, and therefore there is no return receipt for this letter. As stated in Mr. Brammer's March 3, 2006, letter, the Administrative Judge for the Equal Employment Opportunity Commission ("EEOC") approved the form, content, and method of distribution of notices of the Basu Settlement Agreement. Counsel for the class and the Agency representative proposed distribution via regular U.S. mail. This office has adequately responded to your inquiry by providing you a copy of the letter and attachments, which provided you notice of the proposed Settlement Agreement and methods for objections. The February 7, 2004, mailing was sent to the same address at the top of this letter, and our files show that this letter was not returned. A properly addressed letter sent by regular U.S. mail is presumed to have been received within five (5) days of its mailing. *See Perry v. United States Postal Serv.*, EEOC Appeal No. 01A54253 (Sept. 20, 2005).

In Paragraph 3 of your letter, you again address implementation of the Development Opportunity Placement Program ("DOPP"). I reiterate Mr. Brammer's statement in the March 3, 2006, letter, referring you to the Acting Departmental Liaison for further information regarding implementation of DOPP.

Dr. Krishna Murthy
May 4, 2006
Page 3

In Paragraph 4 of your letter, you again address the selection of the Departmental Liaison position. I must reiterate that our records indicate that you have filed a formal administrative complaint regarding your non-selection for the Departmental Liaison position. Our previous correspondence has clearly informed you that any further information with regard to your non-selection must be provided in the course of litigation of the formal complaint of discrimination you chose to file with USDA. To discuss this issue outside of the scope of formal litigation, with parties who may or may not represent you in the formal administrative process, would be improper. My staff and I will not discuss the merits of this matter in this letter.

In Paragraph 5 of your letter, you allege that Mr. Brammer is required to "address the status" of complaints you have filed which were not subsumed by the <u>Basu</u> Settlement Agreement. <u>This is absolutely incorrect.</u> No representative of the Civil Rights Litigation Division of the Office of the General Counsel has any obligation to provide you with an update on the status of your complaints. This office does not represent USDA in all administrative claims of employment discrimination. Thus, it is possible that my staff may not represent the Agency on your individual claims falling outside the scope of the <u>Basu</u> Settlement Agreement. In any event, this office is not charged with processing complaints, investigating complaints, or providing complainants with information on the status of their pending complaints. We defend the interests of the Secretary of Agriculture when a formal complaint of employment discrimination has been filed. Please do not address concerns with processing of your complaints with this office. You should contact the USDA's Office of Civil Rights (customer service number, 1-800-795-3272) for this information.

On a final note, I wish to inform you that you have made serious allegations against this office with regard to implementation of the <u>Basu</u> Settlement Agreement. Please contact Class Counsel to discuss whether you, as an individual class member, are entitled to invoke the non-compliance procedures listed in the <u>Basu</u> Settlement Agreement. As this office has repeatedly informed you, we do not believe that any of your correspondence has invoked these procedures. Also, our efforts over the past several months to provide you with an understanding of the Agreement and your entitlement under its terms was not required under the <u>Basu</u> Settlement Agreement, and should have been provided by Class Counsel.

Pursuant to the terms of individual relief provided to you, you were reassigned effective June 6, 2005, to the New Technology Staff, Office of Policy, Program and Employee Development. A two-step increment in pay was effected on June 6, 2005, moving you from a Grade 14, Step 8 to Grade 14, Step 10. You were paid $40,000.00, through Electronic Funds Transfer on June 21, 2005. You were provided the opportunity for Office of Personnel Management ("OPM") leadership training, under the terms of the Settlement Agreement. You were one of six (6) individuals whose claims were determined to fall within Tier One, the highest relief received by any individuals within USDA. You have received a great deal more than the vast majority of class members. Although not required by the <u>Basu</u> Settlement Agreement, our office has been

Dr. Krishna Murthy
May 6, 2006
Page 4

working with you for many months to obtain a final signed individual settlement agreement. To date, we have received no such document from you, yet relief to which you were entitled has been provided.

The Civil Rights Litigation Division of the Office of the General Counsel is currently not aware of the status of all possible administrative complaints of discrimination you may have made regarding this matter, or other matters. However, we wish to inform you that if you believe that your individual relief under the Basu Settlement Agreement is unfair, the Agency will allow you to participate in an expedited hearing on all individual claims of employment discrimination falling under the Basu Settlement Agreement pursuant to Section VII.C of that Agreement. In order to avail yourself of this process, you will need to return to the *status quo*, returning any monies or benefits, with interest, received as a result of your individual settlement under the Basu Settlement Agreement. Thus, you will need to provide the immediate return of the $40,000.00, lump sum payment you received, and return all other funds that you have received in the interim as a result of accepting the relief previously offered to you. These monies should be provided with interest by certified check. The Agency also will need to take appropriate action to return you to a GS-14, Step 8. *See e.g., Jones v. Department of Defense*, EEOC Appeal No. 01A01132 (Nov. 3, 2003). In the event you elect not to return to the *status quo*, the terms of your individual relief will stand.

Dr. Krisha Murthy
May 4, 2006
Page 5

Please notify me by Thursday, May 11, 2006, by signing the attached document, if you desire an expedited hearing instead of the relief you have previously been provided and accepted.

Sincerely,

Inga Bumbary-Langston
Assistant General Counsel
Civil Rights Litigation Division

cc:    Arlean Leland, Associate General Counsel, Civil Rights
       James Hood, Class Counsel
       Annabelle Romero, Acting Assistant Secretary for Civil Rights
       James Bradley, Lead Department Negotiator, Basu Settlement Agreement
       Dr. Arun Basu, Lead Class Agent, Basu Settlement Agreement
       Farook Sait, Lead Class Negotiator, Basu Settlement Agreement
       Sadhna True, Director, Office of Civil Rights

Dr. Krishna Murthy
Page 6

### REJECTION OF TIER ONE TERMS UNDER THE <u>BASU</u> SETTLEMENT AGREEMENT

I, Krishna Murthy, hereby reject the relief provided to me as a Tier One class member in the <u>Basu</u> Settlement Agreement.  To receive an expedited hearing of all individual claims of employment discrimination falling under the <u>Basu</u> Settlement Agreement previously identified to me, I will return any monies and benefits received under the <u>Basu</u> Settlement to date before the Agency is required to provide me an expedited hearing.  The Agency will calculate and provide, within fifteen (15) calendar days from receipt of this rejection, all payments due from me and will provide me with a deadline by which such payments will be due from me.  I understand that, at a minimum, I will return the $40,000, lump sum payment with interest accrued, that I received in June of 2005, and that I will be returned to a GS-14, Step 8 position.  My rejection of Tier One relief prescribed under the <u>Basu</u> Settlement Agreement will void and nullify any and all claims or complaints that I have pending, or that I may bring in any forum, alleging enforcement, non-compliance, or breach of the <u>Basu</u> Settlement Agreement.


_____                                  _____
Dr. Krisha Murthy                                                    Date

From: Origin ID: (202)720-3955
Steven Brammer
USDA/OFC OF GENERAL COUNSEL
1400 Independence Ave., SW
Room 3312-S; Stop 1419
Washington, DC 20250-1400



Ship Date: 04MAY06
ActWgt: 1 LB
System#: 5755386/INET2400
Account#: S *********

REF:



Delivery Address Bar Code

SHIP TO: (703)759-4347    BILL SENDER

**Krishna Murthy**

**7715 Lear Road**

**McLean, VA 22102**



**STANDARD OVERNIGHT**                **FRI**

Deliver By:
05MAY06

TRK# **7919 3393 6359**   FORM 0201

IAD    A1

**22102**   -VA-US

# 19 PIZA

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



From:  Origin ID:  (202)720-3955
Steven Brammer
USDA/OFC OF GENERAL COUNSEL
1400 Independence Ave., SW
Room 3312-S; Stop 1419
Washington, DC 20250-1400

**FedEx.**
Express
**E**
CLS122304/16/28

Ship Date: 04MAY06
ActWgt: 1 LB
System#: 5755386/INET2400
Account#: S *********

REF:

Delivery Address Bar Code

SHIP TO:  (202)289-1130          BILL SENDER
**James P. Hood**

**1226 Eleventh Street, NW**

**Washington, DC 20001**



**STANDARD OVERNIGHT**                    **FRI**

TRK#  **7919  3394  1163**   FORM
                             0201

Deliver By:
05MAY06

**IAD**      A1

**20001**   -DC-US

**19 NHKA**



Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2. Fold the printed page along the horizontal line.

3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# EXHIBIT   18-Part 1

Appeal File for CRDS-CF-2006-00219 (Plaintiff's EEOC appeal re fairness of <u>Basu</u> Settlement Agreement)

 **USDA**

| United States | Office of the | National | P.O. Box 60000 |
| Department of | Chief Financial | Finance | New Orleans |
| Agriculture | Officer | Center | Louisiana 70160 |

August 16, 2006

 RECEIVED
8/18/06
SCB

Ms. Inga Bumbary-Langston
USDA, OGC, Civil Rights Litigation Division
1400 Independence Ave., SW
Room 3312-S; Stop 1419
Washington, DC  20250-1400

**FEDERAL EXPRESS**

|  | |  |
|---|---|---|
| **Re:** | | **Krishna Murthy** |
| **Agency No.:** | | **USDA CRSD-CF-2006-00219** |
| **OFO Appeal Docket No.** | | **01A63690** |

Dear Ms. Langston:

Per your e-mail message to Sadhna True, enclosed is a copy of the subject complaint file.

Should you have any questions regarding the complaint file, please contact me at 504-426-6204.

Sincerely,

*Patty Duvernay*

Patty Duvernay
Equal Employment Specialist

Enclosure

cc:  Kirk Baylor, Office of Civil Rights

KRISHNA MURTHY
COMPLAINT NO. CRSD-CF-2006-00219
TABLE OF CONTENTS

EEO COUNSELOR'S REPORT                                         TAB A

FORMAL COMPLAINT                                              TAB B

LETTER OF ACKNOWLEDGEMENT                                     TAB C

RESOLUTION DOCUMENTS                                         TAB D

LETTER REGARDING REPRESENTATION                              TAB E

FINAL AGENCY DECISION – DISMISSAL                            TAB F

COMPLAINANT'S APPEAL/FILE TO OFO                            TAB G

COMPLAINANT'S APPEAL/FILE TO OFO (Number 2)                 TAB H

# TAB A

**COPY**

# EEO COUNSELOR'S REPORT

## UNITED STATES DEPARTMENT OF AGRICULTURE

COUNSELING conducted by:



One Wadleigh Place
Boston, MA  02127

**COMPLAINANT:**     **Krishna Murthy**

**DSZ FILE FOLDER:**     **200516**

This document for <u>OFFICIAL USE ONLY</u>

It and its contents are not to be distributed
outside your agency, nor duplicated, without
prior clearance.

FOR OFFICE USE ONLY
Indefinite Retention



# EEO COUNSELOR REPORT

Agency Informal Complaint Number:
ECD Formal Complaint Number:

Please check one of the following:     Individual Complaint [X] Class Complaint [  ]

**COMPLAINANT INFORMATION:**                **REPRESENTATIVE INFORMATION:**

Name (Last, First, MI): Krishna Murthy          Name (Last, First, MI):

Title/Series/Grade: Public Health Veterinarian, GS-701-14/10     Title:

Agency Address:  USDA                                      Address:
                1400 Independence Ave., SW          Telephone No:
                Washington, DC 20024                Fax Number: (202) 690-0071
Work Telephone: (202) 690-5646                    E-Mail Address:
Home Address:   7715 Lear Road
                McLean, Virginia 22102             Attorney? Yes [  ] No [  ]

Home Telephone: (703) 356-8529

E-Mail Address: Kris.Murthy@usda.gov

Anonymity Requested: Yes [  ]  No [X][1]

Choice between ADR and Counseling: (Check the appropriate box.)

ADR [  ]          Counseling [X]  If counseling, check the box below if counseling
                  was extended, in writing. [X]

## CHRONOLOGY OF COUNSELING ACTIVITY:

Date of Initial Contact:  December 5, 2005
Date of Initial Interview: February 24, 2006[2]
Date of Most Recent Alleged Discriminating Event:  November 28, 2005
Date Complainant Became Aware of Most Recent Event:  November 28, 2005
45th Day After Complainant Became Aware of Most Recent Event:  January 12, 2006
Explanation for Delay Beyond 45 Days (w/supporting documents): N/A
Date of Final Interview:  March 6, 2006
Date Notice of Right to File (NRF) Issued:  March 7, 2006
Date Complainant Received NRF via Certified Mail: March 8, 2006
Certified Return Receipt Article Number:  7004 2890 0003 0757 7490
Date Complainant Signed Written Receipt for NRF (if hand-delivered):

---

[1] On the initial intake document, AP requested anonymity. However, during counseling, he stated that he checked the anonymity box in error; he does not wish anonymity.
[2] Case was assigned to Contractor on 1/31/06.

Date of Formal Complaint:

## COMPLAINT INFORMATION:

Issue:   AP alleges that he has been denied a promotion to GS-15 as a part of the Asian Class action settlement (under the Tier I portion), which is called the Basu Class complaint; and that Mr. Sait was not timely in providing him information that he should have received as a result of the settlement agreement.

Basis:   Age (DOB 4/13/1947), religion (Hindu) and reprisal (prior EEO activity).

Date of Issue:   On November 28, 2005, Aggrieved heard that he was not going to be selected for a GS-15 position that he had applied for.

Have the same complaint issue(s) been raised in either of the following forums?

[  ] Yes.  If yes, check appropriate box below and indicate date of filing.     No [X]

                                                                    Date Filed

[  ] Negotiated Grievance (with supporting documentation)           _____
[  ] MSPB Appeal (with supporting documentation)                    _____
[  ] Prior EEO Complaint(s) (with supporting documentation)         _____
[  ] Civil Action (with supporting documentation)                   _____
                                                                    _____

## RESPONDING MANAGEMENT OFFICIAL (RMO) INFORMATION:

Name (Last, First, MI)/Title:  Sadhna True, Director, Office of Civil Rights
Agency/Address: 1400 Independence Ave., SW, Washington, DC 20024
Work Telephone Number:  (202) 720-5212
E-Mail Address:  Sadhna.True@usda.gov
Relationship to Complainant/Issue:  Responsible Management Official

Name (Last, First, MI)/Title:  Farook, Sait, Special Counsel to Assistant Secretary, CR
Agency/Address: 1400 Independence Ave., SW, Washington, DC 20024
Work Telephone Number:  (202) 720-7569
E-Mail Address:  Farook.Sait@usda.gov
Relationship to Complainant/Issue:  Responsible Management Official

Name (Last, First, MI)/Title:  Dr. Arun Basu, Lead Agent for Class, NRCS
Agency/Address: 1400 Independence Ave., SW, Washington, DC 20024
Work Telephone Number:  (202) 690-4860
E-Mail Address:  Arun.Basu@usda.gov
Relationship to Complainant/Issue:  Responsible Management Official

2

Name (Last, First, MI)/Title:  Vernon B. Parker, former Under Secretary for CR
Agency/Address:  1400 Independence Ave., SW, Washington, DC 20024
Work Telephone Number:  N/A*
E-Mail Address:
Relationship to Complainant/Issue:  Responsible Management Official

## INDIVIDUAL(S) CONTACTED DURING INQUIRY:

Name/Title:  Sadhna True, Director, Office of Civil Rights
Telephone Number: (202) 720-5212
Relationship to Complainant/Issue: Responsible Management Official

Name/Title:  Farook Sait, Special Counsel to Assistant Secretary, CR and Class Negotiator
Telephone Number: (202) 720-7569
Relationship to Complainant/Issue: Responsible Management Official

Name/Title:  Inga Bumbary-Langston, Assistant General Counsel for CR Litigation
Telephone Number: (202) 720-3955
Relationship to Complainant/Issue: Her office responsible for negotiations of the Settlement Agreement.

Name/Title:  Dr. Arun Basu, Lead Class Agent
Telephone Number: (202) 690-4860
Relationship to Complainant/Issue: Lead Class Agent

*Mr. Parker is no longer with the agency and therefore, was not interviewed

## SUMMARY OF FACTS DEVELOPED IN THE INQUIRY:

I met with Dr. Krishna Murthy, the Aggrieved Person (AP) on February 24, 2006, at the Department of Agriculture. At that time AP presented me with a folder that contained his written complaint and copies of letters that he had written to agency management officials alleging a breach of the Asian Class Action Settlement. Dr. Murthy stated that he had been a part of an Asian Class complaint that was settled in February 2004. As a part of the class action, some individuals were classified as Tier I of the class and were to receive individual settlement agreements as well. AP was not promoted, but believes he should have been. He acknowledged that he received a cash settlement and step increase (step 10). Notwithstanding this fact, AP believes he still should have received a promotion. AP maintains that he did not receive a copy of his individual settlement agreement until May 2005, which was well beyond the time he could appeal or object. Furthermore, he states he has been continuously passed over for promotion since the Asian class complaint settled.[3]

AP alleges that several individuals discriminated against him. He said that Farook Sait, who was a class representative in the negotiations, did not provide him with all the information he needed in a timely

---

[3] Complainant indicated that he has filed individual complaints relative to each promotion he was denied, and which he believes was discriminatory.

manner. AP said that Dr. Basu, who is also an Asian American, discriminated against him when he allowed Mr. Sait who is a friend of his, to handle the class complaint freely. AP also stated that Mr. Sait and he are of different religions. AP states that Ms. True discriminated against him by having Mr. Sait, who worked for her in the Employment Complaint Division, involved in the negotiations for the settlement of the class complaint. Furthermore, Vernon Parker, former Under Secretary for Civil Rights, did not monitor Mr. Sait while he was negotiating the agreement but instead, gave him a free hand. It is noted that AP also alleged age as a basis, but did not give an explanation as to why he felt that it was used to discriminate against him.

## Sadhna True, Director, Office of Civil Rights   (202) 720-5212

I spoke with Ms. True on March 3, 2006, concerning AP's allegations. Ms. True stated that she has no idea what AP is talking about. She said that she has explained to AP that she had no role in the negotiations of the settlement and that her only involvement was to oversee the implementation of the settlement. She said that when the settlement was made she was on maternity leave and when she returned to work, she came over to Civil Rights from the Office of General Counsel on detail. Ms. True added that she did not become permanent in Civil Rights until August 2004 and that OCR had no role in determining the individual relief that would be offered to class members. She stated in a letter to AP that if he believed the Department was in non-compliance with the Settlement Agreement, he should follow the procedures as outlined in the Settlement Agreement. Ms. True suggested that I speak with Inga Bumbary-Langston, Assistant General Counsel for CR Litigation Division ((202) 720-7569) who could let me know the person who would have knowledge of the settlement agreement.

**EEO Counselor's note:** I spoke with Ms. Bumbary-Langston on March 3, 2006. After I explained AP allegations, she told me that she wanted to discuss the matter with the person who handled the settlement and either she or Steven Brammer would return my call. Mr. Brammer and I did not speak until the week of March 13, 2006, which was beyond the 90-day counseling period. I explained to Mr. Brammer that counseling had concluded and I had issued the Notice of Right to File to the Aggrieved.

## Farook Sait, Special Counsel to the Assistant Secretary for Civil Rights   (202) 720-7569

I spoke with Mr. Sait on March 3, 2006. In his statement he said that he has over 34 years of experience in civil rights. Mr. Sait stated that he had been selected by Mr. Parker to be the spokesperson for the class. He stated that the settlement agreement had six names under the Tier I portion of the agreement and the settlement provided for promotions for three of the individuals. Mr. Sait said that he was able to negotiate for the others some type of monetary award and that AP received a cash settlement of $45,000 and a step 10 increase of the GS-14 level with an opportunity for leadership training. He added that AP had agreed to this settlement and understood that if accepted, he would not be getting a promotion to the GS-15 position (Liaison to oversee the Settlement Agreement) as called for in the Settlement. He further added that AP knew and agreed to this settlement and was aware that if he were not happy with the settlement, he could refuse to sign and the Department would process his complaint.

Mr. Sait stated that AP does not have a clue about civil rights and he denies having discriminated against him. He added that he provided AP with all the information he was entitled to and it was given in a timely manner. He also said that AP had written to him seeking his assistance in getting a promotion; he explained that his only role was to be the Cass spokesperson and he had no authority to give any promotions.

4

**Dr. Arun Basu , Lead Class Agent  (202) 690-4860**

When I spoke with Dr. Basu on March 3, 2006, he denied any discrimination against AP. He stated that he does not have any authority to give AP or anybody else a promotion, but that AP signed the settlement agreement and received the money. He added that he knew that by signing that was the end and there would not be a promotion.

## RELIEF REQUESTED AND SUMMARY OF RESOLUTION EFFORTS:

AP would like a promotion to the GS-15 level as resolution of his complaint. Settlement discussions with AP and management officials did not result in a resolution of AP's concerns

## COUNSELOR INFORMATION:

Name:                         Juanita Boyd
                              Contract EEO Counselor
Agency:                       DSZ
Telephone Number:             (703) 528-4921
Fax Number:                   (703) 243-5250


Signature _____        Date _____

5

## ATTACHMENTS

1. Complainant's Statement of his complaint
2. Letters written by Complainant to Agency's officials regarding the Basu Class Complaint Settlement Agreement
3. Informal EEO Complaint with accompanying letter from the Office of Civil Rights which acknowledges receipt of Rights and Responsibilities and election of traditional counseling
4. Complainant's Written Extension of Counseling
5. Notice of Right to File/Final Interview Notice with Certified Mail Receipt

EEO complaint against Mr. Farook Sait, Dr. Arun Basu, Ms. Sadhana True and Vernon Parker:

1. Originally I left APANA (Asian Pacific Americans Net Work in Agriculture), an employee organization, initiated the Idea, and implemented plan to start Organization of South Asian American in Agriculture (OSAAA) in USDA. I also started the plan to initiate Asian Class Action in USDA, because Asian employees were not promoted in USDA. Under the umbrella of OSAAA, the Asian Class was filed.

2. Mr. Farook Sait was bought in to the OSAAA by his buddy Dr. Arun Basu and Mr. Sait snatched all the idea, plan and resources from me and started his own plans for Asian Class Action. From the beginning he was reminded of his role and conflict of interest because of his position in Office of Civil Rights, USDA. He ignored conflict of interest situation and got involved in Asian Class Action just make sure I do not get any, credit for starting the OSAAA, Asian Class Action and promotion.

3. From the start, Mr. Sait had a grand plan to denied me the promotion but to get promotion to Dr. Basu, Dr. Dey and Mon Yee because they his buddies. He hated me, because of my religion which is different then his. He started openly condemning my ideas in the meeting, undermining my plans regarding OSAAA and Asian Class Action. He took over the total control of OSAA and Asian Class Action negotiations. In spit of my protest, He appointed Mr. James Hood as Asian Class Counsel, because, Mr. Hood is his buddy and he works with Mr. Hood through his Law Firm. Mr. Farook wanted to do favor to Mr. Hood and get some profit to himself so he appointed Mr. Hood as Asian Class Action Counsel. With this arrangement both Mr. Farook and Mr.Hood are benefited. Mr. Farook got a promotion to GS-15 and a special Assistant position to Under Secretary to Civil Rights and Mr. Hood got thousands of dollars in Lawyers fees

4. As part of Asian Class action settlement, on several occasions I have raised the issue of denial of promotion to me in spit of having very good EEO cases. Every time I raise the issues of promotion to GS-15 grade, Mr. Sait use to shout at me, verbally abuse me and threaten me, that if I keep perusing the promotion issue he will see that I will not get a penny and take away what little I was going to get. Mr. Sait temper and dictatorial attitude is well known in USDA's Asian community and I can bring witness to this effect.

5. While Asian Class Settlement Agreement was under negotiation, Arun Basu asked me to do political contribution to one of Mr. Sati's favorite Democratic candidate in Maryland. I think it was Paul Sarbaine. Arun Basu told me that he has contributed $ 500 or 1000 because the candidate was Mr. Sait's favorite one. I refused to pay any political contributions. I was told that Dr. Bhabani Dey also paid $500.00. Mr. Sait was very angry at me for not paying political contribution to his favorite candidate and he took the opportunity to get even with me by not recommending for my promotion. For others in Tier one, he got them promotion.

6. While Asian Class Settlement Agreement was under negotiation, Arun Basu asked me to write a check for $ 500.00 or $1000.00 for supporting a Muslim school back home. Dr. Basu told me that, this contribution is for Mr. Sait who is collecting money for this Muslim school. In other words Dr. Arun Basu was solicitation funds from me for Mr. Sait's favorite Muslim school back home. I did not contribute any money. Dr. Arun Basu told me he did and he also told me that Dr. Dey did. I know Mr. Sait was very angry with me for not contributing funds to the Muslim school.

7. As Class representative in the negotiation team, Mr. Sait has **not** provided me all the information, I am suppose to get. For example, I was to receive copy of my official individual settlement agreement around February 17, 2004, so I can object formally to EEOc, Administrative Judge Hon. Andrew Culbertson. Judge Culbertson is the Judge who wrote the Asian Class Agreement. This never happened. The official individual agreement was given to me by Arun Basu in May 2005. This is way too late to make any kind of appeal or object to Individual settlement agreements. Thus I lost an opportunity to object to my settlement agreement and to pursue my promotion under this settlement agreement.

8. Dr. Arun Basu: Dr. Basu allowed, Mr. Sait to handle Asian Class action freely because, Mr.Sait is his buddy and thus Dr. Basu was an associate in discriminating against me.

9. Ms. Sadhana True: Director of Civil Rights, USDA: She discriminated from the start of her involvement in Asian Class Action. She was determined that I should not get promotion under this Class action and she achieved through Mr. Sait who worked for her in Employment complaint Division.

10. Hon Vernon Parker: He did not monitor Mr. Sait while he was negotiating Asian Class Action Settlement agreement. He allowed Mr. Sait a free hand and thus he discriminated me.

*Krishne Reurthy*

2.23-06

Mr. Kevin McGrath                                        September 22, 2005
Branch Chief
Complaint Management Branch
Food Safety and Inspection Service
5601 Sunnyside avenue, Building 2, Rm 1134-A
Beltsville, MD 20705

## Arun C. Basu v. Veneman-Asian Class Complaint Settlement Agreement

Dear Mr. McGrath:

From the very beginning I was instrumental in starting the Organization of South Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have endured many challenging situations due to my involvement in OSAAA and Asian Class complaint in USDA.

The Asian Class complaint was filed on the basis of denial of promotion to Asian employees in the agency. Denial of promotion was the core focus of the class complaint. I had number of complaints related to denial of promotion. Many of them were considered as very good complaints as for discrimination was concerned. Under the settlement of Asian class complaints many of my complaints are gone. I still have few strong complaints which are unresolved since few years. The settlement agreement states that Tier 1 class agents need to treated exclusively due to their contribution to the certification of class action

As you know in the process of Asian class complaint, details of individual class settlements were kept confidential throughout negotiation, approval and during implementation. I came to know recently that three class members in tier 1 have been granted promotion under Asian class action settlement agreement. Even though I was co-agent for the Asian class complaint, I have been denied the same promotion. One member was not only promoted to next grade but given two grade level promotions. (From GS-13 to GS-15), back pay and substantial financial benefits. The settlement agreement of this individual do not specify that this person was suppose to get two grade promotion, but under implementation process it is interpreted favorably for the individual and  this was accomplished by FSIS. Even though the same settlement terms apply to my case also a promotion has been denied to me. I am seeking your input as to why I am denied of the same promotion which three other class agents have received.

Therefore I am requesting a meeting with you, asking that my situation be given needed attention by the Agency for reconsideration for a promotion. I was told by a member of class action settlement team that there is still some room to do tweaking under tier 1.

Even though I was the Co-Agent and Agent for the class, from the beginning the terms of the settlement agreement were kept confidential and no information was given by Class agent, OCR representative, or the class complaint lawyer to me. Every time I tried to find pout the details of

the settlement agreement I was kept in dark by the negotiating team and threatened by stating I would loose what little I may get from the settlement. I was not aware that three of the Tire one agents gotten the promotion after complaining with settlement team. This is a major difference in leaving me without promotion but providing promotion to others in tier 1.

Apart from I being discriminated getting a promotion, the terms of the Asian Class Action settlement agreement being interpreted and applied to promote agency' certain employees. This un-uniformed implementation of terms of settlement agreement is also denying me the promotion to next grade.

1. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already September 25, 2005, that means this program is 300 days over due. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade

2. It is already 300 days since the settlement agreement implementation date; the OPM training which I was to receive according to the agreement has not been initiated.

3. In page 4 of Asian class Action Settlement Agreement, first line it states that Class Agents like me who are eligible and qualified to participate in it will receive priority consideration. This means that Class agents ought to be considered in priority for promotion. In spit of this clear stipulation I have been denied a promotion.

4. In case of Dr. Dey the settlement agreement states that "priority placement into first GS-15 position for which he qualifies" In spit of the settlement agreement mandates that priority consideration to be given for my promotion, the agency has not done so. The Agency is using the scope of settlement agreement to their advantage and promoting individuals, rather than applying the settlement agreement uniformly.

5. In page 8, of Asian Class Action Settlement Agreement, second paragraph as stated regarding, Dr. Lee, his initial relief was not included promotion to GS-15. After he complained to Under Secretary for Civil Rights, he was given promotion, financial benefits and back pay. I also wrote to the A. J. Hon. Andrew Culbertson, but my complaining was not considered but for Dr. Lee his complaining was considered.

6. In page 10 of Asian Class Action Settlement agreement, second paragraph, the Administrative Judge Hon. Andrew Culbertson clearly implicit that "Class agents identified in Tire one are to receive more relief than those in the lower three tiers" In spit of this conclusion clearly written in the settlement agreement and the indent was to provide promotion to Tier one members the Agency has denied the promotion to me.

7. In Page 11 of Asian Class Action Settlement Agreement, second paragraph, 6th line states "Voluntary compromises of title VII actions enjoys a presumption of validity, and should

therefore be approved unless contain provisions that are unreasonable, unlawful, or against public policy"

In the settlement agreement in tier one, agents are recommended for consideration for promotion yet only three out of six tier 1 members were given promotion. Also one of the tier one member was given two consecutive promotions without observing any time –in- requirement for next promotion. This is against Agency's regulation of personal practices.

8. In page 12 of Asian Class Action Settlement Agreement, second paragraph, 2nd line, the judge has stated beyond doubt that "the class agents (I am a Class Agent and Co-Agent) of tier one are to get priority consideration in promotions. I was denied a promotion thus not following the terms of the settlement agreement.


Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
202-690-5646

<u>**HAND DELIVERED**</u>                                            September 29, 2005

Mr. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

<u>**Arun C. Basu v. Veneman**</u>

Dear Mr. Parker:

In your public expressions on civil rights you have remained steadfast that this Administration has high priority in correcting the civil right problems of USDA and that the Secretary is working hard to improve USDA's image in this area. It is few months now that the Asian class complaint being implemented in U. S. Department of Agriculture (USDA). Thanks for being a major player in accomplishing this historical mail-stone.

From the very beginning I was instrumental in starting the Organization of South Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have endured many challenging situations due to my involvement in OSAAA and Asian Class complaint in USDA. The Asian Class complaint was filed on the basis of denial of promotion to Asian employees in the agency. Denial of promotion was the core focus of the class complaint. I had number of complaints related to denial of promotion. Many of them were considered as very good complaints as for discrimination was concerned. Under the settlement of Asian class complaints many of my complaints are gone. I still have few strong complaints which are unresolved since few years.

As you know in the process of Asian class complaint, details of individual class settlements were kept confidential throughout negotiation, approval and during implementation. I came to know last week that three class members in tier # 1 have been granted promotion under the class action settlement agreement. Even though I was co-agent for the Asian Class complaint, I have been denied the same promotion. One member was not only promoted to next grade but given two grade level promotions. (From GS-13 to GS-15), back pay and substantial financial benefits. The settlement agreement of this individual do not specify that this person was suppose to get two grade promotion, but under implementation process this was accomplished by implementation team. I am seeking your input as to why I am discriminated in class action settlement and promotion was denied?

Therefore I am requesting a meeting with you, asking that my situation be given attention by the Agency for reconsideration for a promotion. I was told by a major player of class action settlement team that there is still some room to do tweaking under tier # 1.

I have suffered some egregious instances of discrimination and the time delays in administrative process are causing immeasurable harm. I shall call your office to schedule an appointment with you. Thanks you for your help.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Class Co-Agent
202-690-5646

<u>HAND DELIVERED</u>                                    October 5, 2005

Mr. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

<u>**Arun C. Basu v. Veneman**</u>

Dear Mr. Parker:

Subject: Request to undo inequitable treatment of Agents in tier # 1 of the Asian Class
          Settlement Agreement.

In your public expressions on civil rights you have remained steadfast that this Administration
has high priority in correcting the civil right problems of USDA and that the Secretary is
working hard to improve USDA's image in this area. It is a few months now that the Asian class
complaint being implemented in U. S. Department of Agriculture (USDA). Thanks for being a
major player in accomplishing this historical mile-stone.

The undersigned members of the Class Action were instrumental in starting the Organization of
South Asian Americans in Agriculture (OSAAA) and the Asian Class Complaint. We have
endured many challenging situations due to our involvement in OSAAA and Asian Class
complaint in USDA.

The Asian Class complaint was primarily filed on the basis of denial of promotion to Asian
employees in the agency. Denial of promotion was the core focus of the class complaint. We had
filed number of complaints related to denial of promotion. Asian Class Action Settlement
Agreement identifies that all the members in tier # 1 as Agents and implies same treatment, but
still this disparity in promotion to tier # 1 members exists.

As you are well aware, during the process of Asian class complaint, details of individual class
settlements were kept confidential. After the settlement, we have learnt that three class agents in
tier # 1 have been granted promotion under the class action settlement agreement whereas three
other agents were denied promotion, even though all of them were equally highly qualified and
had equally strong cases. One of the Class Agent in tier # 1 was not only promoted to next grade
but was given two grade level promotions. (From GS-13 to GS-15), considerable back pay and
substantial financial benefits. The settlement agreement of this individual does not specify that
this person was supposed to get two grade promotions, but during the implementation process it
was accomplished by the implementation team.

In light of the above, we are requesting you to kindly intervene in this process and grant us promotion from GS-14 to GS-15 so that equity and fairness would be achieved by all the Agents in tier one. We understand from a major player of class action settlement team that there is still some room to do tweaking under tier # 1.

The previous request by Dr. Krishna Murthy for your intervene in this process has gone in vein without a response.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)


Dr. Hyder Lakhani, Ph.D.

October 21, 2005

Hon. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

**Arun C. Basu v. Veneman**

Dear Hon. Parker:

Subject: Breech of Asian Class Action Settlement Agreement

Your strong commitment and support made the Asian class action settlement a reality and without your sustained effort, this success would not have been possible. I am thankful for your nice gesture.

1. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004.

It is already October 21, 2005, that means this program is 300 days over due. Creation and implementation of DOPP program has not been initiated. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade

2. It is already 300 days since the settlement agreement implementation date, the OPM training which I was to receive according to the agreement has not been initiated. This is a breech of settlement agreement. This has prevented me an opportunity for promotion to my next grade.

3. There is no uniformed implementation of terms of settlement agreement, even though the settlement agreements states that tier # I agents are to be treated same. This is also delaying me the promotion to next grade.

4. The person who was appointed as Liaison Specialist, GS-0301-15, in Office of Civil Rights has left the position with in three months. As you know, I applied for this position and also I filed EEO complaint of denial of promotion for same position. Later I withdrew this complaint upon the request of Dr. Arun Basu, Class Agent for Asian Class Complaint.

Without the liaison specialist in the position, agencies are not implementing the terms of the settlement agreement, because there is nobody to monitor and question non implementation of settlement agreement.

This is to request to you consider me for this position, The Office of Civil Rights already has my application. It is important that this position to be filled ASAP in order to implement the terms of the class action and to monitor the progress for next three years.

If you have further questions, contact me at 202-690-5646 or at Kris.murthy@usda.gov

Sincerely

Dr. Kris Murthy, DVM, MVSc, MS, M (ASCP)
Senior Staff Officer
USDA, FSIS, NTS

November 22, 2005

Mr. Farook Sait
Special Assistant to Assistant Secretary for Civil Rights
1400 Independence Ave, SW
Whitten Building Room, 240W
Washington D. C., 20250-3700


### Arun C. Basu, et al, Complaints v. Ann M. Veneman, Secretary, USDA


Dear Mr. Sait:


**Subject:** Request to undo inequitable treatment of Agents in tier # 1 of the Asian Class
Settlement Agreement. EEOC No. 100-A1-7863X, Agency No. 000190

It has been a few months now that the Asian class complaint is being implemented in U. S.
Department of Agriculture (USDA). Confidential information regarding individual settlement
terms are being uncovered.

The undersigned members of the Class Action were instrumental in starting the Organization of
South Asian Americans in Agriculture (OSAAA) and the Asian Class Complaint. We have
endured many challenging situations due to our involvement in OSAAA and Asian Class
complaint in USDA.

The Asian Class complaint was primarily filed on the basis of denial of promotion to Asian
employees in the agency. We had filed a number of complaints related to denial of promotion.
Asian Class Action Settlement Agreement identifies all the members in tier # 1 as Agents and
implies same treatment, but there is a disparity in promotion of tier # 1 members under
implementation of this settlement. There is no inequitable treatment for members of the other
tiers and this discrepancy is only for tier # 1.

As you are well aware, during the process of Asian class complaint, details of individual class
settlements were kept confidential and inequitable treatment of members of within tier # 1 could
not be determined. After the settlement, we have learnt that three class agents in tier # 1 have
been granted promotion whereas three other agents were denied promotion, even though all of
them were equally highly qualified and had equally strong cases. One of the Class Agent in tier #
1 was promoted not only to the next grade but was given two grade level promotions. (From GS-
13 to GS-15).

The settlement agreement of this individual did not specify that this person was supposed to get two grade promotions, but during the implementation process it was accomplished by the implementation team. In early part of FY 2004, we had written an e-mail to Hon. Andrew Culbertson, AJ, requesting him to consider promotion for all tier # 1 agents, because the core issue of filing this Asian class action complaint was the denial of promotion.

In regards to inequitable treatment of Agents in tier # 1 of the Asian Class, Settlement Agreement. EEOC No. 100-A1-7863X, Agency No. 000190, we wrote to both Hon Vernon Parker, ASCR and Ms. Sadhana True, Director of OCR. Ms. Sadhana True in her response to us stated that "we are unable to explain why some class members received certain relief and others did not" and she said that "We recommend that you raise your concerns with your representative and/or the Office of the General Counsel. (Copy attached)

You being our representative of Asian Class Settlement Agreement, we are sending this letter. In light of the above, we are requesting you to kindly intervene in this process and grant us promotion from GS-14 to GS-15 so that equity and fairness would be achieved by all the Agents in tier one. We have already submitted similar documents to representative at Office of the General Counsel. We understand from a major player of class action settlement team that there is still room to do tweaking under tier # 1 as per the settlement agreement.

For further information you can contact us at Kris.murthy@usda.gov or Hyder.lakhani@usda.gov.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)


Dr. Hyder Lakhani, Ph.D.

Enclosure
cc.
Hon. Andrew Culbertson
Administrative Judge
U. S. Equal employment Opportunity Commission
Washington Field Office
1801 L Street, N. W., Suite 100
Washington D. C., 20507

Ms. Arlean Leland, Esq                                    01/17/06
Associate General Counsel, Civil Rights
Office of the General Counsel (OGC),
United States Department of Agriculture (USDA)
1400 Independence Ave., SW
Room 2006-S
Washington, DC 20250-1400

Dear Ms. Leland:

This is in response to Ms. Sadhna True, Director, Office of Civil Rights, letter
dated October 24, 2005, (copy attached) and the meeting I had with Mr. Steven
C. Brammer, OGC, Mr. James Hood, Class Counsel and OGC staff members, on
January 5, 2005.

1. In the second paragraph, Ms True states that "The Office of the Assistant
Secretary for Civil Rights (ASCR) played no role in determining the individual
relief that would be offered to class members.  Thus, we are unable to explain
why some class members received certain relief and others did not. We
recommend that you raise your concerns with your representative and/or the
Office of the General Counsel".

I am taken back from this response because special Assistant to Assistant
secretary for Civil Rights (ASCR) Mr. Farook Sait was our (Class members')
representative in negotiating both individual relief and general class members'
relief. Mr. Sait was involved in all negotiations. Even though this was a direct
conflict of interest on part of Mr. Sait to be representative of Class members in
negotiating individual relief and be an employee to ASCR, OCR. My request to
be Class members' representative was denied by Class Agent Dr. Arun Basu.
Mr. Sait has played crucial role in determining individual relief of Asian Class
action settlement agreement. In the individual relief negotiating process, I have
been denied a promotion.

2. From the very beginning I was the leader in starting the Organization of South
Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have
endured many challenging situations due to my involvement in OSAAA and
Asian Class complaint in USDA. The Asian Class complaint was filed on the
basis of denial of promotion to Asian employees in the agency. Denial of
promotion was the core focus of the class complaint. I had number of
complaints related to denial of promotion. Many of them were considered as very
good complaints as for discrimination was concerned.

Ms. Leland

I still have strong complaints which are unresolved since few years which are not part of Class Action Settlement Agreement to be subsumed. The Administrative Judge Hon. Andrew Culbertson of EEOC has stated in the settlement agreement states that Tier 1 class agents need to treated exclusively due to their contribution to the certification of class action, still only three members of Tier 1 received promotion and I have been denied promotion.

In Page 11 of Asian Class Action Settlement Agreement, second paragraph, 6th line states "Voluntary compromises of title VII actions enjoys a presumption of validity, and should therefore be approved unless contain provisions that are unreasonable, unlawful, or against public policy". Hon Administrative Judge Andrew Culbertson also said in the same paragraph "Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. Osher v. SCA Realty, Inc, 945 F. Supp. 298, 304 (D.D.C.1996).

I am willing to resolve all my existing complaints and class action settlement agreement issues if I am considered for a GS-15 promotion. I am already at highest pay level of GS-14 step 10. This will be par with other Tier 1 agents regarding promotion. I am the only one from Tier 1 pursuing promotion issue that I know of.

3. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already January 15, 2006, that means this program is 365 days over due. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade. In the settlement agreement, it is stated that Agents of Tire 1 should be given "Priority Considerations",

I have been interviewed for GS-15, Microbiologist position in last three months, but decision has not made. (It is In OPHS division of FSIS) I request you to negotiate with FSIS to consider me for this promotion under the scope of settlement agreement.

4. It is already 365 days since the settlement agreement implementation date; the OPM training which I was to receive according to the agreement has not been initiated. I have past complaints regarding denial of SES training. When the OPM training was added in my settlement agreement, it was stipulated to be SES training and certification due to my past complaints. Not one, on-line OPM training course.

Ms. Leland

5. When I applied for Departmental Liaison position under settlement agreement, I was denied stating that I am class member, but ASCR and OCR appointed Dr. Ruihong Guo, who left the position in short time was also a class member, a Chinese Asian. Why I was discriminated stating that I am a class member but not Dr. Ruihong Guo is unanswered yet. Please look into this and provide me justices in this regard.

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
USDA, FSIS
Kmurthy@usda.gov
202-690-5646

USDA

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 IndependenceAvenue SW

Washington, DC20250

Dr. Krishna Murthy
7715 Lear Road
McLean, Virginia 22102

Dear Dr. Murthy:

I am writing in response to your letters dated August 29, 2005, October 5, 2005, and
October 21, 2005, regarding the Basu Settlement Agreement.

Your first two letters address the individual relief you received as a result of the
settlement agreement of the Basu class action case. The Office of the Assistant
Secretary for Civil Rights (ASCR) played no role in determining the individual relief
that would be offered to class members. Thus, we are unable to explain why some class
members received certain relief and others did not. We recommend that you raise your
concerns with your representative and/or the Office of the General Counsel.

Your most recent letter addresses the injunctive relief provided in the Settlement
Agreement and the Departmental Liaison position. The provisions regarding the
Development Opportunity Placement Program require that the agencies develop
procedures and eligibility requirements for the Program within 180 days after the
Settlement Agreement became final. This requirement was met. The Agreement
further requires that each identified agency fill six developmental opportunity slots over
a three-year period. We are now in the process of posting developmental opportunities
on the ASCR ~vebsite. Please note that these opportunities do not guarantee promotion
of any individual class member.

You state that you ~vere supposed to receive "OPM training" pursuant to the Settlement

Agreement. I am not aware of any provision in the Agreement that addresses training
for individual class members. If this term was present in your individual settlement
agreement, then you must address your allegation of non-compliance in the manner set
forth in your individual settlement agreement.

The prior Departmental Liaison, Dr. Ruihong Guo, left the position approximately
seven -veeks ago, not three months as stated in your letter. I have been serving as the
Acting Departmental Liaison since that time. We have initiated the selection process
for the position and intend to fill it as quickly as possible. According to the terms of the
Settlement Agreement, "[n]o Class Agent, Class Member, or [] other person directly
and personally affected by this Agreement wilt [] serve as Department Liaison."
Settlement Agreement, section IV.C. Thus, you are not eligible to be considered for the
Departmental Liaison position. Until the position is filled, I will continue to monitor
compliance with the Settlement Agreement and coordinate implementation of the
injunctive relief provisions.

AN EQUAL OPPORTUNITY EMPLOYER

Dr. Krishna Murthy
Page 2

If you believe that the Department of Agriculture has failed to perform its obligations
under the Settlement Agreement, then you must follow the procedures for enforcement
set forth in the Agreement, section VIII. The first step is to provide verbal notice to the
Department's representative, Arlean Leland, of the claim of non-compliance. At least
five days after providing verbal notice, you must provide written notice of the claim of
non-compliance to the Deparmaental Liaison. The written notice must propose a
resolution of the issue. After the written notice of non-compliance is received, the
Department shall have 35 calendar days to respond. If the response does not resolve the
matter, then additional procedures are available for pursuing the claim of
noncompliance.

If you wish to submit a formal claim of non-compliance, please follow the procedures
outlined in the Settlement Agreement.

Sincerely yours,

Sadhna G. True
Director
Office of Civil Rights

cc: Vernon B. Parker, Assistant Secretary for Civil Rights

Hon. Vernon B. Parker                                    01/31/06
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250


Dear Hon. Vernon Parker:

I am bringing it to your attention the responses from to Ms. Sadhna True, Director, Office of Civil Rights, letter dated October 24, 2005, (copy attached) and the meeting I had with Mr. Steven C. Brammer, OGC, Mr. James Hood, Class Counsel and OGC staff members, on January 5, 2005.

1. In the second paragraph, Ms True states that "The Office of the Assistant Secretary for Civil Rights (ASCR) played no role in determining the individual relief that would be offered to class members. Thus, we are unable to explain why some class members received certain relief and others did not. We recommend that you raise your concerns with your representative and/or the Office of the General Counsel".

I am taken back from this response because special Assistant to Assistant secretary for Civil Rights (ASCR) Mr. Farook Sait was our (Class members') representative in negotiating both individual relief and general class members' relief. Mr. Sait was involved in all negotiations. Even though this was a direct conflict of interest on part of Mr. Sait to be representative of Class members in negotiating individual relief and be an employee to ASCR, OCR. My request to be Class members' representative was denied by Class Agent Dr. Arun Basu. Mr. Sait has played crucial role in determining individual relief of Asian Class action settlement agreement. In the individual relief negotiating process, I have been denied a promotion.

2. From the very beginning I was the leader in starting the Organization of South Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have endured many challenging situations due to my involvement in OSAAA and Asian Class complaint in USDA. The Asian Class complaint was filed on the basis of denial of promotion to Asian employees in the agency. Denial of promotion was the core focus of the class complaint. I had number of complaints related to denial of promotion. Many of them were considered as very good complaints as for discrimination was concerned.

Hon. Vernon Parker

I still have strong complaints which are unresolved since few years which are not part of Class Action Settlement Agreement to be subsumed. The Administrative Judge Hon. Andrew Culbertson of EEOC has stated in the settlement agreement states that Tier 1 class agents need to treated exclusively due to their contribution to the certification of class action, still only three members of Tier 1 received promotion and I have been denied promotion.

In Page 11 of Asian Class Action Settlement Agreement, second paragraph, 6th line states "Voluntary compromises of title VII actions enjoys a presumption of validity, and should therefore be approved unless contain provisions that are unreasonable, unlawful, or against public policy". Hon Administrative Judge Andrew Culbertson also said in the same paragraph "Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. Osher v. SCA Realty, Inc, 945 F. Supp. 298, 304 (D.D.C.1996).

I am willing to resolve all my existing complaints and class action settlement agreement issues if I am considered for a GS-15 promotion. I am already at highest pay level of GS-14 step 10. This will be par with other Tier 1 agents regarding promotion. I am the only one from Tier 1 pursuing promotion issue that I know of.

3. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already January 15, 2006, that means this program is 365 days over due. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade. In the settlement agreement, it is stated that Agents of Tire 1 should be given "Priority Considerations",

I have been interviewed for GS-15, Microbiologist position in last three months, but decision has not made. (It is In OPHS division of FSIS) I request you to negotiate with FSIS to consider me for this promotion under the scope of settlement agreement.

4. It is already 365 days since the settlement agreement implementation date; the OPM training which I was to receive according to the agreement has not been initiated. I have past complaints regarding denial of SES training. When the OPM training was added in my settlement agreement, it was stipulated to be SES training and certification due to my past complaints. Not one, on-line OPM training course.

Hon Vernon Parker:

5. When I applied for Departmental Liaison position under settlement agreement, I was denied stating that I am class member, but ASCR and OCR appointed Dr. Ruihong Guo, who left the position in short time was also a class member, a Chinese Asian. Why I was discriminated stating that I am a class member but not Dr. Ruihong Guo is unanswered yet. Please look into this and provide me justices in this regard.

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
USDA, FSIS
Kmurthy@usda.gov
202-690-5646

ATTACHMENT 3

# INFORMAL EEO COMPLAINT
## INITIAL INTAKE FORM

| | |
|---|---|
| **ALLEGED DISCRIMINATING AGENCY:** | **USDA, Office of Civil rights** |
| Date of Action: <u>11/28/2005</u> | Date of Initial Contact: <u>12/05/05</u> |
| ____ Day of Processing: _____ | Case Type:     Individual <u>X</u>    Class ____ |

## AGGRIEVED EMPLOYEE'S INFORMATION

NAME: __**KRISHNA  MURTHY**_____  Gender: Male: <u>X</u>    Female: ____

Status: <u>1</u> (1 Permanent/ 2 Temporary/ 3 Applicant / 4 Former Employee/ 5 Special)

Job Title/Series/Grade: <u>**Veterinary Medical Officer, 701-GS-14(Senior Staff Officer)**</u>

Service Computation Date:<u>1980</u>   USDA Agency you currently work for: <u>**FSIS**</u>

Work Address: 1400 Independence Ave, SW, Room 2932-S Washington D. C. 20250

Work Phone#: <u>202-690-5646</u>   Work  Fax#:<u>202=205-0080</u>

Home Address: <u>**7715 Lear Road, McLean, VA 22102**</u>.

Home Phone#:<u>**703-356-8529**</u>   Home Fax#: **None** _____

Attorney/Representative's Name: <u> None at this time but I will have at a later stage</u>.
Attorney/Representative's Address:Attorney/Representative's Phone#._  Fax#:____

Requesting Anonymity: Yes <u>X</u>    No _____         Union Member: Yes ____  No  <u>X</u>

## COMPLAINT INFORMATION
## INDICATE BASIS(ES) – check **ALL** that apply

| | |
|---|---|
| ____ Sex: | <u>X</u>  Religion |
| ___ Male | Specify:_____. |
| ___ Female | ____ National Origin |
| ____ Race | Specify:_____ |
| ___ African-American | ____ Physical Disability |
| ___ Hispanic | Specify: _____ |
| ___ Asian | ____ Mental Disability |
| ___ Native American | Specify:_____ |
| ___ White | <u>X</u>  Reprisal |
| ___ Other (specify: _____) | ____ Parental Status |
| ____ Color | ____ Sexual Orientation |
| Specify: _____ | ____ Political Party |
| <u>X</u>  Age | ____ Marital Status |
| Date of Birth: <u>04/13/1947</u> | ____ Genetic Information |

Claims of discrimination on the following bases **are not** covered by Federal anti-discrimination statutes: political belief, sexual orientation, marital status, family status, parental status, or genetic information. Consequently, individuals who file EEO discrimination complaints on these bases have <u>**NO**</u> appeal rights after a final agency decision <u>**AND NO**</u> rights to a hearing before the Equal Employment Opportunity Commission.

# INFORMAL EEO COMPLAINT
## INITIAL INTAKE FORM

**INDICATE ISSUE(S): circle All that apply**

| | | | Dates (ex: "C"= 5-15-05) |
|---|---|---|---|
| A. Appointment/Hire | J. Examination/Test | R. Retirement | |
| B. Assignment of Duties | K. Evaluation/Appraisal | S. Time and Attendance | |
| C. Awards | L. Harassment/Non-sexual | T. Training | |
| D. Demotion | M. Harassment/Sexual | U. Term/Conditions of Employment | |
| E. Reprimand | N. Promotion/Non-selection     X | V. Other – Reasonable Accommodations | |
| F. Suspension | O. Reassignment Denied | W. Other: | |
| G. Termination | P. Reassignment Direct | | |
| H. Duty Hours | Q. Reinstatement | | |
| I. Equal Pay Act Violation | | | |

Responsible USDA Agency: __USDA, Office of Civil Rights.__  Responsible State: _____
Responsible Management Official's (RMO)
Name: __Mr. Farook Sait, USDA, OCR.__ , Title:__Special Assistant to USCR__
RMO Phone#: _____    RMO Fax#: _____
Name: __Dr. Arun Basu, USDA, NRCS__  Title: __Co-Agent of Class action__
RMO Phone#: __Mr. Vernon Parker, USDA, USCR__ _____    RMO
Fax#: _____
Name: __Ms. Sadhana True, Director of Civil Rights, USDA, OCR__
Resolving Agency Official (if known) _____    Phone#: _____

Do you have any pending complaints? NO: ____    YES _X_, If yes,

A. INFORMAL    DATE COMPLAINT INITIATED: __Since 1996__
B. FORMAL _____    DATE(S) FILED: _____    Case#: _____
Status: __Many unresolved__

## ELECTION OF PARTICIPATION - INFORMAL EEO COMPLAINT PROCESS
### (PLEASE CHECK ONE)

| | |
|---|---|
| | Alternative Dispute Resolution (ADR) |
| X | Traditional EEO Counseling |

| | | |
|---|---|---|
| Has the Aggrieved been given a **written copy of their** Notice of Rights and Responsibilities | YES   X | NO _____ |

Aggrieved Employee's Signature: _Krishna Murthy_ Krishna Murthy. Date:12/08/05
COMMENTS: __Explanation of the complaint was provided to the complaint In-taker at OCR__

| Office of Civil Rights Use Only |
|---|
| Contact Person's Name                                  Title |
| Phone number                        Fax number |
| If ADR elected, date file sent to CPRC: |
| If Counseling elected, date file sent for counselor contracting: |

# INFORMAL EEO COMPLAINT
## INITIAL INTAKE FORM

**INDICATE ISSUE(S):** circle **All** that apply

| | | | |
|---|---|---|---|
| A. Appointment/Hire | J. Examination/Test | R. Retirement | **Dates** |
| B. Assignment of Duties | K. Evaluation/Appraisal | S. Time and Attendance | (ex: "C"= 5-15-05) |
| C. Awards | L. Harassment/Non-sexual | T. Training | |
| D. Demotion | M. Harassment/Sexual | U. Term/Conditions of Employment | |
| E. Reprimand | N. Promotion/Non-selection **X** | V. Other – Reasonable Accommodations | |
| F. Suspension | O. Reassignment Denied | W. Other: | |
| G. Termination | P. Reassignment Direct | | |
| H. Duty Hours | Q. Reinstatement | | |
| I. Equal Pay Act Violation | | | |

Responsible USDA Agency: <u>USDA, Office of Civil Rights</u>. Responsible State: ____  ____
Responsible Management Official's (RMO)
Name: <u>Mr. Farook Sait</u>, USDA, OCR. , Title: Special Assistant to USCR
RMO Phone#: _____  RMO Fax#: _____
Name: <u>Dr. Arun Basu</u>, USDA, NRCS  Title: <u>Co-Agent of Class action</u>
RMO Phone#: <u>Mr. Vernon Parker</u>, USDA, USCR _____  RMO
Fax#: _____
Name: <u>Ms. Sadhana True, Director of Civil Rights, USDA, OCR</u>
Resolving Agency Official (if known) _____  Phone#: _____

Do you have any pending complaints? NO: ____    YES <u>X</u>. If yes,

A. INFORMAL    DATE COMPLAINT INITIATED: <u>Since 1996</u>
B. FORMAL _____    DATE(S) FILED: __ _____  Case#: _____
Status: **Many unresolved**

## ELECTION OF PARTICIPATION – INFORMAL EEO COMPLAINT PROCESS
### (PLEASE CHECK ONE)

| | |
|---|---|
| | Alternative Dispute Resolution (ADR) |
| **X** | Traditional EEO Counseling |

| Has the Aggrieved been given a written copy of their Notice of Rights and Responsibilities | YES __X__ | NO |
|---|---|---|

Aggrieved Employee's Signature: *Krishna Murty* Krishna Murthy. Date: 12/08/05
COMMENTS: **Explanation of the complaint was provided to the complaint In-taker at OCR**

| **Office of Civil Rights Use Only.** |
|---|
| Contact Person's Name _____  Title _____ |
| Phone number _____  Fax number _____ |
| **If ADR elected**, date file sent to CPRC: _____ |
| **If Counseling elected**, date file sent for counselor contracting: _____ |



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

Mr. Krishna Murthy
Food Safety and Inspection Service
United States Department of Agriculture

                    RE: Informal EEO Complaint of Discrimination

Dear Mr. Murthy:

On December 5, 2005, you contacted the Office of Civil Rights (OCR) expressing an interest in filing an equal employment opportunity (EEO) complaint of discrimination against OCR. Federal EEO regulations found at 29 C.F.R. 1614 require that complainants must first engage in the informal EEO complaint process to attempt resolution of the issue(s) raised (§1614.105(a)). The regulation further requires that contact with a counselor be made within 45 days of the date of the alleged discriminatory matter (§1614.105(a)(I). **December 5, 2005,** will serve as your official contact date.

To begin the informal process, you **must choose either the EEO counseling *or* the alternative dispute resolution (ADR) process.** For employees or applicants for employment of positions under the Departmental Administration (DA) organizational structure, the Office of the Secretary, and all other U.S. Department of Agriculture (USDA) executive staff offices, EEO counseling is offered through contracting services coordinated by the OCR, Employment Complaints Division (ECD). Likewise, ADR is available through the USDA Conflict Prevention and Resolution Center (CPRC). If you have questions about the ADR process, contact CPRC at (202) 720-7664 or toll free at 1-888-428-8961.

Enclosed are a complaint process flowchart, an Initial Intake form, and a copy of your Rights and Responsibilities. **Please complete the Intake form and return it to me as soon as possible for processing. Please know that your informal complaint cannot be processed until I receive your completed Intake form.** The form can be mailed or faxed to my attention at the address or fax number listed below. If I can be of further assistance, feel free to contact me at (202)401-4086.

Mail:       **Nashira Marshall**
            **USDA/Office of Civil Rights**
            **300 7th Street, SW, Room 253**
            **Washington, DC 20250-9403**
Fax:        **(202) 205-8694**

Sincerely,
/s/
Nashira Marshall
EEO Specialist
Office of Civil Rights

Enclosures

AN EQUAL OPPORTUNITY EMPLOYER

Date: February 6, 2005

From:           Juanita Boyd
                Contract Equal Employment Opportunity Counselor
                DSZ

To:             Krishna Murthy

Subject:        **REQUEST TO EXTEND COUNSELING PERIOD**

Reference:      29 CFR 1614.105

1.    This notice is to inform you that the initial thirty (30) day period for counseling has
      expired.    Also, the first extension timeframe has expired.    The inquiry into your
      complaint is still in the counseling process.  With your permission, I would like to extend
      the counseling period for an additional thirty days for a total of 90 calendar days in order
      to finish the counseling activity.  At or before the end of this period, the final interview
      will be conducted and you will be advised of your further rights unless you have entered
      into a settlement agreement.

2.    This voluntary agreement means that counseling will be completed no later than March 4,
      2006, 90 calendar days from initial contact.

3.    Please sign one of the statements below and return this notice to me within five calendar
      days of receipt of this notice.

This extension will in no way hinder your fifteen (15) calendar days period to file a formal
complaint after receipt of the Notice of Final Interview.

*Juanita Boyd*
**EEO COUNSELOR**

_____

(✓) I agree to the above-mentioned extension.        ( ) I do not agree to the above-mentioned
                                                     extension.

*Krishna Murthy*                                     _02 - 06 - 2006_
Signature of Complainant                             Date

# Notice of Right to File

**Transmitted by:**
**Hand Delivery** _____
**Fax** _____
Certified Receipt No: 7004 2890 0003 0757 7490

**Date: March 6, 2006**

Dr. Krishna Murthy
7715 Lear Road
McLean, VA 22102

Dear **Dr. Murthy:**

On **November 28, 2005** you contacted the Office of Civil Rights, Employment Complaints Division. You alleged that you have been subjected to discrimination based on your age (DOB 4/13/1947), religion (Hindo) and Reprisal (prior EEO activity) when you did not receive a promotion (under the Tier 1 portion) as a result of the settlement of the Basu Class Complaint Settlement.

The informal process of your equal employment opportunity (EEO) complaint has been completed. Since the concerns you raised in the informal process were not resolved to your satisfaction, you are now entitled to file a formal EEO complaint. If you file a formal complaint, it must in writing, include your signature and filed within **15 calendar days from receipt of this letter.** Please complete the enclosed formal Complaint of Employment Discrimination form and mail to:

**USDA – Office of Civil Rights**
**Chief, Civil Rights Services Division**
**Reporter's Building, Room 541**
**300 7th Street, SW**
**Washington, DC 20014**

**Attn: Larry Newell, Chief, CRSD**

A complaint shall be deemed timely filed if it is received or postmarked before the expiration of the 15-day filing period, or, in the absence of a legible postmark, if it is received by mail within 5 calendar days of the expiration of the filing period.

The complaint must be specific and contain only those claims either specifically discussed with me, or claims that are like or related to the issues that you discussed with me. It must also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board on the same claims.

If you retain an attorney or any other person to represent you, you or your representative must immediately notify the Office of Civil Rights, Employment Complaints Division, in writing. You and/or your representative will receive a written acknowledgment of your formal complaint.

If you have any additional questions, please contact the Office of Civil rights at (202) 720-1680.

Sincerely,

/s/

**Juanita Boyd**
EEO Counselor

Enclosure: Formal EEO Complaint Form

_____          _____
Signature of Complainant                                    Date

Revised: 3/29/02:USDA/Bsmith

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dr. Krishna Murthy
7715 Lear Rd.
McLean, VA 22102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _P. Banasur_    ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service lab)    7004 2890 0003 0757 7490

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL · RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**O F F I C I A L  U S E**

McLean VA 22102

| | |
|---|---|
| Postage | $ $0.39 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.64 |

Sent to
Dr Krishna Murthy

Street, Apt. No.;
or PO Box No. 7715 Lear Rd

City, State, ZIP+4
McLean, VA 22102

PS Form 3800, June 2002    See Reverse for Instructions

7004 2890 0003 0757 7490

# TAB B

CASE 1-2006-00219

*Received*
*3/10/2006 -*
*Hand Delivered*
*AN*

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

| | |
|---|---|
| United States Department of Agriculture<br>Civil Rights Employment Complaints and Adjudication Division | 300 7th Street SW, Room #607<br>Washington, DC 20050 |

1.  Name   (First)   (Mi.)   (Last)

[√]Mr. [ ]Ms. **KRISHNA MURTHY**   [√]USDA Employee   [ ]USDA Applicant

2.  Address

**7715 LEAR Road**
(Street)

**McLEAN VA 22102**
(City)     (State)   (Zip)

3.  Telephone Number

Work ( **202 - 690 - 5646**

Home ( **703 - 356 - 8529**

4.  Name of Agency Which You Believe Discriminated Against You

**USDA Office 7 ASCR and Office 7 Civil Rights (OCR)**

**OFFICE OF THE ASSISTANT SECRETARY FOR CIVIL RIGHTS and OCR**
(Office)

**Jamie Whitten Building 12th and Jefferson Dr. S.W. WASH. DC. 20250**
(City)       (State)         (Zip)

5.  Bases of Discrimination on Which You Were Counseled (Do not include bases for which you did not receive counseling.) The bases are age, race, color, national origin, religion, sex, physical or mental disability, marital status, sexual orientation and reprisal. Be specific in your identification of bases (i.e., age (55) sex (female), race (white)).

**Religion Age, Reprisal.**

6.  Issues(s) on Which You Were Counseled (Do not include issues or allegations for which you did not receive counseling. Provide, if you deem necessary, additional details on reverse side.) Be specific with exact issue and the date of the issue (i.e., Non-selection to Vacancy Announcement USDA-96-174, Secretary, GS-318-9, on March 1, 1996, or two day suspension for misconduct on January 29 & 30, 1996.) You do not need to elaborate on why you feel this was discriminatory, you will be given the opportunity to support your complaint during the investigation process.

**Mr. Jamal Hard**

7.  Representative, if any

**202 - 289 - 1130**
( )
(Telephone Number)

(Street)                    (City)           (State)        (Zip)

8.  Name of EEO Counselor Contacted

9.  Requested Corrective Action

**Promotion to GS-15 Step 4.**

10.  Signature **Krishna Murthy**   Date (Month) **3** (Day) **10** (Year) **2006**

# TAB C

**U.S. Postal Service**
**CERTIFIED MAIL... RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ 1.07 |
| Certified Fee | 2.40 |
| Return Reciept Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.32 |

Postmark Here

4/4/06

Sent To   **Mr. Krishna Murthy**
Street, Apt. No.; or PO Box No.   **7715 Lear Road**
City, State, ZIP+4   **McLean, VA  22102**

PS Form 3800, June 2002                    See Reverse for Instructions

7003 0500 0003 6742 0504

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**MR. KRISHNA MURTHY**
**7715 LEAR ROAD**
**McLEAN, VA  22102**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
SHVEPHA 2HEER

D. Is delivery address different from item 1?  □ Yes
If YES, enter delivery address below:          □ No

3. Service Type
☒ Certified Mail    □ Express Mail
□ Registered        ☒ Return Receipt for Merchandise
□ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
(Transfer from service lat)    7003 0500 0003 6742 0504

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com℠

OFFICIAL USE

| | |
|---|---|
| Postage | $ 3.03 |
| Certified Fee | 2.40 |
| Return Reciept Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.28 |

Postmark Here

4/4/06

Sent To  Mr. James P. Hood, Esq.

Street, Apt. No.; or PO Box No.  1226 11th Street, N.W.

City, State, ZIP+4  Washington, DC  20001

7003 0500 0003 6742 0498

PS Form 3800, June 2002          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

MR. JAMES P. HOOD, ESQ.
1226 11th STREET, N.W.
WASHINGTON, DC  20001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Karen Johnson      ☐ Agent
                      ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
KAREN JOHNSON          4.10.0

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)    7003 0500 0003 6742 0498

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

 USDA

| United States | Office of the | National | P.O. Box 60000 |
| Department of | Chief Financial | Finance | New Orleans |
| Agriculture | Officer | Center | Louisiana 70160 |

April 4, 2006

Mr. James P. Hood, Esq.
1226 11th Street, N.W.
Washington, DC 20001

*CM:RRR:7003 0500 0003 6742 0498*

Re:     **Krishna Murthy**
        **Complaint No. CRSD CF 2006 00219**

Dear Mr. Hood:

This letter acknowledges receipt of the above formal Equal Employment Opportunity (EEO) complaint of discrimination against the USDA Office of Civil Rights dated and considered filed on March 10, 2006. The formal EEO complaint has been assigned the number referenced above. Please refer to this number in any future communication on the subject formal EEO complaint.

This complaint will be assigned to an EEO Specialist to determine the following:

1. Whether it contains sufficient information to adequately define the claim(s) and to determine whether the claim(s) raised in the formal EEO complaint are like or related to those raised with the EEO Counselor. A copy of the EEO Counselor's report of inquiry is enclosed.

   If sufficient information is not available, the complainant may be issued a Letter of Clarification (LOC) requesting that specific information be provided within 15 days[1] of receipt. Failure to comply with the request may result in dismissal of this formal EEO complaint.

2. Whether all or a portion of the claim(s) raised will be accepted and referred for investigation.

   If all or a portion of this formal EEO complaint is accepted and the investigation report has not been issued within 180 days[2] from the filing date, the complainant has a right to request a hearing from the EEOC field office having jurisdiction over the geographical area where the formal EEO complaint arose. The complainant also has a right to request a hearing within 30 days of receipt of the investigation report.

3. Whether any portion of the formal EEO complaint will be dismissed.

---

[1] All references to days refer to calendar days unless specified otherwise.

[2] The Department is required to complete the investigation within 180 days from the date your formal EEO complaint was filed unless both parties agree, in writing, to extend the time period.

"An Equal Opportunity Employer"

James P. Hood (Krishna Murthy)                                    Page 2 of 2

If any portion, but not all of this formal EEO complaint is dismissed, the complainant will be notified of the rationale for the determination. In accordance with 29 C.F.R. §1614.107(b), our determination that the cited claim(s) is dismissed will be reviewed by an administrative judge at the Equal Employment Opportunity Commission (EEOC) if a hearing is requested on the remainder of the subject formal EEO complaint. However, the complainant may not appeal this dismissal until a final action is taken by the Department on the remainder of this formal EEO complaint.

Enclosed is the identification of the EEOC field office and address where the hearing request should be sent. The complainant is required to certify to the EEOC field office that a copy of the hearing request was sent to the following address:

> United States Department of Agriculture
> Office of the Chief Financial Officer, National Finance Center
> Equal Employment Opportunity and Workforce Services Staff
> P.O. Box 29729
> New Orleans, LA 70189-0729

4. Whether the entire formal EEO complaint will be dismissed.

If this formal EEO complaint is dismissed in its entirety, the complainant will be notified of the rationale for the dismissal and be advised of their appeal rights.

The complainant must keep the agency informed of their current address and your current address. If the Department is unable to locate the complainant, it may dismiss this formal EEO complaint pursuant 29 C.F.R. §1614.107(a)(6).

If there are any questions or concerns regarding the status of this formal EEO complaint, please call (504) 426-6222 or submit your questions or comments in writing to the following address:

> United States Department of Agriculture
> Office of the Chief Financial Officer, National Finance Center
> Equal Employment Opportunity and Workforce Services Staff
> Attn: OCR Complaint Status Coordinator
> P.O. Box 29729
> New Orleans, LA 70189-0729

Sincerely,

JOHN S. WHITE, Acting Director
Civil Rights Office

Enclosures – EEO Counselor's Report of Inquiry; Washington Field Office Address Sheet

cc:  Mr. Krishna Murthy *(CM:RRR:7003 0500 0003 6742 0504)*
     7715 Lear Road
     McLean, VA 22102

     Kirk Baylor, Office of Civil Rights

# EXHIBIT   18-Part 2

Appeal File for CRDS-CF-2006-00219 (Plaintiff's EEOC appeal re fairness of <u>Basu</u> Settlement Agreement)

# TAB D

1.   January 21, 2004 Order and January 27, 2004 Order Approving Notice of Settlement to be sent by regular U.S. mail

2.   February 17, 2004 Letter from OGC to K. Murthy outlining terms of proposed individual settlement, attaching:

   a:   Notice of Settlement, advising on how to object if desired
   b:   October 31, 2003 Settlement Agreement, giving specific procedures re enforcement or breach at pages 15-17, which K. Murthy has not utilized

3.   December 7, 2004 Decision Granting Final Approval of Settlement Agreement, noting that individual settlement agreements are not required for members of Tier One of relief, including K. Murthy, but may be used as a mechanism to provide relief

4.   May 25, 2005 Letter from OGC to K. Murthy providing individual settlement agreement to K. Murthy, copying Class Counsel

5.   February 1, 2006 Letter from OGC to K. Murthy answering concerns brought to OGC's attention by K. Murthy, noting that at January 5, 2006 meeting with OGC, Class Counsel and K. Murthy, K. Murthy was not raising claim of non-compliance

6.   March 3, 2006 Letter from OGC to K. Murthy responding to inquiries regarding the Basu Settlement Agreement, and requesting signed copy of individual settlement agreement\

7.   Withdrawal of complaint by Complainant dated August 2, 2005.

8.   Information on BASU settlement posted on USDA's Civil Rights Website.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

| | |
|---|---|
| Arun C. Basu, *et al.*,    ) <br>     Complainants,    ) <br>    ) <br>    v.        ) <br>    ) <br> Ann M. Veneman,    ) <br> Secretary,    ) <br> Department of Agriculture,    ) <br>     Agency.    ) <br>    ) | EEOC No. 100-A1-7863X <br><br> Agency No. 000190 <br><br> Date: January 21, 2004 |

## ORDER

On November 17, 2003, the parties submitted a Joint Motion For Approval of Settlement Agreement, along with a copy of the proposed settlement agreement. The parties also included a proposed notice of resolution. Pursuant to 29 C.F.R. § 1614.204(g)(4) (2003), the Agency shall, consistent with the manner proposed in the motion,[1] notify all class members of the resolution of the above-captioned within ten (10) days of the date of this Order (mailings should be postmarked within that time frame). I find that Provisions 1 through 5 of the proposed Notice are appropriate. With regard to Provision 6, the parties are advised that the regulations governing class actions in the Federal sector EEO process do not require a Fairness Hearing. Rather, the regulations provide that the administrative judge will review the notice of resolution, any petitions to vacate which are filed, and then determine whether the resolution is "fair, adequate and reasonable to the class as a whole." 29 C.F.R. § 1614.204(g)(4). In the event the undersigned determines that there are legitimate questions concerning the fairness, adequacy, and reasonableness of the resolution, he will, with appropriate notice, schedule a Fairness Hearing to address those questions. If the undersigned, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable

---

[1] Specifically, the motion proposes that certain identified class members will be provided notice by regular mail, and that the notice will also be posted on the Agency's web site and in appropriate Agency bulletins. Motion at 13.

to the class as a whole, he will issue a decision to that effect which will thereby make the resolution binding on all class members.

Accordingly, it is hereby ORDERED that Provision 6 be modified to state the following:

Within 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents, or is otherwise not fair, adequate and reasonable to the class as a whole. Petitions are to be filed with Administrative Judge Andrew Culbertson at 1400 L Street, N.W., Suite 200, Washington, D.C. 20005. In the event the Administrative Judge determines that there are legitimate questions raised concerning the fairness, adequacy, or reasonableness of the resolution, a Fairness Hearing will be scheduled to address those questions. If the Administrative Judge, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole, he will issue a decision to that effect which will thereby make the resolution binding on all class members.

Finally, the parties are advised that a copy of the notice of resolution should be sent to the undersigned at the time of its issuance.

It is so ORDERED.

_____
Andrew Culbertson
Administrative Judge

Copies to:

James P. Hood, P.C.
By facsimile at (202) 371-2535

Steven C. Brammer, Esq.
By facsimile at (202) 720-4089

2



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

## FACSIMILE COVER PAGE

TO:        James P. Hood, P.C.
           (202) 371-2535

           Steven C. Brammer, Esq.
           (202) 720-4089

FROM:      Administrative Judge Andrew Culbertson
           Equal Employment Opportunity Commission
           Telephone: (202) 275-6686

DATE:      January 21, 2004

SUBJECT:   Order in *Basu v. USDA*

PAGES:     3  (including cover page)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

| | |
|---|---|
| Arun C. Basu, *et al.*,<br>Complainants, | )<br>)<br>)<br>) |
| v. | )<br>)<br>) |
| Ann M. Veneman,<br>Secretary,<br>Department of Agriculture,<br>Agency. | )<br>)<br>)<br>)<br>)<br>) |

EEOC No. 100-A1-7863X

Agency No.  000190

Date: January 27, 2004

## ORDER

On January 26, 2004, the parties filed a joint motion for approval of a revised notice of resolution which includes several revisions to the notice of resolution that was submitted for approval on November 17, 2003. That motion is GRANTED, and the revised notice of resolution is approved. The Agency shall, consistent with the manner proposed in the November 17, 2003, motion,[1] notify all class members of the resolution of the above-captioned within twenty (20) days of the date of this Order (mailings should be postmarked within that time frame).

It is so ORDERED.

_____
Andrew Culbertson
Administrative Judge

---

[1] Specifically, the motion proposes that certain identified class members will be provided notice by regular mail, and that the notice will also be posted on the Agency's web site and in appropriate Agency bulletins. Motion at 13.

Copies to:

James P. Hood, P.C.
By facsimile at (202) 371-2535

Steven C. Brammer, Esq.
By facsimile at (202) 720-4089



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

1400 L Street, N.W., Suite 200
Washington, D.C. 20005
(202) 275-7377
TTY (202) 275-7518
FAX (202) 275-6834 & 0025

## FACSIMILE COVER PAGE

TO:       James P. Hood, P.C.
          (202) 371-2535

          Steven C. Brammer, Esq.
          (202) 720-4089

FROM:     Administrative Judge Andrew Culbertson
          Equal Employment Opportunity Commission
          Telephone: (202) 275-6686

DATE:     January 27, 2004

SUBJECT:  Order in *Basu v. USDA*

PAGES:    3 (including cover page)

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1400 L STREET, NW, SUITE 200
WASHINGTON, D.C. 20005

ARU    SU, et al.,                                    )
                                                       )
              Class Agents,                            )
                                                       )
         v.                                            )
                                                       )
    N VENEMAN,                                         )        EEOC No. 100-A1-7863X
Secretary, U.S. Department of Agriculture,             )        Agency No. 000190
                                                       )
         Agency.                                       )
                                                       )
                                                       )
                                                       )        Administrative Judge:
                                                       )        Andrew Culbertson
                                                       )

__JOINT MOTION FOR APPROVAL OF REVISED NOTICE OF SETTLEMENT__
__AND STAY OF DEADLINE TO SEND NOTICE PENDING ORDER__

The parties, Class Agent Arun Basu on behalf of the Settlement Class ("Class" or "Class

mbers"), and the United States Department of Agriculture ("USDA" or "Department"), jointly

e for approval of the attached revised Notice of Settlement.  By Order dated January 21,

the Administrative Judge of the U.S. Equal Employment Opportunity Commission

)C" or "the Commission") approved a prior Notice of Settlement sent by the parties.

uently, the parties discovered that the Notice that was previously sent to the

strative Judge for approval was not the final version of the Notice upon which the parties

le final Notice of Settlement, upon which the parties agreed, is attached hereto as

This Notice contains no major substantive changes from the prior Notice, except for

language of the persons included in the Settlement Class, which mirrors the language

roposed Settlement Agreement.  This Notice also gives a more detailed description

ndividual Relief and Attorney's Fees under the proposed Agreement.  This Notice



United States          Office of the         Washington,
Department of          General               D.C.
Agriculture.           Counsel               20250-1400

February 17, 2004

Dr. Krishna Murthy
7715 Lear Road
McLean, VA 22102

Re:    **Arun Basu v. Veneman** Proposed Class Action Settlement
       EEOC No. 01A10660, Agency No. 000190

Dear Dr. Murthy:

You are hereby notified of the proposed Settlement Agreement signed by the United States.
Department of Agriculture ("USDA") and the Class Agent Arun Basu on behalf of himself and
the Class Members. The parties have determined that your claims fall within Tier One of the
proposed Settlement Agreement. As a result, it is proposed that you will receive the following,
for settlement of pending claims of employment discrimination:

a.     Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all
       pecuniary and non-pecuniary damages;
b.     Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical
       Officer, Office of Program and Policy Development, New Technology Staff;
c.     Office of Personnel Management Leadership Training to be determined within 60 days of
       a signed settlement agreement; and
d.     Reasonable attorneys' fees to be paid according to Section VII E of the proposed
       settlement Agreement.

Other details regarding the Settlement Agreement, including injunctive relief and information on
how to contact Class Counsel or the Administrative Judge is attached in the Notice required by
the U.S. Equal Employment Opportunity Commission ("EEOC") under 29 C.F.R. § 1614.204(e).
If you are represented by an attorney, you must consult with your attorney with regard to this
matter and provide the attached documentation to him or her.

Very truly yours,

Arlean Leland
Associate General Counsel
Civil Rights Division

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1400 L STREET, NW, SUITE 200
WASHINGTON, D.C.  20005

| | | |
|---|---|---|
| ARUN BASU, et al., | ) | |
| | ) | |
| Class Agents, | ) | |
| | ) | |
| v. | ) | EEOC No. 100-A1-7863X |
| | ) | Agency No. 000190 |
| ANN VENEMAN, | ) | |
| Secretary, U.S. Department of Agriculture, | ) | |
| | ) | |
| Agency. | ) | Administrative Judge: |
| | ) | Andrew Culbertson |
| | ) | |

## JOINT MOTION FOR APPROVAL OF REVISED NOTICE OF SETTLEMENT AND STAY OF DEADLINE TO SEND NOTICE PENDING ORDER

The parties, Class Agent Arun Basu on behalf of the Settlement Class ("Class" or "Class Members"), and the United States Department of Agriculture ("USDA" or "Department"), jointly move for approval of the attached revised Notice of Settlement.  By Order dated January 21, 2004, the Administrative Judge of the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") approved a prior Notice of Settlement sent by the parties. Subsequently, the parties discovered that the Notice that was previously sent to the Administrative Judge for approval was not the final version of the Notice upon which the parties agreed.

The final Notice of Settlement, upon which the parties agreed, is attached hereto as Exhibit A.  This Notice contains no major substantive changes from the prior Notice, except for the revised language of the persons included in the Settlement Class, which mirrors the language used in the proposed Settlement Agreement.  This Notice also gives a more detailed description of proposed Individual Relief and Attorney's Fees under the proposed Agreement.  This Notice

also revises language in the section of the Notice titled "Effective Date and Length of Settlement" to correctly change the date October 3, 2003 to October 16, 2003. Finally, the Agency has incorporated the Administrative Judge's language for Section 6 of the proposed Notice to replace the prior language.

The parties regret the clerical error resulting in the incorrect Notice of Settlement's attachment to the Joint Motion for Approval of Settlement Agreement. The parties respectfully request that the Commission stay the ten-day period for mailing the proposed Notice of Settlement until there is an Order on this revised Notice of Settlement.

CONCLUSION

For the foregoing reasons, Class Agents and USDA jointly request that the EEOC approve the attached revised Notice of Settlement, and stay the deadline for mailing such Notice until the Administrative Judge rules on this Joint Motion.

Date: _January 26, 2004_

Respectfully submitted,

_James Hood / by permission Steven Brammer_

JAMES HOOD, ESQ.
Class Counsel

_Steven C. Brammer_

ROBERT HARDIN, ESQ.
STEVEN C. BRAMMER, ESQ.
Agency Representatives



United States          Office of the        Washington,
Department of          General              D.C.
Agriculture            Counsel              20250-1400

February 17, 2004

Dr. Krishna Murthy
7715 Lear Road
McLean, VA 22102

Re:    **Arun Basu v. Veneman** Proposed Class Action Settlement
       EEOC No. 01A10660, Agency No. 000190

Dear Dr. Murthy:

You are hereby notified of the proposed Settlement Agreement signed by the United States.
Department of Agriculture ("USDA") and the Class Agent Arun Basu on behalf of himself and
the Class Members. The parties have determined that your claims fall within Tier One of the
proposed Settlement Agreement. As a result, it is proposed that you will receive the following,
for settlement of pending claims of employment discrimination:

a.    Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all
      pecuniary and non-pecuniary damages;
b.    Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical
      Officer, Office of Program and Policy Development, New Technology Staff;
c.    Office of Personnel Management Leadership Training to be determined within 60 days of
      a signed settlement agreement; and
d.    Reasonable attorneys' fees to be paid according to Section VII E of the proposed
      settlement Agreement.

Other details regarding the Settlement Agreement, including injunctive relief and information on
how to contact Class Counsel or the Administrative Judge is attached in the Notice required by
the U.S. Equal Employment Opportunity Commission ("EEOC") under 29 C.F.R. § 1614.204(e).
If you are represented by an attorney, you must consult with your attorney with regard to this
matter and provide the attached documentation to him or her.

Very truly yours,

Arlean Leland
Associate General Counsel
Civil Rights Division

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1400 L STREET, NW, SUITE 200
WASHINGTON, D.C. 20005

| | | |
|---|---|---|
| ARUN BASU, et al., | ) | |
| | ) | |
| Class Agents, | ) | |
| | ) | |
| v. | ) | EEOC No. 100-A1-7863X |
| | ) | Agency No. 000190 |
| ANN VENEMAN, | ) | |
| Secretary, U.S. Department of Agriculture, | ) | |
| | ) | |
| Agency. | ) | Administrative Judge: |
| | ) | Andrew Culbertson |
| | ) | |

## NOTICE OF SETTLEMENT

TO:        Potential Class Members

FROM:     Arlean Leland, Associate General Counsel, Office of the General Counsel (OGC),
United States Department of Agriculture (USDA)

You are hereby notified that you have been identified as a potential Class Member in the above-
mentioned Class complaint. In addition, you are provided with the following information
pursuant to 29 C.F.R. §1614.204(e):

1.    **The name of the Agency or organizational segment and its location.**

The Class Action complaint is filed against the United States Department of Agriculture
("USDA" or the "Department") agency-wide at all locations. The USDA headquarters address is
1400 Independence Ave., S.W., Washington, D.C. 20250. The Secretary of Agriculture is Ann
Veneman.

2.    **A description of the issues accepted as part of the Class complaint:**

Complainant, a GS-15 Sociologist with the USDA Natural Resources Conservation Service
("NRCS") filed a formal complaint dated November 18, 1999 on behalf of a Class consisting of
any Asian/Pacific Islander employees of the agency at any grade level between 1994 to the
present. Complainant alleged that based on race/national origin (South Asian), color (brown),
religion (Hindu and Islam) and in reprisal for prior EEO activity the Class Members were
discriminated against in promotions, demotions, details, stripped of managerial duties and
responsibilities, selections, unresolved EEO complaints, terminations, and reprisals.

On June 27, 2001, the EEOC conditionally certified the Class as, "All Asian/Pacific employees
of the agency who were eligible for but have not received promotions and all Asian/Pacific
persons who have applied for positions with the agency but have not been selected."

3.  **An explanation of the binding nature of the resolution of the complaint on Class Members:**

    a.    <u>Settlement Agreement</u>

The following terms of this Settlement Agreement ("Settlement" or "Agreement") were reached after negotiations between the parties. The parties are requesting that the Administrative Judge assigned to the case, EEOC Administrative Judge Andrew Culbertson, approve this Class Action Settlement Agreement under 29 C.F.R. §1614.204(e).

    b.    <u>Parties to the Settlement</u>

The parties to the Settlement include Class Agent Arun Basu, on behalf of himself and the Settlement Class, and the Department.

    c.    <u>Persons Included in the Settlement Class</u>

"All current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected."

    d.    <u>Terms of Settlement</u>

<u>Generally</u>: As of the Effective Date, and continuing for the length of the Settlement, the Department has proposed terms to aid in career development and advancement.

<u>Special Provisions</u>: In order to fully effectuate the Settlement, the Parties agreed to the following provisions:

A.    <u>Injunctive Relief</u>

    a.    The Department will establish a pilot Development Opportunity Placement Program (DOPP) that provides qualified and eligible Class Members who apply with Priority Consideration for a finite period in a nationwide program designed to provide details, temporary promotions or developmental assignments to positions in USDA Headquarters and Field Office Locations.

    b.    The Department will establish a Graduate Scholarship Program.

    c.    The Department will conduct a regional Department-wide job fair.

d.   The Department will review, update and issue Department-wide Affirmative Employment Plans ("AEPs").

e.   The Department will ensure that all Asian/Pacific Islander employees Grades 7 and above have current up-to-date IDPs.

f.   <u>Reporting and Monitoring</u>. A Departmental Liaison working under the supervision of the Assistant Secretary of Civil Rights will work with the Class Agents and USDA agencies on implementation and monitoring of this Agreement.

B.   <u>Individual Relief</u>.

Individual Relief will be provided under the following categories:

Tier One: The Parties agree that the six (6) Class Agents listed in <u>Exhibit 1</u> have individual claims of employment discrimination which shall be resolved by the Terms of Individual Settlement Agreements.

   <u>Offer of Relief</u>: Individual Agreements sent to individual Class Members, and injunctive relief.

Tier Two: Global resolution of all other named Class Agents.

   <u>Offer of Relief</u>: Lump sum payment of Three Hundred Seventy-Two Thousand Five Hundred Dollars ($372,500) to have Class Agents share at their discretion, and injunctive relief.

Tier Three: All other cases subsumed under the Class definition pending at the EEOC, Federal District Court, or Federal Circuit Court of Appeals.

   <u>Offer of Relief</u>: (a) <u>Federal District Court</u> – Lump sum of Seven Thousand Five Hundred Dollars ($7,500) plus attorney fees incurred since filing in Federal Court; injunctive relief; (b) <u>EEOC</u> - Lump sum of Five Thousand Dollars ($5,000) or expedited hearing and injunctive relief.

Tier Four: All Asian/Pacific Islander employees who fall under the Class definition, but did not file a complaint of employment discrimination.

   <u>Offer of Relief</u>: Injunctive relief

3

C.  <u>Attorneys' Fees</u>.  Three Hundred and Fifty Thousand Dollars ($350,000) in reasonable attorneys' fees to all attorneys representing Class Agents and Class Members described in Tier One.  Funds to be transferred to an account established by Class Agent Basu for appropriate distribution within thirty (30) days from the Effective Date of this Agreement.  Attorneys must acknowledge payment by co-signing Individual Agreements and the Withdrawal Letter under <u>Exhibit 2</u>.

All attorneys' fees for Dr. Mon Yee in Tier One and Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two, Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by USDA, contingent upon their acceptance of Settlement Offer.

Five Tier Two complaints before EEOC will also be offered attorneys' fees by USDA, contingent upon their acceptance of the Settlement Offer, not to exceed Twenty Five Thousand Dollars ($25,000).

D.  <u>Effective Date and Length of Settlement</u>.  The Settlement will go into effect on October 16, 2003, or on the date on which the EEOC approves the Settlement, whichever is later.  The Settlement will remain in effect for three (3) years.

4.  **Options for Settlement Class Members**

A.  You may do nothing, and you will remain a Class Member and be both entitled to and bound by the terms of equitable and injunctive relief set out in the Settlement if it is approved under 29 C.F.R. §1614.204(g).

B.  You may object to the Settlement, if you follow the instructions for Fairness Hearing and Process for Objections that is set forth below.

5.  **The names, addresses and telephone numbers of the Class representative:**

James P. Hood, Esq.
1226 Eleventh St., N.W.
Washington, D.C. 20001
FAX: (202) 371-2535
PHONE: (202) 289-1130

4

6.    **Fairness Hearing and Process for Objections**

Within 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents, or is otherwise not fair, adequate and reasonable to the class as a whole. Petitions are to be filed with Administrative Judge Andrew Culbertson at 1400 L Street, N.W., Suite 200, Washington, D.C. 20005. In the event the Administrative Judge determines that there are legitimate questions raised concerning the fairness, adequacy, or reasonableness of the resolution, a Fairness Hearing will be scheduled to address those questions. If the Administrative Judge, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole, he will issue a decision to that effect which will thereby make the resolution binding on all class members.

In addition, copies of any petition sent to the Administrative Judge must also be mailed or sent via facsimile to each of the addresses below:

Counsel for Class:

> James P. Hood, Esq.
> 1226 Eleventh St., NW
> Washington, DC 20001
> Fax: (202) 371-2535

Counsel for USDA:

> Arlean Leland, Esq.
> 1400 Independence Ave., SW
> Room 3312-S
> Washington, DC 20250-1419
> Fax: (202) 720-4089

1

2

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1400 L STREET, NW, SUITE 200
WASHINGTON, D.C. 20005

3

4    ARUN BASU, et al.,

5            Class Agents,

6        v.                                    EEOC No. 100-A1-7863X
                                               Agency No. 000190
7    ANN VENEMAN,
     Secretary, U.S. Department of Agriculture,
8
             Agency.                           Administrative Judge:
9                                              Andrew Culbertson

10

11                     SETTLEMENT AGREEMENT

12              I. INTRODUCTION AND NATURE OF THE CASE

13        This Settlement Agreement ("Settlement Agreement" or "Agreement") is entered into

14   between Class Agents Arun Basu, et al., representing the interests of the class of individuals

15   defined below ("Complainants") and the United States Department of Agriculture ("USDA" or

16   the "Department") and constitutes a full, complete, voluntary and final settlement of all issues and

17   concerns raised in the Complainants' Equal Employment Opportunity ("EEO") complaint, U.S.

18   Equal Employment Opportunity Commission ("EEOC" or the "Commission") No. 100-A1-

19   7863X, Agency No. 000190 ("Class Complaint"). The Department acknowledges the efforts of

20   the Organization of South Asian Americans in Agriculture ("OSAAA"), for its leadership and

21   efforts in settling this Class Complaint. There are no other terms, written or oral, that are not

22   included in the text of this Agreement. The issues addressed in the Class Complaint are as

23   follows:

24        On November 18, 1999, lead Class Agent, Dr. Arun Basu, filed a formal complaint of

25   employment discrimination on behalf of a proposed class of Asian/Pacific Islander employees of

26   the Department at any grade level who, between February 1994 and the present, had: (1) applied

27   for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position;

28   (4) been stripped of managerial duties and responsibilities; (5) not been selected for a position



1

1  with managerial duties or responsibilities; (6) been subjected to reprisal for filing; (7) filed a

2  discrimination complaint which had not been resolved; or (8) been terminated from their

3  positions, and thereafter filed a discrimination complaint. The Class Complaint alleges that the

4  Department subjected the proposed Class Members to discrimination on the bases of race,

5  national origin, color, religion, and in reprisal for prior protected EEO activity.

6       In a decision dated September 15, 2000, the EEOC Administrative Judge assigned to this

7  case denied certification of the proposed Class because Complainants failed to meet the four

8  criteria for Class certification, *i.e.*, commonality, typicality, numerosity, and adequacy of

9  representation, required by 29 C.F.R. § 1614.204(a)(2). In addition, the Administrative Judge

10  concluded that all claims unrelated to a discriminatory failure to promote claim had been

11  abandoned. On October 4, 2000, the Agency issued its final decision accepting the

12  Administrative Judge's denial of certification. On December, 6, 2000, Complainants filed an

13  appeal with the EEOC's Office of Federal Operations ("OFO").

14       On June 27, 2001, the OFO issued a Decision conditionally certifying a Class defined as,

15  "All Asian employees of the agency who were eligible for but have not received promotions and

16  all Asian persons who have applied for positions with the agency but have not been selected."

17  The OFO reversed the Administrative Judge's denial of certification and held that the Class

18  satisfied the commonality, typicality and numerosity requirements, but conditionally certified the

19  Class to obtain counsel who satisfied the adequacy of representation requirement. For the

20  purposes of this Settlement Agreement, the Class is defined as: "All current Asian/Pacific

21  Islander employees at the GS-7 level and above who were eligible for but have not received

22  promotions and all Asian/Pacific Islander current employees who were eligible for and have

23  applied for positions with the Department but have not been selected."

24       In the interest of resolving this action without the need for further litigation, and without

25  any admission of liability by any Party, the Parties hereby agree to the following terms on which

26  this action is to be fully and finally resolved.

27

28

2

## DEFINITIONS AND GENERAL TERMS

A. Definitions

As used in this Agreement, the following terms have the meanings specified below:

1. "Agency" means a subcomponent agency of the U.S. Department of Agriculture.

2. "Civilian Labor Force" ("CLF") means those individuals represented by the relevant civilian labor force. For the purposes of this Agreement only, the Parties agree that the best available statistics for identifying the relevant civilian labor force are those contained in the most current EEOC CLF Data.

3. "Class Agent" means an individual designated as representing the Class in this action.

4. "Class" means all current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected.

5. "Class Member" or "Member of the Class" means a person who falls within the definition of the Class.

6. "Department" means the United States Department of Agriculture or "USDA."

7. "Effective Date" means 180 days from the date of approval from the EEOC Administrative Judge of this Agreement.

8. "Expiration Date" means midnight, three years from the Effective Date as described in A (7) of this Agreement.

9. "Parties" means, collectively, Class Agents, Class Members, Complainants, and the Department.

10. "Employment Compliance Review" means a focused evaluation of a USDA agency's employment policies and practices, including but not limited to: retention, selection, hiring, placement, training and career enhancement, language

3



barriers, accessibility for persons with disabilities, and lack of representation at specific grade levels or in specific job classification series.

11. "Fairness Hearing" means a hearing by the Administrative Judge pursuant to 29 C.F.R § 1614.204(g)(4) to consider whether resolution is fair, adequate and reasonable to the Class as a whole.

12. "Development Opportunity Placement Program ("DOPP")" means a pilot developmental program established for the purpose of providing opportunities for all eligible and qualified employees to serve on details, temporary promotions and developmental assignments.

13. "Priority Consideration" means that a Class Agent is not guaranteed selection, but must be considered before any formal action to recruit for the vacancy and must be given bona fide consideration on his or her own merit, without competition with other potential candidates. For purposes of this Agreement, Priority Consideration shall apply to DOPP only and not to Class Members applying for a promotion or seeking another position in the Department.

14. "Detail" means temporary assignment of an employee to perform duties outside the scope of his or her normal position or to perform services for an organization other than the one to which he or she is appointed.

15. "Temporary Promotion" means limited promotion to an established vacant position, temporary position, or project to meet the temporary needs of the organization.

16. "Developmental Assignment" means rotation(s) that provide employees the opportunity, at the appointing authority's discretion, to explore new assignments or jobs, and to provide agencies the opportunity to enhance employee development or to make more effective use of staff.

17. "Under-representation" means a percentage lower than the expected amount according to the EEOC relevant CLF.

4

18. "Subsumed Cases" means administrative complaints of employment
discrimination that fall under the Class definition that were filed between 1994 and
the present. Present is defined as September 2, 2003 for the purpose of this
Agreement.

    B. General Terms

1. Term of Agreement. The term of this Agreement is three years, except as
provided below in this paragraph. This Agreement and all its provisions will
expire and will be without force and effect as of the Expiration Date, except
that (1) in the event that an Employment Compliance Review ("Compliance
Review") concludes that the agency is in non-compliance based upon good
faith effort by the Department as delineated in Section 717 of Title VII of the
Civil Rights Act of 1964, as amended in 1991 and related statutes and
regulations, then the specific obligation(s) that is the subject of the Compliance
Review shall be extended for an additional period of time; and (2) this time
limitation does not apply to the effect of this Agreement on other claims as
described in Section VII below.

2. Persons Covered By Agreement. The Class covered by and eligible for relief
under this Agreement is defined in Section VII.

3. Non-Admission of Liability. This Agreement does not constitute an admission
of the merits of any position taken by any Party to this litigation, nor of any
liability by the Department for the violation of any law, statute, regulation, or
policy. The Department expressly denies any wrongdoing or liability.

4. Anti-Deficiency Act. All commitments for expenditure of funds under this
Agreement shall be subject to the availability of funding consistent with fiscal
and appropriations law.

## III. EFFECT OF AGREEMENT

A. Withdrawal and Closing of Complaints

5

1.    Any Class Agent or Class Member who, at the Effective Date, has a pending formal individual EEO complaint of discrimination on the basis of race or national origin as to non-selection or promotion must withdraw his or her EEO complaint within fifteen (15) days of the Effective Date of this Agreement, by signing the letter attached as **Exhibit A.** The Department's Office of Civil Rights will send required notification to the EEOC and the affected USDA agency that these complaints are closed.

2.    Any Class Agent or Class Member who, at the Effective Date of this Agreement, has a pending Federal District Court complaint or appeal in a Federal Circuit Court of Appeals on the basis of race or national origin as to non-selection or promotion must show proof of withdrawal of the complaint from Federal District Court or withdrawal of the appeal from the Federal Circuit Court of Appeals within fifteen (15) days of the Effective Date of this Agreement.

## IV.  DUTIES AND OBLIGATIONS

A.    It is the intention of the Department to undertake and continue specific measures designed to eliminate barriers to hiring, promotion, and retention of Asian/Pacific Islander applicants and employees in the Department's workforce. The Department shall undertake in good faith the specific measures set forth in Sections V and VI of this Agreement to eliminate such barriers.

1.    Goal. It is the goal of the Department to increase Asian/Pacific Islander employee representation in the agencies determined to have under-representation.

2.    Statement on Preferences.  Nothing contained in this Agreement will obligate the Department to create new positions, to fill any particular position, or to promote, select, or assign any particular person to any

6

particular position to meet any specific goal or quota of this Agreement. No provision of this Agreement, is intended as, or may be construed as imposing, a quota.

B.  Employment Compliance Reviews - A focused evaluation of the employment and affirmative action records of each USDA agency which shows statistical under-representation of Asian/Pacific Islander employees will be conducted within the three-year period of this Agreement by the Department's Office of Civil Rights. The evaluation will determine if the agency adheres to non-discriminatory practices and is exerting good faith efforts to meet the goals of an affirmative equal employment opportunity policy and program. The evaluation shall consist of a comprehensive analysis of the agency's employment policies and practices, including, but not limited to: retention, selection, hiring, placement, training and career enhancement, language barriers, accessibility for persons with disabilities, and lack of representation at specific grade levels or in specific job classification series. An agency will be deemed in non-compliance based upon evidence that the agency has failed or refused to comply with Section 717 of Title VII of the Civil Rights Act of 1964, as amended in 1991, and related statutes and regulations.

C.  The Assistant Secretary for Civil Rights will appoint an appropriate individual from his staff to serve as a Liaison ("Departmental Liaison"). The Departmental Liaison, under the supervision and authority of the Assistant Secretary for Civil Rights, shall define the focus of these employment compliance reviews no later than 180 days from the date upon which this Agreement has become final after approval from the EEOC Administrative Judge. No Class Agent, Class Member, or the other person directly and personally affected by this Agreement will as serve as Department Liaison.

D.  The Assistant Secretary for Civil Rights shall incorporate the following language into the Department's policy statement to be issued as the Parties agree:

7

"AEPs -The Department agrees to implement the policy guidance and standards for establishing and maintaining affirmative programs of EEO under Section 717 of Title VII (PART A) as delineated in the EEOC's Equal Employment Opportunity Management Directive 715 (EEO MD-715) that become effective October 1, 2003. Based on the policy guidance requirement, the Forest Service, Natural Resource and Conservation Service, Farm Services Agency, Rural Housing Service, Agricultural and Marketing Service, Office of Chief Financial Officer, Grain Inspection, Packers and Stockyard Administration, and National Agricultural Statistical Service agree to submit to the Departmental Liaison at the end of each fiscal year during the life of this Agreement an employment plan that will reflect agency self-assessments and the removal of barriers to free and open workplace competition."

## V.   METHODS OF IMPLEMENTATION

A.   <u>Implementation and Monitoring of Agreement</u>:  The Departmental Liaison will work with the Class Agents and USDA agencies on implementation and monitoring of this Agreement.  Each USDA agency which shows statistical under-representation of Asian/Pacific Islander employees will appoint an appropriate individual at no lower than the GS-15 level to work with the Departmental Liaison on implementation and monitoring of this Agreement within the agency.  These USDA agencies cited herein will be required to provide an annual report to the Department's Assistant Secretary for Civil Rights on the status of their efforts as required under this Agreement.  The report will be due on September 30th of each year during the Term of the Agreement.

B.   <u>Duties of Departmental Liaison</u>

The duties of the Departmental Liaison shall include, but not be limited to:

1.      Monitoring compliance with this Agreement.  In carrying out his/her responsibilities, the Departmental Liaison may be responsible for:

a.   Developing and recommending changes, modifications or adjustments to this Agreement, in writing, to the Assistant Secretary for Civil Rights, or his designee, to the extent necessary to effectuate this Agreement's purposes; and

b.   Reviewing reports required by this Agreement, including, but not limited to, Compliance Review reports, and making appropriate recommendations based on such reports.

2.   The Departmental Liaison will develop and publish a uniform Department policy for the notification to all qualified internal Department candidates for merit promotion vacancies within the first year of this Agreement.

## VI.   INJUNCTIVE RELIEF

1.   Development Opportunity Placement Program ("DOPP"): In the Class Complaint, the Class Agents raised allegations of discrimination in selection for promotions and details.  Our current work environment provides an excellent opportunity to address this allegation through the provision of career development and growth opportunities.

Within 180 days from the Effective Date of this Agreement, the Department will create a pilot DOPP.  This program will be established in the USDA agencies to which the named Class Agents are currently assigned.  As Class Agents, these individuals represent the claims of Class Members, and have identified concerns about promotions and details in the Class Complaint.  Thus, DOPP is established in the following agencies: Food and Safety Inspection Service, Agricultural Research Service, Farm Service Agency, Office of Civil Rights, Natural Resources Conservation Service, and Animal and Plant Health Inspection Service.  DOPP will be open to all employees who are qualified and eligible to participate in this program, as described below.  Class Agents who are qualified and eligible

9

and who apply as described below will receive Priority Consideration for the first eighteen (18) months after the program becomes effective.

### Program Description

a.  DOPP will serve as a nation-wide program to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in Headquarters and Field Office locations. DOPP will be subject to funding availability. Agencies required to participate in DOPP, listed above, will make available no less than two (2) opportunities annually for the Term of the Agreement. The details, temporary promotions or developmental assignments will be for a minimum of 31 (thirty-one) days and will cover all pay grade levels. The Department will develop a user-friendly web site describing DOPP and opportunities will be posted on the website using a link to the Department's Office of Civil Rights' web site.

b.  Each detail, temporary promotion or developmental assignment must be filled due to an actual vacancy due to persons being on extended leave, or unplanned vacancies for which an agency is recruiting, or vacancies where the incumbent is on a temporary assignment elsewhere. Class Agents who are qualified and eligible to participate in this program and who apply as described below will receive Priority Consideration for those details, temporary promotions or developmental assignments for which they are eligible and qualified, for a period of eighteen (18) months from the Effective Date of this Agreement.

### How the Program Will Work

10

c.      USDA agencies in meeting their obligation to fill six (6) DOPP slots over a three-year period must contact the Departmental Liaison electronically to begin the process of posting a DOPP Opportunity. The DOPP Opportunity will outline specific information such as Position Title, Location, Description of Duties, Start Date, Duration of Assignment, Temporary Promotion Potential, and Funding Arrangements. The Departmental Liaison will notify all eligible employees for Priority Consideration under this Agreement.

d.      Employees interested in applying must submit resumes to the Departmental Liaison, who will then work closely with the USDA agency in need of filling a vacancy to review the pool of interested employees and to consider selection of one or more of the employees to complete the detail, temporary promotion or developmental assignment.

e.      All information concerning procedures and eligibility for DOPP will be developed within 180 days from the date upon which this Agreement has become final after approval from the EEOC Administrative Judge.

2.      <u>Graduate Scholarship Program</u>: The Department will establish a Graduate Scholarship Program to provide funding for graduate school as a preparation for a career in government service with the Department. Within 180 days from the Effective Date of this Settlement Agreement, the Department will establish such a program for Masters and PhD students in the following agencies: Forest Service; Natural Resources Conservation Service; Farm Service Agency, Rural Housing Service; Agricultural Marketing Service; Office of the Chief Financial Officer; Grain Inspection

11

Packers and Stockyards Administration; and, National Agricultural Statistics Service. This program will be designed to recruit individuals to work for the Department after completion of graduate course work in particular disciplines. The Departmental Liaison, with the participation and assistance of affected agencies, will establish requirements for eligibility, eligible fields of study, selection criteria and all other details of this program. Other agencies will be encouraged to actively participate in this program, but will not required to participate.

Annually, the Natural Resources Conservation Service and Forest Service will sponsor a total of six (6) scholarships, and Farm Service Agency, Rural Housing Service, Agricultural Marketing Service, Office of the Chief Financial Officer, Grain Inspection Packers and Stockyards Administration, and National Agricultural Statistics Service will sponsor one scholarship each year. There will be a total of thirty-six (36) scholarships provided by the Department for the Term of the Agreement. The Graduate Scholarship Program will be subject to funding availability. If funding is not available at the time this Agreement is implemented, then the Agreement will be extended until this term is met.

3. <u>Job Fair</u>: The Department will conduct a Department-wide job fair at four (4) regional locations for employment in the job categories where the Department's Asian/Pacific Islander population is statistically under-represented. The job fair will be sponsored by the Forest Service, Natural Resources Conservation Service, Farm Service Agency, Rural Housing Service, Agricultural Marketing Service, Office of the Chief Financial Officer, Grain Inspection Packers and Stockyards Administration, and National Agricultural Statistics Service. Other agencies will be encouraged to participate. The job fair will be held in the four quadrants of the United

States and online. Within 180 days from the Effective Date of this Agreement, the Departmental Liaison will set forth specific dates and other details for the job fair.

4. <u>Agency Policy Development</u>:

    a.    <u>Department-wide AEPs</u>: The Department's Assistant Secretary for Civil Rights or his designee will review, update and issue a Department-wide Affirmative Employment Plan ("AEP") to ensure that all appropriate issues related to the Class Members are addressed in the plan.

    b.    <u>Agency AEPs</u> - The Department's Assistant Secretary for Civil Rights or designee and the Departmental Liaison will work with USDA agencies to ensure that they have current and comprehensive AEPs.

5. <u>Individual Development Plans (IDPs)</u>: Every employee shall have a current and up-to-date IDP. This Agreement provides that each USDA agency, at the request of the Class Member, is required to review the IDP of said Class Member to ensure that it is current and up-to-date and has identified appropriate training specifically tailored to enhance the Class Member's job performance. Where the IDP is not current and up-to-date, the agency will be required to take the necessary steps to update the Class Member's IDP as outlined above, within 180 days from the Effective Date of this Agreement, subject to valid provisions of existing collective bargaining agreements and availability of funding. If funding is not available at the time this Agreement is implemented, then the Agreement will be extended until this term is met.

## VII. INDIVIDUAL RELIEF

A.   <u>Tier One</u>: The Parties agree that the Class Agents listed in Exhibit 1 have



individual claims of employment discrimination which shall be resolved by the terms of Individual Agreements; and such Class Agents identified shall share in injunctive relief described in this Agreement.

[See Exhibit 1]

Offer of Relief: Individual Agreements sent to individual Class Members.

B.  Tier Two: Global resolution of all individual claims of employment discrimination of other named Class Agents.

Offer of Relief: Lump sum payment of Three Hundred Seventy-Two Thousand Five Hundred Dollars $372,500) for these Class Agents to share at their discretion; injunctive relief. Funds to be transferred to an account established by Class Agent Basu for appropriate distribution within thirty (30) days from the Effective Date of this Agreement.

[See Exhibit 2]

C.  Tier Three: Global resolution of all other individual claims of employment discrimination subsumed under the Class definition.

[See Exhibit 3]

Offer of Relief:

(a) Claims pending in Federal District Court or Federal Circuit Court of Appeals: Lump sum payment to Plaintiffs falling within Class definition of Seven Thousand Five Hundred Dollars ($7,500) each plus attorney fees incurred after filing in federal court as outlined in Section VII.(E), and injunctive relief.

(b) Claims pending before the EEOC: Lump sum payment of Five Thousand Dollars ($5,000) each; or expedited hearing and injunctive relief.

D.  Tier Four: All Asian/Pacific Islander employees who fall under the Class definition, but did not file a complaint of employment discrimination.

[See Exhibit 4].

Offer of Relief: Injunctive relief.

14



E.   Attorneys' Fees: Three Hundred and Fifty Thousand Dollars ($350,000) in
     reasonable attorneys' fees to all attorneys representing Class Agents and Class
     Members described in Tier One.  Funds to be transferred to an account established
     by Class Agent Basu for appropriate distribution within thirty (30) days from the
     Effective Date of this Agreement.  Attorneys must acknowledge payment by co-
     signing Individual Agreements and the Withdrawal Letter under Exhibit A.
     All attorneys' fees for Dr. Mon Yee in Tier One and Dr. Jamshyd Rasekh and Dr.
     Jess Rajan in Tier Two, Joyce Mayekawa and Ronald Shinsato in Tier Three, will
     be paid separately by USDA, contingent upon their acceptance of Settlement
     Offer.
     Five Tier Two complainants before EEOC will also be offered attorneys' fees by
     USDA, contingent upon their acceptance of the Settlement Offer,  not to exceed
     Twenty Five Thousand Dollars ($25,000) per complainant.

## VIII.  ENFORCEMENT

A.   If either Party concludes that the other Party has failed to perform its obligations under
     this Agreement, the following process will be used by the Parties:  A Party claiming
     failure to comply with the provisions of this Agreement at any time during its term will
     give written notice of the claim to the Department Liaison and will propose a resolution of
     the issue. At least five (5) calendar days prior to the written notice, the Party claiming
     non-compliance shall orally inform opposing counsel of the intended claim.

B.   The responding Party will have thirty-five (35) calendar days following receipt of the
     written claim to respond, unless this period is enlarged by agreement of the Parties.

C.   If the Party asserting the claim is dissatisfied with the other Party's response or proposed
     resolution, or no response or proposed resolution is forthcoming within the stated time
     period, the Party asserting the claim may submit the issue in writing to the Departmental
     Liaison for his/her consideration and recommendation.  The Departmental Liaison shall
     issue to the Assistant Secretary for Civil Rights a tentative report and recommendation, if

any, within thirty-five (35) calendar days of receipt of the claim, unless the time is extended by agreement of the Parties or by the Departmental Liaison.

D.    If a Party wishes to object to the tentative report and recommendation of the Departmental Liaison, it must notify the other Party of its intent to file an objection, must meet and confer with the other Party, and must lodge the objection in writing with the Assistant Secretary for Civil Rights and the other Party within twenty-one (21) calendar days of the issuance of the tentative report and recommendation. The objection shall state the factual bases for the objection and shall set forth any supporting information. The Parties may agree to extend the time for lodging an objection, and the Assistant Secretary for Civil Rights may grant a request of a Party to extend the twenty-one (21) calendar day period for filing a said objection. The Assistant Secretary for Civil Rights shall issue a ruling on the objection and issue a final report and recommendation within thirty-five (35) calendar days of the filing of the objection, unless the time is extended by agreement of the Parties or by the Assistant Secretary for Civil Rights.

E.    The Parties shall be afforded a reasonable time to achieve compliance with the Assistant Secretary for Civil Rights' final report and recommendation.

F.    If, after completing the procedures set forth in this Section at paragraphs A-F, the Party asserting the claim still believes compliance with the specific obligation has not been achieved, that Party may, after providing fourteen (14) calendar days' written notice to opposing counsel, pursue remedies consistent with this Section. Venue for such a claim will be in the EEOC. The Parties agree that any motion to the EEOC for enforcement or any other relief pursuant to this paragraph shall be limited to enforcement of the provisions contained in Sections V and VI.

G.    In any proceeding brought in the EEOC under this Section to enforce compliance with Sections V and VI, the Department shall not be found in breach of this Agreement, and the EEOC accordingly shall not order further relief, if the EEOC finds that the Department has substantially complied with Sections V and VI. If, however, the EEOC finds that the

Department is in breach, the EEOC may order specific enforcement of the provisions contained in Sections V and VI, any alternative provisions agreed upon by the parties, and/or a one-time, one-year extension of the Term of the Agreement. Nothing contained in this Agreement will obligate the Department to create new positions, to fill any particular position, or to promote, select, or assign any particular person to any particular position. No provision of this Agreement is intended as, or may be construed as imposing, a quota.

## IX.  NOTICE

A.    Notice Order and Fairness Hearing

1.    Promptly after execution of this Agreement, but in no event any later than ten (10) days after this Agreement is signed by counsel for all Parties (unless such time is extended by written agreement), the Parties will submit this Agreement (together with its Exhibits) to the EEOC and will jointly apply for entry of an order (the "Order Notice") requesting: (a) preliminary approval of the settlement set forth in this Agreement; (b) provisional certification of the Class for settlement purposes only; (c) approval for dissemination of a Notice of Proposed Settlement ("Notice"), which shall include the general terms set forth in this Agreement, to all Members of the Class; and (d) that the EEOC set the date for a fairness hearing (the "Fairness Hearing") according to 29 C.F.R. § 1614.204(g)(4).  In support of their application, the Parties will submit a joint statement including the factual and legal bases for the relief contained in this Agreement. The Parties will request that, after notice is given, the EEOC hold the Fairness Hearing and finally approve the settlement of the litigation as set forth in this Agreement.

2.    The Parties will request that the Order Notice specifically include the following provisions:

a.    Preliminarily approve this Agreement and the settlement set forth as being fair, just, reasonable, and adequate to the Class;




b.    Provisionally certify the Class for settlement purposes only;

c.    Approve the form of Notice for dissemination to Members of the Class;

d.    Direct the Department to disseminate the Notice on or before the date specified in the Order Notice to all Members of the Class and current Department employees by regular mail, internal mail, or electronic transmission, and by appropriate posting on the Department web sites;

e.    Find that the Notice constitutes the best notice practicable under the circumstances, including individual notice to all persons in the Class who can be identified upon reasonable effort, and constitutes valid, due, and sufficient notice to all persons in the Class, complying fully with the requirements of 29 C.F.R. § 1614.204(g) and any other applicable law or regulation;

f.    Schedule a Fairness Hearing to be held by the EEOC to determine if the proposed settlement of the litigation as contained in this Agreement should be approved as fair, just, reasonable, and adequate and whether the Judgment approving the settlement should be entered;

g.    Provide that pending final determination of whether the settlement contained in this Agreement should be approved nor the Class Agents, Class Members, either directly, representatively, or in any other capacity will commence or prosecute any action or proceeding in any court or tribunal asserting any of the Class claims against the Department; and

h.    Provide that any objections to (i) the proposed settlement contained in this Agreement; or (ii) entry of the Judgment approving the settlement shall be heard only if, on or before a date specified in the Order Notice, persons making objections file and serve on all Parties notice of their intention to appear (which will set forth each objection and the basis therefor) and

copies of any papers in support of their position as set forth in the Order

Notice.

## X. MISCELLANEOUS PROVISIONS

A.   Notices under this Agreement.  Copies of all notices required to be given to

Complainants' Counsel(s) or Agency Counsel under this Agreement shall be sent by mail,

postage prepaid, or by facsimile to the following (unless otherwise specified in writing):

James P. Hood, Esq.

1226 Eleventh St., N.W.

Washington, D.C. 20001

FAX: (202) 371-2535

PHONE: (202) 289-1130

Arun Basu, PhD

12008 Leaf Court

Great Falls, VA 22066

Arlean Leland, Esq.

Ayoka A. Campbell, Esq.

1400 Independence Ave., S.W., Room 2006-S

Washington, D.C. 20250

FAX: (202) 720-4089

B.   Severability and Duty to Defend.  Should any provision of this Agreement be found by the

EEOC to be invalid or unenforceable, then (i) the validity of other provisions of this

Agreement shall not be affected or impaired, and (ii) such valid provisions shall be

enforced to the maximum extent possible.  In the event the entry of this Agreement

19



generates, either through intervention or separate lawsuits or administrative filings, challenges to the lawfulness of any of the provisions contained in this Agreement, the Parties agree to defend the provisions against such challenges. If any such lawsuit is brought in federal district court against the Department, the Department shall seek to remove such action to the EEOC and the Parties shall support that action.

C. <u>Collateral Use of Agreement Prohibited</u>. The Parties have entered into this Agreement as a compromise measure to terminate this action and resolve all issues of controversy between them. The terms of this Agreement, its substance, the negotiations leading up to this Agreement, and the information exchanged by the Parties in the course of those negotiations may not be offered, taken, construed or introduced as evidence for any purpose, either in this action or in any pending or subsequent proceeding of any nature, except that in any subsequent action involving the enforcement, construction, or application of this Agreement, a copy of this Agreement may be presented to verify its contents.

D. <u>Responses to Changes in Law</u>. The Parties expressly recognize that changes in law occur in the area of personnel selection and personnel management. For this reason, the Department must maintain the administrative flexibility to accommodate such changes. To the extent that a change in federal law or regulations, Executive Orders, or judicial or administrative case law, requires modifications to the implementation of this Agreement, nothing in this Agreement shall be construed to limit the Department's authority to make such modifications; provided, however, that Complainants do not waive their rights to challenge such modifications under the enforcement procedures set out in Section VIII. The Department agrees to notify Complainants of the change in law or regulation and of the conforming modifications prior to their implementation.

E. <u>Collective Bargaining Agreements</u>. The provisions of this Agreement shall not supercede any prior commitments by the Department and its agencies pursuant to existing Collective Bargaining Agreements.

F.  Entire Agreement.  This Agreement constitutes the full and exclusive agreement of the Parties with respect to the matters discussed herein, and supersedes all prior agreements, written or oral, with respect to such matters.  No representations or inducements to compromise this action have been made, other than those recited in this Agreement.

G.  Headings.  The headings in this Agreement are for the convenience of the Parties only and shall not limit, expand, modify, or aid in the interpretation or construction of this Agreement.

H.  Counterparts.  This Agreement may be executed in one or more counterparts and each executed copy will be deemed an original that is binding upon all Parties.

I.  Term of Agreement.  This Agreement may be extended by mutual agreement of the Parties to allow completion of any specific provision by the procedures outlined.

J.  Unknown Class Members.  Unknown Class Members shall have an opportunity to receive relief under this Agreement by notifying the Department's Office of Civil Rights within thirty (30) days of the effective date of this Agreement.

XI.    IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement on the 31st day of October 2003.

Respectfully submitted:

For Defendants:

ARLEAN LELAND, ESQ.

Associate General Counsel

USDA

JAMES BRADLEY

Deputy Administrator

USDA- ARS

For Complainants:

ARUN BASU, PhD

Class Agent

22

1

2

FAROOK SAIT, ESQ.

3

President, OSAAA

4

Class Representative

5

6

7

JAMES HOOD, ESQ.

8

Class Counsel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0701

Arun C. Basu, *et al.*,
    Complainants,

    v.

Ann M. Veneman,
Secretary,
Department of Agriculture,
    Agency.

)
)
)
)
)
)
)
)
)
)
)
)

EEOC No. 100-A1-7863X

Agency No. 000190

Date: December 7, 2004

### DECISION GRANTING FINAL APPROVAL
### OF SETTLEMENT AGREEMENT

The Settlement Agreement (Agreement) in the captioned class case, signed by the parties on October 31, 2003, is hereby **APPROVED**. After careful consideration of the Agreement and the written objections, I find that the Agreement is fair, adequate, and reasonable to the class as a whole. As such, and in accordance with 29 C.F.R. § 1614.204(g)(4), I hereby give my final approval to the Agreement.

### Procedural Background

On November 18, 1999, lead Class Agent Dr. Arun Basu filed a formal complaint of discrimination on behalf of a proposed class of Asian/Pacific Islander employees of the Agency at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) stripped of managerial duties and responsibilities; (5) had not been selected for a position with managerial duties or responsibilities; (6) had been subjected to reprisal for filing a complaint(s); (7) filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint. By decision dated September 15, 2000, the administrative judge originally assigned to the case determined that the class failed to meet the procedural requirements for certification set forth at 29 C.F.R. § 1614.204(a)(2). After the Agency issued a final order

accepting that decision, the Class Agents filed an appeal with the Commission's Office of Federal Operations (OFO).

In a decision issued on June 27, 2001, OFO partially reversed the prior decision, conditionally certifying a class comprised of "all Asian employees of the [A]gency who were eligible for but have not received promotions and all Asian persons who have applied for positions with the [A]gency but have not been selected." Following the remand of the case to this office, it was assigned to the undersigned administrative judge. Subsequent to a lengthy discovery period, followed by the filing of briefs on the question of certification, the parties entered into the Agreement on October 31, 2003. On January 27, 2004, the undersigned granted preliminary approval of the Agreement, and a Notice of Proposed Settlement (Notice), along with the Agreement itself, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the Class as well as all identified Asian/Pacific Islander employees who fell under the Class definition but did not have pending individual complaints of discrimination. The Notice was also posted on the Agency's web site and in appropriate Agency bulletins. The Notice provided that Class Members would have 30 days in which to file objections, if any, with the undersigned. Ten objections were ultimately received by the undersigned.[1]

Temporal Scope of the Agreement

By motion dated August 26, 2004, the parties requested that the temporal scope of the class be limited to the period from February 1994 to September 2, 2003. As noted at the outset, the class was originally defined as "February 1994 to the present." I am cognizant, however, that a settlement agreement of this nature is not final at the time it is signed and that, inevitably, a period of time elapses between that time and the time the agreement it is ultimately approved, if at all. The parties have represented that, at the time they were negotiating the Agreement, they arrived at certain

---

[1] Petitions were received from the following Class Members: Jamshyd Rasekh; Jess Rajan; Kunapuli Madhusudhan; Muhammad Chaudhry; Emiko Purdy; Fazal Rahman; Mon Yee; Robert Tse; Clemen Gehrlan; and Abdul Sadiq. Their objections will not be addressed individually; however, to the extent the undersigned believes that a relevant objection has been made, that question will be addressed. In particular, relevant points that were raised in the objections were that: the Class Agents were getting too much relief and/or that Class Members in the lower two tiers of the Agreement were not getting enough; the Agreement does not explicitly identify the relief being received by certain Class Agents; and, it is unclear from the Agreement how certain relief is to be allocated.

amounts of relief based on the circumstances that existed at the time in terms of how many pending complaints were subsumed. On this point, the parties have provided what they believe to be a fairly exhaustive list of individuals who had such complaints at the time the Agreement was being negotiated. Because the Agreement was reached using that data, and because the parties have represented that they did not consider complaints filed after September 2, 2003, in reaching the Agreement, I find that it is appropriate to limit the temporal scope of the class to the period from 1994 to September 2, 2003. Accordingly, I find that the Agreement does not encompass individual complaints that were filed after September 2, 2003, and which otherwise would be subsumed in the class. Therefore, such complaints should either continue to be processed as individual complaints or, if they have been placed in abeyance because of the class complaint, should be reinstated for processing.

### Relief Provided by the Agreement

The Agreement can be characterized as providing two types of relief, the first being injunctive relief that will be in effect for a period of three years. That relief includes, initially, the creation of a Development Opportunity Placement Program (DOPP). The Agreement provides that a pilot DOPP will be created within 180 days of the effective date of the Agreement within certain Agency subagencies that have been identified by the Class Agents as having problems with respect to promotions and details. These subagencies include the Food Safety and Inspection Service (FSIS), the Agricultural Research Service (ARS), the Farm Service Agency (FSA), the Office of Civil Rights (OCR), the Natural Resources Conservation Service (NRCS), and the Animal and Plant Health Inspection Service (APHIS).

The purpose of the DOPP is to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations. The DOPP, which will be subject to funding availability, will require subagencies to make available no fewer than two opportunities annually during the three years the Agreement is in effect. The details, temporary promotions, or developmental assignments will be for a minimum of 31 days, will cover all pay grade levels, and will be posted on a web site. The DOPP will be open to all employees, although

the Agreement provides that Class Agents who are eligible and qualified to participate in it will receive priority consideration.

The second aspect of the injunctive relief is the creation of a Graduate Scholarship Program to provide funding for graduate school. Within 180 days of the effective date of the Agreement, the Agency will create such a program for Masters and PhD. students within FSIS, FSA, NRCS, the Forest Service (FS), the Agricultural Marketing Service (AMS), the Office of the Chief Financial Officer (OCFO), the Grain and Packers and Stockyards Administration (GPSA), and the National Agricultural Statistics Service (NASS). The Agreement provides that, between these offices, there will be a total of 36 scholarships, and the Agency Liaison, with the assistance of the affected subagencies, will establish requirements for eligibility, eligible fields of study, selection criteria, and all other details of the program.

The third aspect of injunctive relief is an Agency-wide Job Fair that will be held at four regional locations for employment in job categories where the Agency's Asian/Pacific Islander population is statistically underrepresented. The Agreement provides that the Job Fair will be sponsored by FS, NRCS, AMS, FSA, OCFO, GPSA, NASS, and the Rural Housing Service.

Fourth, the Agreement provides for certain policy development, including the review, update, and issuance of an Agency-wide Affirmative Employment Plan (AEP) to ensure that all appropriate issues related to Class Members are addressed in the plan. Additionally, the Agreement provides that the Department's Assistant Secretary for Civil Rights or designee and Agency Liaison will work with Agency subagencies to ensure that they have current and comprehensive AEPs.

Finally, the Agreement provides that every employee will have an up-to-date individual development plan (IDP). Pursuant to the Agreement, at the request of a Class Member the subagency in which s/he is employed is required to ensure that his/her IDP is up-to-date and that it has identified appropriate training specifically tailored to enhance that individual's job performance.

For purposes of individual relief, the class is divided into four tiers, *i.e.*, Tier One, Tier Two, Tier Three, and Tier Four. Tier One comprises six Class Agents, including Dr. Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The Agreement provides that these individuals will enter into individual settlement agreements with the Agency. Under those agreements, Dr. Basu will receive: a retroactive promotion effective September 1998

4

into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay in the amount of $98,219; restoration of 564 hours of sick leave; $200,000 in compensatory damages; the expungement of a reprimand and information related to misconduct investigations; and reasonable attorney's fees. Dr. Dey will receive: a retroactive promotion effective September 1998 into the position of Veterinary Medical Officer (National Poultry Program Leader), Office of Public of Health and Science, GS-14; back pay in the amount of $46,000; priority placement into the first GS-15 position for which he qualifies; restoration of 476 hours of sick leave; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Yee will receive: a retroactive promotion effective September 1998 into the position of Invasive Species Program Manager, U.S. Forest Program Pacific Southwest Region, in Vallejo, California; back pay estimated to be $68,154; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Murthy will receive: $40,000 in compensatory damages; advancement to the GS-14, Step 10 level; and reassignment into the position of Veterinary Medical Officer, GS-0701-14, Office of Program Policy and Development, New Technology Staff; Office of Personnel Management (OPM) Leadership training; and reasonable attorney's fees. Dr. Lakhani will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees. Finally, Dr. Saini will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees.[2]

Tier Two is comprised of the remaining 22 Class Agents, who will share $372,500, along with two former Class Agents who are not included in the Agreement because they previously signed settlement agreements resolving their individual complaints. The parties have represented that the distribution of this sum will be at the discretion of Dr. Basu, with the assistance of his representative, and will involve a system whereby each individual is required to file a petition setting forth his/her entitlement to a specific amount. The Agreement provides that each of the five Tier Two Class Members with pending administrative complaints will receive attorney's fees not to exceed $25,000. Finally, the Agreement provides that the two Tier Two Class Agents with Federal district complaints will receive "[a]ll attorney's fees."

---

[2]The Agreement provides that Tier One Class Members will receive, altogether, $350,000 in reasonable attorney's fees.

Tier Three is comprised of individuals with pending administrative complaints and two individuals with complaints in Federal district court. With respect to the former, these individuals will be afforded the option of either accepting a lump sum payment of $5,000 or an expedited hearing on their individual complaints along with an entitlement to the injunctive relief. The two individuals with pending district court cases will receive a lump sum payment of $7,500 and attorney's fees.

Tier Four is comprised of those Class Members who have not filed individual complaints of discrimination. The Agreement provides that these individuals will be entitled to the injunctive relief.

## Class Member Consideration

The manner in which the Agreement is structured affords the Class Members in Tiers One through Three two options, i.e., either accept the offered individual relief or not accept that relief and merely be entitled to injunctive relief. Regardless of which option is exercised, those portions of the Class Members' individual administrative complaints that are subsumed within the class are deemed to be resolved.[3] Furthermore, Class Members, under either option, would still be entitled to pursue those portions of their complaints that are not subsumed.

For those Class Members with cases pending in Federal court, no portion of their complaints can be deemed to be subsumed. In so finding, I note that the applicable regulations, along with EEOC Management Directive 110 (MD-110), only contemplate that individual complaints within

---

[3]The undersigned interprets the term "subsumed" to be controlled by the claim, not the basis. To wit, what is subsumed by the class complaint are any issues involving promotions and/or non-selections, regardless if they were brought under bases other than race or national origin. Therefore, a Class Member whose individual complaint also alleges that a non-promotion was based on another protected category other than race or national origin, e.g., gender, would not be permitted to pursue the non-promotion under that basis(es). I am cognizant that the Agreement, in the section which discusses Class Member consideration, contemplates that an individual complaint is either subsumed or not subsumed and does not address the contingency that one complaint could contain both subsumed and non-subsumed claims. I find that the intent of this provision, however worded, is that Class Members can still pursue individual claims that are not subsumed. Indeed, I find that the parties, even had they wanted to, do not possess the authority to require Class Members to withdraw complaints/claims that are not subsumed within the Class.

6

the administrative process are subsumed.[4]   Therefore, if a Class Member with a case(s) in Federal court does not opt for relief under the Agreement, his/her case(s) is not otherwise affected by the Agreement. It is apparent that there are five individuals who have such complaints, *i.e.*, Dr. Mon Yee, Dr. Ronald Shinsato, Dr. Jess Rajan, Dr. Joyce Mayekawa, and Dr. Jamshyd Rasekh. According to the Agency, with respect to both Dr. Shinsato and Dr. Rajan, the parties in those cases were granted stays by the district court pending a ruling on the fairness of the Agreement. Similarly, the Agency represents that Dr. Mayekawa's case was dismissed by the district court without prejudice pending final resolution of this class action.

With respect to Dr. Rasekh, the Agency cites a letter dated February 25, 2004, in which he rejected the offer of all attorney's fees and the other Tier Two relief. Although Dr. Rasekh subsequently informed the parties in July 2004 that he was withdrawing his objection and wished to participate in the Agreement, the parties assert that his initial rejection extinguished the offer. Dr. Rasekh's primary assertion in response is that his actions cannot be construed as a rejection of the applicable terms in the Agreement insofar as the Agreement was conditional in nature and had yet to be approved by the undersigned. In considering this question, I find that the parties' position is unpersuasive. Initially, although the parties have argued that Dr. Rasekh proceeded with his district court claims at his own peril, it is not apparent what option he had. On this point, although the parties have represented that stays were obtained with regard to Dr. Shinsato and Dr. Rajan, there is no indication that the Agency sought to achieve a stay in Dr. Rasekh's case and/or broached that possibility with Dr. Rasekh. More important, I find persuasive Dr. Rasekh's argument that he could not have rejected the offer made in the Agreement because the Agreement was, in fact, not final. In this regard, I find that, until an administrative judge approves a class settlement, none of the provisions have any legal effect.[5]  Therefore, there was never any actual offer for Dr. Rasekh to

---

[4]The term "subsumed," for purposes of this decision, means complaints/claims at the administrative level that fall within the definition of the class. Complaints/claims in Federal court may fall within the definition of the class, but they are not subsumed.

[5]Additionally, from a practical standpoint, because the Agreement states that Dr. Rasekh is entitled to certain relief, it is not apparent how the parties could simply ignore that language once the Agreement is approved without being deemed to have breached the Agreement. The undersigned, even if he agreed with

(continued...)

7

reject. Accordingly, I find that Dr. Rasekh is entitled to the Tier Two relief offered in the Agreement.

In Dr. Yee's case, it is apparent that, at the time the Agreement was signed, his cases were pending at the administrative level. Thereafter, however, Dr. Yee took his complaints into Federal district court. The Agency's position is that, although the circumstances which led the parties to offer Dr. Yee substantial relief have changed, it should not be required to provide him with that relief while allowing him to maintain his district court complaints. In reviewing Dr. Yee's objection, it is not apparent that he is asserting he should be entitled to the offered individual relief for only withdrawing those complaints/claims that remain at the administrative level. Furthermore, even if he were arguing that, the Agreement does not state that the offered relief is only in exchange for the withdrawal of subsumed administrative claims. In so finding, I note that the portion of the Agreement that applies to Tier One refers to "individual claims of employment discrimination," and does not draw a distinction between administrative and Federal district court complaints. Agreement at 14. Moreover, in the portion of the Agreement that discusses what needs to be withdrawn for a Class Agent or Class Member to receive individual relief, it refers to all complaints, administrative or Federal, falling within the definition of the Class and pending at the "Effective Date of this Agreement," i.e., the date on which it is finally approved. Agreement at 6.

Dr. Yee's objection states, in relevant part, that he "is pursuing claims in the Los Angeles federal district court, several of which concern promotions. The question then becomes what process is due before the government can deprive him of his property interest in his claims, which he would much rather pursue on his own . . . ." I find that this objection is premised on a misunderstanding by Dr. Yee of what his rights are under the Agreement. As discussed, in the event Dr. Yee does not opt for any individual relief, he can still pursue all of his Federal district court complaints, including those complaints/claims involving promotions and/or non-selections. Furthermore, if Dr. Yee

---

[5](...continued)

the parties' position, does not have the authority to invalidate provisions of the Agreement. In this regard, an administrative judge may not modify the proposed agreement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

accepts the individual relief, he would only be required, under the terms of the Agreement, to withdraw those claims deemed to fall within the definition of the class.

Tier One Relief

At the time the Notice was issued, the parties requested that, for privacy reasons, the four exhibits referenced in the Agreement not be disseminated. Exhibit One identifies the six Class Agents in Tier One and contains the letters sent to each of those individuals regarding the relief proposed for them. Exhibit Two identifies the 22 remaining Class Agents as well as the former Class Agents not included in the Agreement, along with a sample of the letter of proposed relief that was sent to the 22 Class Agents. Exhibit Three identifies the 31 individuals who were deemed eligible to receive Tier Three relief, a sample letter of proposed relief that was sent to these individuals, and a 10-page document listing various Agency employees who had filed EEO complaints. Finally, Exhibit Four contains a sample copy of the letter sent to Tier Four Class Members, along with an extensive list of Asian individuals employed by the Agency.

Dr. Yee objects to the decision not to disseminate the four exhibits, arguing that "[r]eferences to undisclosed terms and attachments is wholly inadequate to allow a class member to evaluate the resolution." In considering this assertion, I am not persuaded that the decision to not include the documents set forth in Exhibits Two, Three, and Four, was inappropriate. In so finding, I note that, because the relief being provided to individuals in Tiers Two through Four is specified in both the Agreement and the Notice, it is not apparent how having these exhibits would have helped an individual "evaluate the resolution." I do agree, however, that the information contained in Exhibit One should have been made available to the Class Members. In so finding, I note that the regulations at 29 C.F.R. § 1614.204(g)(4) state that the notice of relief issued to the Class Members "shall state the relief, if any, to be granted by the agency: . . ." In this case, both the Notice and the Agreement state that the six Class Agents in Tier One would receive relief pursuant to "individual settlement agreements." Having considered this provision, I find that it is too vague to satisfy the aforementioned requirement. Furthermore, I find the term "individual settlement agreement" to be a misnomer. A settlement agreement is a contract which two parties enter into freely. In this case, I find that the individual agreements cannot be deemed contracts insofar as most, if not all, of the consideration being provided by the six Class Agents, i.e., the withdrawal of their subsumed claims,

is the consideration that was already being provided by virtue of the Agreement itself. In other words, once the Agreement is approved, the six Class Agents, whether or not they enter into the "individual settlement agreements," are precluded from pursuing those administrative claims that are subsumed within the class complaint. As such, I find that the "individual settlement agreements" are merely a mechanism through which the six Class Agents in Tier One are to receive the relief provided by the Agreement itself.[6]

Despite arriving at this conclusion, I have determined that, although the Notice should have specifically identified the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. What is clearly implicit in the Agreement is that the Class Agents in Tier One are to receive more relief than those in the lower three tiers.[7] As such, any Class Member in the lower three tiers who believed s/he was not being offered adequate relief and/or did not believe it was equitable to provide the Class Agents in Tier One with more relief could have filed a petition to that effect.[8] More important, every Class Member was aware of the relief that s/he is entitled to under the Agreement. Therefore, if a Class Member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief.

Fairness of the Agreement

The standard for EEOC approval of class case settlements is whether the Administrative Judge finds that the agreement is "fair, adequate and reasonable to the class as a whole." 29 C.F.R.

---

[6]Even if I were to conclude that these constituted valid settlement agreements, there is still no legitimate privacy concern as the six Tier One Class Agents, in negotiating for the relief they are to receive, bound the other Class Members.

[7]In particular, both the Agreement and the Notice state that the Tier One Class Agents would be receiving $350,000 in attorney's fees, which is considerably more per Class Agent than the $25,000 being received by the Tier Two Class Agents with pending administrative complaints.

[8]I note that at least two Class Members filed petitions objecting to the fact that the Class Agents in Tier One were getting too much relief. Furthermore, I note that Dr. Yee is the only Class Member who objected to the fact that such relief was not specified. Dr. Yee is not only a Tier One Class Agent himself, but, had he wished to know the terms of the relief being offered to the other Tier One Class Agents, he could have sought that information from class counsel. Finally, the individual relief has been specified in this decision, and any petitioner who believes it is unfair has the right to raise such an argument in an appeal.

10

§ 1614.204(g)(4)(2002). If the Administrative Judge finds that the resolution of the complaint is "fair, adequate and reasonable to the class as a whole, the resolution shall bind all members of the class." *Id.; see also Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999). The Administrative Judge may not modify the proposed settlement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

Neither EEOC regulations nor MD-110 identify the considerations for determining whether a class settlement is fair, adequate and reasonable. *See* 29 C.F.R. Part 1614; EEOC EEO Management Directive 110 ("MD-110") (November 9, 1999), Ch. 8. Courts, however, have stressed that the "test is whether the settlement is adequate and reasonable and not whether a better settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931 at *19 (D.D.C. Mar. 20, 2000). "Voluntary compromises of Title VII actions enjoy a presumption of validity, and should therefore be approved 'unless [they] contain provisions that are unreasonable, unlawful, or against public policy.'" *Kirkland v. New York State Dep't of Correctional Services*, 711 F.2d 1117, 1128-29 (2d Cir. 1983), *cert. denied*, 465 U.S. 1005 (1984). Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. *Osher v. SCA Realty, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996).

The Commission has held that the administrative judge's primary task is to evaluate the terms of the settlement in relation to the strength of the Complainants' case. *Modlin v. Social Security Administration*, EEOC Appeal No. 01A24054 (February 20, 2003) (*citing Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998). At the time the present case settled, the class was only conditionally certified and the parties had filed briefs on the question of whether the class should be fully certified. As such, there was a risk that the class would be decertified and never actually proceed to a hearing on the merits. To obtain relief comparable to that provided under the Agreement, the Class would, in addition to achieving full certification, had to have proved Agency discrimination over the course of several years. Additionally, in the event a finding of discrimination were made, each Class Member would have had to establish his/her individual entitlement to relief. Finally, I note that the injunctive relief provided by the Agreement would not have been available as a remedy in the event

11

the Class had prevailed after a hearing.[9] For these reasons, I find that the relief being provided, which includes potentially as much as $1,700,000 in individual relief and attorney's fees, is fair and adequate to the Class as a whole.

With respect to the individual awards of relief, the six Class Agents in Tier One, along with those identified in Tier Two, are receiving more individual relief than the other Class Members as well as priority consideration under the DOPP. As the parties correctly note in their motion for approval of the Agreement, the Commission has held that it is fair to provide greater relief to the Class Agents as they are the individuals who have spearheaded the class complaint of discrimination. On this point, the parties assert that the Class Agents were not only actively involved in the litigation of the complaint, but they have "appeared at certain meetings on behalf of the Class with high-level officials in USDA . . . ." The Class Members identified in Tier Three, despite having individual complaints, were not actively involved in the class action. If these individuals are not satisfied with the lump sum offer of $5,000, they have the option of an expedited hearing on their subsumed claims.[10] Finally, although the Class Members who fall under Tier Four are eligible only for injunctive relief, I note they are giving up nothing as a result of the Agreement.

## DECISION

For the foregoing reasons, I conclude that the Settlement Agreement is fair, adequate and reasonable to the Class as a whole and find no basis for vacating the Settlement Agreement. Accordingly, it is my decision to grant final approval to the Settlement Agreement. Pursuant to 29 C.F.R. § 1614.204(g)(4), the resolution shall bind all members of the class.

It is so **ORDERED.**

Date: December 7, 2004

Andrew Culbertson
Administrative Judge

---

[9]Specifically, injunctive relief of this nature is not available under 29 C.F.R. Part 1614.

[10]MD-110 provides that class members may not "opt out" of the defined class. Although allowing certain Class Members the opportunity to proceed with their individual complaints could be viewed as allowing them to "opt out," they are technically not opting out insofar as it is the Agreement itself that provides for the expedited hearing.

12

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to 29 C.F.R. §1614.204(g)(4), finding that a resolution is fair, adequate, and reasonable. This regulation provides that the Administrative Judge's decision approving resolution of a class complaint binds all members of the class.

The Administrative Judge's decision approving a class resolution must inform all members who filed petitions objecting to the proposed settlement ("petitioners") of the right to appeal the decision to the Equal Employment Opportunity Commission, Office of Federal Operations. The decision must include a copy of EEOC Form 573, Notice of Appeal/Petition. See MD-110 at 8-10, 9-3.

Neither the regulations nor MD-110 require the Agency to issue a final order following an Administrative Judge's decision to approve a settlement. **Accordingly, this decision directly triggers petitioner's rights to appeal the approval of the Settlement.** Such appeals must be filed within thirty (30) days of receipt of this decision. Please attach a copy of this decision and a competed Form 573 (Notice of Appeal) with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the parties at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the parties.

### WHERE TO FILE AN APPEAL:

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

#### BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

#### BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

13

<u>BY FACSIMILE:</u>

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

14



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0706

Arun C. Basu, *et al.*,               )
    Complainants,               )        EEOC No. 100-A1-7863X
                   )
      v.               )
                   )
Ann M. Veneman,               )        Agency No.  000190
Secretary,               )
Department of Agriculture,               )
    Agency.               )        Date: December 7, 2004

### ORDER

For the reasons set forth in the enclosed Decision dated December 7, 2004, the Settlement Agreement dated October 31, 2003, is APPROVED. A copy of the Decision must be sent to the individuals who filed petitions objecting to the Settlement Agreement. A Notice to the petitioners explaining their appeal rights is attached to the Decision. This office is also enclosing a copy of both the hearing record and the reports of investigation for the Agency.

It is so ORDERED.

For the Commission:

_____
Andrew Culbertson
Administrative Judge

enclosure

cc (with enclosure):

        Mr. Larry W. Newell
        Chief, Employment Complaints Division
        Office of Civil Rights
        United States Department of Agriculture
        1400 Independence Ave., SW
        Washington, D.C.  20250-9440

cc (without enclosure)

        Mr. James P. Hood, P.C.
        By facsimile at (202) 371-2535

        Mr. Steven Brammer, Esq.
        By facsimile at (202) 720-4089



| | | | |
|---|---|---|---|
| United States | Office of the | Washington, | |
| Department of | General | D.C. | |
| Agriculture | Counsel | 20250-1400 | |

May 25, 2005

Dr. Krishna Murthy
908 Peacock Station Rd.
McLean, VA 22102

       **Re:**   <u>**Arun Basu v. USDA**</u> **Proposed Class Action Settlement**
                **EEOC No. 01A10660, Agency No. 000190**

Dear Dr. Murthy:

In February of 2004, you were hereby notified of the proposed Settlement Agreement signed by the United States Department of Agriculture ("USDA") and Lead Class Agent Arun Basu. The Administrative Judge of the U.S. Equal Employment Opportunity Commission ("EEOC") has approved the Settlement Agreement, finding it fair, adequate, and reasonable to the class as a whole. Further, the full Commission recently ruled on four purported appeals of the Administrative Judge's fairness determination, affirming the Administrative Judge's determination. As such, relief is now being offered.

You were identified as falling within Tier One of the proposed Settlement Agreement. As a result, you will be entitled to injunctive relief as described in the Settlement Agreement, and will receive the following individual relief for withdrawal of all pending claims of employment discrimination:

a.     Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all pecuniary and non-pecuniary damages;

b.     Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical Officer, Office of Program and Policy Development, New Technology Staff;

c.     Office of Personnel Management Leadership Training to be determined within 60 days of a signed settlement agreement; and

d.     Reasonable attorneys' fees to be paid according to Section VII E of the proposed settlement Agreement.

*May 25, 2005*
*Page 2*

Other details regarding the Settlement Agreement, including injunctive relief and information on how to contact Class Counsel or the Administrative Judge, were attached in the Notice required by the EEOC under 29 C.F.R. § 1614.204(e).

A Settlement Agreement detailing this individual relief is attached. Please execute this Agreement, with your attorney, and have it returned to the Office of the General Counsel at the following address, by hand-delivery or by FedEx, by June 1, 2005:

> Steven C. Brammer
> Office of the General Counsel
> Civil Rights Litigation Division
> U.S. Department of Agriculture
> 1400 Independence Ave., SW; Room 3312-S
> Washington, DC 20250-1400

Please feel free to contact James P. Hood if you have any question regarding this matter.

Very truly yours,

Arlean Leland
Associate General Counsel
Civil Rights Division

cc:     James P. Hood, Esq.

## SETTLEMENT AGREEMENT

### Arun Basu v. United States Department of Agriculture
EEOC No. 01A10660, Agency Case No. 000190

This Settlement Agreement (hereinafter "the Agreement"), made by and between **Dr. Krishna Murthy** (hereinafter "Complainant") and the United States Department of Agriculture (hereinafter "the Agency" or "the Department"), constitutes a full, complete and voluntary final release and settlement of any and all employment discrimination claims or issues raised by Complainant in Complaint No. 01A10660, Agency Case No. 000190 filed with the United States Equal Employment Opportunity Commission ("EEOC" or "the Commission"), and any other grievances, appeals, civil actions, claims or complaints filed with the EEOC, Office of Special Counsel, Federal Labor Relations Authority, U.S. Merit Systems Protection Board, Office of Personnel Management, Government Accountability Office or any other Federal agency, administrative tribunal or court concerning matters arising out of or regarding Complainant's employment with the Agency through the date that the last person listed below signs and dates the Agreement (hereinafter "the effective date of the Agreement").

The parties agree that resolution of this matter is in their mutual best interests and have agreed to set forth the terms of the Agreement in writing. The parties further agree that the Agreement shall not constitute an admission of liability or fault of any kind on the part of the Agency, its past or present agents, servants, employees, representatives or officers, and is entered into by both parties for the sole purpose of compromising disputed claims and avoiding the expenses and risks of further litigation. The Agreement is authorized under 29 C.F.R. Part 1614 and Management Directive 110 (hereinafter "MD-110") of the EEOC.

THE PARTIES HEREBY STIPULATE that the following Agreement has been reached, for valuable consideration, as set forth below.

### Section One

The Agency agrees:

1.   To promote Complainant to the GS-14, Step 10, grade level;

2.   To reassign Complainant to a GS-0701-14 position of Veterinary Medical Officer, Office of Program and Policy Development, New Technology Staff;

3.   To pay Complainant a lump sum of Forty Thousand Dollars ($40,000) in full settlement of all monetary claims in this matter. This sum is inclusive of any pecuniary, non-pecuniary, and compensatory damages arising out of, or regarding complainant's employment with the Agency through the effective date of this Agreement. Documentation required to effect implementation of this payment will be sent to the

Initials _____/_____/_____/_____/_____

National Finance Center within (45) calendar days from the effective date of the Agreement. The Agency makes no representations regarding any federal, state, or local tax liability which may be incurred by Complainant as a result of this payment; and

4.    To provide Complainant with Office of Personnel Management ("OPM") Leadership Training to be determined within sixty (60) days of the effective date of this Agreement.

## Section Two

Complainant agrees:

1.    That the Agreement constitutes his withdrawal, with prejudice, of any and all pending EEO complaints (both formal and informal), dated prior to the effective date of the Agreement and any other grievances, appeals, civil actions, claims or complaints with the Office of Special Counsel, Federal Labor Relations Authority, Merit Systems Protection Board, Office of Personnel Management, Government Accountability Office or any other federal agency, administrative court or tribunal concerning matters arising out of or regarding his employment with the Department prior to the effective date of the Agreement. Complainant further agrees not to raise or file any new complaints with any of the entities listed in this Paragraph regarding his employment with the Department prior to the effective date of the Agreement;

2.    To release, waive and withdraw any and all complaints, grievances, claims, allegations, appeals or civil actions against the Department, its agents, employees and officers in their individual or official capacities for any concerns arising out of his employment with the Department prior to the effective date of this Agreement;

3.    To specifically waive any and all further claims for attorney's fees, except as provided above in Section VII.E of the approved Settlement Agreement in Basu, et al. v. USDA, EEOC No. 01A10660, Agency No. 000190, and to waive any claim for any other damages, including compensatory damages, arising out of the matters giving rise to Complainant's complaints of discrimination (both formal and informal), in any forum, filed on or before the effective date of the Agreement;

4.    Not to reveal or allow anyone else to reveal the terms of the Agreement to any person, agency, institution, company or other entity unless the Department agrees in writing that he may do so, except that the Complainant may make such disclosures as are required by law, including disclosures to taxing agencies, and may disclose the terms of the Agreement to his spouse and his attorney, to his accountant or tax advisor, provided that he shall inform said individuals that the terms are strictly confidential and cannot be revealed to anyone else (this includes but is not limited to members of the judiciary, executive or legislative branches of government); and

Initials ____/____/____/____

5.  That he and his counsel and/or representative(s) will not provide any discovery, affidavits, deposition transcripts, or any other documents related to Agency No. 0000190 to any entity not a party to these proceedings unless ordered to do so by a competent legal authority.

## Section Three

The Parties agree:

1.  To respect the privacy of all individuals in the matter. The fact that the case was voluntarily resolved in a manner acceptable to both sides may be communicated to others. Explicit terms of the Agreement cannot be discussed with, disclosed or released to anyone who does not need the information to implement the Agreement, without the express permission of the other party. Permission to discuss or disclose the terms of the Agreement must be requested and received through a written instrument;

2.  To cooperate in good faith to complete implementation of the Agreement and to abide by the terms of the Agreement;

3.  To declare all of the Complainant's EEO complaints (both formal and informal) for the period prior to the effective date of the Agreement resolved through the Agreement. There are no other agreements between the parties, either express or implied, oral or written.

4.  That they are entering into the Agreement voluntarily, without coercion or duress, and they fully understand the terms of the Agreement.

In acceptance of, and agreement upon, the foregoing terms and conditions, the parties hereby affix their signatures.


_____          _____
Dr. Krishna Murthy                   Date
Complainant


_____          _____
Mr. James P. Hood, Esq.              Date
Attorney for the Complainant


Initials ____/____/____/____/____

_____

James Bradley
U.S. Department of Agriculture
Deputy Administrator
Agricultural Research Service

Date
_____

_____

Steven Brammer, Esq.
Agency Representative

Date
_____

 United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

February 1, 2006

Dr. Kris Murthy
7715 Lear Road
McLean, Virginia 22102

Re: Meeting on January 5, 2006, <u>Basu, et. al. v. Department of Agriculture.</u>

Dear Dr. Murthy:

On January 5, 2006, you met with Inga Bumbary-Langston, Assistant General Counsel, Civil Rights Litigation Division, Office of the General Counsel ("OGC"), and Steven Brammer and Neha Hewitt, OGC, Civil Rights Litigation Division, as well as with Class Counsel, Mr. James Hood, to discuss concerns you have with the implementation of your individual relief provided under the <u>Basu, et. al. v. Department of Agriculture</u>, Settlement Agreement (herein after "<u>Basu</u> Settlement Agreement"). At the meeting, all attendees agreed that you were not attempting to raise a claim of non-compliance under the terms of the Settlement Agreement, but were raising concerns in an attempt to reach resolution.

The following is a summary of the concerns you expressed at this meeting. To the extent that the Agency can answer some of your concerns, we have done so. Responses to other concerns you have will be forthcoming after consultation with Class Counsel.

1. <u>Equal Treatment in Tier One</u> - In the <u>Basu</u> Settlement Agreement, the Tier One group consisted of six class members. However, you stated that of the six class members in Tier One, only three of those members received promotions. Specifically, you stated that you did not receive a promotion, and you believe that this is not equal treatment as provided under the <u>Basu</u> Settlement Agreement. You also believe that all Tier One members should be treated equally under the Settlement Agreement.

The <u>Basu</u> Settlement Agreement never provided for the same relief for all members of Tier One. A letter dated February 17, 2004, was provided to you by the Agency setting forth the proposed relief to which you would be entitled. The letter also included a copy of the executed <u>Basu</u> Settlement Agreement and Notice of Settlement. A copy of this letter, with its attachments, is provided for your reference. The Notice included specific provisions for challenging the fairness of relief provided by the <u>Basu</u> Settlement Agreement. It is the Agency's understanding that you did not challenge the terms of the <u>Basu</u> Settlement Agreement to the Administrative Judge. After considering all challenges to the <u>Basu</u> Settlement Agreement, the Administrative Judge approved the agreement of the parties. The <u>Basu</u> Settlement Agreement provides for all Tier One members to receive individual relief as negotiated by these Class Members, with individual settlement agreements serving as the basis for implementing this relief.

Relief to which you were entitled included a payment of $40,000.00, advancement to the GS-14, Step 10 level, reassignment into the position of Veterinary Medical Officer, GS-0701-14, Office of Program Policy and Development, New Technology Staff, and Office of Personnel Management ("OPM") leadership training. This relief has been made available to you. The parties stand by the fairness of the terms of the Basu Settlement Agreement. We have attached another copy of your individual settlement agreement for execution by you and Class Counsel. If you have additional concerns about how your individual interests were negotiated by the Class Representative, please contact Mr. James Hood about this issue.

2.  OPM Training - Pursuant to the terms of the Basu Settlement Agreement, and as outlined in your individual settlement agreement you are to receive OPM leadership training. You believe you are entitled to Senior Executive Service ("SES") training as part of this training. OGC believes that a reasonable amount of OPM leadership training is to be made available to you, pursuant to the agreement of the parties. OGC's understanding is that the Agency had appropriate personnel meet with you to determine the scope of appropriate OPM leadership training. OPM training was made available to you. The Agency is in compliance with the Agreement by identifying and offering you OPM training. The Agency has informed OGC that you have not yet selected any course previously identified. You expressed concern that the Agency was limiting your choice to one (1) course. Please be advised that the selection of one course does not preclude your working with the Agency to identify other courses if the Agency agrees that such courses are necessary based upon its assessment with you of your need for leadership training. If you have additional concerns about how your individual interests were negotiated by the Class Representative, please contact Mr. James Hood about this issue.

3.  DOPP Program – You raised the issue of implementation of DOPP, under the Basu Settlement Agreement. To the extent that you allege that DOPP would allow you, or any individual, to receive a permanent promotion to the GS-15 level, you are in error. As stated in the Basu Settlement Agreement, DOPP is a pilot developmental program established for the purpose of providing opportunities for all eligible and qualified employees to serve on details, temporary promotions and developmental assignments. As a Class Agent, if you are qualified and elibile to participate in the program, and apply pursuant to guidelines, you will receive priority consideration for those details, temporary promotions, or developmental assignments for which you are eligible and qualified, for a certain period of time. However, DOPP does not guarantee nor promise a promotion to Class Agents, and is a program available to all U.S. Department of Agriculture ("USDA") employees. USDA is within the appropriate time frames in the creation of DOPP and its guidelines, and we will provide Class Counsel with additional information on implementation of this injunctive relief.

4.  Non-Selection  You stated that you believe that you were inappropriately not selected for the Department Liaison position because you are a class member in Tier One of the Settlement Agreement. To the extent that you have filed a formal administrative complaint regarding this non-selection, OGC believes it would be inappropriate to comment on this specific allegation. However, after consultation with Class Counsel, we will provide additional information regarding the scope of selection of the Departmental Liaison position.

5. <u>Notice of the Basu Settlement Agreement</u>  You stated that you did not receive notice about the <u>Basu</u> Settlement Agreement with a right to object to its terms. However, as stated above, the Agency provided you with a letter detailing your proposed individual relief, a copy of the Settlement Agreement, and a Notice providing you the right to object to the terms of the <u>Basu</u> Settlement Agreement with the Administrative Judge. Please see the enclosed document as verification of the Agency's prior notice to you.

Please remember that you must consult the Class Representative, James Hood to assert any concerns you may still have concerning the Agency's compliance with this Settlement Agreement.

Thank you for bringing these concerns to OGC and Class Counsel in an informal meeting. We hope that you will be able to continue to work with us and Class Counsel with regard to your concerns, and will be in touch with the additional information referenced above.

Very truly yours,


_____

Steven C. Brammer


Enclosure

cc:    James Hood

# EXHIBIT    18-Part 3

Appeal File for CRDS-CF-2006-00219 (Plaintiff's EEOC appeal re fairness of <u>Basu</u> Settlement Agreement)

 United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

March 3, 2006

Dr. Krishna Murthy
7715 Lear Road
McLean, Virginia 22102

**VIA ELECTRONIC MAIL**

Re: Response to Inquiries regarding <u>Basu, et. al. v. Department of Agriculture.</u>

Dear Dr. Murthy:

On January 5, 2006, you met with Inga Bumbary-Langston, Assistant General Counsel, Civil Rights Litigation Division, Office of the General Counsel ("OGC"), and Neha Hewitt and me, OGC, Civil Rights Litigation Division, as well as with Class Counsel, Mr. James Hood, to discuss concerns you have with the implementation of your individual relief provided under the <u>Basu, et. al. v. Department of Agriculture.</u> Settlement Agreement (herein after "<u>Basu</u> Settlement Agreement"). At the meeting, all attendees agreed that you were not attempting to raise a claim of non-compliance under the terms of the Settlement Agreement, but were raising concerns in an attempt to reach resolution.

On February 1, 2006, we provided a letter summarizing concerns you expressed at the January 5, 2006, meeting. This February 1, 2006, letter answered your specific questions to the extent possible. We informed you that responses to other concerns you have will be forthcoming after consultation with Class Counsel. On February 7, 2006, you followed up with a request written proof that you received a copy of your proposed settlement agreement dated February 17, 2004. You also stated that my responses to some of the issues you raised in our meeting of January 5, 2006, were evasive and that there were still no answers

Below is OGC's response to your remaining concerns. <u>It is imperative that you recognize, as this office has told you numerous times, that OGC does not represent you in this matter.</u> We have gone above and beyond our responsibilities in providing information and working with you to explain our interpretations of the Agreement. While we will gladly provide relevant information regarding implementation of the Settlement Agreement, we urge you to address any and all matters of dissatisfaction with Class Counsel, who represents the interests of the Class.

Dr. Krishna Murthy
March 3, 2006
Page 2


1.    Request for Registered Mail Receipt of Letter Informing You of Proposed Settlement:
Our February 1, 2006 correspondence to you provided a letter dated February 17, 2004, setting
forth the proposed relief to which you would be entitled under the Basu Settlement Agreement.
The letter also included a copy of the executed Basu Settlement Agreement and Notice of
Settlement. You have asked for documentation registering your receipt of this information. If I
did not make this clear earlier, I apologize. The Administrative Judge for the U.S. Equal
Employment Opportunity Commission ("EEOC") approved the form, content, and method of
distribution of notices going on regarding the Basu Settlement Agreement. Counsel for the class
and the Agency representative proposed distribution via regular mail. Such notices were sent out
in that manner. Our files reflect no return of the February 17, 2004, Notice of Settlement which
was sent to you.


2.    Implementation of the Development Opportunity Placement Program ("DOPP"):
You previously raised the issue of implementation of DOPP, under the Basu Settlement
Agreement. Our letter of February 1, 2006, informed you that to the extent that you allege that
DOPP would allow you, or any individual, to receive a permanent promotion to the GS-15 level,
you are in error. As stated in the Basu Settlement Agreement, DOPP is a pilot developmental
program established for the purpose of providing opportunities for all eligible and qualified
employees to serve on details, temporary promotions and developmental assignments. As a
Class Agent, if you are qualified and eligible to participate in the program, and apply pursuant to
guidelines, you will receive priority consideration for those details, temporary promotions, or
developmental assignments for which you are eligible and qualified, for a certain period of time.
However, DOPP does not guarantee nor promise a promotion to Class Agents, and is a program
available to all U.S. Department of Agriculture employees. USDA is within the appropriate time
frames in the creation of DOPP and its guidelines, and we will provide Class Counsel with
additional information on implementation of this injunctive relief. Sadhna G. True informed you
previously that the Agencies are in the process of posting developmental opportunities on the
website of the Assistant Secretary for Civil Rights ("ASCR"). OGC refers you to this website
and to the Acting Departmental Liaison for any further information regarding implementation of
DOPP.


3.    Selection of the Departmental Liaison Position. As we previously informed you by letter
dated February 1, 2006, to the extent that you have filed a formal administrative complaint
regarding your non-selection for the Department Liaison position because you are a class
member in Tier One of the Settlement Agreement, it is improper and inappropriate for OGC to
comment on this specific allegation. Although OGC indicated that, after consultation with Class
Counsel, we will provide additional information regarding the scope of selection of the
Departmental Liaison position, we have determined that such information will be provided in the
litigation of your complaint of discrimination as to this issue.

Dr. Krishna Murthy
March 3, 2006
Page 3

Please remember, as we have informed you in person and in writing, that we urge you to consult Mr. Hood, who is tasked with representing the interests of the class, to assert any concerns you may still have concerning the Agency's compliance with this Settlement Agreement. I also note that we have not received a signed copy of your individual Settlement Agreement, outlining the relief set forth in the Basu Settlement Agreement. We've provided this document several times, most recently on February 1, 2006, with revisions to outline the specific complaints resolved by the Basu Settlement Agreement. If you need the agreement forwarded to you again, please let us know. Please ensure that our offices receive a signed copy of this individual agreement on or before March 17, 2006.

Very truly yours,

Steven C. Brammer

Enclosure

cc:    James Hood



received
8-4-05

Mr. Vernon Parker                                              August 2, 2005
Assistant Secretary for Civil Rights
1400 Independence Avenue, SW
Jamie L. Whitten Building Room 240-W
Washington D.C. 20250

Subject: Withdrawal of EEO complaint filed dated 02/25/05 in reference to vacancy
        EO-04-14 for Liaison Specialist, GS-0301-15 (OCR) closed on 06/25/2004.

This is in reference to above cited EEO complaint flied by me on February 25, 2004. This
position was in Office of Civil Rights, in U. S. Department of Agriculture, and it is a
Liaison Specialist at GS-0301-15 level.

Mr. Parker, I am voluntarily with drawing this complaint against Office of Civil Rights
and Human Resources Division of USDA.

My personal request to you is to address these issues in USDA, Human Resources
Division. The HR Division of USDA can use a good house cleaning to protect EEO laws.

Thanks for all your hard work and support

Dr. Krishna Murthy
Senior Staff Officer
USDA, FSIS

RECEIVED
AUG 25
OFFICE OF CIVIL RIGHTS

Cc: Arun Basu, Class Agent

CRSD-2CF-2005-00161
Closed in icomplaints
- Rondi

AUG 22 2005
21948-CO/PJ

Dr. Krishna PANNICT
USDA, FSIS,
ROOM 2932-S
WASH-DC.

Mr. VERNON PARKER
Assistant Secretary for C.R.
1400 INDEPENDENCE AV. S.W
WASHINGTON D.C. 20250



You are here: Home / Partnerships and Agreements / Basu v. Veneman

# Partnerships and Agreements



## Basu v. Veneman

In November, 1999 Arun Basu filed a discrimination complaint on behalf of himself and other Asian/Pacific Islander employees of USDA. Under the leadership of the Assistant Secretary for Civil Rights, a settlement agreement was reached. The settlement agreement was approved by Equal Employment Opportunity Commission in December 2004.

Under the terms of the settlement agreement, USDA will establish a Development Opportunity Placement Program, a Graduate Scholarship Program, and a Department-wide job fair. USDA will also review, update and issue Department-wide Affirmative Employment Plans, and ensure that all Asian/Pacific Islander employees, grade 7 and above, have current, up-to-date Individual Development Plans. A Departmental Liaison, working under the supervision of the Assistant Secretary for Civil Rights, has been appointed to monitor the implementation of the settlement agreement. For more information, read the Notice of Settlement.

### Development Opportunity Placement Program
The Development Opportunity Placement Program provides opportunities for eligible and qualified USDA employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations.

The Development Opportunity Placement Program is sponsored by Animal and Plant Health Inspection Service; Agricultural Research Service; Farm Service Agency; Food Safety and Inspection Service; Natural Resources Conservation Service; and the Office of the Assistant Secretary for Civil Rights. Each of the agencies will sponsor a minimum of two opportunities annually for a total of six opportunities over the three-year period of the Settlement Agreement.

The Development Opportunity Placement Program is open to USDA employees. Qualification requirements may differ according to the opportunities and will be listed in the opportunity announcements. Twelve opportunities will be available in Fiscal Year 2006. Information about opportunities under this program will be posted on the ASCR Web page for Career and Training Opportunities as they become available.

### The Graduate Scholarship Program
provides funding for graduate school as preparation for a career in government service. The program is designed to recruit individuals to work for USDA after completion of graduate course work in particular



**See Also**

▫ Frequently Asked Questions

**Related Topics**

▫ Notice of Settlement (PDF 120KB)

▫ Career and Training Opportunities

Civil Rights, Basu v. Veneman

disciplines. Each applicant must meet all of the following eligibility requirements:

- Be a U.S. citizen;
- Possess a Bachelor's degree from an accredited institution, or be a graduating senior, with at least a cumulative 3.0 grade point average based on a 4.0 scale;
- Be accepted into or enrolled in an accredited institution as a graduate student, seeking a Master's or Ph.D. degree in a field as defined above;
- Have a strong interest in a career in public service with USDA; and
- Not a current USDA employee.

In 2006, twelve scholarships will be awarded to students enrolled in Master's or Ph.D. programs. Generally, a maximum of two (2) years of funding will be provided for a Master's degree and four (4) years of funding will be provided for a Ph.D. degree. The awards include the following:

- Full-tuition scholarships: tuition, mandatory university fees and books;
- Paid internship (minimum 640 hours) leading to permanent employment;
- Employee benefits; and
- Mentoring, career development, and leadership training.

Recipients of the scholarships enter into an agreement with USDA and receive full-tuition scholarships. Prior to graduation, recipients intern at USDA for a minimum of 640 hours. The internships are paid in addition to the scholarship funds. After graduation, recipients are required to work for USDA one year for every year of financial assistance received from USDA.

The scholarships are sponsored by 8 USDA agencies, specifically, Agricultural Marketing Service, Forest Service, Farm Service Agency, Grain Inspection, Packers and Stockyards Administration, National Agriculture Statistics Service, Natural Resources Conservation Service, Office of Chief Information Officer, and Rural Housing Service.

For information about the Basu v. Veneman settlement, contact
Basu v. Veneman Departmental Liaison
Office of Civil Rights
1400 Independence Avenue, SW
Washington, DC 20250, Mail Stop 9410
Telephone number: (202) 720-5212
E-mail: cr@usda.gov

# TAB F

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ .87 |
| Certified Fee | 2.40 |
| Return Reciept Fee (Endorsement Required) | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.12 |

Postmark Here

5-15-06

7003 0500 0003 6742 0429

Sent To
Dr. Krishna Murthy

Street, Apt. No.; or PO Box No.
7715 Lear Rd.

City, State, ZIP+4
McLean, VA 22102

PS Form 3800, June 2002                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dr. Krishna Murthy
7715 Lear Rd.
McLean, VA 2102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☑ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)          ☐ Yes

2. Article Number
   (Transfer from se      7003 0500 0003 6742 0429

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



## OFFICE OF THE CHIEF FINANCIAL OFFICER
## NATIONAL FINANCE CENTER
### EQUAL EMPLOYMENT OPPORTUNITY AND WORKFORCE SERVICES STAFF

## FINAL AGENCY DECISION

**Complainant:**    Krishna Murthy

**Complaint No.:**    CRSD-CF-2006-00219

**Agency:**    Office of Civil Rights

**Bases:**    Religion (Hindu), age (DOB 4/13/1947), and reprisal (prior EEO activity)

**Issues:**    Denial of promotion to the GS-15 grade level as a part of the Arun Basu v Veneman Class Action Settlement Agreement.

### DECISION

The complaint is dismissed in its entirety pursuant to Equal Employment Opportunity Commission (EEOC) Regulation 29 C.F.R §1614.107(a)(1) for failure to state a claim. Accordingly, no corrective action or relief of any kind is required.

### PROCEDURAL HISTORY

| Date | Action |
|------|--------|
| 12/05/05 | The complainant initiated contact with an EEO Counselor. |
| 12/08/05 | The complainant submitted his EEO intake form to the EEO office. |
| 01/31/06 | Case was assigned to Contractor for counseling. |
| 02/06/06 | The complainant granted an additional 30-day extension to the counseling period for a total of 90 calendar days. |
| 03/07/06 | The complainant was issued a Notice of Right to File (NRF) a formal complaint. |
| 03/08/06 | The complainant received the NRF. |
| 03/10/06 | The complainant filed a formal complaint. |

### BACKGROUND

On October 31, 2003, a settlement agreement in the class action complaint Arun Basu, et al, v Ann Veneman, Secretary, United States Department of Agriculture (USDA), was reached between the Class Agent on behalf of himself and the Class Members and USDA.

"An Equal Opportunity Employer"

The Complainant's claims fell within Tier One of the class action settlement agreement indicating he would receive injunctive relief in addition to the terms of an individual agreement.

On February 17, 2004, the agency issued the Complainant a letter setting forth the terms of his proposed individual settlement and provided copies of the Notice of Settlement and the Class Action Settlement Agreement. The Notice of Settlement included specific instructions on how to challenge the fairness of relief provided by the settlement, if desired, and the class action settlement agreement included a provision that fully described the process to be used if either party failed to perform its obligations under the agreement. On December 7, 2004, the Equal Employment Opportunity Commission issued a decision granting final approval of the settlement agreement. On May 25, 2005, the agency issued a letter to the Complainant identifying the following individual relief offered: (a) $40,000 as compensatory damages, inclusive of any and all pecuniary and non-pecuniary damages; (b) advance to a GS-14, Step 10, and reassignment to a GS-701-14, Veterinary Medical Officer, Office of Program and Policy Development, New Technology Staff; (c) Office of Personnel Management leadership training to be determined within 60 days of a signed settlement agreement; and, (d) reasonable attorneys' fees in accordance with the proposed settlement agreement. As part of the individual agreement, the Complainant would withdraw any and all complaints dated prior to the effective date of the agreement.

Although the record indicates that the agency has not yet received a signed copy of the individual settlement agreement, the counselor's report indicates that the Complainant acknowledged receipt of several action items agreed to by the agency in the individual settlement offer. Additionally, by letter dated August 2, 2005, the Complainant withdrew Agency Complaint No. CRSD-CF-2005-00161 dated February 25, 2005, in reference to his non-selection for the position of Liaison Specialist, GS-301-15, advertised under Vacancy Announcement No. EO-04-14.

On October 24, 2005, the agency responded to the Complainant's letters dated September 29, 2005, October 5, 2005, and October 21, 2005, addressed to USDA's Assistant Secretary of Civil Rights alleging that the agency had breached the class action settlement agreement. The agency's response identified the action that had been taken in compliance with the agreement and reminded the Complainant to follow the procedures for enforcement set forth in the settlement agreement if he believed that the agency failed to perform its obligations under the settlement agreement. On December 8, 2005, the Complainant submitted an EEO complaint intake form to the agency's EEO office alleging that the agency had breached the settlement agreement.

## ANALYSIS AND FINDINGS

EEOC Regulation 29 C.F.R. 1614.504(a) provides that any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties. In the Notice of Settlement, class members were provided the option to: (A) do nothing and remain a Class Member and be both entitled to and bound by the terms of equitable and injunctive set out in the Settlement if it is approved under 29 C.F.R. §1614.204(g) or (B) object to the Settlement and follow the instructions for Fairness Hearing and Process for Objections set forth in the notice.

According to the record, the Complainant did not object to the Settlement and therefore remained a Class Member. In accordance with EEOC Regulation 29 C.F.R. 1614.504(a), the class settlement agreement included the following enforcement provisions:

A. If either Party concludes that the other Party has failed to perform its obligations under this Agreements, the following process will be used by the Parties: A Party claiming failure to comply with the provisions of this Agreement at any time during its term will give written notice of the claim to the Department Liaison and will propose a resolution of the issue. At least five (5) calendar days prior to the written notice, the Party claiming non-compliance shall orally inform opposing counsel of the intended claim.

B. The responding Party will have thirty-five (35) calendar days following receipt of the written claim to respond, unless this claim is enlarged by the agreement of the Parties.

C. If the Party asserting the claim is dissatisfied with the Party's response or proposed resolution, or no response or proposed resolution is forthcoming within the stated time period, the Party asserting the claim may submit the issue in writing to the Departmental Liaison for his/her consideration and recommendation. The Departmental Liaison shall issue to the Assistant Secretary for Civil Rights a tentative report and recommendation, if any, within thirty-five (35) calendar days of receipt of the claim, unless the time is extended by agreement of the Parties or by the Departmental Liaison.

D. If a Party wishes to object to the tentative report and recommendation of the Departmental Liaison, it must notify the other Party of its intent to file an objection, must meet and confer with the other Party, and must lodge the objection in writing with the Assistant Secretary for Civil Rights and the other Party within twenty-one (21) calendar days of the issuance of the tentative report and recommendation. The objection shall sate the factual bases for the objection and shall set forth any supporting information. The Parties may agree to extend the time for lodging an objection, and the Assistant Secretary for Civil Rights shall issue a ruling on the objection and issue a final report and recommendation within thirty-five (35) calendar days of the filing of the objection, unless the time is extended by agreement of the Parties or by the Assistant Secretary for Civil Rights.

E. The Parties shall be afforded a reasonable time to achieve compliance with the Assistant Secretary for Civil Rights' final report and recommendation.

F. If, after completing the procedures set forth in this Section at paragraphs A-F, the Party asserting the claim still believes compliance with the specific obligation has not been achieved, that Party may, after providing fourteen (14) calendar days' written notice to the opposing counsel, pursue remedies consistent with this Section. Venue for such a claim will be in the EEOC. The Parties agree that any motion to the EEOC for enforcement or any other relief pursuant to this paragraph shall be limited to enforcement of the provisions contained in Sections V and VI.

G. In any proceedings brought in the EEOC under this Section to enforce compliance with Sections V and VI, the Department shall not be found in breach of this Agreement, and the EEOC accordingly shall not order further relief, if the EEOC finds that the Department has substantially complied with Sections V and VI. If, however, the EEOC finds that the Department is in breach, the EEOC may order specific enforcement of the provisions contained in Sections V and VI, any alternative provisions agreed upon by the parties, and/or a one-time, one-year extension of the Term of the Agreement. Nothing contained in this Agreement will obligate the Department to create new positions, to fill any particular position, or to promote, select, or assign any particular person to any particular position. No provision of this Agreement is intended as, or may be construed as imposing, a quota.

The EEO complaint process contained in 29 C.F.R §1614.105 through 29 C.F.R §1614.110 is not the proper process to resolve breach claims that do not allege a subsequent act of discrimination. Therefore, this breach claim is dismissed in accordance with 29 C.F.R. §1614.107(a)(1) for failure to state a claim and will not be referred for investigation.

## CONCLUSION

For the reasons set forth above, this complaint is dismissed.

This is the final decision of the USDA on the cited complaint.

## APPEAL RIGHTS
## APPEAL TO THE EEOC

A Notice of Appeal may be filed with the EEOC within thirty (30) calendar days after receipt of this final decision. EEOC Form 573, Notice of Appeal/Petition, should be used in filing the appeal. Also, what is being appealed should be indicated on the form. A copy of EEOC Form 573 is provided with this decision. Such notice should be addressed to:

**Director, Office of Federal Operations**
**Equal Employment Opportunity Commission**
**P.O. Box 19848**
**Washington, DC 20036**

As an alternative to mailing, your appeal may be hand-delivered to:

**Director, Office of Federal Operations**
**Equal Employment Opportunity Commission**
**1801 L Street, N.W.**
**Washington, DC 20507**

As an alternative, you may also send your appeal by facsimile to the Office of Federal Operations at **(202) 663-7022**. Facsimile transmissions of more than ten (10) pages will not be accepted.

If there is an attorney of record, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of receipt of this decision by the attorney. In all other cases, the thirty (30) calendar day time limit within which to appeal shall be calculated from the date of your receipt of this decision.

The appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC.

At the same time information is provided to the EEOC (to include a copy of the Notice of Appeal and any submissions in support of the appeal), there **must** be a service certification that a copy of the submission **has been** submitted to the Equal Employment Opportunity and Workforce Services Staff and the date and method of submission. The address is provided below:

**U.S. Department of Agriculture**
**National Finance Center**
**Equal Employment Opportunity and Workforce Services Staff**
**P.O. Box 29729**
**New Orleans, LA  70189-0729**

Please note that, if your appeal is not filed within the thirty (30) calendar day time limit, the appeal may be dismissed by the EEOC. However, the EEOC may, at its discretion, extend the time limits and accept the appeal based upon a written statement that there was no actual notification of the time limit, or that a timely Notice of Appeal could not be filed, due to extenuating circumstances.

Any statement or brief in support of your appeal must be submitted to the EEOC within thirty (30) calendar days of filing the Notice of Appeal. The EEOC, Office of Federal Operations, accepts statements or briefs in support of appeals by facsimile transmittal, provided that they are no more than ten (10) pages long.

Any statement or brief in opposition to your appeal must be submitted to the EEOC and served on you (or your attorney of record, if represented by an attorney) within thirty (30) calendar days of receipt of the statement or brief supporting the appeal, or if no statement or brief supporting the appeal has been filed, within sixty (60) calendar days of receipt of the appeal.

It is the responsibility of USDA to submit the entire complaint file to the EEOC, Office of Federal Operations, within thirty (30) calendar days of initial notification that an appeal has been filed.

**CIVIL ACTION IN FEDERAL DISTRICT COURT**

You also have the right to file a civil action in an appropriate United States District Court. If you choose to file a civil action, you may do so:

- within ninety (90) days of receipt of this final decision if no appeal has been filed; or

- within ninety (90) days after receipt of the EEOC' s final decision on appeal; or

- after one hundred and eighty (180) days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

You must name the person who is the official agency head or department head as the defendant. Agency or department means the national organization, and not just the local office, facility, or department in which you might work. Do not name just the agency or department. In your case, you must name **Mike Johanns, Secretary of Agriculture,** as the defendant. Failure to provide the name or official title of the agency head or department head may result in dismissal of your case.

If you decide to file a civil action, under Title VII or under the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date you receive the final decision by USDA or an EEOC's decision on appeal.

Unless an appeal is filed with the EEOC, failure to file a civil action within ninety (90) calendar days may result in the dismissal of your civil action. Filing a civil action under 29 C.F.R. §1614.407 or §1614.408 shall terminate processing an appeal before the EEOC. If a civil action is filed subsequent to filing an appeal with the EEOC, the parties are requested to notify the EEOC in writing.

_____          5/12/06
JOHN S. WHITE                              Date
Acting Civil Rights Director

Enclosure

U. S. DEPARTMENT OF AGRICULTURE
OFFICE OF THE CHIEF FINANCIAL OFFICER
NATIONAL FINANCE CENTER
EQUAL EMPLOYMENT OPPORTUNITY AND WORKFORCE SERVICES STAFF
Complaint of Employment Discrimination

**Complainant:**          Krishna Murthy

**Complaint No.:**        CRSD-CF-2006-00219

**Agency:**               Office of Civil Rights

### Certificate of Service

I certify that the documents listed below were sent on this date by regular mail (unless otherwise specified) to:

Complainant:              Dr. Krishna Murthy *(via certified)*
                          7715 Lear Road
                          McLean, VA 22102
                          *CM:RRR:7003 0500 0003 6742 0429*

Agency Head:              Sadhna G. True, Director
                          USDA, Office of Civil Rights
                          Reporter's Building, 5th floor
                          300 7th Street, S.W.
                          Washington, D.C. 20024

Agency Liaison:           Ellen Hawthorne-Copenhaver
                          USDA, Office of Civil Rights
                          Civil Rights Service Division
                          Reporter's Building, Room 248
                          300 7th Street, S.W.
                          Washington, D.C. 20024

Agency Representative:    Angela E. Kelly, Chief
                          Employee/Labor Relations and Benefits Branch
                          U.S. Department of Agriculture
                          Departmental Administration
                          1400 Independence Avenue, SW
                          Room 27-W, Whitten Building
                          Washington, DC 20250-9608

Enclosures:    Final Decision dated  05/12/06
               EEOC Form 573 *(to the complainant only)*

               _____        Date 05/15/06

EEOC Form 573

"http://frwebgate.access.gpo.gov/cgi-bin/style:cgi">

*The U.S. Equal Employment Opportunity Commission*

# NOTICE OF APPEAL/PETITION
# TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 19848
Washington, DC 20036

## Complainant Information: (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

## Attorney/Representative Information (if any):

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

## General Information:

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| | |

EEOC Form 573                                                                 Page 2 of 3

| | |
|---|---|
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | _____Yes;  Date Received _____(Remember to attach a copy)<br>_____No<br>_____This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, another agency, or through any other administrative or collective bargaining procedures? | _____No<br>_____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | _____No<br>_____Yes **(Attach a copy of the civil action filed)** |

**NOTICE:** Please __attach a copy of the final decision or order__ from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency __within 30 days__ of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | |
| Date: | |

**EEOC Form 573 REV 1/01**

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE**: EEOC Form 573, Notice of Appeal/Petition, January 2001

2. **AUTHORITY**: 42 U.S.C. § 2000e-16

3. **PRINCIPAL PURPOSE**: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **ROUTINE USES**: Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding

EEOC Form 573

appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION**: Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

---

*This page was last modified on June 6, 2001.*

 Return to Home Page

# TAB G

## FEDERAL EXPRESS AUTHORIZATION

| DATE 07/05/06 | SENDER'S NAME Patty Duvernay | SENDER'S TELEPHONE NUMBER 6-6204 |
|---|---|---|
| MEDTHOD OF PAYMENT ☒ BILL SENDER → | SENDER'S ACCOUNT NUMBER 0701-1194-2 | SENDER'S DIVISION/BRANCH/SECTION EEOWSS |
| ☐ BILL RECEIVER → | RECEIVER'S ACCOUNT NUMBER | RECEIVER'S TELEPHONE NUMBER |
| ☐ BILL THIRD PARTY → | THIRD PARTY ACCOUNT NUMBER | THIRD PARTY TELEPHONE NUMBER |

SENDER'S DIVISION/STAFF (Check appropriate block)

| ☒ ADMINISTRATIVE (All Staffs) 0701-1194-2 | ☐ DISASTER RECOVERY 2787-8754-0 | ☐ IRMD, ISPCS (Cyber Security) 0701-1194-2 |
|---|---|---|
| ☐ COD 2787-8842-3 | ☐ GESD 0701-1194-2 | ☐ TSPD 2787-8810-5 |

AUTHORIZED SIGNATURE

*Patty Duvernay*

**DELIVERY CANNOT BE MADE TO POST OFFICE BOXES**

| TO (COMPANY) EEOC, Office of Federal Operations, Compliance and Control Division | ATTENTION Robert J. Barnhart, Director |
|---|---|

STREET ADDRESS
1801 L Street, NW

| CITY Washington | STATE DC | ZIP CODE 20507 |
|---|---|---|

SPECIAL INSTRUCTIONS

☐ SATURDAY DELIVERY CHARGE      ☐ HOLD AT FEDEX      ☐ DELIVER BY NEXT MORNING

| ☐ DELIVER - NO SIGNATURE REQUIRED (Release signature required) | *I authorize Federal Express to deliver this shipment without obtaining a signature and agree to indemnify and hold Federal Express harmless from any resulting claims.* |
|---|---|
| | AUTHORIZED SIGNATURE                    DATE |

Form created in **Formatta**

FORM NFC-1296 (REV. 05/06)

✱ *Murthy*

Ref: john o
Dep: ADMIN

Date: 07/05/2006
Wgt: 1.8 LBS

DV:            0.00

SHIPPING:    4.88
SPECIAL:     0.34
HANDLING:    0.00
TOTAL:       5.22

Svcs: STANDARD OVERNIGHT
TRCK: 7110 5238 8813



| | | | |
|---|---|---|---|
| United States<br>Department of<br>Agriculture | Office of the<br>Chief Financial<br>Officer | Nation...<br>Finance<br>Center | P.O. Box 60000<br>New Orleans<br>Louisiana 70160 |

July 5, 2006

Robert J. Barnhart, Director
Compliance and Control Division
Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, DC  20507

*FEDERAL EXPRESS*

|  | | |
|---|---|---|
| Re: | | **Krishna Murthy** |
| Agency No.: | | **USDA CRSD-CF-2006-00219** |
| OFO Appeal Docket No. | | **01A62355** |

Dear Mr. Barnhart:

In response to our receipt of notification that the above named complainant has filed an appeal, enclosed is a copy of the Equal Employment Opportunity (EEO) complaint file referenced above.  Although the Complainant identifies EEOC No. 100A17863X, Agency No. 000190, dated December 7, 2004, as the number of the complaint being appealed, his appeal dated April 25, 2006, raises the same issues that were raised in the subject complaint that was dismissed by the Agency on May 12, 2006.

We believe that the evidence in the EEO complaint file supports the Agency's decision.  When the appeal is processed, we respectfully request that the Equal Employment Opportunity Commission, Office of Federal Operations, affirm the final action of the agency.

The enclosures were provided to the appellant and the USDA sub-agency during earlier stages of the complaint process.

If you have any questions or need additional information on the subject EEO complaint, please contact Patty Duvernay at (504) 426-6204.

Sincerely,

*Patty Duvernay*

for

Debra A. Byrne, Acting Director
Civil Rights Office

Enclosure

cc:    Mr. Krishna Murthy
       7715 Lear Road
       McLean, VA  22102

       Ellen Hawthorne-Copenhaver, Office of Civil Rights

APPEAL FILE

**Complainant:**  Krishna Murthy
**Agency No.:**   CRSD-CF-2006-00219
**Docket No:**    01A62355

## List of Exhibits

**Exhibit 1:**     EEO Counselor's Report

**Exhibit 2:**     Formal Complaint

**Exhibit 3:**     Letter of Acknowledgement

**Exhibit 4:**     Resolution Documents

**Exhibit 5:**     Letter Regarding Representation

**Exhibit 6:**     Final Agency Decision – Dismissal dated 05/12/06



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036



04/27/06

Agriculture, Dept of
Dir, Ofc Of Civil Rights
14 & Indep Av SW
Washington, DC  20250-9406

RE: Krishna Murthy
    Docket # : 01A63143
    Assoc # :
    Agency #1: 000190
    Agency #2:
    Agency #3:
    Filed    : 042606

Dear Sir/Madam:

This is to acknowledge that the above referenced appeal has been received
on the date indicated.  The agency must submit the complaint file, along
with any related or consolidated complaint files, to the Office of Federal
Operations WITHIN 30 DAYS OF INITIAL NOTIFICATION THAT THE COMPLAINANT HAS
FILED AN APPEAL.  See 29 C.F.R.1614.403(e).

In addition, any related material developed subsequent to the initial
submission of the complaint file, i.e., attorney fees, supplemental invest-
igation, etc. must be forwarded upon notification of any related appeal.
The agency must ensure that all materials submitted to the Commission have
also been provided to the complainant.  Enclosed is an "Agency Checklist"
for your use in identifying records to submit in your agency file.

IF THE COMPLAINT FILE IS NOT SUBMITTED TO THIS OFFICE WITHIN THE TIME FRAME
SET FORTH ABOVE, THE COMMISSION MAY TAKE APPROPRIATE ACTION, INCLUDING
DRAWING AN INFERENCE ADVERSE TO THE AGENCY IN ALL MATTERS WHERE THE EVIDENCE
IS NOT AVAILABLE TO THE COMMISSION. THIS COULD RESULT IN A DECISION
UNFAVORABLE TO THE AGENCY.

The agency must submit the complaint file within the time frame specified
above regardless of whether or not the complainant has timely provided the
agency a copy of any supporting statement or brief, and regardless of
whether or not the agency's comments or brief relative to the appeal itself
are completed.

Any agency statement or brief in opposition to an appeal must be submitted
to the Commission and served on the complainant within 30 days of receipt
of the statement or brief supporting the appeal.  If no statement or brief
supporting the appeal is filed, the statement or brief in opposition to the
appeal must be filed within 60 days of the receipt of the appeal. See
29 C.F.R.1614.403(f).  The Commission will accept statements or briefs in
opposition to an appeal by facsimile tranmission (Fax number 202-663-7022)
provided they are no more than (10) pages long.



## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations
### P.O. Box 19848
### Washington, D.C. 20036

The agency should reference the above docket number(s) in all submissions and correspondence to the Commission.

                                    Sincerely,

                                    Robert J. Barnhart, Director
                                    Compliance and Control Division
                                    Office of Federal Operations

Enclosure

CERTIFICATE OF SERVICE

I certify that the Notification of Appeal/Request for Complaint File was sent by regular mail this day to the agency.

Equal Opportunity Assistant:

Date:    MAY 0 2 2006

(2)



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

AGENCY CHECKLIST
-----------------

OFO Docket #: 01A63143 Agency #: 000190          Hearing #1: 100a17863x
                                                 IMS #

The checklist below is provided for your convenience, and to assist us in
ensuring that the documents you send us are complete and properly associated
with the correct case file. We would appreciate it if you would use this
checklist when you submit your complaint file. Please check off all items
where applicable.

_____ EEO Counselor's Report
_____ Notice of Final Interview
_____ Formal Complaint
_____ Notice of Agency Acknowledgement of Complaint
_____ Partial Dismissal Letter/Supporting Documentation
_____ Investigative Report and File(s) (for all complaints noted above)

_____ Settlement Agreement
_____ Request to reinstate complaint/specific performance for Settlement Breach

_____ Hearing Request/Rights/Evidence of receipt of hearing rights
_____ ALL DOCUMENTATION SUBMITTED BY THE PARTIES TO THE AJ
      (Including, but not limited to: All discovery related requests, responses
      motions, oppositions, exhibits, and all summary judgement related
      pleadings and documents)
_____ ALL NOTICES, RULINGS, AND ORDERS ISSUED BY THE AJ
      (Including, but not limited to: Acknowledgement orders, Discovery Rulings
      Notice of Summary Judgement, Summary Judgement Rulings, Sanction Ruling)

_____ Hearing Transcript(s)  **all volumes of multiple transcripts**
_____ Hearing Exhibits **all exhibits offered at the hearing**
_____ AJ's Findings and Conclusions/Proof of date of agency receipt
_____ Final Agency Action/Decision
_____ Evidence of receipt/mailing of the Final Action/Decision

_____ Compensatory Damages Documentation/Decision
_____ Attorney's Fees Petition/Decision
_____ Complete Grievance File (If an appeal from a grievance decision is
      involved)


**Please check with Agency Legal Unit for any missing documents

REVISED 06/03

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 19848
WASHINGTON, D.C. 20036

**OFFICIAL BUSINESS**
Penalty for private use $300



UNITED STATES POSTAGE
WASHINGTON · ANDOVER · PITNEY BOWES
$ 00.39⁰
02 1A
0004601824      MAY 03 2006
MAILED FROM ZIP CODE 10004

"http://frwebgate.access.gpo.gov/cgi-bin/style.cgi">

*The U.S. Equal Employment Opportunity Commission*

RECEIVED
APR 26 2006
EEOC-OFO

# NOTICE OF APPEAL/PETITION
## TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 19848
Washington, DC 20036

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| | MURTHY, KRISHNA |
| | 7715 LEAR ROAD |
| | McLEAN, VA 22102 |
| | 202-690-5646 |
| | KMURTHY5@AIM.COM |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| | Mr. James Hood-Asian Class Action Counsel |
| | Mr. Farook Sait, USDA, OCR employee |
| | 1226 Eleventh St., NW |
| | Washington, D. C. 20001 |
| | 202-289-1130, FAX-202-371-2535 |
| | NA |

**General Information:**

| | |
|---|---|
| | USDA, OCR and FSIS |
| | EEOC No. 100-A-1-7863X, Agency No 000190, Arun Basu et al V. Ann M.Veneman, Dated 12/07/2004 |

| | USDA, FSIS.1400 Independence Ave, SW, Agriculture South Building. Washington D. C.20250 |
| | ____Yes;  Date Received _March 2005 (Remember to attach a copy)<br>_X__ No<br>_X__ This appeal alleges a breach of settlement agreement |
| | _X__ No<br>____Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| | _X__ No<br>____Yes (Attach a copy of the civil action filed) |

**RECEIVED**
**APR 26 2006**
**EEOC-OFO**

**NOTICE:** Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.



*Krishna Murthy*
*April 21, 2006*

**EEOC Form 573 REV 1/01**

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1. **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, January 2001
2. **AUTHORITY:** 42 U.S.C. § 2000e-16

3. **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **ROUTINE USES:** Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations ✓  *H 1801 L Street*
P.O. Box 19848
Washington, D.C. 20036  *NW.*

---

*This page was last modified on June 6, 2001.*

Return to Home Page


EEOC-OFO

TO:       Director                                      April 25, 2006
          Office of Federal Operation
          P.O.Box 19848
          Washington D. C. 20036

FROM:     Dr. Krishna Murthy                            ℝ𝔼ℂ𝔼𝕀𝕍𝔼ⅅ
          Senior Staff Officer                          𝕟  APR 2 6 2006  𝔻
          USDA, FSIS, NTS
          Washington D. C. 20250                        **EEOC-OFO**

SUBJECT:  An Appeal regarding Individual settlement agreement of Asian
          Class Complaint, EEOC No100-A1-7863X.Agency Number
          000190. Dated 12/07/2004.

Your strong commitment and support made the Asian class action settlement a
reality and without your sustained effort, this success would not have been
possible. I am thankful for your nice gesture.

I am filing this appeal after the telephone discussion with EEOC Attorney Joseph
Popiden, Attorney of Special Services Staff and with Administrative judge Hon
Andrew Culbertson (Copy attached).

**A.** The main issue here is that as class Co-agent and as an agent of tire 1, I have
been denied a promotion, where as other agents of tire 1 have received
promotion.  Among six agents of tire 1, three received promotion with back pay
and substantial financial compensation. In fact one agent received two
promotions from GS-13 to GS-14 and GS-15.
Among the rest of the three, tire 1 agents, one retired and another agent is not
interested in promotion. This leaves me, only one agent from tire one who did not
receive promotion.
In the settlement agreement page 12, second paragraph, it is stipulated by the
EEOC judge Hon Andrew Culbertson, that all the agents in Tire 1 are equal and
that is the reason they are clumped in Tire 1.
In spit of this strong stipulation I have been denied my promotion.

**B.** There is a major procedural problem/mistake had happened which need to be
corrected. As per the process I should have received a copy of individual
settlement agreement around February 17, 2004 from the Agency. From this
date I would have had 30 days to object and appeal to the EEOC judge, for lack
of promotion in my settlement agreement. I never received my settlement
agreement at that time and I lost the appeal opportunity. I received my individual
settlement agreement in 2005.

2

**C.** In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already May 2006, that means this program is long over due. Creation and implementation of DOPP program has not been accomplished. This is a breach of settlement agreement. This has prevented me getting promotion to my next grade.

**D.** It is already one and half year has passed since the settlement agreement date (12/07/2004), the OPM training which I was to receive according to the agreement has not been initiated. The Agency (FSIS) is retaliating against me for participating in Asian Class action as Co-agent by road blocking my training. This is a breach of settlement agreement. This has prevented me an opportunity for promotion to my next grade.

**E.** There is no uniformed implementation of terms of settlement agreement by FSIS' Civil Rights Staff, even though the settlement agreements states that tier 1 agents are to be treated same. (For example) FSIS promoted one of the Tire one agent from GS-13 to 14 and then GS 14 to GS 15 all at the same time. This interpretation/stipulation was not in the settlement agreement. The Agency is using settlement agreement to promote their favorites and retaliate on their not favorite agents. This kind of activity by the agency is also delaying me the promotion to next grade.

**F.** The person who was appointed as Liaison Specialist, GS-0301-15, in Office of Civil Rights has left the position shortly after on the job. I applied for this position and I was denied the position stating that no class members would fill the position. **But** the person appointed by the Director of OCR, USDA was also a class member; she was a Chinese American which qualifies her as CLASS MEMBER. I filled filed EEO complaint, later I was forced by Dr. Arun Basu, Class Agent for Asian Class Complaint to withdraw the complaint. Without the liaison specialist in the position, agencies are not implementing the terms of the settlement agreement, because there is nobody to monitor and question non implementation of settlement agreement.

**G.** The Class representative who negotiated my individual settlement agreement is a USDA, Office of Civil rights' employee. He **should not** have allowed to act in this capacity because it is a direct conflict of interest. He being Civil Rights employee of USDA and he acted as Ascian class representative in all the negotiations. He negotiated promotions to his buddies and not to other agents in 1.

3

This is to request you to reconsider my promotion, training and opportunity in DOPP. I am willing to settle all my EEO cases for a promotion which I have many.

Krishna Murthy
Senior Staff Officer
FSIS, USDA
Class Co-Agent and Class Agent in Tire one
Asian Class Complaint Settlement Agreement: Arun C. Basu V. Ann Veneman

Attachments form previous correspondence on this subject.



RECEIVED
APR 26 2006
EEOC-OFO

**Murthy, Kris**

| | |
|---|---|
| From: | ANDREW CULBERTSON [ANDREW.CULBERTSON@EEOC.GOV] |
| Sent: | Tuesday, April 11, 2006 10:51 AM |
| To: | Murthy, Kris |
| Subject: | Re: Request for meeting |

Dr. Murthy,

    I am in receipt of your e-mails and voice messages.  Please be advised that, at this point in time, I no longer have jurisdiction over the Basu class action.  Any concerns you have with the implementation of the settlement agreement should be raised with either class counsel or your agency.  Additionally, and pursuant to 29 C.F.R. § 1614.504, if you are alleging that the agency has breached the agreement, you should raise that allegation, in writing, with your agency's EEO Director.  If the matter is not resolved at that stage, you would then have the right to file an appeal with the EEOC's Office of Federal Operations.  I hope this information is helpful to you.

Sincerely,

Andrew Culbertson
Supervisory Administrative Judge
Washington Field Office

RECEIVED
APR 26 2006
EEOC-OFO

**Events that denied me the promotion under the Asian Class Complaint Individual Settlement Agreement:**

1. Originally I left APANA (Asian Pacific Americans Net Work in Agriculture), an employee organization, initiated the Idea, and implemented plan to start Organization of South Asian American in Agriculture (OSAAA) in USDA. I also started the plan to initiate Asian Class Action in USDA, because Asian employees were not promoted in USDA. Under the umbrella of OSAAA, the Asian Class was filed.

2. Mr. Farook Sait was bought in to the OSAAA by his buddy Dr. Arun Basu and Mr. Sait snatched all the idea, plan and resources from me and started his own plans for Asian Class Action. From the beginning he was reminded of his role and conflict of interest because of his position in Office of Civil Rights, USDA. He ignored conflict of interest situation and got involved in Asian Class Action just make sure I do not get any, credit for starting the OSAAA, Asian Class Action and promotion.

3. From the start, Mr. Sait had a grand plan to denied me the promotion but to get promotion to Dr. Basu, Dr. Dey and Mon Yee because they his buddies. He hated me, because of my religion which is different then his. He started openly condemning my ideas in the meeting, undermining my plans regarding OSAAA and Asian Class Action. He took over the total control of OSAA and Asian Class Action negotiations. In spit of my protest, He appointed Mr. James Hood as Asian Class Counsel, because, Mr. Hood is his buddy and he works with Mr. Hood through his Law Firm. Mr. Farook wanted to do favor to Mr. Hood and get some profit to himself so he appointed Mr. Hood as Asian Class Action Counsel. With this arrangement both Mr. Farook and Mr.Hood are benefited. Mr. Farook got a promotion to GS-15 and a special Assistant position to Under Secretary to Civil Rights and Mr. Hood got thousands of dollars in Lawyers fees

4. As part of Asian Class action settlement, on several occasions I have raised the issue of denial of promotion to me in spit of having very good EEO cases. Every time I raise the issues of promotion to GS-15 grade, Mr. Sait use to shout at me, verbally abuse me and threaten me, that if I keep perusing the promotion issue he will see that I will not get a penny and take away what little I was going to get. Mr. Sait temper and dictatorial attitude is well known in USDA's Asian community and I can bring witness to this effect.

5. While Asian Class Settlement Agreement was under negotiation, Arun Basu asked me to do political contribution to one of Mr. Sati's favorite Democratic candidate in Maryland. I think it was Paul Sarbaine. Arun Basu told me that he has contributed $ 500 or 1000 because the candidate was Mr. Sait's favorite one. I refused to pay any political contributions. I was told that Dr. Bhabani Dey also paid $500.00. Mr. Sait was very angry at me for not paying political contribution to his favorite candidate and he took the opportunity to get even with me by not recommending for my promotion. For others in Tier one, he got them promotion.

6. While Asian Class Settlement Agreement was under negotiation, Arun Basu asked me to write a check for $ 500.00 or $1000.00 for supporting a Muslim school back home. Dr. Basu told me that, this contribution is for Mr. Sait who is collecting money for this Muslim school. In other words Dr. Arun Basu was solicitation funds from me for Mr. Sait's favorite Muslim school back home. I did not contribute any money. Dr. Arun Basu told me he did and he also told me that Dr. Dey did. I know Mr. Sait was very angry with me for not contributing funds to the Muslim school.

7. As Class representative in the negotiation team, Mr. Sait has **not** provided me all the information, I am suppose to get. For example, I was to receive copy of my official individual settlement agreement around February 17, 2004, so I can object formally to EEOC, Administrative Judge Hon. Andrew Culbertson. Judge Culbertson is the Judge who wrote the Asian Class Agreement. This never happened. The official individual agreement was given to me by Arun Basu in May 2005. This is way too late to make any kind of appeal or object to Individual settlement agreements. Thus I lost an opportunity to object to my settlement agreement and to pursue my promotion under this settlement agreement.

8. Dr. Arun Basu: Dr. Basu allowed, Mr. Sait to handle Asian Class action freely because, Mr. Sait is his buddy and thus Dr. Basu was an association to deny me a promotion.

9. Ms. Sadhana True: Director of Civil Rights, USDA: She denied promotion to me from the start of her involvement in Asian Class Action. She was determined that I should not get promotion under this Class action and she achieved through Mr. Sait who worked for her in Employment complaint Division.

10. Hon Vernon Parker: He did not monitor Mr. Sait while he was negotiating Asian Class Action Settlement agreement. He allowed Mr. Sait a free hand and thus he made sure that I did not get promotion.

Dr. Krishna Murthy
Senior Staff Officer
FSIS, NTS
202-690-5646

RECEIVED
APR 2 6 2006
EEOC-OFO

Dec-07-04   01:37pm   From-E E O C                    +2022756834        T-056   P.002/017   F-925



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0700

*fought wdt . Meto*

|  |  |
|---|---|
| Arun C. Basu, *et al.*, <br> Complainants, <br><br> v. <br><br> Ann M. Veneman, <br> Secretary, <br> Department of Agriculture, <br> Agency. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

EEOC No. 100-A1-7863X

Agency No. 000190

Date: December 7, 2004

## ORDER

For the reasons set forth in the enclosed Decision dated December 7, 2004, the Settlement Agreement dated October 31, 2003, is APPROVED. A copy of the Decision must be sent to the individuals who filed petitions objecting to the Settlement Agreement. A Notice to the petitioners explaining their appeal rights is attached to the Decision. This office is also enclosing a copy of both the hearing record and the reports of investigation for the Agency.

It is so ORDERED.

For the Commission:

Andrew Culbertson
Administrative Judge

RECEIVED
APR 26 2006
EEOC-OFO

enclosure

cc (with enclosure):

       Mr. Larry W. Newell
       Chief, Employment Complaints Division
       Office of Civil Rights
       United States Department of Agriculture
       1400 Independence Ave., SW
       Washington, D.C. 20250-9440

cc (without enclosure)

       Mr. James P. Hood, P.C.
       By facsimile at (202) 371-2535

       Mr. Steven Brammer, Esq.
       By facsimile at (202) 720-4089

Dec 20 04 10:40a     Mon Yee                    (909) 869-2464        p.3



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0701

| | | |
|---|---|---|
| Arun C. Basu, *et al.*,<br>Complainants,<br><br>v.<br><br>Ann M. Veneman,<br>Secretary,<br>Department of Agriculture,<br>Agency. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | EEOC No. 100-A1-7863X<br><br><br>Agency No. 000190<br><br><br>Date: December 7, 2004 |

## DECISION GRANTING FINAL APPROVAL
## OF SETTLEMENT AGREEMENT

The Settlement Agreement (Agreement) in the captioned class case, signed by the parties on October 31, 2003, is hereby **APPROVED**. After careful consideration of the Agreement and the written objections, I find that the Agreement is fair, adequate, and reasonable to the class as a whole. As such, and in accordance with 29 C.F.R. § 1614.204(g)(4), I hereby give my final approval to the Agreement.

### Procedural Background

On November 18, 1999, lead Class Agent Dr. Arun Basu filed a formal complaint of discrimination on behalf of a proposed class of Asian/Pacific Islander employees of the Agency at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) stripped of managerial duties and responsibilities; (5) had not been selected for a position with managerial duties or responsibilities; (6) had been subjected to reprisal for filing a complaint(s); (7) filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint. By decision dated September 15, 2000, the administrative judge originally assigned to the case determined that the class failed to meet the procedural requirements for certification set forth at 29 C.F.R. § 1614.204(a)(2). After the Agency issued a final order

accepting that decision, the Class Agents filed an appeal with the Commission's Office of Federal Operations (OFO).

In a decision issued on June 27, 2001, OFO partially reversed the prior decision, conditionally certifying a class comprised of "all Asian employees of the [A]gency who were eligible for but have not received promotions and all Asian persons who have applied for positions with the [A]gency but have not been selected." Following the remand of the case to this office, it was assigned to the undersigned administrative judge. Subsequent to a lengthy discovery period, followed by the filing of briefs on the question of certification, the parties entered into the Agreement on October 31, 2003. On January 27, 2004, the undersigned granted preliminary approval of the Agreement, and a Notice of Proposed Settlement (Notice), along with the Agreement itself, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the Class as well as all identified Asian/Pacific Islander employees who fell under the Class definition but did not have pending individual complaints of discrimination. The Notice was also posted on the Agency's web site and in appropriate Agency bulletins. The Notice provided that Class Members would have 30 days in which to file objections, if any, with the undersigned. Ten objections were ultimately received by the undersigned.[1]

Temporal Scope of the Agreement

By motion dated August 26, 2004, the parties requested that the temporal scope of the class be limited to the period from February 1994 to September 2, 2003. As noted at the outset, the class was originally defined as "February 1994 to the present." I am cognizant, however, that a settlement agreement of this nature is not final at the time it is signed and that, inevitably, a period of time elapses between that time and the time the agreement it is ultimately approved, if at all. The parties have represented that, at the time they were negotiating the Agreement, they arrived at certain

---

[1] Petitions were received from the following Class Members: Jamshyd Rasekh; Jess Rajan; Kunapuli Madhusudhan; Muhammad Chaudhry; Emiko Purdy; Fazal Rahman; Mon Yee; Robert Tse; Clemen Gehrlain; and Abdul Sadiq. Their objections will not be addressed individually; however, to the extent the undersigned believes that a relevant objection has been made, that question will be addressed. In particular, relevant points that were raised in the objections were that: the Class Agents were getting too much relief and/or that Class Members in the lower two tiers of the Agreement were not getting enough; the Agreement does not explicitly identify the relief being received by certain Class Agents; and, it is unclear from the Agreement how certain relief is to be allocated.

2

amounts of relief based on the circumstances that existed at the time in terms of how many pending complaints were subsumed. On this point, the parties have provided what they believe to be a fairly exhaustive list of individuals who had such complaints at the time the Agreement was being negotiated. Because the Agreement was reached using that data, and because the parties have represented that they did not consider complaints filed after September 2, 2003, in reaching the Agreement, I find that it is appropriate to limit the temporal scope of the class to the period from 1994 to September 2, 2003. Accordingly, I find that the Agreement does not encompass individual complaints that were filed after September 2, 2003, and which otherwise would be subsumed in the class. Therefore, such complaints should either continue to be processed as individual complaints or, if they have been placed in abeyance because of the class complaint, should be reinstated for processing.

**Relief Provided by the Agreement**

The Agreement can be characterized as providing two types of relief, the first being injunctive relief that will be in effect for a period of three years. That relief includes, initially, the creation of a Development Opportunity Placement Program (DOPP). The Agreement provides that a pilot DOPP will be created within 180 days of the effective date of the Agreement within certain Agency subagencies that have been identified by the Class Agents as having problems with respect to promotions and details. These subagencies include the Food Safety and Inspection Service (FSIS), the Agricultural Research Service (ARS), the Farm Service Agency (FSA), the Office of Civil Rights (OCR), the Natural Resources Conservation Service (NRCS), and the Animal and Plant Health Inspection Service (APHIS).

The purpose of the DOPP is to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations. The DOPP, which will be subject to funding availability, will require subagencies to make available no fewer than two opportunities annually during the three years the Agreement is in effect. The details, temporary promotions, or developmental assignments will be for a minimum of 31 days, will cover all pay grade levels, and will be posted on a web site. The DOPP will be open to all employees, although

the Agreement provides that Class Agents who are eligible and qualified to participate in it will receive priority consideration.

The second aspect of the injunctive relief is the creation of a Graduate Scholarship Program to provide funding for graduate school. Within 180 days of the effective date of the Agreement, the Agency will create such a program for Masters and PhD students within FSIS, FSA, NRCS, the Forest Service (FS), the Agricultural Marketing Service (AMS), the Office of the Chief Financial Officer (OCFO), the Grain and Packers and Stockyards Administration (GPSA), and the National Agricultural Statistics Service (NASS). The Agreement provides that, between these offices, there will be a total of 36 scholarships, and the Agency Liaison, with the assistance of the affected subagencies, will establish requirements for eligibility, eligible fields of study, selection criteria, and all other details of the program.

The third aspect of injunctive relief is an Agency-wide Job Fair that will be held at four regional locations for employment in job categories where the Agency's Asian/Pacific Islander population is statistically underrepresented. The Agreement provides that the Job Fair will be sponsored by FS, NRCS, AMS, FSA, OCFO, GPSA, NASS, and the Rural Housing Service.

Fourth, the Agreement provides for certain policy development, including the review, update, and issuance of an Agency-wide Affirmative Employment Plan (AEP) to ensure that all appropriate issues related to Class Members are addressed in the plan. Additionally, the Agreement provides that the Department's Assistant Secretary for Civil Rights or designee and Agency Liaison will work with Agency subagencies to ensure that they have current and comprehensive AEPs.

Finally, the Agreement provides that every employee will have an up-to-date individual development plan (IDP). Pursuant to the Agreement, at the request of a Class Member the subagency in which s/he is employed is required to ensure that his/her IDP is up-to-date and that it has identified appropriate training specifically tailored to enhance that individual's job performance.

For purposes of individual relief, the class is divided into four tiers, i.e., Tier One, Tier Two, Tier Three, and Tier Four. Tier One comprises six Class Agents, including Dr. Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The Agreement provides that these individuals will enter into individual settlement agreements with the Agency. Under those agreements, Dr. Basu will receive: a retroactive promotion effective September 1998

4

into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay in the amount of $98,219; restoration of 564 hours of sick leave; $200,000 in compensatory damages; the expungement of a reprimand and information related to misconduct investigations; and reasonable attorney's fees. Dr. Dey will receive: a retroactive promotion effective September 1998 into the position of Veterinary Medical Officer (National Poultry Program Leader), Office of Public of Health and Science, GS-14; back pay in the amount of $46,000; priority placement into the first GS-15 position for which he qualifies; restoration of 476 hours of sick leave; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Yee will receive: a retroactive promotion effective September 1998 into the position of Invasive Species Program Manager, U.S. Forest Program Pacific Southwest Region, in Vallejo, California; back pay estimated to be $68,154; $50,000 in compensatory damages; and reasonable attorney's fees. Dr. Murthy will receive: $40,000 in compensatory damages; advancement to the GS-14, Step 10 level; and reassignment into the position of Veterinary Medical Officer, GS-0701-14, Office of Program Policy and Development, New Technology Staff; Office of Personnel Management (OPM) Leadership training; and reasonable attorney's fees. Dr. Lakhani will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees. Finally, Dr. Saini will receive: $40,000 in compensatory damages; OPM Leadership Training; and reasonable attorney's fees.[2]

Tier Two is comprised of the remaining 22 Class Agents, who will share $372,500, along with two former Class Agents who are not included in the Agreement because they previously signed settlement agreements resolving their individual complaints. The parties have represented that the distribution of this sum will be at the discretion of Dr. Basu, with the assistance of his representative, and will involve a system whereby each individual is required to file a petition setting forth his/her entitlement to a specific amount. The Agreement provides that each of the five Tier Two Class Members with pending administrative complaints will receive attorney's fees not to exceed $25,000. Finally, the Agreement provides that the two Tier Two Class Agents with Federal district complaints will receive "[a]ll attorney's fees."

---

[2]The Agreement provides that Tier One Class Members will receive, altogether, $350,000 in reasonable attorney's fees.

Tier Three is comprised of individuals with pending administrative complaints and two individuals with complaints in Federal district court. With respect to the former, these individuals will be afforded the option of either accepting a lump sum payment of $5,000 or an expedited hearing on their individual complaints along with an entitlement to the injunctive relief. The two individuals with pending district court cases will receive a lump sum payment of $7,500 and attorney's fees.

Tier Four is comprised of those Class Members who have not filed individual complaints of discrimination. The Agreement provides that these individuals will be entitled to the injunctive relief.

### Class Member Consideration

The manner in which the Agreement is structured affords the Class Members in Tiers One through Three two options, *i.e.*, either accept the offered individual relief or not accept that relief and merely be entitled to injunctive relief. Regardless of which option is exercised, those portions of the Class Members' individual administrative complaints that are subsumed within the class are deemed to be resolved.[3] Furthermore, Class Members, under either option, would still be entitled to pursue those portions of their complaints that are not subsumed.

For those Class Members with cases pending in Federal court, no portion of their complaints can be deemed to be subsumed. In so finding, I note that the applicable regulations, along with EEOC Management Directive 110 (MD-110), only contemplate that individual complaints within

---

[3]The undersigned interprets the term "subsumed" to be controlled by the claim, not the basis. To wit, what is subsumed by the class complaint are any issues involving promotions and/or non-selections, regardless if they were brought under bases other than race or national origin. Therefore, a Class Member whose individual complaint also alleges that a non-promotion was based on another protected category other than race or national origin, *e.g.*, gender, would not be permitted to pursue the non-promotion under that basis(es). I am cognizant that the Agreement, in the section which discusses Class Member consideration, contemplates that an individual complaint is either subsumed or not subsumed and does not address the contingency that one complaint could contain both subsumed and non-subsumed claims. I find that the intent of this provision, however worded, is that Class Members can still pursue individual claims that are not subsumed. Indeed, I find that the parties, even had they wanted to, do not possess the authority to require Class Members to withdraw complaints/claims that are not subsumed within the Class.

the administrative process are subsumed.[4]  Therefore, if a Class Member with a case(s) in Federal court does not opt for relief under the Agreement, his/her case(s) is not otherwise affected by the Agreement.  It is apparent that there are five individuals who have such complaints, *i.e.*, Dr. Mon Yee, Dr. Ronald Shinsato, Dr. Jess Rajan, Dr. Joyce Mayekawa, and Dr. Jamshyd Rasekh. According to the Agency, with respect to both Dr. Shinsato and Dr. Rajan, the parties in those cases were granted stays by the district court pending a ruling on the fairness of the Agreement.  Similarly, the Agency represents that Dr. Mayekawa's case was dismissed by the district court without prejudice pending final resolution of this class action.

With respect to Dr. Rasekh, the Agency cites a letter dated February 25, 2004, in which he rejected the offer of all attorney's fees and the other Tier Two relief.  Although Dr. Rasekh subsequently informed the parties in July 2004 that he was withdrawing his objection and wished to participate in the Agreement, the parties assert that his initial rejection extinguished the offer.  Dr. Rasekh's primary assertion in response is that his actions cannot be construed as a rejection of the applicable terms in the Agreement insofar as the Agreement was conditional in nature and had yet to be approved by the undersigned.  In considering this question, I find that the parties' position is unpersuasive.  Initially, although the parties have argued that Dr. Rasekh proceeded with his district court claims at his own peril, it is not apparent what option he had.  On this point, although the parties have represented that stays were obtained with regard to Dr. Shinsato and Dr. Rajan, there is no indication that the Agency sought to achieve a stay in Dr. Rasekh's case and/or broached that possibility with Dr. Rasekh.  More important, I find persuasive Dr. Rasekh's argument that he could not have rejected the offer made in the Agreement because the Agreement was, in fact, not final. In this regard, I find that, until an administrative judge approves a class settlement, none of the provisions have any legal effect.[5]  Therefore, there was never any actual offer for Dr. Rasekh to

---

[4]The term "subsumed," for purposes of this decision, means complaints/claims at the administrative level that fall within the definition of the class.  Complaints/claims in Federal court may fall within the definition of the class, but they are not subsumed.

[5]Additionally, from a practical standpoint, because the Agreement states that Dr. Rasekh is entitled to certain relief, it is not apparent how the parties could simply ignore that language once the Agreement is approved without being deemed to have breached the Agreement.  The undersigned, even if he agreed with

(continued...)

7

Dec 20 04 10:42a      Mon Yee          (909) 639-2464          p.10

reject. Accordingly, I find that Dr. Rasekh is entitled to the Tier Two relief offered in the Agreement.

In Dr. Yee's case, it is apparent that, at the time the Agreement was signed, his cases were pending at the administrative level. Thereafter, however, Dr. Yee took his complaints into Federal district court. The Agency's position is that, although the circumstances which led the parties to offer Dr. Yee substantial relief have changed, it should not be required to provide him with that relief while allowing him to maintain his district court complaints. In reviewing Dr. Yee's objection, it is not apparent that he is asserting he should be entitled to the offered individual relief for only withdrawing those complaints/claims that remain at the administrative level. Furthermore, even if he were arguing that, the Agreement does not state that the offered relief is only in exchange for the withdrawal of subsumed administrative claims. In so finding, I note that the portion of the Agreement that applies to Tier One refers to "individual claims of employment discrimination," and does not draw a distinction between administrative and Federal district court complaints. Agreement at 14. Moreover, in the portion of the Agreement that discusses what needs to be withdrawn for a Class Agent or Class Member to receive individual relief, it refers to all complaints, administrative or Federal, falling within the definition of the Class and pending at the "Effective Date of this Agreement," i.e., the date on which it is finally approved. Agreement at 6.

Dr. Yee's objection states, in relevant part, that he "is pursuing claims in the Los Angeles federal district court, several of which concern promotions. The question then becomes what process is due before the government can deprive him of his property interest in his claims, which he would much rather pursue on his own . . . ." I find that this objection is premised on a misunderstanding by Dr. Yee of what his rights are under the Agreement. As discussed, in the event Dr. Yee does not opt for any individual relief, he can still pursue all of his Federal district court complaints, including those complaints/claims involving promotions and/or non-selections. Furthermore, if Dr. Yee

---

⁴(...continued)
the parties' position, does not have the authority to invalidate provisions of the Agreement. In this regard, an administrative judge may not modify the proposed agreement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

8

accepts the individual relief, he would only be required, under the terms of the Agreement, to withdraw those claims deemed to fall within the definition of the class.

## Tier One Relief

At the time the Notice was issued, the parties requested that, for privacy reasons, the four exhibits referenced in the Agreement not be disseminated. Exhibit One identifies the six Class Agents in Tier One and contains the letters sent to each of those individuals regarding the relief proposed for them. Exhibit Two identifies the 22 remaining Class Agents as well as the former Class Agents not included in the Agreement, along with a sample of the letter of proposed relief that was sent to the 22 Class Agents. Exhibit Three identifies the 31 individuals who were deemed eligible to receive Tier Three relief, a sample letter of proposed relief that was sent to these individuals, and a 10-page document listing various Agency employees who had filed EEO complaints. Finally, Exhibit Four contains a sample copy of the letter sent to Tier Four Class Members, along with an extensive list of Asian individuals employed by the Agency.

Dr. Yee objects to the decision not to disseminate the four exhibits, arguing that "[r]eferences to undisclosed terms and attachments is wholly inadequate to allow a class member to evaluate the resolution." In considering this assertion, I am not persuaded that the decision to not include the documents set forth in Exhibits Two, Three, and Four, was inappropriate. In so finding, I note that, because the relief being provided to individuals in Tiers Two through Four is specified in both the Agreement and the Notice, it is not apparent how having these exhibits would have helped an individual "evaluate the resolution." I do agree, however, that the information contained in Exhibit One should have been made available to the Class Members. In so finding, I note that the regulations at 29 C.F.R. § 1614.204(g)(4) state that the notice of relief issued to the Class Members "shall state the relief, if any, to be granted by the agency . . . ." In this case, both the Notice and the Agreement state that the six Class Agents in Tier One would receive relief pursuant to "individual settlement agreements." Having considered this provision, I find that it is too vague to satisfy the aforementioned requirement. Furthermore, I find the term "individual settlement agreement" to be a misnomer. A settlement agreement is a contract which two parties enter into freely. In this case, I find that the individual agreements cannot be deemed contracts insofar as most, if not all, of the consideration being provided by the six Class Agents, *i.e.*, the withdrawal of their subsumed claims,

Dec 20 04 10:43a        Mon Yee            (909) 869-2464            p.12

is the consideration that was already being provided by virtue of the Agreement itself. In other words, once the Agreement is approved, the six Class Agents, whether or not they enter into the "individual settlement agreements," are precluded from pursuing those administrative claims that are subsumed within the class complaint. As such, I find that the "individual settlement agreements" are merely a mechanism through which the six Class Agents in Tier One are to receive the relief provided by the Agreement itself.[6]

Despite arriving at this conclusion, I have determined that, although the Notice should have specifically identified the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. What is clearly implicit in the Agreement is that the Class Agents in Tier One are to receive more relief than those in the lower three tiers.[7] As such, any Class Member in the lower three tiers who believed s/he was not being offered adequate relief and/or did not believe it was equitable to provide the Class Agents in Tier One with more relief could have filed a petition to that effect.[8] More important, every Class Member was aware of the relief that s/he is entitled to under the Agreement. Therefore, if a Class Member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief.

## Fairness of the Agreement

The standard for EEOC approval of class case settlements is whether the Administrative Judge finds that the agreement is "fair, adequate and reasonable to the class as a whole." 29 C.F.R.

---

[6] Even if I were to conclude that these constituted valid settlement agreements, there is still no legitimate privacy concern as the six Tier One Class Agents, in negotiating for the relief they are to receive, bound the other Class Members.

[7] In particular, both the Agreement and the Notice state that the Tier One Class Agents would be receiving $350,000 in attorney's fees, which is considerably more per Class Agent than the $25,000 being received by the Tier Two Class Agents with pending administrative complaints.

[8] I note that at least two Class Members filed petitions objecting to the fact that the Class Agents in Tier One were getting too much relief. Furthermore, I note that Dr. Yee is the only Class Member who objected to the fact that such relief was not specified. Dr. Yee is not only a Tier One Class Agent himself, but, had he wished to know the terms of the relief being offered to the other Tier One Class Agents, he could have sought that information from class counsel. Finally, the individual relief has been specified in this decision, and any petitioner who believes it is unfair has the right to raise such an argument in an appeal.

§ 1614.204(g)(4)(2002). If the Administrative Judge finds that the resolution of the complaint is "fair, adequate and reasonable to the class as a whole, the resolution shall bind all members of the class." *Id.; see also Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999). The Administrative Judge may not modify the proposed settlement, but may only approve or disapprove the agreement in its entirety. 29 C.F.R. § 1614.204(g)(4).

Neither EEOC regulations nor MD-110 identify the considerations for determining whether a class settlement is fair, adequate and reasonable. *See* 29 C.F.R. Part 1614; EEOC EEO Management Directive 110 ("MD-110") (November 9, 1999), Ch. 8. Courts, however, have stressed that the "test is whether the settlement is adequate and reasonable and not whether a better settlement is adequate and reasonable and not whether a better settlement is conceivable." *In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 8931 at *19 (D.D.C. Mar. 20, 2000). "Voluntary compromises of Title VII actions enjoy a presumption of validity, and should therefore be approved 'unless [they] contain provisions that are unreasonable, unlawful, or against public policy.'" *Kirkland v. New York State Dep't of Correctional Services*, 711 F.2d 1117, 1128-29 (2d Cir. 1983), *cert. denied*, 465 U.S. 1005 (1984). Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. *Osher v. SCA Realty, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996).

The Commission has held that the administrative judge's primary task is to evaluate the terms of the settlement in relation to the strength of the Complainants' case. *Modlin v. Social Security Administration*, EEOC Appeal No. 01A24054 (February 20, 2003) (citing *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998). At the time the present case settled, the class was only conditionally certified and the parties had filed briefs on the question of whether the class should be fully certified. As such, there was a risk that the class would be decertified and never actually proceed to a hearing on the merits. To obtain relief comparable to that provided under the Agreement, the Class would, in addition to achieving full certification, had to have proved Agency discrimination over the course of several years. Additionally, in the event a finding of discrimination were made, each Class Member would have had to establish his/her individual entitlement to relief. Finally, I note that the injunctive relief provided by the Agreement would not have been available as a remedy in the event

11

Dec 20 04 10:44a        Mon Yee                (909) 869-2464                    p.14

the Class had prevailed after a hearing.[9]  For these reasons, I find that the relief being provided, which includes potentially as much as $1,700,000 in individual relief and attorney's fees, is fair and adequate to the Class as a whole.

With respect to the individual awards of relief, the six Class Agents in Tier One, along with those identified in Tier Two, are receiving more individual relief than the other Class Members as well as priority consideration under the DOPP.  As the parties correctly note in their motion for approval of the Agreement, the Commission has held that it is fair to provide greater relief to the Class Agents as they are the individuals who have spearheaded the class complaint of discrimination. On this point, the parties assert that the Class Agents were not only actively involved in the litigation of the complaint, but they have "appeared at certain meetings on behalf of the Class with high-level officials in USDA___ ."  The Class Members identified in Tier Three, despite having individual complaints, were not actively involved in the class action.  If these individuals are not satisfied with the lump sum offer of $5,000, they have the option of an expedited hearing on their subsumed claims.[10]  Finally, although the Class Members who fall under Tier Four are eligible only for injunctive relief, I note they are giving up nothing as a result of the Agreement.

### DECISION

For the foregoing reasons, I conclude that the Settlement Agreement is fair, adequate and reasonable to the Class as a whole and find no basis for vacating the Settlement Agreement. Accordingly, it is my decision to grant final approval to the Settlement Agreement.  Pursuant to 29 C.F.R. § 1614.204(g)(4), the resolution shall bind all members of the class.

It is so ORDERED.

Date: December 7, 2004

Andrew Culbertson
Administrative Judge

---

[9] Specifically, injunctive relief of this nature is not available under 29 C.F.R. Part 1614.

[10] MD-110 provides that class members may not "opt out" of the defined class.  Although allowing certain Class Members the opportunity to proceed with their individual complaints could be viewed as allowing them to "opt out," they are technically not opting out insofar as it is the Agreement itself that provides for the expedited hearing.

12

Ms. Arlean Leland, Esq                                      03/24/06
Associate General Counsel, Civil Rights
Office of the General Counsel (OGC),
United States Department of Agriculture (USDA)
1400 Independence Ave., SW
Room 2006-S
Washington, DC 20250-1400

Re: Response to Inquiries regarding <u>Basu, et. al. v. Department of Agriculture.</u>

Dear Ms. Leland:

This is a rebuttal to the response I received from Mr. Steven C. Brammer, Office of the General Counsel, Civil Rights, USDA dated March 3, 2006 (copy attached). Item number corresponds to the Items listed in Mr. Brammer's response.

1. Item # 1. Mr. Brammer stated in the response letter, page 1, paragraph 3 that OGC has no responsibility in regards to addressing the concern I have regarding the Individual class action settlement agreement. He also stated that "we urge you to address any and all matters of dissatisfaction with Class Counsel, who represents the interests of the Class". My Class counsel, Mr. Hood says that all the negotiations regarding individual settlement agreement were occurred by the negotiating team under the direction of OGC not Class Counsel.
Presently I am the victim of discrimination in this situation, where class counsel, Class Agent-Dr. Arun Basu, Class representative-Mr. Farook Sait and OGC representative Mr. Steven Brammer are not taking responsibility for non promotion in my individual settlement agreement. Mr. Steven Brammer was OGC representative which represented my Agency-FSIS in these negotiations. It is Mr. Steven Brammer's responsibility to correct this non promotion discrimination situation.

2. Item # 1 "<u>Request for registered Mail Receipt of Letter informing you of proposed Settlement</u>" I should have received my individual settlement agreement on Feb 17 of 2004 with instruction to file objection if I did not agree with non-promotion terms of my settlement agreement. This did not happen and I lost an opportunity to object to my individual settlement agreement of non promotion to Administrative Judge Andrew Culbertson. It was Mr. Steven Brammer's responsibility to make sure I receive a copy of my settlement agreement on time to file for objection. I came to know recently that one another Agent in Tier 1 filed his objection and changed his non-promotion status to promotion status. This

opportunity was denied to me by Mr. Steven Bramnmer's actions. This need to be corrected. With a promotion to GS-15 step 4.

3. Item 2 Implementation of Development Opportunity Placement Program (DOPP), my agency which is FSIS, has not implemented DOPP program. The DOPP announced in APHIS is giving priority consideration to all Agents in Tire 1 including those agents who have received promotion, and I am going to loose even in this DOPP program.

4. Item # 3, Selection of Departmental Liaison Position, Mr. Brammer state that he will provide me information on my non-selection for this position, in the litigation of my complaint of discrimination as to this issue, but I need to know now and my cases are not processed since several years and I do not know how many more number of years it will take to resolve this issue. This is not an acceptable answer by OGC. Ms. Sadhana True and OGC has to resolve this ASAP.

5. I have many EEO complaints which are not subsumed in Asian Class complaint which are not resolved since many years. Mr. Brammer has to address status of these complaints status as to why these complaints are unresolved since so many years.

6. I am running out of time in this no action situation by OGC on my non-promotion issue and Mr. Brammer has the responsible for this situation. Sincerely,

Dr. Kris Murthy, DVM, MVSc, MS, M (ASCP)
Senior Staff Officer
FSIS, USDA

Hon. Vernon B. Parker                                01/31/06
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250


Dear Hon. Vernon Parker:

I am bringing it to your attention the responses from to Ms. Sadhna True,
Director, Office of Civil Rights, letter dated October 24, 2005, (copy attached)
and the meeting I had with Mr. Steven C. Brammer, OGC, Mr. James Hood,
Class Counsel and OGC staff members, on January 5, 2005.


1. In the second paragraph, Ms True states that "The Office of the Assistant
Secretary for Civil Rights (ASCR) played no role in determining the individual
relief that would be offered to class members. Thus, we are unable to explain
why some class members received certain relief and others did not. We
recommend that you raise your concerns with your representative and/or the
Office of the General Counsel".

I am taken back from this response because special Assistant to Assistant
secretary for Civil Rights (ASCR) Mr. Farook Sait was our (Class members')
representative in negotiating both individual relief and general class members'
relief. Mr. Sait was involved in all negotiations. Even though this was a direct
conflict of interest on part of Mr. Sait to be representative of Class members in
negotiating individual relief and be an employee to ASCR, OCR. My request to
be Class members' representative was denied by Class Agent Dr. Arun Basu.
Mr. Sait has played crucial role in determining individual relief of Asian Class
action settlement agreement. In the individual relief negotiating process, I have
been denied a promotion.

2. From the very beginning I was the leader in starting the Organization of South
Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have
endured many challenging situations due to my involvement in OSAAA and
Asian Class complaint in USDA. The Asian Class complaint was filed on the
basis of denial of promotion to Asian employees in the agency. Denial of
promotion was the core focus of the class complaint. I had number of
complaints related to denial of promotion. Many of them were considered as very
good complaints as for discrimination was concerned.

Hon. Vernon Parker

I still have strong complaints which are unresolved since few years which are not part of Class Action Settlement Agreement to be subsumed. The Administrative Judge Hon. Andrew Culbertson of EEOC has stated in the settlement agreement states that Tier 1 class agents need to treated exclusively due to their contribution to the certification of class action, still only three members of Tier 1 received promotion and I have been denied promotion.

In Page 11 of Asian Class Action Settlement Agreement, second paragraph, 6th line states "Voluntary compromises of title VII actions enjoys a presumption of validity, and should therefore be approved unless contain provisions that are unreasonable, unlawful, or against public policy". Hon Administrative Judge Andrew Culbertson also said in the same paragraph "Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. Osher v. SCA Realty, Inc, 945 F. Supp. 298, 304 (D.D.C.1996).

I am willing to resolve all my existing complaints and class action settlement agreement issues if I am considered for a GS-15 promotion. I am already at highest pay level of GS-14 step 10. This will be par with other Tier 1 agents regarding promotion. I am the only one from Tier 1 pursuing promotion issue that I know of.

3. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already January 15, 2006, that means this program is 365 days over due. This is a breach of settlement agreement. This has prevented me getting promotion to my next grade. In the settlement agreement, it is stated that Agents of Tire 1 should be given "Priority Considerations",

I have been interviewed for GS-15, Microbiologist position in last three months, but decision has not made. (It is In OPHS division of FSIS) I request you to negotiate with FSIS to consider me for this promotion under the scope of settlement agreement.

4. It is already 365 days since the settlement agreement implementation date; the OPM training which I was to receive according to the agreement has not been initiated. I have past complaints regarding denial of SES training. When the OPM training was added in my settlement agreement, it was stipulated to be SES training and certification due to my past complaints. Not one, on-line OPM training course.

3

Hon Vernon Parker:

5. When I applied for Departmental Liaison position under settlement agreement, I was denied stating that I am class member, but ASCR and OCR appointed Dr. Ruihong Guo, who left the position in short time was also a class member, a Chinese Asian. Why I was discriminated stating that I am a class member but not Dr. Ruihong Guo is unanswered yet. Please look into this and provide me justices in this regard.

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
USDA, FSIS
Kmurthy@usda.gov
202-690-5646

Ms. Arlean Leland, Esq                                          01/17/06
Associate General Counsel, Civil Rights
Office of the General Counsel (OGC),
United States Department of Agriculture (USDA)
1400 Independence Ave., SW
Room 2006-S
Washington, DC 20250-1400

Dear Ms. Leland:

This is in response to Ms. Sadhna True, Director, Office of Civil Rights, letter dated October 24, 2005, (copy attached) and the meeting I had with Mr. Steven C. Brammer, OGC, Mr. James Hood, Class Counsel and OGC staff members, on January 5, 2005.

1. In the second paragraph, Ms True states that "The Office of the Assistant Secretary for Civil Rights (ASCR) played no role in determining the individual relief that would be offered to class members. Thus, we are unable to explain why some class members received certain relief and others did not. We recommend that you raise your concerns with your representative and/or the Office of the General Counsel".

I am taken back from this response because special Assistant to Assistant secretary for Civil Rights (ASCR) Mr. Farook Sait was our (Class members') representative in negotiating both individual relief and general class members' relief. Mr. Sait was involved in all negotiations. Even though this was a direct conflict of interest on part of Mr. Sait to be representative of Class members in negotiating individual relief and be an employee to ASCR, OCR. My request to be Class members' representative was denied by Class Agent Dr. Arun Basu. Mr. Sait has played crucial role in determining individual relief of Asian Class action settlement agreement. In the individual relief negotiating process, I have been denied a promotion.

2. From the very beginning I was the leader in starting the Organization of South Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have endured many challenging situations due to my involvement in OSAAA and Asian Class complaint in USDA. The Asian Class complaint was filed on the basis of denial of promotion to Asian employees in the agency. Denial of promotion was the core focus of the class complaint. I had number of complaints related to denial of promotion. Many of them were considered as very good complaints as for discrimination was concerned.

2

Ms. Leland

I still have strong complaints which are unresolved since few years which are not part of Class Action Settlement Agreement to be subsumed. The Administrative Judge Hon. Andrew Culbertson of EEOC has stated in the settlement agreement states that Tier 1 class agents need to treated exclusively due to their contribution to the certification of class action, still only three members of Tier 1 received promotion and I have been denied promotion.

In Page 11 of Asian Class Action Settlement Agreement, second paragraph, 6th line states "Voluntary compromises of title VII actions enjoys a presumption of validity, and should therefore be approved unless contain provisions that are unreasonable, unlawful, or against public policy". Hon Administrative Judge Andrew Culbertson also said in the same paragraph "Given the extraordinary expense and resources required to adjudicate class actions, there is a particularly strong preference for resolving these types of disputes through voluntary compromise. Osher v. SCA Realty, Inc, 945 F. Supp. 298, 304 (D.D.C.1996).

I am willing to resolve all my existing complaints and class action settlement agreement issues if I am considered for a GS-15 promotion. I am already at highest pay level of GS-14 step 10. This will be par with other Tier 1 agents regarding promotion. I am the only one from Tier 1 pursuing promotion issue that I know of.

3. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already January 15, 2006, that means this program is 365 days over due. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade. In the settlement agreement, it is stated that Agents of Tire 1 should be given "Priority Considerations",

I have been interviewed for GS-15, Microbiologist position in last three months, but decision has not made. (It is In OPHS division of FSIS) I request you to negotiate with FSIS to consider me for this promotion under the scope of settlement agreement.

4. It is already 365 days since the settlement agreement implementation date; the OPM training which I was to receive according to the agreement has not been initiated. I have past complaints regarding denial of SES training. When the OPM training was added in my settlement agreement, it was stipulated to be SES training and certification due to my past complaints. Not one, on-line OPM training course.

Ms. Leland

5. When I applied for Departmental Liaison position under settlement agreement, I was denied stating that I am class member, but ASCR and OCR appointed Dr. Ruihong Guo, who left the position in short time was also a class member, a Chinese Asian. Why I was discriminated stating that I am a class member but not Dr. Ruihong Guo is unanswered yet. Please look into this and provide me justices in this regard.

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
USDA, FSIS
Kmurthy@usda.gov
202-690-5646

November 22, 2005

Mr. Farook Sait
Special Assistant to Assistant Secretary for Civil Rights
1400 Independence Ave, SW
Whitten Building Room, 240W
Washington D. C., 20250-3700

### Arun C. Basu, et al, Complaints v. Ann M. Veneman, Secretary, USDA

Dear Mr. Sait:

**Subject:** Request to undo inequitable treatment of Agents in tier # 1 of the Asian Class
Settlement Agreement. EEOC No. 100-A1-7863X, Agency No. 000190

It has been a few months now that the Asian class complaint is being implemented in U. S.
Department of Agriculture (USDA). Confidential information regarding individual settlement
terms are being uncovered.

The undersigned members of the Class Action were instrumental in starting the Organization of
South Asian Americans in Agriculture (OSAAA) and the Asian Class Complaint. We have
endured many challenging situations due to our involvement in OSAAA and Asian Class
complaint in USDA. 

The Asian Class complaint was primarily filed on the basis of denial of promotion to Asian
employees in the agency. We had filed a number of complaints related to denial of promotion.
Asian Class Action Settlement Agreement identifies all the members in tier # 1 as Agents and
implies same treatment, but there is a disparity in promotion of tier # 1 members under
implementation of this settlement. There is no inequitable treatment for members of the other
tiers and this discrepancy is only for tier # 1. 

As you are well aware, during the process of Asian class complaint, details of individual class
settlements were kept confidential and inequitable treatment of members of within tier # 1 could
not be determined. After the settlement, we have learnt that three class agents in tier # 1 have
been granted promotion whereas three other agents were denied promotion, even though all of
them were equally highly qualified and had equally strong cases. One of the Class Agent in tier #
1 was promoted not only to the next grade but was given two grade level promotions. (From GS-
13 to GS-15).

2

The settlement agreement of this individual did not specify that this person was supposed to get two grade promotions, but during the implementation process it was accomplished by the implementation team. In early part of FY 2004, we had written an e-mail to Hon. Andrew Culbertson, AJ, requesting him to consider promotion for all tier # 1 agents, because the core issue of filing this Asian class action complaint was the denial of promotion.

In regards to inequitable treatment of Agents in tier # 1 of the Asian Class, Settlement Agreement. EEOC No. 100-A1-7863X, Agency No. 000190, we wrote to both Hon Vernon Parker, ASCR and Ms. Sadhana True, Director of OCR. Ms. Sadhana True in her response to us stated that "we are unable to explain why some class members received certain relief and others did not" and she said that "We recommend that you raise your concerns with your representative and/or the Office of the General Counsel. (Copy attached)

You being our representative of Asian Class Settlement Agreement, we are sending this letter. In light of the above, we are requesting you to kindly intervene in this process and grant us promotion from GS-14 to GS-15 so that equity and fairness would be achieved by all the Agents in tier one. We have already submitted similar documents to representative at Office of the General Counsel. We understand from a major player of class action settlement team that there is still room to do tweaking under tier # 1 as per the settlement agreement.

For further information you can contact us at Kris.murthy@usda.gov or Hyder.lakhani@usda.gov.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)

Dr. Hyder Lakhani, Ph.D.

Enclosure
cc.
Hon. Andrew Culbertson
Administrative Judge
U. S. Equal employment Opportunity Commission
Washington Field Office
1801 L Street, N. W., Suite 100
Washington D. C., 20507

October 21, 2005

Hon. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

<u>**Arun C. Basu v. Veneman**</u>

Dear Hon. Parker:

Subject: Breech of Asian Class Action Settlement Agreement

Your strong commitment and support made the Asian class action settlement a reality and without your sustained effort, this success would not have been possible. I am thankful for your nice gesture.

1. In page 3 of Asian Class Action Settlement Agreement, Under <u>Relief Provided by the Agreement</u> the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004.

It is already October 21, 2005, that means this program is 300 days over due. Creation and implementation of DOPP program has not been initiated. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade

2. It is already 300 days since the settlement agreement implementation date, the OPM training which I was to receive according to the agreement has not been initiated. This is a breech of settlement agreement. This has prevented me an opportunity for promotion to my next grade.

3. There is no uniformed implementation of terms of settlement agreement, even though the settlement agreements states that tier # 1 agents are to be treated same. This is also delaying me the promotion to next grade.

4. The person who was appointed as Liaison Specialist, GS-0301-15, in Office of Civil Rights has left the position with in three months. As you know, I applied for this position and also I filed EEO complaint of denial of promotion for same position. Later I withdrew this complaint upon the request of Dr. Arun Basu, Class Agent for Asian Class Complaint.

Without the liaison specialist in the position, agencies are not implementing the terms of the settlement agreement, because there is nobody to monitor and question non implementation of settlement agreement.

This is to request to you consider me for this position, The Office of Civil Rights already has my application. It is important that this position to be filled ASAP in order to implement the terms of the class action and to monitor the progress for next three years.

If you have further questions, contact me at 202-690-5646 or at Kris.murthy@usda.gov

Sincerely

Dr. Kris Murthy, DVM, MVSc, MS, M (ASCP)
Senior Staff Officer
USDA, FSIS, NTS

**HAND DELIVERED**

October 5, 2005

Mr. Vernon B. Parker
Under Secretary for Civil Rights
U. S. Department of Agriculture
Washington, DC 20250

**Arun C. Basu v. Veneman**

Dear Mr. Parker:

**Subject:** Request to undo inequitable treatment of Agents in tier # 1 of the Asian Class
Settlement Agreement.

In your public expressions on civil rights you have remained steadfast that this Administration
has high priority in correcting the civil right problems of USDA and that the Secretary is
working hard to improve USDA's image in this area. It is a few months now that the Asian class
complaint being implemented in U. S. Department of Agriculture (USDA). Thanks for being a
major player in accomplishing this historical mile-stone.

The undersigned members of the Class Action were instrumental in starting the Organization of
South Asian Americans in Agriculture (OSAAA) and the Asian Class Complaint. We have
endured many challenging situations due to our involvement in OSAAA and Asian Class
complaint in USDA.

The Asian Class complaint was primarily filed on the basis of denial of promotion to Asian
employees in the agency. Denial of promotion was the core focus of the class complaint. We had
filed number of complaints related to denial of promotion. Asian Class Action Settlement
Agreement identifies that all the members in tier # 1 as Agents and implies same treatment, but
still this disparity in promotion to tier # 1 members exists.

As you are well aware, during the process of Asian class complaint, details of individual class
settlements were kept confidential. After the settlement, we have learnt that three class agents in
tier # 1 have been granted promotion under the class action settlement agreement whereas three
other agents were denied promotion, even though all of them were equally highly qualified and
had equally strong cases. One of the Class Agent in tier # 1 was not only promoted to next grade
but was given two grade level promotions. (From GS-13 to GS-15), considerable back pay and
substantial financial benefits. The settlement agreement of this individual does not specify that
this person was supposed to get two grade promotions, but during the implementation process it
was accomplished by the implementation team.

In light of the above, we are requesting you to kindly intervene in this process and grant us promotion from GS-14 to GS-15 so that equity and fairness would be achieved by all the Agents in tier one. We understand from a major player of class action settlement team that there is still some room to do tweaking under tier # 1.

The previous request by Dr. Krishna Murthy for your intervene in this process has gone in vein without a response.

Sincerely,

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)

Dr. Hyder Lakhani, Ph.D.

Mr. Kevin McGrath
Branch Chief                                                September 22, 2005
Complaint Management Branch
Food Safety and Inspection Service
5601 Sunnyside avenue, Building 2, Rm 1134-A
Beltsville, MD 20705

### Arun C. Basu v. Veneman-Asian Class Complaint Settlement Agreement

Dear Mr. McGrath:

From the very beginning I was instrumental in starting the Organization of South Asian Americans in Agriculture (OSAAA) and the Asian class complaint. I have endured many challenging situations due to my involvement in OSAAA and Asian Class complaint in USDA.

The Asian Class complaint was filed on the basis of denial of promotion to Asian employees in the agency. Denial of promotion was the core focus of the class complaint. I had number of complaints related to denial of promotion. Many of them were considered as very good complaints as for discrimination was concerned. Under the settlement of Asian class complaints many of my complaints are gone. I still have few strong complaints which are unresolved since few years. The settlement agreement states that Tier 1 class agents need to treated exclusively due to their contribution to the certification of class action

As you know in the process of Asian class complaint, details of individual class settlements were kept confidential throughout negotiation, approval and during implementation. I came to know recently that three class members in tier 1 have been granted promotion under Asian class action settlement agreement. Even though I was co-agent for the Asian class complaint, I have been denied the same promotion. One member was not only promoted to next grade but given two grade level promotions. (From GS-13 to GS-15), back pay and substantial financial benefits. The settlement agreement of this individual do not specify that this person was suppose to get two grade promotion, but under implementation process it is interpreted favorably for the individual and this was accomplished by FSIS. Even though the same settlement terms apply to my case also a promotion has been denied to me. I am seeking your input as to why I am denied of the same promotion which three other class agents have received.

Therefore I am requesting a meeting with you, asking that my situation be given needed attention by the Agency for reconsideration for a promotion. I was told by a member of class action settlement team that there is still some room to do tweaking under tier 1.

Even though I was the Co-Agent and Agent for the class, from the beginning the terms of the settlement agreement were kept confidential and no information was given by Class agent, OCR representative, or the class complaint lawyer to me. Every time I tried to find pout the details of

the settlement agreement I was kept in dark by the negotiating team and threatened by stating I would loose what little I may get from the settlement. I was not aware that three of the Tire one agents gotten the promotion after complaining with settlement team. This is a major difference in leaving me without promotion but providing promotion to others in tier 1.

Apart from I being discriminated getting a promotion, the terms of the Asian Class Action settlement agreement being interpreted and applied to promote agency certain employees. This un-uniformed implementation of terms of settlement agreement is also denying me the promotion to next grade.

1. In page 3 of Asian Class Action Settlement Agreement, Under Relief Provided by the Agreement the agreement states that the injunctive relief to Tier one agents like the creation of Development Opportunity Placement Program (DOPP) was to be in place by Food Safety and Inspection Services (FSIS) 180 days from December 7, 2004. It is already September 25, 2005, that means this program is 300 days over due. This is a breech of settlement agreement. This has prevented me getting promotion to my next grade

2. It is already 300 days since the settlement agreement implementation date; the OPM training which I was to receive according to the agreement has not been initiated.

3. In page 4 of Asian class Action Settlement Agreement, first line it states that Class Agents like me who are eligible and qualified to participate in it will receive priority consideration. This means that Class agents ought to be considered in priority for promotion. In spit of this clear stipulation I have been denied a promotion.

4. In case of Dr. Dey the settlement agreement states that "priority placement into first GS-15 position for which he qualifies" In spit of the settlement agreement mandates that priority consideration to be given for my promotion, the agency has not done so. The Agency is using the scope of settlement agreement to their advantage and promoting individuals, rather than applying the settlement agreement uniformly.

5. In page 8, of Asian Class Action Settlement Agreement, second paragraph as stated regarding, Dr. Lee, his initial relief was not included promotion to GS-15. After he complained to Under Secretary for Civil Rights, he was given promotion, financial benefits and back pay. I also wrote to the A. J. Hon. Andrew Culbertson, but my complaining was not considered but for Dr. Lee his complaining was considered.

6. In page 10 of Asian Class Action Settlement agreement, second paragraph, the Administrative Judge Hon. Andrew Culbertson clearly implicit that "Class agents identified in Tire one are to receive more relief than those in the lower three tiers" In spit of this conclusion clearly written in the settlement agreement and the indent was to provide promotion to Tier one members the Agency has denied the promotion to me.

7. In Page 11 of Asian Class Action Settlement Agreement, second paragraph, 6th line states "Voluntary compromises of title VII actions enjoys a presumption of validity, and should therefore be approved unless contain provisions that are unreasonable, unlawful, or against public policy"

In the settlement agreement in tier one, agents are recommended for consideration for promotion yet only three out of six tier 1 members were given promotion. Also one of the tier one member was given two consecutive promotions without observing any time –in- requirement for next promotion. This is against Agency's regulation of personal practices.

8. In page 12 of Asian Class Action Settlement Agreement, second paragraph, 2nd line, the judge has stated beyond doubt that "the class agents (I am a Class Agent and Co-Agent) of tier one are to get priority consideration in promotions. I was denied a promotion thus not following the terms of the settlement agreement.

Sincerely,    -

Dr. Krishna Murthy, DVM, MVSc, MS, M (ASCP)
Asian Class Complaint Co-Agent
202-690-5646

# TAB H

## FEDERAL EXPRESS AUTHORIZATION

| 07/26/06 | SENDER'S NAME<br>Patty Duvernay | SENDER'S TELEPHONE NUMBER<br>(504) 426-6204 |
|---|---|---|
| **MEDTHOD OF PAYMENT**<br>☒ BILL SENDER → | SENDER'S ACCOUNT NUMBER<br>0701-1194-2 | SENDER'S DIVISION/BRANCH/SECTION<br>EEOWSS |
| ☐ BILL RECEIVER → | RECEIVER'S ACCOUNT NUMBER | RECEIVER'S TELEPHONE NUMBER |
| ☐ BILL THIRD PARTY → | THIRD PARTY ACCOUNT NUMBER | THIRD PARTY TELEPHONE NUMBER |

SENDER'S DIVISION/STAFF (Check appropriate block)

☒ ADMINISTRATIVE (All Staffs)
0701-1194-2

☐ DISASTER RECOVERY
2787-8754-0

☐ IRMD, JSPCS (Cyber Security)
0701-1194-2

☐ COD
2787-8842-3

☐ GESD
0701-1194-2

☐ TSPD
2787-8810-5

AUTHORIZED SIGNATURE

*Lorri M. Clark*

**DELIVERY CANNOT BE MADE TO POST OFFICE BOXES**

| TO (COMPANY)<br>Equal Employment Opportunity Commission, Office of Federal Operations | ATTENTION<br>Robert J. Barhart |
|---|---|

STREET ADDRESS
1801 L St., NW

| CITY<br>Washington | STATE<br>DC | ZIP CODE<br>20507 |
|---|---|---|

SPECIAL INSTRUCTIONS

☐ SATURDAY DELIVERY CHARGE      ☐ HOLD AT FEDEX      ☐ DELIVER BY NEXT MORNING

☐ DELIVER - NO SIGNATURE REQUIRED
(Release signature required)

*I authorize Federal Express to deliver this shipment without obtaining a signature and agree to indemnify and hold Federal Express harmless from any resulting claims.*

AUTHORIZED SIGNATURE | DATE

Form created in **Formatta**      Ref: JOHN O      Dep: ADMIN

FORM NFC-1296 (REV. 05/05)

Date: 07/26/2006
Wgt: 1.6 LBS
DV:
Svcs: STANDARD OVERNIGHT
TRCK: 7110 5239 1647

SHIPPING:      4.88
SPECIAL:
HANDLING:      0.34
TOTAL:         0.00
               5.22

*Murthy*

N E E D S    T R K    #



United States
Department of
Agriculture

Office of the
Chief Financial
Officer

National
Finance
Center

P.O. Box 60000
New Orleans
Louisiana 70160

July 26, 2006

Robert J. Barnhart, Director
Compliance and Control Division
Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, DC 20507

**FEDERAL EXPRESS**

|  |  |
|---|---|
| Re: | Krishna Murthy |
| Agency No.: | USDA CRSD-CF-2006-00219 |
| OFO Appeal Docket No. | 01A63690 |

Dear Mr. Barnhart:

In response to our receipt of notification that the above named complainant has filed an appeal, enclosed is a copy of the Equal Employment Opportunity (EEO) complaint file referenced above.

We believe that the evidence in the EEO complaint file supports the Agency's decision. When the appeal is processed, we respectfully request that the Equal Employment Opportunity Commission, Office of Federal Operations, affirm the final action of the agency.

The enclosures were provided to the appellant and the USDA sub-agency during earlier stages of the complaint process.

If you have any questions or need additional information on the subject EEO complaint, please contact Patty Duvernay at (504) 426-6204.

Sincerely,

*Patty Duvernay*

for

Debra A. Byrne, Acting Director
Civil Rights Office

Enclosure

cc:    Mr. Krishna Murthy
       7715 Lear Road
       McLean, VA 22102

       Ellen Hawthorne-Copenhaver, Office of Civil Rights

"An Equal Opportunity Employer"



## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations
### P.O. Box 19848
### Washington, D.C. 20036



06/13/06

Agriculture, Dept of
Dir, Ofc Of Civil Rights
14 & Indep Av SW
Washington, DC  20250-9406

RE: Krishna Murthy
    Docket # : 01A63690
    Assoc #  :
    Agency #1: CRSDCF200600219
    Agency #2:
    Agency #3:
    Filed    : 060506

Dear Sir/Madam:

This is to acknowledge that the above referenced appeal has been received on the date indicated.  The agency must submit the complaint file, along with any related or consolidated complaint files, to the Office of Federal Operations WITHIN 30 DAYS OF INITIAL NOTIFICATION THAT THE COMPLAINANT HAS FILED AN APPEAL.  See 29 C.F.R.1614.403(e).

In addition, any related material developed subsequent to the initial submission of the complaint file, i.e., attorney fees, supplemental invest-igation, etc. must be forwarded upon notification of any related appeal. The agency must ensure that all materials submitted to the Commission have also been provided to the complainant. Enclosed is an "Agency Checklist" for your use in identifying records to submit in your agency file.

IF THE COMPLAINT FILE IS NOT SUBMITTED TO THIS OFFICE WITHIN THE TIME FRAME SET FORTH ABOVE, THE COMMISSION MAY TAKE APPROPRIATE ACTION, INCLUDING DRAWING AN INFERENCE ADVERSE TO THE AGENCY IN ALL MATTERS WHERE THE EVIDENCE IS NOT AVAILABLE TO THE COMMISSION.  THIS COULD RESULT IN A DECISION UNFAVORABLE TO THE AGENCY.

The agency must submit the complaint file within the time frame specified above regardless of whether or not the complainant has timely provided the agency a copy of any supporting statement or brief, and regardless of whether or not the agency's comments or brief relative to the appeal itself are completed.

Any agency statement or brief in opposition to an appeal must be submitted to the Commission and served on the complainant within 30 days of receipt of the statement or brief supporting the appeal.  If no statement or brief supporting the appeal is filed, the statement or brief in opposition to the appeal must be filed within 60 days of the receipt of the appeal.  See 29 C.F.R.1614.403(f).  The Commission will accept statements or briefs in opposition to an appeal by facsimile tranmission (Fax number 202-663-7022) provided they are no more than (10) pages long.



### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

AGENCY CHECKLIST
-----------------

OFO Docket #: 01A63690 Agency #: CRSDCF200600219 Hearing #1:
IMS #

The checklist below is provided for your convenience, and to assist us in ensuring that the documents you send us are complete and properly associated with the correct case file. We would appreciate it if you would use this checklist when you submit your complaint file. Please check off all items where applicable.

___ EEO Counselor's Report
___ Notice of Final Interview
___ Formal Complaint
___ Notice of Agency Acknowledgement of Complaint
___ Partial Dismissal Letter/Supporting Documentation
___ Investigative Report and File(s) (for all complaints noted above)

___ Settlement Agreement
___ Request to reinstate complaint/specific performance for Settlement Breach

___ Hearing Request/Rights/Evidence of receipt of hearing rights
___ ALL DOCUMENTATION SUBMITTED BY THE PARTIES TO THE AJ
    (Including, but not limited to: All discovery related requests, responses
    motions, oppositions, exhibits, and all summary judgement related
    pleadings and documents)
___ ALL NOTICES, RULINGS, AND ORDERS ISSUED BY THE AJ
    (Including, but not limited to: Acknowledgement orders, Discovery Rulings
    Notice of Summary Judgement, Summary Judgement Rulings, Sanction Ruling)

___ Hearing Transcript(s)  **all volumes of multiple transcripts**
___ Hearing Exhibits **all exhibits offered at the hearing**
___ AJ's Findings and Conclusions/Proof of date of agency receipt
___ Final Agency Action/Decision
___ Evidence of receipt/mailing of the Final Action/Decision

___ Compensatory Damages Documentation/Decision
___ Attorney's Fees Petition/Decision
___ Complete Grievance File (If an appeal from a grievance decision is
    involved)

**Please check with Agency Legal Unit for any missing documents

REVISED 06/03

1400 Independence Ave., S.W.
Reporter's Building -- Suite 250
Washington, D.C. 20024-9403
Main Telephone Number: (202) 690-3305
Main Fax Number: (202) 205-8746

**USDA – Office of Civil Rights – Civil Rights Services Division (CRSD)**

# Fax

| To: | Lorri Clark of NFC | From: | Sháni Lindsay |
|---|---|---|---|
| **Fax:** | (504) 426-8228 | **Pages:** | 4, including cover sheet |
| **Phone:** | (202) 720-3821 (sender's phone number) | **Date:** | 7/24/2006 |
| **Re:** | Acknowledgment of Appeal notice from | **CC:** | |
| | EEOC – OFO | | |
| | Re: Krishna Murthy – CRSD-CF-2006-00219 | | |

☐ **Urgent**    ☑ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

◆ **Comments:**

If you have any questions or comments please give me a call on the above referenced number labeled, "sender's phone number".

# EXHIBIT   19

EEOC Appeal Decisions in favor of Agency, and denials of Plaintiff's requests for
reconsideration, of two appeals to EEOC

Westlaw.

EEOC DOC 05A61030                                                    Page 1
2006 WL 2792480 (E.E.O.C.), EEOC DOC 05A61030
(Cite as: 2006 WL 2792480 (E.E.O.C.))

**H**

E.E.O.C.

*1 Office of Federal Operations

KRISHNA MURTHY, COMPLAINANT,
v.
MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
Request No. 05A61030
Appeal No. 01A63690
Agency No. CRSDCF200600219

September 22, 2006

DENIAL

Complainant timely requested reconsideration of the decision in Krishna Murthy v.
Department of Agriculture, EEOC Appeal No. 01A63690 (August 10, 2006). EEOC Regula-
tions provide that the Commission may, in its discretion, grant a request to recon-
sider any previous Commission decision where the requesting party demonstrates that:
(1) the appellate decision involved a clearly erroneous interpretation of material
fact or law; or (2) the appellate decision will have a substantial impact on the
policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission
finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it
is the decision of the Commission to deny the request. The decision in EEOC Appeal
No. 01A63690 remains the Commission's final decision. There is no further right of
administrative appeal on the decision of the Commission on this request.

ORDER

Within 60 days of the date this decision becomes final the agency shall:
    1. Provide documentation showing whether it provided complainant OPM leadership
training in accordance with the agreement.
    2. Provide documentation showing whether it complied with the creation and imple-
mentation of the DOPP pilot as specified in the agreement.
    3. Provide complainant a final decision indicating whether it complied with the
terms of the settlement agreement.

The agency shall submit evidence showing compliance with this decision to the Com-
pliance Officer referenced herein under Implementation of the Commission's Decision.

IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

*2 This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. Filing a civil action will terminate the administrative processing of your complaint.

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

For the Commission:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 05A61030                                                    Page 3
2006 WL 2792480 (E.E.O.C.), EEOC DOC 05A61030
(Cite as: 2006 WL 2792480 (E.E.O.C.))


Carlton M. Hadden

Director

Office of Federal Operations

 2006 WL 2792480 (E.E.O.C.), EEOC DOC 05A61030

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

EEOC DOC 01A63690                                                                    Page 1
2006 WL 2387919 (E.E.O.C.), EEOC DOC 01A63690
(Cite as: 2006 WL 2387919 (E.E.O.C.))

E.E.O.C.

*1 Office of Federal Operations

KRISHNA MURTHY, COMPLAINANT,
v.
MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
Appeal No. 01A63690
Agency No. CRSDCF200600219

August 10, 2006

DECISION

Complainant filed a timely appeal with this Commission from a final decision dismissing
his complaint.

In a May 12, 2006 final decision, the agency dismissed complainant's March 10, 2005 form-
al complaint pursuant to 29 C.F.R. § 1614.107(a)(1), for failure to state a claim. Spe-
cifically, the agency noted that complainant's complaint involves a breach of settlement
claim and does not allege a subsequent act of discrimination. Thus, the agency found the
complaint failed to state a claim. Further, the agency noted that the settlement agreement
at issue set forth specific enforcement provisions for raising a claim of breach of the
agreement.

On October 31, 2003, a settlement agreement was reached in the class action complaint of
Arun Basu, et al. v. Department of Agriculture. The class defined in the agreement was
"all current Asian/Pacific Islander employees at the GS-7 level and above who were eli-
gible for but have not received promotions and all Asian/Pacific Islander current employ-
ees who were eligible for and have applied for positions with the Department but have not
been selected." On January 27, 2004, an EEOC Administrative Judge (AJ) granted preliminary
approval of the agreement. In his December 7, 2004 Decision Granting Final Approval of
Settlement Agreement, the AJ noted that a Notice of Proposed Settlement, along with a copy
of the agreement, was sent by regular mail to all current permanent Asian/Pacific Islander
employees who had complaints that were subsumed within the class as well as all identified
Asian/Pacific Islander employees who fell under the class definition but did not have
pending individual complaints. The record contains a copy of the Notice of Proposed Set-
tlement informing class members that they had thirty days in which to file objections to
the AJ. The record reveals that ten objections were received by the AJ. On December 7,
2004, the AJ issued a decision approving the settlement.

The settlement agreement was signed by the agency's Associate General Counsel, the
agency's Deputy Administrator for Agricultural Research Service (ARS), the lead class
agent, the President of the Organization of South Asian Americans in Agriculture (OSAAA)
and class counsel. It provided in pertinent part for injunctive relief and individual re-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



lief for class members. Among the injunctive relief specified, was the creation of a pilot Development Opportunity Placement Program (DOPP) to provide opportunities for eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments. The agreement specified that the DOPP will be created within six subagencies to provide no fewer than two opportunities annually for three years and noted that details, temporary promotions, or developmental assignments will be for a minimum of 31 days. [FN1] Second, the agreement established the creation of a Graduate Scholarship Program to provide funding for graduate school with a total of thirty-six scholarships available between eight offices. The third aspect of injunctive relief specified that an agency-wide Job Fair would be held at four regional locations for employment in job categories where the agency's Asian/Pacific Islander population is statistically under represented. The fourth aspect of injunctive relief provides for the review and update of an agency-wide Affirmative Employment Plan to ensure that all appropriate issues related to class members are addressed in the plan. Finally, the agreement provided that every employee will have an up-to-date individual development plan.

*2 With respect to individual relief, the agreement divided the class into four tiers: Tier One, Tier Two, Tier Three, and Tier Four. Tier One consisted of six class agents, including Dr. Arun Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The agreement provided Dr. Basu a retroactive promotion effective September 1998, into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay with interest in the amount of $98,219.00; restoration of 564 hours of sick leave; $200,000.00 in compensatory damages; the expungement of a reprimand and information related to misconduct investigations; and reasonable attorney's fees. Dr. Dey was given a retroactive promotion effective September 1998, into the position of Veterinary Medical Officer, GS-14; back pay with interest estimated in the amount of $46,000.00; priority placement into the first GS-15 position for which he qualifies; restoration of 476 hours of sick leave; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Yee was given a retroactive promotion effective September 1998, into the position of Invasive Species Manager, GS-401-15, Step 10; back pay with interest estimated to be $68,154.00; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Murthy was given $40,000.00 in compensatory damages; advancement to the GS-14, step 10 level; and reassignment into the position of Veterinary Medical Officer, GS-0701-14; Office of Personnel Management (OPM) Leadership Training to be determined within 60 days of the signing of the agreement; and reasonable attorney's fees. Drs. Lakhani and Saini were each given $40,000.00 in compensatory damages; OPM Leadership Training to be determined within 60 days of the signing of the agreement; and reasonable attorney's fees.

Tier Two consisted of the remaining twenty-two class agents and two former class agents who settled their individual complaints. The two class agents who settled their cases were identified as Dr. Parthapratim Basu and Ms. Marjorie Medina and were offered no relief under the agreement. The remaining twenty-two class agents were divided into those with cases pending in federal court, those with cases pending at the Commission and those who had no complaint pending. The two identified as having cases pending in federal district

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

EEOC DOC 01A63690                                                    Page 3
2006 WL 2387919 (E.E.O.C.), EEOC DOC 01A63690
(Cite as: 2006 WL 2387919 (E.E.O.C.))

court were: Dr. Jamshyd Rasek and Dr. Jess Rajan. The five class agents identified as hav-
ing cases pending at the Commission were: Dr. Suresh P. Singh, Dr. Moorli Prasad, Dr. Kat-
suri Basu, Dr. Altaf Ahmed, and Dr. Arshad Hussain. The fifteen Tier Two class agents
identified as having no cases pending were: Dr. Kamal Tripathi, Dr. James Shieh, Dr. Nith-
in Thaker, Dr. Hari Eswaran, Dr. T.V. Rao Jude, Dr. Sher Al, Dr. Tung Sun, Dr. Bharat Pa-
tel, Dr. Syed Amjad Ali, Dr. Sivramiah Shantharam, Dr. S. Chohan, Mr. Karl Choice, Ms.
June Turner, Mr. Justin Rhee, and Mr. Farook Sait. The twenty-two class agents as a group
were awarded $372,500.00, to be distributed at their discretion, and injunctive relief.
[FN2]

*3 Tier Three consisted of all other cases subsumed under the class definition pending at
the EEOC, Federal District Court, or Federal Circuit Court of Appeals. Tier Three members
with claims pending in federal court would receive $7,500.00 plus attorney's fees
incurred since filing in federal court and injunctive relief. Tier Three members with
claims pending before the EEOC were to receive $5,000.00 or an expedited hearing and in-
junctive relief.

Tier Four consisted of all Asian/Pacific Islander employees who fall under the class
definition, but did not file a complaint of employment discrimination. Tier Four members
were offered injunctive relief only.

The agreement provided specific instructions regarding attorney's fees. Specifically, it
stated that Tier One Class Members would receive, altogether, $350,000.00 in reasonable
attorney's fees. Additionally, the agreement stated that attorney's fees for Dr. Mon Yee
in Tier One; Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two; and Joyce Mayekawa and
Ronald Shinsato in Tier Three, will be paid separately by the agency, contingent upon
their acceptance of the settlement offer. Finally, the agreement noted that five Tier Two
complaints before the Commission will also be offered attorney's fees by the agency, con-
tingent upon their acceptance of the settlement offer, not to exceed $25,000.00.

At the outset, we note that the agency is correct in its assertion that a breach of set-
tlement agreement claims is not treated as a separate complaint of discrimination and sub-
ject to processing under 29 C.F.R. § 1614.105 et seq. The agency is also correct in noting
that the class complaint set forth specific provisions for enforcement. The record reveals
that complainant informed the agency of his breach claims in several letters including a
letter to the Branch Chief, Complaint Management Division, dated September 22, 2005; let-
ters to the Assistant Secretary for Civil Rights dated September 29, 2005, October 5,
2005, and October 21, 2005; and a letter to the Special Assistant to the Assistant Secret-
ary for Civil Rights dated November 22, 2005. Thus, in the present case, for the purposes
of efficiency, we will address complainant's claims of breach in this decision.

Complainant claims the agency breached the settlement agreement when he did not receive a
promotion to a GS-15 position. Complainant also claims that the agency did not provide him
the OPM leadership training as specified in the agreement. Finally, complainant claims
that the agency did not create the DOPP pilot as specified in the agreement.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



With regard to his claim that he was denied a promotion to a GS-15 as part of the agree-
ment, we note that the agreement did not provide complainant would be promoted to the GS-
15 level. Thus, such a claim is beyond the scope of the agreement.

With regard to his claim that the agency did not provide him OPM leadership training, we
are unable to determine if the agency is in compliance with this provision. We note that
the agreement specified that OPM leadership training would be determined for complainant
within 60 days of the signing of the agreement. The record contains a February 1, 2006
letter, in which the agency representative from the Office of General Counsel stated that
agency personnel met with complainant to determine the scope of the appropriate OPM lead-
ership training. The agency stated OPM training was made available to complainant;
however, complainant did not select a course previously identified. However, we note the
record does not contain any documentation showing that complainant was offered and refused
appropriate OPM leadership training or evidence showing complainant participated in appro-
priate OPM leadership training.

*4 Additionally, the Commission is unable to determine whether the agency complied with
the creation of a pilot DOPP as specified in the agreement. Among the injunctive relief
specified, was the creation of a pilot Development Opportunity Placement Program (DOPP) to
provide opportunities for eligible and qualified employees to serve on details, receive
temporary promotions, or participate in developmental assignments. The agreement specified
that the DOPP will be created within six subagencies to provide no fewer than two oppor-
tunities annually for three years and noted that details, temporary promotions, or devel-
opmental assignments will be for a minimum of 31 days. The agreement specified that class
agents who are eligible and qualified to participate in the DOPP will receive priority
consideration for the first eighteen months after the program becomes effective. In a
March 3, 2006 letter from the agency representative of the Office of General Counsel, the
agency stated that it is within the appropriate time frames in the creation of the DOPP
and its guidelines, and will provide class counsel with additional information on imple-
mentation of this injunctive relief. Further, the agency noted that complainant was previ-
ously informed that the subagencies are in the process of posting developmental opportun-
ities on the website of the Assistant Secretary for Civil Rights. Upon review, the Commis-
sion notes there is not documentation of the creation and implementation of the pilot
DOPP.

Accordingly, the issues of non-compliance with the OPM leadership training and the cre-
ation of the pilot DOPP are REMANDED for further processing in accordance with the Order
listed below.

                                    ORDER

Within 60 days of the date this decision becomes final, the agency shall:
   1. Provide documentation showing whether it provided complainant OPM leadership train-
ing in accordance with the agreement.
   2. Provide documentation showing whether it complied with the creation and implementa-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

EEOC DOC 01A63690                                                    Page 5
2006 WL 2387919 (E.E.O.C.), EEOC DOC 01A63690
(Cite as: 2006 WL 2387919 (E.E.O.C.))

tion of the DOPP pilot as specified in the agreement.
   3. Provide complainant a final decision indicating whether it complied with the terms
of the settlement agreement.

The agency shall submit evidence showing compliance with this decision to the Compliance
Officer referenced herein under Implementation of the Commission's Decision.

                IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall submit
its compliance report within thirty (30) calendar days of the completion of all ordered
corrective action. The report shall be submitted to the Compliance Officer, Office of Fed-
eral Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C.
20036. The agency's report must contain supporting documentation, and the agency must send
a copy of all submissions to the complainant. If the agency does not comply with the Com-
mission's order, the complainant may petition the Commission for enforcement of the order.
29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to en-
force compliance with the Commission's order prior to or following an administrative peti-
tion for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g).
Alternatively, the complainant has the right to file a civil action on the underlying com-
plaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29
C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the
underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 &
Supp. IV 1999). If the complainant files a civil action, the administrative processing of
the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. §
1614.409.

              STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

*5 The Commission may, in its discretion, reconsider the decision in this case if the
complainant or the agency submits a written request containing arguments or evidence which
tend to establish that:
   1. The appellate decision involved a clearly erroneous interpretation of material fact
or law; or
   2. The appellate decision will have a substantial impact on the policies, practices, or
operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office
of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision
or within twenty (20) calendar days of receipt of another party's timely request for re-
consideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive
for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments
must be submitted to the Director, Office of Federal Operations, Equal Employment Oppor-
tunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible
postmark, the request to reconsider shall be deemed timely filed if it is received by mail

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



within five days of the expiration of the applicable filing period. See 29 C.F.R. §
1614.604. The request or opposition must also include proof of service on the other party.

  Failure to file within the time period will result in dismissal of your request for re-
consideration as untimely, unless extenuating circumstances prevented the timely filing of
the request. Any supporting documentation must be submitted with your request for recon-
sideration. The Commission will consider requests for reconsideration filed after the
deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

                COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

  This is a decision requiring the agency to continue its administrative processing of your
complaint. However, if you wish to file a civil action, you have the right to file such
action in an appropriate United States District Court within ninety (90) calendar days
from the date that you receive this decision. In the alternative, you may file a civil ac-
tion after one hundred and eighty (180) calendar days of the date you filed your complaint
with the agency, or filed your appeal with the Commission. If you file a civil action, you
must name as the defendant in the complaint the person who is the official agency head or
department head, identifying that person by his or her full name and official title. Fail-
ure to do so may result in the dismissal of your case in court. "Agency" or "department"
means the national organization, and not the local office, facility or department in which
you work. Filing a civil action will terminate the administrative processing of your com-
plaint.

                      RIGHT TO REQUEST COUNSEL (Z1199)

  *6 If you decide to file a civil action, and if you do not have or cannot afford the ser-
vices of an attorney, you may request that the Court appoint an attorney to represent you
and that the Court permit you to file the action without payment of fees, costs, or other
security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et
seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or
denial of the request is within the sole discretion of the Court. Filing a request for an
attorney does not extend your time in which to file a civil action. Both the request and
the civil action must be filed within the time limits as stated in the paragraph above
("Right to File A Civil Action").

For the Commission:

Carlton M. Hadden

Director

Office of Federal Operations

FN1. The agreement specified that class agents who are eligible and qualified to particip-
ate in the DOPP will receive priority consideration for the first eighteen months after

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EEOC DOC 01A63690
2006 WL 2387919 (E.E.O.C.), EEOC DOC 01A63690
(Cite as: 2006 WL 2387919 (E.E.O.C.))

Page 7

the program becomes effective.

FN2. In his December 7, 2004 Decision Granting Final Approval of Settlement Agreement, the AJ noted that the parties represented that the distribution of this sum will be at the discretion of the lead class agent, with the assistance of his representative, and will involve a system where each individual is required to file a petition setting forth his/ her entitlement to a specific amount.

2006 WL 2387919 (E.E.O.C.), EEOC DOC 01A63690

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

EEOC DOC 01A63143                                                           Page 1
2006 WL 2389432 (E.E.O.C.), EEOC DOC 01A63143
(Cite as: 2006 WL 2389432 (E.E.O.C.))

E.E.O.C.

*1 Office of Federal Operations

KRISHNA MURTHY, COMPLAINANT,
v.
MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
Appeal No. 01A63143
Agency No. 000190

August 9, 2006

DECISION

Complainant filed the present appeal with this Commission to challenge the fairness of a class action settlement agreement signed by the parties on October 31, 2003, and approved by an EEOC Administrative Judge (AJ) on December 7, 2004.

Arun Basu, lead class agent, filed a formal complaint of discrimination on behalf of a proposed class of Asian employees of the agency at any grade level who had, between February 1994, and the present: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) been stripped of managerial duties and responsibilities; (5) failed to be selected for a position with managerial duties or responsibilities; (6) been subjected to reprisal for filing a complaint(s); (7) filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint.

The class complaint was forwarded to the EEOC's Washington Field Office for a decision on certification. In a September 15, 2000 decision, the AJ determined that the class failed to meet the procedural requirements for certification. In an October 4, 2000 decision, the agency fully implemented the decision of the AJ. The lead class agent filed an appeal with the Commission. The Commission reversed the decision denying certification and in Arun C. Basu v. Department of Agriculture, EEOC Appeal No. 01A10660 (June 27, 2001), "conditionally" certified a class consisting of all Asian employees of the agency who were eligible for but have not received promotions and all Asian persons who have applied for positions with the agency but have not been selected. The Commission noted that the scope of the class was subject to amendment. The case was remanded and forwarded to an AJ to process the conditionally certified class.

Following remand of the case, the second AJ assigned to the case issued an Order Acknowledging Class Complaint on January 25, 2002, and authorized the parties to commence discovery on the case. The second AJ suspended the requirement under 29 C.F.R. § 1614.204(e), requiring the agency to notify all class members of the certification of the class, within fifteen days of the agency's receipt of the AJ's decision certifying a class complaint, because the class was conditionally certified. The AJ stated that following discovery he

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



would determine whether the conditions for class certification have been met. Subsequent to a lengthy discovery period, followed by the filing of briefs on the question of certification by both sides, a settlement agreement was signed by the parties on October 31, 2003. The class defined in the agreement was "all current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected." On January 27, 2004, the second AJ granted preliminary approval of the agreement. In his December 7, 2004 Decision Granting Final Approval of Settlement Agreement, the AJ noted that a Notice of Proposed Settlement, along with a copy of the agreement, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the class as well as all identified Asian/Pacific Islander employees who fell under the class definition but did not have pending individual complaints. The record contains a copy of the Notice of Proposed Settlement informing class members that they had thirty days in which to file objections to the AJ. The record reveals that ten objections were received by the AJ. On December 7, 2004, the AJ issued a decision approving the settlement, and complainant appealed.

*2 The settlement agreement was signed by the agency's Associate General Counsel, the agency's Deputy Administrator for Agricultural Research Service (ARS), the lead class agent, the President of the Organization of South Asian Americans in Agriculture (OSAAA) and class counsel. It provided in pertinent part for injunctive relief and individual relief for class members. Among the injunctive relief specified, was the creation of a pilot Development Opportunity Placement Program (DOPP) to provide opportunities for eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments. The agreement specified that the DOPP will be created within six sub-agencies to provide no fewer than two opportunities annually for three years and noted that details, temporary promotions, or developmental assignments will be for a minimum of 31 days. Second, the agreement established the creation of a Graduate Scholarship Program to provide funding for graduate school with a total of thirty-six scholarships available between eight offices. The third aspect of injunctive relief specified that an agency-wide Job Fair would be held at four regional locations for employment in job categories where the agency's Asian/Pacific Islander population is statistically under represented. The fourth aspect of injunctive relief provides for the review and update of an agency-wide Affirmative Employment Plan to ensure that all appropriate issues related to class members are addressed in the plan. Finally, the agreement provided that every employee will have an up-to-date individual development plan.

With respect to individual relief, the agreement divided the class into four tiers: Tier One, Tier Two, Tier Three, and Tier Four. Tier One consisted of six class agents, including Dr. Arun Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The agreement provided Dr. Basu a retroactive promotion effective September 1998, into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay with interest in the amount of $98,219.00; restoration of 564 hours of sick



leave; $200,000.00 in compensatory damages; the expungement of a reprimand and information
related to misconduct investigations; and reasonable attorney's fees. Dr. Dey was given a
retroactive promotion effective September 1998, into the position of Veterinary Medical
Officer, GS-14; back pay with interest estimated in the amount of $46,000.00; priority
placement into the first GS-15 position for which he qualifies; restoration of 476 hours
of sick leave; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Yee
was given a retroactive promotion effective September 1998, into the position of Invasive
Species Manager, GS-401-15, Step 10; back pay with interest estimated to be $68,154.00;
$50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Murthy was given
$40,000.00 in compensatory damages; advancement to the GS-14, step 10 level; and reassign-
ment into the position of Veterinary Medical Officer, GS-0701-14; Office of Personnel Man-
agement (OPM) Leadership Training to be determined within 60 days of the signing of the
agreement; and reasonable attorney's fees. Drs. Lakhani and Saini were each given
$40,000.00 in compensatory damages; OPM Leadership Training to be determined within 60
days of the signing of the agreement; and reasonable attorney's fees.

*3 Tier Two consisted of the remaining twenty-two class agents and two former class
agents who settled their individual complaints. The two class agents who settled their
cases were identified as Dr. Parthapratim Basu and Ms. Marjorie Medina and were offered no
relief under the agreement. The remaining twenty-two class agents were divide into those
with cases pending in federal court, those with cases pending at the Commission and those
who had no complaint pending. The two identified as having cases pending in federal dis-
trict court were: Dr. Jamshyd Rasek and Dr. Jess Rajan. The five class agents identified
as having cases pending at the Commission were: Dr. Suresh P. Singh, Dr. Moorli Prasad,
Dr. Katsuri Basu, Dr. Altaf Ahmed, and Dr. Arshad Hussain. The fifteen Tier Two class
agents identified as having no cases pending were: Dr. Kamal Tripathi, Dr. James Shieh,
Dr. Nithin Thaker, Dr. Hari Eswaran, Dr. T.V. Rao Jude, Dr. Sher Al, Dr. Tung Sun, Dr.
Bharat Patel, Dr. Syed Amjad Ali, Dr. Sivramiah Shantharam, Dr. S. Chohan, Mr. Karl
Choice, Ms. June Turner, Mr. Justin Rhee, and Mr. Farook Sait. The twenty-two class agents
as a group were awarded $372,500.00, to be distributed at their discretion, and injunctive
relief.

Tier Three consisted of all other cases subsumed under the class definition pending at
the EEOC, Federal District Court, or Federal Circuit Court of Appeals. Tier Three members
with claims pending in federal district court would receive $7,500.00 plus attorney's fees
incurred since filing in federal court and injunctive relief. Tier Three members with
claims pending before the EEOC were to receive $5,000.00 or an expedited hearing and in-
junctive relief.

Tier Four consisted of all Asian/Pacific Islander employees who fall under the class
definition, but did not file a complaint of employment discrimination. Tier Four members
were offered injunctive relief only.

The agreement provided specific instructions regarding attorney's fees. Specifically, it
stated that Tier One Class Members would receive, altogether, $350,000.00 in reasonable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



attorney's fees. Additionally, the agreement stated that attorney's fees for Dr. Mon Yee in Tier One; Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two; and Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by the agency, contingent upon their acceptance of the settlement offer. Finally, the agreement noted that five Tier Two complaints before the Commission will also be offered attorney's fees by the agency, contingent upon their acceptance of the settlement offer, not to exceed $25,000.00.

Complainant did not file an objection with the AJ within the stated time frame specified in the Notice of Proposed Settlement.

The AJ noted that objections to the agreement were received by the following ten class members: Jahshyd Rasekl, Jess Rajan, Kunauli Madhusudhan, Muhammad Chaudhry, Emiko Purdy, Mon Yee, Fazal Rahman, Robert Tse, Clemen Gehrlan, and Abdul Sadiq. The AJ did not address each objection individually; however, he did address specific relevant objections that: the class agents were getting too much relief and/or that class members in the lower two tiers of the agreement were not getting enough; the agreement does not explicitly identify the relief being received by certain class agents; and it is unclear from the agreement how certain relief is to be allocated.

*4 Specifically, the AJ noted that although the Notice of the Proposed Settlement should have included the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. The AJ noted that it was clear that the Tier One class agents were to receive more relief than those in the lower tiers. Thus, the AJ found that any member in the lower tiers who believed s/he was not being offered adequate relief could have filed a petition to that effect.

Further, the AJ found the terms of the settlement agreement were fair, adequate and reasonable. The AJ noted that at the time the case was settled, the class was only conditionally certified and there existed a risk that the class would be decertified and not proceed to a hearing on the merits. Additionally, the AJ explained in order to obtain comparable relief, in addition to achieving full certification, the class would have had to prove discrimination over several years. The AJ also noted that in the event a finding of discrimination was made, each class member would have had to establish his/her individual entitlement to relief. Further, the AJ observed that had the class prevailed at a hearing, the injunctive relief provided by the agreement would not have been available as a remedy. The AJ found that the relief being provided, which he noted was potentially as much as $1,700,000.00 in individual relief and attorney's fees, is fair to the class as a whole.

Finally, with respect to the claim that the class agents in Tier One and Tier Two are receiving more individual relief than the other class members in addition to priority consideration under the DOPP, the AJ noted that class agents were the ones who spearheaded the class complaint, were actively involved in the litigation of the complaint, and appeared at certain meetings on behalf of the class with high-level officials in the agency. The AJ notes that although Tier Three members have individual complaints, they were not actively involved in the class complaint.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



The AJ notes that if the Tier Three individuals are not satisfied with the lump sum offer of $5,000.00 they have the option of an expedited hearing on their subsumed claims. Finally, the AJ notes that while Tier Four members are only eligible for injunctive relief, they are not giving up anything as a result of the agreement.

On appeal, complainant states that he was not given notice of the proposed settlement agreement prior to approval of the agreement. Complainant acknowledges participation in the early formation of the subject class action. He states, however, that he did not receive a copy of his individual award of relief on February 17, 2004. He states that he did not receive a copy of his individual settlement agreement until May 2005. Complainant states that as a member of Tier 1, he was unfairly denied promotion as relief while other class agents in Tier 1 received promotions under the agreement. Further, complainant states that he is concerned about conflict of interest and collusion occurring with the settlement. [FN1]

                          ANALYSIS AND FINDINGS

*5 Class action complaints may be resolved at any time, provided they comply with the approval process outlined in the regulations. See 29 C.F.R. § 1614.204(g)(2). When resolution of a class complaint is proposed, notice of resolution must be given to all class members. 29 C.F.R. § 1614.204(g)(4). This notice must state that within thirty (30) days, any member of the class may petition the AJ to vacate the resolution because it benefits only the class agent, or is otherwise not fair, adequate, and reasonable to the class as a whole. Id. The AJ must consider these petitions, and determine whether to vacate the agreement. Id. The AJ's decision must inform the former class agent (if the settlement is vacated) or the petitioner (if the settlement is upheld) of his or her right to appeal to this Commission. 29 C.F.R. § 1614.204(g)(4).

In the present case, we note that in his December 7, 2004 decision, the AJ found that a Notice of Proposed Settlement, along with a copy of the actual agreement, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the class as well as identified Asian/Pacific Islander employees who fell under the class definition but did not have pending individual complaints of discrimination. The AJ noted the Notice of Proposed Settlement was also posted on the agency's web site and in appropriate agency bulletins.

The record contains a copy of the Notice of Proposed Settlement informing class members that they have 30 days in which to file objections to the specified AJ to vacate the proposed resolution on the grounds it benefits only the class agents, or is otherwise nor fair, adequate and reasonable to the class as a whole.

We reject complainant's challenge to the fairness of a class complaint settlement agreement signed by the parties on October 31, 2003, and approved by an EEOC Administrative Judge (AJ) on December 7, 2004. The record reveals that complainant never filed an objection with the AJ challenging the terms of the subject settlement in accordance with the



EEOC DOC 01A63143                                                          Page 6
2006 WL 2389432 (E.E.O.C.), EEOC DOC 01A63143
(Cite as: 2006 WL 2389432 (E.E.O.C.))

regulation set forth at 29 C.F.R. § 1614.204(g)(4). Although complainant claims that he
never received Notice of the Proposed Settlement, we note in his December 7, 2004 de-
cision, the AJ found that a Notice of Proposed Settlement, along with a copy of the actual
agreement, was sent by regular mail to all current permanent Asian/Pacific Islander em-
ployees who had complaints that were subsumed within the class as well as identified Asi-
an/Pacific Islander employees who fell under the class definition but did not have pending
individual complaints of discrimination. Additionally, the AJ noted that the Notice of
Proposed Settlement was also posted on the agency's web site and in appropriate agency
bulletins.

*6 On appeal, complainant acknowledges he knowingly became a member of the subject class
complaint at its inception. A review of the copy of the Notice of Proposed Settlement con-
tained in the record shows that class members were informed of the appropriate time frames
and procedures for filing objections to the subject settlement agreement. Further, we note
that the record contains a copy of the February 17, 2004 letter sent to complainant, a
Tier One member. In this letter the agency informed him he would receive $40,000.00 in
compensatory damages; advancement to the GS-14, step 10 level, and reassignment into the
position of Veterinary Medical Officer, GS-0701-14; Office of Personnel Management (OPM)
Leadership Training to be determined within 60 days of the signing of the agreement; and
reasonable attorney's fees Upon review of the present case, we find that the agency made a
good faith effort to notify all class members of the proposed settlement agreement, but
that complainant failed to timely raise an objection to the settlement with the AJ. There-
fore, we will not consider complainant's objection to the settlement on appeal.

CONCLUSION

Accordingly, the Administrative Judge's finding that the October 31, 2003 settlement
agreement is fair, adequate, and reasonable to the class as a whole is AFFIRMED.

STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the com-
plainant or the agency submits a written request containing arguments or evidence which
tend to establish that:
    1. The appellate decision involved a clearly erroneous interpretation of material fact
or law; or
    2. The appellate decision will have a substantial impact on the policies, practices, or
operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office
of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision
or within twenty (20) calendar days of receipt of another party's timely request for re-
consideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive
for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments
must be submitted to the Director, Office of Federal Operations, Equal Employment Oppor-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EEOC DOC 01A63143                                                    Page 7
2006 WL 2389432 (E.E.O.C.), EEOC DOC 01A63143
(Cite as: 2006 WL 2389432 (E.E.O.C.))


tunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible
postmark, the request to reconsider shall be deemed timely filed if it is received by mail
within five days of the expiration of the applicable filing period. See 29 C.F.R. §
1614.604. The request or opposition must also include proof of service on the other party.

   Failure to file within the time period will result in dismissal of your request for re-
consideration as untimely, unless extenuating circumstances prevented the timely filing of
the request. Any supporting documentation must be submitted with your request for recon-
sideration. The Commission will consider requests for reconsideration filed after the
deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

                COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

   *7 You have the right to file a civil action in an appropriate United States District
Court within ninety (90) calendar days from the date that you receive this decision. If
you file a civil action, you must name as the defendant in the complaint the person who is
the official agency head or department head, identifying that person by his or her full
name and official title. Failure to do so may result in the dismissal of your case in
court. "Agency" or "department" means the national organization, and not the local office,
facility or department in which you work. If you file a request to reconsider and also
file a civil action, filing a civil action will terminate the administrative processing of
your complaint.

                     RIGHT TO REQUEST COUNSEL (Z1199)

   If you decide to file a civil action, and if you do not have or cannot afford the ser-
vices of an attorney, you may request that the Court appoint an attorney to represent you
and that the Court permit you to file the action without payment of fees, costs, or other
security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et
seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or
denial of the request is within the sole discretion of the Court. Filing a request for an
attorney does not extend your time in which to file a civil action. Both the request and
the civil action must be filed within the time limits as stated in the paragraph above
("Right to File A Civil Action").

For the Commission:

Carlton M. Hadden

Director

Office of Federal Operations

FN1. Complainant's claim that the agency has not complied with the settlement agreement is
being adjudicated separately under EEOC Appeal No. 01A63690.


© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

EEOC DOC 01A63143                                                    Page 8
2006 WL 2389432 (E.E.O.C.), EEOC DOC 01A63143
(Cite as: 2006 WL 2389432 (E.E.O.C.))


  2006 WL 2389432 (E.E.O.C.), EEOC DOC 01A63143

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

EEOC DOC 05A61077                                                  Page 1
2006 WL 2851568 (E.E.O.C.), EEOC DOC 05A61077
(Cite as: 2006 WL 2851568 (E.E.O.C.))


**H**

E.E.O.C.

*1 Office of Federal Operations

KRISHNA MURTHY, COMPLAINANT,

v.

MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.

Request No. 05A61077

Appeal No. 01A63143

Agency No. 000190

September 28, 2006

DENIAL

Complainant timely requested reconsideration of the decision in Krishna Murthy v. Department of Agriculture, EEOC Appeal No. 01A63143 (August 9, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 01A63143 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to rep-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 05A61077                                                        Page 2
2006 WL 2851568 (E.E.O.C.), EEOC DOC 05A61077
(Cite as: 2006 WL 2851568 (E.E.O.C.))


resent you and that the Court permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

For the Commission:

*2 Carlton M. Hadden

Director

Office of Federal Operations

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   20

USDA Compliance Report to EEOC demonstrating compliance with <u>Basu</u> Settlement Agreement, in response to Appeal Decision (01A63690)



| United States | Office of the | Washington, |
| Department of | General | D.C. |
| Agriculture | Counsel | 20250-1400 |

November 27, 2006

Vern Best
Compliance Officer
Office of Federal Operations                    **VIA U.S. MAIL**
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C.  20036

Re:    **Krishna Murthy v. Department of Agriculture**
       **EEOC Request for Reconsideration No. 05A61030**
       **EEOC Appeal No. 01A63690**
       **Agency No. CRSDCF200600219**

Dear Mr. Best:

Enclosed please find the Agency's Compliance Report, required by the September 22, 2006 Denial
of Appellant's Request for Reconsideration.  The Department will separately seek clarification of
the third item of relief, requiring providing a final decision indicating whether it complied with the
terms of the settlement agreement.

Respectfully submitted,

Steven Brammer
Agency Representative

cc:    Krishna Murthy (via U.S. mail) (with all attachments)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, DC 20036**

|  |  |  |
|---|---|---|
| KRISHNA MURTHY | ) | |
| | ) | |
| Appellant, | ) | EEOC Appeal No.: 01A63690 |
| | ) | |
| v. | ) | |
| | ) | Agency No.: CRSDCF200600219 |
| MIKE JOHANNS, | ) | |
| Secretary, U.S. Department | ) | |
| of Agriculture | ) | |
| | ) | |
| Agency. | ) | |
| | ) | |

## COMPLIANCE REPORT

The United States Department of Agriculture ("the Agency"), by and through its

representative, submits the instant Compliance Report in response to the Denial of Request for

Reconsideration filed with the Office of Federal Operations ("OFO") of the U.S. Equal

Employment Opportunity Commission ("EEOC" or "the Commission"), by Appellant Krishna

Murthy ("Appellant"), in the above-captioned appeal. In OFO's Denial of Appellant's Request

for Reconsideration, dated September 22, 2006, OFO ordered the Agency to:

1. Provide documentation showing whether it provided Appellant Office of Personnel

Management ("OPM") leadership training in accordance with the Settlement Agreement reached

in the class action complaint of <u>Arun Basu, et al. v. Department of Agriculture</u> ("<u>Basu</u> Settlement

Agreement");

2. Provide documentation showing whether it complied with the creation and implementation of the Development Opportunity Placement Program ("DOPP"), as specified in the Basu Settlement Agreement; and

3. Provide Appellant a final decision indicating whether it complied with the "terms of the agreement."[1]

The Agency provides the attached documentation and this report to assure OFO that it is has provided the appropriate relief to Appellant as required by Basu Settlement Agreement. (See Attachment 1, Agency's notification of relief entitled to Appellant under the Basu Settlement Agreement).

## A. The Agency Has Provided Appellant with OPM Leadership Training as required by the Basu Settlement Agreement.

The Agency has provided Appellant with the opportunity to receive OPM Leadership training courses in compliance with the Basu Settlement Agreement. Appellant is employed by the Agency's Food Safety and Inspection Service ("FSIS"). Staff from FSIS's Organization and Employee Development Branch ("OEDB") conducted two meetings with Appellant on June 30, 2005, and July 13, 2005, to review Appellant's professional experience and evaluate the necessary OPM Leadership training courses that would meet Appellant's career goals. (See Attachment 2, Message from James Alexander and Appellant's Individual Development Plan). Specifically, the OEDB staff and Appellant discussed the competencies that are required for positions of greater leadership in the Federal Government, specifically the "Executive Core Qualifications (ECQ)" as the basis of Appellant's career development goals. Id. The OEDB

---

[1] The Agency will seek clarification regarding this issue. 29 C.F.R. § 1614.503(c).

staff and Appellant designed an Individual Development Plan and identified specific OPM

leadership courses that would meet Appellant's career goals. Id. Each of the courses identified

for Appellant addressed one of the ECQ's required for positions of leadership in the Federal

Government. Id. The four courses identified for Appellant were: (1) OPM Seminar: Crisis

Leadership Workshop; (2) OPM Seminar: Seminar for New Managers: Blended; (3) OPM

Seminar: Leading Successful Projects; (4) OPM Seminar: Optimizing Project Performance. Id.;

see also (Attachment 3, Descriptions and Costs of OPM Leadership Training Courses). The

Agency provided Appellant with the opportunity to attend four (4) OPM leadership training

courses at a cost of $13,600.00 to the Agency. Id. at Attachment 3.

After the second meeting on July 13, 2005, the OEDB staff referred the Individual

Development Plan and training information to Kevin McGrath, Chief, Complaints Management

Branch, Civil Rights Division, FSIS, and directed Appellant to consult Mr. McGrath on any

funding issues regarding these courses. (See Attachment 4, E-mail from Kevin McGrath).

Furthermore, Agency officials met with Appellant in a follow up meeting to provide further

guidance on the identified OPM courses. Id. However, Appellant informed the Agency he was

not interested in pursuing any of the identified training in his Individual Development Plan. Id.

Currently, Appellant has not taken any of the four courses identified in the Individual

Development Plan. Id. The Agency properly provided Appellant the opportunity for OPM

leadership training, as specified in the Basu Settlement Agreement.

3

**B.    The Agency Has Provided Documentation that the DOPP Pilot Program Has Been Implemented As Specified by the Basu Settlement Agreement.**

The Basu Settlement Agreement includes as relief the creation of a Development Opportunity Placement Program.  The pilot DOPP was created within 180 days of the effective date of the Agreement to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field locations.  (See Attachment 5, Information for USDA employees about DOPP; see also specifications regarding the program delineated at http://www.ascr.usda.gov/usda_emplyee_dopp.html).  Each sub-agency involved in the Basu Settlement Agreement, including FSIS, was required to make (2) two DOPP opportunities available each year.  Id.  The Agency has advertised guidance for employees on how to apply for a position through DOPP.  Id.  Also, the Agency has provided a spreadsheet showing DOPP activity during the fiscal year 2006.  (See Attachment 6, Spreadsheet of DOPP Activity 2006).  The spreadsheet shows that FSIS made two positions available in 2006, the Special Assistant to the Chief Human Capital Officer and the Special Assistant to the Chief Information Officer.  Id.  Also, Appellant was offered and selected for one of the positions, Special Assistant to the Chief Information Officer, on May 15, 2006.  Id.  It is clear from the documentation provided by the Agency that the Agency is in compliance with the requirements for the DOPP pilot program created by the Basu Settlement Agreement.

4

## **CONCLUSION**

The Agency has provided Appellant with the opportunity to take OPM leadership training in compliance with the Basu Settlement Agreement. The Agency has also properly implemented DOPP, with the procedures and guidance in place to help employees apply and receive positions through the program.

Respectfully Submitted,

Steven C. Brammer
Agency Representative

5

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Agency's Compliance Report and attachments was served on November 27, 2006 to the following individuals in the manner listed below:

Compliance Officer
Office of Federal Operations
P.O. Box 19848                                    **VIA U.S. MAIL**
Washington, DC 20036

Dr. Krishna Murthy                                **VIA U.S. MAIL**
7715 Lear Road
McLean, Virginia 22102

_Steven C. Brammer_
Steven C. Brammer

6

# ATTACHMENT 1

 United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

February 17, 2004

Dr. Krishna Murthy
7715 Lear Road
McLean, VA 22102

**Re:** **Arun Basu v. Veneman** Proposed Class Action Settlement
EEOC No. 01A10660, Agency No. 000190

Dear Dr. Murthy:

You are hereby notified of the proposed Settlement Agreement signed by the United States
Department of Agriculture ("USDA") and the Class Agent Arun Basu on behalf of himself and
the Class Members. The parties have determined that your claims fall within Tier One of the
proposed Settlement Agreement. As a result, it is proposed that you will receive the following,
for settlement of pending claims of employment discrimination:

a.   Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of any and all
     pecuniary and non-pecuniary damages;

b.   Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14 Veterinary Medical
     Officer, Office of Program and Policy Development, New Technology Staff;

c.   Office of Personnel Management Leadership Training to be determined within 60 days of
     a signed settlement agreement; and

d.   Reasonable attorneys' fees to be paid according to Section VII E of the proposed
     settlement Agreement.

Other details regarding the Settlement Agreement, including injunctive relief and information on
how to contact Class Counsel or the Administrative Judge is attached in the Notice required by
the U.S. Equal Employment Opportunity Commission ("EEOC") under 29 C.F.R. § 1614.204(e).
If you are represented by an attorney, you must consult with your attorney with regard to this
matter and provide the attached documentation to him or her.

Very truly yours,

Arlean Leland
Associate General Counsel
Civil Rights Division

# ATTACHMENT 2

MsgBdy2

Kevin,
This request for OPM management/leadership training is based on two
assessment interviews held with Dr. Krishna Murphy on June 30, 2005 and July
13, 2005. In these meetings, we reviewed Dr. Murthy professional experience
and educational background. Dr Krishna Murthy is currently employed by
USDA/FSIS as a Senior Staff Officer. He has excellent technical skills and
he has established a career goal to pursue a management position in this
agency in the field of food safety. These technical skills include
management controls, program/project management of Recall, Residue, Amenable
species and FSIS Directive, Notices and FOIA coordination. Dr. Murthy has a
Doctor of Veterinarian Medicine from Agriculture University in Bangalore,
India. We discussed Dr. Krishna Murthy's considerable knowledge of FSIS's
current work environment and the evolving needs of the agency as we move
toward our collective vision of becoming a premier public health agency.

We discussed the specific competencies that are required for positions of
greater leadership in the federal government. These competencies, the
Executive Core Qualifications (ECQ) formed the basis for Dr. Krishna
Murthy's career development goals. We designed an individual development
plan and identified specific OPM leadership/ management courses that are
aligned with the ECQ's and would meet his career goal for further
advancement into the ranks of FSIS management. A spreadsheet of the OPM
leadership/ management courses recommended for Dr. Murthy is attached along
with a copy of his individual development plan. If you have any additional
questions my telephone number is listed below.

James Alexander
Human Resources Specialist
USDA/FSIS/OPPD/CFL/OEDS
Room 3807- South Bldg.
1400 Independence Ave., SW
Washington, DC 20250-3700
Voice: (202) 720-3595
Fax: (202) 690-2040
 <<Individual Development Plan for Dr. Murthydoc.doc>>
<<MurthyOPMTraning.xls>>

# Individual Development Plan

**Name:** Dr. Krishna Murthy

**Organization:** USDA/FSIS

| Competencies Knowledge/ Skills/ Abilities | Learning Objective | Prescribed Developmental Activities | Start Date | End Date |
|---|---|---|---|---|
| ECQ 1 - Leading Change | Learn to lead in unanticipated situations | OPM Seminar: Crisis Leadership Workshop | TBA | TBA |
| ECQ 2 - Leading People | Learn to use effective leadership skills with diverse groups | OPM Seminar: Seminar for New Managers: Blended | " | " |
| ECQ 3 - Results-Driven | Lead projects to successful completion | OPM Seminar: Leading Successful Projects | " | " |
| ECQ 4 - Business Acumen | Use analytical tools for business effectiveness | OPM Seminar: Optimizing Project Performance | " | " |

# ATTACHMENT 3

 Great Leaders for Great Government- The Federal Executive Institute and Management Development Centers

## Crisis Leadership Workshop
*(formerly Crisis Management Skills for Executives and Managers)*

| Dates | Location | Cost | |
|-------|----------|------|------|
| **Mar 20 - Mar 24, 06** | EMDC | $2,900.00 | Apply |
| **May 1 - May 5, 06** | WMDC | $2,900.00 | Apply |
| **Jun 19 - Jun 23, 06** | EMDC | $2,900.00 | Apply |
| **Aug 7 - Aug 11, 06** | EMDC | $2,900.00 | Apply |

Despite great improvements in crisis-prevention and strategic-management capabilities, actual crises often elude the best of strategic plans. How do individuals lead when plans are insufficient, when the unexpected occurs, and when core values are threatened? How do people respond to unanticipated situations when time is of the essence, and planned approaches don't work? At such times, there is a premium on flexibility, effective delegation, and rapid marshalling of resources.

In this seminar, participants will develop and hone key crisis leadership skills. Attendees learn how to identify a crisis, how to assess biases in high-pressure situations, how to manage overwhelming amounts of information that crises generate, how to organize for effective decisions, and how to create and lead an effective crisis team.

Learning is supported through case studies, films, interactive exercises, and a simulated international crisis that puts participants in a pressure-cooker situation in which their best crisis management skills will be tested. Opportunities abound throughout to share experiences in crisis leadership with others and to develop an invaluable network for ongoing support.

*Leadership Competencies emphasized in this seminar*

Accountability
Decisiveness
Flexibility
Influencing/Negotiating
Integrity/Honesty
Interpersonal Skills
Partnering
Political Savvy
Problem Solving
Resilience
Strategic Thinking
Team Building

## Key Results

- Understand the range of crisis management approaches and tools available to leaders
- Assess different models of decisionmaking for appropriateness to resolving crises in different settings and contexts
- Hone skills in formulating objectives and strategies under pressure and for complex situations
- Learn to organize and lead a crisis management team, marshal resources, and develop effective and ethically sound decision-making and implementation processes
- Develop strategic approaches for managing and analyzing information in high-pressure situations

- Reinforce team-building, development, and decision-making abilities

---

## Who Should Attend

Executives and managers from all departments and agencies who face rapidly changing situations and want to develop their skills at leading under pressure.

---

**How to Apply:**  Register online at http://www.leadership.opm.gov or call 304-870-8008

---

**For general information call 1-888-676-9632**

☒ Great Leaders for Great Government- The Federal Executive Institute and Management Development Centers

## Seminar for New Managers: Leading People (Blended)
*Blended Course, Online and Residential*

| Dates | Location | Cost | |
|-------|----------|------|---|
| **Apr 3 - May 19, 06** | WMDC | $3,500.00 | Apply |

April 3- May 19, 2006 (online virtual classroom);
September 25-27 2006 (residential program)

| Dates | Location | Cost | |
|-------|----------|------|---|
| **Jul 31 - Sep 15, 06** | WMDC | $3,500.00 | Apply |

July 31- September 15, 2006 (online virtual classroom); September 25-27 2006 (residential program)

The Seminar for New Managers (SNM) Blended Course presents the popular two-week, traditional SNM curriculum in a blended format, where half of the course content is delivered through a cohort online, distance-learning format, paired with a three day, intensive, in-residence experience. During the seven-week online portion, participants read books, interact with instructors, complete assessments, do Web research and work on group projects. This is the perfect opportunity for highly motivated new managers to learn the skills necessary for successful transition from first-line supervision into management, while spending only four days away from home. The actual time online varies from 30 minutes, when a majority of the assignments are individualized, to several hours, when group work, research, and interaction are necessary. Students are required to log in to the virtual classroom twice each week. After seven weeks of preparation, the participants arrive in the classroom, meet their team members, and complete the remaining SNM experience in a three day, intensive, interactive in-class format. The online portion is academic and rigorous and must be successfully completed before attending the classroom portion.

*Leadership Competencies emphasized in this seminar*

Conflict Management
Continual Learning
Human Resources Management
Interpersonal Skills
Leveraging Diversity
Oral Communication
Problem Solving
Resilience
Service Motivation
Technical Credibility.

The in-residence, three day portion provides highly interactive sessions, led by Federal executives, academics, and consultants. The faculty use scenarios, case studies, role plays, group exercises, and other adult learning methods. Current information on leadership theory and practice is applied to participants' real organizational problems.

The seminar uses tested methods to diagnose participants' preferred leadership styles and their appropriate use. Each participant also develops skills in conflict resolution, human resources management, leveraging diversity, emotional intelligence, problem solving, and communication.

## Key Results

- Acquire new skills to use in accomplishing work through peers and subordinates
- Develop an enhanced sense of how to adapt leadership styles to diverse groups
- Understand better the flexibilities available in managing human resources
- Gain increased commitment to and understanding of the leadership role
- Learn the role emotional intelligence plays in managerial effectiveness

## Who Should Attend

New managers typically in the early stages of their management position.

**Special Note:** Online course work begins seven-weeks prior to residential session.

**How to Apply:**  Register online at http://www.leadership.opm.gov or call 304-870-8008

**For general information call 1-888-676-9632**

☒ Great Leaders for Great Government- The Federal Executive Institute and Management Development Centers

## Leading Successful Project Teams
*Putting Principles into Action (Advanced Level)*

| Dates | Location | Cost | |
|---|---|---|---|
| Feb 6 - Feb 10, 06 | WMDC | $3,600.00 | Apply |
| May 8 - May 12, 06 | WMDC | $3,600.00 | CANCELLED |
| Aug 7 - Aug 11, 06 | WMDC | $3,600.00 | Apply |
| Oct 23 - Oct 27, 06 | WMDC | $3,600.00 | Apply |

In this course, experienced project managers learn new and innovative ways of leading their projects to successful completion. The course focuses on the purpose of the project and its relationship to the organization's strategic direction, as well as techniques for planning, organizing, and implementing complex projects. Working with actual projects they bring to class, participants explore leadership, planning and implementation concepts and tools that align projects with the strategic direction of the organization and provide clear measurable results. Participants learn and practice key project management skills, including team leadership, achievement planning, working through others, change management, communication, negotiation and presentation skills.

*Leadership Competencies emphasized in this seminar*\

Accountability
Flexibility
Interpersonal Skills
Oral Communication
Problem Solving
Strategic Thinking
Team Building
Technical Credibility

Learning techniques include practical exercises, group activities and actual project planning with facilitated debriefings, and presentations with real-time feedback. The diversity inherent in using real projects provides an excellent forum for learning how to apply the key concepts and tools to a wide variety of situations.

## Key Results

- Plan and implement projects in alignment with the strategic direction of the organization
- Effectively establish accountability relationships to get the work done
- Develop clear and usable project plans, including communication plans
- Demonstrate understanding of what works and what gets in the way of good team leadership
- Analyze proposed project changes and learn how to respond effectively
- Practice communication techniques to meet the specific needs of different situations and different individuals
- Learn effective presentation techniques

## Who Should Attend

Experienced project managers with responsibility for leading project teams who have a working knowledge of the basic concepts and tools of project management as covered in the basic Project Management Principles. The primary focus is on strategic project alignment and project leadership skills.

**Special Note:** This course, along with Optimizing Project Performance, will be offered back to back. If you attend both courses, we will charge a special two-week rate of $5,250 for FY 2005 and $5,450 for FY 2006, with meals and lodging included for the weekend in between.

**How to Apply:**  Register online at http://www.leadership.opm.gov or call 304-870-8008

### For general information call 1-888-676-9632

[x] Great Leaders for Great Government- The Federal Executive Institute and Management Development Centers

**Optimizing Project Performance**
*Using Analytical Project Management Tools (Advanced Level)*

| Dates | Location | Cost | |
|---|---|---|---|
| **Feb 13 - Feb 17, 06** | WMDC | $3,600.00 | Apply |
| **May 15 - May 19, 06** | WMDC | $3,600.00 | CANCELLED |
| **Aug 14 - Aug 18, 06** | WMDC | $3,600.00 | Apply |
| **Oct 30 - Nov 3, 06** | WMDC | $3,600.00 | Apply |

Building on the basic course, experienced project managers interested in optimizing project performance learn how to use project management analytical tools to effectively support project trade-off decisions. Participants use their actual projects to analyze costs and benefits, calculate key measures for financial evaluation, and perform risk analysis using a variety of techniques. Through group activities and discussions, a variety of decision-making processes for determining project trade-offs are illustrated and analyzed. Participants debate the advantages and disadvantages of different analytical techniques through facilitated discussions and examples. Calculating and analyzing information is a primary focus of this course, but participants also learn to communicate complex information to improve their effectiveness as project managers.

*Leadership Competencies emphasized in this seminar*
Accountability
Flexibility
Interpersonal Skills
Oral Communication
Problem Solving
Strategic Thinking
Team Building
Technical Credibility

## Key Results

- Perform effective cost-benefit analysis for individual participants' projects
- Explore techniques for analyzing and managing project risks
- Explore quality planning, assurance and control techniques
- Understand the Earned Value Management System and process
- Evaluate processes and tools for making effective project trade-off decisions
- Compare the use of different analytical techniques and their value for effective project management
- Demonstrate the ability to communicate complex information to diverse groups

## Who Should Attend

Experienced project managers with a working knowledge of the basic concepts and tools of project management as covered in the basic Project Management Principles course. The primary focus is on

learning how to use advanced analytical tools to increase project effectiveness, and to effectively communicate complex projects.

**Special Note:** This course, along with Leading Successful Projects, will be offered back to back. If you attend both courses, we will charge a special two-week rate of $5,250 for FY 2005 and $5,450 for FY 2006, with meals and lodging included for the weekend in between.

---

**How to Apply:** Register online at http://www.leadership.opm.gov or call 304-870-8008

---

**For general information call 1-888-676-9632**



# ATTACHMENT 4

**BRAMMER, STEVEN**

**From:**       "Kevin McGrath-FSISE2K3"@HQDOMAIN.GW
**Sent:**       Tuesday, October 03, 2006 1:16 PM
**To:**         BRAMMER@HQDOMAIN.LAWPO
**Subject:**    FW: Dr. Murthy

**Importance:**     High

**Attachments:**    tmp.htm; MurthyOP.xls; Individu.doc

    

tmp.htm (8 KB)   MurthyOP.xls (21    Individu.doc (34
                      KB)                KB)

                                                 Steven-

Please see message and attachments below regarding Krishna Murthy and the OPM Training.

KMG

Kevin McGrath
Chief
Complaints Management Branch
Civil Rights Division
FSIS, OM, USDA
5601 Sunnyside Avenue, MS 5261
Beltsville, MD 20705
Office 301-504-7755
Cell 240-381-4254
Fax 301-504-7746

---

From: Derfler, Philip
Sent: Tuesday, October 03, 2006 7:16 AM
To: McGrath, Kevin
Subject: Re: Dr. Murthy
Importance: High

        The information below summarizes OEDB and my contacts with Dr. Murthy about
his training.  Let me know if you need more.
Sorry that it took a while.


        The Organization and Employee Development Branch (OEDB) staff conducted two
assessment interviews with Dr. Krishna Murphy on June 30, 2005 and July 13, 2005.  In
these meeting, the staff reviewed Dr. Murthy professional experience and educational
background.  He has excellent technical skills and he has established a career goal to
pursue a management position in FSIS.  OEDB staff discussed Dr. Krishna Murthy's
considerable knowledge of FSIS's current work environment and the evolving needs of the
agency as we move toward our collective vision of becoming a premier public health agency.

        The OEDB staff discussed the specific competencies that are required for
positions of greater leadership in the federal government.  These competencies, the
Executive Core Qualifications (ECQ) formed the basis for Dr. Krishna Murthy career
development goals.  OEDB staff worked with Dr. Murthy to design an individual development
plan
(IDP) and identified specific OPM Leadership/ Management courses that are aligned with the
ECQ's and would meet his career goal for further advancement into the ranks of FSIS
management.  A spreadsheet of the OPM Leadership/ Management courses recommended for Dr.

Murthy is attached along with a draft of his individual development plan.

After the second meeting (July 13, 2005) with Dr. Murthy, the OEDB staff referred the IDP and training information to Kevin McGrath in the Civil Rights Division. After the referral of the IDP and training information to Kevin McGrath, Dr. Murthy contacted the OEDB staff numerous times to inquire on the status of this training. The OEDB staff referred him to Kevin McGrath for further guidance on the status funding for his training.

In a follow up meeting, Phil Derfler, Shauket Syed and Stephanie Wilkins met with Dr. Murthy to discuss the training options listed on his IDP. At that meeting, Mr. Derfler reviewed the training that the OEDB staff had outlined for Dr. Murthy, and based on his observations of Dr. Murthy's work and his understanding of where Dr. Murhty is in his career, Mr. Derfler made a recommendation as to which of the training options Dr. Murthy should pursue. Dr. Murthy thanked Mr. Derfler and said he would consider Mr. Derfler's advice.

Subsequently, Dr. Murthy advised Mr. Derfler that he was not interested in attending any of the training on the IDP.

<<MurthyÔPMTraning.xls>>   <<Individual Development Plan for Dr. Murthydoc1.doc>>

# ATTACHMENT 5

# Development Opportunity Placement Program

The Development Opportunity Placement Program provides opportunities for eligible and qualified USDA employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations.

The Development Opportunity Placement Program is sponsored by Animal and Plant Health Inspection Service; Agricultural Research Service; Farm Service Agency; Food Safety and Inspection Service; Natural Resources Conservation Service; and the Office of the Assistant Secretary for Civil Rights. Each of the agencies will sponsor a minimum of two opportunities annually for a total of six opportunities over the three-year period of the Settlement Agreement.

The Development Opportunity Placement Program is open to USDA employees. Qualification requirements may differ according to the opportunities and will be listed in the opportunity announcements. Twelve opportunities will be available in Fiscal Year 2007. They will be posted on this web page as they become available. For further information on each opportunity, please direct all inquiries to the contact person listed in the posting.

For information about the Basu Settlement, read the **Notice of Settlement**



**USDA** United States Department of Agriculture
**Office of the Assistant Secretary for Civil Rights**

Home | About Us | Help | Contact | Search

You are here: Home / Information for USDA Employees / Expression of Interest for the DOPP Program



## Information for USDA Employees

### Expression of Interest for the DOPP Program

- Guidance on How to Apply for Development Opportunity Placement Program (DOPP) (PDF 25KB)
- Development Opportunity Placement Program Cover Sheet (PDF 16KB)

### Current Job Opportunities for the DOPP Program

- Technical Guides Policy Analyst, GS 11/12 (PDF 24KB)
- Supervisory Information Technology Specialist, GS 14 (PDF 23KB)

**See Also:**
- Basu v. Veneman

# Guidance on How to Apply for
# Development Opportunity Placement Program (DOPP)

The Office of Civil Rights in conjunction with the Office of Human Capital Management is committed to ensuring compliance with the spirit and terms of the Basu Settlement Agreement that became effective June 6, 2005. We recognize and appreciate the cooperation and effort that managers and supervisors have demonstrated in the past several months, as we continue to introduce procedural and policy changes to promote best personnel practices throughout the Department of Agriculture (USDA).

The DOPP provides opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations. It is our intent to ensure that career-enhancing opportunities are allocated in a fair and equitable manner. Two (2) DOPP opportunities will be made available on an annual basis for each of the following agencies:

- Animal and Plant Health Inspection Service
- Agricultural Research Service
- Farm Service Agency
- Food Safety and Inspection Service
- Natural Resources Conservation Service
- Office of the Assistant Secretary for Civil Rights

The program is open to all qualified current and full-time permanent USDA employees. Priority consideration will be given to eligible and qualified Class Agents for the first eighteen (18) months after the program becomes effective. All announcements will be posted on the Office of the Assistant Secretary for Civil Rights website and the agency website.

The following application materials are required in order to apply:
- Resume or OF-612
- Copy of most recent Notification of Personnel Action (SF-50)
- Copy of most recent performance appraisal
- Narrative (not to exceed one page) of how the assignment will be commensurate with your interests, background and developmental needs, and will enhance your career goals
- Description (not to exceed one page) of skills and knowledge you will bring to the assignment
- Supervisor's approval required for participation in this Expression of Interest
- DOPP Opportunity Placement Program <u>Cover Sheet</u>. (located on ASCR website)

Selections will be based on the following criteria:

- Qualifications and experience
- Fully successful performance rating or higher
- Personal narratives

Please include the announcement number on all documents being submitted so that the application can be processed properly. Mail your application to:

U.S. Department of Agriculture
Office of Human Capital Management
Attention: Michael D. Scott
1400 Independence Avenue, S.W.
Room 316-W
Washington, DC 20250-9892

If you have further questions or need additional information, Mr. Scott can be reached at (202) 720-6104 or michaeld.scott@usda.gov.

# ATTACHMENT 6

2003 Tracking System

# SPECIAL PROJECTS

| Special Projects Agency | Meets Obligation of Settlement Agreement | Application(s) Received | Regional Location | EO, Position Title/Grade | Roster, Status | Change Management Approval | Date Approved, EO Selection |
|---|---|---|---|---|---|---|---|
| AFHIS | | 3 Applications received and 2 of 3 applications referred and are Tier One and Tier Two A claimants | Riverdale, MD | Associate Deputy Administrator 401-14/15 | GS Closed | Approved | 4/13/06 Jess Rajan, GS-401-15 |
| CR | | 5 Applications received and referred. | Florida | Supervisory PPQ Officer GS-436-11/12 | Closed | Approved | 3/24/06 Smith, Gibbs, GS-436-11 |
| | | 1 Application received and referred. | Washington, DC | Management Analyst GS-343-11/12 | Closed | Approved | No Selection Made |
| ARS | | 1 Application received and referred. | Washington, DC | Management Analyst (Human Resources) GS-343-13 | Closed | Approved | 5/12/06 No Selection Made |

10/10/06  20:00 FAX 7200953        Office of Civil Rights

# SPECIAL PROJECTS

| Special Projects Agency | Obligations of Settlement Agreement, Applications Received | Regional Location | EEO Position/Title/Grade | Status | Roster Management Approval | Date Approved / EEO Selectee |
|---|---|---|---|---|---|---|
| **FSIS** | 3 Applications received and referred. | Beltsville, MD | Data Analyst (Set of Duties) | Closed | Approved | 5/18/06 Irene Forteon GS-9 Grade Level |
| | 3 Applications received and referred. | Beltsville, MD | Special Program Assistant (Set of Duties) | Closed | Approved | 6/21/06 Betty Lshida GS-13 |
| | 6 Applications received and 1 of 6 applications referred and is a Tier One claimant | Washington, DC | Special Assistant to the Chief Human Capital Ofcr - Grade 9 thru 14 | Closed | Approved | 6/20/06 Henry M. Doan GS-14 Grade Level |
| **NRCS** | 5 Applications received and 1 of 5 applications referred and is a Tier One claimant | Washington, DC | Special Assistant to the Chief Information Ofcr - Grade 9 thru 14 | Closed | Approved | 5/15/06 Krishna Murthy GS-0701-14 |

2003 Tracking System

# SPECIAL PROJECTS

| Special Projects | Meet Obligations of Settlement Agreement | Applications Retrieved | Regional Location | EOI Position Title/Grade | Status | Roster Management Approval | Date Approved | EOI Selectee |
|---|---|---|---|---|---|---|---|---|
| Agency | | | | | | | | |
| | | 1 Application received and referred. | Washington, DC | Conservation Policy Analyst, GS-110-13 | Closed | Approved | 8/3/06 | Cali Chen GS-13 |
| | | 1 Application received and referred. | Washington, DC | Program Analyst GS-12/13/14 | Closed | Approved | 8/3/06 | Wesley Williams GS-14 |
| | | 1 Application received and referred. | Washington, DC | Management Analyst GS-343-11/12/13 | Closed | Approved | 8/3/06 | Arlen Rickie GS-12 |
| | | 1 Application received. | Washington, DC | Technical Guides Policy Analyst GS-401/457-11/12 | Open | | | |
| FSA | | 2 Applications received. | Washington, DC | Human Resources Specialist GS-201-12/13 | Closed | Approved | 8/29/06 | Cecilia Matthews GS-12 |
| | | No applications received | Washington, DC | Program Analyst GS-343-12/13 | Closed | | | |
| | | No applications received | Washington, DC | Supervisory Information Technology Specialist GS-2210-14 | Closed | | | |

# EXHIBIT   21

Report of Investigation ("ROI") for Complaint No. CRSD-CF-2005-02384, with selected exhibits including Complaint in CRSD-CF-2005-02384 (appears as exhibit 1 to Report of Investigation ("ROI") beginning at p. 000011, and pages 000002, 000005; Acceptance Letter (appears as exhibit 2b to ROI, at p. 0000021)



United States
Department of
Agriculture

Office of the
Chief Financial
Officer

National
Finance
Center

P.O. Box 60000
New Orleans
Louisiana 70160

DATE:      June 12, 2007


TO:        Steven C. Brammer
           Attorney-Advisor
           OGC, Civil Rights Litigation Division


FROM:      Patty Duvernay
           Equal Employment Specialist


SUBJECT:   Copy of Report of Investigation; Krishna Murthy;
           Agency Case No. CRSD-CF-2006-02384; EEOC No. 570-2007-00306X


As requested, a copy of the subject complaint file is enclosed. If any additional information is
needed, please let me know.

# UNITED STATES DEPARTMENT OF AGRICULTURE

## REPORT OF INVESTIGATION

**TITLE:**
Krishna Murthy
Senior Staff Officer, GS-14
U. S. Department of Agriculture
Food Safety and Inspection Service
Office of Program Policy and Employee
 Development, New Technology Staff
1400 Independence Ave., S.W.
Washington, DC  20250

**CASE NUMBER:**
CRSD-CF-2006-02384

**CONTRACTOR:**
Draughn & Associates

**INVESTIGATOR:**
Eva R. Lacey

**HOME ADDRESS:**
7715 Lear Road
VA  22102

**BASIS(ES) & ISSUE(S) OF COMPLAINT:**
Discrimination based on race (Asian), religion McLean,
(Hindu), age (DOB: 04/13/47), and reprisal (prior
EEO activity) – Non-selection for detail.

**REPRESENTATIVE:**
None.

## I.    ISSUE IN COMPLAINT

According to the Acceptance Letter from Patty A. Duvernay, for Debbie A. Byrne, Acting
Director, Equal Opportunity and Workforce Services Staff, USDA, National Finance Center,
Equal Opportunity and Workforce Services Staff, New Orleans, LA, to Complainant, the
following was accepted for investigation:

> Whether the agency discriminated against the Complainant on the bases of race (Asian),
> religion (Hindu), age (DOB: 04/13/47), and reprisal (prior EEO activity), when he was not
> selected for the position of Associate Deputy Administrator, GS–401-14/15, advertised
> under Opportunity Identification Number APHIS-06-DOPP-001.

## II.    SUMMARY

Complainant being a member of protected groups by virtue of his race (Asian), religion (Hindu),
and age (DOB: 04.13.47) is at Exhibits 3 and 6.

Whether the Complainant was subjected to discrimination is addressed at Exhibits 6-13.

Krishna Murthy, Complaint No. CRSD-CF-2006-02384

Whether Complainant was not selected for the position (detail) of Associate Deputy Administrator, GS-401-14/15, advertised under Opportunity Identification Number APHIS-06-DOPP-001, is addressed at Exhibits 7 - Food Stamp Program Manager, GS-0340-14, Chicago Regional FNS Office, under Vacancy Announcement Number FNS-002-02-0, on February 24, 2003, is addressed at Exhibits 7 - 12.

Whether the incident affected a term condition or privilege of Complainant's employment is addressed at Exhibits 6 and 13.

Whether the Complainant previously engaged in a protected activity or opposed unlawful discrimination is addressed at Exhibit 6.

Whether the agency was aware of the Complainant's protected activity is addressed at Exhibit 7 – 12.

Whether the Complainant was contemporaneously or subsequently adversely affected by some action of the agency is addressed at Exhibits 6 - 13.

Whether there was some nexus between the Complainant's protected activity and the adverse employment decision is addressed at Exhibits 6 - 13.

## III.    DESCRIPTION OF INVESTIGATION

Places of Investigation:                      Washington, DC and Riverdale, MD

Dates of Investigation:                       September 26, 2006 – November 15, 2006

## IV.    DESCRIPTION OF EXHIBITS

Exhibit 1:    Formal complaint of discrimination of Krishna Murthy, dated August 17, 2006.

Exhibit 2a:   Letter of Acknowledgement of Discrimination Complaint from Patty A. Duvernay, for Debbie A. Byrne, Acting Director, Equal Opportunity and Workforce Services Staff, USDA, National Finance Center, Equal Opportunity and Workforce Services Staff, New Orleans, LA, dated August 29, 2006.

Exhibit 2b:   Letter of Acceptance of Discrimination Complaint from Patty A. Duvernay, for Debbie A. Byrne, Acting Director, Equal Opportunity and Workforce Services Staff, USDA, National Finance Center, Equal Opportunity and Workforce Services Staff, New Orleans, LA, dated September 18, 2006.

Exhibit 3:    EEO Counselor's Report prepared by Jo Ann Thomas, Contract EEO Investigator, dated August 28, 2006, with attachments.

Exhibit 4:    Relationship of Affiants Chart and Organizational Chart, USDA, APHIS, Biotechnology Regulatory Services, Riverdale, MD.

Krishna Murthy, Complaint No. CRSD-CF-2006-02384

Exhibit 5:       Workforce Profile, USDA, APHIS, Biotechnology Regulatory Services, Washington, DC, as of July 2006.

Exhibit 6:       Affidavit of Complainant and Affidavit Addendum, both dated November 2, 2006.

Exhibit 7:       Affidavit of Michael D. Scott (African-American/Religion: Didn't Choose to Respond Re: Religion/DOB: 12/08/64/No Previous EEO Participation), Principal Agency Witness, Human Resources Specialist, GS-201-12, USDA, Office of Human Capital Management, Recruitment and Employee Development Division, Washington, DC, dated October 17, 2006.

Exhibit 8:       Affidavit of Judith Ann Garrison (Caucasian/Episcopalian/DOB: 04/14/67/No Previous EEO Participation), Principal Agency Witness, Director, Resource Management Programs, GS-14, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services, Resource Management Programs, Riverdale, MD, dated October 13, 2006.

Exhibit 9:       Affidavit of Rebecca A. Bech (Caucasian/Didn't Choose to Respond Re: Religion/DOB: 04/22/54/ Previous EEO Participation), Principal Agency Witness, Associate Deputy Administrator, Biotechnology Regulatory Services Program, SES Level, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, Riverdale, MD, dated October 12, 2006.

Exhibit 10:      Affidavit of Arnold Steven Foudin (Caucasian/Jewish/DOB: 06/16/46/Previous EEO Participation), Principal Agency Witness, Agriculturalist, Biotechnology Regulatory Services Program, GM-15, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, Riverdale, MD, dated October 11, 2006.

Exhibit 11:      Affidavit of John Thomas Turner, Jr. (Caucasian/Protestant-Christian/DOB: 01/13/57/No Previous EEO Participation), Principal Agency Witness, Director, Policy Coordination Division, GS-15, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, Policy Coordination Division, Riverdale, MD, dated October 23, 2006, with attachment.

Exhibit 12:      Affidavit of Cynthia June Smith (Caucasian/Non-Practicing Catholic/DOB: 05/23/59/Previous EEO Participation), Principal Agency Witness, Deputy Administrator, Biotechnology Regulatory Services Program, SES Level, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, Riverdale, MD, dated November 6, 2006.

Exhibit 13:      Complainant's Rebuttal Affidavit, dated November 15, 2006.

Exhibit 14:      Investigator's Memorandum to File, Subject: Attempts to Obtain the Statements/Affidavits of Witnesses Named by the Complainant, dated November 17, 2006, with attachments.

Krishna Murthy, Complaint No. CRSD-CF-2006-02384

Exhibit 15:    Investigator's Memorandum to File, Subject: Alleged Discriminating Officials
Named by the Complainant Not Interviewed, dated November 17, 2006.

Exhibit 16:    Complainant's position description at the time he applied for the detail.

Exhibit 17:    Selectee's position description at the time he applied for the detail.

Exhibit 18:    Documents pertaining to Complainant's performance appraisals, including:

    a) FY 2005 Performance appraisal, reflecting an overall rating of "Fully
Successful,"
    b) E-mail from Gloria Chisley to OPPED/NTS, Subject: Interim Performance
Appraisal Forms, dated May 17, 2006, and E-mail from Complainant to Daniel
Engeljohn, Subject: Re: Interim Performance Appraisal Forms, dated May 18,
2006, with attachments.
    c) Performance appraisal covering the period July 1, 2005 to April 20, 2006,
reflecting an overall rating of "Fully Successful," with attachments.
    d) Performance appraisal covering the period May 1, 2006 to July 31, 2006,
reflecting an overall rating of "Fully Successful," with attachments.

Exhibit 19:    Selectee's performance appraisal for FY 2005, reflecting an overall rating of
"Superior."

Exhibit 20:    Documents pertaining to the selection for the detail to the position of Associate
Deputy Administrator, GS-401-14/15, advertised under Opportunity Identification
Number APHIS-06-DOPP-001, including:

    a) Expression of Interest, APHIS-06-DOPP-001, opening date February 3, 2006.
    b) Application of Complainant. (Source: Michael D. Scott)
    c) Application of Selectee. (Source: Michael D. Scott)
    d) Roster of Qualified Candidates.
    e) Rankings given to applicants for the detail, by Subject Matter Experts Arnold
Foudin, John Turner, and Rebecca Bech, with summary. (Source: Judith A.
Garrison)

Exhibit 21:    Guidance on How to Apply for Development Opportunity Placement Program
(DOPP), undated.

Exhibit 22:    Basu Settlement Agreement, dated December 7, 2004.

Exhibit 23:    Notification of Personnel Action (SF-50), appointing the Selectee to the detail,
effective date, May 28, 2006.

Exhibit 24:    Statistical Report of Employees Selected for DOPP Opportunities, covering the
period April 13, 2006 through August 29, 2006.

Krishna Murthy, Complaint No. CRSD-CF-2006-02384

Exhibit 25:    E-mail from Michael D. Scott to Complainant, Subject: Associate Deputy Administrator, Expression of Interest Announcement Number APHIS-06-DOPP-001, dated July 13, 2006.

Exhibit 26:    Investigator's Memorandum to File, Subject: Delay in Submittal of the Report of Investigation, dated November 17, 2006.

Exhibit 27:    Investigator's document requests, with agency responses.

## V.    BACKGROUND STATEMENT

Krishna Murthy (Asian Indian/Hindu/DOB: 04/13/47/Previous EEO Participation), hereinafter Complainant, is Senior Staff Officer, GS-14, U. S. Department of Agriculture, Food Safety and Inspection Service, Office of Program Policy and Employee Development, New Technology Staff, located in Washington, DC. Complainant has held his current position for a little over one year and has been employed the USDA for 27 years. He alleges that he was discriminated against because of his race, religion, age and reprisal when he was not selected for a detail to an Associate Deputy Administrator, GS-401-14/15, position advertised under Opportunity Identification Number APHIS-06-DOPP-001. (Exhibit 6)

Michael D. Scott (African-American/Religion: Didn't Choose to Respond Re: Religion/DOB: 12/08/64/No Previous EEO Participation), Principal Agency Witness, is Human Resources Specialist, GS-201-12, USDA, Office of Human Capital Management, Recruitment and Employee Development Division, located in Washington, DC. He has held his current position for four months and has been employed by the agency for 11 months. (Exhibit 7)

Judith Ann Garrison (Caucasian/Episcopalian/DOB: 04/14/67/No Previous EEO Participation), Principal Agency Witness, is Director, Resource Management Programs, GS-14, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services, Resource Management Programs, located in Riverdale, MD. She has held her current position for approximately 1 to ½ year and has been employed by the agency for 17 years. (Exhibit 8)

Rebecca A. Bech (Caucasian/Didn't Choose to Respond Re: Religion/DOB: 04/22/54/ Previous EEO Participation), Principal Agency Witness, is Associate Deputy Administrator, Biotechnology Regulatory Services Program, SES Level, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, located in Riverdale, MD. She has held her current position for 3 years and has been employed by the agency for 20 years. (Exhibit 9)

Arnold Steven Foudin (Caucasian/Jewish/DOB: 06/16/46/Previous EEO Participation), Principal Agency Witness, is Agriculturalist, Biotechnology Regulatory Services Program, GM-15, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, located in Riverdale, MD. He has held his current position for about 1 year and has been employed by the agency for about 30 years. (Exhibit 10)

Krishna Murthy, Complaint No. CRSD-CF-2006-02384

John Thomas Turner, Jr. (Caucasian/Protestant-Christian/DOB: 01/13/57/No Previous EEO Participation), Principal Agency Witness, is Director, Policy Coordination Division, GS-15, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, Policy Coordination Division, located in Riverdale, MD. He has held his current position for just over 3 years and has been employed by the agency for nearly 8 years. (Exhibit 11)

Cynthia June Smith (Caucasian/Non-Practicing Catholic/DOB: 05/23/59/Previous EEO Participation), Principal Agency Witness, is Deputy Administrator, Biotechnology Regulatory Services Program, SES Level, USDA, Animal and Plant Health Inspection Service, Biotechnology Regulatory Services Program, located in Riverdale, MD. She has held her current position for approximately 4 ½ years and has been employed by the agency for 27 years. (Exhibit 12)

**Issue:**      **Non-Selection for Detail Position of Associate Deputy Administrator, GS-401-14/15.**

Complainant states he applied for the position of Associate Deputy Administrator, GS-401-14/15, advertised under Opportunity Identification Number APHIS-06-DOPP-001. He states it was a temporary detail. He also states, to his knowledge, he was not considered for the position. He additionally states he was better qualified for the detail than the individual that was selected. He further states he is a veterinarian, has two Masters Degrees, previously worked for APHIS and was familiar with the position. (Exhibit 6)

Complainant states there was no selection process that he knows of. He states he is a Basu class co-agent. He also states the Selectee is a Tier 2 or Tier 3 Basu class agent. He additionally states the agreement states Tier 1 agents are to receive priority consideration. He further states he was not given priority consideration. (Exhibit 6)

Complainant states he was previously selected for an opportunity under the Development Opportunity Placement Program (DOPP). He states he was selected for a Special Assistant to the Chief Information Officer, GS-14 position, with the duration of the detail being 30 days, including holidays and weekends. He also states he was discriminated against. When asked what he sought in relief, Complainant states, "The purpose is to get experience in these positions so that would help for my promotion". I am seeking same level detail in USDA." (Exhibit 6)

Michael D. Scott states he was aware of Complainant's previous participation in the EEO process. He states his knowledge of this is based on Complainant's priority consideration for the Development Opportunity Placement Program (DOPP). He also states his involvement in the detail was to announce the position, receive the applications, review the applications and forward to the Selecting Official a list of candidates for consideration and selection. He additionally states the opportunity was a temporary detail. He further states a roster of qualified candidates was subsequently provided to the Biotechnology Regulatory Services Division of APHIS. He further states Complainant's name and the name of the Selectee were the only names included on the roster. (Exhibit 7)

Mr. Scott states both Complainant and the Selectee are Basu class agents. He states the first posting of the DOPP occurred in February 2006. He also states Complainant was previously selected for a detail to the position of Special Assistant to the Chief Information Officer, GS-14, with the duration of the detail being 31 days. He additionally states, prior to being selected for the detail to the Associate Deputy Administrator, GS-401-14/15 position, the Selectee had not been previously selected for a DOPP opportunity. He further states Complainant was not discriminated against. (Exhibit 7)

Judith Ann Garrison states she was not aware of Complainant's previous participation in the EEO process. She states the opportunity was a 30-day detail. She also states for this opportunity, she facilitated the establishment of a group of subject matter experts to review the applications for the detail. She additionally states she was not involved in the selection other than signing the necessary paperwork for the selection official, Cindy Smith, Deputy Administrator, Biotechnology Regulatory Services, who was not in the office that day. She further states it is customary for her to sign off on such paperwork when Ms. Smith is not available. (Exhibit 8)

Ms. Garrison states she received a roster of qualified candidates from their Human Resources Office who received the roster from the Office of Human Capital Management, Recruitment and Employee Development Division. She states Complainant's name and the name of the Selectee were the only names included on the roster. She also states the subject matter experts that reviewed the applications were Rebecca Bech, Associate Deputy Administrator for Emerging and International Programs; John Turner, Division Director, Policy Coordination Programs; and, Arnold Foudin, Agriculturalist from the Office of the Deputy Administrator. She additionally states of the two candidates on the roster, the candidate with the highest score was subsequently selected for the opportunity. She further states priority consideration was given to the class agents of the Basu settlement. Ms. Garrison states Complainant was not selected for the detail because he scored lower by a range of points, than the person given the opportunity. She states Complainant was not discriminated against. (Exhibit 8)

Rebecca A. Bech states she was not aware of Complainant's previous participation in the EEO process. She states because the detail was to carry out the job that she was performing at the GS-15 level, she was asked to review the applicants on paper and provide comments. She also states they were trying to create an opportunity for people to obtain more experience at the policy level. She additionally states the opportunity was a 30-day detail. She further states, as she recalls, she initially looked at three candidates, but the third name was removed. (Exhibit 9)

Ms. Bech states she served on a team of subject matter experts to review the applications. She states she is not certain of the other members and didn't converse with them. She also states they conducted the reviews separately and coordinated through Judy Garrison. She additionally states regarding the areas in which the review team members scored the applications and the range of points for each factor, she knows that they normally look at previous experience in management issues, including a certain amount of mid-level management experience; communication skills; quick turn around capability for Under Secretary briefings; past level of experience in dealing with their areas of focus, including setting standards for compliance and enforcement; past experience in relationship to biotechnology expertise and other areas in which they require assistance. She additionally states she doesn't believe she ever saw the total points. She further states a ranking

system of 4 or 5 is generally used. She further states she doesn't recall the score Complainant received. Ms. Bech states she remembers that no one received a perfect score in anything. She states, as she recalls, both candidates were very close regarding one area and in a few other areas, management experience and the specialized experience they were looking for, the Selectee scored much higher than Complainant. She also states she is a real stickler for written documents. She additionally states the applications were examples of written communication as well as presentation skills. She additionally states she expected the applications to be well written and polished. She further states she believes Complainant scored lower on the total application. Ms. Bech states, as she recalls, the person selected put together a very good application package. She states she doesn't recall the score the Selectee received. She also states, to her knowledge, the candidate with the highest score was selected for the opportunity. She additionally states Complainant was not discriminated against. (Exhibit 9)

Arnold Steven Foudin states he was not aware of Complainant's previous participation in the EEO process. He states he was one of the employees that was asked to independently evaluate and score the applications for the opportunity. He also states he thinks the opportunity was a temporary detail. He additionally states the review factors were included on a prescribed list that was provided to the panel members. He further states they were to evaluate the applications based only on the factors provided. Mr. Foudin states he doesn't recall the specific factors. He states they were also given the scoring mechanism. He also states, as he recalls, the panel members developed individual scores. He additionally states he doesn't recall if they conferred afterward. He further states the factors included regulatory experience and things dealing with science. Mr. Foudin states he doesn't recall the range of points that were to be assigned, however, believes they were small numbers. He states he doesn't recall the score Complainant received or the score the Selectee received. He also states he doesn't know if anyone was selected. He additionally states he thought everyone on the list was a Basu class agent. He additionally states all of the candidates were rated and ranked only on the factors that they were to score. He further states, to his knowledge, Complainant was not discriminated against. (Exhibit 10)

John Thomas Turner, Jr., states he was not aware of Complainant's previous participation in the EEO process. He states he was part of a "paper" panel that reviewed the applications/resumes and gave applicants a rating based on their applications. He also states Judy Garrison provided the materials from the candidates. He additionally states the opportunity was a temporary detail. He further states he served on a team of subject matter experts to review the applications. Mr. Turner states it was a "paper" panel and they did not convene. He states he didn't know at the time, but now knows that Rebecca Bech and Arnold Foudin also reviewed the applications and ranked the candidates. He also states the applicants were scored in four areas, including the general appearance of their overall applications, oral and written communication skills, management experience, and, the quality of their management experience. He additionally states, regarding the range of points, he rated the candidates from 1 to 5. He further states he gave Complainant a score of 2.8, after averaging, with the total score being 11.5. Mr. Turner states he gave the Selectee a score of 4, after averaging, with the total score being 16. He states the candidate with the highest score was selected for the opportunity. He also states his notes show that Complainant was slightly lower in every area than the Selectee and was the lowest in the area of quality management experience. He additionally states, to score higher than the Selectee,

Complainant could have had more quality management experience, could have improved the appearance of his application, and could have had better communication skills. He further states, regarding communication skills, it was mostly written communication skills. Mr. Turner states he's sure that was heavily weighed. He states with the oral communication skills, they looked mostly for oral presentations. He also states Complainant was not discriminated against. He additionally states they used the qualifications of the candidates to make the selection. (Exhibit 11)

Cynthia J. Smith states she was not aware of Complainant's previous participation in the EEO process. She states she asked their Resource Management Director, Judy Garrison, to work with Human Resources to create a viable developmental detail opportunity that they later offered to interested candidates. She also states the detail opportunity was announced and a panel of individuals was established to accomplish the screening of the applicants. She additionally states they only received the names of two candidates on the certificate that was provided by the Department. She further states the panel reviewed the applications, assessed the strengths and weaknesses of the two candidates, made a recommendation and she concurred with the recommendation. Ms. Smith states the other candidate on the certificate was offered the developmental opportunity and accepted it. (Exhibit 12)

Ms. Smith states the opportunity was a temporary detail. She states Judy Garrison organized a team of subject matters experts that included Arnold Foudin, Rebecca Bech and John Turner. She states she doesn't recall the specifics of the areas on which the candidates were evaluated or their related strengths and weaknesses. She also states she doesn't recall Complainant's score or the score of the Selectee, however, he scored higher than Complainant. (Exhibit 12)

When asked other than the scores, the criteria applied in making the selection for the detail, Ms. Smith responded that as she recalls, other than the scores, the only other area that they looked at was the range of work that had been accomplished by the candidates. She states they also checked for applicable work experience that related to their projects. She also states, as an example, the candidate selected had ISO certification experience. She additionally states this was an area in which they previously had ISO certification, lost it, and wanted to re-establish it. She further states they were very impressed with the Selectee's experience concerning ISO certification. Ms. Smith states the candidate that was selected had relevant experience that was related to projects that he could work on for them. (Exhibit 12)

Ms. Smith states she believes both candidates on the roster were Basu class agents. She states Complainant wasn't selected for the detail because, as she recalls, the other candidate had work experience that was more relevant to the projects that he could work on for them. She also states the Selectee was also rated higher in the various competencies and had a stronger written application as well. She additionally states, to be selected for the detail, Complainant could have had more relevant work experience and a stronger written application. She further states she did not discriminate against Complainant. (Exhibit 12)

Complainant, **in rebuttal**, states both he and the Selectee are not Basu class agents. He states he is a class agent and co-agent. He also states the Selectee is only a class member. He additionally states this selection was not to be by the score, but rather the priority consideration given to the

Krishna Murthy, Complaint No. CRSD-CF-2006-02384

class agent and class co-agent. He further states management was not to select a person for a DOPP opportunity under the Basu agreement by scores. Complainant states this was not a competitive selection like a regular announcement for a job. He states this provision was made for the class agents and co-agents. He also states he was discriminated against. (Exhibit 13)

## VI.    SURVEY OF THE GENERAL ENVIRONMENT

According to the agency, as of July 2006, there were 6 employees working for USDA, APHIS, Biotechnology Regulatory Services, Office of the Deputy Administrator, Washington, DC. Of the 6 employees, 4 or 67% were White and 2 or 33% were Black. Of the 6 employees, 4 or 67% were age 40 or over and 2 or 33% were under age 40. The agency does not capture and maintain data regarding the religions of employees. As of July 2006, there were 8 employees, working for USDA, APHIS, Biotechnology Regulatory Services, Resource Management Programs, Office of the Deputy Administrator, Washington, DC. Of the 8 employees, 5 or 63% were White and 3 or 27% were Black. Of the 8 employees, 5 or 63% were age 40 or over and 3 or 27% were under age 40. (Exhibit 5)

*Employees Previously Selected for DOPP Opportunities*

Since the first two opportunities became available in February 2006, 15 DOPP opportunities have been announced. Of the 15 opportunities that were announced during the period February 22, 2006 through October 2, 2006, 2 or 13% were announced by APHIS; 2 or 13% were announced by CR; 2 or 13% were announced by ARS; 2 or 13% were announced by FSIS; 4 or 26% were announced by NRCS; and, 3 or 20% were announced by FSA. Of the 15 DOPP opportunities that were announced, selections were not made for 2 or 13%; applications were not received for 2 or 13%; and, 1 or 6% resulted in one applicant. Selections were made regarding the remaining 10 opportunities, including Complainant. (Exhibit 24)

*Complaints Filed by Employees Alleging Reprisal As A Basis*

According to the agency, a thorough review of their EEO complaints database yielded "zero" EEO complaints based on reprisal at the GS-13, GS-14 and GS-15 levels. (Exhibit 27)

Exhibit 1

United States Department of Agriculture
Office of Civil Rights
Employment Complaints Division

1400 Independence Avenue, S.W.
Mail Stop 9440
Washington, DC 20250

**1. Name**

[✓] Mr. [ ] Ms. MURTHY KRISHNA
(Last) (First) (MI)

CRSD-CF-2006-02384

[✓] USDA Employee   [ ] USDA Applicant
[ ] Former USDA Employee

**2. Address (Home)**

(Street)

(City) (State) (Zip)

3. Telephone Number

Work (202) 690-5646

Home

**4. Name of Agency Which You Allege Discriminated Against You**

USBA, OCR, and USBA APHIS
(Office)

1400 Independence Ave. Whitten Building Washington DC. 20250
(City) (State) (Zip)

**5. Bases of Discrimination** (Do not include bases for which you did not received counseling.) The bases are age, race, color, national origin, religion, sex, physical or mental disability, marital status, sexual orientation and reprisal. Be specific in your identification of bases (e.g., age (55), sex (female), race (white).

① RACE - ASIAN, ② Religion - HINDU          (See Attachment
② AGE - 4-13-1947, ④ Reprisal - Prior EEO activity

**6. Issue(s) of Alleged Discriminated on wich You Were Counseled and Wish to File Formal** (Do not include issues or allegations for which you did not receive counseling. Provide, if you deem necessary, additional details on reverse side.) Be specific with exact issue and the date of the issue (e.g., non-selection to vacancy announcement USDA-99-174, Secretary, GS-318-9, on March 1, 1999, or 2-day suspension for misconduct on January 28 & 29, 1999). You do not need to elaborate on why you feel this was discriminatory; you will be given the opportunity to support your complaint during the investigation process. I applied to APHIS - 06-BOPP-001

Associate Deputy Administrator Position. This Position was announced as Priority Consideration to Class Agents of Asian Class Action Settlement Agr. I am a class Agent and coagent. I was not Selected. A class member was elected. Plead. Read The Settlement Agreement carefully.

**7. Have you filed a negotiated grievance regarding the issues of this complaint?**   [ ] yes [✓] no

Have you filed an MSPB appeal regarding the issues of this complaint?   [ ] yes [ ] no

**8. Representative, if any.** (Include phone number and address)

**9. Name of EEO Counselor**   Ms. Jo Ann Thomas

**10. Requested Remedy**   Reinstatement to GS-15 Position

**11. Signature**   Krishna Felisitha   Date   8-17-06

If you have questions or need guidance in the completion of this form, contact your EEO Counselor.

000011

Exhibit 1
Page 1
of 8

August 15, 2006

**Certified – Return Receipt**
**Requested 7005 1160 0003 3162 0115**

Krishna Murthy


Re:  Informal EEO Complaint - CRSD-CF-2006-02384

Dear Mr. Murthy:

On July 14, 2006, you contacted the USDA, OCFO, NFC, Equal Employment
Opportunity Workforce Services Staff (EEOWSS) expressing an interest in filing an
equal employment opportunity (EEO) complaint of discrimination against the Office of
Civil Rights (OCR).  The EEOWSS advised that July 14, 2006 would serve as your
official contact date.  The informal EEO complaint was assigned to me for processing.
Specifically, the issues discussed were appointment/hire, harassment/non-sexual,
promotion/non-selection and training.  You alleged that this action was due all or in part
because of your race (Asian), age (4-13-47), religion (Hindu) and reprisal (prior EEO
activity).

If you believe you have been discriminated against on the basis of race, color, religion,
sex, national origin, age, sexual orientation, marital status, physical or mental disability;
or that a reprisal action has been taken against you for an EEO related matter, you have
the right to file a formal discrimination complaint with the USDA, OCFO, National
Finance Center within 15 calendar days after your receipt of this notice.

The complaint must be in writing and signed by you.  It must be specific and contain only
those issues discussed with me.  It must also state whether you filed a grievance under
negotiated or administrative grievance procedures or an appeal to the Merit Systems
Protection Board on the same matters.  You may use the enclosed form to file the
complaint.  You may file your complaint with the following official:

Debra A. Byrne, Acting Director
EEO and Workforce Services Staff     504 - 426 -9712
USDA, OCFO, National Finance Center
P.O. Box 29729     504 - 426 - 9710—
New Orleans, LA 70189-0729

Exhibit  1
Page  2
of  8

**Krishna Murthy**                                                                                  2

Please refer to the information you were previously provided on your rights and responsibilities. You may contact Patricia Duvernay, EEOWSS, at (504) 426-6204 if you have questions about this notice, the informal counseling process or the formal complaint process.

Respectfully,

Jo Ann Thomas
Contract EEO Counselor

Enclosure 1) Complaint of Employment Discrimination form

Exhibit ___1___
Page ___3___
of ___8___

U. S. Department of Agriculture
Office of the Chief Financial Officer
National Finance Center
Equal Employment Opportunity and Workforce Services Staff

## RELEVANT INFORMATION:

Have you previously participated in the EEO process?  If so, when?

Yes Recently

If you have previously participated in the EEO process, what is the current status of that action?

Not Settled - Still in the Process

What is the date of the most recent incident you would like to discuss with an EEO Counselor?

April 21, 2006

Request for Relief:  What are you seeking in relief?

Promotion to GS-15 - This position was an GS-14/15.

| ELECTION OF PARTICIPATION - INFORMAL EEO COMPLAINT PROCESS (Please Check One) | |
|---|---|
| ✓ | Alternative Dispute Resolution (ADR) |
| | Traditional EEO Counseling |

| Has the Aggrieved been given a **written copy** of their Notice of Rights and Responsibilities | YES ✓ | NO_____ |
|---|---|---|

**Documentation:  Please attach any documentation you wish to support your allegation(s).  Include a copy of any written action(s) which caused you to seek counseling at this time.**

Exhibit __1__
Page __5__
of __8__

U. S. Department of Agriculture
Office of the Chief Financial Officer
National Finance Center
Equal Employment Opportunity and Workforce Services Staff

Please provide the date of each incident/claim: I have applied to APHIS-06-DADP-001
Associate Deputy Administrator Position. I come to know on
July 14. 2006. Another non-Agent was Selected to this Position.
This Position was for Agents & Tire 1 of Asion class action Settlement Agreement

Alleged Responsible Management Official: What is the name and position of the person(s)
you believed discriminated against you?

① MS. SADHANA TRUE - DIRECTOR OF CIVIL RIGHTS. USDA.
② Mr. FAROOK SAIT. Special Assistant to Secretary for CR. OCR USDA
③ MICHAEL SCOTT. OCR  USDA      → (BioTechnology Regulatory Service)
④ CINDY SMITH. Deputy Administrator, BRS APHIS Riverdale HD.

Have you discussed this matter with the person(s) you believed is responsible? If so, what
explanation did he or she give you?

YES WITH Mr. MICHAEL SCOTT. OCR USDA
See Attached letter.

Other Witnesses: Are there any witnesses who have direct knowledge of the matter? Please
give me the name and work telephone number of each witness and what you believe they
know about the matters at issue.

Dr. Subhash Gupta, APHIS. BioTechnology Division of
APHIS RiVERDale. MD

---

**Other Forums:**

Have you filed a union grievance?          Yes _____ No ✓_____

If so, what is the status of your grievance?

Have you filed an appeal to the Merit Systems Protection Board (MSPB) on this
matter?                    Yes _____No ✓_____

If so, what is the status of the MSPB appeal?

---

Exhibit 1
Page 4
of 8

U. S. Department of Agriculture
Office of the Chief Financial Officer
National Finance Center
Equal Employment Opportunity and Workforce Services Staff

INTAKE FORM

For Filing an EEO Pre-complaint

CASE NO.: _____

| | |
|---|---|
| Date of Contact with EEO Office | *July 14, 2006* |
| Date received this form | *July 17, 2006* |
| Name of Aggrieved Person | *Dr. KRISHNA MURTHY* |
| Job Title and Grade | *VMO-761 - GS-14 SENIOR STAFF OFFICER* |
| Email | *Kris.Murthy@FSIS.USDA.Gov* |
| Home Address | |
| Home Telephone Number | |
| Work Telephone Number | *202 - 690 - 5646* |
| Cellphone Number | |
| Office Title and Work Location | *SENIOR STAFF OFFICER 1400 Independence AV S.W. WASH D.C. 20250* |

**Designation of Representative:** You have the right to retain representation of your choice. If you want someone other than yourself to represent you, you must elect the representative in writing. The representative can be anyone of your choosing. You may elect to have a representative at any stage in the process.

**Name of Representative:**

**Representative's Address:**

**Representative's Phone Number:**

**Is your representative an employee of the Agency?**          Yes _____          No _____

**Anonymity:** You have the right to remain anonymous at the counseling stage of EEO Complaint Processing. Do you wish to remain anonymous?

Yes _____          No ___✓___

Exhibit 1
Page 6
of 8

U. S. Department of Agriculture
Office of the Chief Financial Officer
National Finance Center
Equal Employment Opportunity and Workforce Services Staff

**ALLEGED BASES:** Check and specify the basis(es) on which you believe you were discriminated against. If you are alleging age discrimination, give your date of birth. To file a complaint based on age, you must have been at least 40 years old when the incident occurred. If you're alleging discrimination based on handicap, give the nature of your handicap. If you are alleging discrimination based on retaliation/reprisal, you must have had prior involvement in the EEO complaints process. For example previously entered counseling, filed a formal complaint, or witness in a complaint.

| 1. Race | ✓ | 5. Sex (Female) | | 10.  Reprisal | ✓ |
|---|---|---|---|---|---|
| Specify: ASIAN | | 6. Sex (Male) | ✓ | Specify FORMER EEO complaint | |
| 2. Color: | | 7. Religion | | 11.  Parental Status | |
| Specify | | Specify: HINDU | | 12. Sexual Orientation | |
| 3. Age | ✓ | 8.  Mental Disability | | 13. Political Party | |
| Specify DOB: 4-15-47 | | Specify: | | 14.  Marital Status | |
| 4. National Origin | ✓ | 9.  Physical Disability | | 15.  Genetic Information | |
| Specify Place of Origin: INDIA | | Specify: | | 16.  Other | |

Claims of discrimination on the following bases <u>are not</u> covered by Federal anti-discrimination statutes: political belief, sexual orientation, marital status, family status, parental status, or genetic information.  Consequently, individuals who file EEO discrimination complaints on these bases have <u>NO</u> appeal rights after a final agency decision <u>AND NO</u> rights to a hearing before the Equal Employment Opportunity Commission.

<u>CLAIMS/MATTERS AT ISSUE:</u>

| *ISSUE* | | *ISSUE* | | *ISSUE* | |
|---|---|---|---|---|---|
| 01. Appointment/Hire | ✓ | 09.  Disciplinary Action | | 17.  Reassignment-Req denied | |
| 02. Assignment of Duties | | 10.  Duty Hours | | 18.  Reassignment-Directed | |
| 03. Awards | | 11.  Examination/Test | | 19.  Reinstatement | |
| 04. Equal Pay Act Violation | | 12. Evaluation/Appraisal | | 20.  Retirement | |
| 05. Demotion | | 13.  Harassment/Non-Sexual | ✓ | 21.  Time &Attendance | |
| 06. Reprimand | | 14.  Sexual Harassment | | 22.  Training | ✓ |
| 07. Suspension | | 15.  Pay Including Overtime | | 23.   Terms/Cond of Employment | |
| 08. Termination | | 16.  Promotion/Non-selection | ✓ | 24.  Reasonable Accommodation | |
| 25. Other (Specify) | | | | | |

Exhibit 1
Page 2
of 8

U. S. Department of Agriculture
Office of the Chief Financial Officer
National Finance Center
Equal Employment Opportunity and Workforce Services Staff

**NOTE:** Please review this form and make whatever corrections are necessary, then sign and return one copy of this form **immediately** so that the Intake Coordinator/EEO Counselor may be able to assist you. Please submit this form to EEOWSS via fax: 504-426-9710.

_____     _____
Signature                                              Date

Enclosures:       Certificate of Receipt of Rights and Responsibilities
                  EEO Complaint Process Flow Chart
                  Fact Sheet on Traditional EEO Counseling and ADR

**EEOWSS Use Only**

Date complaint received: _____

Date of Contact/Intake: _____

Contact Person's Name: _____

**If ADR elected**, date file sent to CPRC: _____

Date ADR is concluded: _____ Resolved ( ) Yes ( ) No

**If Counseling elected**, date file sent for counselor assignment: _____

Exhibit 1
Page 8
of 8

Exhibit 2 A

USDA
United States
Department of
Agriculture

Office of the
Chief Financial
Officer

National
Finance
Center

P.O. Box 60000
New Orleans
Louisiana 70160

August 29, 2006

Dr. Krishna Murthy



*CM:RRR:7004 1350 0005 3444 9973*

Re:    **Krishna Murthy**
       **Complaint No. CRSD-CF-2006-02384**

Dear Mr. Murthy:

This letter acknowledges receipt of the above formal Equal Employment Opportunity (EEO) complaint of discrimination against USDA's Office of Civil Rights (OCR), Office of Human Capital Management (OCHM), and Animal and Plant Health Inspection Service (APHIS) dated and considered filed on August 25, 2006. The formal EEO complaint has been assigned the number referenced above. Please refer to this number in any future communication on the subject formal EEO complaint.

This complaint will be assigned to an EEO Specialist to determine the following:

1.  Whether it contains sufficient information to adequately define the claim(s) and to determine whether the claim(s) raised in the formal EEO complaint are like or related to those raised with the EEO Counselor. A copy of the EEO Counselor's report of inquiry is enclosed.

    If sufficient information is not available, you may be issued a Letter of Clarification (LOC) requesting that you provide specific information within 15 days[1] of receipt. Failure to comply with the request may result in dismissal of your formal EEO complaint.

2.  Whether all or a portion of the claim(s) raised will be accepted and referred for investigation.

    If all or a portion of your formal EEO complaint is accepted and the investigation report has not been issued within 180 days[2] from the filing date, you have a right to request a hearing from the EEOC field office having jurisdiction over the geographical area where the formal EEO complaint arose. You also have a right to request a hearing within 30 days of receipt of the investigation report.

3.  Whether any portion of the formal EEO complaint will be dismissed.

---

[1] All references to days refer to calendar days unless specified otherwise.

[2] The Department is required to complete the investigation within 180 days from the date your formal EEO complaint was filed unless both parties agree, in writing, to extend the time period.

"An Equal Opportunity Employer"

Exhibit 2a
Page 1
of 2

If any portion, but not all of your formal EEO complaint is dismissed, you will be notified of the rationale for the determination. In accordance with 29 C.F.R. §1614.107(b), our determination that the cited claim(s) is dismissed will be reviewed by an administrative judge at the Equal Employment Opportunity Commission (EEOC) if you request a hearing on the remainder of the subject formal EEO complaint. However, you may not appeal this dismissal until a final action is taken by the Department on the remainder of your formal EEO complaint.

Enclosed is the identification of the EEOC field office and address where the hearing request should be sent. You are required to certify to the EEOC field office that a copy of the hearing request was sent to the following address:

> United States Department of Agriculture
> Office of the Chief Financial Officer
> National Finance Center
> Equal Employment Opportunity and Workforce Services Staff
> P.O. Box 29729
> New Orleans, LA  70189-0729

4. Whether the entire formal EEO complaint will be dismissed.

If your formal EEO complaint is dismissed in its entirety, you will be notified of the rationale for the dismissal and be advised of your appeal rights.

The agency must be informed of any changes in the names, addresses or locations of the complainant and the representative. If the Department is unable to locate you, it may dismiss your formal EEO complaint pursuant 29 C.F.R. §1614.107(a)(6).

If you have any questions or concerns regarding the status of your formal EEO complaint, please call (504) 426-6222 or submit your questions or comments in writing to the following address:

> United States Department of Agriculture
> Office of the Chief Financial Officer
> National Finance Center
> Equal Employment Opportunity and Workforce Services Staff
> Attn:  OCR Complaint Status Coordinator
> P.O. Box 29729
> New Orleans, LA  70189-0729

Sincerely,

*Patty Quvernay*

for
Debbie Byrne, Acting Director
Civil Rights Office

Enclosures –  EEO Counselor's Report of Inquiry; Washington Field Office Address Sheet

cc:    Kirk Baylor, Office of Civil Rights   066020

> Anna P. Grayson, APHIS Civil Rights Enforcement and Compliance

Exhibit da
Page 2
of 2

Exhibit 2 b



| United States<br>Department of<br>Agriculture | Office of the<br>Chief Financial<br>Officer | National<br>Finance<br>Center | P.O. Box 60000<br>New Orleans<br>Louisiana 70160 |
|---|---|---|---|

September 18, 2006


Dr. Krishna Murthy



*CM:RRR:7004 1350 0005 3445 0009*

Re:    Complaint No. CRSD-CF-2006-02384

Dear Dr. Murthy:

Upon review of your formal Equal Employment Opportunity (EEO) complaint of discrimination against the Office of Civil Rights (OCR), the Office of Human Capital Management (OHCM), and the Animal and Plant Health Inspection Service (APHIS) filed on August 25, 2006, and the EEO Counselor's Report of Inquiry dated August 28, 2006, we are accepting and referring for investigation the following claim:

- Whether the agency discriminated against you on the basis of race (Asian), religion (Hindu), age (DOB: 04/13/47), and reprisal (prior EEO activity) when you were not selected for the position of Associate Deputy Administrator, GS-401-14/15, advertised under Opportunity Identification Number APHIS-06-DOPP-001?

If you disagree with the description of this issue accepted for investigation, you may submit a written statement concerning the agency's articulation of the accepted claim within 7 calendar days from receipt of this letter for inclusion in the complaint file. Your statement should be sent to the following address:

> United States Department of Agriculture
> Office of the Chief Financial Officer
> National Finance Center
> Equal Employment Opportunity and Workforce Services Staff
> P.O. Box 29729
> New Orleans, LA 70189-0729

The Department of Agriculture is required under 29 C.F.R. §1614.108 to complete an impartial, factual and appropriate investigation of the accepted claims within 180[1] days of the date the subject EEO complaint was filed. An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred.

---

[1] All references to days refer to calendar days unless specified otherwise.

**000021**

"An Equal Opportunity Employer"

Exhibit *26*
Page *1*
of *3*

Murthy, Krishna                                                              Page 2 of 3

When the investigation begins, you will be contacted by an investigator. You are required to fully cooperate with the investigator. Failure to do so may result in the dismissal of your EEO complaint. You are required to present to the investigator all information you wish considered relevant to the accepted claims. Also, you are required to provide the investigator with the names of any witnesses you believe should be contacted.

You must keep the agency informed of your current address. If the Department is unable to locate you, it may dismiss your EEO complaints under 29 C.F.R. §1614.107(a)(6).

When you receive the investigative report, you will be notified of your rights to elect either an agency decision based on the record or a hearing with a decision from an Equal Employment Opportunity Commission (EEOC) administrative judge. The notification will provide you with specifics on how to exercise your election rights.

If you do not receive the investigative report after 180 days from the filing of your EEO complaint, you have the right to request a hearing from an EEOC administrative judge. Should you request a hearing, you must send your request to:

> U.S. Equal Employment Opportunity Commission
> Washington Field Office
> 1801 L Street, NW
> Suite 100
> Washington, DC  20507-1002

You must also certify to the EEOC that a copy of the hearing request was sent to the agency at the following address:

> United States Department of Agriculture
> Office of the Chief Financial Officer
> National Finance Center
> Equal Employment Opportunity and Workforce Services Staff
> P.O. Box 29729
> New Orleans, LA  70189-0729

You are also advised that, consistent with EEOC Regulations and the Secretary of Agriculture's strong commitment to the early resolution of EEO complaints, parties are encouraged to seek resolution to complaints at any stage of the EEO complaint process. Settlement discussions may take place throughout the administrative complaint process. If a resolution is achieved, a copy of the settlement agreement must be provided to this office promptly to avoid unnecessary confusion and additional cost. Likewise, if at any stage of the EEO complaint process you wish to voluntarily withdraw your complaint, you must promptly provide to this office, a written request to withdraw your EEO complaint. Your withdrawal request must be signed, dated, and include your EEO complaint number. To ensure prompt receipt, please fax a copy of the voluntary settlement agreement or voluntary withdrawal directly to the Equal Employment Opportunity and Workforce Services Staff at Fax Number (504) 426-9710.

C0b022

Exhibit *26*
Page *2*
of *3*

Murthy, Krishna                                                        Page 3 of 3

If you have any questions or concerns regarding the status of your complaint, please submit them in writing or call (504) 426-6222.

Sincerely,

*Patty Duvernay*

for

Debbie A. Byrne, Acting Director
Civil Rights Office

cc:     Kirk Baylor, Office of Civil Rights

        Anna P. Grayson, APHIS Civil Rights Enforcement and Compliance

Exhibit 2b
Page 3
of 3

Exhibit 3

## REPORT OF COUNSELING
### OCR Control Number: CRSD-CF-2006-02384

**Please Check One of the Following: Individual Complaint [X[ Class Complaint [ ]**

**COMPLAINANT INFORMATION:**

Name (Last/First/MI): Murthy, Krishna

Title/Series/Grade: VMO (Senior Staff Officer), GS-701/14

Agency Address: USDA/ APHIS, 1400 Independence Avenue, SW, Washington, DC 20250

Work Telephone: (202) 690-5646

Home Telephone: ▓▓▓▓▓▓▓▓▓▓▓▓

E-Mail Address: kris.murthy@fsis.usda.gov

Anonymity Requested:  Yes []   No [X]

Choice between ADR and Counseling: (Check the appropriate box)

**ADR [ ]      Counseling [X]**

**REPRESENTATIVE INFORMATION: N/A**

**CHRONOLOGY OF COUNSELING ACTIVITY:**

Date of Initial Contact: 7/14/06
Date of Initial Interview: 7/27/06
Date of Most Recent Alleged Discriminating Event: 7/14/06
Date Complainant Became Aware of Most Recent Event:  7/14/06
45th Day after Complainant Became Aware of Most Recent Event:  N/A
Explanation for Delay Beyond 45 Days (w/supporting documents):  N/A
Date of Final Interview: 8/15/06
Date Notice of Right to File (NRF) Issued: 8/15/06
Date Complainant Received NRF via Certified Mail: 8/19/06
Certified Return Receipt Article Number:  7005 1160 0003 3162 0115
Date Complainant Signed Written Receipt for NRF (if hand-delivered):  N/A
Date of Formal Complaint:  Unknown

Exhibit 3
Page 1
of 19

**COMPLAINT INFORMATION:**

**Issues:**  Appointment/hire, harassment/non-sexual, promotion/non-selection, training
**Bases:**   Race (Asian), age (4-13-47), religion (Hindu), reprisal (prior EEO activity)
**Date of Issue:**  7/14/06

## HAVE THE SAME COMPLAINT ISSUE BEEN RAISED IN EITHER OF THE FOLLOWING FORUMS?

( ) Yes.  If yes, check appropriate box below and indicate date of filing.  No (X)
( ) Negotiated Grievance with supporting documentation
( ) MSPB Appeal with supporting documentation
( ) Prior EEO Complaint(s) with supporting documentation
( ) Civil Action with supporting documentation

## RESPONDING MANAGEMENT OFFICIAL (RMO) INFORMATION:

Cindy Smith, Deputy Administrator (RMO#1)
Deputy Administrator
Biotechnology Regulatory Services
USDA-APHIS
Riverdale, MD
(301) 734-7324

Michael D. Scott, Human Resources Specialist (RMO#2)
Office of Human Capital Management
Recruitment and Employee Development Division, USDA
1400 Independence Avenue, SW
Washington, DC 20250
(202) 720-6104

Mohammed Farook Sait (RMO#3)
Special Counsel to the Assistant to Secretary for Civil Rights
USDA
1400 Independence Avenue, SW, Room 329-W
Washington, DC  20250
(202) 720-7569

Sadhna True, Director (RMO#4)
Office of Civil Rights (OCR)-USDA
1400 Independence Avenue, SW
Washington, DC 20250-9410
(202) 720-5212

Exhibit _3_
Page _2_
of _19_

**THE ISSUE:**

Krishna Murthy (hereafter referred to as complainant) applied, was found eligible and qualified, but was not selected for an Expression of Interest position, Associate Deputy Administrator, GS-14/15, advertised under Expression of Interest Announcement Number APHIS-06-DOPP-001. The complainant alleged discrimination based on race (Asian), age (4-13-47), religion (Hindu), and reprisal (prior EEO activity).

On July 27, 2006, this counselor called the complainant to begin the counseling process. The complainant asked that this counselor call him back on Friday morning, July 28, 2006.

On July 28, 2006, this counselor called the complainant to begin the counseling process. The complainant stated relief agreed to in the Basu agreement stipulated that six positions would be announced and filled under the Development Opportunity Placement Program (DOOP). The complainant also stated that class agents in the Tier one group would be given priority consideration for these positions. The complainant stated he was a co-agent for the Basu Class Complaint and therefore, should have been given priority consideration and selected for the Associate Deputy Administrator's position.

The complainant stated he applied for the position of Associate Deputy Administrator, GS-14/15, advertised under Expression of Interest Announcement Number APHIS-06-DOPP-001. He stated he does not know when the position was filled, but became aware of his non-selection for the position on July 14, 2006.

The complainant stated the agency violated the Basu agreement when he was not selected for the position. Further, the complainant stated he wished to file a breach of the Basu settlement agreement, and not an informal EEO complaint.

On July 28, 2006, the complainant forwarded an email to this counselor withdrawing informal EEO complaint CRSD-CF-2006-02384 initiated on July 14, 2006. The email also stated complainant would pursue the complaint as a breach of Asian Class Action (Basu) settlement. **(See Exhibit 1)**. On the same day (July 28, 2006) this counselor forwarded an email to complainant acknowledging receipt of his voluntary withdrawal of informal EEO complaint (CRSD-CF-2006-02384. **(See Exhibit 2)**

**On August 2, 2006 the complainant forwarded another email to this counselor advising that he did some more research regarding his case and now wanted his complaint to be processed as an informal EEO complaint, and not as a breach of Basu settlement agreement. (See Exhibit 3) On August 2, this counselor resumed processing of the informal EEO complaint.**

The complainant stated ████████ (hereafter referred to as RMO#1) (White, over 40, Catholic, no prior EEO activity) and ████████ (hereafter referred to as RMO#2) (African-American, over 40, Catholic, no prior EEO activity) were the selecting officials for the Expression of Interest APHIS position. The complainant stated █████████

Exhibit 3
Page 3
of 19

4

(hereafter referred to as RMO#3) (Caucasian, national origin India, over 40, Muslim, prior EEO activity) and ▓▓▓▓▓▓ (hereafter referred to as RMO#4) (Asian, over 40, Hindu, no prior EEO activity) are also involved in the selection process for all positions advertised under the DOPP.

The complainant stated he is the only employee in Tier 1 group and co-agent for Basu that has not been selected for a position under the DOPP. He stated RMO#3 was the person who negotiated the Basu settlement with the agencies. The complainant stated since the Basu settlement he has filed several individual complaints against the agency. He claims RMO#3 and RMO#4 are retaliating because of his individual complaints.

## INDIVIDUALS CONTACTED DURING INQUIRY:

▓▓▓▓▓▓▓ Director
**Resource Management Programs**
**Biotechnology Regulatory Services (BRS)**
**APHIS-USDA**
**(301) 734-5769**

On August 8, 2006 ▓▓▓▓▓▓▓ (White, under 40, Episcopal, no prior EEO activity) stated the DOPP provides opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages in headquarters and field office locations. She stated it is the intent of the USDA to ensure that career-enhancing opportunities are allocated in a fair and equitable manner. ▓▓▓▓▓▓▓ stated two DOPP opportunities are made available on an annual basis for each of the following agencies: Animal and Plant Health Inspection Service, Agricultural Research Service, Farm Service Agency, Food Safety and Inspection Service, Natural Resources Conservation Service, and the Office of the Assistant Secretary for Civil Rights.

▓▓▓▓▓▓▓ stated in support of the newly created DOPP, RMO#1 volunteered to be the first APHIS program to participate in the program. She stated RMO#1, a long-time supporter of EEO programs and initiatives, offered a 30 day detail to a vacant BRS Associate Deputy Administrator position.

▓▓▓▓▓▓▓ stated the opening date for the detail announcement was February 22, 2006 and the closing date was March 20, 2006. She stated on April 6, 2006, BRS received a roster of qualified candidates from the USDA Office of Human Capital Management, Recruitment and Employee Development Division. ▓▓▓▓▓▓▓ stated the roster listed two individuals, complainant and another. **(See Exhibit 4)** ▓▓▓▓▓▓▓ stated APHIS had no role in reviewing applications for basic qualifications and placing names on the roster. She said this was done by the Office of Human Capital Management.

▓▓▓▓▓▓▓ stated for the selection process, BRS organized a team of three subject matter experts to review the two applications. She said the subject matter experts included the following: Associate Deputy Administrator for Emerging Issues and Trade,

Exhibit 3
Page 4
of 19

SES, Policy Coordination Division Director, GS-15, and Agriculturist with the Office of the Deputy Administrator, GS-15. ████████ stated the team reviewed the applications and scored the applications on 4 factors including: 1) general appearance of overall application, 2) communication skills (oral and written skills with written skills having more importance), 3) ability to manage resources and projects (management skills), and 4) quality management experience. She said the reviewers were asked to score each application for each factor, from 1 to 5, with 1 being the lowest score and 5 being the highest score. ████████ stated overall scores were assigned to each candidate with complainant receiving an overall score of 37.5 points. She stated the person selected for the developmental assignment scored a total score of 48 points. ████████ stated based on these scores, the developmental opportunity was offered to the second candidate. She stated BRS maintains copies of all scoring sheets.

████████ stated BRS submitted the signed certificate with the selection to APHIS Human Resources on April 13, 2006. She stated on May 5, 2006, RMO#2, Office of Human Capital Management, sent written notification to the candidate selected. She stated BRS did not contact complainant of his non-selection as it was informed the Department would notify the individual not selected.

████████ stated regarding complainant's allegations, as only paper panels were conducted, BRS was not aware of race or age. She said nor was BRS aware of complainant's religion or prior EEO activity. She said the individual selected for the developmental detail was Asian American and over 40 years of age.

████████ stated in the past year, BRS has made great strides to provide opportunities to Asian Americans. She stated this includes hiring three Asian Americans, a GS 12/13 regional biotechnologist, a GS 12/13 senior regulatory specialist, and a GS-11/12 biotechnologist. In addition, she stated BRS offered a summer employment opportunity to an Asian student attending Penn State, majoring in biotechnology, and participated in the DOPP program.

## SUMMARY OF FACTS DEVELOPED IN THE INQUIRY:

**The said Expression of Interest announcement was not a competitive vacancy announcement.** The position was advertised under the DOPP process. Expression of Interest Opportunity Identification Number APHIS-06-DOOP-001 opening date was February 22, 2006 and closing date of March 20, 2006. (See **Exhibit 5**)

## REASONABLE ARTICULATED BY MANAGEMENT FOR THE ACTION THEY TOOK WHICH RESULTED IN THE COMPLAINT BEING FILED:

On August 14, 2006, RMO#1 stated in January 2006, she asked her Director of Resource Management Programs to work with the Agency's Human Resources Office and the Department's Office of Human Capital Management to arrange for a development opportunity placement within BRS. She stated she has long supported equal employment opportunity initiatives and programs and felt a developmental placement within her

Exhibit _3_
Page _5_
of _19_

program would benefit both BRS and the candidate selected for the temporary placement. RMO#1 stated upon learning of the DOPP, she reviewed vacant positions on her staff and felt a developmental 30 day detail to her vacant Associate Deputy Administrator position would be a great opportunity for an individual to learn about the biotechnology regulatory framework. RMO#1 stated the developmental detail was announced as an expression of interest. She said on March 3, 2006, her Director of Resource Management Programs forwarded the expression of interest announcement to everyone in BRS. RMO#1 stated it is her understanding that the Department broadcasted the expression of interest to eligible and qualified class agents under the Basu Settlement Agreement.

RMO#1 stated the announcement was originally opened for two weeks, February 22 to March 8, 2006. She said she asked her Director of Resource Management Programs to request an extension to give more time to individuals to submit their applications. She said as a result, the announcement was extended to March 20, 2006.

RMO#1 stated on April 6, 2006, BRS was issued a roster of qualified candidates. She said the roster had two candidates listed, complainant and another individual. RMO#1 stated following the hiring process protocol in BRS, her Director of Resource Management Programs arranged for a panel of three subject matter experts to review the applications of the two candidates. She said upon completion of the review and subsequent scoring of the applications, the selection was made and roster returned to the Department on April 13, 2006.

RMO#1 stated the application review panel briefed her of their recommendation and she concurred. She stated as she was not in the office the day in which the roster was due to the USDA's Office of Human Capital Management, she asked her Director of Resource Management Program to sign the roster for her.

RMO#1 stated as a former chairperson for an Agency Civil Rights and Equal Employment Opportunity Advisory Committee, she is deeply committed to ensuring fairness and diversity in employment opportunities. She stated BRS was the first USDA program to pursue the DOPP. RMO#1 stated in February 2006, the Department congratulated APHIS for being the first Agency to participate in the DOPP. In addition, she said she has encouraged BRS selecting officials to ensure diversity in their hiring practices. RMO#1 stated this encouragement resulted in the hiring of three Asian candidates in the past year, a GS 12/13 regional biotechnologist, a GS 12/13 senior regulatory specialist, and a GS 11/12 biotechnologist. She stated she has also recently requested that EEO/CR elements be added to the performance plans of **all** BRS employees. RMO#1 stated APHIS currently only mandates the EEO/CR element for supervisors and managers.

On August 14, 2006 RMO#2 stated he had no role in the selection process under the DOPP. He stated his role in the recruitment and placement process under the DOPP is oversight of the program. RMO#2 stated he announces career enhancing opportunities,

Exhibit  3
Page  6
of  19

receive and examine employment applications, and refer eligible and qualified employees to selecting officials for review and consideration through the DOPP.

RMO#2 stated the complainant applied for and accepted the position of Special Assistant to the Chief Information Officer, GS-14 with USDA under the DOPP. He stated this developmental assignment for the complainant was effective on May 28, 2006 and terminated on July 1, 2006.

On August 9, 2006, RMO#3 stated he served as the principal negotiator on behalf of the class in the Arun Basu v. Veneman class complaint. He stated the agreement developed between the parties was signed in November 2004 and submitted to EEOC for approval. RMO#3 stated the EEOC approved it and the Department implemented the terms of this Agreement. RMO#3 stated his role concluded once the negotiations were over and the settlement agreement was signed.

RMO#3 stated he has no oversight role in the implementation of the Agreement, neither on behalf of the Class, nor the Department. He said he has no knowledge or participation in the announcements of the DOPP positions, nor their selections.

RMO#3 stated he did not know about the position that complainant is referencing in this complaint. He stated he does not know who the selecting officials were in this matter. RMO#3 stated complainant is wholly inaccurate in his statement or understanding that he is involved in the selection process.

On August 11, 2006, RMO#4 stated one of her duties is to serve as the Departmental Liaison for the Basu Settlement Agreement. She stated the DOPP was created as a result of the settlement agreement of the Basu class action complaint. RMO#4 stated the complainant is a class agent in that case. She stated complainant, along with all other class agents, is entitled to priority consideration for opportunities advertised under DOPP ("expressions of interest").

RMO#4 stated the agencies submit DOPP expressions of interest directly to RMO#2 in the Office of Human Capital Management (OHCM). She stated before they are placed on the ASCR website, she reviews the expressions of interest. RMO#4 stated the ASCR webmaster posts the expression of interest to the website. She stated RMO#2 notifies class agents of the DOPP expressions of interest, and he also shares the information with Personnel Officers, Civil Rights Directors, and agency liaisons designated to work on implementation of the Basu Settlement Agreement. RMO#4 stated the individuals who are designated as "class agents" are those falling within Tiers 1 and 2 of the Settlement Agreement, per guidance provided by OGC. RMO#4 stated she and RMO#2 simply follow the direction provided by OGC in implementing the DOPP. She said applications for DOPP opportunities are sent directly to OHCM. RMO#4 stated RMO#2 prepares the certificate and forwards it to the hiring agency. She stated the selection is made within the hiring agency. RMO#4 stated she is not aware of the applicants for DOPP opportunities. She stated RMO#2 provides her with a regular report on the DOPP program, which shows the selected candidate for each DOPP opportunity.

Exhibit 3
Page 7
of 19

RMO#4 stated complainant has been selected for a DOPP opportunity. Specifically, she said complainant was selected as Special Assistant to the Chief Information Officer, GS-14, FSIS.

RMO#4 stated she played no role in determining who would be selected for the DOPP opportunity of Deputy Associate Administrator, GS-14/15, APHIS. She said the person who was selected is a Basu class agent and may belong to some of the same protected groups as complainant. RMO#4 stated she did not retaliate against complainant or discriminate against him in any way.

**RELIEF REQUESTED AND SUMMARY OF RESOLUTION EFFORTS:**

As resolution the complainant requested permanent placement to the APHIS position of Deputy Associate Administrator, GS-14/15. The relief complainant was requesting was not provided, and no counteroffers were proposed.

**CLOSURE:**

A resolution to the complaint was not achieved. Therefore, A Notice of Right to File a Formal Complaint was issued on August 15, 2006.

**COUNSELOR INFORMATION:**

Name:                  Jo Ann Thomas, Contract EEO Counselor
Telephone Number:   (337) 413-9419


Signature: _Jo Ann Thomas_       Date: 8-28-06


**Exhibits:**

1. **Email from complainant to counselor dated July 28, 2006.**
2. **Email from counselor to complainant dated July 28, 2006.**
3. **Complainant's email to counselor dated August 2, 2006.**
4. **Roster of Qualified Candidates.**
5. **Expression of Interest Announcement APHIS-06-DOPP-001.**
6. **NRF to complainant dated August 15, 2006.**
7. **Domestic Return Receipt (Green Card) re Krishna Murthy – CRSD-CF-2006-02384**

Exhibit _3_
Page _8_
of _19_

**jo ann thomas**                                                            *Ex. 1*

| | |
|---|---|
| **From:** | "Murthy, Kris" <Kris.Murthy@fsis.usda.gov> |
| **To:** | <jalthomas@~~~~~~> |
| **Cc:** | "Murthy, Kris" <Kris.Murthy@fsis.usda.gov> |
| **Sent:** | Friday, July 28, 2006 11:57 AM |
| **Subject:** | Breech of Asian Class Action settlement agreement |

Good morning:

Ms.Joana Thomas:

I withdraw informal EEO complaint CRSD-CF-2006-02384 initiated on July 14, 2006. I will pursue this complaint as Breech of Asian Class Action settlement.

Thanks

Kris Murthy, DVM
Senior Staff Officer

Exhibit *3*
Page *9*
of *19*

**C0U032**                                                            8/27/2006

**jo ann thomas** _____     _EX. 2_ ____

**From:**      "jo ann thomas" <jaithomas@▮▮▮▮▮>
**To:**        "Murthy, Kris" <Kris.Murthy@fsis.usda.gov>
**Sent:**      Friday, July 28, 2006 2:11 PM
**Subject:**   Re: Breech of Asian Class Action settlement agreement

This message acknowledges receipt of your voluntary withdrawal of informal EEO complaint CRSD-CF-2006-02384 initiated on July 14, 2006.

---- Original Message ----
**From:** Murthy, Kris
**To:** jaithomas@cox.net
**Cc:** Murthy, Kris
**Sent:** Friday, July 28, 2006 11:57 AM
**Subject:** Breech of Asian Class Action settlement agreement

Good morning:

Ms.Joana Thomas:

I withdraw informal EEO complaint CRSD-CF-2006-02384 initiated on July 14, 2006. I will pursue this complaint as Breech of Asian Class Action settlement.

Thanks

Kris Murthy, DVM
Senior Staff Officer

Exhibit _3_
Page _10_
of _17_

8/27/2006

jo ann thomas                                              $EX, 3$-page $1$ $of$ $2$

| From: | "Murthy, Kris" <Kris.Murthy@fsis.usda.gov> |
|---|---|
| To: | <jalthomas@ ~~____~~ > |
| Cc: | "Murthy, Kris" <Kris.Murthy@fsis.usda.gov> |
| Sent: | Wednesday, August 02, 2006 10:06 AM |
| Attach: | Murthy Excerpt from Settlmt Agreemt.doc |
| Subject: | FW: Complaint No. CRSD-CF-2006-002384 |

Good morning:

Ms. Thomas:

After talking to you and Patty last week, I did some more research and
exploration of information regarding my case.

Now I want to persue this complaint as conventional EEO complaint not as
breech of Asian Class action settlement agreement.

Please contact me ASAP so we can proceed to process this EEO complaint.

Kris Murthy, DVM
Senior Staff Officer
202-690-5646


——Original Message——
From: PATTY.DUVERNAY@usda.gov [mailto:PATTY.DUVERNAY@usda.gov]
Sent: Friday, July 28, 2006 11:59 AM
To: Murthy, Kris
Cc: jalthomas@cox.net
Subject: Complaint No. CRSD-CF-2006-002384


Dr. Murthy,

As requested during our conversation this morning, I'm sending this
message to explain the procedures that are available pertaining to your
recent claim brought to our attention on July 14, 2006.

If you are alleging that your recent non-selection for the Associate
Deputy Administrator position advertised under Vacancy Announcement No.
APHIS-06-DOPP-001 was based on a discriminatory factor, such as, race,
religion, national origin, etc., then you need to seek EEO counseling
regarding this new claim and proceed with the subject informal complaint
you have already initiated. However, if you are alleging that your
recent non-selection breaches your settlement agreement, then you must
follow the procedures for enforcement set forth in your settlement
agreement. For your convenience, I have attached is copy of those

000034

procedures as outlined in the settlement agreement and in a previous letter to you from Ms. Sadhna True.

You may also refer to 29 C.F.R. 1614.504(a) for the EEOC regulations pertaining to allegations of non-compliance with settlement agreements.

If you decide to file a settlement breach claim as opposed to an informal complaint, you must notify the EEO Counselor in writing that you are withdrawing the subject EEO complaint; otherwise, she will need to proceed with her inquiry.

If you have any further questions, please feel free to contact me directly at 504-426-6204.

*Ex. 3*
*page 2 of 2*

086035

Exhibit 3
Page 12
of 19

8/27/2006

*EX. 4*

U.S. DEPARTMENT OF AGRICULTURE
Office of Human Capital Management
Recruitment and Employee Development Division
WASHINGTON, D.C.

## ROSTER OF QUALIFIED CANDIDATES

Page 1 of    Page(s)

| POSITION TITLE/SERIES/GRADE | LOCATION | CASE NO. |
|---|---|---|
| Associate Deputy Administrator GS-0401-14/15 | Riverdale, MD | APHIS-06-DOPP-001 |
| | | DATE OF ISSUANCE April 6, 2006 |

The candidates listed alphabetically below have been identified as Qualified for the above position. They are referred for your consideration/selection. If you interview one candidate you must interview all candidates. Return the original of this form and attachments showing report of the action taken to, the Office of Human Capital Management, Recruitment and Employment Development Division, Rm. 316W by April 17, 2006. The symbols to be used for recording actions are S-Selected, D-Declined, NS-Nonselected. For information call Michael D. Scott on 720-6104.

| NAME | TITLE/SERIES/GRADE/PRESENT LOCATION | INTERVIEWED YES OR NO | ACTION S-D-NS |
|---|---|---|---|
| Tier One - (GS-14 Grade Level) | | | |
| Murthy, Kris      *16* | | | *N.S* |
| | | | |
| Tier Two-A, (GS-14 Grade Level) | | | |
| ███████████    *18* | | | *NS* |
| | | | |
| *Tier Two-A, (GS-15 Grade Level) | | | |
| ███████████    *18* | | | *S* |
| | | | |
| Tier Two-B,C,D (None) | | | |
| | | | |
| | | | |
| | | | |

SIGNATURE OF PERSONNEL SPECIALIST                    *4/06/06*  DATE

*Judy Harrison for Andy Smith, BRS Deputy Administrator*
SIGNATURE AND TITLE OF SELECTION OFFICIAL                    DATE

C06036

Exhibit *3*

Page *13*

of *19*

*EX. 5*
*Page 1 of 3*

Expression of Interest

# United States Department Of Agriculture
## Animal and Plant Health Inspection Service (APHIS)

## Development Opportunity Placement Program (DOPP)

**Opportunity Identification Number:** APHIS-06-DOPP-001

**Opening Date:** February 22, 2006

**Closing Date:** March 20, 2006

**Position Title:** Associate Deputy Administrator

**Series & Grade:** GS-401-14/15

**Duty Locations:** Riverdale, Maryland

**Duration of Assignment:** NTE 31 days

**Remarks:** This is an Expression of Interest, not a competitive vacancy announcement. Priority consideration will be given to eligible and qualified Class Agents under the Basu Settlement Agreement for the first eighteen (18) months of the program.

**Who Is Eligible for Consideration:**

This Expression of Interest is limited to USDA permanent employees who currently hold a grade GS-14 or 15, and possesses a college degree in biological sciences, agriculture, natural resource management, chemistry, or a related discipline appropriate to the position, OR A combination of education and experience – courses, equivalent to a major identified above, plus appropriate experience or additional education.

Individuals must also possess a professional knowledge of biological sciences with specialized knowledge of biotechnology as related to one or more agricultural or biological disciplines, such as plant science, animal science, entomology, food science, genetics, molecular biology or biochemistry, and the ability to integrate the sciences into a public policy program.

**Development Opportunity Assignment:**

The incumbent of this position serves as the Associate Deputy Administrator, Biotechnology Regulatory Services, and provides leadership, direction and day-to-day management to the development of policies that provide for the safe use of biotechnology. The candidate will report to the Deputy Administrator in the Office of the Deputy Administrator.

This assignment is expected to begin on or around March 17, 2006.

Due to the confidential nature of the work to be performed, the selected employee will be excluded from the bargaining unit for the duration of the detail.

Exhibit *3*
Page *14*
of *19*

*EX. 5*
*Page 2 of 3*

## Major Duties:

The incumbent is responsible for leadership in the formulation of policy goals related to regulating the development of biotechnology products, building biotechnology regulatory capacity in other countries, and facilitating the trade of biotechnology-derived products. Performs outreach activities designed to gain support of APHIS biotechnology and regulatory programs and gaining support and public acceptance of the emerging advances in agricultural biotechnology, genetic engineering and biotechnology-derived product safety. Participates in planning, implementation and evaluation of APHIS biotechnology policy and regulatory programs. Participates in the strategic planning efforts related to the agricultural biotechnology interests and program direction, and formulates long range goals and objectives to meet the Department and Congressional interests. Serves as principle liaison with Departmental officials, other Federal Agencies, private sector interest and advocacy groups, scientific research and educational organizations to promote the Federal interests in biotechnology policy development, regulatory compliance issues, information transfer and product commercialization efforts with industry and trade organizations both nationally and internationally.

## Submission Requirements (Incomplete packages will not be considered)

To be considered for this opportunity, you must submit the following information:

*Resume or OF-612
*Most recent Notification of Personnel Action (SF-50).
*Most recent performance appraisal
*Copy of your college transcripts and/or your college diploma
*Narrative (not to exceed one page) of how the assignment will be commensurate with your interests, background and developmental needs, and will enhance your career goals
*Description (not to exceed one page) of skills and knowledge you will bring to the assignment.
*Supervisor's approval required for participation in this EOI.
*DOPP Opportunity Cover Sheet (located on ASCR website)
**Your submission must be received by 4:30 p.m. Eastern Time on the closing date of this Expression of Interest. Please submit your documents to the following address:**

U.S. Department of Agriculture
Office of Human Capital Management
Attention: Lasham Hamilton
1400 Independence Avenue, S.W.
Room 300-W
Washington, DC 20250-9892
Fax (202) 720-2044

## For more information:

Please direct questions on the administrative process to Lasham Hamilton at (202) 720-4577, and questions regarding the nature of the assignment to Judy Garrison, (301) 734-5769.

## Information on Status, Benefits and Relocation Expenses

Travel expenses associated with the assignment will be reimbursed in accordance with applicable Government travel regulations.

Exhibit *3*
Page *15*
of *19*

EX.5
Page 3 of 3

## Reasonable Accommodation Statement

USDA provides reasonable accommodations to employees with disabilities. If you need a reasonable accommodation for any part of the submission process, please notify the Agency. The decision on granting reasonable accommodation will be on a case-by-case basis.

## THE FEDERAL GOVERNMENT IS AN EQUAL OPPORTUNITY EMPLOYER

C06039

Exhibit 3
Page 16
of 19

August 15, 2006

*Ex. 6*
*page 1 of 2*

**Certified – Return Receipt**
**Requested 7005 1160 0003 3162 0115**

Krishna Murthy



Re: Informal EEO Complaint - CRSD-CF-2006-02384

Dear Mr. Murthy:

On July 14, 2006, you contacted the USDA, OCFO, NFC, Equal Employment
Opportunity Workforce Services Staff (EEOWSS) expressing an interest in filing an
equal employment opportunity (EEO) complaint of discrimination against the Office of
Civil Rights (OCR). The EEOWSS advised that July 14, 2006 would serve as your
official contact date. The informal EEO complaint was assigned to me for processing.
Specifically, the issues discussed were appointment/hire, harassment/non-sexual,
promotion/non-selection and training. You alleged that this action was due all or in part
because of your race (Asian), age (4-13-47), religion (Hindu) and reprisal (prior EEO
activity).

If you believe you have been discriminated against on the basis of race, color, religion,
sex, national origin, age, sexual orientation, marital status, physical or mental disability;
or that a reprisal action has been taken against you for an EEO related matter, you have
the right to file a formal discrimination complaint with the USDA, OCFO, National
Finance Center within **15 calendar days** after your receipt of this notice.

The complaint must be in writing and signed by you. It must be specific and contain only
those issues discussed with me. It must also state whether you filed a grievance under
negotiated or administrative grievance procedures or an appeal to the Merit Systems
Protection Board on the same matters. You may use the enclosed form to file the
complaint. You may file your complaint with the following official:

Debra A. Byrne, Acting Director
EEO and Workforce Services Staff
USDA, OCFO, National Finance Center
P.O. Box 29729
New Orleans, LA 70189-0729

Exhibit _3_
Page _17_
of _19_

**Krishna Murthy**                                                                    2

*EX. 6*
*Page 2 of 2*

Please refer to the information you were previously provided on your rights and responsibilities.  You may contact Patricia Duvernay, EEOWSS, at (504) 426-6204 if you have questions about this notice, the informal counseling process or the formal complaint process.

Respectfully,

Jo Ann Thomas
Contract EEO Counselor

Enclosure  1)  Complaint of Employment Discrimination form

Exhibit *3*
Page *18*
of *19*

EX. 7

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X _____ ☐ Agent ☐ Addressee <br> B. Received by ( *Printed Name* )  C. Date of Delivery <br> N. MURTHY  8-19-06 |
| 1. Article Addressed to: <br><br> Krishna Murthy | D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No |
|  | 3. Service Type <br> ☒ Certified Mail  ☐ Express Mail <br> ☐ Registered  ☒ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ C.O.D. <br> 4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |

EX. 7

2. Article Number
*(Transfer from Service label)*   7005  1160  0003  3162  0115

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

Exhibit 3
Page 19
of 19

Exhibit 4

**Relationship of Affiants – Krishna Murthy**
**Complaint No. CRSD-CF-2006-02384**

**2**
███████, Principal Agency Witness
Deputy Administrator, SES Level
USDA, APHIS, Biotechnology Regulatory Services Program,
Office of the Deputy Administrator, Riverdale, MD
(Caucasian/Non-Practicing Catholic/DOB: 05/23/59/Previous EEO
Participation)
**No Working Relationship**

**10**
███████, Principal Agency Witness
Associate Deputy Administrator, SES Level
USDA, APHIS, Biotechnology Regulatory Services Program,
Office of the Deputy Administrator, Riverdale, MD
(Caucasian/DOB: 04/22/54/Not Comfortable Re: Religion/Previous
EEO Participation)
**No Working Relationship**

**12**
███████, Principal Agency Witness
Agriculturalist, GM-15
USDA, APHIS, Biotechnology Regulatory Services Program, Office of
the Deputy Administrator, Riverdale, MD
(Caucasian/DOB: 06/16/46/Jewish/Previous EEO Participation)
**No Working Relationship**

**4**
███████, Principal Agency Witness
Director, Resource Management Programs, GS-14
USDA, APHIS, Biotechnology Regulatory Services Program, Resource
Management Program, Riverdale, MD
(Caucasian/DOB: 04/14/67/Episcopalian/No Previous EEO
Participation)
**No Working Relationship**

**14**
███████, Principal Agency Witness
Director, Policy Coordination Division, GS-15
USDA, APHIS, Biotechnology Regulatory Services Program, Policy
Coordination Division, Riverdale, MD
(Caucasian/DOB: 01/13/57/Protestant-Christian/No Previous EEO
Participation)
**No Working Relationship**

**15**
███████, Principal Agency
Witness
Human Resources Specialist, GS-12
USDA, Office of Human Capital
Development, Recruitment and Employee
Development Div., Washington, DC
(African-American/DOB:
12/08/64/Doesn't Choose to Respond Re:
Religion/No Previous EEO Participation)
**No Working Relationship**

**6**
Krishna Murthy, Complainant
Senior Staff Officer, GS-14
USDA, FSIS, Office of Program Policy and
Employee Development,
New Technology Staff, Washington, DC
(Asian Indian/DOB: 04/13/47/Hindu
(Brahman Cast)/Previous EEO Participation)

Exhibit 4
Page 1
of 2

#1/5

Office of the Deputy Administrator

Office of Science

**Biotechnology Regulatory Services** 

**Cindy Smith, Deputy Administrator**
Rebecca Bech, Assoc. Deputy Administrator
Vacant, Assoc. Deputy Administrator
Ingrid Berlanger, Asst. to Deputy Administrator
Arnold Foudin, Agriculturalist
Kelly Brisiece, Secretary
Julene Fitzpatrick, Secretary

**Information Services**

Sally McCammon, Scientific Advisor
Bruce MacBryde, Biotechnologist
Andrew Roburn, AAAS Risk Policy Fellow

**Policy Coordination Programs**

**Environmental Risk Analysis Programs**

**Regulatory Operations Programs**

**Resource Management Programs**

---

**Policy Analysis Programs**

**John Turner, Director**
David Heron, Asst. Director
Gail Jones, Program Assistant

**Regulatory and Environmental Analysis Branch**

Michael Watch, Supv. Policy Analyst
Michael Blanchette, Env. Protect. Spec.
Richard Coker, Regulatory Analyst
Donna Malloy, Vet. Medical Officer
Craig Roseland, Biotechnologist
Vacant, Regulatory Analyst

**International Policy Branch**

Tani Dunakay, Lead Agriculturalist
Robert Carranola, Program Analyst
Wendelyn Jones, Biotechnologist

**Communications & Capacity Building Branch**

Richard Pacer, Supv. Biological Scientist
Subhash Gupta, Agriculturalist
Cian Nesbitt, Communications Specialist
Sarah Lively, Writer/Editor
Catherine Preston, State Liaison

---

**Environmental Risk Analysis Programs**

**Neil Hoffman, Director**
Abanza Gibbs, Secretary

**Plants Branch**

Susan Koehler, Supv. Biotechnologist
John Cordts, Biotechnologist
Lavia Handley, Biotechnologist
Virgil Meier, Biotechnologist
Vacant, Biotechnologist

**Plants Pests & Protectants Branch**

Michael Watson, Supv. Biotechnologist
Rndaina Alnefai, Biotechnologist
Karen Green, Biotechnologist
Andrea Huberty, Biotechnologist
Margaret Jones, Biotechnologist

**Animals Branch**

Vacant, Supv. Entomologist
Patricia Beetham, Biotechnologist
Robyn Rose, Biotechnologist
Rebecca Stankiewicz Gabel, Biotech
Vacant, Biotechnologist/VMO (Fish)

---

**Regulatory Operations Programs**

**Thomas Situ IV, Director**
Cathy Hill, Program Assistant

**Compliance & Inspection Branch**

Sybil Wellstead, Supv. Biological Scientist
Ebony Brigman, Field Operations Officer
Douglas Grani, Biotech. (Western Region)
Dovalah Muruwanda, Senior Regulatory Specialist
Ankana Santhapa, Biotech (Eastern Region)
Wendy Starner, Support Assistant (Eastern Region)
Ralph Stooks, Biotech (Western Region)
Parrell Wise, Senior Regulatory Specialist
Vacant, Staff Assistant
Vacant, Support Assistant (Western Region)

**Document Management Branch**

Steven Hrousel, Supv. Management Analyst
Kimberly Diggs, Regulatory Permits Spec.
Anita Drummond, Regulatory Permits Spec
Mary Jackson, Regulatory Specialist
Katie LaCovey, Student
Linda Lighdt, Regulatory Permit Spec.
Denise McRae, Regulatory Specialist
Vacant, Document Control Officer
Vacant, Management Analyst
Vacant, Permit Assistant

---

**Resource Management Programs**

**Judy Garrison, Director**

**Resource Support Services Branch**

Kathleen Halderson, Program Specialist
Helana Johnson, Student
Susan Murphy, Management Analyst
Vacant, Program Specialist

**Technical Services Branch**

David Bennett, IT Specialist
Audrey Ingram, Visual Info Spec.
Vacant, Technical Information Spec
Vacant, Program Specialist.

Exhibit 4
Page 2
of 2

Exhibit 5

## Biotechnology Regulatory Services

### Office of the Deputy Administrator

| Name | Title | Phone Number |
|---|---|---|
| ████████ 9 | Deputy Administrator | (301) 734-7324 |
| ████████ 10 | Associate Deputy, Emerging and International Programs | (301) 734-7324 |
| Vacant | Associate Deputy | (301) 734-7324 |
| ████████ 11 | Assistant to the Deputy Admin. | (301) 734-4885 |
| ████████ 12 | Agriculturist | (301) 734-7710 |
| ████████ 13 | Secretary | (301) 734-5308 |
| ████████ 14 | Secretary | (301) 734-7324 |
| Vacant | Secretary | (301) 734-7324 |

DOB: 5/23/59 ; White
DOB: 4/22/54 ; White

DOB: 10/11/74 ; White
DOB: 6/16/46 ; White
DOB: 2/19/67 ; Black
DOB: 11/22/61 ; Black

Exhibit 5
Page 1
of 2

086045

| Lev3 | Lev4 | Name | Title | PP | Series | Grade | Type Emp | DOB | RNO |
|------|------|------|-------|----|--------|-------|----------|-----|-----|
| 05 | 0000 | 1 | PROG ASST | GS | 0303 | 08 | F | 11/8/1959 | BLACK |
| 05 | 0001 | 2 | STUDENT TRAINEE | GS | 0399 | 05 | P | 11/8/1962 | BLACK |
| 05 | 0002 | 3 | VIS INF ASST OA | GS | 1001 | 07 | F | 1/8/1949 | BLACK |
| 05 | 0000 | 4 | SUPVY ADMV OFFCR | GS | 0341 | 14 | F | 4/1/1967 | WHITE |
| 05 | 0001 | 5 | MGMT ANAL | GS | 0343 | 13 | F | 9/20/1970 | WHITE |
| 05 | 0001 | 6 | PROGRAM SPECIALI | GS | 0301 | 09 | F | 9/2/1949 | WHITE |
| 05 | 0001 | 7 | CLK | GS | 0303 | 01 | F | 2/18/1988 | WHITE |
| 05 | 0002 | 8 | INFORMATION TECH | GS | 2210 | 13 | F | 4/8/1946 | WHITE |



Exhibit 5
Page 2
of 2

Exhibit 6

# AFFIDAVIT OF KRISHNA MURTHY

I, (name) _____**Krishna Murthy**_____ (County of): **Fairfax, VA**

I am a __XX__ employee of FSIS applicant to _____ former employee of the U.S. Department of Agriculture:

(Agency) _**Food Safety and Inspection Services**

(County of Agency) **Washington D. C.**

(Office) **Food Safety and Inspection Services**

(Division) **Office of Program Policy and Employee Development.**

(Branch) **New Technology Staff**

Located in (city and state) **Washington, D.C**

In the capacity of (show both your organization title and the classification of your job, if different): Grade **GS-14** between (date) **November 1995** and (date) **Present**

My telephone number during working hours is: **202-690-5646**

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator, who has been assigned to conduct a thorough and impartial investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record which is true and complete to the best of my knowledge and belief and which full addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information, which is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, my Formal Complaint, and the description of the issue(s) for investigation will serve as the basis for the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence will actually become part of the investigative report. If there are any documents or facts, which substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

**EXHIBIT** 6

**000047**

Page 1 of 7 Pages

My statement is made under oath (or affirmation), without a pledge of confidentiality; in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Agriculture. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of

this statement and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for the participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest.) I have _____/have not __**KM**_____ chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Enforcement and Compliance in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly swear affirm that the statement that follows is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

The following claims have been accepted for investigation:

> Whether the agency discriminated against the Complainant on the bases of race (Asian), religion (Hindu), age (DOB: 04/13/47), and reprisal (prior EEO activity), when he was not selected for the position of Associate Deputy Administrator, GS-401-14/15, advertised under Opportunity Identification Number APHIS-06-DOPP-001.

1) Please state for the record your full name. **Krishna Murthy**

2) Please state your title and grade. **Senior Staff Officer, GS-14**

3) Please state the name of the agency for which you currently work, the organizational unit to which you are assigned and the address of your current duty station. **Food Safety and Inspection Service, OPPED, New Technology Staff, 1400 Independence Ave, SW, Washington D. C. 20250**

4) How long have you held your current position? **Since July of 2005**

5) How long have you been employed by the U. S. Department of Agriculture? **27 years**

6) Please state for the record your race. **I am an Asian Indian.**

086048

EXHIBIT ____
Page _2_ of _1_ Pages

Initial _KM_ _KM_

7) Please state for the record your religion. **I am Hindu, belonging to Brahmin cast**

8) Please state for the record your date of birth. **April 13, 1947**

9) Have you previously participated in the EEO process? **YES** 9.1) was management aware of your previous participation in the EEO process? **Definitely and Positively** 9.2) Do you have any evidence to support your contention? **It is well publicized through Asian Class Action settlement agreement, I am Class CO-AGENT**

10) Who is your immediate supervisor? **Dr. Patricia Schwartz**, 8.1) who is your second level supervisor? **Dr. Daniela Englejohn Deputy Assistant Administrator, OPPED**

11) Did you apply for the position of Associate Deputy Administrator, GS-401-14/15, advertised under Opportunity Identification Number APHIS-06-DOPP-001, opening date February 22, 2006? **YES**

12) Was the position a permanent position or temporary detail? **It was a temporary detail**

13) To your knowledge were you considered for the position? **To my knowledge I was not considered.**

14) Were interviews conducted for the position? **YES** 14.1) If yes, were you interviewed?- **NO**

15) Were you as qualified as or better qualified for the position than the individual selected for the job? **I am better qualified for the position** 15.1) If yes, please explain why you believe this. **I am a veterinarian and Have Two Masters Degrees, one in Bacteriology and another in Virology, and Board Certification in Microbiology, I have worked for APHIS before and familiar with the position, which is important to this position.**

16) Do you know what criteria were applied in making the selection for the position? **No criteria was applied in selection that I know of, it was Mr. Farook Sait made all the decisions. Because he works for OCR and manipulates these positions.** 16.1) If yes, what criteria were applied?

17) Who made recommendations regarding the selection to the selecting official? **Mr. Farook Sait, and Ms. Sadhan True.**

18) After the recommendations were provided to the selecting official, do you know the selection process that was used? **NO, there was no selection process that I know of.** 18.1) if yes please explain it.

19) Who made the selection for the position? **Mr. Farook Sait and Ms. Sadhan True.**

EXHIBIT 6
Page 2 of 7 Pages

Initial_KM_ KM

20) Are you a Basu class agent? **YES, I am Basu Class CO_AGENT 20.1)** To your knowledge, is the selectee a Basu class agent? **The selectee is in tire two or three. The Class Action Settlement agreement clearly states that the Tire1 agents get priority consideration. I being Class Co-Agent, I should have been selected for this selection. In the settlement agreement it is clearly indicated that an agent is to get two of this DOPP position with in 18 months of duration. I have not been selected to two DOPP positions so far.**

21) Based on the Basu Agreement was you to be given priority consideration and did you receive same? **I was not given priority consideration and I did not receive the same for this position.** 21.1) To your knowledge, was the selectee to be given priority consideration and did he receive same? **I do not know.**

22) Prior to not being selected for this opportunity were you previously selected for a DOPP opportunity? **YES 22.1)** were you selected for a Special Assistant to the Chief Information Officer, GS-14 position? **YES 22.2)** If yes, approximately how long was this detail? **This was 30 days including Holidays and week-ends**

23) Are you aware of any other employees that were selected for DOPP opportunities at the GS-13, GS-14 and GS-15 levels? **I do not know.** 23.1) If yes, what were the positions and grades? **I do not know 23.1)** what were the races, religions and approximate ages of the selectees? **I do not know about other DOPP selections. I am sure there were others.**

24) Were you discriminated against? **Certainly.**

25) Who discriminated against you and in what ways were you discriminated against? **I was discriminated by Ms. Sadhan True, Director of OCR, Mr. Farook Sait, Special Counsel, OCR. Michael Scott, OCR, USDA and Ms. Cindy Smith, Deputy Administrator BRS, APHIS, Riverdale, MD, under the direction of Mr. Farook Sait.**

26) What do you believe to be the basis for the discrimination? **Because of 1. My religion which is Hindu, Brahmin, 2. Prior EEO activity, 3. Personal Vendetta against me by Mr. Sait.**

27) What do you seek in relief? **The purpose is to get experience in these positions so that would help for my promotion. I am seeking same level detail in USDA**

27) Are there any witnesses you care to name who have direct knowledge of the matters at issue? 28.1) if so, please state the name of each and that to which each person can speak. **Dr. Shukat Syed, Special Assistant to Deputy Assistant Administrator, OPPED, FSIS, 202-205-0296 and Dr. Shubash Gupta, APHIS, BTD, Riverdale, MD**

EXHIBIT 6
Page 4 of 7 Pages

29)    Is there anything you would like to add to your statement? Mr. Farook Sait was against
me from start of Asian Class Action, He had said several times no body will get
promotion under class action. But in the end he got promotion to his buddy, Arun
Basu, Mon Yee and Dr Dey. He left me out purposefully.   His vendetta of
discrimination is so intense; he is preventing me getting any details that would lead
me to a GS-15 promotion.


I have reviewed this statement, which consists of __5____ pages, and hereby solemnly _I__
swear __and I_ affirm that it is true and complete to the best of my knowledge and belief.  I
understand that the information I have given will not be held confidential and may be shown to
the interested parties as well as made a permanent part of the record of investigation.


_Krishna Murthy_____          _11-2-06__
        Krishna Murthy                                     (Date)


Signed before me at (Street and City) _____
On this _2___ day of _Novmbr_____, 2006


_____
(Signature of Investigator/Witness)

EXHIBIT 6
Page _2_ of _7_ Pages

Initial _KM_ _KM_

Addendum to the Affidavit of
Krishna Murthy

20a)    Does the Basu Agreement require that Tier 1 agents be given priority consideration
over Tier 2 and Tier 3 agents regarding DOPP opportunities? **A.** Yes, If review the pages
6, first line. **B.** In Page 7, second paragraph line 6 states that "The agreement provides
that each of the five Tire Two Class members with pending administrative complaints
will receive attorney's fees not to exceed $ 25, 000.00". In this page the judge called
Asians in Tier two as the Class members not even Agents. As stated by the ruling judge
the DOPP program is for Class Agents not for class members. **C.** The Person who
received the DOPP program under this complaint is in Tier 2. not tier 1. Thus he is not
eligible for the priority consideration. **D.** Page 12, second paragraph, 4th line the judge
has stated that the "the Class Agents in Tier one are to receive more relief than those in
the three tiers", thus I should have given priority consideration than other members.

30)    During the EEO counseling process, Farook Sait informed, in part, that he has no
knowledge or participation in the announcements of the DOPP positions, nor their
selections and his role concluded once the negotiations were over and the settlement
agreement was signed. Therefore, do you have any evidence to support your claim that
Mr. Sait was involved in the recommendation/selection for the detail? If yes, please
provide same.

A. It is hard to believe that the Asian Class agreement being implemented with out the
input of sole class representative, since when we do not have a Liaison person appointed
to this settlement agreement implementation.

31)    During the EEO counseling process, Ms. Sadhna True informed, in part, that selections
under the DOPP program are made within the hiring agency and she played no role in
determining who would be selected for the DOPP opportunity of Deputy Associate
Administrator, GS-14/15, APHIS. Therefore, do you have any evidence to support your
claim that Ms. True was involved in the recommendation/selection for the detail? If yes,
please provide same.

A. It is hard to believe that the Asian Class agreement being implemented with out the
input of OCR Director, since when we do not have a Liaison person appointed to this
settlement agreement implementation. This is the reason that my OPM training which
should have been completed is still not accomplished. Agency is holding it and there is
nobody to discuss with about it.

32)    Please state that to which potential witnesses, Dr. Shukat Syed and Dr. Shubash Gupta
may speak regarding your non-selection for the detail.

A.    Both

EXHIBIT 6
Page 2 of 2 Pages

_KM_ Initials

I have reviewed this addendum to my affidavit, which consists of _____ pages, and hereby solemnly swear and affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____          _____
        Krishna Murthy                                      (Date)

Signed before me at    _____

On this _____ day of _____ 2006

_____
(Signature of Investigator/Witness)

EXHIBIT 6
Page 1 of 7 Pages

086053

KM Initials

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1801 L Street, N.W., Suite 100
Washington, D.C.  20507

Krishna Murthy,                             )
      Complainant,                           )
                            )        EEOC Case No. 570-2007-00306x
         v.                             )
                            )        Agency Case No. CRSA-CF 2006-02384
Mike A. Johanns, Secretary,                 )
U.S. Department of Agriculture,             )
      Agency.                                )

## ORDER OF DISMISSAL

Notice is hereby given that the above captioned case is DISMISSED pursuant to Complainant's withdrawal of his complaint by Motion dated June 14, 2007, wherein Complainant stated he has elected to pursue his claim in federal court.

It is so ORDERED.

For the Commission:

_____
Richard E. Schneider
Administrative Judge

To:

Ms. Krishna Murthy
7715 Lear Road
McLean, Va. 22102

Ms. Sarah Tuck
USDA, APHIS, HR, ALB
4700 River Road, Unit 158
Riverdale, Md. 20737

Denise Brewton, Director
EEO and Workforce Services Staff
U.S. Department of Agriculture
Office of the Chief Financial Officer
National Finance Center
P.O. Box 29729
New Orleans, La. 70189-0729



Denise Brewiton, Director
EEO and Workforce Services Staff
U.S. Department of Agriculture
Office of the Chief Financial Officer
National Finance Center
P.O. Box 29729
New Orleans, La. 70189-0729

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Washington Field Office
Schneider    1801 L Street, N.W. – Suite 100
Washington, D.C. 20507-1002

OFFICIAL BUSINESS

# EXHIBIT   22

Complaint of Employment Discrimination for Complaint No. NRCS-2006-02124

**Informal**
complaint of discrimination

·U.S. Department of Agriculture
Natural Resources Conservation  vice

Note:    Complete this form, s  it, and return it to the EEO Counselor within 2 work days of your initial contact with the Counselor.
See back for addition  nformation and for help in completing this form.

1a. Name   KRISH ? MURTHY       2. Job title and grade   VMO - 701 - GS - 14

1b. Anonymity –    ☒ w  d like to remain anonymous.    ☐ I do not care to remain anonymous.

3a. Home address          3b. Office address    Ave   4. Telephone, including area code, extention

7715 LEAR o road   1400 Independence   home: 703 - 356 - 8529

McLean, VA  2102 WASHINGTON DC   office: 202 - 690 - 5646
                        20250

5. Bases of your complaint (Ch  it as appropriate and specify where a blank is provided):

☐ race _____       ☒ religion _____       ☐ sex _____

☐ color_____       ☐ age _____       ☐ sexual orientation*

☐ national origin_____       ☐ disability_____       ☐ marital status*

☒ reprisal  I h ve filed many EEO complaints

Please pecify the prior EEO activity in which you were involved and the date.

*Protected by Executive Order 13  , not by federal statute.  Claimants on this basis may request a final decision, but have no hearing or appeal rights.

6. Specify the action(s) that ga  rise to this complaint. (Please use the back of this page if needed, and check here ☐ if continued on back.)
Date(s)       Specific actio )

Dr. Aron Bath  e was th Claim Agent for the Asian class settlema
agreement. I w  supose to receive any Individual Settlement Agreen
in Feb ? 2004  to applie to the Judge. This did not happen. As
Claim Agent Dr  Bahu is resposible to provide this inf to me. He perha
                   did not provide me this info

7. Please specify remedy(ies) y  believe will resolve your complaint.

I need m  Promotion, which I lost deects Dr Bahu's

action.

8. Person you first contacted o  his matter: ☐ EEO Counselor   ☒ Civil Rights Manager   ☐ Civil Rights Division

9. Date of Contact       10. Person's name and telephone  Ms Linda Warner Maak

11. Have you filed a complaint    ☐ Administrative Grievance System?       If yes, date(s) of other filing(s)
this same matter with:           ☐ A union (specify_____)?       _____
                                 ☐ Merit Systems Protection Board (MSPB)?       _____

12a. Representative's name    12b. Representative's address    12c. Representative's telephone

Date   5-17-06       Signature   Krishna Murthy

**Informal**
complaint of discrimination

## E] ECTION OF EEO COUNSELING OR ADR FORM

**TO:**            Mya Mya Myaing

**FROM:**          ~~Ms. Khrishna Murthy~~ *DR. Krishna keerthy*
                   7715 Lear Road
                   McLean, Virginia 22102

**SUBJECT:**       **Election of Resolution Options**
                   **NRCS/FSIS-2006-02124**

This a cnowledges my initial contact with the Civil Rights Division and my interv w with Mya Mya Myaing, EEO Counselor.

Durin ny initial interview on April 10, 2006, you explained my rights and respo bilities as an employee filing a complaint of discrimination, the role of an EEO unselor, the role of a Mediator, the mediation process, and an overview of the A rnative Dispute Resolution (ADR) program.

You a explained my option to elect either traditional counseling or the ADR proce: called mediation. I have checked the appropriate box below:

/ /      I hereby elect traditional counseling
         30 days expires on May 10, 2006)

/ /      I hereby elect to participate in Alternative Dispute Resolution (ADR)
         The ADR process being offered is mediation)
         90 days expires on July 9, 2006)

*RISHAA MURTHY*                    *5-17-06*
~~Chrishna~~ Murthy
Na e of Complainant                    Date

*Kr hna Keerthy*
Sig ature of Complainant

| United States Department of Agriculture | **Complaint of Employment Discrimination** |
|---|---|
| | Complaint No.:NRCS-2006- 02124 |

**1. Name** (First) (MI) (Last)

☒ Mr. *KRISHNA   MURTHY*

☐ Ms. _____

☒ USDA Employee

☐ USDA Applicant

**2. Address**  *7715    LEAR  ROAD*
(Street)
*McLEAN , VA  22102*
(City)        (State)        (Zip)
*NRCS*

**3. Telephone Number**

Work *202 - 690 - 5646*

Cell _____

Home *703 - 356 · 8529*

**4. Name of Agency Which You Believe Discriminated Against You**

*National Resources Conservation Services  NRCS*
(Office)
*1400 Independence Ave S.W.  WASHINGTON DC 20250*
(City)                              (State)              (Zip)

**5. Basis of Discrimination (Check all that apply and specify your type.)**

☒ Race *ASIAN*
☐ Color _____
☒ Religion *HINDU — BRAHMIN*
☐ National Origin _____
☐ Sex _____

☐ Handicap _____
☐ Sexual Harassment _____
☒ Reprisal *FORMAR  EEO Activity*
☒ Age (Over 40) *4 -13-1947*
☐ Marital Status _____

**6. Issue(s) (Put the date on line. Provide details on reverse side.)**

☐ Selection _____
☒ Promotion _____
☐ Performance Appraisal _____
☒ Duties *Not providing info to file appeale*

☐ Working Conditions _____
☐ Discipline _____
☐ Reassignment _____
☐ Other _____

**7. Representative, If Any**

_____

(Telephone Number)

(Street)        (City)                (State)        (Zip)

**8. Name of EEO Counselor Contacted:**        Telephone Number:

**9. Requested Corrective Action:**

*Promotion to GS- 15*

**10. Signature** *Krishna Keerthy*

Date *6-28-06*
(Month) (Day) (Year)

*24395*
*7/5/06 TB*


received
*July 5, 2006*
*CASO-EH-C*

# EXHIBIT   23

Acceptance letter, dated August 3, 2006 for Complaint No. NRCS-2006-02124



**USDA**

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

AUG 0 3 2006

Mr. Krishna Murthy
7715 Lear Road
McLean, Virginia 22102

Re:  USDA Complaint No.: NRCS-2006-02124

Dear Mr. Murthy:       *

This letter acknowledges receipt of and accepts your Equal Employment Opportunity (EEO) complaint of discrimination against the Natural Resources Conservation Service (NRCS) dated June 28, 2006, and based on the signature date, is considered filed on the same date. It has been assigned the complaint number shown above. Please refer to this complaint number in any future communication on the subject EEO complaint.

We are accepting and referring for investigation the following claims[1]:

Whether the agency subjected the complainant to discrimination based on race (Asian), religion (Hindu), age (D.O.B.: 4/13/1947), and reprisal (prior EEO activity), when on March 7, 2006:

(1) he was not selected for a position (position title, grade, and vacancy announcement number not specified); and
(2) he was not provided information to file (not specified)?

The Department of Agriculture (Department) is required under 29 C.F.R. §1614.108 to complete an impartial, factual and appropriate investigation of the accepted claims within 180[2] days of the date the subject EEO complaint was filed. An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred. The complainant and the Department may voluntarily extend the 180-day time period not to exceed an additional 90 days. In addition, the Department may unilaterally extend the 180-day time period or any period of extension for not more than 30 days where it must sanitize a complaint file that contains classified information.

When the investigation begins, an EEO Investigator will contact you. You are required to fully cooperate with the EEO Investigator. Failure to do so may result in dismissal of your EEO complaint. You must present to the EEO Investigator all the information that

---

[1] This complaint was accepted without the benefit of an EEO counselor's report.
[2] All references to days refer to calendar days unless specified otherwise.

Krishna Murthy
Page 2

you wish considered that is relevant to the accepted claim. In addition, you must
provide the EEO Investigator with the names of any witnesses that you believe should
be contacted. You must keep the agency informed of your current address. If the
Department is unable to locate you, your complaint may be dismissed under 29 C.F.R.
§1614.107(a)(6).

When you receive the EEO investigative report, you will be notified of your right to
elect either an agency decision based on the record or a hearing with a decision from an
Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ). The
notification will provide you with the specifics on how to exercise your election rights.

If you have not received the EEO investigative report after 180 days from the filing of
your EEO complaint, you have the right to request a hearing from an EEOC AJ. Should
you request a hearing, enclosed is the identification of the EEOC District Office and
address where the hearing request should be sent. Additionally, you must also certify to
the EEOC that a copy of the hearing request was sent to the following address:

> United States Department of Agriculture
> Natural Resources Conservation Service
> Civil Rights Director
> 5601 Sunnyside Avenue, Room 1-2144
> Beltsville, Maryland 20705-5000

If you do not agree with the defined claims, you must provide us with sufficient
reasons, in writing, within 7 calendar days from receipt of this letter, and it will be
included in the complaint file. The statement should be sent to the following address:

> United States Department of Agriculture
> Office of Civil Rights
> Employment Complaints Division
> Intake, Accept/Dismiss Branch
> 1400 Independence Avenue, S.W.
> Stop Code 9440
> Washington, DC 20250-9440

Please be advised that, consistent with EEOC regulations and the Secretary of
Agriculture's strong commitment to the early resolution of EEO complaints, parties are
encouraged to seek resolution to complaints at any stage of the EEO complaint process.
Settlement discussions may take place throughout the administrative complaint process.
If a resolution is achieved, a copy of the settlement agreement must be provided
promptly to avoid unnecessary processing and additional cost. Likewise, if at any stage
of the EEO complaint process you wish to voluntarily withdraw your complaint, you
must provide promptly, written notification of your desire to withdraw your EEO
complaint. The withdrawal notice must be signed, dated, and contain the EEO

Krishna Murthy
Page 3

complaint number. To ensure prompt receipt, please fax a copy of the voluntary
settlement agreement or voluntary withdrawal notice directly to the Complaint's
Adjudication Division, at Fax Number (202) 401-8035.

Please contact the Customer Service Unit at 1-800-795-3272 if you have questions or
concerns regarding the status of this complaint.

Sincerely,

Denise A. Banks
Division Chief
Employment Complaints Division

Enclosure

cc: Civil Rights Director, NRCS
    ECD Liaison

Geographic Jurisdiction: The District of Columbia and Virginia cities/counties of:

Arlington, Clarke, Fairfax, Fauquier, Frederick, Loudon, Prince William, Stafford, warren, and Virginia independent cities of Alexandria, Fairfax City, Falls Church, Manassas, Manassas Park and Winchester. (Hearings in Europe)

Washington Field Office                          Phone: 202-419-0700
1801 L Street, N. W.                             Intake & ADR Fax: 202-275-7518
Suite 100                                        Hearings Fax #'s: 202-419-0739/0740
Washington, District of Columbia 20507-1002      Administrative Judge: 202-419-0732

# EXHIBIT   24

August 2006 EEO Counselor Report for Agency Complaint No. NRCS-2006-02124, and transmittal letter

 **NRCS**

Natural Resources Conservation Service
Civil Rights Division
5601 Sunnyside Avenue
Room 1-1123, Mail Stop 5472
Beltsville, Maryland 20705

AUG 1 0 2006

SUBJECT:   Equal Employment Opportunity Counselor's Report for
           Dr. Krishna Murthy (NRCS-2005-02124)

TO:        Denise Banks
           Chief
           Employment Complaints Division
           Office of Civil Rights
           Washington, D.C.

Per your request, attached is the counselor report for the above mentioned Complainant.  If you
have any questions concerning this matter, you can contact me at (301) 504-2181.  Thank you for
your prompt attention to this matter.

Linda Varner Mount

Linda Varner Mount, Ph.D.
Director
Civil Rights Division

The Natural Resources Conservation Service provides leadership in a partnership effort to help people
conserve, maintain, and improve our natural resources and environment.

An Equal Opportunity Provider and Employer

# USDA UNITED STATES DEPARTMENT OF AGRICULTURE

AUG 1 0 2006

**Civil Rights Division**
**5601 Sunnyside Avenue**
**Room 1-1123, Mail Stop 5472**
**Beltsville, MD  20705**

**EEO Counselor's Report**

Thomas Baughman
Complaints Branch Chief

Linda Varner Mount, Ph.D.
Director

Dr. Krishna Murthy   .
NRCS-2006-02124

Mya Mya Myaing
Counselor

## EEO COUSELOR REPORT

**Individual Complaint [x]    Class Complaint []**

### COMPLAINANT INFORMATION:

Name:                 Dr. Krishna Murthy                    AUG − 7 2006
Title/Series/Grade:   Senior Staff Officer, GS-14/10
Agency Address:       USDA Headquarters
                      1400 Independence Avenue
                      SW Washington DC 20250
Work Telephone:       (202) 690-5646
Home Address:         7715 Lear Road
                      McLean, Virginia 22102
Home Phone:           (703) 356-8529
                      Representative:        N/A
Anonymity Requested: Yes  [ ]  No  [x]
Alternative Dispute Resolution:  [ ] Counseling:  [ X], Check box if extended in writing  [ X ]

### CHRONOLOGY OF COUNSELING ACTIVITY:

Date of Action:                                          03/07/2006
Date of Contact:                                         04/10/2006
Date of Initial interview:                               04/27/2006
Date of Most recent Alleged Discriminating Event:  03/07/2006
45th Day after Most Recent Event:                        05/25/2006
Date of Final interview:                                 06/22/2006
Date NRF Issued:                                         06/26/2006

Certified Return Receipt Article #:  7003-2260-0002-9767-1891

**Issue** (Precise Description):
Dr. Krishna Murthy claimed that he was discriminated against based on his Religion (Hindu-Brahmin) when he was not provided information to file an appeal for the Class Action Complaint and did not have the opportunity to send in a rebuttal which deprived him of promotion to GS-15 position.

**Basis:**
Race (Asian), Religion (Hindu-Brahmin), Reprisal (previous EEO activity), Age (DoB-4/13/1947.

**Have the same complaint issue been raised in either of the following forums? - No**
[ ] Yes.  If yes, check appropriate box and indicate date of filling [ ]   No
[ ] Negotiated Grievance: N/A
[ ] MSPB Appeal: N/A
[ ] Administrative Grievance: N/A
[ ] ADR-Mediation: NA

2

## RESPONDING MANAGEMENT OFFICIAL (RMO) INFORMATION:

Name:  Mr. Steven Brammer
Agency Address:
      Office of General Counsel/USDA
      South Building Room 3312-S
      1400 Independence Avenue
      Washington, DC 20250
Agency Telephone: (202) 720-1760

Name: Mr. James Hood
      Attorney
      (202) 371-2535 (fax)

### RELIEF REQUESTED

To be promoted to GS-15 position.

### SUMMARY OF RESOLUTION EFFORTS

Dr. Krishna Murthy contacted the NRCS Civil Rights Office on April 10, 2006. During the initial EEO counseling interview, Dr. Murthy was informed of his rights and responsibilities orally and later via documents sent by certified mail. Dr. Murthy was also informed of the EEO informal and formal complaint processes, applicable time requirements for processing a complaint, and the Agency's Alternative Dispute Resolution (ADR) Program. Specifically, Dr. Murthy was informed about the neutral role of the EEO Counselor, who would make limited inquiries when communicating with the responsible management official while trying to facilitate attempts to find an early resolution during the informal stage.

During the EEO counseling interview Dr. Murthy was asked why he contacted the NRCS/Civil Rights Division for a complaint which dated back to 2004. Dr. Murthy said he filed EEO complaints before and there was no outcome regarding his request for promotion. He did not provide details. Dr. Murthy said that he was one of the co-agents in the Arun C. Basu, et al. Class Complaints. On January 21, 2004, U.S. Equal Employment Opportunity Commission (EEOC) issued the Settlement Order (EEOC No. 100-A1-7863X) (Attachment 2) which contained information to all parties that the notice of resolution would be provided to all class members within ten days of the Order issuance. Dr. Murthy claimed that he did not receive the settlement agreement notice in time to send in the appeal to EEOC's Decision within 30 days of the receipt of the Order. Dr. Murthy claimed that Dr. Basu was responsible for providing the notification to him. Dr. Murthy said that Mr. Farook Sait was the class representative and he did not provide the settlement information to him within the 30 day period for appeal.

As an attempt to facilitate resolution, Mr. Steven Brammer, of the Office of General Counsel (OGC) was contacted. On May 18, 2006, the Counselor received a packet of documents, as response from Inga Bumbary-Langston, Assistant General Counsel, Civil Rights Litigation Division. (Attachment 3). According to the March 3, 2006, dated letter from Mr. Steven Brammer of OGC, Dr. Murthy had been informed of the steps taken regarding his complaint. There was no indication that Dr. Murthy's request for remedy would be met.

3

As further attempt to resolve the issue, Mr. James Hood, the Class Counsel was contacted. Mr. Hood said that he received the settlement agreement which was sent out by OGC, and noticed that Dr. Murthy's name was among the list of "carbon copy" recipients. Mr. Hood said that he does not represent Dr. Murthy.

On June 22, 2006, Dr. Murthy was contacted and was provided with the responses from Mr. Brammer's office and from Mr. James Hood. Dr. Murthy said that he had filed EEO complaints before and said he could not share the outcome of his complaints with the Office of Civil Rights. Again, the Counselor provided information on his rights and responsibilities in the final interview.

## CLOSURE

Settlement was not achieved, and the Complainant was issued a Notice of Right to File on April 7, 2006.

## EEO COUNSELOR INFORMATION

Name:   Mya Mya Myaing
Title:    EEO Counselor
Agency Address: 5601 Sunnyside Avenue
                Rm. 1-1117, Mail Stop 5472
                Beltsville, Maryland 20705
Telephone Number:
                (301) 504-2186
Fax #:          (301) 504-2175
E-Mail Address: Mya.Myaing@wdc.usda.gov

Attachments:
  1. Notice-of-Right-to-File
  2. Packet from OGC
  3. Document as email attachment from Dr. Murthy

4

 **NRCS**

Natural Resources Conservation Service
Civil Rights Staff
5601 Sunnyside Avenue
Room 1-1123, Mail Stop 5472
Beltsville, Maryland 20705

Dr. Krishna Murthy
7715 Lear Road
McClean, Virginia 22102

**Complaint Number: NRCS-2006-02124**

Dear Dr. Murthy:

This letter is to inform you that since the dispute you brought to my attention has not been resolved to your satisfaction, you are now entitled to file an individual or class-based discrimination complaint based on race, color, religion, sex, national origin, physical or mental disability, age, and or reprisal (because of filing a previous Equal Employment Opportunity (EEO) complaint, participating in the EEO process, or opposing a discriminatory employment practice).

The issue stated in your complaint was Non-promotion. The attached form must be completed for the purpose of filing your formal complaint. **The formal complaint must be signed, dated, and filed with the United States Department of Agriculture (USDA), Office of Civil Rights (OCR) within fifteen (15) calendar days of your receipt of this notice. A formal complaint shall be deemed timely if it is received by the OCR or postmarked, on or before the expiration date of the fifteen (15) day filing period. (In absence of a legible postmark recording your date of receipt, you will have twenty (20) days for filing the formal complaint). Please send the formal complaint to the following address:**

> USDA, Office of Civil Rights
> Employment Complaints Division
> 300 7th Street, NW
> Reporters Building, Room 607
> Washington, D.C. 20024

You may also file your complaint with the Secretary of Agriculture. However, since your complaint will be forwarded to the USDA, OCR, filing with the Secretary may result in some delay in processing your complaint.

In filing the formal complaint, you must be specific, identifying only those items raised and discussed during EEO counseling. You must also state whether you have filed a grievance on these issues under a negotiated grievance procedure, or whether you have appealed the issues to the Merit Systems Protection Board.

The Natural Resources Conservation Service provides leadership in a partnership effort to help people conserve, maintain, and improve our natural resources and environment.

An Equal Opportunity Provider and Employer

If you retain an attorney to represent you, you or your representative must immediately notify this office and/or the USDA, OCR, Employment Complaints Division in writing. You and/or your representative will receive a written acknowledgement of your discrimination complaint from the appropriate agency official.

Respectfully,



Linda Varner Mount, Ph.D.
Director
Civil Rights Division

JUN 2 6 2006

Dr. Krishna Murthee
7715 Lear Road
McLean, VA 22102

Dear Sir:

Please find enclosed a Complaint of Employment Discrimination Form. Your receipt of
this form will complete the Notice of Right to File a Formal Complaint sent to you on
June 23, 2006. The official date of receipt for the Notice for Right to File will be the date
you received this letter and the Complaint Form, not the date of our June 23. 2006,
transmittal.

If you have any questions, please call me on 301-504-2190.

Thomas Baughman
Complaints Branch Chief

Enclosure



# EXHIBIT   25

<u>Rahman v. Johanns</u>, EEOC Appeal No. 01A5527, *available at* 2005 W.L. 113052 (May 3, 2005) (upholding fairness of Basu Agreement)



EEOC DOC 01A52527                                                    Page 1
2005 WL 1130152 (E.E.O.C.), EEOC DOC 01A52527
**(Cite as: 2005 WL 1130152 (E.E.O.C.))**

H

                                  E.E.O.C.

                         *1 Office of Federal Operations

                       FAZAL RAHMAN, COMPLAINANT,
                                    v.
           MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
                           Appeal No. 01A52527
                            Agency No. 000190
                          Hearing No. 100-A1-7863X

                              May 3, 2005

                               DECISION

 Complainant filed the present appeal with this Commission to challenge the fairness
of a class action settlement agreement signed by the parties on October 31, 2003,
and approved by an EEOC Administrative Judge (AJ) on December 7, 2004.

 Arun Basu, lead class agent, filed a formal complaint of discrimination on behalf
of a proposed class of Asian employees of the agency at any grade level who had,
between February 1994, and the present: (1) applied for a promotion; (2) been de-
tailed to a different position; (3) been demoted to a lower position; (4) been
stripped of managerial duties and responsibilities; (5) failed to be selected for a
position with managerial duties or responsibilities; (6) been subjected to reprisal
for filing a complaint(s); (7) filed a discrimination complaint that had not been
resolved; or (8) been terminated from their positions, and thereafter filed a dis-
crimination complaint.

 The class complaint was forwarded to the EEOC's Washington Field Office for a de-
cision on certification. In a September 15, 2000 decision, the AJ determined that
the class failed to meet the procedural requirements for certification. In an Octo-
ber 4, 2000 decision, the agency fully implemented the decision of the AJ. The lead
class agent filed an appeal with the Commission. The Commission reversed the de-
cision denying certification and in Arun C. Basu v. Department of Agriculture, EEOC
Appeal No. 01A10660 (June 27, 2001), "conditionally" certified a class consisting of
all Asian employees of the agency who were eligible for but have not received promo-
tions and all Asian persons who have applied for positions with the agency but have
not been selected. The Commission noted that the scope of the class was subject to
amendment. The case was remanded and forwarded to an AJ to process the conditionally
certified class.

 Following the remand of the case, the second AJ assigned to the case issued an Or-
der Acknowledging Class Complaint on January 25, 2002, and authorized the parties to
commence discovery on the case. The second AJ suspended the requirement under 29

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 2005 WL 1130152 (E.E.O.C.))**

C.F.R. § 1614.204(e), requiring the agency to notify all class members of the certification of the class, within fifteen days of the agency's receipt of the AJ's decision certifying a class complaint, because the class was conditionally certified. The AJ stated that following discovery he would determine whether the conditions for class certification have been met. Subsequent to a lengthy discovery period, followed by the filing of briefs on the question of certification by both sides, a settlement agreement was signed by the parties on October 31, 2003. The class defined in the agreement was "all current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected." On January 27, 2004, the second AJ granted preliminary approval of the agreement, and a Notice of Proposed Settlement, along with a copy of the agreement, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the class as well as all identified Asian/Pacific Islander employees who fell under the class definition but did not have pending individual complaints. The Notice of Proposed Settlement informed class members that they had thirty days in which to file objections to the AJ. The record reveals that ten objections, including complainant's, were received by the AJ. On December 7, 2004, the AJ issued a decision approving the settlement, and complainant appealed.

 *2 The settlement agreement was signed by the agency's Associate General Counsel, the agency's Deputy Administrator for Agricultural Research Service (ARS), the lead class agent, the President of the Organization of South Asian Americans in Agriculture (OSAAA) and class counsel. It provided in pertinent part for injunctive relief and individual relief for class members. Among the injunctive relief specified, was the creation of a pilot Development Opportunity Placement Program (DOPP) to provide opportunities for eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments. The agreement specified that the DOPP will be created within six subagencies to provide no fewer than two opportunities annually for three years and noted that details, temporary promotions, or developmental assignments will be for a minimum of 31 days. [FN1] Second, the agreement established the creation of a Graduate Scholarship Program to provide funding for graduate school with a total of thirty-six scholarships available between eight offices. The third aspect of injunctive relief specified that an agency-wide Job Fair would be held at four regional locations for employment in job categories where the agency's Asian/Pacific Islander population is statistically under represented. The fourth aspect of injunctive relief provides for the review and update of an agency-wide Affirmative Employment Plan to ensure that all appropriate issues related to class members are addressed in the plan. Finally, the agreement provided that every employee will have an up-to-date individual development plan.

 With respect to individual relief, the agreement divided the class into four tiers: Tier One, Tier Two, Tier Three, and Tier Four. Tier One consisted of six class agents, including Dr. Arun Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The agreement provided Dr. Basu a retroactive promotion effective September 1998, into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay with interest in the amount of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$98,219.00; restoration of 564 hours of sick leave; $200,000.00 in compensatory damages; the expungement of a reprimand and information related to misconduct investigations; and reasonable attorney's fees. Dr. Dey was given a retroactive promotion effective September 1998, into the position of Veterinary Medical Officer, GS-14; back pay with interest estimated in the amount of $46,000.00; priority placement into the first GS-15 position for which he qualifies; restoration of 476 hours of sick leave; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Yee was given a retroactive promotion effective September 1998, into the position of Invasive Species Manager, GS-401-15, Step 10; back pay with interest estimated to be $68,154.00; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Murthy was given $40,000.00 in compensatory damages; advancement to the GS-14, step 10 level; and reassignment into the position of Veterinary Medical Officer, GS-0701-14; Office of Personnel Management (OPM) Leadership Training to be determined within 60 days of the signing of the agreement; and reasonable attorney's fees. Drs. Lakhani and Saini were each given $40,000.00 in compensatory damages; OPM Leadership Training to be determined within 60 days of the signing of the agreement; and reasonable attorney's fees.

**\*3** Tier Two consisted of the remaining twenty-two class agents and two former class agents who settled their individual complaints. The two class agents who settled their cases were identified as Dr. Parthapratim Basu and Ms. Marjorie Medina and were offered no relief under the agreement. The remaining twenty-two class agents were divide into those with cases pending in federal court, those with cases pending at the Commission and those who had no complaint pending. The two identified as having cases pending in federal district court were: Dr. Jamshyd Rasekh and Dr. Jess Rajan. The five class agents identified as having cases pending at the Commission were: Dr. Suresh P. Singh, Dr. Moorli Prasad, Dr. Katsuri Basu, Dr. Altaf Ahmed, and Dr. Arshad Hussain. The fifteen Tier Two class agents identified as having no cases pending were: Dr. Kamal Tripathi, Dr. James Shieh, Dr. Nithin Thaker, Dr. Hari Eswaran, Dr. T.V. Rao Jude, Dr. Sher Al, Dr. Tung Sun, Dr. Bharat Patel, Dr. Syed Amjad Ali, Dr. Sivramiah Shantharam, Dr. S. Chohan, Mr. Karl Choice, Ms. June Turner, Mr. Justin Rhee, and Mr. Farook Sait. The twenty-two class agents as a group were awarded $372,500.00, to be distributed at their discretion, and injunctive relief. [FN2]

Tier Three consisted of all other cases subsumed under the class definition pending at the EEOC, Federal District Court, or Federal Circuit Court of Appeals. Tier Three members with claims pending in federal district court would receive $7,500.00 plus attorney's fees incurred since filing in federal court and injunctive relief. Tier Three members with claims pending before the EEOC were to receive $5,000.00 or an expedited hearing and injunctive relief.

Tier Four consisted of all Asian/Pacific Islander employees who fall under the class definition, but did not file a complaint of employment discrimination. Tier Four members were offered injunctive relief only.

The agreement provided specific instructions regarding attorney's fees. Specifically, it stated that Tier One Class Members would receive, altogether, $350,000.00

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130152 (E.E.O.C.), EEOC DOC 01A52527
**(Cite as: 2005 WL 1130152 (E.E.O.C.))**

in reasonable attorney's fees. Additionally, the agreement stated that attorney's fees for Dr. Mon Yee in Tier One; Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two; and Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by the agency, contingent upon their acceptance of the settlement offer. Finally, the agreement noted that five Tier Two complaints before the Commission will also be offered attorney's fees by the agency, contingent upon their acceptance of the settlement offer, not to exceed $25,000.00.

 In his objection submitted to the AJ, complainant noted that he was a former employee of the agency's Agricultural Research Service and that his individual complaint of discrimination has been held in abeyance for three years as a result of the class action complaint of Basu v. Department of Agriculture, Agency No. 000190. Complainant notes that he received a letter from the agency informing him of the subject settlement agreement; however, he states that he did not receive Exhibits A, 1, 2, 3, and 4, mentioned in the settlement agreement (which identified the members in each of the four Tiers described in the agreement). He claims that these documents are essential for fair consideration of the agreement. Complainant requests the proposed settlement agreement be vacated on three grounds. First, complainant claims that the settlement agreement unfairly limits the class certified by the Commission in EEOC Appeal No. 01A24350 to exclude persons who are not current employees of the agency. He argues that if the change in definition of the class is allowed, he will be excluded from relief since he is not a current employee of the agency. Additionally, complainant alleges that the agreement unfairly distributes monetary and professional relief between a few class agents instead of the overwhelming majority of the class. Third, complainant challenges the section of the agreement entitled Collateral Use of Agreement Prohibited, which prohibits the use of the contents of the agreement for any purpose.

 **\*4** The AJ noted that objections to the agreement were received by complainant and nine other class members, including: Jahshyd Rasekl, Jess Rajan, Kunauli Madhusudhan, Muhammad Chaudhry, Emiko Purdy, Mon Yee, Robert Tse, Clemen Gehrlan, and Abdul Sadiq. The AJ did not address each objection individually; however, he did address specific relevant objections that: the class agents were getting too much relief and/or that class members in the lower two tiers of the agreement were not getting enough; the agreement does not explicitly identify the relief being received by certain class agents; and it is unclear from the agreement how certain relief is to be allocated.

 Specifically, the AJ noted that although the Notice of the Proposed Settlement should have included the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. The AJ noted that it was clear that the Tier One class agents were to receive more relief than those in the lower tiers. Thus, the AJ found that any member in the lower tiers who believed s/he was not being offered adequate relief could have filed a petition to that effect.

 Further, the AJ found the terms of the settlement agreement were fair, adequate and reasonable. The AJ noted that at the time the case was settled, the class was only

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130152 (E.E.O.C.), EEOC DOC 01A52527
**(Cite as: 2005 WL 1130152 (E.E.O.C.))**

conditionally certified and there existed a risk that the class would be decertified
and not proceed to a hearing on the merits. Additionally, the AJ explained in order
to obtain comparable relief, in addition to achieving full certification, the class
would have had to prove discrimination over several years. The AJ also noted that in
the event a finding of discrimination were made, each class member would have had to
establish his/her individual entitlement to relief. Further, the AJ observed that
had the class prevailed at a hearing, the injunctive relief provided by the agree-
ment would not have been available as a remedy. The AJ found that the relief being
provided, which he noted was potentially as much as $1,700,000.00 in individual re-
lief and attorney's fees, is fair to the class as a whole.

 Finally, with respect to the claim that the class agents in Tier One and Tier Two
are receiving more individual relief than the other class members in addition to
priority consideration under the DOPP, the AJ noted that class agents were the ones
who spearheaded the class complaint, were actively involved in the litigation of the
complaint, and appeared at certain meetings on behalf of the class with high-level
officials in the agency. The AJ notes that although Tier Three members have indi-
vidual complaints, they were not actively involved in the class complaint. The AJ
notes that if the Tier Three individuals are not satisfied with the lump sum offer
of $5,000.00 they have the option of an expedited hearing on their subsumed claims.
[FN3] Finally, the AJ notes that while Tier Four members are only eligible for in-
junctive relief, they are not giving up anything as a result of the agreement.

 **\*5** On appeal, complainant reiterates the arguments made before the AJ.

 In opposition to complainant's appeal, a JOINT STATEMENT IN OPPOSITION TO THE AP-
PEAL OF SETTLEMENT FILED BY FAZAL RAHMAN AND REQUEST FOR EXPEDITED RULING is filed
by the agency and class counsel. The Joint Statement argues that the AJ correctly
determined that the agreement was fair, adequate, and reasonable to the class as a
whole. With regard to complainant's challenge to the definition of the class, the
agency and class counsel argue that complainant incorrectly believes that because he
is no longer an agency employee that he will be denied relief from the settlement
agreement. The agency notes that it provided complainant with a February 17, 2004
letter indicating that he was identified as a Tier Three member of the proposed
agreement and entitled to the relief specified for Tier Three members. The agency
stated that individuals with pending administrative complaints of employment dis-
crimination were offered relief, whether they were current agency employees or not.
The agency claims that the agreement is fair and adequate to all class members be-
cause every member who filed an EEO complaint subsumed by the class is entitled to
monetary relief, or the opportunity to have an expedited hearing to determine what
relief, if any, is owed to that class member. Further, the agency notes that every
class member receives some benefit under the settlement agreement, even if the class
member did not file an administrative complaint subsumed by the class. Additionally,
the Joint Statement states that the AJ correctly found it is fair to provide greater
relief to the class agents, as they spearheaded the class complaint. Finally, the
Joint Statement argues that the language in the agreement prohibiting the collateral
use of the agreement protects the integrity of the settlement process by not allow-
ing information provided by either party during negotiations to be used outside the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130152 (E.E.O.C.), EEOC DOC 01A52527
**(Cite as: 2005 WL 1130152 (E.E.O.C.))**

settlement process.

ANALYSIS AND FINDINGS

Class action complaints may be resolved at any time, provided they comply with the
approval process outlined in the regulations. See 29 C.F.R. § 1614.204(g)(2). When
resolution of a class complaint is proposed, notice of resolution must be given to
all class members. 29 C.F.R. § 1614.204(g)(4). This notice must state that within
thirty (30) days, any member of the class may petition the AJ to vacate the resolu-
tion because it benefits only the class agent, or is otherwise not fair, adequate,
and reasonable to the class as a whole. Id. The AJ must consider these petitions,
and determine whether to vacate the agreement. Id. The AJ's decision must inform the
former class agent (if the settlement is vacated) or the petitioner (if the settle-
ment is upheld) of his or her right to appeal to this Commission. 29 C.F.R. §
1614.204(g)(4).

**\*6** As noted above, the Commission originally conditionally certified a class in
this case consisting of all Asian employees of the agency who were eligible for but
have not received promotions and all Asian persons who have applied for positions
with the agency but have not been selected. In the subject settlement agreement we
note that the settlement defines the class covered by the agreement as all current
Asian/Pacific Islander employees at the GS-7 level and above who were eligible for
but have not received promotions and all Asian/Pacific Islander current employees
who were eligible for and have applied for positions with the agency but have not
been selected. Although the definition of the class is narrower than the class which
the Commission previously conditionally certified, we find that it is not inappro-
priate to narrow the definition of a settlement class. Furthermore, the Commission
previously noted that the scope of the class was subject to amendment.

In his objection and on appeal, complainant argues that since he is a former em-
ployee of the agency, under the definition of the class in the agreement he is no
longer considered a part of the class and therefore is not entitled to relief. We
find that the plain language of the agreement does limit available relief under the
settlement agreement to current Asian/Pacific Islander employees and thus, would not
include former employees. However, the record reveals that the agency identified
complainant as a Tier Three member of the class and sent him a February 17, 2004
letter informing him of this classification. Further, on appeal the agency and class
counsel submit a Joint Statement admitting that complainant is covered by the terms
of the agreement.

Based on our finding that complainant is not a class member entitled to relief pur-
suant to the subject settlement agreement, we will not address his additional con-
tentions that the settlement agreement was not fair to the class members.

CONCLUSION

Accordingly, the Administrative Judge's finding that the October 31, 2003 settle-
ment agreement is fair, adequate, and reasonable to the class as a whole is AF-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130152 (E.E.O.C.), EEOC DOC 01A52527
**(Cite as: 2005 WL 1130152 (E.E.O.C.))**


FIRMED.

### STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

 The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:
  1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
  2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

 Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

 **\*7** Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

 You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

### RIGHT TO REQUEST COUNSEL (Z1199)

 If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130152 (E.E.O.C.), EEOC DOC 01A52527

**(Cite as: 2005 WL 1130152 (E.E.O.C.))**

costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

For the Commission:

Carlton M. Hadden

Director

Office of Federal Operations

FN1. The agreement specified that class agents who are eligible and qualified to participate in the DOPP will receive priority consideration for the first eighteen months after the program becomes effective.

FN2. In his December 7, 2004 Decision Granting Final Approval of Settlement Agreement, the AJ noted that the parties represented that the distribution of this sum will be at the discretion of the lead class agent, with the assistance of his representative, and will involve a system where each individual is required to file a petition setting forth his/her entitlement to a specific amount.

FN3. The AJ noted that under the Commission's Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), "class members may not 'opt out' of the defined class. The AJ concedes that although allowing certain class members the opportunity to proceed with their individual complaints could be viewed as allowing them to 'opt out,' they are technically not opting out insofar as it is the Agreement itself that provides for the expedited hearing."

 2005 WL 1130152 (E.E.O.C.), EEOC DOC 01A52527

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   26

<u>Sadiq v. Johanns</u> EEOC Appeal No. 01A52528, *available at* 2005 W.L. 1130061 (May 3 2005), available (upholding fairness of Basu Agreement)

Westlaw.

EEOC DOC 01A52528                                                    Page 1
2005 WL 1130061 (E.E.O.C.), EEOC DOC 01A52528
**(Cite as: 2005 WL 1130061 (E.E.O.C.))**

E.E.O.C.

**\*1** Office of Federal Operations

ABDUL SADIQ, COMPLAINANT,
v.
MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
Appeal No. 01A52528
Agency Nos. 980546, 980887, 040552, 000190
Hearing No. 100-A1-7863X

May 3, 2005

DECISION

 Complainant filed the present appeal with this Commission apparently challenging
the fairness of a class action settlement agreement signed by the parties on October
31, 2003, and approved by an EEOC Administrative Judge (AJ) on December 7, 2004.

 Arun Basu, lead class agent, filed a formal complaint of discrimination on behalf
of a proposed class of Asian employees of the agency at any grade level who had,
between February 1994, and the present: (1) applied for a promotion; (2) been de-
tailed to a different position; (3) been demoted to a lower position; (4) been
stripped of managerial duties and responsibilities; (5) failed to be selected for a
position with managerial duties or responsibilities; (6) been subjected to reprisal
for filing a complaint(s); (7) filed a discrimination complaint that had not been
resolved; or (8) been terminated from their positions, and thereafter filed a dis-
crimination complaint.

 The class complaint was forwarded to the EEOC's Washington Field Office for a de-
cision on certification. In a September 15, 2000 decision, the AJ determined that
the class failed to meet the procedural requirements for certification. In an Octo-
ber 4, 2000 decision, the agency fully implemented the decision of the AJ. The lead
class agent filed an appeal with the Commission. The Commission reversed the de-
cision denying certification and in Arun C. Basu v. Department of Agriculture, EEOC
Appeal No. 01A10660 (June 27, 2001), "conditionally" certified a class consisting of
all Asian employees of the agency who were eligible for but have not received promo-
tions and all Asian persons who have applied for positions with the agency but have
not been selected. The Commission noted that the scope of the class was subject to
amendment. The case was remanded and forwarded to an AJ to process the conditionally
certified class.

 Following the remand of the case, the second AJ assigned to the case issued an Or-
der Acknowledging Class Complaint on January 25, 2002, and authorized the parties to
commence discovery on the case. The second AJ suspended the requirement under 29
C.F.R. § 1614.204(e), requiring the agency to notify all class members of the certi-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fication of the class, within fifteen days of the agency's receipt of the AJ's de-
cision certifying a class complaint, because the class was conditionally certified.
The AJ stated that following discovery he would determine whether the conditions for
class certification have been met. Subsequent to a lengthy discovery period, fol-
lowed by the filing of briefs on the question of certification by both sides, a set-
tlement agreement was signed by the parties on October 31, 2003. The class defined
in the agreement was "all current Asian/Pacific Islander employees at the GS-7 level
and above who were eligible for but have not received promotions and all Asian/Pa-
cific Islander current employees who were eligible for and have applied for posi-
tions with the Department but have not been selected." On January 27, 2004, the
second AJ granted preliminary approval of the agreement, and a Notice of Proposed
Settlement, along with a copy of the agreement, was sent by regular mail to all cur-
rent permanent Asian/Pacific Islander employees who had complaints that were sub-
sumed within the class as well as all identified Asian/Pacific Islander employees
who fell under the class definition but did not have pending individual complaints.
The Notice of Proposed Settlement informed class members that they had thirty days
in which to file objections to the AJ. The record reveals that ten objections, in-
cluding complainant's, were received by the AJ. On December 7, 2004, the AJ issued a
decision approving the settlement, and complainant appealed.

 **\*2** The settlement agreement was signed by the agency's Associate General Counsel,
the agency's Deputy Administrator for Agricultural Research Service (ARS), the lead
class agent, the President of the Organization of South Asian Americans in Agricul-
ture (OSAAA) and class counsel. It provided in pertinent part for injunctive relief
and individual relief for class members. Among the injunctive relief specified, was
the creation of a pilot Development Opportunity Placement Program (DOPP) to provide
opportunities for eligible and qualified employees to serve on details, receive tem-
porary promotions, or participate in developmental assignments. The agreement spe-
cified that the DOPP will be created within six subagencies to provide no fewer than
two opportunities annually for three years and noted that details, temporary promo-
tions, or developmental assignments will be for a minimum of 31 days. [FN1] Second,
the agreement established the creation of a Graduate Scholarship Program to provide
funding for graduate school with a total of thirty-six scholarships available
between eight offices. The third aspect of injunctive relief specified that an
agency-wide Job Fair would be held at four regional locations for employment in job
categories where the agency's Asian/Pacific Islander population is statistically un-
der represented. The fourth aspect of injunctive relief provides for the review and
update of an agency-wide Affirmative Employment Plan to ensure that all appropriate
issues related to class members are addressed in the plan. Finally, the agreement
provided that every employee will have an up-to-date individual development plan.

 With respect to individual relief, the agreement divided the class into four tiers:
Tier One, Tier Two, Tier Three, and Tier Four. Tier One consisted of six class
agents, including Dr. Arun Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy,
Dr. Hyder Lakhani, and Dr. Parmesh Saini. The agreement provided Dr. Basu a retro-
active promotion effective September 1998, into the position of Special Assistant
for Outreach and Diversity, SES E-3; back pay with interest in the amount of
$98,219.00; restoration of 564 hours of sick leave; $200,000.00 in compensatory dam-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130061 (E.E.O.C.), EEOC DOC 01A52528
**(Cite as: 2005 WL 1130061 (E.E.O.C.))**

ages; the expungement of a reprimand and information related to misconduct investig-
ations; and reasonable attorney's fees. Dr. Dey was given a retroactive promotion
effective September 1998, into the position of Veterinary Medical Officer, GS-14;
back pay with interest estimated in the amount of $46,000.00; priority placement in-
to the first GS-15 position for which he qualifies; restoration of 476 hours of sick
leave; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Yee
was given a retroactive promotion effective September 1998, into the position of In-
vasive Species Manager, GS-401-15, Step 10; back pay with interest estimated to be
$68,154.00; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr.
Murthy was given $40,000.00 in compensatory damages; advancement to the GS-14, step
10 level; and reassignment into the position of Veterinary Medical Officer, GS-
0701-14; Office of Personnel Management (OPM) Leadership Training to be determined
within 60 days of the signing of the agreement; and reasonable attorney's fees. Drs.
Lakhani and Saini were each given $40,000.00 in compensatory damages; OPM Leadership
Training to be determined within 60 days of the signing of the agreement; and reas-
onable attorney's fees.

 **\*3** Tier Two consisted of the remaining twenty-two class agents and two former class
agents who settled their individual complaints. The two class agents who settled
their cases were identified as Dr. Parthapratim Basu and Ms. Marjorie Medina and
were offered no relief under the agreement. The remaining twenty-two class agents
were divide into those with cases pending in federal court, those with cases pending
at the Commission and those who had no complaint pending. The two identified as hav-
ing cases pending in federal district court were: Dr. Jamshyd Rasekh and Dr. Jess
Rajan. The five class agents identified as having cases pending at the Commission
were: Dr. Suresh P. Singh, Dr. Moorli Prasad, Dr. Katsuri Basu, Dr. Altaf Ahmed, and
Dr. Arshad Hussain. The fifteen Tier Two class agents identified as having no cases
pending were: Dr. Kamal Tripathi, Dr. James Shieh, Dr. Nithin Thaker, Dr. Hari Es-
waran, Dr. T.V. Rao Jude, Dr. Sher Al, Dr. Tung Sun, Dr. Bharat Patel, Dr. Syed Am-
jad Ali, Dr. Sivramiah Shantharam, Dr. S. Chohan, Mr. Karl Choice, Ms. June Turner,
Mr. Justin Rhee, and Mr. Farook Sait. The twenty-two class agents as a group were
awarded $372,500.00, to be distributed at their discretion, and injunctive relief.
[FN2]

 Tier Three consisted of all other cases subsumed under the class definition pending
at the EEOC, Federal District Court, or Federal Circuit Court of Appeals. Tier Three
members with claims pending in federal district court would receive $7,500.00 plus
attorney's fees incurred since filing in federal court and injunctive relief. Tier
Three members with claims pending before the EEOC were to receive $5,000.00 or an
expedited hearing and injunctive relief.

 Tier Four consisted of all Asian/Pacific Islander employees who fall under the
class definition, but did not file a complaint of employment discrimination. Tier
Four members were offered injunctive relief only.

 The agreement provided specific instructions regarding attorney's fees. Specific-
ally, it stated that Tier One Class Members would receive, altogether, $350,000.00
in reasonable attorney's fees. Additionally, the agreement stated that attorney's

fees for Dr. Mon Yee in Tier One; Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two; and Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by the agency, contingent upon their acceptance of the settlement offer. Finally, the agreement noted that five Tier Two complainants before the Commission will also be offered attorney's fees by the agency, contingent upon their acceptance of the settlement offer, not to exceed $25,000.00.

In his objection submitted to the AJ, complainant declined to accept the proposed relief for Tier 3 members and requested an expedited hearing on his individual complaints of discrimination.

The AJ noted that objections to the agreement were received by complainant and nine other class members, including: Jahshyd Rasekl, Jess Rajan, Kunauli Madhusudhan, Muhammad Chaudhry, Emiko Purdy, Mon Yee, Robert Tse, Clemen Gehrlan, and Abdul Sadiq. The AJ did not address each objection individually; however, he did address specific relevant objections that: the class agents were getting too much relief and/or that class members in the lower two tiers of the agreement were not getting enough; the agreement does not explicitly identify the relief being received by certain class agents; and it is unclear from the agreement how certain relief is to be allocated.

**\*4** Specifically, the AJ noted that although the Notice of the Proposed Settlement should have included the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. The AJ noted that it was clear that the Tier One class agents were to receive more relief than those in the lower tiers. Thus, the AJ found that any member in the lower tiers who believed s/he was not being offered adequate relief could have filed a petition to that effect.

Further, the AJ found the terms of the settlement agreement were fair, adequate and reasonable. The AJ noted that at the time the case was settled, the class was only conditionally certified and there existed a risk that the class would be decertified and not proceed to a hearing on the merits. Additionally, the AJ explained in order to obtain comparable relief, in addition to achieving full certification, the class would have had to prove discrimination over several years. The AJ also noted that in the event a finding of discrimination were made, each class member would have had to establish his/her individual entitlement to relief. Further, the AJ observed that had the class prevailed at a hearing, the injunctive relief provided by the agreement would not have been available as a remedy. The AJ found that the relief being provided, which he noted was potentially as much as $1,700,000.00 in individual relief and attorney's fees, is fair to the class as a whole.

Finally, with respect to the claim that the class agents in Tier One and Tier Two are receiving more individual relief than the other class members in addition to priority consideration under the DOPP, the AJ noted that class agents were the ones who spearheaded the class complaint, were actively involved in the litigation of the complaint, and appeared at certain meetings on behalf of the class with high-level officials in the agency. The AJ notes that although Tier Three members have indi-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130061 (E.E.O.C.), EEOC DOC 01A52528
**(Cite as: 2005 WL 1130061 (E.E.O.C.))**

vidual complaints, they were not actively involved in the class complaint. The AJ
notes that if the Tier Three individuals are not satisfied with the lump sum offer
of $5,000.00 they have the option of an expedited hearing on their subsumed claims.
[FN3] Finally, the AJ notes that while Tier Four members are only eligible for in-
junctive relief, they are not giving up anything as a result of the agreement.

 Complainant raises no additional arguments on appeal. We note that on his appeal
form, complainant lists Agency Case Nos. 980546, 982887, and 040522. Complainant at-
taches a copy of the December 13, 2004 letter from the agency forwarding the AJ's
decision approving the class settlement in Agency Case No. 000190.

 In a March 31, 2005 response to complainant's appeal, the agency states that
Agency Case Nos. 980546 and 980887 are subsumed by the Basu v. Department of Agri-
culture class complaint settlement (Agency Case No. 000190). The agency notes that
the terms of the settlement agreement do not take effect until June 6, 2005, and re-
quests that complainant's appeal regarding those two case numbers be closed. Addi-
tionally, with regard to Agency Case No. 040522, the agency notes that complainant
was referred for counseling on March 1, 2005, with respect to this complaint.

                          ANALYSIS AND FINDINGS

 **5** Class action complaints may be resolved at any time, provided they comply with
the approval process outlined in the regulations. See 29 C.F.R. § 1614.204(g)(2).
When resolution of a class complaint is proposed, notice of resolution must be given
to all class members. 29 C.F.R. § 1614.204(g)(4). This notice must state that within
thirty (30) days, any member of the class may petition the AJ to vacate the resolu-
tion because it benefits only the class agent, or is otherwise not fair, adequate,
and reasonable to the class as a whole. Id. The AJ must consider these petitions,
and determine whether to vacate the agreement. Id. The AJ's decision must inform the
former class agent (if the settlement is vacated) or the petitioner (if the settle-
ment is upheld) of his or her right to appeal to this Commission. 29 C.F.R. §
1614.204(g)(4).

 The requirement that a class action settlement be fair, adequate, and reasonable to
the class as a whole follows the standard enunciated for Federal Rule of Civil Pro-
cedure 23(e) in Thomas v. Albright, 139 F.3d, 227, 233 (D.C. Cir. 1998). See Modlin
v. Social Security Admin., EEOC Appeal No. 01A24054 (Feb. 20, 2003) (citing 64 Fed.
Reg. 37644, 37652 (July 12, 1999) (summarizing and explaining the November 1999
changes to 29 C.F.R. part 1614); Branch v. Department of Veterans Affairs, EEOC Ap-
peal No. 01902620 (November 7, 1990) (noting that Fed R. of Civ. P. 23(e) precedent
should be applied to administrative procedure for assessing fairness of a class ac-
tion settlement)). Under such standards, the judge's primary task is to evaluate the
terms of the settlement in relation to the strength of the complainant's case. Id.
(citing Thomas v. Albright, 139 F.3d 227, 231 (D.C. Cir. 1998), cert den., 525 U.S.
1033 (1998)).

 In the present case, the AJ discussed the fairness of the settlement in light of
the obstacles that the class still had to surpass in order to receive a favorable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130061 (E.E.O.C.), EEOC DOC 01A52528
(Cite as: 2005 WL 1130061 (E.E.O.C.))

decision. The AJ noted that at the time of settlement the class was only condition-
ally certified and that there was a risk that the class would be decertified and
never actually proceed to a hearing on the merits. Additionally, the AJ noted that
to obtain relief comparable to that under the agreement, the class, in addition to
achieving full certification, had to prove discrimination over the course of several
years. Further, the AJ noted that even if a finding of discrimination was made, each
class member would have to establish his/her own entitlement to relief. Finally, the
AJ noted that the injunctive relief provided by the agreement would not have been
available as a remedy in the event that the class prevailed at a hearing.

 *6 The settlement agreement defined the class as consisting of Asian/Pacific Is-
lander current employees at the GS-7 level and above who were eligible for but have
not received promotions and all Asian/Pacific Islander current employees who were
eligible for and have applied for positions with the agency but have not been selec-
ted. While the record reveals that this class consisted of approximately 2,100 mem-
bers, we note that only four of thirty named class agents actually received retro-
active promotion and/or advancement and reassignment as a remedy. Nonetheless, we
note that under the agreement all class members who filed discrimination complaints
subsumed by the class were entitled to share $372,500.00 in monetary relief (Tier 2)
or receive a minimum of $5,000 (Tier 3). The Commission has recognized that an award
of monetary relief, rather than promotions, is a reasonable compromise and not so
"grossly inadequate" that it should be disapproved. See Modlin, EEOC Appeal No.
01A24054 (citing Albright, 139 F.3d at 232 (refusing to vacate settlement because
the parties reached a reasonable compromise that only a portion of the 47 possible
under-promotions was corrected in the agreement)). Additionally, we agree with the
AJ's statement that Tier Four members, limited to injunctive relief only, received a
benefit from the agreement although they gave up nothing as a result of the agree-
ment. Thus, we find that complainant has failed to show that the AJ abused his dis-
cretion in denying her petition to vacate the settlement agreement.

 Finally, we note that complainant identified the following three Agency Case Nos.
on his appeal form: 980546, 980887, and 040552. The record reveals that Agency Case
Nos. 980546 and 980887 were subsumed within the subject class settlement agreement.
In its March 31, 2005 letter, the agency notes that Agency Case No. 040552 is cur-
rently in the counseling process. Complainant has not claimed that Agency Case No.
040552 has been the subject of any final agency action. Accordingly, we find that
the appeal concerning Agency Case No. 040552 is premature because it has not yet
been subject to final agency action. Finally, if complainant is seeking implementa-
tion of the class settlement agreement, such a request is premature.

CONCLUSION

 Accordingly, the Administrative Judge's finding that the October 31, 2003 settle-
ment agreement is fair, adequate, and reasonable to the class as a whole is AF-
FIRMED.

STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130061 (E.E.O.C.), EEOC DOC 01A52528
**(Cite as: 2005 WL 1130061 (E.E.O.C.))**

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

**\*7** 1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A52528
2005 WL 1130061 (E.E.O.C.), EEOC DOC 01A52528
**(Cite as: 2005 WL 1130061 (E.E.O.C.))**

civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

For the Commission:

**\*8** Carlton M. Hadden

Director

Office of Federal Operations

FN1. The agreement specified that class agents who are eligible and qualified to participate in the DOPP will receive priority consideration for the first eighteen months after the program becomes effective.

FN2. In his December 7, 2004 Decision Granting Final Approval of Settlement Agreement, the AJ noted that the parties represented that the distribution of this sum will be at the discretion of the lead class agent, with the assistance of his representative, and will involve a system where each individual is required to file a petition setting forth his/her entitlement to a specific amount.

FN3. The AJ noted that under the Commission's Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), "class members may not 'opt out' of the defined class. The AJ concedes that although allowing certain class members the opportunity to proceed with their individual complaints could be viewed as allowing them to 'opt out,' they are technically not opting out insofar as it is the Agreement itself that provides for the expedited hearing."

 2005 WL 1130061 (E.E.O.C.), EEOC DOC 01A52528

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   27

<u>Purdy v. Johanns</u>, EEOC Appeal No 01A52042, *available at* 2005 W.L. 1130125 (May 3, 2005) (upholding fairness of Basu Agreement)



2005 WL 1130125 (E.E.O.C.), EEOC DOC 01A52042
**(Cite as: 2005 WL 1130125 (E.E.O.C.))**

E.E.O.C.

**\*1** Office of Federal Operations

EMIKO PURDY, COMPLAINANT,
v.
MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
Appeal No. 01A52042
Agency No. 000190
Hearing No. 100-A1-7863X

May 3, 2005

DECISION

 Complainant filed the present appeal with this Commission to challenge the fairness of a class action settlement agreement signed by the parties on October 31, 2003, and approved by an EEOC Administrative Judge (AJ) on December 7, 2004.

 Arun Basu, lead class agent, filed a formal complaint of discrimination on behalf of a proposed class of Asian employees of the agency at any grade level who, between February 1994, and the present, who had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) been stripped of managerial duties and responsibilities; (5) failed to be selected for a position with managerial duties or responsibilities; (6) been subjected to reprisal for filing a complaint(s); (7) filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint.

 The class complaint was forwarded to the EEOC's Washington Field Office for a decision on certification. In a September 15, 2000 decision, the AJ determined that the class failed to meet the procedural requirements for certification. In an October 4, 2000 decision, the agency fully implemented the decision of the AJ. The lead class agent filed an appeal with the Commission. The Commission reversed the decision denying certification and in Arun C. Basu v. Department of Agriculture, EEOC Appeal No. 01A10660 (June 27, 2001) "conditionally" certified a class consisting of all Asian employees of the agency who were eligible for but have not received promotions and all Asian persons who have applied for positions with the agency but have not been selected. The Commission noted that the scope of the class was subject to amendment. The case was remanded and forwarded to an AJ to process the conditionally certified class.

 Following the remand of the case, the second AJ assigned to the case issued an Order Acknowledging Class Complaint on January 25, 2002, and authorized the parties to commence discovery on the case. The second AJ suspended the requirement under 29 C.F.R. § 1614.204(e), requiring the agency to notify all class members of the certi-

fication of the class, within fifteen days of the agency's receipt of the AJ's de-
cision certifying a class complaint, because the class was conditionally certified.
The AJ stated that following discovery he would determine whether the conditions for
class certification have been met. Subsequent to a lengthy discovery period, fol-
lowed by the filing of briefs on the question of certification by both sides, a set-
tlement agreement was signed by the parties on October 31, 2003. The class defined
in the agreement was "all current Asian/Pacific Islander employees at the GS-7 level
and above who were eligible for but have not received promotions and all Asian/Pa-
cific Islander current employees who were eligible for and have applied for posi-
tions with the Department but have not been selected." On January 27, 2004, the
second AJ granted preliminary approval of the agreement, and a Notice of Proposed
Settlement, along with a copy of the agreement, was sent by regular mail to all cur-
rent permanent Asian/Pacific Islander employees who had complaints that were sub-
sumed within the class as well as all identified Asian/Pacific Islander employees
who fell under the class definition but did not have pending individual complaints.
The Notice of Proposed Settlement informed class members that they had thirty days
in which to file objections to the AJ. The record reveals that ten objections, in-
cluding complainant's, were received by the AJ. On December 7, 2004, the AJ issued a
decision approving the settlement, and complainant appealed.

 **\*2** The settlement agreement was signed by the agency's Associate General Counsel,
the agency's Deputy Administrator for Agricultural Research Service (ARS), the lead
class agent, the President of the Organization of South Asian Americans in Agricul-
ture (OSAAA) and class counsel. It provided in pertinent part for injunctive relief
and individual relief for class members. Among the injunctive relief specified, was
the creation of a pilot Development Opportunity Placement Program (DOPP) to provide
opportunities for eligible and qualified employees to serve on details, receive tem-
porary promotions, or participate in developmental assignments. The agreement spe-
cified that the DOPP will be created within six subagencies to provide no fewer than
two opportunities annually for three years and noted that details, temporary promo-
tions, or developmental assignments will be for a minimum of 31 days. [FN1] Second,
the agreement established the creation of a Graduate Scholarship Program to provide
funding for graduate school with a total of thirty-six scholarships available
between eight offices. The third aspect of injunctive relief specified that an
agency-wide Job Fair would be held at four regional locations for employment in job
categories where the agency's Asian/Pacific Islander population is statistically un-
der represented. The fourth aspect of injunctive relief provides for the review and
update of an agency-wide Affirmative Employment Plan to ensure that all appropriate
issues related to class members are addressed in the plan. Finally, the agreement
provided that every employee will have an up-to-date individual development plan.

 With respect to individual relief, the agreement divided the class into four tiers:
Tier One, Tier Two, Tier Three, and Tier Four. Tier One consisted of six class
agents, including Dr. Arun Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy,
Dr. Hyder Lakhani, and Dr. Parmesh Saini. The agreement provided Dr. Basu a retro-
active promotion effective September 1998, into the position of Special Assistant
for Outreach and Diversity, SES E-3; back pay with interest in the amount of
$98,219.00; restoration of 564 hours of sick leave; $200,000.00 in compensatory dam-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A52042                                                Page 3
2005 WL 1130125 (E.E.O.C.), EEOC DOC 01A52042
**(Cite as: 2005 WL 1130125 (E.E.O.C.))**

ages; the expungement of a reprimand and information related to misconduct investig-
ations; and reasonable attorney's fees. Dr. Dey was given a retroactive promotion
effective September 1998, into the position of Veterinary Medical Officer, GS-14;
back pay with interest estimated in the amount of $46,000.00; priority placement in-
to the first GS-15 position for which he qualifies; restoration of 476 hours of sick
leave; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Yee
was given a retroactive promotion effective September 1998, into the position of In-
vasive Species Manager, GS-401-15, Step 10; back pay with interest estimated to be
$68,154.00; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr.
Murthy was given $40,000.00 in compensatory damages; advancement to the GS-14, step
10 level; and reassignment into the position of Veterinary Medical Officer, GS-
0701-14; Office of Personnel Management (OPM) Leadership Training to be determined
within 60 days of the signing of the agreement; and reasonable attorney's fees. Drs.
Lakhani and Saini were each given $40,000.00 in compensatory damages; OPM Leadership
Training to be determined within 60 days of the signing of the agreement; and reas-
onable attorney's fees.

 **\*3** Tier Two consisted of the remaining twenty-two class agents and two former class
agents who settled their individual complaints. The two class agents who settled
their cases were identified as Dr. Parthapratim Basu and Ms. Marjorie Medina and
were offered no relief under the agreement. The remaining twenty-two class agents
were divide into those with cases pending in federal court, those with cases pending
at the Commission and those who had no complaint pending. The two identified as hav-
ing cases pending in federal district court were: Dr. Jamshyd Rasekh and Dr. Jess
Rajan. The five class agents identified as having cases pending at the Commission
were: Dr. Suresh P. Singh, Dr. Moorli Prasad, Dr. Katsuri Basu, Dr. Altaf Ahmed, and
Dr. Arshad Hussain. The fifteen Tier Two class agents identified as having no cases
pending were: Dr. Kamal Tripathi, Dr. James Shieh, Dr. Nithin Thaker, Dr. Hari Es-
waran, Dr. T.V. Rao Jude, Dr. Sher Al, Dr. Tung Sun, Dr. Bharat Patel, Dr. Syed Am-
jad Ali, Dr. Sivramiah Shantharam, Dr. S. Chohan, Mr. Karl Choice, Ms. June Turner,
Mr. Justin Rhee, and Mr. Farook Sait. The twenty-two class agents as a group were
awarded $372,500.00, to be distributed at their discretion, and injunctive relief.
[FN2]

 Tier Three consisted of all other cases subsumed under the class definition pending
at the EEOC, Federal District Court, or Federal Circuit Court of Appeals. Tier Three
members with claims pending in federal district court would receive $7,500.00 plus
attorney's fees incurred since filing in federal court and injunctive relief. Tier
Three members with claims pending before the EEOC were to receive $5,000.00 or an
expedited hearing and injunctive relief.

 Tier Four consisted of all Asian/Pacific Islander employees who fall under the
class definition, but did not file a complaint of employment discrimination. Tier
Four members were offered injunctive relief only.

 The agreement provided specific instructions regarding attorney's fees. Specific-
ally, it stated that Tier One Class Members would receive, altogether, $350,000.00
in reasonable attorney's fees. Additionally, the agreement stated that attorney's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130125 (E.E.O.C.), EEOC DOC 01A52042
**(Cite as: 2005 WL 1130125 (E.E.O.C.))**

fees for Dr. Mon Yee in Tier One; Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two;
and Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by the
agency, contingent upon their acceptance of the settlement offer. Finally, the
agreement noted that five Tier Two complainants before the Commission will also be
offered attorney's fees by the agency, contingent upon their acceptance of the set-
tlement offer, not to exceed $25,000.00.

In her objection submitted to the AJ, complainant challenged her status as a Tier
Four class member. Complainant noted that during the relevant time, she was subjec-
ted to discrimination. She states that it took her from 1990 to 1997 to get promoted
from a GS-12 to a GS-13. Additionally, she notes that it took her from 1997 to 2002
to get promoted to a GS-14. She states that two predecessors, both Caucasian males,
who held the same position were promoted to the next level within a couple of years
while it took her five years to achieve the same promotion. Complainant states she
is concerned about the following injunctive relief: the development of the DOPP, the
establishment of a Graduate Scholarship Program, and the establishment of an
agency-wide job fair. Complainant states that the main reason class members were
denied promotions is not because they lack the ability or skills but because they
were discriminated against based on race. Complainant states that she does not think
DOPP, a Graduate Scholarship Program, and a job fair are solutions to the complaint
and argues that class members should be promoted to the next level or offered an ap-
propriate amount of monetary compensation.

**\*4** The AJ noted that objections to the agreement were received by complainant and
nine other class members, including: Jahshyd Rasekl, Jess Rajan, Kunauli Madhusud-
han, Muhammad Chaudhry, Fazal Rahman, Mon Yee, Robert Tse, Clemen Gehrlan, and Abdul
Sadiq. The AJ did not address each objection individually; however, he did address
specific relevant objections that: the class agents were getting too much relief
and/or that class members in the lower two tiers of the agreement were not getting
enough; the agreement does not explicitly identify the relief being received by cer-
tain class agents; and it is unclear from the agreement how certain relief is to be
allocated.

Specifically, the AJ noted that although the Notice of the Proposed Settlement
should have included the relief being provided to the Tier One Class Agents, the de-
ficiency is not sufficient to warrant the issuance of an amended notice. The AJ
noted that it was clear that the Tier One class agents were to receive more relief
than those in the lower tiers. Thus, the AJ found that any member in the lower tiers
who believed s/he was not being offered adequate relief could have filed a petition
to that effect.

Further, the AJ found the terms of the settlement agreement were fair, adequate and
reasonable. The AJ noted that at the time the case was settled, the class was only
conditionally certified and there existed a risk that the class would be decertified
and not proceed to a hearing on the merits. Additionally, the AJ explained in order
to obtain comparable relief, in addition to achieving full certification, the class
would have had to prove discrimination over several years. The AJ also noted that in
the event a finding of discrimination were made, each class member would have had to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC DOC 01A52042                                                                 Page 5
2005 WL 1130125 (E.E.O.C.), EEOC DOC 01A52042
**(Cite as: 2005 WL 1130125 (E.E.O.C.))**

establish his/her individual entitlement to relief. Further, the AJ observed that
had the class prevailed at a hearing, the injunctive relief provided by the agree-
ment would not have been available as a remedy. The AJ found that the relief being
provided, which he noted was potentially as much as $1,700,000.00 in individual re-
lief and attorney's fees, is fair to the class as a whole.

 Finally, with respect to the claim that the class agents in Tier One and Tier Two
are receiving more individual relief than the other class members in addition to
priority consideration under the DOPP, the AJ noted that class agents were the ones
who spearheaded the class complaint, were actively involved in the litigation of the
complaint, and appeared at certain meetings on behalf of the class with high-level
officials in the agency. The AJ notes that although Tier Three members have indi-
vidual complaints, they were not actively involved in the class complaint. The AJ
notes that if the Tier Three individuals are not satisfied with the lump sum offer
of $5,000.00 they have the option of an expedited hearing on their subsumed claims.
[FN3] Finally, the AJ notes that while Tier Four members are only eligible for in-
junctive relief, they are not giving up anything as a result of the agreement.

 **\*5** On appeal, complainant reiterates her work history with the agency. Specific-
ally, she notes it took her seven years to get promoted from a GS-12 to GS-13 and
five years to get promoted from a GS-13 to a GS-14 , which she claims is longer than
it took two Caucasian male predecessors.

 In opposition to complainant's appeal, a JOINT STATEMENT IN OPPOSITION TO THE AP-
PEAL OF SETTLEMENT FILED BY EMIKO PURDY AND REQUEST FOR EXPEDITED RULING is filed by
the agency and class counsel (hereinafter, the parties). The Joint Statement argues
that the AJ properly determined that the agreement was adequate and reasonable to
the class as a whole. The parties noted that they did not receive a statement set-
ting forth the alleged bases for complainant's appeal and stated that they will ad-
dress the two bases raised in complainant's objections filed with the AJ. First, the
parties argued that complainant was correctly identified as a Tier Four class member
since she did not have a pending discrimination complaint subsumed by the class.
Second, the Joint Statement noted that as part of his finding that the terms of the
settlement agreement was fair, the AJ noted that the injunctive relief provided by
the agreement would not have been available as a remedy in the event that the class
had prevailed at a hearing. The parties note that the injunctive relief described in
the agreement is designed as remedy for the agency and class members in allegations
of shortfalls in hiring Asian/Pacific Islanders by certain sub-Agencies and with re-
gard to allegations that certain sub-Agencies discriminated against class agents by
not awarding promotions, details, and developmental assignments. The parties note
that settlements inherently involve compromise from both parties and that complain-
ants should not expect the agency to provide full relief to which complainants would
be entitled if the claim was successful at hearing. The parties note that the agree-
ment gives some benefit to every class member, even those who did not file a com-
plaint of employment discrimination.

                                    ANALYSIS

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Class action complaints may be resolved at any time, provided they comply with the approval process outlined in the regulations. See 29 C.F.R. § 1614.204(g)(2). When resolution of a class complaint is proposed, notice of resolution must be given to all class members. 29 C.F.R. § 1614.204(g)(4). This notice must state that within thirty (30) days, any member of the class may petition the AJ to vacate the resolution because it benefits only the class agent, or is otherwise not fair, adequate, and reasonable to the class as a whole. Id. The AJ must consider these petitions, and determine whether to vacate the agreement. Id. The AJ's decision must inform the former class agent (if the settlement is vacated) or the petitioner (if the settlement is upheld) of his or her right to appeal to this Commission. 29 C.F.R. § 1614.204(g)(4).

**\*6** The requirement that a class action settlement be fair, adequate, and reasonable to the class as a whole follows the standard enunciated for Federal Rule of Civil Procedure 23(e) in Thomas v. Albright, 139 F.3d, 227, 233 (D.C. Cir. 1998). See Modlin v. Social Security Admin., EEOC Appeal No. 01A24054 (Feb. 20, 2003) (citing 64 Fed. Reg. 37644, 37652 (July 12, 1999) (summarizing and explaining the November 1999 changes to 29 C.F.R. part 1614); Branch v. Department of Veterans Affairs, EEOC Appeal No. 01902620 (November 7, 1990) (noting that Fed R. of Civ. P. 23(e) precedent should be applied to administrative procedure for assessing fairness of a class action settlement)). Under such standards, the judge's primary task is to evaluate the terms of the settlement in relation to the strength of the complainant's case. Id. (citing Thomas v. Albright, 139 F.3d 227, 231 (D.C. Cir. 1998), cert den., 525 U.S. 1033 (1998)).

In the present case, the AJ discussed the fairness of the settlement in light of the obstacles that the class still had to surpass in order to receive a favorable decision. The AJ noted that at the time of settlement the class was only conditionally certified and that there was a risk that the class would be decertified and never actually proceed to a hearing on the merits. Additionally, the AJ noted that to obtain relief comparable to that under the agreement, the class, in addition to achieving full certification, had to prove discrimination over the course of several years. Further, the AJ noted that even if a finding of discrimination was made, each class member would have to establish his/her own entitlement to relief. Finally, the AJ noted that the injunctive relief provided by the agreement would not have been available as a remedy in the event that the class prevailed at a hearing.

The settlement agreement defined the class as consisting of Asian/Pacific Islander current employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the agency but have not been selected. While the record reveals that this class consisted of approximately 2,100 members, we note that only four of thirty named class agents actually received retroactive promotion and/or advancement and reassignment as a remedy. Nonetheless, we note that under the agreement all class members who filed discrimination complaints subsumed by the class were entitled to share $372,500.00 in monetary relief (Tier 2) or receive a minimum of $5,000 (Tier 3). The Commission has recognized that an award of monetary relief, rather than promotions, is a reasonable compromise and not so "grossly inad-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130125 (E.E.O.C.), EEOC DOC 01A52042
**(Cite as: 2005 WL 1130125 (E.E.O.C.))**

equate" that it should be disapproved. See Modlin, EEOC Appeal No. 01A24054 (citing Albright, 139 F.3d at 232 (refusing to vacate settlement because the parties reached a reasonable compromise that only a portion of the 47 possible under-promotions was corrected in the agreement)). Additionally, we agree with the AJ's statement that Tier Four members, limited to injunctive relief only, received a benefit from the agreement although they gave up nothing as a result of the agreement. Thus, we find that complainant has failed to show that the AJ abused his discretion in denying her petition to vacate the settlement agreement.

CONCLUSION

**\*7** Accordingly, the Administrative Judge's finding that the October 31, 2003 settlement agreement is fair, adequate, and reasonable to the class as a whole is AFFIRMED.

STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:
   1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
   2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130125 (E.E.O.C.), EEOC DOC 01A52042
**(Cite as: 2005 WL 1130125 (E.E.O.C.))**

If you file a civil action, you must name as the defendant in the complaint the per-
son who is the official agency head or department head, identifying that person by
his or her full name and official title. Failure to do so may result in the dis-
missal of your case in court. "Agency" or "department" means the national organiza-
tion, and not the local office, facility or department in which you work. If you
file a request to reconsider and also file a civil action, filing a civil action
will terminate the administrative processing of your complaint.

RIGHT TO REQUEST COUNSEL (Z1199)

**\*8** If you decide to file a civil action, and if you do not have or cannot afford
the services of an attorney, you may request that the Court appoint an attorney to
represent you and that the Court permit you to file the action without payment of
fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29
U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discre-
tion of the Court. Filing a request for an attorney does not extend your time in
which to file a civil action. Both the request and the civil action must be filed
within the time limits as stated in the paragraph above ("Right to File A Civil Ac-
tion").

For the Commission:

Carlton M. Hadden

Director

Office of Federal Operations

FN1. The agreement specified that class agents who are eligible and qualified to
participate in the DOPP will receive priority consideration for the first eighteen
months after the program becomes effective.

FN2. In his December 7, 2004 Decision Granting Final Approval of Settlement Agree-
ment, the AJ noted that the parties represented that the distribution of this sum
will be at the discretion of the lead class agent, with the assistance of his rep-
resentative, and will involve a system where each individual is required to file a
petition setting forth his/her entitlement to a specific amount.

FN3. The AJ noted that under the Commission's Equal Employment Opportunity Manage-
ment Directive for 29 C.F.R. Part 1614 (EEO MD-110), "class members may not 'opt
out' of the defined class. The AJ concedes that although allowing certain class mem-
bers the opportunity to proceed with their individual complaints could be viewed as
allowing them to 'opt out,' they are technically not opting out insofar as it is the
Agreement itself that provides for the expedited hearing."

2005 WL 1130125 (E.E.O.C.), EEOC DOC 01A52042

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   28

<u>Turner v. Johanns</u> EEOC Appeal No. 01A533302, *available at* 2005 W.L. 1130057 (May 3, 2005) (upholding fairness of Basu Agreement)

Westlaw.

EEOC DOC 01A53302                                                    Page 1
2005 WL 1130057 (E.E.O.C.), EEOC DOC 01A53302
**(Cite as: 2005 WL 1130057 (E.E.O.C.))**

H

                                E.E.O.C.

                      *1 Office of Federal Operations

                      JUNE TURNER, COMPLAINANT,
                                  v.
          MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
                          Appeal No. 01A53302
                          Agency No. 000190
                         Hearing No. 100-A1-7863X

                             May 3, 2005

                               DECISION

 Complainant filed the present appeal with this Commission to challenge the fairness
of a class action settlement agreement signed by the parties on October 31, 2003,
and approved by an EEOC Administrative Judge (AJ) on December 7, 2004.

 Arun Basu, lead class agent, filed a formal complaint of discrimination on behalf
of a proposed class of Asian employees of the agency at any grade level who had,
between February 1994, and the present: (1) applied for a promotion; (2) been de-
tailed to a different position; (3) been demoted to a lower position; (4) been
stripped of managerial duties and responsibilities; (5) failed to be selected for a
position with managerial duties or responsibilities; (6) been subjected to reprisal
for filing a complaint(s); (7) filed a discrimination complaint that had not been
resolved; or (8) been terminated from their positions, and thereafter filed a dis-
crimination complaint.

 The class complaint was forwarded to the EEOC's Washington Field Office for a de-
cision on certification. In a September 15, 2000 decision, the AJ determined that
the class failed to meet the procedural requirements for certification. In an Octo-
ber 4, 2000 decision, the agency fully implemented the decision of the AJ. The lead
class agent filed an appeal with the Commission. The Commission reversed the de-
cision denying certification and in Arun C. Basu v. Department of Agriculture, EEOC
Appeal No. 01A10660 (June 27, 2001), "conditionally" certified a class consisting of
all Asian employees of the agency who were eligible for but have not received promo-
tions and all Asian persons who have applied for positions with the agency but have
not been selected. The Commission noted that the scope of the class was subject to
amendment. The case was remanded and forwarded to an AJ to process the conditionally
certified class.

 Following remand of the case, the second AJ assigned to the case issued an Order
Acknowledging Class Complaint on January 25, 2002, and authorized the parties to
commence discovery on the case. The second AJ suspended the requirement under 29

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C.F.R. § 1614.204(e), requiring the agency to notify all class members of the certification of the class, within fifteen days of the agency's receipt of the AJ's decision certifying a class complaint, because the class was conditionally certified. The AJ stated that following discovery he would determine whether the conditions for class certification have been met. Subsequent to a lengthy discovery period, followed by the filing of briefs on the question of certification by both sides, a settlement agreement was signed by the parties on October 31, 2003. The class defined in the agreement was "all current Asian/Pacific Islander employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected." On January 27, 2004, the second AJ granted preliminary approval of the agreement. In his December 7, 2004 Decision Granting Final Approval of Settlement Agreement, the AJ noted that a Notice of Proposed Settlement, along with a copy of the agreement, was sent by regular mail to all current permanent Asian/Pacific Islander employees who had complaints that were subsumed within the class as well as all identified Asian/Pacific Islander employees who fell under the class definition but did not have pending individual complaints. The record contains a copy of the Notice of Proposed Settlement informing class members that they had thirty days in which to file objections to the AJ. The record reveals that ten objections, including complainant's, were received by the AJ. On December 7, 2004, the AJ issued a decision approving the settlement, and complainant appealed.

**\*2** The settlement agreement was signed by the agency's Associate General Counsel, the agency's Deputy Administrator for Agricultural Research Service (ARS), the lead class agent, the President of the Organization of South Asian Americans in Agriculture (OSAAA) and class counsel. It provided in pertinent part for injunctive relief and individual relief for class members. Among the injunctive relief specified, was the creation of a pilot Development Opportunity Placement Program (DOPP) to provide opportunities for eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments. The agreement specified that the DOPP will be created within six subagencies to provide no fewer than two opportunities annually for three years and noted that details, temporary promotions, or developmental assignments will be for a minimum of 31 days. [FN1] Second, the agreement established the creation of a Graduate Scholarship Program to provide funding for graduate school with a total of thirty-six scholarships available between eight offices. The third aspect of injunctive relief specified that an agency-wide Job Fair would be held at four regional locations for employment in job categories where the agency's Asian/Pacific Islander population is statistically under represented. The fourth aspect of injunctive relief provides for the review and update of an agency-wide Affirmative Employment Plan to ensure that all appropriate issues related to class members are addressed in the plan. Finally, the agreement provided that every employee will have an up-to-date individual development plan.

With respect to individual relief, the agreement divided the class into four tiers: Tier One, Tier Two, Tier Three, and Tier Four. Tier One consisted of six class agents, including Dr. Arun Basu, Dr. Bhabani Dey, Dr. Mon Yee, Dr. Krishna Murthy, Dr. Hyder Lakhani, and Dr. Parmesh Saini. The agreement provided Dr. Basu a retro-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

active promotion effective September 1998, into the position of Special Assistant for Outreach and Diversity, SES E-3; back pay with interest in the amount of $98,219.00; restoration of 564 hours of sick leave; $200,000.00 in compensatory damages; the expungement of a reprimand and information related to misconduct investigations; and reasonable attorney's fees. Dr. Dey was given a retroactive promotion effective September 1998, into the position of Veterinary Medical Officer, GS-14; back pay with interest estimated in the amount of $46,000.00; priority placement into the first GS-15 position for which he qualifies; restoration of 476 hours of sick leave; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Yee was given a retroactive promotion effective September 1998, into the position of Invasive Species Manager, GS-401-15, Step 10; back pay with interest estimated to be $68,154.00; $50,000.00 in compensatory damages; and reasonable attorney's fees. Dr. Murthy was given $40,000.00 in compensatory damages; advancement to the GS-14, step 10 level; and reassignment into the position of Veterinary Medical Officer, GS-0701-14; Office of Personnel Management (OPM) Leadership Training to be determined within 60 days of the signing of the agreement; and reasonable attorney's fees. Drs. Lakhani and Saini were each given $40,000.00 in compensatory damages; OPM Leadership Training to be determined within 60 days of the signing of the agreement; and reasonable attorney's fees.

**\*3** Tier Two consisted of the remaining twenty-two class agents and two former class agents who settled their individual complaints. The two class agents who settled their cases were identified as Dr. Parthapratim Basu and Ms. Marjorie Medina and were offered no relief under the agreement. The remaining twenty-two class agents were divide into those with cases pending in federal court, those with cases pending at the Commission and those who had no complaint pending. The two identified as having cases pending in federal district court were: Dr. Jamshyd Rasek and Dr. Jess Rajan. The five class agents identified as having cases pending at the Commission were: Dr. Suresh P. Singh, Dr. Moorli Prasad, Dr. Katsuri Basu, Dr. Altaf Ahmed, and Dr. Arshad Hussain. The fifteen Tier Two class agents identified as having no cases pending were: Dr. Kamal Tripathi, Dr. James Shieh, Dr. Nithin Thaker, Dr. Hari Eswaran, Dr. T.V. Rao Jude, Dr. Sher Al, Dr. Tung Sun, Dr. Bharat Patel, Dr. Syed Amjad Ali, Dr. Sivramiah Shantharam, Dr. S. Chohan, Mr. Karl Choice, Ms. June Turner, Mr. Justin Rhee, and Mr. Farook Sait. The twenty-two class agents as a group were awarded $372,500.00, to be distributed at their discretion, and injunctive relief. [FN2]

Tier Three consisted of all other cases subsumed under the class definition pending at the EEOC, Federal District Court, or Federal Circuit Court of Appeals. Tier Three members with claims pending in federal district court would receive $7,500.00 plus attorney's fees incurred since filing in federal court and injunctive relief. Tier Three members with claims pending before the EEOC were to receive $5,000.00 or an expedited hearing and injunctive relief.

Tier Four consisted of all Asian/Pacific Islander employees who fall under the class definition, but did not file a complaint of employment discrimination. Tier Four members were offered injunctive relief only.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

  The agreement provided specific instructions regarding attorney's fees. Specifically, it stated that Tier One Class Members would receive, altogether, $350,000.00 in reasonable attorney's fees. Additionally, the agreement stated that attorney's fees for Dr. Mon Yee in Tier One; Dr. Jamshyd Rasekh and Dr. Jess Rajan in Tier Two; and Joyce Mayekawa and Ronald Shinsato in Tier Three, will be paid separately by the agency, contingent upon their acceptance of the settlement offer. Finally, the agreement noted that five Tier Two complaints before the Commission will also be offered attorney's fees by the agency, contingent upon their acceptance of the settlement offer, not to exceed $25,000.00.

  Complainant did not file an objection with the AJ within the stated time frame specified in the Notice of Proposed Settlement.

  The AJ noted that objections to the agreement were received by complainant and nine other class members, including: Jahshyd Rasekl, Jess Rajan, Kunauli Madhusudhan, Muhammad Chaudhry, Emiko Purdy, Mon Yee, Robert Tse, Clemen Gehrlan, and Abdul Sadiq. The AJ did not address each objection individually; however, he did address specific relevant objections that: the class agents were getting too much relief and/or that class members in the lower two tiers of the agreement were not getting enough; the agreement does not explicitly identify the relief being received by certain class agents; and it is unclear from the agreement how certain relief is to be allocated.

  **\*4** Specifically, the AJ noted that although the Notice of the Proposed Settlement should have included the relief being provided to the Tier One Class Agents, the deficiency is not sufficient to warrant the issuance of an amended notice. The AJ noted that it was clear that the Tier One class agents were to receive more relief than those in the lower tiers. Thus, the AJ found that any member in the lower tiers who believed s/he was not being offered adequate relief could have filed a petition to that effect.

  Further, the AJ found the terms of the settlement agreement were fair, adequate and reasonable. The AJ noted that at the time the case was settled, the class was only conditionally certified and there existed a risk that the class would be decertified and not proceed to a hearing on the merits. Additionally, the AJ explained in order to obtain comparable relief, in addition to achieving full certification, the class would have had to prove discrimination over several years. The AJ also noted that in the event a finding of discrimination were made, each class member would have had to establish his/her individual entitlement to relief. Further, the AJ observed that had the class prevailed at a hearing, the injunctive relief provided by the agreement would not have been available as a remedy. The AJ found that the relief being provided, which he noted was potentially as much as $1,700,000.00 in individual relief and attorney's fees, is fair to the class as a whole.

  Finally, with respect to the claim that the class agents in Tier One and Tier Two are receiving more individual relief than the other class members in addition to priority consideration under the DOPP, the AJ noted that class agents were the ones who spearheaded the class complaint, were actively involved in the litigation of the

complaint, and appeared at certain meetings on behalf of the class with high-level
officials in the agency. The AJ notes that although Tier Three members have indi-
vidual complaints, they were not actively involved in the class complaint. The AJ
notes that if the Tier Three individuals are not satisfied with the lump sum offer
of $5,000.00 they have the option of an expedited hearing on their subsumed claims.
[FN3] Finally, the AJ notes that while Tier Four members are only eligible for in-
junctive relief, they are not giving up anything as a result of the agreement.

 On appeal, complainant states that she was not given notice of the proposed settle-
ment agreement prior to negotiation of the terms of the agreement. Complainant ac-
knowledges she joined the class complaint in November or December 1999. She states,
however, that she stopped working for the agency in July 2002. She states after
leaving the agency, she was not made aware of any actions taken with respect to the
class complaint. She states that she only became aware of the present actions when
she heard from a peer at the agency that a settlement was negotiated and she was in-
cluded in Tier 2. Complainant states that she is concerned about conflict of in-
terest and collusion occurring with the settlement.

 **\*5** In response to complainant's appeal, the agency notes that following the AJ's
January 27, 2004 decision granting preliminary approval of the settlement agreement,
a Notice of Proposed Settlement, along with a copy of the actual settlement agree-
ment, was sent by regular mail to all current permanent Asian/Pacific Islander em-
ployees who had complaints that were subsumed within the class, as well as to all
identified Asian/Pacific Islander employees who fell under the class definition but
did not have pending individual complaints of employment discrimination. The agency
specifically states it sent complainant a Notice of the Proposed Settlement along
with a copy of the settlement agreement specifying that within 30 days of the date
of the notice of resolution any member of the class may petition the AJ to vacate
the proposed resolution because it benefits only the class agents, or is otherwise
not fair, adequate and reasonable to the class as a whole. The agency states the No-
tice of Proposed Settlement was posted on, and remains on, the agency's web site.
The agency notes that neither it nor the AJ received an objection from complainant.
The agency explains that following the AJ's December 7, 2004 Decision Granting Final
Approval of Settlement Agreement, complainant was notified of the terms of the
agreement. The agency argued that complainant's appeal was untimely and raised is-
sues that the AJ already addressed.

ANALYSIS AND FINDINGS

 Class action complaints may be resolved at any time, provided they comply with the
approval process outlined in the regulations. See 29 C.F.R. § 1614.204(g)(2). When
resolution of a class complaint is proposed, notice of resolution must be given to
all class members. 29 C.F.R. § 1614.204(g)(4). This notice must state that within
thirty (30) days, any member of the class may petition the AJ to vacate the resolu-
tion because it benefits only the class agent, or is otherwise not fair, adequate,
and reasonable to the class as a whole. Id. The AJ must consider these petitions,
and determine whether to vacate the agreement. Id. The AJ's decision must inform the
former class agent (if the settlement is vacated) or the petitioner (if the settle-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ment is upheld) of his or her right to appeal to this Commission. 29 C.F.R. §
1614.204(g)(4).

 In the present case, we note that in his December 7, 2004 decision, the AJ found
that a Notice of Proposed Settlement, along with a copy of the actual agreement, was
sent by regular mail to all current permanent Asian/Pacific Islander employees who
had complaints that were subsumed within the class as well as identified Asian/Pa-
cific Islander employees who fell under the class definition but did not have
pending individual complaints of discrimination. The AJ noted the Notice of Proposed
Settlement was also posted on the agency's web site and in appropriate agency bul-
letins.

 **\*6** The record contains a copy of the Notice of Proposed Settlement informing class
members that they have 30 days in which to file objections to the specified AJ to
vacate the proposed resolution on the grounds it benefits only the class agents, or
is otherwise nor fair, adequate and reasonable to the class as a whole.

 The record contains a February 17, 2004 letter to Potential Class Member/Tier Two
notifying potential class members of the proposed settlement agreement in the sub-
ject case. The letter notes that under the proposed agreement Tier Two members would
receive: (a) a share of the lump sum of $372,500.00 to be distributed by the class
at its discretion; and (b) if they have individual administrative complaints of em-
ployment discrimination pending, they would receive attorney's fees not to exceed
$25,000.00, for the withdrawal of these complaints.

 We reject complainant's challenge to the fairness of a class complaint settlement
agreement signed by the parties on October 31, 2003, and approved by an EEOC Admin-
istrative Judge (AJ) on December 7, 2004. The record reveals that complainant never
filed an objection with the AJ challenging the terms of the subject settlement in
accordance with the regulation set forth at 29 C.F.R. § 1614.204(g)(4). Although
complainant claims that she never received Notice of the Proposed Settlement, we
note in his December 7, 2004 decision, the AJ found that a Notice of Proposed Set-
tlement, along with a copy of the actual agreement, was sent by regular mail to all
current permanent Asian/Pacific Islander employees who had complaints that were sub-
sumed within the class as well as identified Asian/Pacific Islander employees who
fell under the class definition but did not have pending individual complaints of
discrimination. Additionally, the AJ noted that the Notice of Proposed Settlement
was also posted on the agency's web site and in appropriate agency bulletins.

 On appeal, complainant acknowledges she knowingly became a member of the subject
class complaint in November or December 1999. A review of the copy of the Notice of
Proposed Settlement contained in the record, shows that class members were informed
of the appropriate time frames and procedures for filing objections to the subject
settlement agreement. Further, we note that the record contains a copy of the Febru-
ary 17, 2004 letter sent to Potential Class Member/Tier Two. In this letter the
agency informed class members that they would receive a share of the lump sum of
$372,500.00 and if they had an individual complaint of employment discrimination
pending, they would receive attorney's fees, not to exceed $25,000.00 in exchange

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130057 (E.E.O.C.), EEOC DOC 01A53302
**(Cite as: 2005 WL 1130057 (E.E.O.C.))**

for the withdrawal of their complaint. Upon review of the present case, we find that the agency made a good faith effort to notify all class members of the proposed settlement agreement, but that complainant failed to timely raise an objection to the settlement with the AJ. Therefore, we will not consider her objection to the settlement on appeal.

CONCLUSION

**\*7** Accordingly, the Administrative Judge's finding that the October 31, 2003 settlement agreement is fair, adequate, and reasonable to the class as a whole is AFFIRMED.

STATEMENT OF RIGHTS - ON APPEAL RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:
  1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
  2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dis-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1130057 (E.E.O.C.), EEOC DOC 01A53302

**(Cite as: 2005 WL 1130057 (E.E.O.C.))**

missal of your case in court. "Agency" or "department" means the national organiza-
tion, and not the local office, facility or department in which you work. If you
file a request to reconsider and also file a civil action, filing a civil action
will terminate the administrative processing of your complaint.

                    RIGHT TO REQUEST COUNSEL (Z1199)

 **\*8** If you decide to file a civil action, and if you do not have or cannot afford
the services of an attorney, you may request that the Court appoint an attorney to
represent you and that the Court permit you to file the action without payment of
fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29
U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discre-
tion of the Court. Filing a request for an attorney does not extend your time in
which to file a civil action. Both the request and the civil action must be filed
within the time limits as stated in the paragraph above ("Right to File A Civil Ac-
tion").


For the Commission:

Carlton M. Hadden

Director

Office of Federal Operations

FN1. The agreement specified that class agents who are eligible and qualified to
participate in the DOPP will receive priority consideration for the first eighteen
months after the program becomes effective.

FN2. In his December 7, 2004 Decision Granting Final Approval of Settlement Agree-
ment, the AJ noted that the parties represented that the distribution of this sum
will be at the discretion of the lead class agent, with the assistance of his rep-
resentative, and will involve a system where each individual is required to file a
petition setting forth his/her entitlement to a specific amount.

FN3. The AJ noted that under the Commission's Equal Employment Opportunity Manage-
ment Directive for 29 C.F.R. Part 1614 (EEO MD-110), "class members may not 'opt
out' of the defined class. The AJ concedes that although allowing certain class mem-
bers the opportunity to proceed with their individual complaints could be viewed as
allowing them to 'opt out,' they are technically not opting out insofar as it is the
Agreement itself that provides for the expedited hearing."

 2005 WL 1130057 (E.E.O.C.), EEOC DOC 01A53302

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   29

<u>Turner v. Johanns</u>, EEOC Denial of Request for Reconsideration Upholding Fairness of Basu Agreement, *available at* 2005 W.L. 1903666 (upholding fairness of Basu Agreement)

                              E.E.O.C.

                   *1 Office of Federal Operations

                  JUNE TURNER, COMPLAINANT,
                             v.
       MIKE JOHANNS, SECRETARY, DEPARTMENT OF AGRICULTURE, AGENCY.
                    Request No. 05A50913
                     Appeal No. 01A53302
                     Agency No. 000190

                       July 19, 2005

                          DENIAL

 Complainant requested reconsideration of the decision in June Turner v. Department
of Agriculture, EEOC Appeal No. 01A53302 (May 3, 2005). EEOC Regulations provide
that the Commission may, in its discretion, grant a request to reconsider any previ-
ous Commission decision where the requesting party demonstrates that: (1) the appel-
late decision involved a clearly erroneous interpretation of material fact or law;
or (2) the appellate decision will have a substantial impact on the policies, prac-
tices, or operations of the agency. See 29 C.F.R. § 1614.405(b).

 After reconsidering the previous decision and the entire record, the Commission
finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it
is the decision of the Commission to deny the request. The decision in EEOC Appeal
No. 01A53302 remains the Commission's final decision. There is no further right of
administrative appeal on the decision of the Commission on this request.

          COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

 This decision of the Commission is final, and there is no further right of adminis-
trative appeal from the Commission's decision. You have the right to file a civil
action in an appropriate United States District Court within ninety (90) calendar
days from the date that you receive this decision. If you file a civil action, you
must name as the defendant in the complaint the person who is the official agency
head or department head, identifying that person by his or her full name and offi-
cial title. Failure to do so may result in the dismissal of your case in court.
"Agency" or "department" means the national organization, and not the local office,
facility or department in which you work.

              RIGHT TO REQUEST COUNSEL (Z1199)

 If you decide to file a civil action, and if you do not have or cannot afford the
services of an attorney, you may request that the Court appoint an attorney to rep-

        © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 1903666 (E.E.O.C.), EEOC DOC 05A50913
**(Cite as: 2005 WL 1903666 (E.E.O.C.))**

resent you and that the Court permit you to file the action without payment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

For the Commission:

**\*2** Carlton M. Hadden

Director

Office of Federal Operations

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   30

July 19, 2005 E-mail from Dr. Basu to Mr. Brammer of USDA's OGC
inviting him to a "[s]pecial [l]uncheon" to be held on July 28, 2005
sponsored by the Organization of South Asian Americans
in Agriculture to "honor and thank key individuals responsible for the
fair and equitable resolution of the Asian class complaint."

**BRAMMER, STEVEN**

| | |
|---|---|
| **From:** | "Arun Basu-NRCS-DCWASHING2"@HQDOMAIN.GW |
| **Sent:** | Tuesday, July 19, 2005 3:20 PM |
| **To:** | Sadhna True; STEVEN BRAMMER; ARLEAN LELAND; J Michael Kelly; James Little; Vernon Parker; Clyde Thompson; Bruce Knight; james.bradley@ars.usda |
| **Subject:** | Special Luncheon on July 28, 2005 |

This is just to give you a heads up for a special luncheon invitation on the above date in
Room 107-A, from 11:59 am to 01:31 pm. It is being sponsored by the Oragnization of South
Asian Americans in
Agriculture(OSAAA) to honor and thank key individuals responsible for the fair and
equitable resolution of the Asian class complaint.

Arun C. Basu
Historian, OSAAA

# EXHIBIT   31

Letter from Plaintiff to Mr. Brammer of USDA's OGC inviting him to special luncheon to be held on July 28, 2005 sponsored by the Organization of South Asian Americans in Agriculture to "specifically honor and thank the key individuals responsible for the fair and equitable resolution of the Asian class complaint."

# Organization of South Asian Americans
# in Agriculture



## OSAAA
### Executive Committee

*Dr. Kris Murthy, DVM*
*President*
*202-690-5646*

*Dr. T.V.Rao Jude*
*Vice-President*
202-720-3774

Kris Ramaraju
Secretary
202-690-0672

Dr. Bhabani Dey
Treasurer
202-690-2676

Dr.Arun Basu, Ph.D.
Historian
202-690-4860.

Mr. Steven Brammer
Civil Rights Division
Office of General Counsel, USDA
1400 Independence Avenue, SW,
Washington, D.C. 20250

Dear Mr. Brammer:

This is to cordially invite you to attend a Special Luncheon on July 28, 2005, at Room 107-A, from 11:59 a.m. to 1:31 p.m. The luncheon is sponsored by the Organization of South Asians Americans in Agriculture (OSAAA) to specifically honor and thank the key individuals responsible for the fair and equitable resolution to the Asian class complaint. The Asian employees recognize that without the sustained effort by some individuals with the support and approval of this Administration, this success would not have been possible.

Please join us so we can thank you appropriately.

Sincerely Yours

Kris Murthy, DVM
President

Mr. Steven Brammer
Civil Rights Division, OGC, USDA
1400 Independence Ave
Washington, D.C. 20250

# EXHIBIT   32

Declaration of Steven C. Brammer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. KRISHNA MURTHY,

    Plaintiff,

      v.                                              Civil Action No. 06-2208 (RJL)

CHUCK CONNER, ACTING
    SECRETARY, U.S. DEPARTMENT
OF AGRICULTURE,

    Defendant.

---

## DECLARATION OF STEVEN C. BRAMMER

    I, Steven C. Brammer, based on information obtained by me as an employee of the United States Department of Agriculture ("USDA") in Washington, D.C., do hereby declare:

    1.  I have been an employee of the USDA for approximately six and a half (6 ½ ) years and have been consistently employed as an Attorney-Advisor for the Civil Rights Division, Office of the General Counsel ("OGC").  My duties include, but are not limited to, defending the Secretary in administrative complaints of employment discrimination and in administrative complaints alleging discrimination in the administration of USDA's various programs.  I also assist the Department of Justice in defending employment discrimination complaints filed against USDA in Federal district court.  I also provide training in civil rights matters to employees and supervisors at USDA.

    2.  I was one of several attorneys in the Division assigned to assist in the attempted resolution of the administrative nation-wide employment discrimination class action, Basu, et al. v. USDA, EEOC No. 100-A1-7863X, Agency No. 000190, pending before the U.S. Equal

Employment Opportunity Commission ("EEOC" or "the Commission"), Washington Field Office.

3. On November 18, 1999, USDA employee Dr. Arun Basu filed a formal administrative complaint of employment discrimination on behalf of a proposed class of Asian/Pacific Islander employees of USDA at any grade level who, between February 1994 and the present, had: (1) applied for a promotion; (2) been detailed to a different position; (3) been demoted to a lower position; (4) been stripped of managerial duties and responsibilities; (5) had not been selected for a position with managerial duties or responsibilities; (6) had been subjected to reprisal for filing a complaint(s); (7) had filed a discrimination complaint that had not been resolved; or (8) been terminated from their positions, and thereafter filed a discrimination complaint.

4. In October 2003, USDA and the class agents entered into a Settlement Agreement resolving the Basu class action ("Basu agreement"). See, Ex. 2, Basu agreement. For purposes of the settlement agreement, the class was defined as "'[a]ll current Asian/Pacific Islanders employees at the GS-7 level and above who were eligible for but have not received promotions and all Asian/Pacific Islander current employees who were eligible for and have applied for positions with the Department but have not been selected." See Ex. 2, Basu agreement at 2-3, ¶ 4; Compl. ¶ 7.

5. USDA committed in the Basu agreement to provide several forms of injunctive relief, which were to be in effect for a period of three years. Specifically, USDA agreed to the following: (1) to create a Development Opportunity Placement Program ("DOPP") to provide opportunities for all eligible and qualified employees to serve on details, receive temporary promotions, or participate in developmental assignments where there may be staffing shortages

in headquarters and field office locations; (2) to create a Graduate Scholarship Program to provide funding for graduate school, and to hold an Agency-wide Job Fair at four regional locations for employment in job categories where the Agency's Asian/Pacific Islander population is statistically under-represented; (3) to review, update, and issuance of an Agency-wide Affirmative Employment Plan ("AEP") to ensure that all appropriate issues related to Class Members are addressed, and the assurance that Departmental sub-agencies have current and comprehensive AEPs, as well; (4) to provide updated individual development plans at the request of Class Members and (5) to undertake employment compliance reviews for sub-agencies showing statistical under-representation of Asian/Pacific Islander employees. See, Ex. 2, Basu agreement at 5, 7-13, §§ B.1, IV.B, IVD., VI.1-VI.5.

6. For purposes of individual relief, the class was divided into four tiers. See Ex. 2, Basu agreement at 13-14, §§ VII.A-VII.D.

7. Tier One was comprised of six Class Agents whose claims would be separately resolved by the Agency. See Ex. 2, Basu agreement at 13-14, § VII.A.

8. Plaintiff was one of six Class Agents separately listed in Tier One of the Basu agreement as receiving separate monetary and injunctive relief. See Ex. 2, February 17, 2004 Letter to Plaintiff; see also Ex. 4, December 7, 2004 Decision Granting Final Approval of Settlement Agreement at 4.

9. Tier Two was comprised of the remaining 22 Class Agents, who would receive different relief under the Basu agreement. Specifically, the members of Tier Two would share in a lump sum payment of $372,500, to be distributed at their discretion, along with two former Class Agents who are not included in the Basu agreement because they previously signed

3

settlement agreements resolving their individual complaints of employment discrimination. See Ex. 2, Basu agreement at 14, § VII.B. The Basu agreement provides that each of the five Tier Two class Members with pending administrative complaints will receive attorney's fees not to exceed $25,000, and that two Tier Two Class Agents with Federal district court complaints will receive all attorney's fees. See Ex. 2, Basu agreement at 15, § VII.E.

10. Tier Three was comprised of individuals with pending administrative complaints subsumed by the Class Action and two individuals with complaints pending in Federal district court. The Basu agreement provided for different relief for each of these two groups of Tier Three individuals. Specifically, the Tier Three individuals with pending administrative complaints subsumed by the Class Action will be afforded the option of either accepting a lump sum of $5,000, or participating in an expedited hearing on their individual complaints, along with an entitlement to injunctive relief. See, Ex. 2, Basu agreement at 14, § VII.C. The two Tier Three individuals with pending Federal district court complaints will receive a lump sum payment of $7,500 and attorney's fees. See Ex. 2, Basu agreement at 14, § VII.C. Tier Four was comprised of those Class Members who do not have pending individual complaints of employment discrimination subsumed by the Class Action. See Ex. 2, Basu agreement at 14, § VII.D. The Agreement provides that these individuals would be entitled to certain specified injunctive relief.

11. The Basu agreement explicitly provided that "[a]ny [c]lass [a]gent or [c]lass [m]ember who, at the [e]ffective [d]ate, has a pending formal individual EEO complaint of discrimination on the basis of race or national origin as to non-selection or promotion must withdraw his or her EEO complaint within fifteen (15) days of the Effective Date of this

Agreement." <u>See</u> Ex. 2, <u>Basu</u> agreement at 5-6, § III, ¶ A.1.  The <u>Basu</u> agreement further

provided that "[a]ny [c]lass [a]gent or [c]lass member who, at the Effective Date of this

agreement, has a pending Federal District Court complaint or appeal in a Federal Circuit Court of

Appeals on the basis of race or national origin as to non-selection or promotion must show proof

of withdrawal of the complaint . . . or withdrawal of the appeal . . . within fifteen (15) days of the

Effective Date of this Agreement."  Id. at 6, ¶ A.2.

     12.  The <u>Basu</u> agreement also set forth procedures to be followed in the event that any

party to the agreement concluded that another had failed to perform its obligations under the

agreement.  <u>See</u> Ex. 2, <u>Basu</u> agreement at 15-17, § VIII (which is entitled "Enforcement"), ¶¶ A-

G.  The <u>Basu</u> agreement provided that first, "[a] party claiming failure to comply with the

provisions of this [a]greement at any time during its term will give written notice of the claim to

the Department Liaison and will propose a resolution of the issue" and "[a]t least five (5)

calendar days prior to the written notice, the Party claiming non-compliance shall orally inform

opposing counsel of the intended claim."  <u>See</u> Ex. 2, <u>Basu</u> agreement at 15, § VIII, ¶ A.  Second,

"the responding [p]arty will have thirty-five (35) calendar days following receipt of the written

claim to respond, unless this period is enlarged by agreement of the [p]arties."  <u>See</u> <u>id</u>. at 15,

§ VIII, ¶ B.  Third, "[i]f the [p]arty asserting the claim is dissatisfied with the other [p]arty's

response or proposed resolution, or no response or proposed resolution is forthcoming within the

stated time period, the [p]arty asserting the claim may submit the issue in writing to the

Department Liaison for his/her consideration and recommendation," and that the "Department

Liaison shall issue to the Assistant Secretary for Civil Rights a tentative report and

recommendation, if any, within thirty-five (35) calendar days of receipt of the claim, unless the

5

time is extended by the [p]arties or by the Department Liaison." See id. at 15-16, § VIII, ¶ C.

Fourth, "[i]f a [p]arty wishes to object to the tentative report and recommendation of the

Department Liaison, it must notify the other [p]arty of its intent to file an objection, must meet

and confer with the other [p]arty, and must lodge the objection in writing with the Assistant

Secretary for Civil Rights and the other [p]arty within twenty-one (21) calendar days of the

issuance of the tentative report and recommendation." See id. at 16, § VIII, ¶ D. Fifth, "[t]he

Assistant Secretary for Civil Rights shall issue a ruling on the objection and issue a final report

and recommendation within thirty five (35) calendar days of the filing of the objection, unless the

time is extended by agreement of the [p]arties or by the Assistant Secretary for Civil Rights."

See id. at 16, § VIII, ¶ D. Sixth, "[t]he [p]arties shall be afforded a reasonable time to achieve

compliance with the Assistant Secretary for Civil Rights' final report and recommendation." See

id. at 16, § VIII, ¶ E.

13. Plaintiff was not entitled to a promotion to a GS-15 position under the Basu

agreement. See Ex. 2 at 17, § VIII, ¶ G (emphasis added); see also Ex. 2, (February 17, 2004

Letter, Notice of Proposed Settlement); Ex. 19; see also 2006 W.L. 2387919 (Aug. 10, 2006).

14. On November 17, 2003, the parties to the Basu class action submitted the proposed

settlement agreement and a Joint Motion for Approval of Settlement Agreement to the presiding

EEOC Administrative Judge ("AJ").

15. On January 21, 2004, the presiding AJ, Andrew Culbertson, granted preliminary

approval of this proposed Settlement Agreement. See Ex. 1, January 21, 2004 Order in Basu, et.

al. v. Veneman, EEOC No. 100-A1-7863, Agency No. 000190 ("Basu Jan. 24, 2004 Order").

6

16.  In his order, AJ Culbertson instructed that "[p]ursuant to 29 C.F.R. § 1614.204(g)(4) (2004), the Agency shall, consistent with the manner proposed in the motion, notify all class members of the resolution of the above-captioned [case] within ten (10) days of the date of this Order," and observed that the "the motion [had] propose[d] that certain identified class members will be provided notice by regular mail, and that notice will also be posted on the Agency's website and in appropriate Agency bulletins." Id. at 1.

17.  AJ Culbertson explained that "[i]f the undersigned [Administrative Judge], after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole, he will issue a decision to that effect which will thereby make the resolution binding on all class members." Id. at 1-2.

18.  The order required the parties to modify provision six of the proposed Basu agreement to provide, in part, that "[w]ithin 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents, or is otherwise not fair, adequate and reasonable to the class as a whole," and to describe the process that would be followed if any such petitions were timely filed.  See id. at 2 (emphasis added).

19.  On January 27, 2004, the AJ issued an order granting the Joint Motion that the parties had filed on January 26, 2004, and granting preliminary approval of the revised notice of resolution.  See Ex. 1, January 27, 2004 Order Approving Notice of Settlement.

20.  The January 27, 2004 order instructed that the Agency shall, consistent with the manner proposed in the motion, notify all class members of the resolution of the above-captioned [case] within twenty (20) days of the date of this Order (mailing should be postmarked within

7

that time frame)" and noted that the "the motion [had] propose[d] that certain identified class

members will be provided notice by regular mail, and that notice will also be posted on the

Agency's website and in appropriate Agency bulletins." See id. at 1, n. 1.

    21.  On February 17, 2004, OGC sent a letter to the Plaintiff, Dr. Krishna Murthy,

notifying him of "the proposed settlement agreement signed by USDA and the Class Agent Arun

Basu on behalf of himself and the Class Members." See Ex. 2, February 17, 2004 Letter from

Arlean Leland, Associate General Counsel of USDA's OGC's Civil Rights Division, to Dr.

Krishna Murthy.

    22.  The February 17, 2004 letter explained that the parties determined that his claims fell

"within Tier One of the proposed Settlement Agreement." Id.  Accordingly, the letter advised

that:

> . . . it is proposed that you will receive the following for settlement of pending
> claims of employment discrimination:
> a.    Forty Thousand Dollars ($40,000) as compensatory damages, inclusive of
>     any and all pecuniary and non-pecuniary damages;
> b.    Advancement to a GS-14, Step 10, and reassignment to a GS-0701-14
>     Veterinary Medical Officer, Office of Program and Policy and Policy
>     Development, New Technology Staff;
> c.    Office of Personnel Management Leadership Training to be determined
>     within 60 days of a signed settlement agreement; and
> d.    Reasonable attorney's fees to be paid according to Section VII E of the
>     proposed settlement Agreement.

See id.

    23.  The letter further indicated that "[o]ther details regarding the Settlement Agreement,

including injunctive relief and information about how to contact Class Counsel or the

Administrative Judge is attached in Notice required by the U.S. Equal Employment Opportunity

Commission ("EEOC") under 29 C.F.R. § 1614.204(e)." Id.

24. The February 17, 2004 letter was mailed with two enclosures: (1) a document captioned "Notice of Settlement," and (2) a signed copy of the settlement agreement in the Basu class action, dated October 21, 2004. See Ex. 2 (Notice of Settlement).

25. The Notice of Settlement informed all recipients that "[y]ou are hereby notified that you have been identified as a potential Class Member in the above mentioned Class Complaint," the Basu class action. See id.

26. The Notice also included: (1) the name of the agency and its location; (2) a description of the issues accepted as part of the Class complaint; (3) an explanation of the "binding nature of the resolution of the complaint on Class Members"; (4) a description of the scope of individuals included in the Settlement Class and the terms of the settlement, including individual and injunctive relief to be afforded each of the four tiers under the Settlement Agreement; and (5) contact information for counsel for both parties. See Ex. 2, Notice of Settlement at 1-5.

27. With regard to the individual relief to be provided to the members of Tier One, the Notice explained that "[t]he Parties agree that the Six (6) Class Agents listed in Exhibit 1 have individual claims of employment discrimination which shall be resolved by the Terms of Individual Settlement Agreements," and noted that the "[o]ffer of [r]elief" to the members of this tier would consist of "[i]ndividual [a]greements sent to individual Class Members, and injunctive relief." Id. at 3.

28. The Notice cautioned that the Settlement Class Members had two options:

A.      You may do nothing and you will remain a Class member and be both entitled to and bound by the terms of equitable and injunctive relief set out in the Settlement if it is approved under 29 C.F.R. § 1614.204(g).

9

B.    You may object to the Settlement, if you follow the instructions for Fairness Hearing and Process for Objections that is set forth below.

Id. at 4 (emphasis added).

29. Concerning this second option, the Notice explained the following:

6.    Fairness Hearing and Process for Objections
Within 30 days of the date of the notice of resolution, any member of the class may petition the undersigned Administrative Judge to vacate the proposed resolution because it benefits only the class agents or is otherwise not fair, adequate and reasonable to the class as a whole. Petitions are to be filed with Administrative Judge Andrew Culbertson, at 1400 L Street, N.W., Suite 200, Washington, D.C. 20005. In the event the Administrative Judge determines that there are legitimate questions raised concerning the fairness, adequacy, or reasonableness of the resolution, a Fairness Hearing will be scheduled to address those questions. If the Administrative Judge, after reviewing any petitions that are filed, determines that the resolution is fair, adequate, and reasonable to the class as a whole, he will issue a decision to that effect which will thereby make the resolution biding on all the class members.

See id. at 5, ¶ 6.

30. I sent the February 17, 2004 letter, and the enclosed Notice of Settlement and copy of the October 31, 2003 Settlement Agreement, to Plaintiff via U.S. mail and also via FedEx with confirmation of receipt. See Ex. 2, Shipping Label and February 18, 2004 E-Mail from Fed Ex to Steven Brammer of USDA's OGC. The FedEx confirmation information indicates that this material was delivered to Plaintiff on February 18, 2004, and that the package was signed for. Id. Thus, on that date, Plaintiff was provided with notice of the proposed settlement and how to object, and was provided with a copy of the Basu agreement itself.

31. All six Tier One members were provided this Notice via regular U.S. mail, and via FedEx. Other Tier members were notified solely by regular U.S. mail.

10

32. On April 1, 2004, Associate General Counsel Arlean Leland was provided a copy of an e-mail referencing the "recent OSAAA Class Action Settlement by USDA/EEOC," as well as an e-mail response from Virginia C. Lewis of USDA.  Plaintiff was a recipient of this e-mail discussing the Basu Settlement in April of 2004.  See Ex. 3.

33. Ten objections were ultimately filed with EEOC Administrative Judge ("AJ") Culbertson by the following Class Members: Jamshyd Rasekh, Jess Rajan, Kunapuli Madhusudhan, Muhammad Chaudry, Emiko Purdy, Fazal Rahman, Mon Yee, Robert Tse, Clemen Gehrlan, and Abdul Sadiq.  See Ex. 4, Decision Granting Final Approval of Settlement Agreement at 2, n. 1.  Plaintiff was not among the Basu class members who filed objections at that time.  See id. at 2, n.1.

34. The objections filed with AJ Culbertson complained, among other things, that "the class agents were getting too much relief and/or that class members in the lower tiers of the Agreement were not getting enough; [that] the Agreement does not explicitly identify the relief being received by certain class agents" and that the Agreement was "unclear" about "how certain relief was to be allocated."  See id. at 2, n. 1.

35. On December 7, 2004, AJ Andrew Culbertson issued a decision granting final approval of the Settlement Agreement.  See Ex. 4.

36. In his decision, after summarizing the procedural history of the Basu agreement and stating that he carefully considered the relief afforded the various class members under the Basu agreement and the written objections, AJ Culbertson concluded "that the Basu Agreement is "fair, adequate, and reasonable to the Class as a whole" and he found "no basis for vacating the Settlement Agreement."  See id. at 12.  He approved the form, content, and method of

11

distribution of notices of the <u>Basu</u> agreement. <u>See</u> Ex. 4 *generally*. Accordingly, AJ Culbertson granted final approval to the Class, and ruled that the resolution would bind all members of the Class. <u>Id</u>. at 12.

37. AJ Culbertson noted in his opinion that Plaintiff, Dr. Krishna Murthy, was among six Class Agents who belonged to Tier One and outlined the specific relief Plaintiff would receive under the <u>Basu</u> agreement. <u>Id</u>. at 4-5.

38. AJ Culbertson also addressed and rejected the objections that had been lodged by other individuals, but not by Plaintiff, who had wholly failed to object. <u>See id</u>. at 9-10. With specific respect to the issue of whether the relief afforded the Tier One Class Agents was fair, AJ Culbertson noted that "every Class Member was aware of the relief that s/he is entitled to under the Agreement," and "[t]herefore, if a Class member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief." <u>Id</u>. at 10.

39. On May 25, 2005, USDA's OGC sent Plaintiff a letter stating that, "[i]n February 2004, you were . . . notified of the proposed Settlement Agreement signed by [USDA] . . . and Lead Class Agent Arun Basu," and informing him that the EEOC's Administrative Judge had "approved the Settlement Agreement, finding it fair, adequate, and reasonable to the class as a whole." <u>See</u> Ex. 5, May 25, 2005 Letter.

40. The May 25, 2005 letter further advised Plaintiff that "the full Commission recently ruled on four purported appeals of the Administrative Judge's fairness determination" and had "affirm[ed] the Administrative Judge's determination." <u>Id</u>. In addition, the letter explained to Plaintiff that "[y]ou were identified as falling within Tier One of the proposed Settlement Agreement" and that, "[a]s a result, you will be entitled to injunctive relief as described in the

Settlement Agreement, and will receive the following individual relief for withdrawal of all pending claims of employment discrimination." See id. at 1-2 (describing the individual relief Plaintiff would receive under the Basu agreement).

41. Enclosed with the letter was a copy of the individual settlement agreement between Plaintiff and USDA. See Ex. 5, May 25, 2005 Letter; see also Ex. 5, Settlement Agreement between Plaintiff and USDA. Plaintiff was instructed in the letter to "execute this Agreement, with your attorney, and have it returned to the OGC . . . by June 1, 2005." See Ex. 5, May 25, 2005 Letter at 2.

42. However, Plaintiff never executed an individual settlement agreement. Instead of pursuing the procedures set forth in the Basu agreement available to class members who wished to challenge actions alleged to be in non-compliance with the Basu agreement, beginning in or around June 2005, Plaintiff, in person and via phone, e-mail, and letters, attempted to convince USDA officials that the Basu agreement was unfair to him, had not been implemented as written, and should be modified or overturned, outside of the procedures outlined in the Basu agreement.

43. Plaintiff was timely provided with the $40,000 and the promotion to GS-14, Step 10 provided for under the Basu agreement. See Ex. 17 (May 4, 2006 Letter to Plaintiff) at 3. USDA has complied with the provisions of the Basu agreement. See Ex. 17; Ex. 20, USDA Compliance Report to EEOC; Ex. 11 at 1.

44. Several individuals who objected to AJ Culbertson's ruling on the fairness of the Basu agreement appealed to the EEOC's Office of Federal Operations ("OFO"). All of the administrative appeals alleging that the agreement was unfair were resolved by the EEOC by upholding the terms of the Basu agreement. See, e.g., Ex. 4 (December 7, 2004 AJ's decision);

13

Ex. 25, Rahman v. Johanns, EEOC Appeal No. 01A5527, *available at* 2005 W.L. 113052 (May

3, 2005) (upholding fairness of Basu Agreement); Ex. 26, Sadiq v. Johanns EEOC Appeal No.

01A52528, *available at* 2005 W.L. 1130061 (May 3 2005), available (same); Ex. 27, Purdy v.

Johanns, EEOC Appeal No 01A52042, *available at* 2005 W.L. 1130125 (May 3, 2005) (same);

Ex. 28, Turner v. Johanns EEOC Appeal No. 01A533302, *available at* 2005 W.L. 1130057 (May

3, 2005) (same); Ex. 29, Turner v. Johanns, EEOC Denial of Request for Reconsideration

Upholding Fairness of Basu Agreement, *available at* 2005 W.L. 1903666; Ex. 19 (OFO

decisions in Complaint No. CRSD-CF-2006-00219 and EEOC Appeal No. 01A63143)

45.  On or about June 10, 2005, James P. Hood, the Class Counsel for the Basu action,

informed USDA's OGC that Plaintiff was the only one of the Tier One  members who desired to

pursue complaints of discrimination filed after September 2, 2003.  See Ex. 6, Letter dated June

13, 2005 from Steven Brammer to Mr. Hood.  It was USDA's understanding at that time that

Plaintiff intended to resolve those claims subsumed by the Basu agreement which were pending

as of September 2, 2003.  Id.

46.  In an exchange of e-mail messages, on June 15, 2005 and June 16, 2005, USDA's

OGC confirmed that Plaintiff was available to receive and review a newly-revised individual

agreement resolving his employment discrimination complaints subsumed by the Basu class

action.  See Ex. 7.

47.  On July 19, 2005, I received an email message from Dr. Arun Basu, in his capacity as

Historian for the Organization of South Asian Americans in Agriculture ("OSAAA"), a 501(c)

non-profit organization.  Ex. 30.  This email message stated that on July 28, 2005, OSAAA

14

would be sponsoring a "Special Luncheon" to "honor and thank key individuals responsible for the fair and equitable resolution of the class complaint." Id.

48.  Prior to July 28, 2005, I received an invitation from Plaintiff, President of OSAAA, to attend this special luncheon to "specifically honor and thank the key individuals responsible for the fair and equitable resolution of the Asian class complaint." See Ex. 31. The OSAAA letterhead also lists Dr. Bhabani Dey as OSAAA Treasurer and Dr. Arun Basu as Historian. Plaintiff, Dr. Dey, and Dr. Basu are all Tier One members under the Basu agreement. In July of 2005, Plaintiff authored a letter describing the terms of the Basu agreement as fair and equitable.

49.  Plaintiff sent a letter dated September 22, 2005 to Kevin McGrath (the Branch Chief of USDA's FSIS's Complaint Management Branch and the Agency Liaison for the Basu Class Complaint).

50.  In this letter, Plaintiff complained that he supposedly had received inequitable relief under the Basu agreement inasmuch as he had not been selected for a Departmental Liaison position which would have resulted in his being promoted from GS-14 to GS-15, whereas other members of Tier One had received grade promotions. See Ex. 9, September 22, 2005 Letter. Plaintiff also represented that "details of individual class settlements were kept confidential throughout negotiation, approval and during implementation" and alleged that, "from the very beginning[,] the terms of the settlement were kept confidential and no information was given by Class agent, OCR representative, or the class complaint lawyer to me." Id. at 1. Plaintiff also asserted in that letter that USDA had breached some provisions of the Basu agreement. Id. at 2.

51.  Plaintiff raised concerns regarding the Basu agreement in three separate letters addressed to Vernon Parker, the Assistant Secretary for Civil Rights, on September 29, 2005,

October 5, 2005, and October 21, 2005. See Ex. 9, September 29, 2005, October 5, 2005, and

October 21, 2005 Letters.

    52. At no point in this string of correspondence did Plaintiff allege that he had not

received notification of proposed relief under the proposed Basu settlement in February 2004.

See Ex. 9.

    53. By letter dated October 3, 2005, Mr. McGrath responded to Plaintiff's September 29,

2005 letter. See Ex. 10. Mr. McGrath there noted that he was "unable to find any part of the

agreement that provides for your being promoted to a higher grade" and that "since the settlement

agreement was approved by the respective parties, their representatives and the Administrative

Judge . . . , we are unaware of any authority to alter the specific terms of the agreement." Id. Mr.

McGrath further advised Plaintiff that "[i]f you believe the settlement agreement is not being

implemented correctly," he should "contact Mr. James Hood, Esq., Class Counsel." Id.

    54. In an October 24, 2005 letter, Sadhna G. True, the Director of USDA's Office of

Civil Rights replied to Plaintiff's inquiries to the Assistant Secretary for Civil Rights. See Ex.

11. First, Ms. True advised that "[t]he Office of the Assistant Secretary for Civil Rights . . .

played no role in determining the individual relief that would offered to class members" and

accordingly recommended that Plaintiff contact his representative and/or the Office of the

General Counsel concerning his concerns about the individual relief under the Basu agreement.

See Ex. 11 at 1. Second, Director True explained that, notwithstanding his allegations to the

contrary, USDA had in fact fully implemented of the Basu agreement and he was not eligible for

the Departmental Liaison position. Id at 1. Finally, the letter informed Plaintiff that if he

"believe[d] that the [USDA] had failed to perform its obligations under the [s]ettlement

16

[a]greement, then you must follow the procedures for enforcement set forth in the [a]greement, section VIII." Id. at 2. As she noted, the "first step" in that process would be to "provide verbal notice of the claim of non-compliance to the Departmental Liaison" which "must propose resolution of the issue" and "[a]fter the written notice of non-compliance is received, the Department [would] have 35 calendar days to respond" and that subsequently, if necessary, "additional procedures [would be] available for pursuing the claim of non-compliance." Id. at 2.

55.   On January 5, 2006, Plaintiff met with me, the Assistant General Counsel of USDA's OGC/Civil Rights Litigation Division, another USDA OGC attorney, and Class counsel.  During that meeting, he alleged that he had not received notice of the proposed terms of Basu agreement in February 2004. See, e.g., Ex. 13, February 1, 2006 Letter from USDA's OGC to Plaintiff (summarizing the participants, and matters discussed and resolved, at that meeting).  During that meeting, all attendees agreed that Plaintiff was not raising a claim of non-compliance with the Basu agreement, but was raising concerns in an attempt to reach resolution. Id.

56.   On January 17, 2006, Plaintiff sent a letter to Arlean Leland, USDA's OGC's Associate General Counsel for Civil Rights, in which he expressed dissatisfaction with the response he had received on October 24, 2005 from Ms. Sadhna True. See Ex. 12. In a February 1, 2006 letter, USDA's OGC responded in considerable detail to the January 17, 2006, letter. See Ex. 13, February 1, 2006 Letter.

57.   On February 7, 2006, Plaintiff sent me an e-mail message, in which he claimed that the written responses he had received in the February 1, 2006 letter to the issues he had raised during the January 15, 2006 meeting had been "evasive" and had "not addressed the issues." See Ex. 14. In this message, he demanded "written proof" that he received a copy of the proposed

17

Settlement Agreement in February 2004. Id. In a letter dated March 3, 2006, OGC responded to Plaintiff's concerns yet again. See Ex. 15.

58. Plaintiff then sent a letter dated March 24, 2006 to this letter to USDA's OGC's Associate General Counsel for Civil Rights in which he responded to this March 3, 2006, letter from USDA's OGC. See Ex. 16.

59. On May 4, 2006, OGC sent a final letter to Plaintiff which noted that members of USDA's OGC had "gone above and beyond all responsibilities to [Plaintiff]" by: "responding to [his] previous concerns in two comprehensive letters dated February 1, 2006 and March 3, 2006," meeting with Plaintiff "no less than five (5) times in person over the past eight (8) months to listen to [his] individual concerns," and "repeatedly revis[ing]" his "individual settlement agreement to meet [his] specific requests," by "facilitating a meeting with management of [FSIS] to present [his] proposal for resolution of complaints falling outside the scope of the Basu . . . [a]greement," and by "respond[ing] to numerous telephone inquiries and electronic mail requests." See Ex. 17 at 1.

60. The letter again reminded Plaintiff that he had received notice of the proposed Basu agreement and his rights to object in February 2004, but had failed to timely object. Id. at 2.

61. It noted that the EEOC AJ had approved the form, content, and method of distribution of notices of the Basu agreement. Id. at 2.

62. Finally, the letter addressed in detail the various ways in which USDA had implemented the various provisions of the Basu agreement (including the provisions concerning Plaintiff's individual relief), and reminded Plaintiff that he had failed to follow the procedures set

18

forth in the agreement for challenges by class members to compliance with the agreement. Id. at 2-4.

**Employment Discrimination Complaints Filed by Plaintiff.**

**A.     The Procedural History of Agency Complaint No. CRSD-CF-2006-00219**

63.  An EEO Counselor's report indicates that between February 4, 2006 and March 6, 2006, Plaintiff engaged in EEO counseling concerning his allegations that "he ha[d] been denied a promotion to GS-15 as a part of the [Basu agreement] . . . (under the Tier One portion) . . . and that [the Class Representative] Mr. Sait was not timely in providing him information that he should have received as a result of the settlement agreement." See Ex. 18, EEO Counseling Report at 2.

64.  He claimed during this counseling that he had heard "[o]n November 28, 2005" that he was not going to be selected for this position and claimed that he had been discriminated on the bases of age, religion, and reprisal. Id.

65.  On March 6, 2006, USDA's Office of Civil Rights notified Plaintiff that he was entitled to file a formal EEO complaint within 15 days of his receipt of the letter. See Ex. 18 (Notice of Right to File).

66.  On March 10, 2006, Plaintiff filed formal administrative complaint of employment discrimination CRSD-CF-2006-00219, alleging discrimination on the bases of religion, age, and reprisal. See Ex. 18, Complaint of Employment Discrimination.

67.  On May 12, 2006, the Agency issued a Final Agency Decision. See Ex. 18 (Final Decision in CRSD-CF-2006-00219). In its decision, the Agency dismissed the complaint, pursuant to 29 C.F.R. § 1614.107(a)(1). Id.

19

68.  The Agency explained that "[t]he EEO complaint process contained in 29 C.F.R. § 1614.105 through 29 C.F.R. § 1614.110 is <u>not</u> the proper process to resolve breach claims that do not allege a subsequent act of discrimination" and "[t]herefore, this breach claim is dismissed in accordance with 29 C.F.R. § 1614.1079(a)(1) for failure to state a claim and will not be referred for investigation." <u>Id</u>. at 4 (emphasis added).

69.  Plaintiff subsequently filed an appeal of the Agency's dismissal to the EEOC's appellate body, the Office of Federal Operations ("the OFO"). On August 10, 2006, the OFO issued a decision. <u>See</u> Ex. 19 (Aug. 10, 2006 decision); <u>see also</u> 2006 W.L. 2387919.

70.  In summarizing Plaintiff's claims, the OFO noted that Plaintiff had claimed: (1) that USDA "breached the settlement agreement when he did not receive a promotion to a GS-15 position"; (2) that "the agency did not provide him the OPM leadership training as specified in the agreement"; and (3) that the "agency did not create the [Development Opportunity Placement Program] pilot as specified in the agreement." <u>See</u> Ex. 19 (Aug. 10, 2006 decision) at 3; 2006 W.L. 2387919, *3.

71.  The OFO ruled that "the agency is correct in its assertion that a breach of settlement claims is not treated as a separate complaint of discrimination and subject to processing under <u>29 C.F.R. § 1614.105 <i>et. seq.</i></u>" and "is also correct in noting that the class complaint set forth specific procedures for enforcement." <u>See</u> <u>id</u>.

72.  The OFO explained that "for the purposes of efficiency" it had decided to address Plaintiff's breach claims in its decision. <u>Id</u>. The OFO rejected the first of Plaintiff's contentions, observing that "the agreement <u>did not provide</u>" that he "<u>would be promoted to the GS-15 level</u>" and "[t]hus, such a claim is beyond the scope of the agreement." <u>Id</u>. (emphasis added).

20

73. However, the OFO remanded the issues of non-compliance involving (1) providing Plaintiff OPM leadership training pursuant to the Basu Settlement Agreement; and (2) the creation of a Development Opportunity Placement Program under the Basu agreement, and instructed USDA to provide documentation showing whether it provided Plaintiff with OPM leadership training and provide documentation showing whether it complied with the creation of DOPP as required by the Basu Settlement Agreement. See Ex. 19 (Aug. 10, 2006 decision) at 4; 2006 W.L. 2387919, *4.

74. On September 22, 2006, the OFO denied Plaintiff's request for reconsideration of its August 10, 2006 decision. See Ex. 19 (Sept. 22, 2006 decision); see also 2006 W.L. 2792480. On November 27, 2006, I timely provided the requested compliance report to EEOC's Compliance Officer. See Ex. 20, USDA Compliance Report to EEOC. This Compliance Report provided clear documentation that the Agency provided Plaintiff with OPM leadership training in accordance with the Basu agreement, and that USDA had complied with the creation and implementation of the DOPP as specified by the Basu agreement.

**B.    The Procedural History of EEOC Appeal No. 01A63143**

75. Plaintiff also filed an appeal with the OFO, in which he (1) stated "that he was not given notice of the proposed [Basu] settlement agreement prior to approval of the agreement," (2) claimed that "he did not receive a copy of his individual award on February 17, 2004" but only in "May 2005," (3) asserted that "as a member of Tier 1, he was unfairly denied promotion as relief while other class agents in tier 1 received promotions under the agreement," and (4) complained about alleged conflicts of interest and collusion occurring with the settlement. See Ex. 19, August 9, 2006 OFO decision at 5; see also 2006 W.L. 2389432, * 4 (Aug. 9, 2006).

21

76. In an August 9, 2006 decision, the OFO refused to consider Plaintiff's objections to the settlement on appeal. In its decision, the OFO referenced and affirmed the Administrative Judge's December 7, 2004 ruling that the Basu agreement was fair, adequate, and reasonable to the class as a whole. See Ex. 19, August 9, 2006 OFO decision at 5-6; 2006 W.L. 2389432, * 5-6 (Aug. 9, 2006).

77. The OFO also noted that USDA had sent a Notice of Proposed Settlement along with a copy of the actual agreement to all current Asian/Pacific Islander employees who had claims subsumed within the class or who fell within the class definition (a group that included Plaintiff) and that USDA had posted the Notice of Proposed Settlement on its web site. Id.

78. The OFO noted that despite the fact that this Notice of Proposed Settlement had advised Plaintiff that he had 30 days to file objections to the fairness of the proposed agreement, but that Plaintiff "never filed an objection with the AJ challenging the terms of subject settlement in accordance with the regulation set forth in 29 C.F.R. § 1614.204(g)(4)." Id.

79. On September 28, 2006, the EEOC's OFO denied a request by Plaintiff that it reconsider its August 9, 2006 decision. See Ex. 19, September 28, 2006 OFO decision; see also 2006 W.L. 2851568 (Sept. 28, 2006).

C.    The Procedural History of Agency No. CRSD-CF-2005-02384

80. On August 17, 2006, after engaging in informal EEO counseling, Plaintiff filed another EEO Complaint (which was designated Complaint No. CRSD-CF-2006-02384). See Ex. 21, Complaint in CRSD-CF-2005-02384 (appears as exhibit 1 to Report of Investigation ("ROI") at p. 000011).

81. In it, he alleged that he had "applied for" the position of "Associate Deputy Administrator," a GS-401-14/15 position which had been advertised under Opportunity Identification Number "APHIS-06-DOPP-001," that he had not been selected for this position but another class agent had instead, and that USDA had discriminated against him on the basis of race (Asian), religion (Hindu), age (DOB: 04/13/47), and reprisal for prior EEO activity by not selecting him for this position. See id.; see also Ex. 21, ROI, at 000002, 000005; Acceptance Letter (appears as exhibit 2b to ROI, at p. 0000021).

82. On June 25, 2007, the EEOC Administrative Judge ordered that the complaint be dismissed "pursuant to Complainant [i.e., Plaintiff]'s withdrawal of his complaint by Motion dated June 14, 2007, wherein the Complainant stated he has elected to pursue his claim in federal court." See Ex. 21, June 25, 2007 Order of Dismissal.

### D.    The Procedural History of Agency Complaint No. NRCS-2006-02124

83. According to an EEO Counselor's Report, between April 10, 2006, and June 22, 2006, Plaintiff engaged in EEO counseling concerning a claim that "he was discriminated against based on his Religion (Hindu-Brahmin) when he was not provided information to file an appeal for the [Basu] Class Action Complaint and did not have the opportunity to send in a rebuttal which deprived him of promotion to GS-15 position." See Ex. 24, August 2006 EEO Counselor Report at 2.

84. On June 28, 2006, Plaintiff filed a formal EEOC Complaint concerning these claims (which was designated Complaint No. NRCS-2006-02124). See Ex. 22, Complaint of Employment Discrimination.

23

85. In this complaint, he alleged that the Agency had discriminated against him on the basis of race (Asian), religion (Hindu-Brahmin), age (DOB April 13, 1947) and had retaliated against him on the basis of former EEO activity when it allegedly failed to provide information which could have led to a GS-15 position and failed to provide information to him. Id.

86. On August 3, 2006, USDA's Office of Civil Rights acknowledged receipt of, and accepted and referred for investigation, the following claim: "[w]hether the agency subjected the complainant to discrimination based on race (Asian), religion (Hindu), age (DOB: 4/13/1947), and reprisal (prior EEO activity), when on March 7, 2006: (1) he was not selected for a position (position title, grade, and vacancy announcement number not specified); and (2) he was not provided information to file (not specified?)" See Ex. 23 (Acceptance letter, dated August 3, 2006).

87. Plaintiff was one of six employees of USDA in Tier One who received the greatest individual relief as a result of the settlement of the Basu class action, receiving more under the agreement than individuals in Tiers Two, Three, or Four.

24

88.  All of the foregoing is based on my personal knowledge and I declare, pursuant to 28

U.S.C. § 1746 and under penalty of perjury, that it is true and correct to the best of my

information and belief.

**EXECUTED** this 13th day of November, 2007.

STEVEN C. BRAMMER
Attorney-Advisor
Office of the General Counsel
Civil Rights Litigation Division
U.S. Department of Agriculture
1400 Independence Ave., SW
Washington, D.C.  20250-1400
202-720-4375