UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
DR. KRISHNA MURTHY,                           )
                                              )
          Plaintiff,                          )
                                              )
          v.                                  )          Civil Action 06-2208 (RJL)
                                              )
ED SCHAFER,                                   )
                                              )
          Defendant.                          )
_____)

### REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In his two-count Amended Complaint, Plaintiff asserts: (1) breach of contract claims arising out of a class action settlement agreement involving Defendant ("the Basu settlement agreement"); and (2) discrimination and retaliation claims relating to the Basu settlement agreement and Defendant's alleged refusal to promote him to a GS-15 position. For the reasons discussed in Defendant's opening brief, as well as those set forth below, jurisdiction over Plaintiff's breach of contract claims rests exclusively with the Court of Federal Claims. (See infra Part A.) Thus, those claims should be transferred to that court. (See id.) If, however, this Court decides not to transfer the breach of contract claims to the Court of Federal Claims, it should dismiss those claims on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies with respect to them; (2) Plaintiff failed to avail himself of his prior opportunity to challenge the Basu settlement agreement and is thus now bound by its terms; and (3) Defendant has provided Plaintiff all of the relief to which he is entitled under the Basu settlement agreement. (See infra Parts B.2, C-D.)

In addition, this Court should dismiss Plaintiff's discrimination and retaliation claims. The failure to promote claims should be dismissed because Plaintiff did not exhaust his administrative remedies with respect to them. (See infra Part B.1.) And, the claims relating to the Basu settlement agreement fail because, inter alia, the settlement agreement was adjudged to be "fair, adequate and reasonable" after Plaintiff was indisputably put on notice of its terms, and given a right to object to it. (See infra Parts C-D.)

## ARGUMENT

A.    Plaintiff's Breach of Contract Claims Belong in the Court of Federal Claims

In its opening brief, Defendant argued that: (1) Plaintiff's Amended Complaint primarily asserts breach of contract claims arising out of the Basu settlement agreement; (2) the value of Plaintiff's breach of contract claims plainly exceeds $10,000; (3) the Court of Federal Claims maintains exclusive jurisdiction over all breach of contract claims whose value exceeds $10,000; and therefore, (4) this Court should transfer Plaintiff's breach of contract claims to the Court of Federal Claims.[1] (See Def.'s Br. at 18-25.)[2] The transfer of Plaintiff's breach of contract claims to the Court of Federal Claims is clearly the correct result. See Greenhill v. Spellings, 482 F.3d 569, 573 (D.C. Cir. 2007) ("If [plaintiff] explicitly or in essence seeks money damages in excess of $10,000, jurisdiction rests exclusively with the Court of Federal Claims."); Rochon v. Gonzales, 438 F.3d 1211, 1214 (D.C. Cir. 2006) ("When [a] contract claim is for damages in excess of $10,000 . . . , the jurisdiction of the Court of Federal Claims is exclusive."). (See also

---

[1] Although Defendant argued for the outright dismissal of Plaintiff's breach of contract claims in its opening brief, it would not object to the transfer of those claims to the Court of Federal Claims. (See Pl.'s Opp'n at 11-12 (arguing for the transfer, rather than dismissal, of the breach of contract claims).) Citations in the form "(Pl.'s Opp'n at __)" refer to Plaintiff's Opposition to Defendant's Motion to Dismiss or for Summary Judgment.

[2] Citations in the form "(Def.'s Br. at __)" refer to Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment." Citations in the form "(Ex. __)" refer to exhibits attached to that brief.

Am. Compl. ¶¶10-12, 18, 29-30[3] & prayer for relief (asserting breach of contract claims whose value plainly exceeds $10,000).)

Nevertheless, in his opposition brief, Plaintiff makes a number of arguments as to why this Court should decide his breach of contract claims.  (See Pl.'s Opp'n at 10-13.)  Each is without merit.  Citing Rochon, 438 F.3d at 1215, Plaintiff first argues that because this Court "has jurisdiction over [his] Title VII discrimination and retaliation claims," it should "exercise supplemental jurisdiction over [his] breach of contract claim[s]."  (Pl.'s Opp'n at 11.)  For two reasons, this Court should decline to use Plaintiff's Title VII claims as a justification for exercising supplemental jurisdiction over his breach of contract claims.  First, as demonstrated in Defendant's opening brief and below (see, e.g., infra Parts B-D), Plaintiff has not asserted a single, viable Title VII claim.[4]  See Pourbabai v. Mineta, No. 04-1554, 2007 WL 2549230, at *1, *4 (D.D.C. Sept. 7, 2007) (declining to exercise supplemental jurisdiction over plaintiff's breach of contract claims where the non-contract-based claims were not viable).  Without a viable Title VII claim, there is no reason for this Court to exercise supplemental jurisdiction over Plaintiff's breach of contract claims.

---

[3] Paragraphs 29 and 30 of the Amended Complaint are incorrectly numbered.  They should be numbered as paragraphs 19 and 20.

[4] Plaintiff's Amended Complaint contains two Counts:  Count I alleges violation of Title VII, and Count II alleges breach of contract.  In Count I, Plaintiff asserts that Defendant discriminated and retaliated against him when it:  (1) denied him "promotion to grade 15 positions in June and August 2006"; and (2) provided him insufficient relief under the Basu settlement agreement and failed to inform him of his right to file an objection to that agreement.  (Am. Compl. ¶¶14-17.)  With respect to the non-promotion claims, Plaintiff failed to exhaust his administrative remedies.  (See infra Part B.1.)  And, the discrimination and retaliation claims relating to the Basu settlement agreement are precluded by the fact that the agreement was adjudicated to be "fair, adequate and reasonable" after Plaintiff was indisputably put on notice of it (and of the specific relief that he was to receive under it, and of his right to object to it).  (See infra Parts C, D.)

Second, even if Plaintiff's Title VII claims were viable (and they are not), the exercise of supplemental jurisdiction under Rochon would not be appropriate here.  Importantly, Rochon does not stand for the proposition that a district court should mechanically exercise supplemental jurisdiction over breach of contract claims whenever such claims are coupled with Title VII claims.  Rather, Rochon provides only that a district court faced with Title VII claims may choose to exercise supplemental jurisdiction over "'factually interdependent'" breach of contract claims.  Rochon, 438 F.3d at 1215 (quoting Schaffer v. Veneman, 325 F.3d 370, 373 (D.C. Cir. 2003)).  Presumably, district courts should be wary of exercising supplemental jurisdiction over breach of contract claims whose value exceeds $10,000 under Rochon given that Congress expressly gave the Court of Federal Claims exclusive jurisdiction over all such claims.[5]  See 28 U.S.C. § 1491(a)(1).  Here, there is no good reason why this Court should decide both Plaintiff's Title VII claims and his breach of contract claims.  Some of Plaintiff's Title VII claims are quite clearly factually distinct from his breach of contract claims.  (Compare Am. Compl. ¶17 (asserting Title VII claims arising out of Defendant's alleged refusal to promote Plaintiff to a GS-15 position in June and August 2006) with id. at ¶18 (asserting breach of contract claims arising out of the Basu settlement agreement, which was approved by an administrative law judge in December 2004).)  The rest of Plaintiff's Title VII claims fail unless it is determined that Defendant breached its obligations under the Basu settlement agreement.  (See id. at ¶17 (asserting Title VII claims based on Defendant's alleged breaches involving the Basu settlement agreement).)  At the very least, those latter claims should be stayed pending a decision by the

---

[5] That conclusion is reinforced by the fact that the Rochon court explicitly recognized that "the combination of a claim for equitable relief brought under Title VII and a related claim for breach of contract does not give the district court jurisdiction over the contract claim that, if brought separately, would be exclusively in the Court of Federal Claims."  438 F.3d at 1214 (emphasis added).

Court of Federal Claims—the Court with presumptive jurisdiction over breach of contract claims—as to whether Defendant breached its obligations under the <u>Basu</u> settlement agreement.[6]

Plaintiff also argues that this Court should decide his breach of contract claims because (1) those claims seek "primarily" non-monetary relief; and (2) the Court of Federal Claims lacks jurisdiction to award such relief. (Pl.'s Opp'n at 12.) Those arguments are without merit. <u>First</u>, the mere fact that Plaintiff's contract claims seek monetary relief means that they belong in the Court of Federal Claims. <u>See Bliss v. England</u>, 208 F. Supp. 2d 2, 7 (D.D.C. 2002) ("Because [plaintiff's] complaint specifically mentions monetary relief, the plaintiff in this case is subject to the Tucker Act.").[7] <u>Second</u>, the allegations in the Amended Complaint make clear that Plaintiff's breach of contract claims seek primarily monetary relief, and that any non-monetary relief that Plaintiff may be seeking pales in comparison to the monetary relief that he is seeking. Indeed, the gravamen of Plaintiff's breach of contract claims is that Defendant breached its contractual commitments to him by "providing [him] significantly less in the [<u>Basu</u>] settlement

---

[6] It would also be within this Court's power to transfer to the Court of Federal Claims both Plaintiff's breach of contract claims and his Title VII claims arising out of alleged breaches of the <u>Basu</u> settlement agreement. <u>See Wood v. United States</u>, 961 F.2d 195, 198-99 (Fed. Cir. 1992) (because plaintiff's tort claims "arise from the same facts as the contractual claims" and are "entirely dependent on the contract claim[s]," they are properly within the jurisdiction of the Court of Federal Claims); <u>see also Rochon</u>, 438 F.3d at 1215 ("[W]here the primary thrust of [a] complaint is breach of contract, even if a [claim sounding in tort] would lie, the Claims Court would retain jurisdiction over the suit." (internal quotation marks omitted)).

[7] Plaintiff cites <u>Kidwell v. Dep't of the Army</u>, 56 F.3d 279 (D.C. Cir. 1995), to support his assertion that this Court should decide his breach of contract claims because they seek primarily non-monetary relief. (Pl.'s Opp'n at 12.) However, in <u>Kidwell</u> (unlike here), the "complaint did not seek any monetary relief." 56 F.3d at 283. That fact was crucial to the <u>Kidwell</u> court's holding. <u>See id.</u> at 284 ("Even where a monetary claim may be waiting on the sidelines, <u>as long as the plaintiff's complaint only requests non-monetary relief</u> that has 'considerable value' independent of any future potential for monetary relief," the complaint is not within the exclusive jurisdiction of the Court of Federal Claims. (emphasis added)). Here, Plaintiff's Amended Complaint requests substantial monetary relief. (<u>See</u> Am. Compl. at 6-7; <u>see also infra</u> at 5-6.) Thus, <u>Kidwell</u> is of no help to Plaintiff.

agreement than other class agents." (Am. Compl. ¶18; see also id. at ¶10.) Accordingly,

Plaintiff's prayer for relief seeks primarily money damages:

> WHEREFORE [Plaintiff] prays that the court enter judgment on his behalf, and grant the following relief
>
> A.    Re[s]cission of the settlement agreement as it pertains to [Plaintiff]. Award Plaintiff damages in an amount equal to all of his accumulated lost wages and benefits in an amount to be determined at trial, plus an additional amount for future lost wages, plus an additional amount in damages for the financial and emotional harm caused by Defendant, including prejudgment and postjudgment interest.
>
> B.    Award payment of all fees, costs, expenses, including attorneys fees and expert fees[.]
>
> C.    That the Court award Plaintiff such other relief as to which he may be deemed entitled.

(Am. Compl. at 6-7.) In light of the above, there can be no reasonable dispute that: (1) any non-monetary relief that Plaintiff may be seeking in connection with his breach of contract claims pales in comparison to the monetary relief that he is seeking[8]; and therefore, (2) Plaintiff's contract claims belong in the Court of Federal Claims. See Bliss, 208 F. Supp. 2d at 7 ("If a court determines that the plain effect of a favorable judgment would be financial gain for the plaintiff, then the [Court of Federal Claims has exclusive jurisdiction]."). Third, notwithstanding Plaintiff's assertion to the contrary (see Pl.'s Opp'n at 12), the Court of Federal Claims would be able to award him certain non-monetary relief, if warranted, including "placement in appropriate duty . . . status." 28 U.S.C. § 1491(a)(2); see Greenhill, 482 F.3d at 576 (noting that the Court of

---

[8] The nature of the non-monetary relief that Plaintiff is seeking in connection with his breach of contract claims is not entirely clear. At most, he is seeking an order requiring Defendant to: (1) create a Development Opportunity Placement Program (which it has already created (see infra Part D; Ex. 20 at 4 & attachments 5-6)); (2) provide him with Office of Personnel Management ("OPM") training (which it has already made available (see infra Part D; Ex. 20 at 2-3 & attachments 2-4)); and (3) award him a retroactive promotion (so that he may recover additional monetary sums). (See Am. Compl. ¶¶10, 18, 29-30 & prayer for relief.)

Federal Claims can provide equitable relief and questioning "the validity of th[e] belief" that, in all cases, there is "a broader array of non-monetary remedies" available in federal district court than in the Court of Federal Claims).

Finally, Plaintiff argues that this Court has jurisdiction over and should thus decide his breach of contract claims because "there is nothing in [the Amended Complaint that] suggest[s] that [he] is seeking more than $10,000" in damages in connection with those claims.  (Pl.'s Opp'n at 12-13.)  This argument is unavailing.  Although Plaintiff does not explicitly state in his Amended Complaint that he is seeking damages greater than $10,000 in connection with his breach of contract claims, it is clear from the allegations therein, as well as from his opposition brief, that that is the case.  (See Am. Compl. ¶10 & Count II (seeking rescission of the Basu settlement agreement and monetary damages because, inter alia, Plaintiff "received[ed] only $40,000" under the agreement, whereas other class members received "payments of $100,000 to $300,000"); Pl.'s Opp'n at 5 (observing that under the Basu settlement agreement, "[t]hree of the class agents who were employed [by Defendant] received significant individual relief, including . . . payments of $100,000 to $300,000," whereas Plaintiff "was designated to receive $40,000"). See also Greenhill, 482 F.3d at 481 ("[J]urisdiction rests exclusively with the Court of Federal Claims" if a plaintiff "explicitly or in essence seeks money damages in excess of $10,000." (emphasis added)).  Moreover, a plaintiff who wishes to disclaim damages of greater than $10,000 must do so explicitly, which Plaintiff here has not done.  See Goble v. Marsh, 684 F.2d 12, 17 (D.C. Cir. 1982) ("waiver [must be] clearly and adequately expressed"); see also Waters v. Rumsfeld, 320 F.3d 265, 272 (D.C. Cir. 2003) (because "plaintiffs did not 'clearly and adequately express' an intent to waive their FSLA claims in excess of $10,000 . . . , the Court of Federal Claims has exclusive jurisdiction to adjudicate those claims").  Thus, jurisdiction over

Plaintiff's breach of contract claims rests exclusively with the Court of Federal Claims, and for all of the reasons discussed above, that is the court that should decide those claims.

      B.    <u>Plaintiff's Failure to Promote and Breach of Contract Claims Must Be Dismissed for Failure to Exhaust Administrative Remedies</u>

          1.    *Plaintiff failed to exhaust his administrative remedies with respect to his failure to promote claims*

Plaintiff has asserted Title VII claims based on Defendant's alleged refusal to promote him to a GS-15 position in June and August 2006. (<u>See</u> Am. Compl. ¶17.) In its opening brief, Defendant argued that: (1) Plaintiff's June 2006 failure to promote claim must be dismissed because the administrative complaint upon which that claim is based—NRCS-2006-02124— does not allege that Defendant discriminated or retaliated against Plaintiff by not selecting him for a GS-15 position (Def.'s Br. at 37; <u>see</u> Ex. 22)[9]; and (2) Plaintiff's August 2006 failure to promote claim must be dismissed because Plaintiff filed this lawsuit less than 180 days after filing the administrative complaint upon which that claim is based (<u>id.</u> at 36). Those arguments are compelling and require the dismissal of both of Plaintiff's failure to promote claims.

In his opposition brief, Plaintiff does not even address Defendant's argument for dismissal of his June 2006 failure to promote claim. That is because there is nothing he could say that would render the administrative complaint underlying his June 2006 claim—NRCS-2006-02124—a sufficient basis for that claim. Thus, Plaintiff's June 2006 failure to promote claim must be dismissed.

As to the August 2006 failure to promote claim, Plaintiff does not dispute that the administrative complaint upon which that claim is based was filed less than 180 days before he initiated this action. (<u>See</u> Pl.'s Opp'n at 10.) Nor does he dispute the resulting conclusion that

---

[9] Rather, NRCS-2006-02124 asserts that Plaintiff did not receive sufficient notice of his right to challenge the <u>Basu</u> settlement agreement. (<u>See</u> Ex. 22.)

when he brought this action, he had failed to properly exhaust his administrative remedies with respect to that claim.  (See id.)  Nevertheless, citing absolutely no authority, Plaintiff argues that the jurisdictional flaw of his filing the August 2006 failure to promote claim before the expiration of 180 days was cured by the filing of his Amended Complaint after the expiration of 180 days.  (Id.)  It was not.  Courts have recognized that a plaintiff's failure to exhaust administrative remedies must "be cured by something more than an amendment to the complaint."  Schmidt v. U.S. Postal Serv., 56 Fed. Appx. 173, 174 n.* (4th Cir. 2003); Sparrow v. U.S. Postal Serv., 825 F. Supp. 252, 254-55 (E.D. Cal. 1993).  A contrary rule would render the 180-day exhaustion requirement meaningless—a plaintiff could file his claim prematurely with the knowledge that he could amend his pleading after the expiration of 180 days.  See Sparrow, 825 F. Supp. at 255 ("If the claimant is permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered meaningless."); see also Patel v. Derwinski, 778 F. Supp. 1450, 1457 (N.D. Ill. 1991) ("[T]he fact that 180 days have since passed while this case has been pending does not cure plaintiff's error.  Such a rule would permit plaintiff to file prematurely and then to wait out the 180-day period in this Court.").  Allowing a plaintiff—including Plaintiff here—to avoid the 180-day exhaustion requirement merely by amending his pleading would undermine "Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day."  Martini v. Federal Nat'l Mortgage Ass'n, 178 F.3d 1336, 1347 (D.C. Cir. 1999) (emphasis added); see Powell v. Wash. Metro. Area Transit Auth., 238 F. Supp. 2d 160, 162 n.2 (D.D.C. 2002) ("This Circuit has interpreted Title VII to require that complainants wait 180 days after filing charges with the EEOC before filing a suit in federal court . . . in order to give the EEOC time to act on

the complaint before it.").  Thus, Plaintiff's August 2006 failure to promote claim must be dismissed.

> 2.     *Plaintiff failed to exhaust his administrative remedies with respect to his breach of contract claims*[10]

In its opening brief, Defendant argued that Plaintiff failed to exhaust his administrative remedies with respect to his breach of contract claims because he failed to comply with either: (1) the specific terms of the <u>Basu</u> settlement agreement governing challenges to that agreement; or (2) the EEO regulations governing challenges to settlement agreements in general.  (<u>See</u> Def.'s Br. at 26-31.)  Because Plaintiff did not comply with either the terms of the <u>Basu</u> settlement agreement or the relevant EEO regulations, there can be no question that he failed to exhaust his administrative remedies with respect to his breach of contract claims.

> i.     Plaintiff failed to comply with the terms of the Basu settlement agreement

Under the terms of the <u>Basu</u> settlement agreement, Plaintiff was required to exhaust each step of a prescribed process before pursuing breach of contract remedies in an adjudicative forum.  (<u>See</u> Ex. 2, Settlement Agreement, at 15-17.)  Among other things, Plaintiff was required to:

- orally inform Defendant's Office of General Counsel (the "OGC") of his breach of contract claims "[a]t least five (5) calendar days" prior to giving written notice of those claims to the Department Liaison; and then

- provide written notice of his claims, as well as a proposal for resolving the claims, to the Department Liaison; and then

- provide the OGC "thirty-five (35) calendar days" to respond to his claims; and then

---

[10] Thus, if this Court decides not to transfer the breach of contract claims to the Court of Federal Claims, it should dismiss those claims for failure to exhaust administrative remedies.

- if dissatisfied with the OGC's response, submit his claims in writing to the Department Liaison for the Department Liaison's "consideration and recommendation"; and then

- provide the Department Liaison "thirty-five (35) calendar days" to issue a "report and recommendation" to the Assistant Secretary for Civil Rights.

(Id. at 15-16.)  Plaintiff did not comply with any of the above requirements.  Instead, he simply wrote letters to various employees of Defendant expressing his dissatisfaction with the terms of the Basu settlement agreement.  (See Ex. 9; Pl.'s Opp'n at 14.)  Importantly, even after the Director of Defendant's Office of Civil Rights, Sadhna G. True, responded to those letters with a letter of her own (dated October 24, 2005) in which she instructed Plaintiff to "follow the procedures for enforcement set forth in the [Settlement] Agreement" (Ex. 11 at 3), he still failed to follow those procedures.[11]  Although Plaintiff asserts, in conclusory fashion, that "he complied with each of the requirements" referenced in Ms. True's letter (Pl.'s Opp'n at 15), he did not.  Indeed, there is no evidence in the record indicating that he did.  Presumably, if Plaintiff had complied with the procedural requirements of the Basu settlement agreement as set forth in Ms. True's letter, then he would have submitted with his opposition brief, inter alia, the written notice

---

[11] Ms. True's letter went so far as to summarize the required procedures:

The first step is to provide verbal notice to the Department's representative, Arlean Leland, of the claim of non-compliance.  At least five days after providing verbal notice, you must provide written notice of the claim of non-compliance to the Departmental Liaison.  The written notice must propose a resolution of the issue.  After the written notice of non-compliance is received, the Department shall have 35 calendar days to respond.  If the response does not resolve the matter, then additional procedures are available for pursuing the claim of non-compliance.

(Ex. 11 at 3.)  Although Ms. True informed Plaintiff in her letter that "[t]he prior Departmental Liaison, Dr. Ruihong Guo, [had] left the position approximately seven weeks ago," she also informed him that until the Department Liaison "position is filled, [she would be the person] to monitor compliance with the Settlement Agreement and coordinate implementation of the injunctive relief provisions."  (Id. at 2.)  Thus, the fact that the Department Liaison position was vacant for a time does not justify Plaintiff's failure to adhere to the above procedures referencing that position.  And, it certainly does not justify his failure to adhere to the other procedures.

of his claims (and the proposal for resolving those claims) that he was required to provide to the Department Liaison, as well as the written statement of his claims that he was also required to submit to the Department Liaison.  He did no such thing.

In his opposition brief, Plaintiff argues that he "compl[ied] with the terms of the <u>Basu</u> Settlement Agreement" because, under the agreement, "a breach . . . claim may be raised at any time."  (Pl.'s Opp'n at 14.)  This argument fails.  As an initial matter, the <u>Basu</u> settlement agreement does not provide that a breach claim may be raised at any time.  Rather, it is silent regarding when a breach claim must be raised.  (<u>See</u> Ex. 2, Settlement Agreement, at 15-17.)  More importantly, even assuming, <u>arguendo</u>, that a breach claim could be raised at any time, the individual raising the claim would still have to adhere to the specific process outlined in the settlement agreement for pursuing such a claim.  Because Plaintiff did not adhere to that process, it is irrelevant whether, under the agreement, he could have raised his breach claims at any time.

Plaintiff also argues that even if he failed to adhere to the procedural requirements of the <u>Basu</u> settlement agreement (and he did), such non-compliance would not serve as a jurisdictional bar to his bringing suit.  (Pl.'s Opp'n at 16.)  To be sure, the defense of failure to exhaust administrative remedies is subject to equitable avoidance.  <u>See</u> <u>Bowden v. United States</u>, 106 F.3d 433, 437 (D.C. Cir. 1997).  However, once that defense has been properly invoked (as it has here), the "plaintiff . . . bears the burden of pleading and proving facts supporting equitable avoidance."  <u>Id.</u>  Plaintiff here has provided this Court with no explanation for why he failed to adhere to the requirements of the <u>Basu</u> settlement agreement—requirements of which he was explicitly and indisputably made aware.  (<u>See</u> Ex. 11 (letter to Plaintiff instructing him to "follow the procedures for enforcement set forth in the [<u>Basu</u> Settlement] Agreement, section VIII," and summarizing those procedures); Pl.'s Opp'n at 4 (acknowledging that Plaintiff received a copy of

the Basu settlement agreement in February 2004).)[12]  Plaintiff cannot now escape the

consequences of his failure to exhaust simply by asserting that a failure to exhaust defense is

subject to equitable avoidance without showing why he is entitled to such avoidance.

> ii.    Plaintiff failed to comply with the EEO regulations governing
> challenges to settlement agreements

Under 29 C.F.R. § 1614.504(a), an individual who believes that an agency has breached a

settlement agreement must "notify the EEO Director, in writing, of the alleged noncompliance

within 30 days of when [he] knew or should have known of the alleged noncompliance."

Defendant believes that Plaintiff was on notice of his breach claims well before May 26, 2005—

the date Plaintiff claims he was first put on notice of those claims.  (See Pl.'s Opp'n at 4, 13-14

(stating that Plaintiff first "receive[d] notice of the individual relief proposed for him [under the

Basu settlement agreement in] May 2005").)  However, even assuming, arguendo, that Plaintiff

was not on notice of his breach claims until May 26, 2005, he nevertheless failed to comply with

29 C.F.R. § 1614.504(a)'s 30-day notification requirement.  Plaintiff waited until September 22,

2005—almost four months after he says he was on notice of his breach of contract claims—to

first raise those claims, and even then, he failed to raise the claims with the appropriate EEO

officer.[13]  (See Ex. 9.)  Thus, Plaintiff failed to exhaust his administrative remedies under the

governing EEO regulations.

---

[12] Because Plaintiff has acknowledged that he "received a copy of the [Basu] Settlement Agreement" "[i]n February 2004" (Pl.'s Opp'n at 4), his assertion that he was not "on notice of the non-compliance provisions in the Basu Agreement as early as February [] 2004" (id. at 13) is false.

[13] In his opposition brief, Plaintiff asserts that he first raised his breach of contract claims in a letter dated August 29, 2005.  (Pl.'s Opp'n at 14.)  To support this assertion, Plaintiff cites to Ms. True's October 24, 2005 letter in which she states that she is responding to letters he wrote "dated August 29, 2005, October 5, 2005, and October 21, 2005."  (Id.; see Ex. 11 at 1.)  The reference in Ms. True's letter to an "August 29, 2005" letter is a typo.  There is no such letter in the record.  The record does, however, contain a letter from Plaintiff regarding the Basu

Plaintiff argues that his failure to comply with the requirements of 29 C.F.R. § 1614.504 should be excused because those requirements were not set forth in the <u>Basu</u> settlement agreement.  (Pl.'s Opp'n at 13.)  However, Defendant was under no legal obligation to provide Plaintiff with notice of the procedural requirements of 29 C.F.R. § 1614.504, whether in the <u>Basu</u> settlement agreement or otherwise.  See <u>Bowden</u>, 106 F.3d at 438 ("agency had no duty to" provide "notice of the time limit on allegations of non-compliance with settlement agreement[]").  Moreover, having (in his own words) previously "played an instrumental part in initiating a class complaint on behalf of Asian employees at USDA" (Pl.'s Opp'n at 3), Plaintiff must have been keenly aware of the existence of EEO regulations governing all aspects of the filing of administrative claims against agencies.  Thus, his claim of ignorance with respect to the requirements of 29 C.F.R. § 1614.504 rings hollow.

In any event, Plaintiff cannot dispute that he received adequate notice of the procedures set forth in the <u>Basu</u> settlement agreement for initiating challenges to that agreement.  (See, e.g., Ex. 11; Pl.'s Opp'n at 4.)  Because Plaintiff adhered to neither those procedures nor the procedures set forth in 29 C.F.R. § 1614.504, the conclusion that he failed to exhaust his administrative remedies is inescapable.

C.    <u>Plaintiff's Breach of Contract and Title VII Claims Relating to the Basu Settlement Agreement Must Be Dismissed Because Plaintiff Received Notice of the Agreement, Failed to Timely Object to it and is Thus Bound by its Terms</u>

In its opening brief, Defendant demonstrated that on February 17, 2004, it sent Plaintiff, via U.S. mail and Federal Express:  (1) a letter outlining the individual relief that he was to receive as a Tier One class member (the "February 17, 2004 letter"); (2) a copy of the <u>Basu</u>

---

settlement agreement dated September 29, 2005.  (Ex. 9.)  That is the letter to which Ms. True was referring.  In any event, even assuming, <u>arguendo</u>, that Plaintiff had first raised his breach claims on August 29, 2005, his claims would still be untimely under 29 C.F.R. § 1614.504(a).

settlement agreement; and (3) a document entitled "Notice of Settlement," which stated, <u>inter alia</u>, that class members had "30 days" from the Notice of Settlement to object to the terms of the settlement agreement.[14]  (<u>See, e.g.</u>, Def.'s Br. at 8-11; <u>see also</u> Ex. 2; Ex. 32, Brammer Decl., at ¶30.)  Importantly, there is evidence in the record that Plaintiff received the February 17, 2004 Federal Express mailing on February 18, 2004.  (<u>See</u> Ex. 2 (Feb. 18, 2004 email from Federal Express stating that "the shipment sent from [Defendant] to [Plaintiff] . . . was delivered on 2/18/2004 at 8:41 AM and signed for or released").)  Thus, by February 18, 2004, Plaintiff was on notice that he had 30 days to object to the terms of the <u>Basu</u> settlement agreement.[15]  He failed to do so.  Indeed, he did not object to the agreement until September 22, 2005, almost a year after the administrative law judge overseeing the settlement "grant[ed] final approval to the Settlement Agreement."  (<u>See</u> Ex. 9; Ex. 4 at 12; Def.'s Br. at 14.)  Thus, having failed to avail himself of his opportunity to challenge the <u>Basu</u> settlement agreement, Plaintiff is now legally bound by its terms.  <u>See</u> 29 C.F.R. § 1614.504(a) ("Any settlement agreement knowingly and voluntarily agreed to by the parties . . . shall be binding on [the] parties.").

Plaintiff has responded to the above argument merely by stating, in conclusory fashion, that he did not receive the February 17, 2004 letter describing the relief that he was to receive as a Tier One class member under the <u>Basu</u> settlement agreement in February 2004.  (<u>See, e.g.</u>, Pl.'s Opp'n at 15 (stating that Plaintiff first learned of the relief that he was to receive under the <u>Basu</u> settlement agreement in May 2005).)  However, in the face of hard evidence that he did in fact receive, <u>inter alia</u>, the February 17, 2004 letter on February 18, 2004 (<u>see</u> Ex. 2, Feb. 18, 2004

---

[14] This method of informing Plaintiff of the terms of the <u>Basu</u> settlement agreement was court-approved.  Indeed, it went beyond that which was court-approved.  (<u>See</u> Ex. 1, Jan. 27, 2004 Order, at 1 n.1 (requiring Defendant to "provide[] notice by regular mail").)

[15] On April 1, 2004, Plaintiff was again put on notice of the <u>Basu</u> settlement agreement when he received an email referencing that agreement.  (Ex. 3.)

email from Federal Express), Plaintiff cannot now manufacture a factual dispute sufficient to

defeat summary judgment merely by stating in a self-serving affidavit that he did not receive that

letter on that date.[16]  See, e.g., Fields v. Office of Johnson, 520 F. Supp. 2d 101, 106 (D.D.C.

2007) ("uncorroborated and self-serving affidavit will not create a genuine issue of material

fact"); Carter v. George Washington Univ., 180 F. Supp. 2d 97, 111 (D.D.C. 2001) ("self-serving

affidavits alone will not protect the non-moving party from summary judgment"), aff'd, 387 F.3d

872 (D.C. Cir. 2004).

    Moreover, Plaintiff has given this Court good reason to doubt the veracity of his claim

that he did not receive the February 17, 2004 letter in February 2004.  In his Amended

Complaint, Plaintiff asserts that he did not receive any of the documents contained in the

February 17, 2004 mailing in February 2004.  (See Am. Compl. ¶9 (alleging that Plaintiff "did

not receive a copy of the proposed settlement agreement and notice of his right to file

objections").)  However, after being presented with hard evidence that the February 17, 2004

mailing was delivered to his home on February 18, 2004 (see Ex. 2, Feb. 18, 2004 email from

Federal Express), Plaintiff revised his position—he now claims that he received a copy of the

Basu settlement agreement in February 2004, but not the other documents that were included in

the February 17, 2004 mailing.  (See Pl.'s Opp'n at 4 ("In February 2004, [Plaintiff] received a

copy of the Settlement Agreement").)  This change in position severely undermines Plaintiff's

credibility and, thus, further supports Defendant's position that, in February 2004, Plaintiff

---

[16] In his opposition brief, Plaintiff asserts that Defendant "has not provided a sworn
statement . . . [that Plaintiff] was sent the notice of the individual relief proposed for him in
February 2004."  (Pl.'s Opp'n at 14.)  Plaintiff is mistaken.  Paragraph 30 of the declaration of
Steven C. Brammer states:  "I sent the February 17, 2004 letter, and the enclosed Notice of
Settlement and copy of the . . . Settlement Agreement, to Plaintiff via U.S. mail and also via
FedEx with confirmation of receipt."  (Ex. 32.)  The February 17, 2004 letter describes the
individual relief that Plaintiff was to receive under the settlement agreement.  (See Ex. 2.)

received not only the <u>Basu</u> settlement agreement, but also the Notice of Settlement and the February 17, 2004 letter.[17]

Furthermore, the manner in which Defendant informed Plaintiff of the relief that he was to receive under the <u>Basu</u> settlement agreement and of the time constraints on his ability to object to that relief—by U.S. mail and Federal Express—was court-approved.  (<u>See</u> <u>supra</u> n.14; <u>see also</u> Ex. 1, Jan. 27, 2004 Order, at 1 n.1 ("certain identified class members will be provided notice by regular mail").)  Thus, even if, through some delivery error, Plaintiff did not receive the February 17, 2004 mailing (which is not the case (<u>see</u> Ex. 2)), he would still be bound by the terms of the settlement agreement.  <u>See</u> <u>Peters v. Nat'l R.R. Passenger Corp.</u>, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("the proper inquiry is not whether [plaintiff] received the notices but instead whether the method of providing the notices was 'reasonably calculated, under all the circumstances,' to inform him of the pendency of the class action and his right to be excluded from it").

---

[17] In his opposition brief, Plaintiff asserts that he was not "provided notice of the EEOC administrative judge's decision [approving the settlement agreement] within 30 days of December 7, 2004" (the date that decision was rendered).  (Pl.'s Opp'n at 15.)  However, even if true, that assertion is immaterial.  Plaintiff had 30 days to object to the terms of the settlement agreement from the date he received the Notice of Settlement, the proposed settlement agreement and the February 17, 2004 letter (<u>i.e.</u>, February 18, 2004), not from the date of final approval of the settlement.  (<u>See</u> Ex. 2, Notice of Settlement, at 5.)  Indeed, the December 7, 2004 decision observes that "if a Class Member did not believe that the offered relief was adequate, s/he had the opportunity to file a petition objecting to that relief."  (Ex. 4 at 10; <u>see also</u> <u>id.</u> at 2 ("The Notice [of Settlement] provided that Class Members would have 30 days in which to file objections, if any, with the undersigned.").)  Ten class members filed such a petition prior to December 2004.  (<u>Id.</u> at 2 & n.1.)  Plaintiff was not one of them.  (<u>See</u> <u>id.</u>)

Notably, the Order accompanying the December 7, 2004 decision requires that a copy of the decision "be sent to the [ten] individuals who filed petitions objecting to the Settlement Agreement."  (Ex. 4, Dec. 7, 2004 Order, at 1.)  Because Plaintiff was not one of those ten individuals, Defendant was under no obligation to send him the decision.

D.     Plaintiff Has Received All of the Relief to which He is Entitled Under the Basu Settlement Agreement

In his Amended Complaint and opposition brief, Plaintiff asserts that "Defendant breached [its] express and implied contractual commitments" to him by: (1) "providing [him] significantly less in the settlement agreement than other [Tier One class members]"; (2) failing to "create a Development Opportunity [Placement] Program within 180 days of execution of the Settlement Agreement"; and (3) failing to provide him "OPM training."[18] (Am. Compl. ¶18; Pl.'s Opp'n at 16-18.) Due to these alleged breaches, Plaintiff would have this Court rescind the Basu settlement agreement "as it applies to [him]." (See Pl.'s Opp'n at 16.) For the reasons set forth above, these contract claims are not properly before this Court.[19] But, even if they were, they would fail.

First, the relief Plaintiff received under the Basu settlement agreement was more than adequate. (See Ex. 4 at 4-5 (describing what each Tier One class member was to receive under the agreement).) Indeed, the administrative law judge who approved the Basu settlement agreement adjudged it to be "fair, adequate and reasonable to the Class as a whole." (Id. at 12.) And, before reaching that conclusion, he recounted the precise relief that each Tier One class member was to receive.[20] (Id. at 5.) He also observed that there were only six Tier One class

---

[18] Plaintiff also asserts that he was "excluded from negotiating" the Basu settlement agreement and "kept completely in the dark" with respect to the negotiations. (Pl.'s Opp'n at 16-17.) However, Plaintiff's dissatisfaction with how the members of his class chose to negotiate cannot form the basis of a claim against Defendant.

[19] (See supra Part A (Plaintiff's breach of contract claims belong in the Court of Federal Claims); see also Part B (Plaintiff has failed to exhaust his administrative remedies as to his breach of contract claims); Part C (Plaintiff is bound by the terms of the Basu settlement agreement).)

[20] In his opposition brief, Plaintiff insinuates that it is only "the Agency [that] believes [that the Basu settlement agreement] is 'fair, adequate and reasonable.'" (See Pl.'s Opp'n at 16.) That insinuation is improper. The administrative law judge who presided over the settlement agreement is the one who first described it as "fair, adequate and reasonable." (Ex. 4 at 12.)

members and that those six individuals were "to receive more relief than those in the lower three tiers." (Id. at 10.)

Second, Defendant has provided Plaintiff with all of the relief that he was entitled to receive under the Basu settlement agreement. With respect to the Development Opportunity Placement Program and the OPM training (the relief Plaintiff complains he did not receive), Defendant has submitted a compliance report showing that it (1) established a Development Opportunity Placement Program within 180 days of the effective date of the Basu settlement agreement[21]; and (2) "provided [Plaintiff] with the opportunity to attend four . . . OPM leadership training courses at a cost of $13,600.00 to the Agency." (See Ex. 20 at 2-3 & attachments 2-4 (discussing the four OPM training courses made available to Plaintiff); id. at 4 & attachments 5-6 (showing that "the Agency is in compliance with the requirements for the [Development Opportunity Placement Program] created by the Basu Settlement Agreement").) In the face of this evidence, Plaintiff's self-serving assertions that Defendant breached its obligations under the Basu settlement agreement with respect to the Development Opportunity Placement Program and OPM training are insufficient to create a material factual dispute. See, e.g., Fields, 520 F. Supp. 2d at 106; Carter, 180 F. Supp. 2d at 111.

Plaintiff's final argument—that Defendant has not provided him all of the relief to which he is entitled under the Basu settlement agreement because it has not executed an individual settlement agreement with him (see Pl.'s Opp'n at 17)—deserves little attention. The administrative law judge who approved the Basu settlement agreement observed that it was

---

[21] Plaintiff complains that Defendant did not "create a Development Opportunity [Placement] Program within 180 days of execution of the Settlement Agreement." (Pl.'s Opp'n at 17-18 (emphasis added).) However, under the settlement agreement, Defendant was required to create such a program "within 180 days of the effective date of the Agreement" (Ex. 4 at 3 (emphasis added)), not the execution date. And, it complied with that obligation. (See Ex. 20 at 4 & attachment 5.)

unnecessary for Defendant to enter into an individual settlement agreement with each Tier One class member because the <u>Basu</u> settlement agreement itself obligated Defendant to provide those individuals with the relief described therein.  (<u>See</u> Ex. 4 at 9-10 ("[T]he 'individual settlement agreements' are merely a mechanism through which the six Class Agents in Tier One are to receive the relief provided by the Agreement itself.").)  Moreover, Plaintiff cannot use the fact that he and Defendant have not executed an individual settlement agreement to his advantage because he is the reason why no such agreement has been executed.  (<u>See</u> Def.'s Br. at 13.)  In any event, it is unnecessary for Plaintiff and Defendant to enter into an individual settlement agreement because Plaintiff has already been provided with all of the relief that he was entitled to receive under the terms of the <u>Basu</u> settlement agreement.  (<u>See, e.g.</u>, Pl.'s Opp'n at 7 ("The Agency [has] provided [Plaintiff] a payment of $40,000 and a two step within grade increase."); Ex. 20 at 2-4 (showing that Defendant has instituted a Development Opportunity Placement Program and made OPM training available to Plaintiff).)

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court GRANT its Motion to Dismiss or, in the Alternative, for Summary Judgment.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

                                    _____/s/_____
                                    CHRISTOPHER B. HARWOOD
                                    Assistant United States Attorney
                                    555 Fourth St., N.W.
                                    Washington, D.C.  20530
                                    Phone: (202) 307-0372
                                    Fax: (202) 514-8780
                                    Christopher.Harwood@usdoj.gov

**Of Counsel:**

Steven C. Brammer
United States Department of Agriculture